1  **P O R T E R | S C O T T**
2  A PROFESSIONAL CORPORATION
   Carl L. Fessenden, SBN 161494
3  cfessenden@porterscott.com
   Suli A. Mastorakos, SBN 330383
4  smastorakos@porterscott.com
   350 University Ave., Suite 200
5  Sacramento, California 95825
   TEL: 916.929.1481
6  FAX: 916.927.3706

7  Attorneys for Defendants
8  COUNTY OF SACRAMENTO, PAMELA PISANI, JENNIFER STEWART and SHERIFF'S
   SERGEANT RONALD BRIGGS
9  *Exempt from Filing Fees Pursuant to Government Code § 6103*

10

11                    **UNITED STATES DISTRICT COURT**
                      **EASTERN DISTRICT OF CALIFORNIA**
12

13  MS. PARVIN OLFATI,                          Case No. _____

14            Plaintiff,                        [Sacramento County Superior Court Case No.:
                                                34-2021-00310164]
15  v.

16                                              **DECLARATION OF SULI A.**
                                                **MASTORAKOS IN SUPPORT OF**
17  COUNTY OF SACRAMENTO; PAMELA                **DEFENDANTS' NOTICE OF REMOVAL**
    PISANI; JENNIFER REIMAN; JENNIFER           **OF CIVIL ACTION TO FEDERAL COURT**
18  STEWART; SHERIFF'S SERGEANT                  **UNDER 28 U.S.C. § 1441(a)**
    RONALD BRIGGS; JANE ROE                     **(FEDERAL QUESTION JURISDICTION)**
19  DEFENDANT ONE; JANE ROE
    DEFENDANT TWO; JANE ROE                     Complaint Filed:  10/25/21
20  DEFENDANT 3-100, JOHN DOE                    FAC Filed: 06/10/2022
    DEFENDANTS 1-100,
21

22            Defendants.
23  _____/

24

25       I, Suli A. Mastorakos, declare:

26       1.       I am an attorney duly licensed to practice before all courts of the State of California, and

27  am an associate attorney with the law firm of Porter Scott, attorneys of record for Defendants COUNTY

28  OF SACRAMENTO, PAMELA PISANI, JENNIFER REIMAN, JENNIFER STEWART, and RONALD

BRIGGS (collectively, "Defendants") in the above-entitled matter.

2.     True and correct copies of Plaintiff's Complaint, Summons, Civil Cover Sheet, and Notice of Mandatory Case Management Conference are attached to Defendants' Notice of Removal of Civil Action to Federal Court from State Court as **Exhibit A**.

3.     True and correct copies of Defendants' motion, the opposition, the reply, the Court's Order, and all other relevant documents are attached to Defendants' Notice of Removal of Civil Action to Federal Court from State Court as **Exhibit B**.

4.     True and correct copies of Plaintiff's motion, petition to file late tort claim, the Court's Order granting Plaintiff leave to amend, and all other accompanying documents are attached to Defendants' Notice of Removal of Civil Action to Federal Court from State Court as **Exhibit C**.

5.     True and correct copies of Plaintiff's First Amended Complaint, including all Summons' and Proofs of Service, are attached to Defendants' Notice of Removal of Civil Action to Federal Court from State Court as **Exhibit D**.

6.     Defendants consent to this Notice of Removal.

I make this Declaration on my own personal knowledge, except to the facts stated on information and belief.  As to such facts, I believe them to be true.  If called upon to do so, I could and would competently testify about the matters asserted herein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed on June 29, 2022, at Sacramento, California.



_____
Suli A. Mastorakos

**DECLARATION OF SULI A. MASTORAKOS IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT UNDER 28 U.S.C. § 1441(a) (FEDERAL QUESTION JURISDICTION)**

# EXHIBIT A

{01732159.DOCX}

FILED
Superior Court Of California,
Sacramento
10/25/2021
apshn
By_____ , Deputy
Case Number:
34-2021-00310164

1   STEVEN MARK KAMP (California State Bar Number 116817)
2   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 958
     Electronic Mail Address: steve.kamp@comcast.net
3   Telephone: (916) 501-1791 (cellular, voice/text)
     Attorney for Plaintiff Ms. Parvin Olfati
4

5

6

7

8

9          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
10            IN AND FOR THE COUNTY OF SACRAMENTO

11

12                                  No.

13   Ms. PARVIN OLFATI, Plaintiff        COMPLAINT FOR DAMAGES AND
                                 DEMAND FOR JURY TRIAL
14         v.

15
   COUNTY OF SACRAMENTO; PAMELA
16   PISANI; JANE ROE DEFENDANT ONE;
    JANE ROE DEFENDANT TWO; JANE
17   ROE DEFENDANTS 3-100; JOHN DOE
    DEFENDANTS 1-100, Defendants
18

19

20

21   Plaintiff Ms. Parvin Olfati by her attorney, for her Complaint alleges as follows:

22

23         **STATEMENT OF JURISDICTION AND VENUE**

24    1. This is an unlimited civil action for damages in excess of twenty-five thousand dollars

25       ($25,000.00) by Plaintiff Ms. PARVIN OLFATI against County of Sacramento Senior

26
      Mental Health Counselor Pamela Pisani ("Pisani"); multiple Jane Roe and John Doe
27

28

Defendants employed by Defendant County of Sacramento; and the County of Sacramento ("County").

2. Venue is laid within Sacramento County, in that: (a) Plaintiff resides in Sacramento County; (b) all Defendants reside in or do business in Sacramento County; (c) the events giving rise to this action took place in Sacramento County.

**NOTICE OF CLAIM**

3. Plaintiff became aware of the acts of Defendants Pisani and County giving rise to this action on December 14, 2020, when Defendant Pisani acting on behalf of Defendant County invaded Plaintiff's privacy and personal affairs; intentionally inflicted emotional distress; and trespassed Plaintiff's residence property.

4. On April 5, 2021, Plaintiff filed with the County of Sacramento ("County") Office of the Clerk of the Board of Supervisors a California Government Tort Claims Act (CGTCA) claim seeking compensation for the acts by the County of Sacramento and its' employees complained of herein, as required by and pursuant to California Government Code Section 910 et. Seq.  On April 23, 2021, the County through its' authorized agent George Hills Company, Inc. mailed to Plaintiff a written rejection of Plaintiff's claim. Defendant County's claim rejection letter lists "claim no." as L2100524, and "our file no." as 87388-35.

5. This action is filed on Monday, October 25, 2021, the first business day after Saturday, October 23, 2021, the 183rd calendar day after April 23, 2021.

**PARTIES**

   **Plaintiff**

6. Plaintiff Ms. PARVIN OLFATI resides at 1859 45th Street in the City of Sacramento, a location in the neighborhood known as Elmhurst, a neighborhood for which there is an Elmhurst Neighborhood Association.

7. Plaintiff has resided at 1859 45th Street in the City of Sacramento since 2002; and controls access to this property. Plaintiff on December 14, 2020 when the events giving rise to this action occurred was 68 years of age; she is now age 69. Plaintiff is not now a client of and has never been a client of Defendant County's Department of Health Services Division of Behavioral Health Services.

8. Plaintiff at all times prior to approximately 4:33 p.m. on December 14, 2020 had never met or heard of Defendant Pamela Pisani ("Pisani").

9. Plaintiff seven months and five days before December 14, 2020 (on May 9, 2020), while Plaintiff was alone in her house, was subjected to no-warrant false arrest and excessive force by City of Sacramento Police Department Officers Jared Robinet and Maryna Stanionis where Officer Robinet hid himself around the corner out of sight of Plaintiff and awaited a hand signal from 1870 45th Street resident Barbara Andres, a sequence of events that resulted in: (i) Plaintiff being stalked from behind without an announcement from Officer Robinet, who stalked Plaintiff all the way up the driveway, north side front porch steps, front porch, and inside Plaintiff's residence living room without a warrant, and grabbed Plaintiff from behind after pushing open the closing front door that Plaintiff had just closed; (ii) Plaintiff being subjected to excessive force that fractured and lacerated Plaintiff's right hand ring finger and caused other great bodily injury; (iii) Plaintiff being handcuffed on her front porch and dragged in full public view to the Stanionis City Police car; (iv) Plaintiff being subjected to an intrusive body search in full public view; (v) Plaintiff being detained handcuffed in a doors locked windows closed Stanionis City

Police car on a 91 degree day where Plaintiff was deprived of both water and Miranda v. Arizona warnings; (vi) Plaintiff being subjected to custodial interrogation while handcuffed where City Police Officer Stanionis did not question Plaintiff until after Stanionis had met at the 1901 45th Street house of Steven Maviglio with Maviglio and 1870 45th Street resident Barbara Andres and received interrogation content from Maviglio and Andres; and (vii) Plaintiff being served with a notice to appear for a California Penal Code Section 148(a)(1) "resisting arrest" charge that on October 15, 2020, was dismissed by the Sacramento County District Attorney on its own motion for Insufficient Evidence, five days before the scheduled arraignment.  Plaintiff is informed and believed that on and before December 14, 2020,  Defendant Pisani; Defendant County through its' County Sheriff and County Behavioral Health; and one or more of the Jane Roe Defendants and/or John Doe Defendants was or were aware of these facts, including but not limited to Plaintiff's written police reports of the City of Sacramento Police Department misconduct suffered by Plaintiff that Plaintiff copied to the County Sheriff or included in one or more communications to the County.

**Defendant County of Sacramento**

10. Defendant County of Sacramento ("County") is a public entity organized and existing under the laws of the State of California; is the employer of individual capacity Defendant Pamela Pisani; is believed to be the employer of one or more of the Defendant Roe One, Defendant Roe Two, and one or more of the Jane Roe Defendants 3-100 and John Doe Defendants 1-100 named herein; and is the employer of one or more supervisorial employees who supervised these named Defendants. Defendant County operates a Department of Health Services ("County Health") with a Division of Behavioral Health Services ("County Behavioral Health") where Defendant Pisani was employed on

December 14, 2020, and where Defendant Pisani is believed to be still employed.

Defendant County also operates a Sheriff's Department ("County Sheriff") that Pisani said

was the source of her information and authority for committing her acts against Plaintiff

alleged herein, and that has refused to give Plaintiff records of the content regarding

Plaintiff that Defendant Pisani said the County Sheriff had given to her.  Defendant

County also operates a Sacramento County Counsel and Clerk of the Board of Supervisors

Office that have said they no records of any content Defendant Pisani says she received

from the County Sheriff regarding Plaintiff.

**Defendant Pamela Pisani**

11. On December 14, 2020 Defendant Pamela Pisani was employed by Defendant County as a

Licensed Medical Family Therapist (LMFT) and "Senior Mental Health Counselor" on

the "Community Support Team" of County Behavioral Health. Defendant Pisani used a

work address of 3321 Power Inn Road, Suite 110, Sacramento, California 95826; used

work telephone numbers (916) 804-1135 and (916) 874-2166; and used the County

electronic mail address PisaniP@saccounty.net   At all times material hereto, Defendant

Pisani was acting within the scope of her County employment. Defendant Pisani is sued in

her individual capacity. Attached as Exhibits "1", "2" and "3" hereto are still photographs

of Plaintiff's cellphone video of Defendant Pisani: (1) and (2) on Plaintiff's residence

front porch; and (3) on Plaintiff's residence driveway.

**Jane Roe Defendant Number One**

12. Jane Roe Defendant One ("Roe One") is the female driver of the white Chevrolet sport

utility vehicle with the California license plate number 8LTE039, who was at the Tuesday

Morning store at 2550 Fair Oaks Boulevard (a location in the unincorporated area of the

County of Sacramento) on December 22, 2020 at about 11:55:40 a.m., and on other dates.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On December 22, 2020 Defendant Roe One in the Tuesday Morning store stalked Plaintiff. On other occasions (in the Ettore's and Bella Bru Café restaurants on Fair Oaks Boulevard in the unincorporated area of the County of Sacramento), Defendant Roe One attempted to induce or entrap Plaintiff into an interaction. Attached as Exhibits "4", "5" "6" and "7" hereto are: (4) a still photograph of the cellphone video taken by Plaintiff of Roe One placing herself in close proximity to Plaintiff in the Bella Bru Café; (5) and (6) still photographs of the cellphone video taken by Plaintiff showing Roe One in Tuesday Morning on December 22, 2020 stalking Plaintiff; and (7) a still photograph of the cellphone video taken by Plaintiff of the car Plaintiff saw being used by Defendant Roe One.  Upon information and belief, Defendant Roe One is employed by Defendant County and: (i) invaded Plaintiff's privacy and intruded into Plaintiff's private affairs; (ii) communicated to persons other than Plaintiff content that placed Plaintiff in a false light, including but not limited to statements stating that Plaintiff had committed acts or engaged in conduct meriting law enforcement or County Behavioral Health intervention; (iii) communicated to persons other than Plaintiff purported statements of fact, including but not limited to statements stating that Plaintiff had committed acts or engaged in conduct meriting law enforcement or County Behavioral Health intervention; and/or (iv) breached her duty of reasonable care to Plaintiff. Plaintiff as of the filing of this Complaint is unaware of the identity of Defendant Roe One and upon receipt of information from discovery or otherwise will seek leave of Court to amend this Complaint with such identity and serve Roe One within the period of California Code of Civil Procedure Section 474.

**Jane Roe Defendant Number Two**

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  6

13.     Jane Roe Defendant Two ("Roe Two") is the female driver of the convertible Volkswagen with the California license plate "WMGLEN", who was at Bella Bru Café stalking Plaintiff while appearing to work on puzzles, Defendant Roe Two attempted to induce or entrap Plaintiff into an interaction on various dates in 2019 and 2020 at: (i) the Starbucks o9n 5300 Folsom Boulevard in the City of Sacramento; (ii) the Bella Bru Café on Fair Oaks Boulevard. When Plaintiff stopped going to the 5300 Folsom Boulevard Starbucks in order to avoid Defendant Roe Two, Defendant Roe Two began appearing at the Bella Bru Café that Plaintiff went to in order to avoid the intrusive presence of Defendant Roe Two. Attached hereto as Exhibits "8", "9" and "10" are still photographs of the cellphone video taken by Plaintiff of Roe Two at the Bella Bru Café of Defendant Roe Two appearing to work on puzzles while placing herself in close proximity to Plaintiff.  Upon information and belief, Defendant Roe Two is employed by Defendant County and: (i) invaded Plaintiff's privacy and intruded into Plaintiff's private affairs; (ii) communicated to persons other than Plaintiff content that placed Plaintiff in a false light, including but not limited to statements stating that Plaintiff had committed acts or engaged in conduct meriting law enforcement or County Behavioral Health intervention; (iii) communicated to persons other than Plaintiff purported statements of fact, including but not limited to statements stating that Plaintiff had committed acts or engaged in conduct meriting law enforcement or County Behavioral Health intervention; and/or (iv) breached her duty of reasonable care to Plaintiff. Plaintiff as of the filing of this Complaint is unaware of the identity of Defendant Roe Two and upon receipt of information from discovery or otherwise will seek leave of Court to amend this Complaint with such identity and serve Roe Two within the period of California Code of Civil Procedure Section 474.

1
2
3
4
5
6

**Jane Roe Defendants 3-100 and John Doe Defendants 1-100**

7   14. Upon information and belief, Plaintiff alleges that one or females (Jane Roe Defendants 2-
8       100) and/or males (John Doe Defendants 1-100) have committed one or more of the acts
9       or omissions alleged in this Complaint. Plaintiff is unaware of their identities and upon
10      receipt of such information through discovery or otherwise, will seek leave of Court to
11      amend this Complaint with such identity and serve Roe One within the period of
12
13      California Code of Civil Procedure Section 474.
14

15  **FACTS**
16  15. Plaintiff re-alleges paragraphs 1-14 of this Complaint as though fully set forth herein.
17  16. On or before December 14, 2020, Defendant Pisani received communications from one or
18      more employees of Defendant County (including but not limited to the County Sheriff)
19      directing Defendant Pisani to go to Plaintiff's residence and attempt to induce or entrap
20      Plaintiff into entering into a client or other relationship with County Behavioral Health
21      that included treating Plaintiff as a person with a "mental health disorder"; as a person
22      who is a "danger to [her]self"; as a person who "is a danger to others"; as a person who is
23
24      "gravely disabled" as these terms are used in California Welfare & Institutions Code
25      Section 5150; or who is otherwise receiving mental health services from Defendant
26      County.
27
28

17. On December 14, 2020, Defendant Pisani acting upon information or content given to Pisani by the County Sheriff, by one or more County employees, and/or by Defendant Roe One, Defendant Roe Two, or more of the other Jane Roe or John Doe Defendants, drove in a vehicle without County insignia or "CA Exempt" license plate to Plaintiff's residence at 1859 45th Street. Defendant Pisani parked the vehicle she was driving at the curb of 1851 45th Street (immediately north of Plaintiff's residence) and walked to Plaintiff's residence front door.

18. At about 4:33 p.m. on December 14, 2020, Defendant Pisani knocked upon the front door of Plaintiff's residence with the intent to induce Plaintiff into an interaction with Defendant Pisani. Defendant Pisani when she knocked on Plaintiff's residence front door was not wearing any County uniform, badge or insignia, and was not displaying any County or other identification. Defendant Pisani was wearing civilian clothes and what appeared to be an identification card holder that did not have any identification card, and only displayed a key or an object that looked like a key.

19. At all times on December 14, 2020 while Defendant Pisani was within the curtilage of Plaintiff's residence property or was otherwise on 45th Street, including the interaction with Plaintiff beginning at about 4:33 p.m. that was initiated by Defendant Pisani, Defendant Pisani never asked Plaintiff to give Plaintiff's name or otherwise identify Plaintiff as Parvin Olfati, Patty Olfati, Ms. Olfati or any other name.

20. Plaintiff was alone in her residence when she heard the knock on her residence front door at about 4:33 p.m. on December 14, 2020 that was made by Defendant Pisani.

21. In response to the door knock from Defendant Pisani, Plaintiff opened her residence front door and face to face saw a female with short hair. Plaintiff asked this person "who are you and what do you want", or words to that effect. This person who was Defendant

Pisani did not identify herself, did not give Plaintiff a business card, did not show

identification, did not give her name, and did not otherwise identify herself.

22. Instead, the person who was Defendant Pisani said that she was from the "community

support team" or words to that effect. Defendant Pisani did not explain or otherwise

communicate what the "community support team" was. Defendant Pisani did not identify

herself as a County employee, representative, or agent even though he had in her

possession a County business card containing her name, "Community Support Team",

and contact information.

23. Plaintiff then asked the person who was Defendant Pisani if that person was talking about

the "Elmhurst Community", thinking the person who was Defendant Pisani was coming to

Plaintiff's residence on behalf of the Elmhurst Neighborhood Association to sign Plaintiff

up for the Elmhurst Neighborhood Association. The person who was Defendant Pisani

responded as follows (in what Plaintiff saw and heard as very ambiguous): that she

"works with all of the community" or words to that effect.

24. The person who was Defendant Pisani then said she was from the "community support

team" then said that she had received or was aware of "an anonymous complaint" about

Plaintiff.

25. The person who was Defendant Pisani then handed Plaintiff a County business card that

listed Defendant Pisani as a "Senior Mental Health Counselor" with the "Community

Support Team" of County Behavioral Health, with the work address, work telephone

numbers, and work electronic mail address listed above in paragraph 11 herein.

26. Plaintiff then realized that the person who was Defendant Pisani was not from the

Elmhurst Neighborhood Association, but rather was from a government agency. Plaintiff

realized that this person's visit and her claiming that her visit was based on anonymous

complaint about Plaintiff, together with this person's attempting to let Plaintiff believe that this visit is from the Elmhurst Neighborhood Association or "Elmhurst community", meant that this person wanted to keep Plaintiff confused and/or did not want to explain to Plaintiff that Defendant Pisani was not from the "Elmhurst community" or Elmhurst Neighborhood Association and was trying to keep the real and true source of the place, organization, and or agency that she was representing hidden from Plaintiff. Plaintiff was very frightened when she realized what she now saw the true purpose of the presence of Defendant Pisani on her front porch.

27. Therefore, Plaintiff told Defendant Pisani to "wait". Plaintiff then closed the front door, went inside her residence, and picked up her cellphone, to make sure the rest of her conversation initiated by Defendant Pisani would be recorded.

28. With her cellphone in hand and its' camera operating, Plaintiff went to the front door and opened the front door. Defendant Pisani was still on Plaintiff's residence front porch. Plaintiff said:"Ok, who are you again?" Defendant Pisani responded: "my name is Pam" and did not state her surname, an omission that escalated Plaintiff's suspicion of Defendant Pisani's very unusual and suspect visit and behavior.

29. Plaintiff then said: "Pam?" and referring to the business card Defendant Pisani had given to Plaintiff seconds before, said "Pamela from Community Support Team". Defendant Pisani said: "right".

30. Plaintiff then said: "and you don't know who called you." Defendant Pisani responded: "I think it was maybe Sheriff Department they complained", or words to that effect that included the words "Sheriff Department" and "complained." Plaintiff then asked Defendant Pisani: "Sheriff Department called you?" Defendant Pisani responded: "Well, no, they did not

1    call me, they let us know that there was maybe some concern, you are out of the Sherriff

2    Department jurisdiction right?"

3    31. Plaintiff then said to Defendant Pisani: "So, the Sherriff Department has something to do

4       with this?" Defendant Pisani then said: "well they forwarded some information stating

5

6       you know, "

7    32. Plaintiff then asked Defendant Pisani, "what information?" Defendant Pisani replied:

8       "Ok, I don't know exactly what information".

9    33. Plaintiff then said: "how can you go to somebody's door when you have no idea what you

10      are doing there?" Defendant Pisani then said: "my resources". Plaintiff then asked

11

12      Defendant Pisani: "who are your resources?" Defendant Pisani then said: "I work for

13      Sacramento Community". Plaintiff then said to Defendant Pisani: "who are Sacramento

14      Community?" Defendant Pisani then said: "I work for Behavioral Services". Plaintiff then

15      said to Defendant Pisani: "Behavioral services meaning what?" Defendant Pisani then

16      said: "actually it doesn't mean anything. It's the department I work for", or words to that

17      effect.

18    34. Plaintiff then said to Defendant Pisani: "here is my problem with you -- you walk on my door

19      out of the blue, you do not want to tell me who called you. The anonymous, that is why there

20

21      is a problem, so, you walk on people's porch and knock on their door based on some

22      anonymous BS you have heard", Defendant Pisani interrupted Plaintiff and said that: "I have

23      not heard". Plaintiff then said to Defendant Pisani: "ok they gave you, and then you said the

24      Sherriff Department was involved and  then you said it is behavioral, you know your whole

25      behavior is suspect, just F---- Off." With that, Plaintiff ordered Defendant Pisani to leave

26      Plaintiff's residence property. Plaintiff was very scared.

27

28

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  12

35. Plaintiff closed the door, thinking Defendant Pisani would leave. A few minutes later, Plaintiff went outside and walked her north side front porch steps to check and make sure there were no law enforcement officers on her driveway, or at the end of the 45th Street where it intersects with "S" Street a few hundred feet north of Plaintiff's driveway. Plaintiff saw that Defendant Pisani was still on Plaintiff's residence property, having ignored Plaintiff's command to leave, and was following Plaintiff on her driveway.

36. Plaintiff was very frightened, because on May 9, 2020, similar following of Plaintiff on Plaintiff's driveway by 1870 45th Street resident Barbara Andres resulted in the emergence of a City of Sacramento Police Department vehicle from around the corner after Andres followed Plaintiff on the driveway and hand signaled the hiding police office Jared Robinet who without a warranty ran, stalked Plaintiff, grabbed Plaintiff, pulled Plaintiff out of her living room and injured Plaintiff.

37. Plaintiff then again told Defendant Pisani to leave and told her that nobody wants to talk to Pisani and Pisani should leave. Defendant Pisani ignored Plaintiff's command to "leave" and continued yelling at Plaintiff until Plaintiff went back inside her residence and closed the front door. Upon reasonable inference, Plaintiff alleges that Defendant Pisani after leaving Plaintiff's residence communicated to Defendant County and one or more of the Jane Roe Defendants or John Doe Defendants one or more statements regarding Plaintiff alleging that Plaintiff had committed one or more acts requiring law enforcement or County Behavioral Health intervention.

38. Plaintiff was scared, and for the rest of December 14, 2020, Plaintiff thought that within minutes there would be another knock on her door by some law enforcement officers who would try to arrest Plaintiff or seize Plaintiff under Welfare & Institutions Code Section 5150 or some other pretext. Plaintiff was extremely frightened of what would happen to her next

1    and knew that Defendant Pisani's finally leaving was not the end of this attempt to entrap

2    Plaintiff and that Plaintiff would have to face even much bigger, harsher, well-organized

3    retaliation and entrapment. Since Defendant Pisani's acts of December 14, 2020, Plaintiff has

4    become extremely scared anyone from the County of Sacramento, including but not limited to

5    the County Sheriff.

6

7    39. On December 22, 2020, at about 11:55:40 a.m., Defendant Roe One stalked Plaintiff in the

8    aisles of the Tuesday Morning store at 2550 Fair Oaks Boulevard in the unincorporated area

9    of the County of Sacramento.  Defendant Roe One has stalked Plaintiff on other dates near

10    December 14, 2020, including at Bella Bru Café on almost every day in 2020 whenever

11    Plaintiff dined at Bella Bru Café, including but not limited to August 26, 2020, and has

12    stalked Plaintiff at Ettore's on multiple dates in December 2020. These acts of stalking and

13    attempts to induce or entrap Plaintiff into a conversation and/or videotaping of Plaintiff and

14

15    retention and/or use of such videotapes by one or more of the Defendants intruded into the

16    private affairs of Plaintiff where she was attempting to enjoy a zone of privacy while

17    shopping at Tuesday Morning, dining at Bella Bru Café, or dining at Ettore's. Upon

18    information and belief, Plaintiff alleges that Defendant Roe One was working for or on behalf

19    of Defendant County and/or Defendant Pisani while committing these acts.  Defendant Roe

20    One was constantly writing and/or texting while constantly watching and monitoring Plaintiff,

21    and many times Plaintiff would leave without finishing her food just to get away from her.

22

23    Plaintiff also alleges that Roe One from these activities communicated content, information,

24    or material about Plaintiff to one or more persons other than Plaintiff, including but not

25    limited to Defendant Pisani, Defendant Roe Two, County, and/or one or more of the Jane Roe

26    Defendants or John Doe Defendants.

27

28

40. On August 10, 2020, Defendant Roe Two stalked Plaintiff at the Bella Bru Café, placing herself in close proximity to Plaintiff while appearing to work on puzzles. Defendant Roe two has stalked Plaintiff on other dates near December 14, 2020, including but not limited to July, August and September of 2020.  She also had stalked the plaintiff in other location including the Starbucks at 5300 Folsom Boulevard in the city of Sacramento.  The intrusive and privacy invading presence of Defendant Roe Two and other stalkers at the 5300 Folsom Boulevard Starbucks caused  Plaintiff to go to the Bella Bru Café on Fair Oaks Boulevard . Shortly after  Plaintiff started to go to the Bella Bru Cafe, Defendant Roe Two  appeared at the Bella Bru Café where Plaintiff observed Roe Two monitoring and stalking Plaintiff, keeping track of Plaintiff,  the persons Plaintiff talked to, and all of Plaintiff's activity at Bella Bru Café. These acts of stalking and monitoring Plaintiff were very intrusive . Defendants intruded into the private affairs of Plaintiff where she was attempting to enjoy a zone of privacy while  working on her computer.   Plaintiff alleges that Defendant Roe Two was working for or on behalf of Defendant County and/or Defendant Pisani while committing these acts. Plaintiff also alleges that Defendant Roe Two  from these activities communicated content, information, or material about Plaintiff to one or more persons other than Plaintiff, including but not limited to Defendant Pisani, Defendant Roe One, County, and/or one or more of the Jane Roe Defendants or John Doe Defendants.

## DAMAGES

41. As a direct and proximate result of each Defendant's acts and/or omissions as set forth herein, Plaintiff has suffered:

     (a) Permanent and severe mental and emotional distress;

     (b) Humiliation and the loss of dignity;

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  15

(c) Injury to reputation;

(d) Loss of enjoyment of life and other continued pain and suffering;

(e) Emotional trauma and suffering, including but not limited to fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, and anxiety – all of which will scar Plaintiff as long as Plaintiff lives.

(f) Loss of faith in County operations and personnel.

42. Plaintiff requests punitive or exemplary damages against Defendants Pisani and other individual capacity Defendants for their acts of oppression, fraud, and/or malice, and against Defendant County to the extent that Defendant County is liable for such damages under California Government Code Section 815.2(a).

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION: INVASION OF PRIVACY (INTRUSION INTO PRIVATE AFFAIRS) versus DEFENDANTS PISANI, ROE ONE and ROE TWO** *[Miller v. National Broadcasting Company,* 187 Cal.App.3d 1463 (1986)]

43. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-42 as though fully set forth herein.

44. Plaintiff had a reasonable expectation of privacy in her person and in her private affairs in all areas inside the curtilage of her residence property.

45. Defendant Pisani intentionally intruded into Plaintiff's privacy and private affairs inside the curtilage of her residence property.

46. The intrusion by Defendant Pisani would be highly offensive to a reasonable person.

47. Plaintiff was harmed by the intrusion by Defendant Pisani.

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  16

48. The acts and conduct of Defendant Pisani were a substantial factor in Plaintiff's harm, and Defendant Pisani is therefore liable to Plaintiff for invasion of privacy.

49. Plaintiff has a reasonable expectation of privacy and in her private affairs when she is in retail establishments where she shops in her private space or dines in her private space.

50. Defendant Roe One intentionally intruded into Plaintiff's privacy, private space, and private affairs by her acts and conduct toward Plaintiff.

51. The intrusion by Defendant Roe One would be highly offensive to a reasonable person.

52. Plaintiff was harmed by the intrusion by Defendant Roe One.

53. The acts and conduct of Defendant Roe One were a substantial factor in Plaintiff's harm, and therefore Defendant Roe One is liable to Plaintiff for invasion of privacy.

54. Defendant Roe Two intentionally intruded into Plaintiff's privacy, private space, and private affairs by her acts and conduct toward Plaintiff.

55. The intrusion by Defendant Roe Two would be highly offensive to a reasonable person.

56. Plaintiff was harmed by the intrusion by Defendant Roe Two.

57. The acts and conduct of Defendant Roe Two were a substantial factor in Plaintiff's harm, and therefore Defendant Roe Two is liable to Plaintiff for invasion of privacy.

**SECOND CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS versus DEFENDANTS PISANI, ROE ONE and ROE TWO [*Hughes v. Pair*, 46 Cal.4[th] 1035 (2009)]**

58. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-42 as though fully set forth herein.

59. The acts and conduct of Defendant Pisani were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

60. Defendant Pisani intended to cause Plaintiff severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

61. Defendant Pisani knew that Plaintiff would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

62. Defendant Pisani gave little or no thought to the probable effect of her conduct on Plaintiff.

63. Plaintiff suffered severe emotional distress from the acts and conduct of Defendant Pisani.

64. The acts and conduct of Defendant Pisani were a substantial factor in causing Plaintiff to suffer severe emotional distress, and Defendant Pisani is therefore liable to Plaintiff for intentional infliction of emotional distress.

65. The acts and conduct of Defendant Roe One were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

66. Defendant Roe One intended to cause Plaintiff severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

67. Defendant Roe One knew that Plaintiff would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

68. Defendant Roe One gave little or no thought to the probable effect of her conduct on Plaintiff.

69. Plaintiff suffered severe emotional distress from the acts and conduct of Defendant Roe One.

70. The acts and conduct of Defendant Roe One was a substantial factor in causing Plaintiff to suffer severe emotional distress, and Defendant Roe One is therefore liable to Plaintiff for intentional infliction of emotional distress.

71. The acts and conduct of Defendant Roe Two were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

72. Defendant Roe Two intended to cause Plaintiff severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

73. Defendant Roe Two knew that Plaintiff would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

74. Defendant Roe Two gave little or no thought to the probable effect of her conduct on Plaintiff.

75. Plaintiff suffered severe emotional distress from the acts and conduct of Defendant Roe Two.

76. The acts and conduct of Defendant Roe Two were a substantial factor in causing Plaintiff to suffer severe emotional distress, and Defendant Roe Two is therefore liable to Plaintiff for intentional infliction of emotional distress.

**THIRD CAUSE OF ACTION: TRESPASS versus DEFENDANT PISANI [*Miller v. National Broadcasting Company*, 187 Cal.App.3d 1463 (1986)]**

77. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-42 as though fully set forth herein.

78. Defendant Pisani entered Plaintiff's residence property on December 14, 2020 at about 4:33 p.m.

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  19

79.   Plaintiff did not give permission to Defendant Pisani for any entry by Defendant Pisani on to Plaintiff's residence property.

80.   Upon information from Plaintiff's home security system video, Plaintiff's cellphone video, and from Plaintiff's own eyes and ears, Defendant Pisani remained on Plaintiff's residence front yard and driveway after being told by Plaintiff to leave, meaning Defendant Pisani intended to be in Plaintiff's residence front yard, driveway, and at other locations inside Plaintiff's residence curtilage and to remain there.

81.   Upon information from Plaintiff's home security system video, Plaintiff's cellphone video, and from Plaintiff's own eyes and ears, the acts of Defendant Pisani inside the curtilage of Plaintiff's residence included: (a) Defendant Pisani refusing to leave and remaining on Plaintiff's property after Plaintiff first told her to leave, while Defendant Pisani was on Plaintiff's front porch; and (c) Defendant Pisani yelling at Plaintiff from Plaintiff's driveway after Plaintiff told Defendant Pisani for a second time to leave.

82.   Upon information from Plaintiff's home security system video, Plaintiff's cellphone video, and from Plaintiff's own eyes and ears, Defendant Pisani after Plaintiff ordered Pisani to leave Plaintiff's residence front porch walked on Plaintiff's residence front yard to Plaintiff's residence driveway, and remained on Plaintiff's residence driveway after being told by Plaintiff to leave, meaning Pisani intended to be in Plaintiff's residence front yard and residence driveway inside Plaintiff's residence curtilage and to remain there.

83.   Plaintiff was harmed by the trespass of Defendant Pisani,  not only from the trespass itself, but also from the reasonably foreseeable and/or intended damages that came from Pisani using her presence on Plaintiff's residence property to cause emotional distress to

Plaintiff, further intrude into Plaintiff's privacy and private affairs, and further damage Plaintiff.

84.  The acts of Defendant Pisani were a substantial factor in causing harm to Plaintiff.

85.  Plaintiff was harmed by the trespass committed by Defendant Pisani.

86.  Defendant Pisani is therefore liable to Plaintiff for California law for trespass damages, including consequential damages intended or reasonably foreseeable from the trespass.

**FOURTH CAUSE OF ACTION versus DEFENDANTS PISANI, ROE ONE, and ROE TWO  FOR NEGLIGENCE [Cal. Civil Code Section 1714(a); *Cabral v. Ralph's Grocery Co.*, 51 Cal.4th 764 (2011)]**

87.  Plaintiff realleges and incorporates by reference each of the preceding paragraphs 1-42 as though fully set forth herein.

88.  When Defendant Pisani committed her acts against Plaintiff alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant Pisani was under a duty to use reasonable care regarding Plaintiff.

89.  In committing each of her acts alleged against Plaintiff alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant Pisani breached this duty of reasonable care regarding Plaintiff.

90.  The breach of her duty of reasonable care by Defendant Pisani regarding Plaintiff was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Pisani liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

91. When Defendant Roe One committed her acts against Plaintiff alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant Roe One was under a duty to use reasonable care regarding Plaintiff.

92. In committing each of her acts alleged against Plaintiff alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant Roe One breached this duty of reasonable care regarding Plaintiff.

93. The breach of her duty of reasonable care by Defendant Roe One regarding Plaintiff was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Roe One liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

94. When Defendant Roe Two committed her acts against Plaintiff alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant Roe Two was under a duty to use reasonable care regarding Plaintiff.

95.  In committing each of her acts alleged against Plaintiff alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant Roe Two breached this duty of reasonable care regarding Plaintiff.

96. The breach of her duty of reasonable care by Defendant Roe Two regarding Plaintiff was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Roe Two liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

**FIFTH CAUSE OF ACTION: FALSE LIGHT INVASION OF PRIVACY versus DEFENDANTS PISANI, ROE ONE  and ROE TWO [*Briscoe v. Reader's Digest Association*, 4 Cal.3d 529 (1971)]**

97. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-42 as though fully set forth herein.

98. Defendant Pisani communicated to one or more persons other than Plaintiff content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

99. The false light created by the disclosure would be highly offensive to a reasonable person in Plaintiff's position.

100.    Defendant Pisani knew the disclosure would create a false impression about Plaintiff.

101.    Defendant Pisani made the disclosures about Plaintiff with reckless disregard for the truth.

102.    Defendant Pisani was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

103.    Plaintiff was harmed by the disclosures made by Defendant Pisani.

104.    The conduct of Defendant Pisani was a substantial factor in causing harm to Plaintiff, and Defendant Pisani is therefore liable to Plaintiff for invasion of privacy.

105.    Defendant Roe One communicated to one or more persons other than Plaintiff content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

106.    The false light created by the disclosure would be highly offensive to a reasonable person in Plaintiff's position.

107.    Defendant Roe One knew the disclosure would create a false impression about Plaintiff.

108.   Defendant Roe One made the disclosures about Plaintiff with reckless disregard for the truth.

109.   Defendant Roe One was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

110.   Plaintiff was harmed by the disclosures made by Defendant Roe One.

111.   The conduct of Defendant Roe One was a substantial factor in causing harm to Plaintiff, and Defendant Roe One is therefore liable to Plaintiff for invasion of privacy.

112.   Defendant Roe Two communicated to one or more persons other than Plaintiff content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

113.   The false light created by the disclosure would be highly offensive to a reasonable person in Plaintiff's position.

114.   Defendant Roe Two knew the disclosure would create a false impression about Plaintiff.

115.   Defendant Roe Two made the disclosures about Plaintiff with reckless disregard for the truth.

116.   Defendant Roe Two was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

117.   Plaintiff was harmed by the disclosures made by Defendant Roe Two.

118.   The conduct of Defendant Roe Two was a substantial factor in causing harm to Plaintiff, and Defendant Roe Two is therefore liable to Plaintiff for invasion of privacy.

**SIXTH CAUSE OF ACTION: versus DEFENDANTS PISANI, ROE ONE and ROE TWO for DEFAMATION [California Civil Code Sections 44, 45, 46]**

119.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-42 as though fully set forth herein.

120.    Defendant Pisani made one or more purported statements of fact of and concerning Plaintiff to one or more persons other than Plaintiff, including but not limited to content, material or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

121.    The persons other than Plaintiff who heard the communications from Defendant Pisani alleged in this cause of action reasonably understood these statements to be statements about Plaintiff and that stated Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

122.    These statements were false when they were made.

123.    Defendant Pisani in making these statements knew they were false, or acted with reckless disregard of their truth or falsity.

124.    Defendant Pisani failed to use reasonable care in making these statements.

125.    Defendants Pisani in making these statements acted with hatred toward Plaintiff, spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or annoy Plaintiff.

126.    Plaintiff was harmed by the statements made by Defendant Pisani.

127.    The conduct of Defendant Pisani was a substantial factor in causing harm to Plaintiff, and Defendant Pisani is therefore liable to Plaintiff for defamation.

128.    Defendant Roe One made one or more purported statements of fact of and concerning Plaintiff to one or more persons other than Plaintiff, including but not limited to content,

material or information stating Plaintiff had committed one or more acts or engaged in

conduct requiring intervention from law enforcement or from County Behavioral Health.

129.   The persons other than Plaintiff who heard the communications from Defendant Roe One

alleged in this cause of action reasonably understood these statements to be statements about

Plaintiff that stated Plaintiff had committed one or more acts or engaged in conduct requiring

intervention from law enforcement or from County Behavioral Health.

130.   These statements were false when they were made.

131.   Defendant Roe One in making these statements knew they were false, or acted with

reckless disregard of their truth or falsity.

132.   Defendants Roe One failed to use reasonable care in making these statements.

133.   Defendants Roe One in making these statements acted with hatred toward Plaintiff,

spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or annoy

Plaintiff.

134.   Plaintiff was harmed by the statements made by Defendant Roe One.

135.   The conduct of Defendant Roe One was a substantial factor in causing harm to

Plaintiff, and Defendant Roe One is therefore liable to Plaintiff for defamation.

136.   Defendant Roe Two made one or more purported statements of fact of and

concerning Plaintiff to one or more persons other than Plaintiff, including but not limited

to content, material or information stating Plaintiff had committed one or more acts or

engaged in conduct requiring intervention from law enforcement or from County

Behavioral Health.

137.   The persons other than Plaintiff who heard the communications from Defendant Roe Two

alleged in this cause of action reasonably understood these statements to be statements about

Plaintiff that stated Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

138.    These statements were false when they were made.

139.    Defendant Roe Two in making these statements knew they were false, or acted with reckless disregard of their truth or falsity.

140.    Defendants Roe Two failed to use reasonable care in making these statements.

141.    Defendants Roe Two in making these statements acted with hatred toward Plaintiff, spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or annoy Plaintiff.

142.    Plaintiff was harmed by the statements made by Defendant Roe Two.

143.    The conduct of Defendant Roe Two was a substantial factor in causing harm to Plaintiff, and Defendant Roe Two is therefore liable to Plaintiff for defamation.

**SEVENTH CAUSE OF ACTION: versus DEFENDANT COUNTY OF SACRAMENTO for NEGLIGENT TRAINING, DISCIPLINE, AND SUPERVISION OF COUNTY SENIOR MENTAL HEALTH COUNSELORS AND EMPLOYEES [Cal. Gov. Code Section 815.2(a); C.A. v. William S. Hart Union High School District, 53 Cal.4th 861 (2012)]**

144. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-143 as though fully set forth herein.

145. Defendant County's training, supervision, and discipline of Defendant Pisani, Defendant Roe One, Defendant Roe Two, and other County employee Roe Defendants and Doe Defendants , was negligent in protecting inhabitants of the County of Sacramento (including Plaintiff), from County Senior Mental Health Counselor and other County employee violations of Plaintiff's California law protection against intrusion into private affairs and

1    invasions of privacy; intentional infliction of emotional distress; trespass; negligence; and

2    defamation.

3    146.  In training, disciplining, and supervising, or in failing to train, discipline and supervise

4    Defendant Pisani, Defendant Roe One, Defendant Roe Two, and other County employee Roe

5    Defendants and Doe Defendants, Defendant County and its supervisorial and final policy-

6    making employees have a relationship with the inhabitants of the County of Sacramento

7    (including Plaintiff) and owe inhabitants of the County of Sacramento (including Plaintiff) a

8    duty of reasonable care.

9

10   147. Defendant County's failure to train, supervise, and discipline County Senior Mental

11   Health Counselor Pamela Pisani, Defendant Roe One, Defendant Roe Two, and other County

12   employee Roe Defendants and Doe Defendants in obvious procedures to prevent trespasses,

13   defamation, false light invasion of privacy, and/or intrusions into the private affairs of and

14   other violations of the right of privacy breached Defendant County's duty of reasonable care,

15   caused substantial harm to Plaintiff, and was the proximate cause of Plaintiff's injuries from

16   Defendant County's employees Pisani, Roe One, Roe Two, and County employee Roe

17   Defendants and Doe Defendants.

18

19   148. Defendant County's acts of ratification and in carrying out policies, procedures, final

20   decisions, or customs alleged herein also amount to negligent training, supervision, and

21   discipline of Defendant Pisani, other Senior Mental Health Counselors, Roe One, Roe Two,

22   and other County employee Roe Defendants and Doe Defendants,  that violates the County's

23   duty to Plaintiff under California Government Code Section 815.2(a) and California Civil

24   Code Section 1714.

25

26   149. Defendant County is therefore liable to Plaintiff under California Government Code

27   Section 815.2(a) for negligent training, supervision, and discipline of Defendant Pisani,

28

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  28

1    Defendant Roe One, Defendant Roe Two, and/or other County employee Roe Defendants and

2    Doe Defendants.

3

4

5

6

7    **EIGHTH CAUSE OF ACTION:** *RESPONDEAT SUPERIOR* **versus DEFENDANT**

8    **COUNTY OF SACRAMENTO FOR THE ACTIONS OF DEFENDANT COUNTY**
     **SENIOR MENTAL HEALTH COUNSELOR PISANI and COUNTY EMPLOYEE**

9    **ROE and DOE DEFENDANTS [California Government Code Section 815.2(a);** *Mary M.*

10   *v. City of Los Angeles***, 54 Cal.3d 202 (1991)]**

11   150. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the

12   preceding paragraphs 1-143 as though fully set forth herein.

13

14   151. California Government Code Section 815.2(a) makes Defendant County liable for the

15   acts or omissions of County employees within the scope of the employee's employment if the

16   act or omission gives to a cause of action against that employee.

17

18   152. Defendant County employs Defendant Pisani as a County Senior Mental Health

19   Counselor.

20   153. Defendant County Senior Mental Health Counselor Pisani  is sued for acts or omissions

21   committed within the scope of her County employment in Causes of Action First, Second,

22   Third, Fourth, Fifth and Sixth herein.

23

24

25   154.     Defendant County is therefore liable to Plaintiff under California Government Code

26       Section 815.2(a) for the acts or omissions of County employee Pisani in the Causes of

27       Action pled against Defendant Pisani.

28

155.     Defendant County employs or uses as an agent or representative Defendant Roe One.

156.     Defendant Roe One is sued for acts or omissions committed within the scope of her County employment in Causes of Action First, Second, Fourth, Fifth and Sixth herein.

157.     Defendant County is therefore liable to Plaintiff under California Government Code Section 815.2(a) for the acts or omissions of County employee Roe One in the Causes of Action pled against Defendant Roe One.

158.     Defendant County employs or uses as an agent or representative Defendant Roe Two.

159.     Defendant Roe Two is sued for acts or omissions committed within the scope of her County employment in Causes of Action First, Second, Fourth, Fifth and Sixth herein.

160.     Defendant County is therefore liable to Plaintiff under California Government Code Section 815.2(a) for the acts or omissions of County employee Roe Two in the Causes of Action pled against Defendant Roe One.

161.     Defendant County employs one or more of the Jane Roe Defendants 3-100 and John Doe Defendants 1-100.  These Defendants are sued for acts or omissions committed within the scope of her County employment in Causes of Action First, Second, Fourth, Fifth and Sixth herein. Defendant County is therefore liable to Plaintiff under California Government Code Section 815.2(a) for the acts or omissions of these employees that caused harm to Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBITS**



Exhibits 1 and 2: Defendant Pisani on Plaintiff's front porch



Exhibit 3: Defendant Pisani trespassing Plaintiff's driveway

   

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  32

1

Exhibits 4-5-6: Defendant Roe One: (4) Stalking Plaintiff at Bella Bru Café;

2

3

(5) and (6) Stalking Plaintiff at Tuesday Morning;

Exhibit 7: Automobile Used By Defendant Roe One.

4

5

6

7

  

8

9

10

11

Exhibits (8) (9) and (10): Defendant Roe Two Stalking Plaintiff at Bella Bru Café

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SUMMONS**

**SUM-100**

*(CITACION JUDICIAL)*

HCT

FILED

Superior Court Of California,
Sacramento

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

10/27/2021

apenn

By_____ , Deputy

Case Number:

34-2021-00310164

**NOTICE TO DEFENDANT:** COUNTY OF SACRAMENTO
*(AVISO AL DEMANDADO):*

**YOU ARE BEING SUED BY PLAINTIFF:** Ms. DORVIN OLKITI
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is: SACRAMENTO COUNTY
*(El nombre y dirección de la corte es):* SUPERIOR COURT

CASE NUMBER: *(Número del Caso):*

720 9th St, Sacramento CA 95814

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):* STEVEN MARK IZNMIP
29 Petrilli Circle, Sacramento CA 95838   716 501 1791

DATE:
*(Fecha)*   **OCT 2 7 2021**

Clerk, by
*(Secretario)*   A. PENN

, Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):* COUNTY CLERK

4. ☐ by personal delivery on *(date):* NOVEMBER 29 2021

2021 NOV 29 PM 4:21   COUNTY OF SACRAMENTO BOARD OF SUPERVISORS

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

Page 1 of 1

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[Print this form]   [Save this form]   [Clear this form]

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Steven Zampi
25 Perelli Circle, Sacrumle CA 95852

TELEPHONE NO.: 916 501 1791   FAX NO. *(Optional):*
E-MAIL ADDRESS: steven.zampli@comcast.net
ATTORNEY FOR *(Name):* Plaintiff Ms. Porvin Olfati

FOR COURT USE ONLY

**FILED**
**Superior Court Of California,**
**Sacramento**
**10/25/2021**
apenn
**By_____ , Deputy**
**Case Number:**
**34-2021-00310164**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
STREET ADDRESS: 720 9th Street
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME: Sacramento CA 95814

CASE NAME:
Ms. Porvin Olfati v County of Sacramento

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited   [ ] Limited | [ ] Counter   [ ] Joinder | |
| (Amount demanded exceeds $25,000)  (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:  DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

   **Auto Tort**
   [ ] Auto (22)
   [ ] Uninsured motorist (46)
   **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
   [ ] Asbestos (04)
   [ ] Product liability (24)
   [ ] Medical malpractice (45)
   [ ] Other PI/PD/WD (23)
   **Non-PI/PD/WD (Other) Tort**
   [ ] Business tort/unfair business practice (07)
   [X] Civil rights (08)
   [X] Defamation (13)
   [ ] Fraud (16)
   [ ] Intellectual property (19)
   [ ] Professional negligence (25)
   [X] Other non-PI/PD/WD tort (35)
   **Employment**
   [ ] Wrongful termination (36)
   [ ] Other employment (15)

   **Contract**
   [ ] Breach of contract/warranty (06)
   [ ] Rule 3.740 collections (09)
   [ ] Other collections (09)
   [ ] Insurance coverage (18)
   [ ] Other contract (37)
   **Real Property**
   [ ] Eminent domain/Inverse condemnation (14)
   [ ] Wrongful eviction (33)
   [ ] Other real property (26)
   **Unlawful Detainer**
   [ ] Commercial (31)
   [ ] Residential (32)
   [ ] Drugs (38)
   **Judicial Review**
   [ ] Asset forfeiture (05)
   [ ] Petition re: arbitration award (11)
   [ ] Writ of mandate (02)
   [ ] Other judicial review (39)

   **Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
   [ ] Antitrust/Trade regulation (03)
   [ ] Construction defect (10)
   [ ] Mass tort (40)
   [ ] Securities litigation (28)
   [ ] Environmental/Toxic tort (30)
   [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
   **Enforcement of Judgment**
   [ ] Enforcement of judgment (20)
   **Miscellaneous Civil Complaint**
   [ ] RICO (27)
   [ ] Other complaint *(not specified above)* (42)
   **Miscellaneous Civil Petition**
   [ ] Partnership and corporate governance (21)
   [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):* E & OIR, Privacy, IIED, Trespass, Info..ton, Negligence
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)* NO

Date: October 25, 2021
STEVEN PHILIP ZAMP
*(TYPE OR PRINT NAME)*                    *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

Page 1 of 2

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

For your protection and privacy, please press the Clear

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SACRAMENTO**
**GORDON D SCHABER COURTHOUSE**

**ORDER**

DATE: 4/4/2022                                        DEPT: 31

JUDICIAL OFFICER PRESIDING: David De Alba

CASE NO: 34-2021-00310164-CU-CR-GDS
CASE TITLE: Olfati vs. County of Sacramento
CASE CATEGORY: Civil – Unlimited

---

**NATURE OF PROCEEDINGS: CASE MANAGEMENT CONFERENCE**

Pursuant to the Presiding Judge's July 7, 2021 Order re: Reopening of Case Management Program Departments, the court hereby sets a **Case Management Conference ("CMC") for Friday, 5/27/2022 at 8:30 a.m. in Department 31.**

All parties must file and serve a Case Management Statement at least 15 calendar days before the CMC. If answers, defaults, and/or dismissals for all defendants and/or cross-defendants are not on file at the time of the CMC, the Court (1) will not refer the case for selection of mandatory settlement conference and trial dates, and (2) may issue an Order to Show Cause Re: Compliance.  You may check the status of your case on the Court's website at https://services.saccourt.ca.gov/PublicCaseAccess/.

Pursuant to Local Rule 2.47, the Court will issue and publish a tentative ruling for the CMC no later than 2:00 p.m. on the court day before the scheduled CMC.  Tentative rulings can be accessed on the Court's website at https://services.saccourt.ca.gov/PublicCaseAccess/.  Any party who wishes to contest the tentative ruling must (1) request a hearing by calling the clerk in Department 31 at (916) 874-6353 no later than 4:00 p.m. on the court day before the scheduled CMC, and (2) advise opposing counsel of the request. If a hearing is not requested by 4:00 p.m. on the court day before the scheduled CMC, the tentative ruling will become the final order of the Court.

If a hearing is requested, parties may appear remotely either telephonically or by video conference via the Zoom video/audio conference platform with notice to the Court and all other parties in accordance with Code of Civil Procedure 367.75. Although remote participation is not required, the Court will presume all parties are appearing remotely for non-evidentiary civil hearings. The Department 31 Zoom Link is https://saccourt-ca-gov.zoomgov.com/my/sscdept31 and the Zoom Meeting ID is: 160 8345 9993. To appear on Zoom telephonically, call (833) 568-8864 and enter the Zoom ID referenced above.

Plaintiff shall serve a copy of this order on any party to the complaint. Any cross-complainant shall have the same obligation with respect to any party to their cross-complaint.

**ORDER**

# EXHIBIT B

**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
Jordan M. McCroskey, SBN 340068
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants
COUNTY OF SACRAMENTO and PAMELA PISANI
*Exempt from Filing Fees Pursuant to Government Code § 6103*



FILED/ENDORSED

JAN 2 8 2022

By: _____ H. PEMELTON
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

| | |
|---|---|
| MS. PARVIN OLFATI,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SACRAMENTO; PAMELA PASANI; JANE ROE DEFENDANT ONE; JANE ROE DEFENDANT TWO; JANE ROE DEFENDANT 3-100, JOHN DOE DEFENDANTS 1-100,<br><br>Defendants. | CASE NO. 34-2021-00310164<br><br>**DEFENDANTS COUNTY OF SACRAMENTO'S AND PAMELA PISANI'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE (CCP § 425.16)**<br><br>**Date: April 20, 2022**<br>**Time: 9:00 a.m.**<br>**Dept.: 54**<br>**Reservation No.: 2613497**<br><br>Complaint Filed: 10/25/21 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 20, 2022, at 9:00 a.m. in Department 54 of the above-entitled court, located at 813 6th Street, Sacramento, CA, 95814, Defendants COUNTY OF SACRAMENTO and PAMELA PISANI ("Defendants") will and hereby does move the Court, pursuant to Code of Civil Procedure § 425.16, for an Order striking Plaintiff's entire complaint and each cause of action contained therein.

This motion is made on the grounds that the Complaint and each cause of action therein fall squarely within the scope of Code of Civil Procedure § 425.16, subdivision (e)(4), because each cause of

{02577349.DOCX}                                     1

action arises from speech or conduct relating to a public issue.  Consequently, the burden shifts to the Plaintiff to present admissible evidence establishing a probability that she will prevail on each of her claims.  (Code Civ. Proc., § 425.16, subd. (b)(1).)  Plaintiff cannot meet this burden.  As such, this special motion to strike seeks to strike the entire Complaint and each cause of action contained therein.  Pursuant to Section 425.16, subdivision (c), Defendant also is entitled to recover her attorney's fees and costs incurred in this action.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Declarations of Jordan McCroskey, Jennifer Reiman, and Pamela Pisani, and the documents attached thereto, and all other papers, pleadings and records on file in this action, and any evidence and argument offered in a hearing on this matter.

Pursuant to Local Rule 1.06 (A), the court will make a tentative ruling on the merits of this matter by 2:00 p.m., the court day before the hearing. The complete text of the tentative rulings for the department may be downloaded off the Court's website. If the party does not have online access, they may call the dedicated phone number for the department as referenced in the local telephone directory between the hours of 2:00 p.m. and 4:00 p.m. on the court day before the hearing and receive the tentative ruling. The tentative ruling shall become the ruling of the court, unless a party desiring to be heard so advises the department clerk no later than 4:00 p.m. on the court day preceding the hearing, and further advises the clerk that such party has notified the other side of its intention to appear. Notification to the clerk shall be made pursuant to instructions on the court's website at https://www.saccourt.ca.gov.

Dated: January 28, 2022

PORTER SCOTT
A PROFESSIONAL CORPORATION

By _____
Carl L. Fessenden
Attorneys for Defendants

**DEFENDANTS COUNTY OF SACRAMENTO'S AND PAMELA PISANI'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

1  *Olfati v. County of Sacramento et al.*
   **Sacramento County Superior Court – Case No. 34-2021-00310164**

2

3                          **DECLARATION OF SERVICE**
        I am a resident of the United States and of the County, of Sacramento, California. I am over the
4  age of eighteen years and not a party to the within above-entitled action. My business address is 350
   University Avenue, Suite 200, Sacramento, California.
5
        I am familiar with this Company's practice whereby the mail, after being placed in a designated
6  area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento,
   California, after the close of the day's business.
7
        That on the date below, I served the following **DEFENDANTS COUNTY OF**
8  **SACRAMENTO'S AND PAMELA PISANI'S NOTICE OF MOTION AND SPECIAL MOTION**
   **TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16** on all parties in
9  the said action as addressed below by causing a true copy thereof to be served:

10 

| X | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
|---|---|
|   | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
|   | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
|   | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
|   | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

21 *Attorney for Plaintiff*
   Steven Mark Kamp
22 STEVEN KAMP LAW OFFICES
   22 Petrilli Circle
23 Sacramento, CA 95822
   Steve.kamp@comcast.net
24

25      I declare under the penalty of perjury that the foregoing is true and correct. Executed at
   Sacramento, California, on  January 28, 2022.
26

27                                                    *Kilina Tellez*

28
                                                    _____
                                                    Kilina Tellez
   {02577349.DOCX}                    3
   **DEFENDANTS COUNTY OF SACRAMENTO'S AND PAMELA PISANI'S NOTICE OF MOTION AND SPECIAL**
   **MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
Jordan M. McCroskey, SBN 340068
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants
COUNTY OF SACRAMENTO and PAMELA PISANI
*Exempt from Filing Fees Pursuant to Government Code § 6103*



FILED/ENDORSED

JAN 2 8 2022

By: _____ H. PEMELTON
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

MS. PARVIN OLFATI,

　　　　Plaintiffs,

v.

COUNTY OF SACRAMENTO; PAMELA
PASANI; JANE ROE DEFENDANT ONE;
JANE ROE DEFENDANT TWO; JANE
ROE DEFENDANT 3-100, JOHN DOE
DEFENDANTS 1-100,

　　　　Defendants.

_____/

CASE NO. 34-2021-00310164

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
DEFENDANTS' SPECIAL MOTION TO
STRIKE PURSUANT TO CODE OF CIVIL
PROCEDURE SECTION 425.16**

**Date: April 20, 2022**
**Time: 9:00 a.m.**
**Dept.: 54**
**Reservation No.: 2613497**

Complaint Filed: 10/25/21

{02577359.DOCX}　　　　　　　　　　　i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO
STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16

# TABLE OF CONTENTS

I.   **INTRODUCTION** ...................................................................................... 1

II.  **ALLEGATIONS OF COMPLAINT** ...................................................... 1

III. **STATEMENT OF THE FACTS** ............................................................. 2

IV. **ARGUMENT** ......................................................................................... 3

    A.    ARISING FROM PROTECTED ACTIVITY (DEFENDANTS'
        BURDEN) ....................................................................................... 4

        1.    Protected Activity ............................................................... 4

               a.    Part One: Public Issue ............................................. 5

               b.    Part Two: "In connection with" ............................. 6

        2.    "Arises From" ..................................................................... 8

               a.    Invasion of Privacy: Intrusion into private affairs .............. 8

               b.    Intentional Infliction of Emotional Distress ............. 9

               c.    Trespass ..................................................................... 9

               d.    Negligence ................................................................. 9

               e.    Invasion of Privacy: False Light ............................. 10

               f.    Defamation ............................................................... 10

               g.    Negligent Training, Discipline, and Supervision ............... 10

               h.    Respondeat Superior ................................................. 11

    B.    PROBABILITY OF PREVAILING ON THE MERITS
        (PLAINTIFF'S BURDEN) ........................................................... 11

        1.    Invasion of Privacy: Intrusion into private affairs ........... 12

        2.    Intentional Infliction of Emotional Distress ..................... 12

        3.    Trespass ............................................................................. 13

        4.    Negligence ......................................................................... 14

        5.    Invasion of Privacy: False Light ...................................... 14

        6.    Defamation ........................................................................ 14

        7.    Negligent Training, Discipline, and Supervision .............. 15

        8.    Respondeat Superior ......................................................... 15

        9.    Immunity ........................................................................... 15

V. **CONCLUSION** ...................................................................................... 15

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

1

# TABLE OF AUTHORITIES

2

3    Cases

4

5    *Baral,*

6       *supra*, 1 Cal.5th ........................................................................................... 11

7    *City of Cotati v. Cashman,*

8       (2002) 29 Cal.4th 69 ...................................................................................... 4

9    *Club Members v. Sierra Club,*

10       (2008) 45 Cal.4th 309 ..................................................................................... 3

11    *(Cobb v. City of Stockt,*

12       *on* (2011) 192 Cal.App.4th 6 ................................................................. 12, 13

13    *Cross v. Cooper,*

14       (2011) 197 Cal.App.4th 357 ..................................................................... 5, 7

15    *Cuff v. Grossmont Union High School Dist.,*

16       (2013) 221 Cal.App.4th 582 ........................................................................ 11

17    *Eastburn v. Regional Fire Protection Authority,*

18       (2003) 31 Cal.4th 1175 ......................................................................... 11, 15

19    *Eisenberg v. Alameda Newspapers, Inc.,*

20       (1999) 74 Cal.App.4th 1366, fn. 13 ............................................................ 14

21    *Equilon Enterprises, LLC v. Consumer Cause, Inc.,*

22       (2000) 102 Cal.Rptr.2d 371 .......................................................................... 5

23    *Evans v. Unkow,*

24       (1995) 38 Cal.App.4th 1490 ........................................................................ 11

25    *FilmOn.com Inc. v. DoubleVerify Inc.,*

26       (2019) 7 Cal.5th 133 (*FilmOn*) .......................................................... 4, 5, 6, 7

27    *Fremont Reorganizing Corp. v. Faigin,*

28       (2011) 198 Cal.App.4th 1153 ........................................................................ 3

    *Gilbert v. Sykes,*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

1    (2007) 147 Cal.App.4th 13 .............................................................................. 11, 14

2  *Governor Gray Davis Com. v. American Taxpayers Alliance,*

3    (2002) 102 Cal.App.4th 449 ....................................................................................... 4

4  *Guarino v. County of Siskiyou,*

5    (2018) 21 Cal.App.5th 1170 ....................................................................................... 3

6  *Hawran v. Hixson,*

7    (2012) 209 Cal.App.4th 256 ...................................................................................... 15

8  *Healthsmart Pacific, Inc. v. Kabateck,*

9    (2016) 7 Cal.App.5th 416 ....................................................................................... 5, 6

10  *Hernandez v. Hillsides, Inc.,*

11    (2009) 47 Cal.4th 272 ............................................................................................. 12

12  *Hughes v. Pair,*

13    (2009) 46 Cal.4th 1035 .................................................................................. 9, 12, 13

14  *Jackson v. Mayweather,*

15    (2017) 10 Cal.App.5th 1240 ..................................................................................... 10

16  *Ladd v. County of San Mateo,*

17    (1996) 12 Cal.4th 913 ............................................................................................... 9

18  *Laker v. Bd. of Trustees of California State Univ.,*

19    (2019) 32 Cal.App.5th 745 ..................................................................................... 3, 4

20  *McBride v. Smith,*

21    (2018) 18 Cal.App.5th 1160 ...................................................................................... 9

22  *Navellier v. Sletten,*

23    (2002) 29 Cal.4th 82 ................................................................................................. 4

24  *Park v. Bd. Of Trustees of California State University,*

25    (2017) 2 Cal.5th 1057 ............................................................................................... 4

26  *People ex rel. Fire Ins. Exchange v. Anapol,*

27    (2012) 211 Cal.App.4th 809 ....................................................................................... 4

28  *People v. Rivera,*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

(2007) 41 Cal.4th 304 .................................................................................................... 13, 14

*Phillips v. TLC Plumbing, Inc.,*

(2009) 172 Cal.App.4th 1133 ................................................................................................ 10

*Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO,*

(2003) 105 Cal.App.4th 913 .................................................................................................... 5

*Shulman v. Group W Productions, Inc.,*

(1998) 18 Cal.4th 200 ........................................................................................................ 9, 12

*Soukup v. Law Offices of Herbert Hafif,*

(2006) 39 Cal.4th 260, fn. 3 .................................................................................................... 8

*Sweetwater Union High School Dist. v. Gilbane Building Co.,*

(2019) 6 Cal.5th 931 ............................................................................................................... 11

*Taus v. Loftus,*

(2007) 40 Cal.4th 683 .............................................................................................................. 3

*Vargas v. City of Salinas,*

(2009) 46 Cal.4th 1 .................................................................................................................. 4

*Wilbanks v. Wolk,*

(2004) 121 Cal.App.4th 883 .................................................................................................... 7

*Wilson v. Cable News Network, Inc.,*

(2019), 7 Cal.5th 871 ...................................................................................................... 6, 8, 9

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

I.

## INTRODUCTION

Plaintiff's claims are based on misconceptions about the actions of the Defendants. She believes the County Community Support Team (CST) and Defendant Senior Mental Health Counselor (SMHC) PAMELA PISANI were participating in a conspiracy against her, when really, they only ever wanted to offer help and support. The County CST was organized under the Mental Health Services Act and uses SMHCs like PISANI to offer services and supports for mental health to the community. They were concerned for Plaintiff's well-being, so they went to her home to offer such help. When she refused, they left. Unfortunately, Plaintiff interpreted these acts as malicious against her, and wrote a letter complaining of PISANI's actions surrounding the event: walking onto Plaintiff's property, communicating with Plaintiff, then reporting that interaction to CST.

Plaintiff now seeks to hold Defendants COUNTY OF SACRAMENTO and PISANI civilly liable for their offer to help her. Plaintiff's claims must fail at the pleading stage, as all the claims asserted against the moving Defendants are subject to motion to strike pursuant to Code of Civil Procedure § 425.16. Specifically, the instances of speech of PISANI, in relating to the public issues of mental health and government action, are protected under subdivision (e)(4), the catch-all provision of the anti-SLAPP statute. (Code Civ. Proc., § 425.16.) Walking onto the property, as facilitation of free speech, is also protected by this subdivision. Furthermore, Plaintiff cannot establish a probability of prevailing on the merits of any of her claims against the moving Defendants.

II.

## ALLEGATIONS OF COMPLAINT

Plaintiff alleges eight causes of action. One (respondeat superior) is not a proper cause of action. The remaining seven are based on protected activity. As such, all causes of actions subject to being stricken and the entire action should be dismissed.

Plaintiff alleges six causes of action against PISANI: trespass and invasion of privacy based on PISANI's act of walking onto her property (Declaration of Jordan M. McCroskey, Exhibit I, Complaint ("Compl."), ¶¶ 43-57, 77-86); IIED based on PISANI's act of communicating with her (*Id.* at ¶¶ 58-76); false light and defamation based on PISANI's act of communicating with the County after (*Id.* at ¶¶ 97-

143); and general negligence based on these actions. (*Id.* at ¶¶ 87-96.) But each of these are protected activities. She walked onto Plaintiff's property to facilitate speech, then exercised that right when she communicated to both Plaintiff and later the County.

Plaintiff also alleges these six causes of action based on the actions of Does One and Two. But the court is not obligated to accept baseless allegations, especially in the face of contrary evidence. Here, the County declares it did not and does not employ anyone fitting Plaintiff's descriptions of Does One and Two. (Declaration of Jennifer Reiman, ¶ 8.) It did not have any employees or agents, other than PISANI, attempt to assist Plaintiff or otherwise collect information about her in the manner described. (*Ibid.*) So, these six causes of action do not arise from acts of Does One and Two—they all arise from the protected activity of PISANI.

Finally, Plaintiff's seventh and eighth causes of action are negligent hiring and "respondeat superior"[1] alleged against the County. (Compl. ¶¶ 144-161.) Both are based on the alleged wrongs of PISANI, as described in the other causes of action. So, they arise from the protected activity of PISANI.

Given the above, each of Plaintiff's causes of action arise from the protected activity of PISANI. So, Defendants COUNTY OF SACRAMENTO and PISANI request this entire action be dismissed.

### III.

### STATEMENT OF THE FACTS

On December 10, 2020, Jennifer Reiman, the Mental Health Program Coordinator for Sacramento County, received an email from a County SMHC. (Declaration of Jennifer Reiman ("Reiman Decl."), ¶ 4, Exhibit A, String of CST Emails Pre-Visit.) The email included a letter written by Plaintiff to the County, and other government representatives and agencies, complaining about a conspiracy against her. (Decl. Reiman, ¶ 5, Exhibit B, Plaintiff's 11/9/20 Letter.)

Because of concerns for Plaintiff's mental health, Ms. Reiman asked Defendant Pamela Pisani, a SMHC with the CST, to help Plaintiff. (Decl. Reiman, ¶ 8, Exhibit A; Declaration of Pamela Pisani ("Pisani Decl."), ¶ 3, Exhibit A.) PISANI read the letter and considered how best to provide help. (Decl. Pisani, ¶ 4, Exhibit A.) She gathered more information, weighed her options, and decided to pay Plaintiff a visit on December 14, 2020, at around 4:33 p.m. (*Id* at ¶ 4, Exhibit A.) But Plaintiff was skeptical of PISANI from the outset and became outright angry when she learned PISANI was

---

[1] As discussed below, respondeat superior is not a proper cause of action.

{02577359.DOCX}                                                          2

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

1  employed by the County. (Decl. Pisani, ¶ 5, Exhibit D.)  She cursed at PISANI and asked her to leave,

2  which she did.  (*Ibid.*)  PISANI called her supervisor and wrote out the details of her encounter in a post-

3  incident report she provided to the CST shortly after the visit.  (*Ibid.*)

4  Plaintiff then wrote a letter complaining about the visit and tying it to the larger conspiracy

5  mentioned in her original letter.  (Decl. Reiman, ¶¶ 12-13, Exhibit E, Plaintiff's 12/18/20 Letter, and

6  Exhibit F, Ms. Reiman's 12/28/20 Email to Quality Management.)  Ms. Reiman attempted to contact

7  Plaintiff to rectify the situation, but never sent any employees or agents to secretly spy on Plaintiff while

8  shopping or eating, as Plaintiff alleges.  (Reiman Decl., ¶ 14, Exhibit G, String of Count Emails Post-

9  Visit, Exhibit H, Ms. Reiman's 1/8/21 Email to Plaintiff's Counsel.)

10                                             **III.**

11                                        **ARGUMENT**

12  Commonly referred to as the "Anti-SLAPP statute," Section 425.16 "provide[s] for the early

13  dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of

14  freedom of speech and petition for the redress of grievances." (*Club Members v. Sierra Club* (2008) 45

15  Cal.4th 309, 312.) The Legislature has therefore "declared that the statute must be 'construed broadly.'"

16  (*Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1165.)

17  Code of Civil Procedure § 425.16(b)(1) states:

18      A cause of action against a person arising from any act of that person in furtherance of the
19      person's right of petition or free speech under the United States Constitution or the California
        Constitution in connection with a public issue shall be subject to a special motion to strike,
20      unless the court determines that the plaintiff has established that there is a probability that the
21      plaintiff will prevail on the claim.

22  (*See also Guarino v. County of Siskiyou* (2018) 21 Cal.App.5th 1170, 1179.)

23  In considering the anti-SLAPP statute, courts are required to engage in a two-step process. "First,

24  the court decides whether the defendant has made a threshold showing that the challenged cause of

25  action is one arising from protected activity . . . If the court finds such a showing has been made, it then

26  determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Taus v.*

27  *Loftus* (2007) 40 Cal.4th 683, 712, emphasis added; *see also Laker v. Bd. of Trustees of California State*

28  *Univ.* (2019) 32 Cal.App.5th 745, 760.) The defendant has the burden on the first issue to show that the

---

{02577359.DOCX}                                    3

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO
STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

1  claim arises from protected activity, and the plaintiff has the burden on the second issue of affirmatively

2  demonstrating a probability of prevailing on the claim. (*Governor Gray Davis Com. v. American*

3  *Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456.) The California Supreme Court has clarified that

4  "arising from" means "based on." (*Laker, supra*, 32 Cal.App.5th at 760, citing to *City of Cotati v.*

5  *Cashman* (2002) 29 Cal.4th 69, 78.) In ruling on a motion brought under the anti-SLAPP statute, the

6  court "shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which

7  the liability or defense is based." (Code Civ. Proc. § 425.16(b)(2).)

8      "[T]he focus [of an anti-SLAPP motion] is on determining what 'the defendant's activity [is] that

9  gives rise to his or her asserted liability – and whether that activity constitutes protected speech or

10 petitioning.'" (*Park v. Bd. Of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063,

11 quoting *Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.) The Anti-SLAPP statute applies to any claim.

12 (*See People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 823 ("There is simply no

13 authority for creating a categorical exception [from the Anti-SLAPP law] for any particular type of

14 claim…").)

15      "[T]he statutory remedy afforded by section 425.16 extends to statements and writings of

16 governmental entities and public officials on matters of public interest and concern that would fall

17 within the scope of the statute if such statements were made by a private individual or entity." (*Vargas*

18 *v. City of Salinas* (2009) 46 Cal.4th 1, 17.)

19  **A.   ARISING FROM PROTECTED ACTIVITY (DEFENDANTS' BURDEN)**

20      **1.   Protected Activity**

21      The anti-SLAPP statute defines the "activity qualifying for protection" in subdivisions (e)(1)

22 through (4). This motion will focus on section (e)(4).

23      Subdivision (e)(4) protects "[a]ny conduct in furtherance of the exercise of [free speech] in

24 connection with a public issue or issue of public interest." This "catch-all" provision is "meant to round

25 out the statutory safeguards for constitutionally protected expression." (*FilmOn.com Inc. v.*

26 *DoubleVerify Inc.* (2019) 7 Cal.5th 133, 144 (*FilmOn*).) It "proves both broader in scope than the other

27 subdivisions, and less firmly anchored to any particular context." (*Id.* at p. 144-145.)

28      Subdivision (e)(4) calls for a two-part analysis. (*FilmOn, supra*, 7 Cal.5th at p. 149.) "First, we

{02577359.DOCX}                                          4

1   ask what 'public issue or issue of public interest' the speech in question implicates—a question we

2   answer by looking to the content of the speech." (*Id.* at p. 149-150 citing § 425.16, subd. (e)(4).)

3   "Second, we ask what functional relationship exists between the speech and the public conversation

4   about some matter of public interest." (*Id.* at p. 150.)

### a. Part One: Public Issue

6   "Our courts have ably distilled the characteristics of 'a public issue or an issue of public

7   interest.'" (*FilmOn, supra,* 7 Cal.5th at p. 149.) "[J]udges and attorneys will, or should, know a public

8   concern when they see it." (*Healthsmart Pacific, Inc. v. Kabateck* (2016) 7 Cal.App.5th 416, 428.)

9   *Rivero*, cited with approval in *FilmOn*, held that public issues concern either: (1) "a person or

10  entity in the public eye"; (2) "conduct that could directly affect a large number of people beyond the

11  direct participants"; or (3) "a topic of widespread, public interest." (*Rivero v. American Federation of

12  State, County, and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924.)

13  When PISANI interacted with Plaintiff, she provided her business card, which identified her as a

14  Senior Mental Health Counselor with the Community Support Team of the County Behavioral Health

15  Department. (Compl. ¶¶ 11, 25; Decl. Pisani, ¶ 5, Exhibit D.)  PISANI stated that she was there as "part

16  of an outreach team to provide resources and supports to individuals in the community" in response to

17  "a complaint that [Plaintiff] wrote to the Sacramento County Sheriff's Department." (Decl. Pisani, ¶ 5,

18  Exhibit D.)  This content implicates two public issues: 1) preventing the negative impact of poor mental

19  health in the community and 2) the government's role in addressing that public issue.

20  Mental health is a topic of widespread, public interest. If mental health is ignored, it destroys

21  individuals and communities. Thus, it is a public issue because of this negative impact on individuals

22  and society. (See *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 375 [preventing child sex abuse is an

23  obvious public issue because of the negative mental and physical impact it has on children in society].)

24  These negative impacts were of such concern that the California legislature enacted the Mental Health

25  Services Act, which led to the formation of CST and, other County agencies. (Decl. Reiman, ¶ 7.)  This

26  makes it an "indisputable public interest" with "significance."  (See *Equilon Enterprises, LLC v.*

27  *Consumer Cause, Inc.* (2000) 102 Cal.Rptr.2d 371, 376.)

28  Further, County action is a public issue.  The County is by nature an entity in the public eye.

PISANI's statements concern the services and supports offered by the County to the entire community, thus affecting a large number of people beyond the direct participants. (Decl. Reiman, ¶ 7; Decl. Pisani, ¶ 5, Exhibit D.) Her statements also concern a topic of widespread interest. The County offers these services because the public voted representatives into office who voted to enact the MHSA. Every member of the public is interested as a voting and/or affected member of the public.

Finally, "members of the public, as consumers of medical services, have an interest in being informed of issues concerning particular doctors and healthcare facilities." (*Healthsmart Pacific, Inc. v. Kabateck* (2016) 7 Cal.App.5th 416, 429.) Medical services includes mental health prevention and treatment services, like the kind being offered by PISANI, a trained mental health professional. (Decl. Reiman, ¶ 7; Decl. Pisani, ¶ 5, Exhibit D.) And these services are offered to the County/community at large, who make up the consumers. (Decl. Reiman, ¶ 7.) Thus, the public has an interest in being informed of issues concerning the County and PISANI, a particular facility and particular professional offering these services.

### b.    Part Two: "In connection with"

Subdivision (e)(4), unlike (e)(1) – (3), does not have "contextual references to help courts discern the type of conduct and speech to protect." (*Wilson v. Cable News Network, Inc.* (2019), 7 Cal.5th 871, 900.)   But those subdivisions provide a common thread: protection of speech that "contributes to the public discussion or resolution of public issues—a thread that also ties these provisions together with the statute's purpose of furthering 'continued participation in matters of public significance." (*Ibid.* citing § 425.16, subd. (a).)  So, under (e)(4), Defendants "must show not only that its speech referred to an issue of public interest, but also that [PISANI's] speech contributed to public discussion or resolution of the issue. (*Ibid.* citing *FilmOn, supra,* 7 Cal.5th at p. 150-152.)  It did both.

PISANI's speech to Plaintiff contributed to resolution of the mental health issue.  PISANI, the speaker, was there on behalf of a County agency specifically purposed to help ease the negative impacts of mental health. (Decl. Reiman, ¶ 7.) She also works as a mental health counselor, a profession geared towards helping ease the negative impacts of mental health. (Decl. Pisani, ¶ 1.) The audience was someone identified by the CST as someone who might be suffering from mental health issues, who might benefit from CST services. (Decl. Reiman, ¶ 5.) Finally, PISANI's purpose was to offer free and

{02577359.DOCX}                                            6

1  voluntary help regarding Plaintiff's mental health and wellness.  (Decl. Pisani, ¶ 5, Exhibit D.) This
2  context shows the direct link between our public issue and PISANI's speech to Plaintiff. Thus, it is
3  protected under (e)(4).

4  The connection between speech and public issue is similar to that found in *Cross*, cited by
5  *FilmOn* as providing an example of sufficient connection. (See *FilmOn, supra*, 7 Cal.5th at p. 151.) In
6  *Cross*, the speaker was someone with information potentially useful for remedying the public issue
7  implicated. The audience was one who could potentially benefit from that information. And the purpose
8  was to provide that information so that it could be used to remedy the public issue.  (*Cross, supra*, 197
9  Cal.App.4th at p. 382.)  That is the same pattern of context here.

10  PISANI's speech to Plaintiff also contributed to the public discussion regarding the services the
11  County is currently offering to the public regarding mental health. The speaker again was PISANI, a
12  representative of the County and someone with knowledge of what the County offers to the public.
13  (Decl. Pisani, ¶¶ 1,5, Exhibit D.)  The audience, a County resident, was someone interested in and
14  affected by this information. And the purpose was to communicate information about what the County
15  offered to an interested party. (Decl. Reiman, ¶ 7; Decl. Pisani, ¶ 5, Exhibit D.) So, the information
16  contributed to the public issue by providing an interested party with interesting information on the
17  public issue. (See *Cross, supra*, 197 Cal.App.4th at p. 382.) This information could be used to debate the
18  efficacy of those services, and whether anything needs to be done by vote to change the status quo.  This
19  information was "in and of [itself] a topic of widespread public interest."  (See *Wilbanks v. Wolk* (2004)
20  121 Cal.App.4th 883, 888.)

21  PISANI's verbal and written communications to the County reporting the interaction with
22  Plaintiff contributed to resolution of the mental health issue. The speaker was the same, PISANI, a
23  County employee and mental health professional.  (Decl. Pisani, ¶ 1, 5, Exhibit E.)  Her audience in this
24  instance was the County CST, her employer and an agency designed to help the community with mental
25  health issues.  (Decl. Reiman, ¶ 7, 11; Decl. Reiman, ¶ 5, Exhibit D.) And her inherent purpose this time
26  was to inform the County about the interaction so that it could better help Plaintiff and the community
27  with their mental health moving forward.

28  As such, PISANI's interactions with Plaintiff and the County constitute protected activity under

1  subdivision (e)(4).

2      Subdivision (e)(4) protects, not just speech, but "*[a]ny conduct in furtherance of* [free speech] in
3  connection with a public issue or issue of public interest." (Civ. Code 425.16, subd. (e)(4).)  This
4  extends "to at least certain conduct that, though itself no expressive elements, facilitates expression."
5  (*Wilson, supra,* 7 Cal.5th at p. 893.)  Here,  PISANI's acts of walking onto Plaintiff's property and
6  knocking facilitated her expression of free speech. (Decl. Reiman, ¶ 9; Decl. Pisani ¶ 4.)  Thus, those
7  acts are also protected under (e)(4).

8      Plaintiff also alleged actions by Does One and Two. While, at the second step, "a court must
9  accept as true the *evidence* favorable to plaintiff" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39
10 Cal.4th 260, 269, fn. 3 (emphasis added.), the California Supreme Court "has never insisted that the
11 complaint's allegations be given similar credence in the face of contrary evidence as the first step."
12 (*Wilson, supra,* 7 Cal.5th at p. 887.)  Here, contrary evidence shows that Does One and Two do not exist
13 as agents or employees of the County. (Decl. Reiman, ¶ 8.)  Plaintiff does not have nor will she be able
14 to find evidence to support the existence of Does One and Two as employees of the County. (See
15 Compl.; Decl. Reiman, ¶ 8.) Thus, we ignore these alleged actions in our analysis. To do otherwise
16 would be "conclusive deference . . . difficult to reconcile with the statutory admonition that courts must
17 look beyond the pleadings to consider any party evidentiary submissions as well." (*Wilson, supra,* 7
18 Cal.5th at p. 887.)

19             **2.     "Arises From"**

20     "A claim may be struck only if the speech or petitioning activity itself is the wrong complained
21 of, and not just evidence of liability or a step leading to some different act for which liability is
22 asserted." (*Wilson, supra,* 7 Cal.5th at p. 884.)  "To determine whether a claim arises from protected
23 activity, courts must consider the elements of the challenged claim and what actions by the defendant
24 supply those elements and consequently form the basis for liability.'" (*Ibid.*)  We "examine[] the
25 *conduct* of defendants without relying on whatever improper motive the plaintiff alleged." (*Ibid.*)

26     Here, each cause of action arises from protected activity.

27             **a.     Invasion of Privacy: Intrusion into private affairs**

28     Plaintiff's first cause of action is for "Invasion of Privacy (Intrusion into Private Affairs)."

(Compl. ¶¶ 43-57.)  Under this cause of action, "the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy." (*Ibid.*)  It "encompasses unconsented-to *physical intrusion...*" (*Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 230, internal citation omitted.)

Here, Plaintiff claims that PISANI "intruded into Plaintiff's privacy and private affairs inside the curtilage of her residence property." (Compl., ¶ 45.)  Thus, Plaintiff's first cause of action arises from PISANI's act of walking onto Plaintiff's property, which facilitated her protected activity.

### b.    Intentional Infliction of Emotional Distress

Plaintiff's second cause of action is for "Intentional Infliction of Emotional Distress." (Compl. ¶¶ 58-76.)  This requires *"extreme and outrageous conduct* by the defendant..." (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.)  Conduct that "exceed[s] all bounds of that usually tolerated in a civilized community." (*Id.* at p. 1050-1051.)

Here, Plaintiff claims that, *after PISANI's visit*, she was "extremely frightened of what would happen to her next" and "became extremely scared [of] anyone from the County of Sacramento, including but not limited to the County Sheriff."  Thus, it was the visit and communications that caused the alleged distress.  As such, this cause of action arises from PISANI's acts of walking Plaintiff's property, knocking, and communicating with Plaintiff before leaving, all protected activities.

### c.    Trespass

Plaintiff's third cause of action is for "Trespass." (Compl., ¶¶ 77-86.)  Trespass requires a defendant either enter or cause something to enter plaintiff's property. (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1174.)    Here, Plaintiff claims that PISANI "entered Plaintiff's residence property on December 14, 2020, at about 4:33 p.m." (Compl., ¶ 78.)  Thus, Plaintiff's third cause of action arises from PISANI's act of walking onto Plaintiff's property, which facilitated protected activity.

### d.    Negligence

Plaintiff's fourth cause of action is for "Negligence." (Compl., ¶¶ 87-96.)  Negligence requires a defendant breach a duty owed to plaintiff. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917.)  Civil Code section 1714 states that everyone owes everyone else a general duty of ordinary care. Thus, a cause of action can be based on a variety of actions, so long as they are done without ordinary care.

1   Here, Plaintiff pleads that, "in committing each of [their] acts alleged in this Cause of Action,

2   including the acts alleged through incorporation by reference, [defendants] breached this duty of

3   reasonable care regarding Plaintiff." (Compl., ¶¶ 88, 89, 91, 92, 94, 95.) Given the "incorporation by

4   reference" we can look to preceding paragraphs "1-42" for the acts upon which Plaintiff bases this

5   negligence action. (See Compl., ¶ 87.)

6   The allegations against PISANI are based on her walking onto Plaintiff's property, knocking,

7   and communicating with Plaintiff.   She faults PISANI for communicating information about that

8   interaction to the County and/or other County employees. Thus, Plaintiff's fourth cause of action for

9   negligence arises from these acts, which are all protected.

### e.   Invasion of Privacy: False Light

11   Plaintiff's fifth cause of action is for "False Light Invasion of Privacy." (Compl., ¶¶ 97-118.)

12   "'False light' is a species of invasion of privacy, based on *publicity*…" (*Jackson v. Mayweather* (2017)

13   10 Cal.App.5th 1240, 1264.) It focuses on a defendant's acts in publishing information to others. (*Ibid.*)

14   Here, Plaintiff alleges that "Defendant Pisani communicated to one or more persons other than

15   Plaintiff content, information, or material that showed Plaintiff is a false light…" (Compl., ¶ 98.) Thus,

16   Plaintiff's cause of action for false light as against PISANI arises from her communications to the

17   County/County employees about her interaction with Plaintiff, which are protected communications.

### f.   Defamation

19   Plaintiff's sixth cause of action is for "Defamation." (Compl., ¶¶ 119-143.)  Civil Code Section

20   44 states that "defamation is effected by either . . . Libel . . . [or] Slander." As with "false light" these

21   both require a defendant publish information about Plaintiff. (See Civ. Code § 45, 46.) Here plaintiff

22   alleges that them communications by PISANI caused her harm.  Those communications are protected

23   activity.

### g.   Negligent Training, Discipline, and Supervision

25   Plaintiff's seventh cause of action is for "Negligent Training, Discipline, and Supervision,"

26   alleged directly against the County. (Compl., ¶¶ 144-149.) This cause of action requires that an

27   "employee create[] a particular risk or hazard and that [the] particular harm materialize[]." (*Phillips v.*

28   *TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1139.)  Plaintiff asserts that actions of PISANI

1   created a risk of harm to Plaintiff. Thus, Plaintiff's cause of action for negligent hiring, discipline, and

2   supervision arises from the actions of PISANI already discussed above, which are all protected.

3                      **h.      Respondeat Superior**

4           Plaintiff's eighth and final cause of action is for "Respondeat Superior" as defined in

5   Government Code Section 815.2(a) alleged against the County. (Compl., ¶¶ 150-161.) Under this code

6   section, a public entity defendant can "be derivatively liable for the negligent acts or omissions or its

7   employee." (*Cuff v. Grossmont Union High School Dist.* (2013) 221 Cal.App.4th 582, 589.) But, this is

8   not a separate claim against the County. (See *Eastburn v. Regional Fire Protection Authority* (2003) 31

9   Cal.4th 1175, 1183.)   The focus is on the acts or omissions of the public entity's employees—that

10  liability is then imputed to the County, if appropriate. (*Ibid.*)

11          Here, Plaintiff focuses on the acts committed by PISANI. Plaintiff specifically implicates

12  PISANI's actions committed as described under the previous causes of action. (See Compl., ¶ 154.) As

13  such, Plaintiff's cause of action for respondeat superior arise from protected activity.

14          All Plaintiff's causes of action arise from protected activities. So, the burden shifts to Plaintiff.

15      **B.     PROBABILITY OF PREVAILING ON THE MERITS (PLAINTIFF'S BURDEN)**

16          Once defendant makes its required showing, the burden shifts and Plaintiff must then show "a

17  probability [they] will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).) "[P]laintiff must

18  demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie

19  showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."

20  (*Ibid.*) "[P]laintiff must make [this] requisite showing as to each challenged claim that is based on

21  allegations of protected activity." (*Baral, supra,* 1 Cal.5th at 392.)

22          A plaintiff "may not rely solely on its complaint, even if verified; instead, its proof must be made

23  upon competent admissible evidence." (*Sweetwater Union High School Dist. v. Gilbane Building Co.*

24  (2019) 6 Cal.5th 931, 940.) "[D]eclarations that lack foundation or personal knowledge, or that are

25  argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded."

26  (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26.) "Since an averment on information and belief is

27  inadmissible at trial, it cannot establish a probability of prevailing on the claim." (*Evans v. Unkow*

28  (1995) 38 Cal.App.4th 1490, 1490–1491.)

{02577359.DOCX}                                        11

1   Since all of Plaintiff's causes of action are based on allegations of protected activity, we will

2   address each below.

3                    **1.    Invasion of Privacy: Intrusion into private affairs**

4   Plaintiff's first cause of action is for "Invasion of Privacy (Intrusion into Private Affairs)."

5   (Compl. ¶¶ 43-57.)  It "has two elements."  (*Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 285.)

6   "First, the defendant must intentionally intrude into a place, conversation, or matter as to which the

7   plaintiff has a reasonable expectation of privacy."  (*Ibid.*)  "Second, the intrusion must occur in a manner

8   highly offensive to a reasonable person."  (*Ibid.*)  It "encompasses unconsented-to physical intrusion into

9   [a recognized place of privacy]."  (*Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 230.)

10   Plaintiff cannot show a reasonable expectation of privacy.  "'Absent express orders from the

11   person in possession against any possible trespass, there is no rule of private or public conduct which

12   makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and

13   peaceably, at high noon, to walk up the steps and knock on the front door of any [woman's] 'castle' with

14   the honest intent of asking questions of the occupant thereof . . . .'"  (*Cobb v. City of Stockton* (2011)

15   192 Cal.App.4th 65, 72.)  Here, PISANI walked up to Plaintiff's door during the day, and knocked, with

16   the intention of offering support and information in exercise of free speech.  (Decl. Reiman, ¶ 7-8; Decl.

17   Pisani, ¶ 5, Exhibit D.)  If one can knock and inquire, one can certainly knock and exercise free speech.

18   Plaintiff also cannot show PISANI's actions were highly offensive to a reasonable person.

19   PISANI visited Plaintiff to offer support and information.  (Decl. Reiman, ¶ 7-8; Decl. Pisani, ¶ 5,

20   Exhibit D.)  A reasonable person would find this helpful, rather than harmful.

21                    **2.    Intentional Infliction of Emotional Distress**

22   Plaintiff's second cause of action is for "Intentional Infliction of Emotional Distress."  (Compl.,

23   ¶¶ 58-76.)  This cause of action requires "conduct . . . so extreme as to exceed all bounds of that usually

24   tolerated in a civilized community."  (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050–1051.)

25   PISANI's behavior was not, objectively, highly offensive.  As stated above, "there is no rule of

26   private or public conduct which makes it illegal per se . . . for anyone openly and peaceably, at high

27   noon, to walk up the steps and knock on the front door of any [woman's] 'castle' with the honest intent

28   of asking questions of the occupant thereof . . . .'"  (*Cobb, supra,* 192 Cal.App.4th at 72.)  The same

1  analysis applies here. Society has not deemed PISANI's behavior to exceed societal bounds. Her

2  behavior was not highly offensive, so it certainly was not "so extreme as to exceed all bounds of that

3  usually tolerated in a civilized community." (*Hughes, supra,* 46 Cal.4th at 1050-1051.)

4      Finally, Plaintiff will not be able to show the requisite intent.  She will have to demonstrate that,

5  despite working in a position specifically geared towards *helping* the community's mental health,

6  PISANI intentionally or recklessly acted to *harm* Plaintiff's mental health.  (See Decl. Pisani, ¶ 1.)  This

7  is a large burden, one she will be unable to carry.

8          **3.      Trespass**

9      Plaintiff's third cause of action is for "Trespass."  (Compl., ¶¶ 77-86.)  Consent is a defense to

10  trespass.  (*Cobb, supra,* 192 Cal.App.4th at 72.)  "Consensual encounters may . . . take place at the

11  doorway of a home."  (*People v. Rivera* (2007) 41 Cal.4th 304, 309.)  "Absent express orders from the

12  person in possession against any possible trespass, there is no rule of private or public conduct which

13  makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and

14  peaceably, at high noon, to walk up the steps and knock on the front door of any [woman's] 'castle' with

15  the honest intent of asking questions of the occupant thereof..."  (*Ibid.*)  Thus, when PISANI did the

16  same, there was consent, implied by social norms as stated above.

17      Plaintiff does claim that she "did not give permission to Defendant Pisani for any entry by

18  Defendant Pisani on to Plaintiff's residence property."  (Compl., ¶ 79.)  But she does not claim she gave

19  an "express order" not to enter the property.  (*Ibid.*)

20      Further, Plaintiff opened the door and engaged with PISANI, asking about her identity and

21  purpose before asking her to leave.  (Decl. Pisani, ¶ 5, Exhibit D.)  By engaging with PISANI in this

22  way, she impliedly consented to PISANI's presence on her doorstep for the purpose of answering

23  Plaintiff's questions, which PISANI did.

24      Plaintiff may attempt to argue the trespass took place after Plaintiff asked PISANI to leave.

25  Plaintiff claims that she told PISANI to "just F... Off" and shut the door, but soon noticed PISANI still

26  there on her property, so went outside again to ask PISANI to leave.  (Compl., ¶¶ 34-37.)  But this was

27  only "a few minutes later."  (*Id.* at ¶ 35.)  And PISANI was already "walk[ing] down the stairs" when

28  Plaintiff "came back and started talking."  (Decl. Pisani, ¶ 5, Exhibit D.)  PISANI stopped leaving

{02577359.DOCX}                                    13

1   because she "thought [Plaintiff] was attempting to speak with [her]," but again Plaintiff simply "became

2   angry and said, 'get out of here.'" (*Ibid.*) PISANI then resumed leaving the property. (*Ibid.*)

3        **4.    Negligence**

4        Plaintiff's fourth cause of action is for "Negligence."  (Compl., ¶¶ 87-96.) None of PISANI's

5   behavior during this incident can be considered negligent. PISANI used ordinary care when she chose to

6   visit Ms. Olfati at her home.  She reviewed Plaintiff's letter, consulted with Ms. Reiman, weighed her

7   options, and ultimately decided to make the visit. (Decl. Reiman, ¶ 9; Decl. Pisani, ¶ 4, Exhibit A.)  She

8   also used ordinary care when interacting with Plaintiff, never straying from the purpose of her visit and

9   never lashing out in response to Plaintiff's verbal abuse. (Decl. Reiman, ¶ 7; Decl. Pisani, ¶ 5, Exhibit

10   D.) After leaving Plaintiff's home, she used ordinary care when she called and spoke with her supervisor

11   and wrote a report documenting the visit.  (Decl. Reiman, ¶ 7; Decl. Pisani, ¶ 5, Exhibit D.) Those

12   communications stuck to the facts of the incident and were made to help the County CST determine how

13   best to help Plaintiff going forward. (Decl. Reiman, ¶ 7, 11; Decl. Pisani, ¶ 5, Exhibit D.)  At all times,

14   she was acting in accordance with her job duties and the purpose of the CST, offering mental health

15   support and services to the County community.  (Decl. Reiman, ¶ 7; Decl. Pisani, ¶ 4, 5, Exhibit D.)

16        **5.    Invasion of Privacy: False Light**

17        Plaintiff's fifth cause of action is for "False Light Invasion of Privacy."  (Compl., ¶¶ 97-118.)

18   "When a false light claim is coupled with a defamation claim, the false light claim is essentially

19   superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of

20   action." (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1366, 1385, fn. 13, internal

21   citations omitted.)  Thus, our analysis mirrors that stated in the defamation section below.

22        **6.    Defamation**

23        Plaintiff's sixth cause of action is for "Defamation."  (Compl., ¶¶ 119-143.) Factual truth is a

24   complete defense to defamation. (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 28.)

25        Here, PISANI made two communications after and about this interaction with Plaintiff.  (Decl.

26   Reiman, ¶ 11, Exhibit C; Decl. Pisani, ¶ 5, Exhibit D.)  She called and spoke with her supervisor

27   immediately after the incident, then wrote up a post incident report. (*Ibid.*) Both gave brief factual

28   summaries of what occurred. And both reflect the truth. Her reports contain similar facts to those alleged

1  in Plaintiff's complaint, providing a bit more detail, but not deviating in any way substantially.  (Decl.
2  Pisani, ¶ 5, Exhibit D.)

3      Further, the common interest privilege protects these communications.  (Civ. Code § 47, subd.
4  (c); *Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 287.)  These communications were made by parties
5  with a common interest, specifically about that common interest, a professional commitment to the
6  mental health of Plaintiff and the community.  (Decl. Reiman, ¶ 1, 7, 11, Exhibit C; Decl. Pisani, ¶ 5,
7  Exhibit D.)

8      **7.    Negligent Training, Discipline, and Supervision**

9      Plaintiff's seventh cause of action is for "Negligent Training, Discipline, and Supervision"
10  asserted against the County. (Compl. ¶¶ 144-149.)  But negligence cannot be directly asserted against a
11  public entity. (See *Eastburn, supra,* 31 Cal.4th at p. 1183.) So, this claim fails.

12      **8.    Respondeat Superior**

13      Plaintiff cannot show any liability against PISANI.  (See above.) As such, there can be no
14  liability of the County.

15      **9.    Immunity**

16      All the actions taken by PISANI are also protected by discretionary immunity. (Gov. Code, §
17  820.2.)  She had the discretion as to what actions to take and to how to communicate with Plaintiff,
18  which required consideration of several factors. (Decl. Reiman, ¶ 9; Decl. Pisani, ¶ 4, Exhibit A.)  As
19  such, discretionary immunity applies.

20                            **IV.**
21                        **CONCLUSION**
22      Defendants respectfully request this entire action be dismissed.

23  Dated: January 28, 2022              PORTER SCOTT
24                                     A PROFESSIONAL CORPORATION
25                                     By
26
27                                     Carl L. Fessenden
28                                     Jordan M. McCroskey
                                       Attorneys for Defendants

{02577359.DOCX}                15
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

*Olfati v. County of Sacramento et al.*
**Sacramento County Superior Court – Case No. 34-2021-00310164**

### DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

That on the date below, I served the following **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16** on all parties in the said action as addressed below by causing a true copy thereof to be served:

| | |
|---|---|
| X | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
| X | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

*Attorney for Plaintiff*
Steven Mark Kamp
STEVEN KAMP LAW OFFICES
22 Petrilli Circle,
Sacramento, CA 95822
Steve.kamp@comcast.net

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California, on  January 28, 2022.

*Kilina Tellez*

_____
Kilina Tellez

{02577359.DOCX}                                16

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

BY FAX

1 | **PORTER | SCOTT**
A PROFESSIONAL CORPORATION
2 | Carl L. Fessenden, SBN 161494
3 | Jordan M. McCroskey, SBN 340068
350 University Ave., Suite 200
4 | Sacramento, California 95825
TEL: 916.929.1481
5 | FAX: 916.927.3706
6 | Attorneys for Defendants
COUNTY OF SACRAMENTO and PAMELA PISANI
7 | *Exempt from Filing Fees Pursuant to Government Code § 6103*



FILED/ENDORSED

JAN 2 8 2022

By: _____ H. PEMELTON
Deputy Clerk

8

9 | SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

10 | MS. PARVIN OLFATI,                           CASE NO. 34-2021-00310164

11 |      Plaintiffs,                   **DECLARATION OF JENNIFER REIMAN IN**
**SUPPORT OF DEFENDANTS' SPECIAL**
12 | v.                                            **MOTION TO STRIKE PURSUANT TO CODE**
**OF CIVIL PROCEDURE SECTION 425.16**
13 |

14 | COUNTY OF SACRAMENTO; PAMELA
15 | PASANI; JANE ROE DEFENDANT ONE;
JANE ROE DEFENDANT TWO; JANE       Complaint Filed:  10/25/21
16 | ROE DEFENDANT 3-100, JOHN DOE
DEFENDANTS 1-100,
17 |

18 |      Defendants.

19 |                               /

20

21 | I, JENNIFER REIMAN, declare as follows:

22 |      1.  I make this Declaration on my own personal knowledge except to the facts stated on

23 | information and belief. As to such facts, I believe them to be true. If called upon to do so, I could and

24 | would competently testify about the matters asserted herein.

25 |      2.  From December 10, 2020, to October 1, 2021, I was the Mental Health Program

26 | Coordinator and direct supervisor assigned to the Mobile Crisis Support Team (MCST) and the

27 | Community Support Team (CST) Programs.

28 |      3.  The Mobile Crisis Support Team Program is a partnership with Law Enforcement

{02596715.DOCX}                                        1
**DECLARATION OF JENNIFER REIMAN IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE**
**PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

1   Agencies whereby a CIT trained Officer and Senior Mental Health Counselor (SMHC) are partnered to
2   respond to 911 and Law Enforcement Non-emergency Mental Health calls for service.  Upon resolution
3   of a call and/or as a result of Law Enforcement personnel concern for an individual, a referral for follow
4   up services can be requested for continued outreach and support.  It is an MHSA funded program to
5   support a decrease in unnecessary incarceration or hospitalization for individuals experiencing a mental
6   health crisis.

7       4.  On December 10, 2020, at 5:42 p.m., I received an email and follow up phone call from
8   Ms. Jennifer Stewart, a Senior Mental Health Counselor (SMHC) with the Mobile Crisis Support Team
9   (MCST) stationed with the SSD North Division.  The email forwarded a referral from the sergeant of
10  Sacramento POP (problem-oriented policing). This is the type of information we rely upon when
11  deciding what outreach to perform in a particular case.  Attached hereto and included in **Exhibit "A"** is
12  a true and correct copy of the email, as well as a string of other emails relating to this incident, all of
13  which evidence the basis for the decision making in this matter.

14      5.  The referral noted concerns about Plaintiff's well-being.  It included a letter Plaintiff
15  wrote to the County and other agencies with complaints indicative of potential mental health distress.
16  The sergeant felt Plaintiff could potentially benefit from MCST/CST intervention.  Attached hereto as
17  **Exhibit "B"** is a true and correct copy of Plaintiff's letter, dated November 9, 2020. This letter is the
18  type of information we review and rely upon in making decisions about whether a person could possibly
19  benefit from services we offer.

20      6.  After review of this information, and seeing the indications of distress, I determined that
21  Plaintiff might best be served by the Community Support Team (CST).

22      7.  The Community Support Team Program is an MHSA funded early intervention and
23  prevention program designed to respond to all referrals/requests from the community.  It is comprised of
24  Peer Specialist staff members, who can support engagement and resource identification, and Licensed
25  Senior Mental Health Counselors, who provide mental health assessment and linkage to services and
26  supports.  These services are provided over the phone or out in the community, including at residential
27  doorsteps, where we can foster engagement and offer services where people live, work or generally feel
28  most comfortable.  The CST can receive and process referrals from anyone in the community, for

1   anyone in the community.  The CST Program has often received referrals from Law Enforcement
2   personnel (Patrol/Patrol leadership), like the POP sergeant.

3          8. I assigned this referral to Pam Pisani, a SMHC with the CST.  Attached hereto and
4   included in **Exhibit "A"** is a true and correct copy of the email, as well as a string of other emails
5   relating to this incident.   Ms. Pisani was the only person I assigned to work with Plaintiff.  I never sent
6   any County employees to surveil Plaintiff while she was shopping or eating.  I do not recognize the
7   descriptions of Does One and Two as provided by Plaintiff in her complaint.  They do not work for the
8   County CST.

9          9.    After some discussion and review of this referral, Ms. Pisani decided to attempt a "cold
10  knock contact," a visit to Plaintiff at her home, in an attempt to offer CST support and services.
11  Attached hereto and included in **Exhibit "A"** is a true and correct copy of a string emails between Ms.
12  Pisani and myself, discussing the visit.  Such contact is an available option to CST staff members,
13  including SMHCs, should they feel safe attempting such engagement.  It is within their discretion.

14          10. She made this "cold knock contact" on December 14, 2020.

15          11. Upon completion of the contact, she called me and wrote up a description of the event to
16  document her attempt to introduce herself and the CST program.  Attached hereto as **Exhibit "C"** is a
17  true and correct copy of Ms. Pisani's 12/18/20 email, providing me with her report.  Attached hereto as
18  **Exhibit "D"** is a true and correct copy of Ms. Pisani's 12/14/20 post-incident report.

19          12. On 12/18/2020 CST received a FAX from Plaintiff complaining about the visit from Ms.
20  Pisani.  Attached hereto as **Exhibit "E"** is a true and correct copy of that letter.  I then spoke with
21  Quality Management regarding the grievance process, in hopes of gaining their support in addressing
22  Plaintiff's concerns.     But since Plaintiff is not an MHP beneficiary nor a Medi-Cal recipient her
23  complaint did not qualify for the MHP Grievance process.  Thus, it remained in CSTs wheelhouse.

24          13. On December 7, 2020, Rolanda Adams with Quality Management forwarded an email
25  received by the Department Director from Plaintiff regarding the complaint.  I responded with a
26  summary of the issue and how it had been handled thus far.  Attached hereto as **Exhibit "F"** is a true
27  and correct copy of that email.

28          14. In an effort to resolve the issue, I attempted to reach Plaintiff or Steve Kamp, her

1  representation, by email and phone, with no response.  Attached hereto as **Exhibit "G"** is a true and
2  correct copy of the email providing phone numbers for Plaintiff.  Attached hereto as **Exhibit "H"** is a
3  true and correct copy of my email to Ms. Kamp.

4        15.  Other than what is set forth in the declaration in this matter, there are no other documents
5  related to the contact Ms. Pisani made with Plaintiff.

6        I declare under penalty of perjury under the laws of the State of California that the foregoing is
7  true and correct. Executed this 27th day of January 2022, at Sacramento, California.

8
9
10                                                   Jennifer Reiman
                                                      Declarant
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

{02596715.DOCX}                                      4
**DECLARATION OF JENNIFER REIMAN IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE
PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

# EXHIBIT A

# Secure Email Encryption Service

 

Logout

---

## Fw: CST??? [secure]

↩   ↩

PP   **Pisani. Pam <PisaniP@saccounty.net>**
01/03/2022 07:12:49 PM GMT
To: Jordan McCroskey <jmccroskey@porterscott.com>, Freitas. Randall <freitasr@saccounty.net>

These are the emails I responded to. Thank you

Pam Pisani

_____

From: Pisani. Pam
Sent: Monday, December 14, 2020 2:58 PM
To: Reiman. Jennifer
Subject: RE: CST??? [secure]

I will drop by...thank you

Pam

From: Reiman. Jennifer <ReimanJ@saccounty.net>
Sent: Monday, December 14, 2020 2:58 PM
To: Pisani. Pam <PisaniP@saccounty.net>
Subject: Re: CST??? [secure]

Given the info you received, if you feel comfortable I would suggest drop by. If not let's consult

Sent from my iPhone

On Dec 14, 2020, at 2:44 PM, Pisani. Pam <PisaniP@saccounty.net<mailto:PisaniP@saccounty.net>> wrote:

I haven't done anything so far so let me know how you would like to proceed. There is an address on the letter that is attached; I can do a drop by to see if this is the person. Let me know. Thank you.

Pam

From: Reiman. Jennifer <ReimanJ@saccounty.net<mailto:ReimanJ@saccounty.net>>
Sent: Monday, December 14, 2020 2:42 PM
To: Pisani. Pam <PisaniP@saccounty.net<mailto:PisaniP@saccounty.net>>
Subject: RE: CST??? [secure]

If the referral does not come from them directly, it gets really sketchy to share information with them or ask about a particular individual unless you can prove circumstances warrant. I may have needed to think this through and had

Jennifer do a TNP referral that way there is direct line referral process happening? Again, I would be careful sharin
g information about individuals.

We can consult if needed.

Reiman


From: Pisani. Pam <PisaniP@saccounty.net<mailto:PisaniP@saccounty.net>>
Sent: Monday, December 14, 2020 2:37 PM
To: Reiman. Jennifer <ReimanJ@saccounty.net<mailto:ReimanJ@saccounty.net>>
Subject: RE: CST??? [secure]


Reiman


I spoke with Jennifer Stewart regarding this person who has a restraining order against her by a city councilmen. S
he is going to check in with the POP officer to see if there is any additional info. My idea is to check in with SPD an
d/or do a drop by since I do not have a phone number. I wanted to check in with SPD to find out if they have had a
ny contact; let me know your thoughts. Thank you.


Pam


From: Reiman. Jennifer <ReimanJ@saccounty.net<mailto:ReimanJ@saccounty.net>>
Sent: Friday, December 11, 2020 8:29 AM
To: Pisani. Pam <PisaniP@saccounty.net<mailto:PisaniP@saccounty.net>>
Cc: Fuller. Linda <fullerl@saccounty.net<mailto:fullerl@saccounty.net>>
Subject: FW: CST??? [secure]


Hi Pam,


Hoping that you could potentially follow up on this one? Let me know if you would like to brainstorm or talk further
about it Monday. If we can get more information we would need to fill out referral form.  Could not find in AVATAR.

Respectfully,


Jennifer Reiman

Sacramento County Mental Health Program Coordinator

Division of Behavioral Health Services

Mobile Crisis and Community Support Teams

Office: 916-874-6057

Cell: 916-634-5207




From: Stewart. Jennifer <StewartJe@saccounty.net<mailto:StewartJe@saccounty..net>>
Sent: Thursday, December 10, 2020 5:42 PM

To: Reiman. Jennifer <ReimanJ@saccounty.net<mailto:ReimanJ@saccounty.net>>
Cc: Briggs. Ronald (SacSheriff) <rbriggs@SacSheriff.com<mailto:rbriggs@SacSheriff.com>>
Subject: CST??? [secure]


Hi boss,

The sergeant for the POP (Problem Oriented Policing) gave me the attached letter with an inquiry as to how to get
a mental health worker to check in with the letter writer because the complaint is unfounded so they cannot make
a report but have valid concerns for her emotional well-being. The person that she is accusing of stalking her has
a restraining order against her. She lives in Sacramento Police Department jurisdiction and the letter suggests CST
contact might be more effective (identified belief law enforcement is stalking her and colluding against her). Please
advise how you would like me to proceed.


Jennifer Stewart

Senior Mental Health Counselor, LMFT

Sacramento County Mobile Crisis Support Team

(916) 639-0692

# EXHIBIT B



Police report/ Crime Report regarding the theft of my cellphone
from my car in Fair Oaks neighborhood on Saturday November 07, 2020
and being stalked all day by multiple law enforcements and private people/gangstalkers.

Ms. Parvin Olfati 1859 45th Street Sacramento, CA. 95819

November 9, 2020

<u>VIA personal delivery to the City Clerk Box at the City Hall Kiosk and by U.S. First Class Mail [CaSacramentoPd@geologic.com disabled]</u>
The Honorable Daniel Hahn, Chief of Police, City of Sacramento Police Department, 5770 Freeport Boulevard, Sacramento, CA 95822

Cc on November 9, 2020 via e mail to <u>CaSacramentoCountySD@geologic.com</u> and U.S. Mail to The Honorable Scott Jones, Sheriff, County of Sacramento Sheriff's
Department, 701 "G" Street, Sacramento, California 95814

CC via Personal Delivery on November 9, 2020 to The Honorable Mayor Darrell Steinberg, City Clerk's Office, City Hall 5th floor, Sacramento, CA 95814
The Honorable Eric Guerra, City Council Member 6th district, City Clerk's Office, City Hall 5th floor, Sacramento, CA 95814
The Honorable Xavier Becerra, Attorney General, California Department of Justice, 1300 "I" Street, Sacramento, CA 95814 (ATTN: Public Inquiry Unit)

Victim : Me (Ms. Parvin Olfati),whose cellphone was stolen as she was being stalked around the clock 24/7 around the City and the County.

Crime: cellphone theft and related suspicious activities and criminal stalking of me (Parvin Olfati)

CRIMINAL(S):  Although I do not know the name of these criminals, but I am sure that this cries against me has occurred under the direction and supervision of Steve
Maviglio who always wants to destroy the evidences and proof of his crime against me. On May09, 2020 he managed to orchestrate the ambush of me and police
brutality to gain access to my house and documents, computer, phone and camera,  and now after another one of his well orchestrate and well funded crime against me o
October 11, 2020 was exposed, he wanted to get access to my phone and documents that exposed him taking a video and pictures of me to be used against me in his
spin doctor style and mob fashion distorting the truth and fabricate fraudulent story, A police report was filed regarding October 11, 2020 incident and his outmost
violent abuse of power against me that has been one of many of his abuses that I have been suffering since 2010 and has not stopped.  This crime happened in Fair Oaks
and there was multiple gangstalkers and suspect animals shelter.  Evidence stealing is always one of the last stage of crime against me.  This crime against me serve
multiple purposes, first the destroy the evidence and proofs of their crime and then accuse me of imaging and the crime that they had made me a victim to.
In addition to the almost thousand video footages and pictures, there were hundreds of text messages that I have been receiving from multiple political campaign and
my response to them that I was begging them not to send me any text because I was terrified of Mr. Maviglio's retaliation including but not limited to subjecting me to
chemical, bio chemical and toxic gas, fume and other poisons.  I reasonably believe some of these political texts were sent under direction of Mr. Maviglio and his
friends and enablers to set me up in spin doctors and mob fashion for more retaliation , abuse  and torture.

On Saturday, November 7, 2020, at some time after 5:00 p.m., my cellphone (LG G7 ThinQ Silver) was stolen from the car I was driving. The theft occurred as I was
driving from  Fair Oaks back to 45th Street in Sacramento.
Saturday November 07, 2020 was one of  many very violent and toxic day of my life in 2020,  I was stalked from early morning and the stalking did not stop until my
cell phone was stolen. In the afternoon, my cellphone was acting very weird and I was having hard time to make a call. This is always a pre text to the upcoming theft
of my cellphone. The stalking continued to Fair Oaks and back home while my house was also broken into and my video footages were deleted remotely.  There was a
well orchestrated and well funded victimizing me on Saturday November 07, 2020 that has not stopped. Again, this violent theft and stalking and exposing me to more
chemical and toxic were all after the latest visit by Ms. Schmidt to Barbara Andres and Ceceil taylor at 1871 45th street.

I reasonably believe the motive for the cellphone theft was to gain access to the over one thousand photos and video of suspicious and criminal activities, crime against
me, multiple gangstalkers, suspicious cars and drivers who stalk me around the town and many evidences of multiple crimes against me, my animals and my house.
This is in line with the pattern and practice of Mr. Thiella, his friends and enablers including but not limited to Steve Maviglio and his criminal puppets and
gangstalkers to steal the evidences of the crimes they had committed against me. As you know they have already stolen, most of my documents and evidence of the
crimes against me including the medical records of mine and my dog Sasha (his X ray was stolen and replaced with fraudulent one.  They Have also stolen the
multiple CD contained my deposition taken by Deputy attorney general Glenda Reager. They also  I have stored on the cellphone. I reasonably believe that these
persons include Mr. Steven Maviglio of 1901 45th Street (Sacramento, California 95819), who was shown my cellphone by City of Sacramento Police Department
Officer Maryna Stanionis on May 9, 2020, when she took my cellphone to a meeting with Mr. Maviglio where she likely displayed its' contents to him – as part of the
false arrest of me that morning by Officer Stanionis and Officer Jared Robinet, one of the two officers who fired the bullets that killed Stephon Clark. I reasonably
believe that Mr. Maviglio is angry that the District Attorney dismissed the one and only charge – "resisting arrest" – for insufficient Evidence, meaning that all of
perjury and related criminal activity by Mr. Maviglio and his partner in perjury, 1870 45th Street resident Barb Andres, was for nothing…and making Mr. Maviglio and
Ms. Andres both lisable for intentionally communicating fal se information to the City Police.

<u>Signed by the Targeted Victim of Mr. John Anthony Thiella since 1994 who also managed to make me a targeted victim of Sacramento Polcie department since 2003,
the Targeted Victim of Steven Maviglio since 2010, the Victim of Jonna Ward "VIP", and the VIP client roster (inclding local state and federal law enforcement
agencies and intelligence agencies includng Sacramento Polcie Department and their Impact Team,  healthcare providers, hospitals,  major insurance companies,
security alarm companies,  banks, othr private companies includng but not limited to Tyco, Simplex/Grinnell, Johnson Controls, and the Number one Johnson Controls
criminal employee Cecil Taylor,  who has been extremely lethal to my health and to the security and safety of me, my animals, and my property.</u>

Thank You,

Ms. Parvin Olfati

1

# EXHIBIT C

| | |
|---|---|
| **From:** | Pisani, Pam |
| **To:** | Reiman, Jennifer |
| **Subject:** | [secure] |
| **Date:** | Friday, December 18, 2020 4:41:19 PM |
| **Attachments:** | Olfati, Parvin 121420.docx |

# EXHIBIT D

12/14/2020

In response to an email that I received from my supervisor and discussed writer dropped by the address on the email to find out if the individual would be interested in resources or supports. Writer knocked and waited a few minutes, no answer, and knocked again. A woman came out the front door and asked "who are you? Why are you here? Writer introduced myself and gave her my business card; writer stated that I am looking for Parvin Olfati. The individual became agitated, starting raising her voice and asked "how is it that you can just come up and knock on my door?" Writer again explained where I am from and she asked "How did you get my information"? Writer responded that there was an anonymous referral in response to a complaint that she wrote to the Sacramento County Sheriffs Department. Writer stated that I am part of an outreach team to provide resources and supports to individuals in the community. The woman stated "Fuck off and get out of here". Writer walked down the stairs, the individual came back and started talking. Writer thought she was attempting to speak with me, she became angry and said "get out of here." Writer left and individual took a picture of the rear of my vehicle with her cell phone.

Writer called and spoke with supervisor regarding the visit.

12/15/2020

Writer received a message requesting the name of my supervisors. The phone call came from 916-949-4298.

# EXHIBIT E

Case 2:22-cv-00664   Document 1   Filed 06/29/22   Page 80 of 721

# LAND PARK
# BUSINESS SERVICES

# FAX
# TRANSMITTAL
# SHEET

Transmitted Via:

5960 S Land Park Dr

Sacramento, CA 95822

☒ **Urgent**

☐ **Confidential**

If there are any problems with this transmission, please call

(916) 399-8171

Date: _Dec 18 2020_    Time: _3 PM_

To: _MS. PAMELA PSON_

Fax No: _1-916-854-8939_

From: _MS PARVIN (2+AT)_

Phone No: _____

# of pages (including this sheet): _4_

Message:

_GRIEVONCE_

LAND PARK BUSINESS SERVICES is ready to assist you in the following areas:

- Mail Receiving
- 24-hr. Mailbox Service with Street Address
- Call-in Mail Check
- UPS, FedEx, DHL Authorized Shipper
- USPS Postal
- Shipping Outlet
- Packing, Shipping Supplies
- B/W Copies
- Color Copies
- Fax Service
- Metered Mail
- Office Supplies
- Notary Service
- Passport Photos
- Address Labels
- Rubber Stamps
- Business Cards
- Shredder
- Greeting Cards
- Binding

This facsimile may contain PRIVILEGED AND/OR CONFIDENTIAL INFORMATION intended only for the use of the addressee. If you are not the addressee, or the person responsible for delivering It to the person addressed, you may not copy or deliver this to anyone else. You are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you received this facsimile by mistake, please immediately notify us by telephone.
Thank you.

Grievance versus Ms. Pamela Pisani December 14, 2020 Entrapment Attempt Based on
Unsubstantiated Anonymous Complaints That She Was Unable to Explain

Parvin Olfati 1859  45ᵗʰ Street Sacramento, CA. 95819

December 17, 2020

Via Certiferd Mail. Return Receipt Requsted to:
Sacramento County Mental Health Plan Quality Management – Member Services, 7001-A East Parkway, Suite 300M, Sacram¦nto, CA 95823

RE: Grievance Regarding December 14, 2020 Pamela Pisani Senior Mental Health Counselor LMFT Activity At 1859 · 5ᵗʰ Street Directed At Parvin Olfati

Dear Sir or Madam:

*Please note this is the final and CORRECTED version of the same grievance sent to you by certified mail return receipt requested yesterday December 17, 2020. The minor spelling errors were made due to unbelievable trauma and psychological assault that I experienced from Ms. Pisani's abuse of power and authority to victimize and victim bash me.*

This is a Grievance as described on the "Grievance Form" of the County of Sacramento Department of Health Services Divisic n of Behavioral Services Grievance Form and in the brochure "Member Rights & Problem Resolution Guide." In the latter document, a "Grievance" is defined as follows: "A grievance is an expression of dissatisfaction about any matter other than a Notice of Adverse Benefit Determinatio 1 (NOABD)." The brochure further states that the grievant will receive both: (i) a written acknowledgement of receipt; and (ii) a "written resoluticn" within ninety (90) calendar days." I am not now nor have I ever been a "member" or "client" of the County of Sacramento Department of Menta: Health Services Division of Behavioral Services. However, I am a victim, as described below.

This is a grievance regarding the attempted ambush and entrapment of me by Senior Mental Health Counselor LMFT Pamela I isani on December 14, 2020 at about 4:26 p.m. As discussed below, I reasonably believe that Ms. Pisani was carrying out this attempted ambush a 1d entrapment of me at the direction of multiple other persons in the County Division of Behavioral Services, County Department of Health Service: , County Sheriff, and multiple other law enforcement agencies, government agencies, and medical providers. The Pisani December 14, 2020 attemp ed ambush and entrapment of me is the latest in an ongoing effort to entrap me into physical government custody by 45ᵗʰ Street residents inclu ling 1901 45ᵗʰ Street resident Steven Maviglio (who regularly yells at me "seek counseling" but needs counseling himself) and 1870 45ᵗʰ Street resic ent Barbara Andres, Mr. Maviglio's partner in perjury. Both Mr. Maviglio and Ms. Andres should either go to jail for perjury against me, or be plac xd under a Welfare & Institutions Code Section 5150 hold for acting delusional and suffering from hallucinations. In Mr. Maviglio's fraudulent rest aining order application, Mr. Maviglio falsely stated under oath that he saw me in his backyard (on a day when I was verifiably in Los Ange les) , and at the hearing both Mr. Maviglio and Ms. Andres falsely testified under oath that they saw me "wandering in the backyard" of Mr. N aviglio on October 31, 2020, even though I was nowhere near Mr. Maviglio's house or backyard on that date. If Ms. Pisani investigates anyone on 45ᵗʰ Street, it should be Mr. Maviglio and Ms. Andres, and you can treat this Grievance as a non-anonymous complaint that she do so.[1]

The requested remedy is for Ms. Pamela Pisani: (1) to personally call on and investigate 1901 45ᵗʰ Street resident Steven Mavig lio; (2) to personally call on and investigate 45ᵗʰ Street resident Barbara Andres; (3) to send me written descriptions of her investigations of Mr. Mav iglio and Ms. Andres; and (4) to send me a formal written apology and promise in this formal written apology that neither she nor any other person fn m the County Department of Health Services Division of Behavioral Services will ever enter on to 1859 45ᵗʰ Street, anywhere I may visit, or : nywhere I may live in the future, and will not come within three hundred (300) feet of me without my express written permission.

In addition, the requested remedy is also for Ms. Pisani and the County Division of Behavioral Services to turn over to me their entire file(s) in this matter, any file(s)_ or record that refers to Olfati and/or 1859 45ᵗʰ Street, and all records of communications from any person or entity, government agencies, local, city, state and federal agencies as well as any law enforcement agencies, intelligence agencies as well as court e nd justice system persons and private persons acting as informants, informers, community based agents, community policing, and/or neighborhoc d watch, and who have reported or reported any activity or "suspicious activities" that mention or refer to me. While I have already requested thi se documents in Public Records Act (PRA) requests[2], the Division of Behavioral Services and Ms. Pisani could materially resolve my grievance by using their role as the client to direct the County Counsel and County Sheriff to waive any objection to disclosing these documents to waive.
The Attempted Ambush and Entrapment; Prologue
In the morning and early afternoon hours on Monday December 14, 2020, there were two suspicious cars and female visitors to Barbara Andres at 1870 45ᵗʰ Street (Sacramento, California 95819). One of the suspicious vehicles was a white SUV with a California license pla e number of 8MUL994. These cars have been at 1870 45ᵗʰ Street multiple times, and each time their visits were followed by extreme and vi ylent criminal acts against me. I saw the driver of this vehicle later walking on 45ᵗʰ Street with Barbara Andres in their mission to provoke me. I s iw this person along with 1901 45ᵗʰ Street resident Mr. Steven Maviglio trying to provoke me while Mr. Maviglio was waiting to start his spin docto · production of videotaping me to be used to abuse the power and authority of multiple government agencies, law enforcement, and intelligenc : agencies against me. This events are after Mr. Cecil Taylor has again trespassed on my front porch and pounded on my front door. This trespassing r f my front porch by

---

[1] Included with this Grievance are Police Report/Crime Reports I filed with the City of Sacramento Departm mt on November 2, 2019 and May 21, 2020 regarding the criminal perjury committed by both Mr. Maviglio and Ms. Andres.

[2] Both of these PRA requests are reprinted below.

1

Grievance versus Ms. Pamela Pisani December 14, 2020 Entrapment Attempt Based on
Unsubstantiated Anonymous Complaints That She Was Unable to Explain

Mr. Taylor is also a pattern and practice of Mr. Maviglio's using and abusing the residents of 45th Street; this group includes 1914 resident Mr. Charles Schock to dress as a thug, trespass on my front porch, pound on my front door, and yell and scream at or about me while threatening me.[3]

Later, as my friend was leaving 1859 45th Street and as I was walking up the front yard stairs toward my front door, I noticed Barbara Andres and her female visitor (the driver of white SUV with California license plate number 8MUL994) were walking on the sidewalk toward my house, and I also heard Barbara Andres screaming and yelling some incoherent words against me and to me. I told her "I do not talk to felons", and with that I kept on walking toward my front door. But she did not stop. At the same time, I noticed Mr. Maviglio jumping out of his hiding place with his video/phone and starting his spin doctor style videotaping of me for his spin doctor production of more fraudulent documents and so-called evidence against me. I was sure this was another set up that starts with Barbara Andres acting as a gangstalker who has gone wild, is out of control, and has been released loose on the street to provoke me, with Mr. Maviglio in the operation to manufacture another piece of fraudulent "evidence" for his spin doctor production against me. I also was sure that they were trying to manufacture more fraudulent documents to use against me by government and law enforcement agencies. Therefore, I ignored Barbara Andres, her visitor, and Mr. Maviglio; I went inside and closed the door. However, I noticed Barbara Andres was still yelling at my friend, so I went out. As my friend was getting in his car, I asked him to hurry up and leave because Mr. Maviglio is working on manufacturing another one of his spin doctor fraudulent evidence fabrications. So, my friend left. I was very sick from the around the clock release of toxic gas and other chemicals as well as the exhaust gas of the 1871 45th Street resident Sean Majkovica's white junk truck with California license number 49475G2 that has been brought to 1871 to facilitate more physical assaults against me, my internal organs, and my lungs as well as my animals. Mr. Majkovica has doubled down on this violent and intentional crime against me after I filed a City of Sacramento Police Department Police Report against him and his intentional exposing me to this dangerous toxic gas that is still going on and has not stopped.[4]

On May 9, 12020, based on intentionally false statements communicated to the City of Sacramento Police Department by Mr. Maviglio and Ms. Andres, the City of Sacramento Police Department sent to 45th Street Officer Jared Robinet, one of the two officers who fired the bullets that killed Stephon Clark.Officer Jared Robinet hid around the corner in a City Police vehicle, and once he received a hand signal from a trespassing-on-my-driveway Barb Andres, drove to the edge of my driveway, jumped out of the City Police car, trespassed onto my driveway, and stalked me all the way to my front door without ever announcing himself. As soon as I opened my front door, Officer Robinet grabbed me from behind, assaulted and battered me, fractured and lacerated my finger, and threw me to the concrete floor of my front porch. Officer Robinet was then joined by City Police Officer Maryna Stanionis, and both proceeded to handcuff me and drag me to the Officer Stanionis City Police car, where Officer Stanionis detained me in the back seat handcuffed for an hour and deprived me of water. Officer Stanionis then grabbed my cellphone and took it with her to long meetings with Mr. Maviglio and Ms. Andres, where I reasonably believe she gave them access to my cellphone contents. Officer Stanionis tried to question me without Miranda v. Arizona warnings. When she and Robinet let me go they served me with a Notice to Appear for one charge – a standalone Penal Code Section 148(a)(1) "resisting arrest" charge. The Sacramento County District Attorney dismissed this one and only charge for Insufficient Evidence[5], but the false arrest and resulting police brutality scars remain. As a result of this law enforcement assault and battery, I am scared to talk to anyone who claims they represent any official authority.
The Attempted Ambush and Entrapment

After a very torturous December 14, 2020 morning and midday – featuring Barbara Andres acting as gangstalker and psychopath on the loose -- there was coming a much bigger abuse of power against me. Obviously, this whole spin doctor production by Mr. Maviglio and his partner in perjury Barbara Andres was to engage more abuse of the government agency power and authority against me. Some of the details are as follows: On Monday, December 14, 2020, at about 4:36 p.m., the front door of my 1859 45th Street house was knocked upon by a woman who asked me "is this Parvin?" after I opened the door. I took her business card identifying her as "Pamela Pisani, LMFT Senior Mental Health Counselor" from the "Community Support Team" of the County of Sacramento Department of Health Services Division of Behavioral Health Services." I then heard Ms. Pisani say she had received an "anonymous call" about me. I told her to wait, I closed the door, and got my cellphone. I then opened the door. In response to my question "who are you again", she identified herself as "Pam". I said "Pam Community Support Team". She said "right." She never confirmed that I was Parvin Olfati.

I then said "and you don't know who called you". Ms. Pisani then said "I think it was maybe the Sheriff's Department", and then used the word "complaint." I then said "so the Sheriff's Department called you?" and Ms. Pisani said: "They didn't call me. They let us know that maybe there were some concerns…they're out of the Sheriff's Department jurisdiction…"
I then said "so the Sheriff's Department had something to do with this" and Ms. Pisani said: "they forwarded some information." In response to my question as to "exactly" what "information" had been "forwarded", Ms. Pisani said "they forwarded some information stating…" but "I don't know exactly" what the information was. I then asked: "So how can you go to somebody's door when you don't have any idea what you're doing there?"

Ms. Pisani did not answer my question, but instead frantically and immediately wheeled to her scripted narrative about "resources." She did not answer my questions about her "resources" or the function of the "Behavioral Services" "department" (actually a division) that she said she worked for. She never used the word County even though she was here on purported County business. Instead she used the word "community" but never said

---

[3] Mr. Schock trespassed on my front porch twice, on November 28 and December 2 of 2020.
[4] A copy of this December 8, 2020 Police Report and Code Enforcement Complaint is attached.
[5] See attached letter from me to the Sacramento County District Attorney.

2

Grievance versus Ms. Pamela Pisani December 14, 2020 Entrapment Attempt Based on
Unsubstantiated Anonymous Complaints That She Was Unable to Explain

who the "community" was. I concluded by telling her that her "behavior" was suspect because her behavior as displayed to me consisted of knocking
unannounced on people's doors based on anonymous "b—s—."

I told her to leave, but she refused to leave. Instead she yelled at me from my driveway, and she stalked me as I walked out toward the end of my
driveway toward the back yard to check some of the toxic and feces and toxic liquid that had been placed immediately outside my bedroom window.
In other words, she trespassed my property by refusing to leave after being ordered by me to leave. She drove a white SUV vehicle with the
California license plate 7WID019. This appeared to be her personal vehicle and/or vehicle given to her to use in her visit to my house and not a
County vehicle.

**Displayed at the end of this Grievance letter are photographs of Ms. Pisani's behavior. I took these pictures with my cellphone on December
14, 2020 starting at 4:36 p.m.**
As can be seen from my statement above:

- Ms. Pisani made a determination that I needed County Division of Behavioral Services "resources" based on what she described as
  anonymous "complaints" — then she backpedaled and said call or "information" that were either "anonymous" or not but came from the
  County Sheriff.

- Ms. Pisani did not confirm my identity as "Parvin Olfati" before she began her narrative, or at any time during her visit.

- Ms. Pisani did not present any credentials.

- Ms. Pisani never said she was working for the County of Sacramento, but instead said she was "from the community" but never said who
  the "community" was.

- Ms. Pisani both did not identify and could not identify the sources of her "complaints" or "information" that prompted her to use County
  resources to try to ambush or entrap me.

- Ms. Pisani used County government resources to defame me based on unverified anonymous statements whose source she could not
  identify.

.Ms. Pisani refused to leave 1859 45th Street after I told her to leave, meaning Ms. Pisani committed a trespass in violation of the City of
Sacramento Code 9.16.140 B, which states as follows:
"1. It is unlawful for any person to enter or remain upon any private property or business premises after having been notified by the owner or agent to
keep off or keep away therefrom. Such notification shall be provided by service of a notice of trespass on such person."
2 "A violation of this section is a misdemeanor and shall be punishable by a fine not exceeding five hundred dollars ($500.00) or by imprisonment
for a period not exceeding six months, or by both such fine and imprisonment."
If this grievance is not resolved to my satisfaction, I will file a Police Report against Ms. Pisani with the City of Sacramento Police Department, and
will cause her to be served at work with the no-trespass notice described in the Sacramento City Code provision quoted above. Thank you.

Sincerely,

Ms. Parvin Olfati

 

Attachments:

1. 2020 December 1 Police Report and December 9 Public Records Act request regarding 1914 45th Street resident Charles Schock trespasses on my front
   porch.
2. 2020 May 21 and 2019 November 4 Police Reports of perjury by Steven Maviglio and Barb Andres.
3. 2020 December 10 PRA request to the County Sheriff regarding my PRA requests reporting perjury by Steven Maviglio.
4. 2020 October 15 Police Report regarding October 11, 2020 toxic assault.
5. 2020 December 8 Police Report/Code Enforcement Complaint regarding 1871 45th Street truck exhaust blowing directed at 1859 45th Street.
6. 2020 October 22, 2020 letter to the Sacramento County District Attorney noting its' dismissal for Insufficient Evidence of the May 9, 2020 standalone
   resisting arrest Notice to Appear.
7. 2020 July 2 letter to the City of Sacramento Mayor, Councilmember, and Chief of Police regarding the May 9, 2020 false arrest and resisting arrest charge
   (the latter ultimately dismissed by the District Attorney for Insufficient Evidence).

CC via Certified Mail Return Receipt Requested with enclosures: Ms. Pamela Pisani, Senior Mental Health Counselor, Counbty of Sacramento Division of Behavioral
Health Services, 3321 Power Inn Road, Suite 110, Sacramento, CA 95826

3

# EXHIBIT F

| | |
|---|---|
| **From:** | Reiman, Jennifer |
| **To:** | Adams, Rolanda |
| **Subject:** | [secure] RE: Grievance |
| **Date:** | Monday, December 28, 2020 8:46:26 AM |
| **Attachments:** | Olfati Parvin.pdf |
| | Olfati, Parvin 121420.docx |

Hi Rolanda,
This one got away from me.

MCST received a referral from Problem Oriented Polic=ng (Sheriff's North Division) via MCST on 12/10/2020 regarding a let=er that they received with an inquiry that was unfounded. This individual =ad a restraining against her by a city councilmen. POP Sergeant requested follow up to see if individual needed a=y resources. CST referral was generated, no phone number so phone contact =t that time was not possible. There was an address however and sometimes, =epending on referral content and SMHC comfort level and clinical impressions, CST can go out to the residen=e to offer support and attempt engagement.

I sent CST referral for follow up to Pam (CST), 12/1=/2020 to see if she could make contact and offer any support. Pam coordina=ed with referring party and then Pam did a drop by to the individuals resi=ence on 12/14. See second attachment regarding interface. Pam let me know after the drop by that the individual=was very upset by the contact so Pam left after attempting to explain outr=ach.

On Friday 12/18/2020 SOA received FAX regarding comp=aint and I received the information late Friday and was going to contact t=e individual to follow up the following week. Follow up got away from me.

Please let me know if I should follow up with the in=ividual or if that would increase distress? So sorry about not getting thi= to you and your team sooner. I am in the office this week so please feel =ree to contact me.
Respectfully,

*Jennifer Reiman*
Sacramento County Mental Health Program Coordinator<=:p>
Division of Behavioral Health ServicesMobile Crisis and Community Support Teams=/p>
Office: 916-874-6057
Cell: 916-634-5207


**From:** Adams. Rolanda <AdamsRo@saccounty.ne=>
**Sent:** Thursday, December 24, 2020 4:15 PM
**To:** Reiman. Jennifer <ReimanJ@saccounty.net>
**Subject:** Grievance

Hi Jennifer,

We received a grievance from a community member name=, Parvin Alfati. She has a grievance against staff Pamela Pasani. She repo=ts that a copy of the grievance was mailed to Power Inn, suite 110. Hopefu=ly, you have received it and we can discuss. Our copy did not print from the fax well. Let me know when you ar= available to discuss. Thank you.

**Rolanda (Reed) Adams, LCSW**
Beneficiary Protection Program Coordinator
Sacramento County MHP
Quality Management
Phone: 916-875-0853
Cell: 916-639-0690
Adamsro@sacc=unty.net
Staff Registration Applications: dhsqmstaffreg@saccounty.net<=a>

-
-

# EXHIBIT G

| | |
|---|---|
| **From:** | Reiman, Jennifer |
| **To:** | Adams, Rolanda; Rechs, Alex |
| **Subject:** | RE: Letter from Ms. Parvin Olfati Regarding LMFT Pamela Pisani |
| **Date:** | Friday, January 8, 2021 10:08:37 AM |

Thanks boss.

I missed the 916-501-1791 number some=ow? I will try to contact. The other number
provided has not led to contac= with the individual.

Reiman

---
**From:** Adams. Rolanda <AdamsRo@sac=ounty.net>
**Sent:** Friday, January 8, 2021 10:04 AM
**To:** Reiman. Jennifer <ReimanJ@saccounty.net>; Rechs. Alex <=echsA@saccounty.net>
**Subject:** RE: Letter from Ms. Parvin Olfati Regarding LMFT Pamela Pis=ni

Good morning,

I don't know a valid email addr=ss for this person. The email received by Ryan Quist's
office is bel=w. The phone number that is on the grievance form submitted is 916-501-
1791. Pam Pisani's  note indicates phone number as 9=6-949-4298, as the number she
received a phone call from.

---
**From:** Reiman. Jennifer <ReimanJ@saccounty.net>
**Sent:** Friday, January 8, 2021 9:30 AM
**To:** Adams. Rolanda <Adam=Ro@saccounty.net>; Rechs. Alex <RechsA@saccounty.net>
**Subject:** RE: Letter from Ms. Parvin Olfati Regarding LMFT Pamela Pis=ni

Is the STEVEN KAMP <steve.kam=@comcast.net email address the one I can use to reach out =o
Ms. Parvin? just want to make sure I am reading below correctly?

I attempted to contact the number we =ad that we suspected was her contact number with
no response.

---
**From:** Adams. Rolanda <AdamsRo@saccounty.net>
**Sent:** Thursday, January 7, 2021 8:13 AM
**To:** Rechs. Alex <RechsA@s=ccounty.net>
**Cc:** Reiman. Jennifer <Re=manJ@saccounty.net>
**Subject:** FW: Letter from Ms. Parvin Olfati Regarding LMFT Pamela Pis=ni

Good morning Alex,<=p>

Have you seen this? This person is no= writing to Ryan Quist. This client is not a MHP
beneficiary, nor a Medi-C=I recipient. The grievance is not about MHP services, but about
being displeased with CST staff for following-up on a referral. =o:p>
It was decided that this does not qua=ify for the MHP grievance process. It is to be
managed as a supervisory is=ue, so I have not done anything with it. Management in
Program may need to be alerted for the County to determine the most app=opriate

response.

Let me know if there is anything that=I need to do.


Rolanda Adams. LCSW=/p>
Beneficiary Protection Program Coordina=or
Sacramento County MHP=/p>
Quality ManagementPhone: 916-875-0853
Cell: 916-639-0690Adamsro@saccounty.netStaff Registration Applications:
dhsqmstaffreg@saccounty.net<=a>

-
-
-

From: bhs-dhs. <bhs-dhs@saccounty.net>
Sent: Wednesday, January 6, 2021 7:15 PM
To: Adams. Rolanda <Adam=Ro@saccounty.net>
Subject: FW: Letter from Ms. Parvin Olfati Regarding LMFT Pamela Pis=ni



From: STEVEN KAMP <steve.kamp@comcast.net>
Sent: Wednesday, January 6, 2021 2:19 PM
To: bhs-dhs. <bhs-dhs@sa=county.net>
Cc: DHS Director <D=S-Director@saccounty.net>
Subject: Letter from Ms. Parvin Olfati Regarding LMFT Pamela Pisani<=:p>

| **do not click links/attachments.=/p>** |
|---|

January 6, 2021

Dear Director Quist:

Attached is a letter from me to you re regarding Cou=ty LMFT Pamela Pisani. The hard copy
is being sent to you today via certif=ed mail, return receipt requested.

Thank you.

Sincerely, /s/ Ms. Parvin Olfati, 1859 45th Street, =acramento, CA 95819

# EXHIBIT H

| | |
|---|---|
| **From:** | Reiman, Jennifer |
| **To:** | "steve.kamp@comcast.net" |
| **Subject:** | Letter from Ms. Parvin Olfati |
| **Date:** | Friday, January 8, 2021 10:05:24 AM |

Hello Steven Kamp,

I am the Program Coordinator for the Community Suppo=t Team and would like to reach Ms. Parvin Olfati to discuss and support in=estigation of a grievance received regarding the Community Support Team an= my direct report Pam Pisani. I was informed that you had sent an email on Ms. Parvin's behalf to suppor= her in gaining resolution.

Please let Ms. Parvin know that she can reach me at =he number below. I appreciate any support you can offer in helping me to r=ach Ms. Parvin to support resolution.

Respectfully,

**Jennifer Reiman**
Sacramento County Mental Health Program Coordinator<=:p>
Division of Behavioral Health ServicesMobile Crisis and Community Support Teams=/p>

Office: 916-874-6057

BY FAX

1 | **PORTER | SCOTT**
2 | A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
3 | Jordan M. McCroskey, SBN 340068
350 University Ave., Suite 200
4 | Sacramento, California 95825
TEL: 916.929.1481
5 | FAX: 916.927.3706



FILED/ENDORSED

JAN 2 8 2022

By: _____ H. PEMELTON
Deputy Clerk

6 | Attorneys for Defendants
COUNTY OF SACRAMENTO and PAMELA PISANI
7 | *Exempt from Filing Fees Pursuant to Government Code § 6103*

8

9 | SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

10 | MS. PARVIN OLFATI,                       CASE NO.  34-2021-00310164

11 |              Plaintiffs,                 **DECLARATION OF JORDAN M.**
                                            **MCCROSKEY IN SUPPORT OF**
12 | v.                                       **DEFENDANTS' SPECIAL MOTION TO**
                                            **STRIKE PURSUANT TO CODE OF CIVIL**
13 |                                          **PROCEDURE SECTION 425.16**
14 | COUNTY OF SACRAMENTO; PAMELA
15 | PASANI; JANE ROE DEFENDANT ONE;
JANE ROE DEFENDANT TWO; JANE
16 | ROE DEFENDANT 3-100, JOHN DOE          Complaint Filed:  10/25/21
DEFENDANTS 1-100,
17 |
18 |              Defendants.
                                    /
19 |

20

21 | I, Jordan M. McCroskey, declare as follows:

22 |          1.  I am an associate attorney with the law firm of Porter Scott, counsel of record for

23 | Defendants COUNTY OF SACRAMENTO ("County") and PAMELA PISANI, and am licensed to

24 | practice law before all courts of the State of California.  I have personal knowledge of the facts stated in

25 | this declaration and would testify to them if called to do so.

26 |          2.  On November 29, 2021, the County was served with Plaintiff's Complaint.  Attached

27 | hereto as **Exhibit "I"** is a true and correct copy of the summons and Complaint, stamped received by the

28 | County Boards of Supervisors on November 29, 2021.

{02604921.DOCX}                                          1

**DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO**
**STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 28th day of January 2022, at Sacramento, California.

_____

Jordan M. McCroskey
Declarant

**DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

# EXHIBIT I

**SUMMONS**
*(CITACION JUDICIAL)*

L21000-334
HCT

FILED
**SUM-100**
Superior Court Of California,
Sacramento
FOR COURT USE ONLY
PARA USO DE LA CORTE
10/27/2021
apenn
By _____ , Deputy
Case Number:
34-2021-00310164

**NOTICE TO DEFENDANT:** COUNTY OF SACRAMENTO
*(AVISO AL DEMANDADO):*

**YOU ARE BEING SUED BY PLAINTIFF:** Ms. Darvin Clanti
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is: SACRAMENTO COUNTY
*(El nombre y dirección de la corte es):* SUPERIOR COURT
720 9th St, Sacramento CA 95814

CASE NUMBER: *(Número del Caso):*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):* STEVEN MARK LUOSTIP
22 Petrilli Circle, Sacramento CA 95822    916 501 1791

DATE: OCT 2 7 2021
*(Fecha)*

Clerk, by A. PENN , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):* COUNTY CLERK
4. ☐ by personal delivery on (date): NOVEMBER 29 2021

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ]   [ Save this form ]   [ Clear this form ]

FILED
Superior Court Of California,
Sacramento
10/25/2021
apshn
By_____ , Deputy
Case Number:
**34-2021-00310164**

1  STEVEN MARK KAMP (California State Bar Number 116817)
2  STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95829
   Electronic Mail Address: steve.kamp@comcast.net
3  Telephone: (916) 501-1791 (cellular, voice/text)
   Attorney for Plaintiff Ms. Parvin Olfati
4
5
6
7
8
9                IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                    IN AND FOR THE COUNTY OF SACRAMENTO
11
12                                        No.
13  Ms. PARVIN OLFATI, Plaintiff          COMPLAINT FOR DAMAGES AND
                                          DEMAND FOR JURY TRIAL
14         v.
15
   COUNTY OF SACRAMENTO; PAMELA
16 PISANI; JANE ROE DEFENDANT ONE;
   JANE ROE DEFENDANT TWO; JANE
17 ROE DEFENDANTS 3-100; JOHN DOE
   DEFENDANTS 1-100, Defendants
18
19
20
21  Plaintiff Ms. Parvin Olfati by her attorney, for her Complaint alleges as follows:
22
23       **STATEMENT OF JURISDICTION AND VENUE**
24  1. This is an unlimited civil action for damages in excess of twenty-five thousand dollars
25       ($25,000.00) by Plaintiff Ms. PARVIN OLFATI against County of Sacramento Senior
26       Mental Health Counselor Pamela Pisani ("Pisani"); multiple Jane Roe and John Doe
27
28

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  1

1   Defendants employed by Defendant County of Sacramento; and the County of

2   Sacramento ("County").

3   2. Venue is laid within Sacramento County, in that: (a) Plaintiff resides in Sacramento

4   County; (b) all Defendants reside in or do business in Sacramento County; (c) the events

5   giving rise to this action took place in Sacramento County.

6

7   **NOTICE OF CLAIM**

8   3. Plaintiff became aware of the acts of Defendants Pisani and County giving rise to this

9   action on December 14, 2020, when Defendant Pisani acting on behalf of Defendant

10   County invaded Plaintiff's privacy and personal affairs; intentionally inflicted emotional

11   distress; and trespassed Plaintiff's residence property.

12   4. On April 5, 2021, Plaintiff filed with the County of Sacramento ("County") Office of the

13   Clerk of the Board of Supervisors a California Government Tort Claims Act (CGTCA)

14   claim seeking compensation for the acts by the County of Sacramento and its' employees

15   complained of herein, as required by and pursuant to California Government Code Section

16   910 et. Seq.  On April 23, 2021, the County through its' authorized agent George Hills

17   Company, Inc. mailed to Plaintiff a written rejection of Plaintiff's claim. Defendant

18   County's claim rejection letter lists "claim no." as L2100524, and "our file no." as 87388-

19   35.

20   5. This action is filed on Monday, October 25, 2021, the first business day after Saturday,

21   October 23, 2021, the 183rd calendar day after April 23, 2021.

22   **PARTIES**

23   **Plaintiff**

24

25

26

27

28

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL. 2

6. Plaintiff Ms. PARVIN OLFATI resides at 1859 45th Street in the City of Sacramento, a location in the neighborhood known as Elmhurst, a neighborhood for which there is an Elmhurst Neighborhood Association.

7. Plaintiff has resided at 1859 45th Street in the City of Sacramento since 2002; and controls access to this property. Plaintiff on December 14, 2020 when the events giving rise to this action occurred was 68 years of age; she is now age 69. Plaintiff is not now a client of and has never been a client of Defendant County's Department of Health Services Division of Behavioral Health Services.

8. Plaintiff at all times prior to approximately 4:33 p.m. on December 14, 2020 had never met or heard of Defendant Pamela Pisani ("Pisani").

9. Plaintiff seven months and five days before December 14, 2020 (on May 9, 2020), while Plaintiff was alone in her house, was subjected to no-warrant false arrest and excessive force by City of Sacramento Police Department Officers Jared Robinet and Maryna Stanionis where Officer Robinet hid himself around the corner out of sight of Plaintiff and awaited a hand signal from 1870 45th Street resident Barbara Andres, a sequence of events that resulted in: (i) Plaintiff being stalked from behind without an announcement from Officer Robinet, who stalked Plaintiff all the way up the driveway, north side front porch steps, front porch, and inside Plaintiff's residence living room without a warrant, and grabbed Plaintiff from behind after pushing open the closing front door that Plaintiff had just closed; (ii) Plaintiff being subjected to excessive force that fractured and lacerated Plaintiff's right hand ring finger and caused other great bodily injury; (iii) Plaintiff being handcuffed on her front porch and dragged in full public view to the Stanionis City Police car; (iv) Plaintiff being subjected to an intrusive body search in full public view; (v) Plaintiff being detained handcuffed in a doors locked windows closed Stanionis City

1    Police car on a 91 degree day where Plaintiff was deprived of both water and Miranda v.

2    Arizona warnings; (vi) Plaintiff being subjected to custodial interrogation while

3    handcuffed where City Police Officer Stanionis did not question Plaintiff until after

4    Stanionis had met at the 1901 45th Street house of Steven Maviglio with Maviglio and

5
     1870 45th Street resident Barbara Andres and received interrogation content from
6
7    Maviglio and Andres; and (vii) Plaintiff being served with a notice to appear for a

8    California Penal Code Section 148(a)(1) "resisting arrest" charge that on October 15,

9    2020, was dismissed by the Sacramento County District Attorney on its own motion for

10   Insufficient Evidence, five days before the scheduled arraignment.  Plaintiff is informed

11   and believed that on and before December 14, 2020,  Defendant Pisani; Defendant County
12
     through its' County Sheriff and County Behavioral Health; and one or more of the Jane
13
14   Roe Defendants and/or John Doe Defendants was or were aware of these facts, including

15   but not limited to Plaintiff's written police reports of the City of Sacramento Police

16   Department misconduct suffered by Plaintiff that Plaintiff copied to the County Sheriff or

17   included in one or more communications to the County.

18   **Defendant County of Sacramento**
19
20   10. Defendant County of Sacramento ("County") is a public entity organized and existing

21   under the laws of the State of California; is the employer of individual capacity Defendant

22   Pamela Pisani; is believed to be the employer of one or more of the Defendant Roe One,

23   Defendant Roe Two, and one or more of the Jane Roe Defendants 3-100 and John Doe

24   Defendants 1-100 named herein; and is the employer of one or more supervisorial
25
     employees who supervised these named Defendants. Defendant County operates a
26
27   Department of Health Services ("County Health") with a Division of Behavioral Health

28   Services ("County Behavioral Health") where Defendant Pisani was employed on

December 14, 2020, and where Defendant Pisani is believed to be still employed.
Defendant County also operates a Sheriff's Department ("County Sheriff") that Pisani said
was the source of her information and authority for committing her acts against Plaintiff
alleged herein, and that has refused to give Plaintiff records of the content regarding
Plaintiff that Defendant Pisani said the County Sheriff had given to her. Defendant
County also operates a Sacramento County Counsel and Clerk of the Board of Supervisors
Office that have said they no records of any content Defendant Pisani says she received
from the County Sheriff regarding Plaintiff.

**Defendant Pamela Pisani**

11. On December 14, 2020 Defendant Pamela Pisani was employed by Defendant County as a
Licensed Medical Family Therapist (LMFT) and "Senior Mental Health Counselor" on
the "Community Support Team" of County Behavioral Health. Defendant Pisani used a
work address of 3321 Power Inn Road, Suite 110, Sacramento, California 95826; used
work telephone numbers (916) 804-1135 and (916) 874-2166; and used the County
electronic mail address PisaniP@saccounty.net  At all times material hereto, Defendant
Pisani was acting within the scope of her County employment. Defendant Pisani is sued in
her individual capacity. Attached as Exhibits "1", "2" and "3" hereto are still photographs
of Plaintiff's cellphone video of Defendant Pisani: (1) and (2) on Plaintiff's residence
front porch; and (3) on Plaintiff's residence driveway.

**Jane Roe Defendant Number One**

12. Jane Roe Defendant One ("Roe One") is the female driver of the white Chevrolet sport
utility vehicle with the California license plate number 8LTE039, who was at the Tuesday
Morning store at 2550 Fair Oaks Boulevard (a location in the unincorporated area of the
County of Sacramento) on December 22, 2020 at about 11:55:40 a.m., and on other dates.

1  On December 22, 2020 Defendant Roe One in the Tuesday Morning store stalked

2  Plaintiff. On other occasions (in the Ettore's and Bella Bru Café restaurants on Fair Oaks

3  Boulevard in the unincorporated area of the County of Sacramento), Defendant Roe One

4  attempted to induce or entrap Plaintiff into an interaction. Attached as Exhibits "4", "5"

5  "6" and "7" hereto are: (4) a still photograph of the cellphone video taken by Plaintiff of

6  Roe One placing herself in close proximity to Plaintiff in the Bella Bru Café; (5) and (6)

7  still photographs of the cellphone video taken by Plaintiff showing Roe One in Tuesday

8  Morning on December 22, 2020 stalking Plaintiff; and (7) a still photograph of the

9  cellphone video taken by Plaintiff of the car Plaintiff saw being used by Defendant Roe

10 One.  Upon information and belief, Defendant Roe One is employed by Defendant County

11 and: (i) invaded Plaintiff's privacy and intruded into Plaintiff's private affairs; (ii)

12 communicated to persons other than Plaintiff content that placed Plaintiff in a false light,

13 including but not limited to statements stating that Plaintiff had committed acts or engaged

14 in conduct meriting law enforcement or County Behavioral Health intervention; (iii)

15 communicated to persons other than Plaintiff purported statements of fact, including but

16 not limited to statements stating that Plaintiff had committed acts or engaged in conduct

17 meriting law enforcement or County Behavioral Health intervention; and/or (iv) breached

18 her duty of reasonable care to Plaintiff. Plaintiff as of the filing of this Complaint is

19 unaware of the identity of Defendant Roe One and upon receipt of information from

20 discovery or otherwise will seek leave of Court to amend this Complaint with such

21 identity and serve Roe One within the period of California Code of Civil Procedure

22 Section 474.

23 **Jane Roe Defendant Number Two**

13.     Jane Roe Defendant Two ("Roe Two") is the female driver of the convertible Volkswagen with the California license plate "WMGLEN", who was at Bella Bru Café stalking Plaintiff while appearing to work on puzzles, Defendant Roe Two attempted to induce or entrap Plaintiff into an interaction on various dates in 2019 and 2020 at: (i) the Starbucks o9n 5300 Folsom Boulevard in the City of Sacramento; (ii) the Bella Bru Café on Fair Oaks Boulevard. When Plaintiff stopped going to the 5300 Folsom Boulevard Starbucks in order to avoid Defendant Roe Two, Defendant Roe Two began appearing at the Bella Bru Café that Plaintiff went to in order to avoid the intrusive presence of Defendant Roe Two. Attached hereto as Exhibits "8", "9" and "10" are still photographs of the cellphone video taken by Plaintiff of Roe Two at the Bella Bru Café of Defendant Roe Two appearing to work on puzzles while placing herself in close proximity to Plaintiff.  Upon information and belief, Defendant Roe Two is employed by Defendant County and: (i) invaded Plaintiff's privacy and intruded into Plaintiff's private affairs; (ii) communicated to persons other than Plaintiff content that placed Plaintiff in a false light, including but not limited to statements stating that Plaintiff had committed acts or engaged in conduct meriting law enforcement or County Behavioral Health intervention; (iii) communicated to persons other than Plaintiff purported statements of fact, including but not limited to statements stating that Plaintiff had committed acts or engaged in conduct meriting law enforcement or County Behavioral Health intervention; and/or (iv) breached her duty of reasonable care to Plaintiff. Plaintiff as of the filing of this Complaint is unaware of the identity of Defendant Roe Two and upon receipt of information from discovery or otherwise will seek leave of Court to amend this Complaint with such identity and serve Roe Two within the period of California Code of Civil Procedure Section 474.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Jane Roe Defendants 3-100 and John Doe Defendants 1-100**

14. Upon information and belief, Plaintiff alleges that one or females (Jane Roe Defendants 2-100) and/or males (John Doe Defendants 1-100) have committed one or more of the acts or omissions alleged in this Complaint. Plaintiff is unaware of their identities and upon receipt of such information through discovery or otherwise, will seek leave of Court to amend this Complaint with such identity and serve Roe One within the period of California Code of Civil Procedure Section 474.

**FACTS**

15. Plaintiff re-alleges paragraphs 1-14 of this Complaint as though fully set forth herein.

16. On or before December 14, 2020, Defendant Pisani received communications from one or more employees of Defendant County (including but not limited to the County Sheriff) directing Defendant Pisani to go to Plaintiff's residence and attempt to induce or entrap Plaintiff into entering into a client or other relationship with County Behavioral Health that included treating Plaintiff as a person with a "mental health disorder"; as a person who is a "danger to [her]self"; as a person who "is a danger to others"; as a person who is "gravely disabled" as these terms are used in California Welfare & Institutions Code Section 5150; or who is otherwise receiving mental health services from Defendant County.

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  8

17. On December 14, 2020, Defendant Pisani acting upon information or content given to Pisani by the County Sheriff, by one or more County employees, and/or by Defendant Roe One, Defendant Roe Two, or more of the other Jane Roe or John Doe Defendants, drove in a vehicle without County insignia or "CA Exempt" license plate to Plaintiff's residence at 1859 45th Street. Defendant Pisani parked the vehicle she was driving at the curb of 1851 45th Street (immediately north of Plaintiff's residence) and walked to Plaintiff's residence front door.

18. At about 4:33 p.m. on December 14, 2020, Defendant Pisani knocked upon the front door of Plaintiff's residence with the intent to induce Plaintiff into an interaction with Defendant Pisani. Defendant Pisani when she knocked on Plaintiff's residence front door was not wearing any County uniform, badge or insignia, and was not displaying any County or other identification. Defendant Pisani was wearing civilian clothes and what appeared to be an identification card holder that did not have any identification card, and only displayed a key or an object that looked like a key.

19. At all times on December 14, 2020 while Defendant Pisani was within the curtilage of Plaintiff's residence property or was otherwise on 45th Street, including the interaction with Plaintiff beginning at about 4:33 p.m. that was initiated by Defendant Pisani, Defendant Pisani never asked Plaintiff to give Plaintiff's name or otherwise identify Plaintiff as Parvin Olfati, Patty Olfati, Ms. Olfati or any other name.

20. Plaintiff was alone in her residence when she heard the knock on her residence front door at about 4:33 p.m. on December 14, 2020 that was made by Defendant Pisani.

21. In response to the door knock from Defendant Pisani, Plaintiff opened her residence front door and face to face saw a female with short hair. Plaintiff asked this person "who are you and what do you want", or words to that effect. This person who was Defendant

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL. 9

Pisani did not identify herself, did not give Plaintiff a business card, did not show
identification, did not give her name, and did not otherwise identify herself.

22. Instead, the person who was Defendant Pisani said that she was from the "community
support team" or words to that effect. Defendant Pisani did not explain or otherwise
communicate what the "community support team" was. Defendant Pisani did not identify
herself as a County employee, representative, or agent even though he had in her
possession a County business card containing her name, "Community Support Team",
and contact information.

23. Plaintiff then asked the person who was Defendant Pisani if that person was talking about
the "Elmhurst Community", thinking the person who was Defendant Pisani was coming to
Plaintiff's residence on behalf of the Elmhurst Neighborhood Association to sign Plaintiff
up for the Elmhurst Neighborhood Association. The person who was Defendant Pisani
responded as follows (in what Plaintiff saw and heard as very ambiguous): that she
"works with all of the community" or words to that effect.

24. The person who was Defendant Pisani then said she was from the "community support
team" then said that she had received or was aware of "an anonymous complaint" about
Plaintiff.

25. The person who was Defendant Pisani then handed Plaintiff a County business card that
listed Defendant Pisani as a "Senior Mental Health Counselor" with the "Community
Support Team" of County Behavioral Health, with the work address, work telephone
numbers, and work electronic mail address listed above in paragraph 11 herein.

26. Plaintiff then realized that the person who was Defendant Pisani was not from the
Elmhurst Neighborhood Association, but rather was from a government agency. Plaintiff
realized that this person's visit and her claiming that her visit was based on anonymous

complaint about Plaintiff, together with this person's attempting to let Plaintiff believe that this visit is from the Elmhurst Neighborhood Association or "Elmhurst community", meant that this person wanted to keep Plaintiff confused and/or did not want to explain to Plaintiff that Defendant Pisani was not from the "Elmhurst community" or Elmhurst Neighborhood Association and was trying to keep the real and true source of the place, organization, and or agency that she was representing hidden from Plaintiff. Plaintiff was very frightened when she realized what she now saw the true purpose of the presence of Defendant Pisani on her front porch.

27. Therefore, Plaintiff told Defendant Pisani to "wait". Plaintiff then closed the front door, went inside her residence, and picked up her cellphone, to make sure the rest of her conversation initiated by Defendant Pisani would be recorded.

28. With her cellphone in hand and its' camera operating, Plaintiff went to the front door and opened the front door. Defendant Pisani was still on Plaintiff's residence front porch. Plaintiff said:"Ok, who are you again?" Defendant Pisani responded: "my name is Pam" and did not state her surname, an omission that escalated Plaintiff's suspicion of Defendant Pisani's very unusual and suspect visit and behavior.

29. Plaintiff then said: "Pam?" and referring to the business card Defendant Pisani had given to Plaintiff seconds before, said "Pamela from Community Support Team". Defendant Pisani said: "right".

30. Plaintiff then said: "and you don't know who called you." Defendant Pisani responded: "I think it was maybe Sheriff Department they complained", or words to that effect that included the words "Sheriff Department" and "complained." Plaintiff then asked Defendant Pisani: "Sheriff Department called you?" Defendant Pisani responded: "Well, no, they did not

1   call me, they let us know that there was maybe some concern, you are out of the Sherriff

2   Department jurisdiction right?"

3   31. Plaintiff then said to Defendant Pisani: "So, the Sherriff Department has something to do

4   with this?" Defendant Pisani then said: "well they forwarded some information stating

5   you know, "

6

7   32. Plaintiff then asked Defendant Pisani, "what information?" Defendant Pisani replied:

8   "Ok, I don't know exactly what information".

9   33. Plaintiff then said: "how can you go to somebody's door when you have no idea what you

10   are doing there?" Defendant Pisani then said: "my resources". Plaintiff then asked

11   Defendant Pisani: "who are your resources?" Defendant Pisani then said: "I work for

12   Sacramento Community". Plaintiff then said to Defendant Pisani: "who are Sacramento

13   Community?" Defendant Pisani then said: "I work for Behavioral Services". Plaintiff then

14   said to Defendant Pisani: "Behavioral services meaning what?" Defendant Pisani then

15   said: "actually it doesn't mean anything. It's the department I work for", or words to that

16

17   effect.

18   34. Plaintiff then said to Defendant Pisani: "here is my problem with you -- you walk on my door

19   out of the blue, you do not want to tell me who called you. The anonymous, that is why there

20   is a problem, so, you walk on people's porch and knock on their door based on some

21   anonymous BS you have heard", Defendant Pisani interrupted Plaintiff and said that: "I have

22   not heard". Plaintiff then said to Defendant Pisani: "ok they gave you, and then you said the

23   Sherriff Department was involved and  then you said it is behavioral, you know your whole

24   behavior is suspect, just F---- Off." With that, Plaintiff ordered Defendant Pisani to leave

25   Plaintiff's residence property. Plaintiff was very scared.

26

27

28

35. Plaintiff closed the door, thinking Defendant Pisani would leave. A few minutes later, Plaintiff went outside and walked her north side front porch steps to check and make sure there were no law enforcement officers on her driveway, or at the end of the 45th Street where it intersects with "S" Street a few hundred feet north of Plaintiff's driveway. Plaintiff saw that Defendant Pisani was still on Plaintiff's residence property, having ignored Plaintiff's command to leave, and was following Plaintiff on her driveway.

36. Plaintiff was very frightened, because on May 9, 2020, similar following of Plaintiff on Plaintiff's driveway by 1870 45th Street resident Barbara Andres resulted in the emergence of a City of Sacramento Police Department vehicle from around the corner after Andres followed Plaintiff on the driveway and hand signaled the hiding police office Jared Robinet who without a warranty ran, stalked Plaintiff, grabbed Plaintiff, pulled Plaintiff out of her living room and injured Plaintiff.

37. Plaintiff then again told Defendant Pisani to leave and told her that nobody wants to talk to Pisani and Pisani should leave. Defendant Pisani ignored Plaintiff's command to "leave" and continued yelling at Plaintiff until Plaintiff went back inside her residence and closed the front door. Upon reasonable inference, Plaintiff alleges that Defendant Pisani after leaving Plaintiff's residence communicated to Defendant County and one or more of the Jane Roe Defendants or John Doe Defendants one or more statements regarding Plaintiff alleging that Plaintiff had committed one or more acts requiring law enforcement or County Behavioral Health intervention.

38. Plaintiff was scared, and for the rest of December 14, 2020, Plaintiff thought that within minutes there would be another knock on her door by some law enforcement officers who would try to arrest Plaintiff or seize Plaintiff under Welfare & Institutions Code Section 5150 or some other pretext. Plaintiff was extremely frightened of what would happen to her next

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL 13

and knew that Defendant Pisani's finally leaving was not the end of this attempt to entrap

Plaintiff and that Plaintiff would have to face even much bigger, harsher, well-organized

retaliation and entrapment. Since Defendant Pisani's acts of December 14, 2020, Plaintiff has

become extremely scared anyone from the County of Sacramento, including but not limited to

the County Sheriff.

39. On December 22, 2020, at about 11:55:40 a.m., Defendant Roe One stalked Plaintiff in the

aisles of the Tuesday Morning store at 2550 Fair Oaks Boulevard in the unincorporated area

of the County of Sacramento. Defendant Roe One has stalked Plaintiff on other dates near

December 14, 2020, including at Bella Bru Café on almost every day in 2020 whenever

Plaintiff dined at Bella Bru Café, including but not limited to August 26, 2020, and has

stalked Plaintiff at Ettore's on multiple dates in December 2020. These acts of stalking and

attempts to induce or entrap Plaintiff into a conversation and/or videotaping of Plaintiff and

retention and/or use of such videotapes by one or more of the Defendants intruded into the

private affairs of Plaintiff where she was attempting to enjoy a zone of privacy while

shopping at Tuesday Morning, dining at Bella Bru Café, or dining at Ettore's. Upon

information and belief, Plaintiff alleges that Defendant Roe One was working for or on behalf

of Defendant County and/or Defendant Pisani while committing these acts. Defendant Roe

One was constantly writing and/or texting while constantly watching and monitoring Plaintiff,

and many times Plaintiff would leave without finishing her food just to get away from her.

Plaintiff also alleges that Roe One from these activities communicated content, information,

or material about Plaintiff to one or more persons other than Plaintiff, including but not

limited to Defendant Pisani, Defendant Roe Two, County, and/or one or more of the Jane Roe

Defendants or John Doe Defendants.

40. On August 10, 2020, Defendant Roe Two stalked Plaintiff at the Bella Bru Café, placing herself in close proximity to Plaintiff while appearing to work on puzzles. Defendant Roe two has stalked Plaintiff on other dates near December 14, 2020, including but not limited to July, August and September of 2020. She also had stalked the plaintiff in other location including the Starbucks at 5300 Folsom Boulevard in the city of Sacramento. The intrusive and privacy invading presence of Defendant Roe Two and other stalkers at the 5300 Folsom Boulevard Starbucks caused Plaintiff to go to the Bella Bru Café on Fair Oaks Boulevard. Shortly after Plaintiff started to go to the Bella Bru Cafe, Defendant Roe Two appeared at the Bella Bru Café where Plaintiff observed Roe Two monitoring and stalking Plaintiff, keeping track of Plaintiff, the persons Plaintiff talked to, and all of Plaintiff's activity at Bella Bru Café. These acts of stalking and monitoring Plaintiff were very intrusive. Defendants intruded into the private affairs of Plaintiff where she was attempting to enjoy a zone of privacy while working on her computer. Plaintiff alleges that Defendant Roe Two was working for or on behalf of Defendant County and/or Defendant Pisani while committing these acts. Plaintiff also alleges that Defendant Roe Two from these activities communicated content, information, or material about Plaintiff to one or more persons other than Plaintiff, including but not limited to Defendant Pisani, Defendant Roe One, County, and/or one or more of the Jane Roe Defendants or John Doe Defendants.

## DAMAGES

41. As a direct and proximate result of each Defendant's acts and/or omissions as set forth herein, Plaintiff has suffered:

     (a) Permanent and severe mental and emotional distress;

     (b) Humiliation and the loss of dignity;

1        (c) Injury to reputation;

2        (d) Loss of enjoyment of life and other continued pain and suffering;

3        (e) Emotional trauma and suffering, including but not limited to fear,

4
5               embarrassment, humiliation, emotional distress, frustration, extreme

6               inconvenience, and anxiety – all of which will scar Plaintiff as long as

7               Plaintiff lives.

8        (f) Loss of faith in County operations and personnel.

9

10   42. Plaintiff requests punitive or exemplary damages against Defendants Pisani and other

11       individual capacity Defendants for their acts of oppression, fraud, and/or malice, and

12       against Defendant County to the extent that Defendant County is liable for such damages

13       under California Government Code Section 815.2(a).

14

15   **CAUSES OF ACTION**

16   **FIRST CAUSE OF ACTION: INVASION OF PRIVACY (INTRUSION INTO
17   PRIVATE AFFAIRS) versus DEFENDANTS PISANI, ROE ONE and ROE TWO
     [*Miller v. National Broadcasting Company*, 187 Cal.App.3d 1463 (1986)]**

18   43. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the

19       preceding paragraphs 1-42 as though fully set forth herein.

20
21   44. Plaintiff had a reasonable expectation of privacy in her person and in her private affairs in

22       all areas inside the curtilage of her residence property.

23   45. Defendant Pisani intentionally intruded into Plaintiff's privacy and private affairs inside

24       the curtilage of her residence property.

25   46. The intrusion by Defendant Pisani would be highly offensive to a reasonable person.

26   47. Plaintiff was harmed by the intrusion by Defendant Pisani.

27

28

48. The acts and conduct of Defendant Pisani were a substantial factor in Plaintiff's harm, and Defendant Pisani is therefore liable to Plaintiff for invasion of privacy.

49. Plaintiff has a reasonable expectation of privacy and in her private affairs when she is in retail establishments where she shops in her private space or dines in her private space.

50. Defendant Roe One intentionally intruded into Plaintiff's privacy, private space, and private affairs by her acts and conduct toward Plaintiff.

51. The intrusion by Defendant Roe One would be highly offensive to a reasonable person.

52. Plaintiff was harmed by the intrusion by Defendant Roe One.

53. The acts and conduct of Defendant Roe One were a substantial factor in Plaintiff's harm, and therefore Defendant Roe One is liable to Plaintiff for invasion of privacy.

54. Defendant Roe Two intentionally intruded into Plaintiff's privacy, private space, and private affairs by her acts and conduct toward Plaintiff.

55. The intrusion by Defendant Roe Two would be highly offensive to a reasonable person.

56. Plaintiff was harmed by the intrusion by Defendant Roe Two.

57. The acts and conduct of Defendant Roe Two were a substantial factor in Plaintiff's harm, and therefore Defendant Roe Two is liable to Plaintiff for invasion of privacy.


## SECOND CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS versus DEFENDANTS PISANI, ROE ONE and ROE TWO [*Hughes v. Pair*, 46 Cal.4[th] 1035 (2009)]

58. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-42 as though fully set forth herein.

59. The acts and conduct of Defendant Pisani were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

60. Defendant Pisani intended to cause Plaintiff severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

61. Defendant Pisani knew that Plaintiff would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

62. Defendant Pisani gave little or no thought to the probable effect of her conduct on Plaintiff.

63. Plaintiff suffered severe emotional distress from the acts and conduct of Defendant Pisani.

64. The acts and conduct of Defendant Pisani were a substantial factor in causing Plaintiff to suffer severe emotional distress, and Defendant Pisani is therefore liable to Plaintiff for intentional infliction of emotional distress.

65. The acts and conduct of Defendant Roe One were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

66. Defendant Roe One intended to cause Plaintiff severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

67. Defendant Roe One knew that Plaintiff would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

68. Defendant Roe One gave little or no thought to the probable effect of her conduct on Plaintiff.

69. Plaintiff suffered severe emotional distress from the acts and conduct of Defendant Roe One.

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  18

70. The acts and conduct of Defendant Roe One was a substantial factor in causing Plaintiff to suffer severe emotional distress, and Defendant Roe One is therefore liable to Plaintiff for intentional infliction of emotional distress.

71. The acts and conduct of Defendant Roe Two were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

72. Defendant Roe Two intended to cause Plaintiff severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

73. Defendant Roe Two knew that Plaintiff would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

74. Defendant Roe Two gave little or no thought to the probable effect of her conduct on Plaintiff.

75. Plaintiff suffered severe emotional distress from the acts and conduct of Defendant Roe Two.

76. The acts and conduct of Defendant Roe Two were a substantial factor in causing Plaintiff to suffer severe emotional distress, and Defendant Roe Two is therefore liable to Plaintiff for intentional infliction of emotional distress.

**THIRD CAUSE OF ACTION: TRESPASS versus DEFENDANT PISANI [*Miller v. National Broadcasting Company*, 187 Cal.App.3d 1463 (1986)]**

77. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-42 as though fully set forth herein.

78. Defendant Pisani entered Plaintiff's residence property on December 14, 2020 at about 4:33 p.m.

79.  Plaintiff did not give permission to Defendant Pisani for any entry by Defendant Pisani on to Plaintiff's residence property.

80.  Upon information from Plaintiff's home security system video, Plaintiff's cellphone video, and from Plaintiff's own eyes and ears, Defendant Pisani remained on Plaintiff's residence front yard and driveway after being told by Plaintiff to leave, meaning Defendant Pisani intended to be in Plaintiff's residence front yard, driveway, and at other locations inside Plaintiff's residence curtilage and to remain there.

81.  Upon information from Plaintiff's home security system video, Plaintiff's cellphone video, and from Plaintiff's own eyes and ears, the acts of Defendant Pisani inside the curtilage of Plaintiff's residence included: (a) Defendant Pisani refusing to leave and remaining on Plaintiff's property after Plaintiff first told her to leave, while Defendant Pisani was on Plaintiff's front porch; and (c) Defendant Pisani yelling at Plaintiff from Plaintiff's driveway after Plaintiff told Defendant Pisani for a second time to leave.

82.  Upon information from Plaintiff's home security system video, Plaintiff's cellphone video, and from Plaintiff's own eyes and ears, Defendant Pisani after Plaintiff ordered Pisani to leave Plaintiff's residence front porch walked on Plaintiff's residence front yard to Plaintiff's residence driveway, and remained on Plaintiff's residence driveway after being told by Plaintiff to leave, meaning Pisani intended to be in Plaintiff's residence front yard and residence driveway inside Plaintiff's residence curtilage and to remain there.

83.  Plaintiff was harmed by the trespass of Defendant Pisani, not only from the trespass itself, but also from the reasonably foreseeable and/or intended damages that came from Pisani using her presence on Plaintiff's residence property to cause emotional distress to

1    Plaintiff, further intrude into Plaintiff's privacy and private affairs, and further damage

2    Plaintiff.

3    84.    The acts of Defendant Pisani were a substantial factor in causing harm to Plaintiff.

4
     85.    Plaintiff was harmed by the trespass committed by Defendant Pisani.
5
     86.    Defendant Pisani is therefore liable to Plaintiff for California law for trespass damages,
6
            including consequential damages intended or reasonably foreseeable from the trespass.
7

8

9

10   **FOURTH CAUSE OF ACTION versus DEFENDANTS PISANI, ROE ONE, and ROE**
11   **TWO  FOR NEGLIGENCE [Cal. Civil Code Section 1714(a); _Cabral v. Ralph's Grocery_**
     **_Co._, 51 Cal.4th 764 (2011)]**
12

13   87. Plaintiff realleges and incorporates by reference each of the preceding paragraphs 1-42 as

14      though fully set forth herein.

15   88.  When Defendant Pisani committed her acts against Plaintiff alleged herein, including the
16
        acts alleged in this Cause of Action through incorporation by reference, Defendant Pisani
17
        was under a duty to use reasonable care regarding Plaintiff.
18

19   89.  In committing each of her acts alleged against Plaintiff alleged in this Cause of Action,

20      including the acts alleged through incorporation by reference, Defendant Pisani breached

21      this duty of reasonable care regarding Plaintiff.

22   90. The breach of her duty of reasonable care by Defendant Pisani regarding Plaintiff was the
23
        proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering
24
        Defendant Pisani liable to Plaintiff for negligence under California law including but not
25
        limited to California Civil Code Section 1714.
26

27

28

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  21

91. When Defendant Roe One committed her acts against Plaintiff alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant Roe One was under a duty to use reasonable care regarding Plaintiff.

92. In committing each of her acts alleged against Plaintiff alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant Roe One breached this duty of reasonable care regarding Plaintiff.

93. The breach of her duty of reasonable care by Defendant Roe One regarding Plaintiff was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Roe One liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

94. When Defendant Roe Two committed her acts against Plaintiff alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant Roe Two was under a duty to use reasonable care regarding Plaintiff.

95.  In committing each of her acts alleged against Plaintiff alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant Roe Two breached this duty of reasonable care regarding Plaintiff.

96. The breach of her duty of reasonable care by Defendant Roe Two regarding Plaintiff was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Roe Two liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

**FIFTH CAUSE OF ACTION: FALSE LIGHT INVASION OF PRIVACY versus DEFENDANTS PISANI, ROE ONE and ROE TWO [*Briscoe v. Reader's Digest Association*, 4 Cal.3d 529 (1971)]**

97. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-42 as though fully set forth herein.

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  22

98. Defendant Pisani communicated to one or more persons other than Plaintiff content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

99. The false light created by the disclosure would be highly offensive to a reasonable person in Plaintiff's position.

100. Defendant Pisani knew the disclosure would create a false impression about Plaintiff.

101. Defendant Pisani made the disclosures about Plaintiff with reckless disregard for the truth.

102. Defendant Pisani was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

103. Plaintiff was harmed by the disclosures made by Defendant Pisani.

104. The conduct of Defendant Pisani was a substantial factor in causing harm to Plaintiff, and Defendant Pisani is therefore liable to Plaintiff for invasion of privacy.

105. Defendant Roe One communicated to one or more persons other than Plaintiff content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

106. The false light created by the disclosure would be highly offensive to a reasonable person in Plaintiff's position.

107. Defendant Roe One knew the disclosure would create a false impression about Plaintiff.

108.   Defendant Roe One made the disclosures about Plaintiff with reckless disregard for the truth.

109.   Defendant Roe One was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

110.   Plaintiff was harmed by the disclosures made by Defendant Roe One.

111.   The conduct of Defendant Roe One was a substantial factor in causing harm to Plaintiff, and Defendant Roe One is therefore liable to Plaintiff for invasion of privacy.

112.   Defendant Roe Two communicated to one or more persons other than Plaintiff content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

113.   The false light created by the disclosure would be highly offensive to a reasonable person in Plaintiff's position.

114.   Defendant Roe Two knew the disclosure would create a false impression about Plaintiff.

115.   Defendant Roe Two made the disclosures about Plaintiff with reckless disregard for the truth.

116.   Defendant Roe Two was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

117.   Plaintiff was harmed by the disclosures made by Defendant Roe Two.

118.   The conduct of Defendant Roe Two was a substantial factor in causing harm to Plaintiff, and Defendant Roe Two is therefore liable to Plaintiff for invasion of privacy.

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  24

**SIXTH CAUSE OF ACTION: versus DEFENDANTS PISANI, ROE ONE and ROE TWO for DEFAMATION [California Civil Code Sections 44, 45, 46]**

119.   Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-42 as though fully set forth herein.

120.   Defendant Pisani made one or more purported statements of fact of and concerning Plaintiff to one or more persons other than Plaintiff, including but not limited to content, material or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

121.   The persons other than Plaintiff who heard the communications from Defendant Pisani alleged in this cause of action reasonably understood these statements to be statements about Plaintiff and that stated Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

122.   These statements were false when they were made.

123.   Defendant Pisani in making these statements knew they were false, or acted with reckless disregard of their truth or falsity.

124.   Defendant Pisani failed to use reasonable care in making these statements.

125.   Defendants Pisani in making these statements acted with hatred toward Plaintiff, spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or annoy Plaintiff.

126.   Plaintiff was harmed by the statements made by Defendant Pisani.

127.   The conduct of Defendant Pisani was a substantial factor in causing harm to Plaintiff, and Defendant Pisani is therefore liable to Plaintiff for defamation.

128.   Defendant Roe One made one or more purported statements of fact of and concerning Plaintiff to one or more persons other than Plaintiff, including but not limited to content,

1    material or information stating Plaintiff had committed one or more acts or engaged in

2    conduct requiring intervention from law enforcement or from County Behavioral Health.

3    129.  The persons other than Plaintiff who heard the communications from Defendant Roe One

4    alleged in this cause of action reasonably understood these statements to be statements about

5

6    Plaintiff that stated Plaintiff had committed one or more acts or engaged in conduct requiring

7    intervention from law enforcement or from County Behavioral Health.

8    130.    These statements were false when they were made.

9    131.    Defendant Roe One in making these statements knew they were false, or acted with

10    reckless disregard of their truth or falsity.

11    132.    Defendants Roe One failed to use reasonable care in making these statements.

12
      133.    Defendants Roe One in making these statements acted with hatred toward Plaintiff,
13
14    spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or annoy

15    Plaintiff.

16    134.    Plaintiff was harmed by the statements made by Defendant Roe One.

17    135.    The conduct of Defendant Roe One was a substantial factor in causing harm to

18    Plaintiff, and Defendant Roe One is therefore liable to Plaintiff for defamation.

19
      136.    Defendant Roe Two made one or more purported statements of fact of and
20
21    concerning Plaintiff to one or more persons other than Plaintiff, including but not limited

22    to content, material or information stating Plaintiff had committed one or more acts or

23    engaged in conduct requiring intervention from law enforcement or from County

24    Behavioral Health.

25    137.  The persons other than Plaintiff who heard the communications from Defendant Roe Two

26    alleged in this cause of action reasonably understood these statements to be statements about

27

28

Plaintiff that stated Plaintiff had committed one or more acts or engaged in conduct requiring

intervention from law enforcement or from County Behavioral Health.

138.    These statements were false when they were made.

139.    Defendant Roe Two in making these statements knew they were false, or acted with

reckless disregard of their truth or falsity.

140.    Defendants Roe Two failed to use reasonable care in making these statements.

141.    Defendants Roe Two in making these statements acted with hatred toward Plaintiff,

spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or annoy

Plaintiff.

142.    Plaintiff was harmed by the statements made by Defendant Roe Two.

143.    The conduct of Defendant Roe Two was a substantial factor in causing harm to

Plaintiff, and Defendant Roe Two is therefore liable to Plaintiff for defamation.

**SEVENTH CAUSE OF ACTION: versus DEFENDANT COUNTY OF SACRAMENTO for NEGLIGENT TRAINING, DISCIPLINE, AND SUPERVISION OF COUNTY SENIOR MENTAL HEALTH COUNSELORS AND EMPLOYEES [Cal. Gov. Code Section 815.2(a); C.A. v. William S. Hart Union High School District, 53 Cal.4th 861 (2012)]**

144. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the

preceding paragraphs 1-143 as though fully set forth herein.

145. Defendant County's training, supervision, and discipline of Defendant Pisani, Defendant

Roe One, Defendant Roe Two, and other County employee Roe Defendants and Doe

Defendants , was negligent in protecting inhabitants of the County of Sacramento (including

Plaintiff), from County Senior Mental Health Counselor  and other County employee

violations of Plaintiff's California law protection against intrusion into private affairs and

invasions of privacy; intentional infliction of emotional distress; trespass; negligence; and defamation.

146. In training, disciplining, and supervising, or in failing to train, discipline and supervise Defendant Pisani, Defendant Roe One, Defendant Roe Two, and other County employee Roe Defendants and Doe Defendants, Defendant County and its supervisorial and final policy-making employees have a relationship with the inhabitants of the County of Sacramento (including Plaintiff) and owe inhabitants of the County of Sacramento (including Plaintiff) a duty of reasonable care.

147. Defendant County's failure to train, supervise, and discipline County Senior Mental Health Counselor Pamela Pisani, Defendant Roe One, Defendant Roe Two, and other County employee Roe Defendants and Doe Defendants in obvious procedures to prevent trespasses, defamation, false light invasion of privacy, and/or intrusions into the private affairs of and other violations of the right of privacy breached Defendant County's duty of reasonable care, caused substantial harm to Plaintiff, and was the proximate cause of Plaintiff's injuries from Defendant County's employees Pisani, Roe One, Roe Two, and County employee Roe Defendants and Doe Defendants.

148. Defendant County's acts of ratification and in carrying out policies, procedures, final decisions, or customs alleged herein also amount to negligent training, supervision, and discipline of Defendant Pisani, other Senior Mental Health Counselors, Roe One, Roe Two, and other County employee Roe Defendants and Doe Defendants, that violates the County's duty to Plaintiff under California Government Code Section 815.2(a) and California Civil Code Section 1714.

149. Defendant County is therefore liable to Plaintiff under California Government Code Section 815.2(a) for negligent training, supervision, and discipline of Defendant Pisani,

1   Defendant Roe One, Defendant Roe Two, and/or other County employee Roe Defendants and

2   Doe Defendants.

3

4

5

6

7   **EIGHTH CAUSE OF ACTION:** *RESPONDEAT SUPERIOR* **versus DEFENDANT**
8   **COUNTY OF SACRAMENTO FOR THE ACTIONS OF DEFENDANT COUNTY**
    **SENIOR MENTAL HEALTH COUNSELOR PISANI and COUNTY EMPLOYEE**
9   **ROE and DOE DEFENDANTS [California Government Code Section 815.2(a);** *Mary M.*
    *v. City of Los Angeles***, 54 Cal.3d 202 (1991)]**
10

11   150. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the

12   preceding paragraphs 1-143 as though fully set forth herein.

13
     151. California Government Code Section 815.2(a) makes Defendant County liable for the
14
     acts or omissions of County employees within the scope of the employee's employment if the
15
16   act or omission gives to a cause of action against that employee.

17

18   152. Defendant County employs Defendant Pisani as a County Senior Mental Health

19   Counselor.

20   153. Defendant County Senior Mental Health Counselor Pisani  is sued for acts or omissions

21   committed within the scope of her County employment in Causes of Action First, Second,

22   Third, Fourth, Fifth and Sixth herein.

23

24

25   154.    Defendant County is therefore liable to Plaintiff under California Government Code

26       Section 815.2(a) for the acts or omissions of County employee Pisani in the Causes of

27       Action pled against Defendant Pisani.

28

155.    Defendant County employs or uses as an agent or representative Defendant Roe One.

156.    Defendant Roe One is sued for acts or omissions committed within the scope of her County employment in Causes of Action First, Second, Fourth, Fifth and Sixth herein.

157.    Defendant County is therefore liable to Plaintiff under California Government Code Section 815.2(a) for the acts or omissions of County employee Roe One in the Causes of Action pled against Defendant Roe One.

158.    Defendant County employs or uses as an agent or representative Defendant Roe Two.

159.    Defendant Roe Two is sued for acts or omissions committed within the scope of her County employment in Causes of Action First, Second, Fourth, Fifth and Sixth herein.

160.    Defendant County is therefore liable to Plaintiff under California Government Code Section 815.2(a) for the acts or omissions of County employee Roe Two in the Causes of Action pled against Defendant Roe One.

161.    Defendant County employs one or more of the Jane Roe Defendants 3-100 and John Doe Defendants 1-100. These Defendants are sued for acts or omissions committed within the scope of her County employment in Causes of Action First, Second, Fourth, Fifth and Sixth herein. Defendant County is therefore liable to Plaintiff under California Government Code Section 815.2(a) for the acts or omissions of these employees that caused harm to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  30

1
2
3
4
5
6 **EXHIBITS**
7
8
9
10
11
12
13



14 Exhibits 1 and 2: Defendant Pisani on Plaintiff's front porch
15
16
17
18
19
20



21 Exhibit 3: Defendant Pisani trespassing Plaintiff's driveway
22
23
24
25
26
27



28

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL 32

1

<u>Exhibits 4-5-6: Defendant Roe One: (4) Stalking Plaintiff at Bella Bru Café;</u>

2

<u>(5) and (6) Stalking Plaintiff at Tuesday Morning;</u>

3

<u>Exhibit 7: Automobile Used By Defendant Roe One.</u>

4

5

6



7

8

9

10

11

<u>Exhibits (8) (9) and (10): Defendant Roe Two Stalking Plaintiff at Bella Bru Café</u>

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL  33

1

*Olfati v. County of Sacramento et al.*
**Sacramento County Superior Court – Case No. 34-2021-00310164**

2

### DECLARATION OF SERVICE

3

I am a resident of the United States and of the County, of Sacramento, California. I am over the

4

age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

5

I am familiar with this Company's practice whereby the mail, after being placed in a designated

6

area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

7

That on the date below, I served the following **DECLARATION OF JORDAN M.**

8

**MCCROSKEY IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16** on all parties in the said action

9

as addressed below by causing a true copy thereof to be served:

10

| X | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
|---|---|
|   | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
|   | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
|   | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
|   | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

11
12
13
14
15
16
17
18
19
20

21

*Attorney for Plaintiff*
Steven Mark Kamp

22

STEVEN KAMP LAW OFFICES

23

22 Petrilli Circle,
Sacramento, CA 95822

24

Steve.kamp@comcast.net

25

I declare under the penalty of perjury that the foregoing is true and correct. Executed at

26

Sacramento, California, on  January 28, 2022.

27
28

*Kilina Tellez*

_____
Kilina Tellez

{02604921.DOCX}                                            3

**DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
Jordan M. McCroskey, SBN 340068
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants
COUNTY OF SACRAMENTO and PAMELA PISANI
*Exempt from Filing Fees Pursuant to Government Code § 6103*



FILED/ENDORSED

JAN 2 8 2022

By: _____ H. PEMELTON
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

MS. PARVIN OLFATI,

　　　　　Plaintiffs,

v.

COUNTY OF SACRAMENTO; PAMELA
PASANI; JANE ROE DEFENDANT ONE;
JANE ROE DEFENDANT TWO; JANE
ROE DEFENDANT 3-100, JOHN DOE
DEFENDANTS 1-100,

　　　　　Defendants.
_____ /

CASE NO.  34-2021-00310164

**DECLARATION OF PAMELA PISANI IN
SUPPORT OF DEFENDANTS' SPECIAL
MOTION TO STRIKE PURSUANT TO CODE
OF CIVIL PROCEDURE SECTION 425.16**

Complaint Filed:  10/25/21

I, PAMELA PISANI, declare as follows:

　　　1.  I make this Declaration on my own personal knowledge except to the facts stated on information and belief. As to such facts, I believe them to be true. If called upon to do so, I could and would competently testify about the matters asserted herein.

　　　2.  I work as a Senior Mental Health Counselor for the County of Sacramento, Department of Health Services, Division of Behavioral Health Services, Community Support Team (CST). I am a licensed Marriage & Family Therapist and have experience with crisis intervention and mental health counseling. I have worked for CST since 2011.

{02577362.DOCX}　　　　　　　　　　　　　　　1
**DECLARATION OF PAMELA PISANI IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE
PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

3.    On December 11, 2020, I received an email from then head of the CST, Jennifer Reiman, stating concerns for Plaintiff's mental health and asking that I help her. (Decl. Reiman, Exhibit A.)    It included the letter written by Plaintiff dated November 9, 2020, which showed signs of mental health distress. (Decl. Reiman, Exhibit B.)

4.    I reviewed Plaintiff's letter, consulted with Ms. Reiman, weighed my options, and ultimately decided to attempt a "cold call contact" by visiting Plaintiff at her home, in order to offer support and services. (Decl. Reiman, Exhibit A.)    Such visits are a normal part of my job duties, and within my discretion.

5.    On December 14, 2020, I visited Plaintiff at her residence to inform her of resources available and to offer support. (Decl. Reiman, Exhibit D.)    When I arrived, I walked up to her front door and knocked. (*Ibid.*)    Plaintiff answered the door and inquired about my identity and purpose. (*Ibid.*)    I introduced myself, gave her my business card, and told her I was looking for Parvin Olfati. (*Ibid.*)    Plaintiff became agitated, started raising her voice, and asked, "How is it that you can just come up and knock on my door?" (*Ibid.*)    I told her there was an anonymous referral in response to a complaint she had written to the Sacramento County Sheriff's Department. (*Ibid.*)    I told her I was part of an outreach team that provides resources and supports to individuals in the community. (*Ibid.*)    Plaintiff they said, "Fuck off and get out of here!" (*Ibid.*)    I began walking down the stairs, but Plaintiff came back out and started talking. (*Ibid.*)    I thought she was attempting to speak with me, but when I reengaged with her, she again became angry and said, "Get out of here!" (*Ibid.*)    I left, but not before she took a photo of the rear of my vehicle with her cellphone. (*Ibid.*)

6.    After the visit, I called to speak with Ms. Reiman about what occurred. (Decl. Reiman, Exhibit D.)    I also wrote a report to document the facts of the incident. (*Ibid.*)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 27th day of January 2022, at Sacramento, California.

Pamela Pisani
Declarant

{02577362.DOCX}                                                    2

**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
Jordan M. McCroskey, SBN 340068
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants
COUNTY OF SACRAMENTO and PAMELA PISANI
*Exempt from Filing Fees Pursuant to Government Code § 6103*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

| | |
|---|---|
| MS. PARVIN OLFATI, | CASE NO. 34-2021-00310164 |
| Plaintiffs, | **[PROPOSED] ORDER GRANTING DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16** |
| v. | |
| COUNTY OF SACRAMENTO; PAMELA PASANI; JANE ROE DEFENDANT ONE; JANE ROE DEFENDANT TWO; JANE ROE DEFENDANT 3-100, JOHN DOE DEFENDANTS 1-100, | **Date: April 20, 2022**<br>**Time: 9:00 a.m.**<br>**Dept.: 54**<br>**Reservation No.: 2613497** |
| Defendants. | Complaint Filed: 10/25/21 |

Defendants COUNTY OF SACRAMENTO and PAMELA PISANI ("Defendants") Special Motion to Strike Pursuant to Code of Civil Procedure Section 425.16 came on for hearing in Department 54 of this Court on April 20, 2022. Having reviewed the matter and considered the arguments of the parties, the Court rules as follows:

1.    Defendants' Special Motion to Strike Pursuant to Code of Civil Procedure Section 425.16 is GRANTED; the entire Complaint and each cause of action therein is stricken.

///

{02577373.DOCX}                                                    1
**[PROPOSED] ORDER GRANTING DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

1    **IT IS SO ORDERED.**

2

3    DATED:  _____

4                                                    _____
                                                     JUDGE OF THE SACRAMENTO SUPERIOR
5                                                    COURT

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{02577373.DOCX}                        2

**[PROPOSED] ORDER GRANTING DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

*Olfati v. County of Sacramento et al.*
**Sacramento County Superior Court – Case No. 34-2021-00310164**

## DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

That on the date below, I served the following **[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION AND SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16** on all parties in the said action as addressed below by causing a true copy thereof to be served:

| | |
|---|---|
| **X** | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
| | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

*Attorney for Plaintiff*
Steven Mark Kamp
STEVEN KAMP LAW OFFICES
22 Petrilli Circle,
Sacramento, CA 95822
Steve.kamp@comcast.net

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California, on  January 28, 2022.

*Kilina Tellez*

_____
Kilina Tellez

{02577373.DOCX}                                          3
**[PROPOSED] ORDER GRANTING DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

1

STEVEN MARK KAMP (California State Bar Number 116817)
STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
Electronic Mail Address: steve.kamp@comcast.net
Telephone: (916) 501-1791 (cellular, voice/text)
Attorney for Plaintiff Ms. Parvin Olfati

2

3

4

5

6

7

8

9

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SACRAMENTO

10

11

12

No. 34-2021-00310164-CU-CE-GDS

13

Ms. PARVIN OLFATI, Plaintiff

**PLAINTIFF Ms. PARVIN OLFATI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS COUNTY OF SACRAMENTO AND PAMELA PISANI'S MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

14

v.

15

16

COUNTY OF SACRAMENTO; PAMELA PISANI; JENNIFER REIMAN; JENNIFER STEART; SHERIFF's SERGEANT RONALD BRIGGS; JANE ROE DEFENDANT ONE; JANE ROE DEFENDANT TWO; JANE ROE DEFENDANTS 3-100; JOHN DOE DEFENDANTS 1-100,

17

18

19

**Date: April 20, 2022**

20

Defendants

**Time: 9:00 a.m.**

21

**Department: 54**

22

**Reservation No.: 2613497**

23

**Complaint Filed: 10/25/21 [First Amended Complaint Filed 04/06/22]**

24

25

26

27

28

PLAINTIFF Ms. PARVIN OLFATI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' ANTI-SLAPP STATUTE MOTION TO STRIKE  1

1    TABLE OF CONTENTS

2    I.      **Introduction, Summary of Argument, And The Actual Facts of Defendants'**
         **Conduct As Pleaded in the Complaint and Amended Complaint……………..6**
3

4        A.  Introduction………………………………………………………………… 6

5        B.  Summary of Argument……………………………………………………....7

6        C.  The Actual Facts of Defendants' Conduct As Pleaded in the Complaint and Amended
             Complaint – That Defendants Deliberately Hid from Plaintiff……………………..11
7

8    II.     **Defendants' Government Employee Acts Are Not "Speech or Petitioning" And**
         **Do Not Arise Under Either The First Amendment or the California Constitution**
9        **………………………………………………………………………………..13**

10   III.    **Defendants' Purported Speech Was Not Made In Connection With A Public**
         **Issue In A Public Forum,  But Rather Was Retaliation To Place Plaintiff In A**
11       **Captive Audience To Be Coerced, Threatened, or Intimidated  Into Accepting**
         **Unwanted Services from County – The County's Strategic Lawsuit Against**
12       **Plaintiff's Political Participation…………………………………………….. .15**

13
     IV.     **Defendants' Purported Speech Is Illegal Conduct Not Covered By The Anti-**
14       **SLAPP Statute, Conduct For Which Defendants Are Not Immune………… .17**

15       A.  Plaintiff 's Residence Was  Trespassed by Defendant Pisani………………… 17

16       B.  Defendants' Reiman Declaration Admits That Plaintiff Was Defamed and
17           Retaliated Against By Briggs, Stewart, Reiman and Pisani For
             County………………………………………………………………………… .17
18

19       C.  Defendants Pisani, Briggs, Stewart or Reiman Did Not Act As Policymakers, So
             Discretionary Immunity Is Not Available To Them…………………………... 18
20

21   V.      **Conclusion And Plaintiff's Request For A Statement of**
         **Decision………………………………………………………………………… .18**
22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

Federal Case

3

*Garcetti v. Ceballos,* (2006) 547 U.S. 410 (copy attached hereto as Exhibit B)................9, 15

4

California Cases

5

*Barner v. Leeds* (2000) 24 Cal.4[th] 676…………………………………………………… ……19

6
7

*C.A. v. William S. Hart Union High School District* (2012) 54 Cal.4[th] 861……………… …..19

8

*Cobb v. City of Stockton* (2011) 192 Cal.App.4[th] 65,…………………………………….....18

9
10

*D.C. v. R.R.,* (2010) 182 Cal.App.4[th] 1190…………………………………………………16

11

*FilmOn.com, Inc. v. DoubleVerify, Inc.,* (2019) 7 Cal.5[th] 133…………………………....17

12
13

*Flatley v. Mauro* (2006) 39 Cal.4[th] 299……………………………………………………..10

14

*Kaye v. Board of Trustees of San Diego* (2009) 179 Cal.App.4[th] 48……………….….…..9, 15

15

*Lefebvre v. Lefebvre* (2011) 199 Cal.App.4[th] 696……………………………………………10

16

*Miller v. National Broadcasting Company*, (1986) 187 Cal.App.3d 1463…………………………18

17
18

*Park v. Board of Trustees of California State University* (2017) 2 Cal.5[th] 1057, 1060…………8

19

*Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4[th] 1133……………………………….19

20

*Schaffer v. City and County of San Francisco*, (2004) 168 Cal.App. 4th 992……………………9

21

*Shahbazian v. City of Rancho Palos Verdes* (2017) 17 Cal.App.5[th] 823…………………….....8

22

*Venegas v. County of Los Angeles* (2004) 32 Cal.4[th] 820………………………………….....7

23

*World Financial Group, Inc. v. HBW Ins. Financial Services, Inc.*(2009)*,* 172 Cal.App.4[th] 15..16

Constitutional Provisions

24

United States Constitution, First Amendment………………………..2, 6, 9, 10, 11, 12, 15, 16, 20

25

California Constitution, Article I, Section 2…………………………………………….. 6, 7, 8, 15

26

California Constitution, Article I, Section 3……………………………………………6, 9, 10, 15

27

Federal Statute

28

1    United States Code, Title 42,Section 1983……………………………………………………11

2
     California Statutes
3
     Civil Code, Section 52.1…………………………………………………………………7
4
     Civil Code, Section 52.1, subdivision (b)……………………………………………18
5
     Code of Civil Procedure, Section 425.16…………………………………………..6
6
     Code of Civil Procedure, Section 425.16, subdivision (e)(1)…………………………….10
7
     Code of Civil Procedure, Section 425.16, subdivision (e)(2)…………………………….11
8
     Code of Civil Procedure, Section 425.16, subdivision (e)(3)…………………………… 12
9
     Code of Civil Procedure, Section 425.16, subdivision (e)(4)………………….....6, 10, 14, 17
10
     Code of Civil Procedure, Section 425.16, subdivision (j)(1) ………..6, 21 (Declaration of Service)
11
     Code of Civil Procedure, Section 472, subdivision (a)………………………………….7
12
     Code of Civil Procedure, Section 472, subdivision (b)………………………………….7
13
     Government Code Section 820.2…………………………………………………………19
14
     Government Code Section 8314…………………………………………………….. 16
15
     Penal Code, Section 602, subdivision (l)………………………………………….. 10, 18
16
     Rules
17
     California Rules of Court Rule 3.1113………………………………………………….6
18
     California Rules of Court Rule 3.1590……………………………………………………19
19
     Other Authority
20
     Sacramento County Sheriff's Department website, www.sacsheriff.com ………………..12
21
     Defendants' Motion Documents:
22
     Defendants' Notice of Motion…………………………………………………………..6
23
     Declaration of Jordan M. McCrosskey ("McCrosskey Declaration")………10, 12, 13, 14, 17, 18
24
     Declaration of Pamela Pisani ("Pisani Declaration")…………………………………......9, 12, 19
25
     Declaration of Jennifer Reiman ("Reiman Declaration")……………………7, 9, 13, 17, 18, 19
26
     Reiman Declaration, Exhibit A e mail string…………………………………………..7, 9, 13, 14
27
     Reiman Declaration, Exhibit B (Plaintiff's November 9, 2020 Police Report to Sheriff),,, 7, 8, 13
28

PLAINTIFF Ms. PARVIN OLFATI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' ANTI-SLAPP STATUTE MOTION TO STRIKE  4

1

County and City of Sacramento Public Records Act Responses

2

County of Sacramento 22-471.................................................................................14
County of Sacramento 22-491.............................................................................14, 18

3

City of Sacramento P028660-021522.......................................................................14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I. Introduction, Summary of Argument, and the Actual Facts of Defendants' Conduct As Alleged In The Complaint and Amended Complaint[1]

### A. Introduction

The Anti-SLAPP Statute motion by Defendants County of Sacramento ("County") and Pamela Pisani ("Pisani") ("Defendants"[2]) should be denied at the outset because Defendants did not comply with the Anti-SLAPP Statute[3] requirement of Code of Civil Procedure (CCP) Section 425.16, subdivision (j)(1), that "promptly upon so filing, transmit to the Judicial Council, by e-mail or facsimile, a copy of the endorsed, filed caption page of the motion . . ."[4]

The Anti-SLAPP motion should also be denied because the facts of the Complaint and the County's own declarations and motion memorandum admit that all of the purported "speech and petitioning" by the individual Defendants is government employee on-the-job speech that does not arise under either the United States Constitution First Amendment, or California Constitution Article I, Sections 2 or 3, which is a foundational requirement of the only Anti-SLAPP Statute section relied upon by the Defendants, CCP Section 425.16, subdivision (e)(4). In addition, this purported "speech and petitioning" was not about the "public issue" of advertising County mental health services to a non-captive audience, but was an attempt to threaten, coerce, or intimidate Plaintiff into a captive audience situation where she could be coerced into accepting unwanted County mental health services as part of new Defendant Sheriff's Sergeant Ronald Briggs retaliation for Plaintiff's Police Report letter, in response to which he ordered: "get a mental

---

[1] This Opposition Memorandum consists of 21 pages. However, six of these pages are the caption page (page 1), table of contents (page 2), table of authorities (pages 3-5) , and the proof of service (page 21), so this Opposition Memorandum is within the 15-page limit of California Rule of Court 3.1113, subdivision (d).

[2] The Amended Complaint filed April 6, 2022 [Exhibit A herewith] adds as Defendants County Sheriff's Sergeant Ronald Briggs ("Briggs"), County Mental Health Program Director Jennifer Reiman ("Reiman"), and County Senior Mental Health Counselor Jennifer Stewart ("Stewart"). They are referred to herein as the "new Defendants."

[3] Code of Civil Procedure ("CCP") Section 425.16.

[4] Defendants' Notice of Motion, page 3 Declaration of Service, does not mention any e-mail or fax of the endorsed caption page to the Judicial Council. In contrast, Plaintiff's does, herein at 21: 17-23.

PLAINTIFF Ms. PARVIN OLFATI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' ANTI-SLAPP STATUTE MOTION TO STRIKE  6

1   health worker to check in with the letter writer . . . the letter suggests Community Support Team

2   contact might be more effective (identified belief law enforcement is stalking her and colluding

3   against her)."[5]  In the process, Stewart, Reiman, and Pisani also defamed Plaintiff with a

4
    knowingly false statement that Plaintiff was the restrained party in a restraining order obtained by
5
    Sacramento City Council member.[6]
6

7      The acts of Briggs, Stewart, and Reiman with  Pisani are in the Amended Complaint

8   because Defendants kept hidden from Plaintiff their records of these acts until their January 28,

9   2022 filing of their Reiman Declaration. Plaintiff had requested these records in December **2020**

10  Public Records Act (PRA) requests, but the County Clerk of the Board responded without

11  producing records, and the County Sheriff never responded.[7]   Therefore, Plaintiff pursuant to

12
    CCP Section 427.10 is joining in her Amended Complaint a Petition for Writ of Mandamus under
13
    the Public Records Act (PRA) against the County for the Sheriff's Department and the Clerk's
14
15  refusal to produce PRA-requested records. This Amended Complaint is not an attempt to evade

16  the Anti-SLAPP Statute by restating original Complaint facts,[8] but rather adds allegations and

17  causes of action based on newly discovered facts that County kept hidden from Plaintiff.[9]

18

19  _____

    [5] This November 9, 2020 Police Report as received by Defendant County's Sheriff's Department, new Defendant
20  Sheriff's Sergeant Briggs, new Defendants Stewart and Reiman, and Defendant Pisani, is Exhibit B to Defendants'
    Reiman Declaration.

21  Prior to the January 28, 2022 filing of the Reiman Declaration by Defendants, Plaintiff was not aware of any relation
    between the Pisani acts of December 14, 2020 and the County Sheriff reaction to Plaintiff's November 9, 2020 police
22  report – because Pisani did not disclose it, and Defendant County did not produce under the PRA the Reiman
    Declaration Exhibit A email string in its' responses to Plaintiff's Public Records Act (PRA) requests of December
23  15/23 of 2020.

24  [6] These defamations appear in the Reiman Declaration, Exhibit A email string.

    [7] See Declaration  of Plaintiff Ms. Parvin Olfati ("Olfati Declaration") submitted herewith; Exhibit A Amended
25  Complaint and its' Exhibit Eleven and the Twelfth Cause of Action (Public Records Act writ of mandamus).

26  [8] Therefore, CCP Section 472, subdivision (b) is not applicable; rather, the Amended Complaint filed on or before the
    April 7, 2022 due date of this Opposition Memorandum is authorized under CCP Section 472, subdivision (a).

27  [9] The Exhibit A Amended Complaint in paragraphs 259-265 (Ninth cause of action) adds  a California Civil Code
    Section 52.1 (Tom Bane Civil Rights Act) cause of action the individual Defendants as well as the County, which is
28  a Bane Act  "person" (see *Venegas v. County of Los Angeles* (2004) 32 Cal.4[th] 820, 841-843).

PLAINTIFF Ms. PARVIN OLFATI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' ANTI-SLAPP STATUTE MOTION TO STRIKE  7

1

2

### B. Summary of Argument

3

   As our Supreme Court has explained, the Anti-SLAPP Statute applies "only if the speech or

4

petitioning activity *itself* is the wrong complained of, and not just . . . a step leading to some

5

different act for which liability is asserted."[10] Or as the Court of Appeal explained in affirming

6

7

the denial of a city Anti-SLAPP Motion attempted to be used to quash a suit opposing city

8

issuance of a building permit:

9

> "Governments speak. They also petition. And they act in ways that are neither speaking nor petitioning.
> It is important to distinguish between the three, because [the Anti-SLAPP Statute] may apply to the first
> two, but not the third."[11]

10

11

The court went on to hold as follows:

12

> "We conclude the [Anti-SLAPP Statute] does not protect a governmental entity's decisions to issue or
> deny permits, and we agree with the trial court that granting a motion to strike in these circumstances
> would chill citizens' attempt to challenge government action."[12]

13

14

Defendants are attempting to do exactly that with their Anti-SLAPP Statute motion: retaliate

15

against Plaintiff for daring to send to the County Sheriff a Police Report stating facts of abuse of

16

law enforcement agencies by persons she reasonably believes are responsible for the theft of her

17

cellphone.[13] When Defendant Briggs saw in Plaintiff's Police Report letter the "identified belief

18

that law enforcement is stalking her and colluding against her" he ordered: "get a mental health

19

20

worker to check in on the letter writer . . ."[14]

21

22

23

24

[10] *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (emphasis included).

25

[11] *Shahbazian v. City of Rancho Palos Verdes* (2017) 17 Cal.App.5th 823.

26

[12] *Shahbazian v. City of Rancho Palos Verdes, supra,* 17 Cal.App.5th 826.

[13] Plaintiff's November 9, 2020 Police Report letter as received by the County Sheriff is Exhibit B to the Reiman

27

Declaration.

28

[14] Reiman Declaration, Exhibit A, pages 2-3 (December 10, 2020 5:42 PM email); Exhibit A Amended Complaint,
paragraphs 26-34.

PLAINTIFF Ms. PARVIN OLFATI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' ANTI-SLAPP STATUTE MOTION TO STRIKE  8

1    Defendants lead off their motion memorandum with the statement that "Plaintiff's claims

2  are based on misconceptions about the actions of the Defendants", and accusing Plaintiff of

3  "believ[ing] [Defendants] were participating in a conspiracy against her, when really, they only

4
   ever wanted to offer help and support."[15] However, Defendants' Reiman Declaration and exhibits
5
   thereto facially show that Defendants were in fact participating in such a conspiracy.[16]
6

7    Defendants' own motion documents[17] also admit that they cannot meet their admitted

8  burden[18] of proving that their acts alleged in the Complaint and Amended Complaint are: "act[s]

9  of that person in furtherance of the right of petition or free speech under the United States

10 Constitution or the California Constitution *in connection with a public issue* . . ."[19] as these

11
   words are used in the opening and defining sentence of the Anti-SLAPP Statute. Defendants
12
   cannot meet their burden because all of the conduct by the Defendants alleged in the Complaint
13
14 and Amended Complaint was committed not in furtherance of any Pisani, Reiman, Stewart or

15 Briggs private citizen speech or petitioning[20], but by these Defendants in their capacities as

16 government employees.  Controlling authority from the United States Supreme Court[21] and

17 California Court of Appeal[22] holds that acts of "speech" by California county government

18 employees conducted *while performing their government job duties* do not arise under either the
19
   First Amendment or California Constitution Article I, Section 2 or 3.[23] "Arising under" either of
20

21  _____

22  [15] Defendants' motion memorandum, at 1: 3-6.

    [16] Reiman Declaration Exhibit A e-mail string.
23
    [17] The Declaration of Defendant Pamela Pisani ("Pisani Declaration"); the Reiman Declaration; and the latter's
    attached exhibits, especially the Exhibit A email string.
24
    [18] See, e.g., Defendants' Motion memorandum, at pages 3: 28 – 4: 3.

25  [19] Emphasis added.

26  [20] All of the Anti-SLAPP Statute cases cited in Defendants' motion memorandum can be ignored for this reason.

    [21] *Garcetti v. Ceballos* (2006) 547 U.S. 410 (copy submitted herewith as Exhibit B).
27
    [22] *Kaye v. Board of Trustees of San Diego* (2009) 179 Cal.App.4th 48.

28  [23] Before Defendants filed their motion on January 28, 2022, they were advised of this authority in a January 24,
    2022 letter from Plaintiff's undersigned counsel; see Declaration of Steven Mark Kamp submitted herewith.

1    these constitutional guarantees is a foundational prerequisite to any application of CCP Section

2    425.16(e)(4), the only portion of the Anti-SLAPP Statute relied upon by Defendants.[24]

3        Even if government employee on-the-job speech was covered by the Anti-SLAPP Statute,

4    the acts by the Defendants did not arise in connection with Defendant County's claimed public

5
     issue of advertising County mental health services to a wide audience[25], but in fact arose in the
6

7    implementation by Defendant Pisani of the retaliatory Defendant Sheriff Sergeant Briggs

8    directive to have "a mental health worker check in" on Plaintiff,  for Plaintiff exercising her First

9    Amendment and Article I, Section 2 and 3 rights in sending a Police Report to the County Sheriff

10   that Defendant Briggs objected to. These acts were committed by Defendants Briggs, Reiman,

11   and Stewart to have Defendant Pisani entrap Plaintiff into a captive audience situation where
12
     Plaintiff could be threatened, coerced, or intimidated to cease sending Police Reports to the
13

14   County Sheriff, or to be forced into accepting unwanted County mental health services and have

15   her Police Reports and other communications stigmatized as coming from someone receiving

16   County mental health services. These illegal acts are not protected by the Anti-SLAPP Statute[26],

17   including the Pisani trespass[27]; Defendants Stewart, Reiman, and Pisani defaming Plaintiff with

18   the knowingly false statement that Plaintiff was the restrained party in a restraining order

19

20

21
     [24] Defendants do not rely upon any of the other three Anti-SLAPP Statute definitional subdivisions: (e)(1)("official
22   proceedings authorized by law"); (e)(2)("issue under consideration or review by a legislative . . . body . . .); or
     (e)(3)("made in a place open to the public . . .). Thus, the case of *Schaffer v. City and County of San Francisco*,
23   (2004) 168 Cal.App. 4th 992 (refusing to apply *Garcetti v. Ceballos* in a official proceedings case because
     subdivision (e)(1) "carves in" (undersigned counsel's phrase) official proceedings regardless of whether speech in
24   them arises under the First Amendment or California Constitution), is irrelevant to Defendants' motion.

25   [25] See Defendants' Motion memorandum, at 5: 28 – 6:13.

     [26] *Flatley v. Mauro* (2006) 39 Cal. 4th 299,  304 ("Mauro's communications constituted criminal extortion as a matter
26   of law and, as such, were unprotected  by constitutional guarantees of free speech or petition. Therefore, the anti-
     SLAPP statute does not apply.")

27   [27] McCrosskey Declaration Complaint, paragraphs 34-38 and 77-86 (Third Cause of Action for Trespass); Exhibit A
     Amended Complaint, paragraphs 67-71 and 129-138 (Third Cause of Action for Trespass). Trespass is a crime; see
28   Penal Code Section 602, subdivision (l).

1   obtained by a member of the Sacramento City Council[28]; and Defendants committing under color

2   of state law in the course and scope of their County employment acts of threats, intimidation, and

3   coercion to retaliate against Plaintiff for exercising her First Amendment and California law

4   rights to file a Police Report with the County Sheriff[29], an act that is encouraged on the County

5

6   Sheriff website.[30]

7       These heretofore undisclosed County records demonstrate why Defendants also lose on the

8   second prong of the Anti-SLAPP Statute: their own records reveal the making of specific

9   knowingly false statements of and concerning Plaintiff by both Defendant Pisani and by new

10  Defendants Reiman and Stewart, as well as acts that were in fact part of a retaliation conspiracy

11  begun by new Defendant County Sheriff's Deputy Ronald Briggs and implemented by new

12
    Defendants County mental health counselor Stewart and mental health program coordinator
13
    Reiman to coerce, threaten, and intimidate Plaintiff into accepting County mental health services,
14
15  so that Plaintiff would either cease filing Police Reports, or if she continued to file them, her

16  Police Reports would be stigmatized as coming from a person receiving County mental health

17  services.[31] During the retaliation, Defendants Stewart, Reiman, and Pisani also defamed Plaintiff

18  with communications knowingly or recklessly falsely stating that Plaintiff was the restrained

19
    party in a restraining order against her obtained by a member of the Sacramento City Council.[32]
20

21

22  [28] Exhibit A Amended Complaint,  paragraphs 35-41, 158-179 (Fifth Cause of Action for False Light Invasion of
    Privacy; allegations against Pisani, Stewart and Reiman), 194-218 (Sixth Cause of Action for Defamation, allegations
23  against Pisani, Stewart  and Reiman).  In *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, the Court held that the
24  making of knowingly false statements was outside the protection of the Anti-SLAPP Statute.

    [29] Exhibit A Amended Complaint, paragraphs 21-33, 259-265 (Bane Act), 266-273 (federal Section 1983).
25
    [30] Exhibit A Amended Complaint,  paragraphs 259-265 (Ninth Cause of Action for retaliation in violation of the
26  Bane Act against Defendants County, Pisani, Briggs, Reiman and Stewart); paragraphs 266-273 (Tenth Cause of
    Action for retaliation in violation of the First Amendment under federal Section 1983); paragraphs 274-275 (Eleventh
27  Cause of Action against County only for ratification; policies and customs; and/or deliberately indifferent training).

    [31] Exhibit A Amended Complaint, paragraphs 262 (Bane Act), 270 (federal Section 1983).
28  [32] Exhibit A Amended Complaint, paragraphs 35-41.

1    If Defendants sincerely wanted to "offer such help" to Plaintiff[33] in the form of County

2    mental health services, at far less expense (to both the County budget and Plaintiff's rights) they

3    could simply have sent Plaintiff a postal mail letter explaining these services, and would have

4    communicated with infinitely greater clarity and detail than Defendant Pisani's falling apart when

5

6    questioned by Plaintiff, which was followed by Pisani staying on Plaintiff's residence property

7    after being ordered to leave[34], where Pisani stalked Plaintiff.[35] Defendant Sheriff's Sergeant

8    Briggs could also have sent Plaintiff a postal mail letter responding to her Police Report instead

9    of sending Pisani to carry out retaliation against Plaintiff.   Of course, sending only a postal mail

10   letter would have meant that Plaintiff would have been able to evaluate these services in the

11   privacy of her residence instead of having her privacy invaded by Pisani at the direction of

12

13   Briggs, Stewart and Reiman in order to retaliate against Plaintiff for her exercise of her First

14   Amendment and state law rights to file Police Reports as encouraged on Defendant County's

15   Sheriff's Department website.[36]

16   **C.  The Actual Facts of Defendants' Conduct As Pleaded in the Complaint and**
     **Amended Complaint – That Defendants Deliberately Hid from Plaintiff**

17

18   Plaintiff's in-home afternoon of December 14, 2020  was interrupted by Defendant Pisani

19   making an unannounced "drop by" or "cold call contact"[37] to Plaintiff. Defendant Pisani never

20   identified herself as a County employee and said she was from an unidentified "community

21   support team." Pisani then said that Pisani was aware of an "anonymous complaint" about

22   Plaintiff, about which Pisani a few seconds later said  "I think it was the Sheriff's Department

23

---

24   [33] As Defendants claim throughout their motion memorandum; see, e.g, page 1: 7-8 ("They were concerned for
     Plaintiff's well-being, so they went to her home to offer such help").

25

26   [34] McCrosskey Declaration Complaint, paragraphs 34-38; Exhibit A Amended Complaint, paragraphs 67-71.

     [35] McCrosskey Declaration Complaint, paragraph 35 (Pisani after being ordered to leave following Plaintiff on her
27   driveway); Amended  Complaint, paragraph 68 (same).

     [36] See Sacramento County Sheriff's Department website, www.sacsheriff.com , "Report Crime" and "Contact Us."
28   [37] Pisani Declaration, paragraph 4.

PLAINTIFF Ms. PARVIN OLFATI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' ANTI-SLAPP STATUTE MOTION TO STRIKE  12

who complained" about Plaintiff.[38] When Plaintiff then said to  Defendant Pisani: "So, the Sheriff Department has something to do with this?"  Defendant Pisani then said:  "well they forwarded some information stating you know",  Pisani never told Plaintiff the content of "the information" or the "anonymous complaint", or that the County Sheriff had sent Pisani on an entrapment mission to "check in other [police report] letter writer"[39] because "CST [Community Support Team] contact might be more effective" in dealing with Plaintiff's "identified belief law enforcement is stalking her and colluding against her"[40]. Plaintiff suffered severe emotional distress from her encounter with Pisani, especially from the realization that the Sheriff was "complaining" about Plaintiff and sending County employees unannounced to Plaintiff's front porch in what Defendants now reveal was an attempt to entrap Plaintiff.[41]  These records not disclosed to Plaintiff by Defendant County until January 28, 2022 revealed that the Pisani unannounced visit was a retaliatory ambush in response to Plaintiff's November 9, 2020 Police Report to the County Sheriff about the theft of her cellphone that occurred in the unincorporated County area known as Fair Oaks.[42] Plaintiff never received a communication or response from the Sheriff to this Police Report, but according to the Reiman Declaration[43], Sheriff's Sergeant Briggs gave Plaintiff's November 9, 2020 Police Report to Defendant Stewart[44] and demanded of Defendant Stewart: "get a mental health worker to check in with the letter writer because the complaint is unfounded" and "the letter suggests CST [Community Support Team] contact might be more effective [because of the letter writers'] (identified belief that law enforcement is stalking

---

[38] McCrosskey Declaration Complaint, paragraphs 30-31; Exhibit A Amended Complaint, paragraphs 62-65.

[39] Reiman Declaration,  Exhibit A, pages 2-3 (December 10, 2020 5:42 PM e mail).

[40] Ibid.

[41] Exhibit A Amended Complaint, paragraph 71.

[42] The Police Report as received by Defendant Briggs and the Sheriff is Exhibit B to the Reiman Declaration.

[43] Reiman Declaration, paragraph 4, and Exhibit A e mail string, at pages 2-3.

[44] Reiman Declaration, Exhibit A e mail string, pages 2-3 (December 10, 2020 5:42 p.m. email from Stewart to Reiman with a copy to Briggs), on page 3 referring to "the sergeant gave me the attached letter."

1    her and colluding against her)." [45]  Defendant Stewart then e mailed Defendant Reiman with a

2    copy to Sergeant Briggs.[46] The next day at 8:29 a.m., Defendant Reiman emailed Defendant

3    Pisani the Stewart e mail quoting Briggs.[47] Pisani then communicated with Stewart and referred

4

5    to Plaintiff as "this person *who has a restraining order against her by a city councilmen*

6    [sic]"(emphasis added)[48], and communicated this defamation to Reiman.[49] Neither Stewart,

7    Reiman, nor Pisani did any investigation as to existence of any such restraining order (that in fact

8    does not exist).[50] Nor did the County ever do any investigation of the alleged "unfounded" or

9    "indicative of potential mental health distress" of Plaintiff's police report.[51]  As alleged in the

10    Amended Complaint, if Defendants were seriously interested in offering mental health services to

11    Plaintiff they could have saved a great deal of money, not to mention avoiding the invasion of

12

13    Plaintiff's privacy and other rights, by using the simple expedient of a postal mail letter to

14    Plaintiff with all the mental health service offerings they cared to submit.[52] In contrast, when

15    Plaintiff asked Pisani "who are your resources", Pisani had no response[53] -- hardly "speech in

16    connection with a public issue."

17

18

---

[45] Reiman Declaration, Exhibit A e mail string, at pages 2-3 (December 10, 2020 5:42 PM, text on page 3 after "Hi boss").

[46] Reiman Declaration, Exhibit A e mail string, at pages 2-3 (December 10, 2020 5:42 PM).

[47] Reiman Declaration, Exhibit A e mail string, page 2 (December 11, 2020, 8:29 AM).

[48] Reiman Declaration, Exhibit A e mail string, page 2 (December 14, 2020 2:37 PM).

[49] Reiman Declaration, Exhibit A e mail string, page 2 (Pisani to Reiman e mail of December 14, 2020 2:37 PM).

[50] In its' PRA response 22-491, County admitted it had no records of any restraining order against Plaintiff by any Member of the Sacramento City Council. In City of Sacramento PRA response P028660-021522, the City of Sacramento stated that no such restraining order exists. The Court may take judicial notice of these and other PRA responses referenced herein that are on the public records portals of the City of Sacramento and County of Sacramento websites.  They are also attached to the Declaration of Ms. Parvin Olfati ("Olfati Declaration").

[51] County PRA response 22-471 ("no documents"). The Court may also take judicial notice of this document, which is also attached to the Olfati Declaration.

[52] Exhibit A Amended Complaint, paragraphs 30-31.

[53] McCrosskey Declaration Complaint, paragraph 33; Exhibit A Amended Complaint, paragraph 66.

1   **II.     Defendants' Government Employee Acts Are Not "Speech or Petitioning" And**
2   **Do Not Arise Under Either The First Amendment or the California Constitution**

3   As Defendants admit throughout their motion papers, the complained of acts of Defendants

4   Pisani, Briggs, Stewart and Reiman that Defendants describe as "protected activity" under CCP

5   Section 425.16, subdivision (e)(4), all were performed by these Defendants as part of their

6   employment with Defendant County.[54] These acts therefore do not arise under either the United

7   States Constitution First Amendment or the California Constitution, which is a foundational

8   requirement for applying the one California Anti-SLAPP Statute provision relied upon by the
9

10  Defendants, subdivision (e)(4) of CCP Section 425.16, and for which Defendants bear the burden

11  of proof. In *Garcetti v. Ceballos* (2006), 547 U.S. 410[55], the U.S. Supreme Court held that the

12  First Amendment did not protect the on-the-job speech of a county deputy district attorney:

13          "We hold that when public employees make statements pursuant to their official duties,
            the employees are not speaking as citizens for First Amendment purposes, and the
14          Constitution does not insulate their communications from employer discipline."

15

16  547 U.S. at 421, noting that "[t]he controlling factor in Ceballos' case is that his expressions were

17  made pursuant to his duties as a calendar deputy." (ibid.) and that "[w]hen a public employee

18  speaks pursuant to employment responsibilities . . . there is no relevant analogue to speech by

19  citizens who are not government employees."[56] Defendants Pisani, Briggs, Stewart and Reiman as
20
    County employees similarly and appropriately do not have any First Amendment immunity from
21
    victim lawsuits for their acts against Plaintiff.
22

23  Nor can Defendants avail themselves of California Constitution, Article I, Sections 2 or 3.

24  In *Kaye v. Board of Trustees of San Diego* (2009) 179 Cal.App.4th 48, 57-58, the California Court

25  of Appeal held that the *Garcetti v. Ceballos* analysis applies to California Constitution, Article I,

26  _____

27  [54] As is also alleged by Plaintiff in Complaint paragraph 11 and in the Amended Complaint paragraphs 13-16.
    [55] Exhibit B hereto.
28  [56] Exhibit B, *Garcetti v. Ceballos*, *supra* , 547 U.S. at 424.

PLAINTIFF Ms. PARVIN OLFATI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' ANTI-SLAPP STATUTE MOTION TO STRIKE  15

1    Section 2, and therefore found "no merit" to contrary contentions by a county law librarian

2    terminated from his position for his speech made as an employee rather than as a private citizen.

3    Thus, Defendant County is free at any time to intrude upon the speech of employee Defendants

4
     Briggs, Pisani, Reiman and Stewart without worrying about the Anti-SLAPP Statute that County
5
6    is using to defend it and these employees' retaliatory abuse of Plaintiff.[57]

7    **III.     Defendants' Purported Speech Was Not Made In Connection With A Public
               Issue In A Public Forum,  But Rather Was Retaliation To Place Plaintiff In A**
8    **       Captive Audience To Be Coerced Into Accepting Unwanted Services – The**
     **       County's Strategic Lawsuit Against Plaintiff's Political Participation**
9

10         Another prerequisite for applying the California Anti-SLAPP Statute is that the speech be

11   "in connection with a public issue." In making this analysis, "we must focus on 'the *specific*

12   *nature of the speech* rather than the generalities that might be abstracted from it."[58] Hence, where

13   "t]he message does not mention a public issue"[59], the Anti-SLAPP Statute does not apply,

14   especially where the message recipient (Plaintiff) is not in the public eye about the County's

15   generalized mental health speech: "the public was not fascinated with [message recipient] D.C.,
16
     nor was there widespread public interest in his personal life."[60]
17

18         Defendants in their motion memorandum make much of the County's interest in

19   communicating about mental health services.[61] However, Defendant Pisani in her intrusive "cold

20   knock call" never said anything about County mental health  services; as alleged in both

21   Complaints, Defendant Pisani when asked by Plaintiff "who are your resources", simply fell apart

22

23   ───────────────────
     [57] If Defendant County were to allow these Defendant employees to use County facilities for their personal First
24   Amendment activity, these Defendant employees and the County would be in violation of the Government Code
     Section 8314 prohibition of the use of government resources for political or personal purposes.

25   [58] *World Financial Group, Inc. v. HBW Ins. Financial Services, Inc.,* 172 Cal.App.4th 1561, 1570 (emphasis
     included).

26   [59] *D.C. v. R.R.*, (2010) 182 Cal.App.4th 1190, 1229. Defendant Pisani in her front porch spiel refused to answer
     Plaintiff's question: "who are your resources?" A simple postal mail letter would have done that.
27
     [60] *D.C. v. R.R., supra.*

28   [61] See, e.g., Defendants' motion memorandum, at 5:5 – 8: 7.

1    and did not provide information about any specific County mental health service.[62] Similarly,

2    there is no "widespread interest" in *Plaintiff's* use of unspecified County mental health

3    "resources" that Pisani was babbling about; the "widespread public interest" is in the availability

4

5    of these "resources", and County does and can advertise their availability through mass media or

6    postal mail that when used, do not intrude upon Plaintiff's privacy.

7         The primary case cited by Defendants  [*Rivero v. American Federation of State, County*

8    *and Municipal Employees, AFLCIO,* (2003) 105 Cal.App. 913] actually held that the California

9    Anti-SLAPP Statute *did not apply to statements by eight employees or their union about a job*

10   *supervisor,* because the job supervisor's conduct was not a "public issue."  In another case cited

11   but not analyzed by Defendants, our Supreme Court in *FilmOn.com Inc. v. DoubleVerify, Inc.*

12   (2019) 7 Cal.5[th] 133, 140, held that the California Anti-SLAPP Statute did not apply where:

13

14        "DoubleVerify's reports, *exchanged confidentially, without being part of any       attempt
          to participate in a larger discussion – do not qualify for anti-SLAPP protection* under the
15        catchall provision[63], even when the topic discussed is, broadly speaking, one of public
          interest" (emphasis added)[64]
16

17   because they are "too remotely connected to the public conversation about those issues", to merit

18   protection under the California Anti-SLAPP Statute. All of the purported "speech" of County,

19   Pisani, Briggs, Reiman, Stewart and the Does were made outside of any "public conversation"

20   and were to harm Plaintiff, either by ambushing Plaintiff on her front porch and staying there

21   after being told to leave, or in the case of the Does[65], by invading Plaintiff's privacy elsewhere, in

22

23   [62] McCrosskey Declaration Complaint, paragraph 33;  Exhibit A Amended Complaint, paragraph 66.

24   [63] CCP Section 425.16, subdivision (e)(4), the only provision relied upon by Defendants.

25   [64] This case is referenced by Defendants in their Motion Memorandum at pages 4-7 but ignore the above-quoted
     actual holding, likely because it exposes the error of Defendants' claim that everything Pisani did was offer mental
26   health services. In fact, when Plaintiff asked "who are your resources", Pisani did not answer.

27   [65] Defendants in their motion memorandum at  2: 6 state: "Here the County declares that it did not and does not
     employ anyone fitting Plaintiff's description of Does One and Two."  The cited source is the Reiman Declaration
28   paragraph 8, where Reiman only declares that she "do[es] not recognize" these descriptions and "[t]hey do not work
     for *County CST [Community Support Team]* (emphasis added) – meaning they  could easily work for Defendant
     County as employees not on the CST, and/or as non-employee agents or representatives.

1   stark contrast to Defendant County's speaking about mental health in multiple public *fora* that

2   pose no risk of imposing the County speech on an entrapped captive audience.

3   **IV.     Defendants' Purported Speech Is Illegal Conduct Not Covered By The Anti-
4           SLAPP Statute, Conduct For Which Defendants Are Not Immune**

5           A.   Plaintiff 's Residence Was  Trespassed by Defendant Pisani

6           Defendants' purported "speech" includes acts of trespass where Ms. Pisani remained on

7   Plaintiff's residence property after being ordered to leave[66], and continued to remain on Plaintiff's

8   residence property.[67]  The essence of a cause of action for trespass is an 'unauthorized entry onto
9
    the land of another'", and occurs when the trespass defendant intentionally "cross[ed] the
10
11  threshold of the [plaintiff's] home."[68]  Trespassing is a crime.[69]  As for Defendants' "quoted" case

12  of *Cobb v. City of Stockton* (2011) 192 Cal.App.4th 65, 72, neither the cited jump cite page nor

13  any other portion of the case[70] refers to "[w]alking onto another's property, knocking, and then

14  exercising free speech . . ." This is not surprising, because *Cobb* was an inverse condemnation

15  case and the holding is about the applicable statute of limitations.
16
            B.   Defendants' Reiman Declaration Admits That Briggs, Stewart, Reiman and Pisani
17               For County Retaliated Against And Defamed Plaintiff

18          As discussed in detail above, Defendants' Reiman Declaration, especially Exhibits A
19
    and B thereto, effectively admits that Plaintiff was retaliated against by Defendants for her
20
21  protected activity of filing the November 9, 2020 Police Report letter, and in the process was

22  defamed with the false statement that she was the restrained party in a Sacramento city

23  councilmember restraining order. The Bane Act makes retaliation for exercise of state law or

24  _____

25  [66] "Plaintiff ordered Pisani to leave Plaintiff's residence property": Complaint par.34, and Amended Complaint par.
    67. Defendants' statement at 13: 18-19 that Plaintiff did not give Pisani an "express order to leave" is false.

26  [67] See McCrosskey Declaration Complaint, paragraphs 35-38; Exhibit A Amended Complaint, paragraphs 68-71.

27  [68] *Miller v. National Broadcasting Company*, (1986) 187 Cal.App.3d 1463, 1480.

    [69] Penal Code Section 602, subdivision (l).

28  [70] Defendants' motion memorandum Table of Authorities also mis-cites this case as 192 Cal.App.4th 6.

1    federal constitutional rights not only subject of private civil actions such as the Amended

2    Complaint, but also Attorney General actions.[71] Defendant County in its' PRA response 22-491

3    that is has "no documents" regarding any restraining order against Plaintiff by any member of the

4    Sacramento City Council[72], yet Stewart, Reiman, and Pisani communicated to the contrary.

5

6          C.  <u>Defendants Pisani, Briggs, Stewart or Reiman Did Not Act As Policymakers, So Discretionary Immunity Is Not Available To Them</u>

7          Defendants' last resort is a claim that Government Code Section 820.2 "discretionary

8
9    immunity" bars all of Plaintiff's claims. However, this immunity is only available for acts in the

10   making of a basic policy decision at the planning stage rather than the operational stage; the

11   Pisani and Reiman Declarations both state that their acts were operational ones to implement a

12   police to implement "law enforcement process referrals", a policy already in place.[73] In addition,

13   Defendant County is liable for negligent training, supervision, and discipline of the individual

14   Defendants[74], who did indeed "create a particular risk or hazard and that harm materialized"[75] –

15   Briggs demand for "more effective" retaliation from Pisani and the CST against a Police Report

16   letter writer who wrote at the invitation of the special relationship created by the County through

17   website encouragement of the filing of police reports.
18

19   **V.    Conclusion And Plaintiff's Request For A Statement of Decision**

20         For the foregoing reasons, the Anti-SLAPP Statute Motion to Strike filed by Defendants

21   County and Pisani should be denied.  Pursuant to California Rules of Court Rule 3.1590,

22   Respondent requests the entry of a Statement of Decision on the following matters in controversy:

23
24

---

25   [71] Civil Code Section 52.1, subdivision (b).

26   [72] Olfati Declaration, paragraph 2(b).

27   [73] *Barner v. Leeds* (2000) 24 Cal.4th 676, 685; Pisani Declaration, paragraph 4; Reiman Declaration, paragraph 7.
     [74] *C.A. v. William S. Hart Union High School District* (2012) 54 Cal.4th 861.
28   [75] *Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1139.

1. The anti-SLAPP movant Defendants failed to serve the Judicial Council via fax or electronic mail with the endorsed caption page of their Notice of Motion, as is required by CCP Section 425.16, subdivision (j)(1).

2. The Anti-SLAPP Statute does not apply for either of two reasons: (i) all speech and acts by Defendants were made in their capacities as government employees, so they do not arise under the First Amendment or the California Constitution; and/or (ii) none of the speech and acts by Defendants were in connection with any public issue of advertising of County mental health services.

3. Even if the Anti-SLAPP Statute did apply, Plaintiff has met her burden of proving a reasonable probability of success on the facts and claims as stated in her Amended Complaint, facts and claims that she was unaware of until the January 28, 2022 filing by the Defendants of the Jennifer Reiman Declaration and exhibits thereto. The County records on their face state that Defendant Pisani was sent to make an unannounced visit to Plaintiff as directed by Defendant Sheriff's Sergeant Briggs because Briggs found Plaintiff's November 9, 2020 Police Report to be "unfounded" and wanted Defendants' Community Support Team to take action to prevent Plaintiff from filing future Police Reports with the County Sheriff by forcing Plaintiff to receive unwanted mental health services from Defendant County.

Respectfully submitted,

/s/ STEVEN MARK KAMP (California State Bar Number 116817), Attorney for Plaintiff

STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
Electronic Mail Address:
Telephone: (916) 501-1791 (cellular, voice/text)
Attorney for Respondent Ms. Parvin Olfati

DATED: April 6, 2022

1  **DECLARATION OF SERVICE IN PERSON, AND VIA FAX TO THE JUDICIAL COUNCIL OF CALIFORNIA**

2

3  I, STEVEN M. KAMP, declare and state as follows:

4  1.   I am over the age of 18, and reside in the County of Sacramento, State of California.

5  2.   I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

6  3.   On April 6, 2022, I caused to be served by hand delivery on counsel for the Defendants in this action true and correct copies of:

7  **PLAINTIFF Ms. PARVIN OLFATI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS COUNTY OF SACRAMENTO AND PAMELA PISANI'S MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

8

9  4. Service was effected in person on  April 6, 2022 by:

10

11   Personally delivering copies to Porter Scott, 350 University Avenue, Suite 200,k Sacramento, California 95825 of the above-referenced document in a manila envelope addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200, Sacramento, CA 95825;

12

13

14  5.  Also on April  6, 2022, as required by Code of Civil Procedure Section 425.16, subdivision (j)(1), I faxed the endorsed, filed caption page of

15

16  **PLAINTIFF Ms. PARVIN OLFATI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS COUNTY OF SACRAMENTO AND PAMELA PISANI'S MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

17

18  to (415) 865-4315 (telephone 415-865-4200), the fax number of the Judicial Council of California, addressed on the fax cover sheet as follows: "Attention: SLAPP Coordinator, Judicial Council of California, Administrative Office of the Courts, RE: SLAPP Documents Per CCP Section 425.16."

19

20

21  I declare under penalty of perjury that the foregoing statements are based on personal knowledge, and are true and correct. Executed at Sacramento, California, this 6 day of April, 2022.

22

23  /s/ STEVEN MARK KAMP (California State Bar Number 116817)
STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822

24  Electronic Mail Address: steve.kamp@comcast.net
Telephone: (916) 501-1791 (cellular, voice/text)

25  Attorney for Plaintiff Ms. Parvin Olfati

26

27

28

1   STEVEN MARK KAMP (California State Bar Number 116817)
    STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
2   Electronic Mail Address: steve.kamp@comcast.net
3   Telephone: (916) 501-1791 (cellular, voice/text)
    Attorney for Plaintiff Ms. Parvin Olfati
4

5

6

7

8

9                IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  IN AND FOR THE COUNTY OF SACRAMENTO

11

12                                              No.  34-2021-00310164-CU-CE-GDS

13   Ms. PARVIN OLFATI, Plaintiff            **EXHIBITS IN SUPPORT OF PLAINTIFF'S
                                             OPPOSITION MEMORANDUM TO
14        v.                                 DEFENDANTS COUNTY OF
                                             SACRAMENTO AND PAMELA PISANI'S
15                                           MOTION TO STRIKE PURSUANT TO
     COUNTY OF SACRAMENTO; PAMELA            CODE OF CIVIL PROCEDURE SECTION
16   PISANI; JENNIFER REIMAN;                425.16**
     JENNIFER STEWART; SHERIFF'S
17   SERGEANT RONALD BRIGGS; JANE            **Date: April 20, 2022**
     ROE DEFENDANT ONE; JANE ROE
18   DEFENDANT TWO;  JANE ROE                **Time: 9:00 a.m.**
     DEFENDANTS 3-100; JOHN DOE
19   DEFENDANTS 1-100,  Defendants           **Department: 54**

20                                           **Reservation No.: 2613497**

21                                           **Complaint Filed: 10/25/21 [First Amended
                                             Complaint Filed 04/06/21 ]**
22

23        **Exhibit A: Plaintiff's Amended Complaint filed April 6, 2022**

24        **Exhibit B: United States Supreme Court decision in *Garcetti v. Ceballos* (2006) 547
25        U.S. 410**

26

27

28

     EXHIBITS IN SUPPORT OF PLAINTIFF's OPPOSITION TO DEFENDANTS' ANTI-SLAPP STATUTE
     MOTION 1

1   **DECLARATION OF SERVICE IN PERSON**

2   I, STEVEN M. KAMP, declare and state as follows:

3   1.   I am over the age of 18, and reside in the County of Sacramento, State of California.

4   2.   I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

5   3.   On April 6, 2022, I caused to be served by hand delivery on counsel for the Defendants in this action true and correct copies of:

6
7   **EXHIBITS IN SUPPORT OF PLAINTIFF'S OPPOSITION MEMORANDUM TO DEFENDANTS COUNTY OF SACRAMENTO AND PAMELA PISANI'S MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16**

8
9   4. Service was effected in person on  April 6 2022 by:

10
11      Personally delivering a true and correct copy of the above-referenced document to Porter Scott, 350 University Avenue, Suite 200, Sacramento, California 95825 in a manila
12      envelope addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200, Sacramento, CA 95825;

13
14   I declare under penalty of perjury that the foregoing statements are based on personal knowledge, and are true and correct. Executed at Sacramento, California, this ⟨⟩ day of April, 2022.

15   /s/ STEVEN MARK KAMP (California State Bar Number 116817)
     STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
16   Electronic Mail Address: steve.kamp@comcast.net
     Telephone: (916) 501-1791 (cellular, voice/text)
17   Attorney for Plaintiff Ms. Parvin Olfati

18

19

20

21

22

23

24

25

26

27

28

EXHIBITS IN SUPPORT OF PLAINTIFF's OPPOSITION TO DEFENDANTS' ANTI-SLAPP STATUTE MOTION 2

1  STEVEN MARK KAMP (California State Bar Number 116817)
   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
2  Electronic Mail Address: steve.kamp@comcast.net
3  Telephone: (916) 501-1791 (cellular, voice/text)
   Attorney for Plaintiff Ms. Parvin Olfati
4

5

6

7

8

9              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10             IN AND FOR THE COUNTY OF SACRAMENTO

11

12                                           No.  34-2021-00310164-CU-CE-GDS

13  Ms. PARVIN OLFATI, Plaintiff             **DECLARATION OF PLAINTIFF Ms.
                                             PARVIN OLFATI IN SUPPORT OF
14        v.                                 PLAINTIFF'S OPPOSITION
                                             MEMORANDUM TO DEFENDANTS
15                                           COUNTY OF SACRAMENTO AND
    COUNTY OF SACRAMENTO; PAMELA             PAMELA PISANI'S  MOTION TO STRIKE
16  PISANI; JENNIFER REIMAN;                 PURSUANT TO CODE OF CIVIL
    JENNIFER STEWART; SHERIFF'S              PROCEDURE SECTION 425.16**
17  SERGEANT RONALD BRIGGS; JANE
    ROE DEFENDANT ONE; JANE ROE              **Date: April 20, 2022**
18  DEFENDANT TWO;  JANE ROE
    DEFENDANTS 3-100; JOHN DOE               **Time: 9:00 a.m.**
19  DEFENDANTS 1-100,  Defendants
                                             **Department: 54**
20
                                             **Reservation No.: 2613497**
21
                                             **Complaint Filed: 10/25/21 [First Amended
22                                           Complaint Filed 04/06/22 ]**

23

24

25

26

27

28

1     **I, Ms. PARVIN OLFATI, declare and state as follows:**

2     1. I am the Plaintiff in this action. I have personal knowledge of the facts set forth in this

3        Declaration.

4

5     2. Attached hereto are a true and correct copies of the following Public Records Act requests

       I sent to the County of Sacramento ("County") Clerk of the Board Office, *with the County*

6

7        *responses handwritten by the County at the top of the document*:

8       (a) PRA [22]-471: County responds "no documents" to my PRA request for: "Sheriff's

9           Department or County Behavioral Health records of any investigation or

10           determination  that the November 9, 2020 Parvin Olfati Police Report/Crime Report

11           was: (i) "unfounded"; (ii) was a 'complaint indicative of potential mental health

12

13           distress'; or (iii) merited referring the police report/crime report author and her address

14           to County Behavioral Health, MCST, and/or POP."

15       (b) PRA 22-491: County responds "no documents" to my PRA request for: documents

16           that constitutes, mentions, refers to, or relates to any "1. Restraining order against

17           Parvin Olfati by any member of the Sacramento City Council."

18     3. I note that PRA Request 22-471 was sent separately to both the County Clerk of the Board

19        of Supervisors Office, and to the County Sheriff – based on the directions on the County

20

21        website. The "no documents" response to PRA 22-471 comes from the Clerk of the Board

22        Office. The County Sheriff has never responded to this PRA request; has never responded

23        to the twenty-five PRA requests in Exhibit Eleven to my First Amended Complaint; and

24        has also not responded to numerous other PRA requests that I have sent directly to the

25        County Sheriff as directed on the County website portal for PRA requests.

26     4. I am not now, nor have I ever been, the restrained party in any restraining order obtained by

27

28        any member of the Sacramento City Council. Attached hereto is a true and correct copy of

DECLARATION OF PLAINTIFF Ms. PARVIN OLFATI IN SUPPORT OF PLAINTIFF's OPPOSITION TO
DEFENDANTS' ANTI-SLAPP STATUTE MOTION 2

1    the City of Sacramento PRA Response to my PRA request catalogued as Public Records

2    Reference # P028660-021522, where the City of Sacramento correctly states that on

3    February 14, 2022, I sent the City a PRA request "regarding any City Council Member

4    restraining order against Parvin Olfati", and responds: "The City does not have any

5    records that are responsive to your request."

6

7    I declare under penalty of perjury under the laws of the State of California that the statements

8    herein are true and correct, and that this Declaration was executed in Sacramento, California on

9    April 6, 2022.

10    /s/ Ms. Parvin Olfati



1    **DECLARATION OF SERVICE IN PERSON**

2    I, STEVEN M. KAMP, declare and state as follows:

3    1.    I am over the age of 18, and reside in the County of Sacramento, State of California.

4    2.    I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

5    3.    On April 2022, I caused to be served by hand delivery on counsel for the Defendants in this action true and correct copies of:

6

7    **DECLARATION OF PLAINTIFF Ms. PARVIN OLFATI IN SUPPORT OF PLAINTIFF'S OPPOSITION MEMORANDUM TO DEFENDANTS COUNTY OF SACRAMENTO AND PAMELA PISANI'S  MOTION TO STRIKE PURSUANT TO**

8    **CODE OF CIVIL PROCEDURE SECTION 425.16**

9

10    4. Service was effected in person on  April 2022 by:

11      Personally delivering a true and correct copy of the above-referenced document to Porter

12      Scott, 350 University Avenue, Suite 200, Sacramento, California 95825 in a manila envelope addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite

13      200, Sacramento, CA 95825;

14    and by

15      (b) Personally placing in a United States Postal Service mailbox a sealed envelope that contained a true and correct copy of the above-referenced document. The sealed envelope

16      contained sufficient first class postage and was addressed as follows:  Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200, Sacramento, CA 95825

17

18    I declare under penalty of perjury that the foregoing statements are based on personal knowledge, and are true and correct. Executed at Sacramento, California, this 6th day of April, 2022.

19    _____._____
   /s/ STEVEN MARK KAMP (California State Bar Number 116817)

20    STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
   Electronic Mail Address: steve.kamp@comcast.net

21    Telephone: (916) 501-1791 (cellular, voice/text)
   Attorney for Plaintiff Ms. Parvin Olfati

22

23

24

25

26

27

28

DECLARATION OF PLAINTIFF Ms. PARVIN OLFATI IN SUPPORT OF PLAINTIFF's OPPOSITION TO DEFENDANTS' ANTI-SLAPP STATUTE MOTION 4

No documents

Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822

January 31, 2022

<u>Via personal delivery only to:</u> Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA 95814

<u>Via U.S. Mail to:</u>
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

**RE:** **Public Records Act Request – County of Sacramento Sheriff's Department or County Behavioral Health Records Of Any Investigation or Other Activity Related To Any Determination That The November 9, 2020 Parvin Olfati Police Report/Crime Report Was "Unfounded" or Was A "Complaint Indicative of Potential Mental Health Distress"**

Dear Sir or Madam:

Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought." This records request is for documents created, transmitted, received and/or stored on any computer or other medium in any of the following County of Sacramento (County) operations:

1. County Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Mental Health Unit, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative.
2. County Mobile Crisis Support Team ("MCST") and/or MCST-assigned Sheriff's Department officers and/or Senior Mental Health Counselors.
3. County Division of Behavioral Health Services ("County Behavioral Health") employees Jennifer Stewart, Jennifer Reiman, and/or Pamela Pisani.
4. Problem Oriented Policing (POP) at the Sacramento Sheriff's Department North Division.
5. County Sheriff Sergeant Ronald Briggs.
6. County Mental Health Program Coordinator Jennifer Reiman.
7. County Senior Mental Health Counselor Jennifer Stewart.

that constitute, mention, refer to, and/or relate to any investigation or activity related to any determination that the November 9, 2020 Parvin Olfati Police Report/Crime Report was: (i) "unfounded"; (ii) was a "complaint indicative of potential mental health distress"; or (iii) merited referring the police report/crime report author and her address to County Behavioral Health, MCST, and/or POP.

As required by Government Code Section 6253(c), please respond within ten (10) calendar days of your receipt of this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section 6258 if this request is not granted.

Very truly yours,

Ms. Parvin Olfati

1

Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822

January 31. 2022

<u>Via personal delivery only to:</u> Disclosure Officer. County of Sacramento. Clerk of the Board Office. Suite 2450. 700 "H" Street. Sacramento. CA 95814

RE:     Public Records Act Request – County of Sacramento Division of Behavioral Health Services Jennifer Reiman Records Of Electronic Mail, Text Messages, CAD, or Other Communications That Mention, Refer to, or Relate to Any Sacramento City Councilmember Restraining Order Against Parvin Olfati

Dear Sir or Madam:

Attached to a County-submitted declaration from Jennifer Reiman is a December 28, 2020 electronic mail message authored by Jennifer Reiman to Rolanda Adams. The Reiman memorandum states: "This individual [Parvin Olfati] had a restraining order against her by a city councilmen" [sic].

Therefore. pursuant to Article I. Section 3(b) of the California Constitution (added by Proposition 59. effective November 3. 2004) and the California Public Records Act (PRA). please produce the following documents. records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought." This records request is for documents created. transmitted. received and/or stored on any Jennifer Reiman computer or other medium in the County Division of Behavioral Services that constitutes. mentions. refers to. and/or relates to any:

1.    Restraining order against Parvin Olfati by any member of the Sacramento City Council.

As required by Government Code Section 6253(c). please respond within ten (10) calendar days of your receipt of this letter. and please either produce all requested documents. records. and/or writings within ten (10) calendar days of your receipt of this letter. or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section 6258 if this request is not granted.

Very truly yours.

Ms. Parvin Olfati

COUNTY OF SACRAMENTO
BOARD OF SUPERVISORS
2022 JAN 31  PM 4: 03

1

1  STEVEN MARK KAMP (California State Bar Number 116817)
   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
2  Electronic Mail Address: steve.kamp@comcast.net
   Telephone: (916) 501-1791 (cellular, voice/text)
3  Attorney for Plaintiff Ms. Parvin Olfati
4
5
6
7
8
                 IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                   IN AND FOR THE COUNTY OF SACRAMENTO
10
11
                                      | No. **34-2021-00310164-CU-CE-GDS**
12
13  Ms. PARVIN OLFATI, Plaintiff         **DECLARATION OF STEVEN MARK
                                         KAMP IN SUPPORT OF PLAINTIFF'S
14          v.                          OPPOSITION MEMORANDUM TO
                                         DEFENDANTS COUNTY OF
15  COUNTY OF SACRAMENTO; PAMELA         SACRAMENTO AND PAMELA PISANI'S
    PISANI; JENNIFER REIMAN;             MOTION TO STRIKE PURSUANT TO
16                                       CODE OF CIVIL PROCEDURE SECTION
    JENNIFER STEWART; SHERIFF'S          425.16**
17  SERGEANT RONALD BRIGGS; JANE
    ROE DEFENDANT ONE; JANE ROE          **Date: April 20, 2022**
18  DEFENDANT TWO;  JANE ROE
    DEFENDANTS 3-100; JOHN DOE           **Time: 9:00 a.m.**
19  DEFENDANTS 1-100,  Defendants
                                         **Department: 54**
20
                                         **Reservation No.: 2613497**
21
                                         **Complaint Filed: 10/25/21 [First Amended
22                                       Complaint Filed 04/06/21 ]**
23
24       I,  STEVEN MARK KAMP, declare and state as follows:

25     1.  I represent the Plaintiff (Ms. Parvin Olfati) in this action. I have personal knowledge of the

26         facts set forth in this Declaration. I am an attorney at law licensed to practice in all state

27         and federal courts in the State of California, the U.S. Court of Appeals for the Ninth

28         Circuit, and the United States Supreme Court. I have been an active member of the State

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's OPPOSITION TO
DEFENDANTS' ANTI-SLAPP STATUTE MOTION 1

1    Bar of California continuously since 1984 and an active member of The Florida Bar

2    continuously since 1982. I am also admitted to practice in the District of Columbia.

3    2.   I have personal knowledge of the facts stated herein.

4    3.   Attached hereto is a true and correct electronic copy of the January 24, 2022 letter sent by

5    Plaintiff's undersigned counsel to counsel for the Defendants, Carl Fessenden, Esq. of the

6    Porter Scott law firm. As stated therein, this letter was sent in response to a letter from Mr.

7    Fessenden stating that unless Plaintiff voluntarily dismissed her initial Complaint,

8    Defendants would file an Anti-SLAPP Statute motion. As also stated therein, Plaintiff

9    refused to dismiss her Complaint, because the purported "speech" and conduct of the

10   Defendants was all made in Defendant Pisani's capacity as a government employee, and

11   under the United States Supreme Court decision in *Garcetti v. Ceballos* (2006) 547 U.S.

12   410. The letter also discussed other authority in opposition to the Anti-SLAPP Statute

13   motion Defendants' counsel said they intended to bring.

14

15

16   4.   The undersigned counsel never received a response to the January 24, 2022 letter, but on

17   January 29, 2022, received in the postal mail Defendants' Anti-SLAPP Statute Motion

18   and related documents.

19   I declare under penalty of perjury under the laws of the State of California that the statements

20   herein are true and correct, and that this Declaration was executed in Sacramento, California on

21   April 6, 2022.

22

23   /s/ Steven Mark Kamp, Attorney for Plaintiff Ms. Parvin Olfati

24

25

26

27

28

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's OPPOSITION TO
DEFENDANTS' ANTI-SLAPP STATUTE MOTION 2

1     *STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, [1]California 95822*
    *Electronic Mail Address: steve.kamp@comcast.net*
2     *Telephone Number: (916) 501-1791 (cellular, voice/text)*
                           January 24, 2022
3     Via electronic mail to cfessenden@porterscott.com  and via U.S. Mail
    Carl Fessenden, Esq., Porter Scott, 350 University Drive, Suite 200, Sacramento, CA 95825
4
    RE: *Ms. Parvin Olfati vs. County of Sacramento, Pamela Pisani, et al.*, **Sacramento County**
5     **Superior Court Case No. 34-2021-00310164-CU-CE-GDS; your letter dated January 20,**
    **2022; Plaintiff's discovery demands to County and Pisani**
6
    Dear Mr. Fessenden:
7

8     The County/Pisani Answer was received by both electronic mail and postal mail. Your January
    20, 2022 letter was received only via electronic mail, likely because you made a one-time spelling
9     error of Plaintiff's counsel's street address as "Pertrilli" Circle instead of the correct "Petrilli
    Circle" as you used in your previous letter. There is no need to mail another copy of your January
10     20 letter; I am mentioning this only to advise you for future postal mailed correspondence.

11     Enclosed please find Plaintiff's first set of discovery demands, separately to Defendant County
12     and Defendant Pisani. Responses are due thirty-five calendar days from January 24, 2022, via
    postal mail. The discovery demands for each of County and Pisani consist of: (i)  a First Set
13     production of documents demand; and (ii) selected box-checked form interrogatories.

14     Regarding your January 20, 2022 letter, your letter on its' face discloses that the California Anti-
    SLAPP Statute [Code of Civil Procedure [CCP] Section 425.16] does not apply to the facts
15     alleged in the Complaint.  As you admit in the first full paragraph on page 2, Ms. Pisani's
16     complained of acts, including the acts you describe as "protected activity" under CCP Section
    425.16, subdivision (e)(4), all were performed by Pisani as part of her employment with the
17     County, as also alleged in Plaintiff's Complaint paragraph 11. They therefore do not arise under
    either the United States Constitution First Amendment or California Constitution, which as you
18     know is a prerequisite to applying the California Anti-SLAPP Statute, for which your clients bear
19     the burden of proof. In *Garcetti v. Ceballos* (2006), 547 U.S. 410, the United States Supreme
    Court held that the First Amendment did not protect the on-the-job speech of a Los Angeles
20     County District Attorney because:
           "We hold that when public employees make statements pursuant to their official duties,
21            the employees are not speaking as citizens for First Amendment purposes, and the
           Constitution does not insulate their communications from employer discipline.:"
22     547 U.S. at 421. Ms. Pisani as a County employee similarly does not have any First Amendment
23     protection from victim lawsuits for her trespass of Plaintiff's residence property, invasion of
    Plaintiff's privacy, placing Plaintiff in a false light, defaming Plaintiff, causing Plaintiff emotional
24     distress, and committing negligence. In *Kaye v. Board of Trustees* (2009) 179 Cal.App.4[th] 48, 57-
    58, the California Court of Appeal held that the *Garcetti v. Ceballos* analysis applies to California
25     Constitution, Article I, Section 2, and therefore found "no merit" to contrary contentions by a
    county law librarian terminated from his position for speech made as an employee rather than as a
26     private citizen. As counsel for the County, you are no doubt aware of this authority holding that
27     neither the First Amendment nor the California Constitution protect County employee on-duty

28     ——————————————
    [1]

    DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's OPPOSITION TO
    DEFENDANTS' ANTI-SLAPP STATUTE MOTION 3

1   speech from employer discipline, and presumably would not hesitate to apply it to Ms. Pisani's
2   on-duty speech should it be in violation of County policy or law. Plaintiff's Complaint made as a
    private citizen victimized by Pisani is no different.

3       Another prerequisite for applying the California Anti-SLAPP Statute, as admitted in your
4   letter, is that the speech be "in connection with a public issue." The case you cite [*Rivero v.
    American Federation of State, County and Municipal Employees, AFLCIO,* (2003) 105 Cal.App.
5   913] actually held that the California Anti-SLAPP Statute *did not apply to statements by eight
    employees or their union about a job supervisor,* because the job supervisor's conduct was not a
6   "public issue." In a case you do not cite, the California Supreme Court in *FilmOn.com Inc. v.
7   DoubleVerify, Inc.,* (2019) 7 Cal.5th 133, 140, held that the California Anti-SLAPP Statute did not
    apply where:
8       "DoubleVerify's reports, *exchanged confidentially, without being part of any       attempt
        to participate in a larger discussion – do not qualify for anti-SLAPP protection* under the
9       catchall provision, even when the topic discussed is, broadly speaking, one of public
        interest" (emphasis added)
10  because they are "too remotely connected to the public conversation about those issues", to merit
11  protection under the California Anti-SLAPP Statute. All of the acts of Pisani and the Does were
    made outside of any "public conversation" and as part of efforts to harm Plaintiff. In addition,
12  they include acts of trespass where Ms. Pisani remained on Plaintiff's residence property after
13  being ordered to leave, and continued to remain on Plaintiff's residence property; see Complaint
    paragraphs 35-38. As for your cited case of *Cobb v. City of Stockton* (2011) 192 Cal.App.4th 65,
14  72, neither your jump cite page nor any other portion of the case refers to "[w]alking onto
    another's property, knocking, and then exercising free speech . . ." This is not surprising, because
15  *Cobb* was an inverse condemnation case and the holding is that the applicable statute of
    limitations began to run when an eminent domain proceeding was dismissed. Finally, your claim
16  that Pisani has Government Code Section 820.2 discretionary immunity is without merit, because
17  Pisani is not a policy-making employee; Plaintiff's discovery demands enclosed herewith include
    the Pisani duty statements, and as you admit in your letter in the third full paragraph on page 2,
18  "[s[]he was acting *in accordance with her job duties…*" (emphasis added).   Nor is the County
    immune from a negligent training claim, since the California Supreme Court upheld such a claim
19  in a claim against a public entity in the case referenced in the Complaint at page 27: 18, *C.A. v.
    William S. Hart Union High School District,* (2012) 53 Cal.4th 861.
20
    In the event that either or both of your clients file a California Anti-SLAPP Statute Motion,
21  Plaintiff will seek California Code of Civil Procedure Section 128.5 sanctions. Plaintiff will also
22  contemporaneously request the Court require specified discovery under CCP Section 425.16(g)
    (third sentence) that will include some or all of the enclosed and subsequent discovery demands.
23
    I look forward to both of your clients' timely and complete responses to Plaintiff's enclosed first
24  discovery demands. Thank you for your attention to this matter.

25  Very truly yours,
26  /s/ Steven Mark Kamp, State Bar of California Number 116817
    Attorney for Plaintiff Ms. Parvin Olfati
27  Enclosures: Plaintiff's discovery demands
    CC with Enclosures: Ms. Parvin Olfati
28

    DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's OPPOSITION TO
    DEFENDANTS' ANTI-SLAPP STATUTE MOTION 4

1 **DECLARATION OF SERVICE IN PERSON**

2 I, STEVEN M. KAMP, declare and state as follows:

3 1.    I am over the age of 18, and reside in the County of Sacramento, State of California.

4 2.    I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

5 3.    On April   , 2022, I caused to be served by hand delivery on counsel for the Defendants in this action true and correct copies of:

6

7 **DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF'S OPPOSITION MEMORANDUM TO DEFENDANTS COUNTY OF SACRAMENTO AND PAMELA PISANI'S  MOTION TO STRIKE PURSUANT TO CODE OF CIVIL**

8 **PROCEDURE SECTION 425.16**

9

10 4. Service was effected in person on  April      2022 by:

11 Personally delivering a true and correct copy of the above-referenced document to Porter Scott, 350 University Avenue, Suite 200, Sacramento, California 95825 in a manila envelope

12 addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200,

13 Sacramento, CA 95825;

14

15 I declare under penalty of perjury that the foregoing statements are based on personal knowledge, and are true and correct. Executed at Sacramento, California, this ___ day of April, 2022.

16 _____._____
/s/ STEVEN MARK KAMP (California State Bar Number 116817)
STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822

17 Electronic Mail Address: steve.kamp@comcast.net

18 Telephone: (916) 501-1791 (cellular, voice/text)
Attorney for Plaintiff Ms. Parvin Olfati

19

20

21

22

23

24

25

26

27

28

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's OPPOSITION TO
DEFENDANTS' ANTI-SLAPP STATUTE MOTION 5

1  **PORTER | SCOTT**
   A PROFESSIONAL CORPORATION
2  Carl L. Fessenden, SBN 161494
   Jordan M. McCroskey, SBN 340068
3  350 University Ave., Suite 200
   Sacramento, California 95825
4  TEL: 916.929.1481
   FAX: 916.927.3706
5

6  Attorneys for Defendants
   COUNTY OF SACRAMENTO and PAMELA PISANI
7  *Exempt from Filing Fees Pursuant to Government Code § 6103*

8

9          SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

10

11  MS. PARVIN OLFATI,                          CASE NO.  34-2021-00310164

12          Plaintiffs,                 **DEFENDANTS COUNTY OF SACRAMENTO
                                         AND PAMELA PISANI'S REPLY TO**
13                                       **PLAINTIFF'S OPPOSITION TO SPECIAL**
    v.                                   **MOTION TO STRIKE (CCP § 425.16)**
14

15  COUNTY OF SACRAMENTO; PAMELA         **Date: April 20, 2022**
    PASANI; JANE ROE DEFENDANT ONE;      **Time: 9:00 a.m.**
16  JANE ROE DEFENDANT TWO; JANE         **Dept.: 54**
    ROE DEFENDANT 3-100, JOHN DOE        **Reservation No.: 2613497**
17  DEFENDANTS 1-100,
18

19          Defendants.                  Complaint Filed: 10/25/21

20

21          Defendants COUNTY OF SACRAMENTO and PAMELA PISANI (collectively "Defendants"),

22  hereby submit the following reply to Plaintiff PARVIN OLFATI's ("Plaintiff") opposition to

23  Defendants' Special Motion to Strike pursuant to Code of Civil Procedure section 425.16.

24                                          **I.**

25                                   **INTRODUCTION**

26          Defendants filed this motion on the grounds that the Complaint and each cause of action therein

27  fall squarely within the scope of Code of Civil Procedure § 425.16, subdivision (e)(4). Each cause of

28  action arises from speech or conduct relating to a public issue. And Plaintiff has not presented any

{02613172.DOCX}                                 1
**DEFENDANTS COUNTY OF SACRAMENTO AND PAMELA PISANI'S REPLY TO PLAINTIFF'S OPPOSITION
TO SPECIAL MOTION TO STRIKE (CCP § 425.16)**

**FILED/ENDORSED**

APR 13 2022

By: _____
    E. Macdonald
    Deputy Clerk

1  admissible evidence establishing a probability that she will prevail on each of her claims.  (Code Civ.
2  Proc., § 425.16, subd. (b)(1).)

3                                              II.

4                                         **ARGUMENTS**

5      A.      **Plaintiff cannot amend her complaint.**

6          Plaintiff attempted to amend her complaint in conjunction with filing her opposition to
7  Defendants' special motion to strike[1].  This is improper for two reasons.

8          First, Plaintiff did not ask the court for leave to amend, per Code of Civil Procedure section 472.
9  Here, the Defendants have filed an answer, therefore leave of court is required.

10         Second, even if Plaintiff asked for leave to amend, it would not be allowed, as Code of Civil
11 Procedure section 472 "shall not apply to a special motion to strike pursuant to Section 425.16."  (Code
12 Civ. Proc., § 472, subd. (b).)  Plaintiff argues subdivision (b) does not apply, as the "Amended Complaint
13 is not an attempt to evade the Anti-SLAPP Statute by restating original Complaint facts, but rather adds
14 allegations and causes of action based on newly discovered facts that the County kept hidden from
15 Plaintiff."  This is not the law.

16         "*Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073–1074 (*Simmons*), establishes
17 there is no express or implied right in section 425.16 to amend a pleading to avoid a SLAPP motion."
18 (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1055.)  This
19 applies whether Plaintiff seeks to amend as a matter of right or by petition.  (*Ibid.*)

20         Given the above, Plaintiff's amended complaint is moot.  And any future amendments made
21 while the Anti-SLAPP motion is pending should also be rejected.

22     B.      **Public entities and employees can bring Anti-SLAPP motions.**

23         Plaintiff cites *Garcetti v. Ceballos* (2006) 547 U.S. 410 and *Kaye v. Board of Trustees of San*
24 *Diego* (2009) 179 Cal.App.4th 48 for the proposition that government entities and employees are barred
25 from asserting special motions to strike under Code of Civil Procedure section 425.16.  (Opposition at p.
26 9, 15-16.)  This is incorrect.

27 ───────────────────
28 [1] The court has recently rejected the filing of the Amended Complaint. See ROA Entry 24 ["We are unable to process the
   attached papers for the reasons indicated below: Document Rejected: First Amended Complaint. An answer was filed on
   1/18/22. Leave of Court is required to allow an amended complaint to be filed."].)
   {02613172.DOCX}                                    2
   **DEFENDANTS COUNTY OF SACRAMENTO AND PAMELA PISANI'S REPLY TO PLAINTIFF'S OPPOSITION**
   **TO SPECIAL MOTION TO STRIKE (CCP § 425.16)**

1    In *Vargas v. City of Salinas*, 46 Cal. 4th 1, 16 (2009), the court decided Code of Civil Procedure
2  section 425.16 should be construed broadly.  The Court held that, in light of the inclusion of public
3  entities in Code of Civil Procedure section 425.18, subdivision (i), Anti-SLAPP protection extends to all
4  government entities and employees.  (*Ibid.*; see also *Schroeder v. Irvine City Council*, 97 Cal. App. 4th
5  174, 195 (4th Dist. 2002); *Hansen v. California Dept. of Corrections and Rehabilitation*, 171 Cal. App.
6  4th 1537, 1547 (5th Dist. 2008); *Doe v. State*, 8 Cal. App. 5th 832, 839–840 (4th Dist. 2017) [collecting
7  cases; "The State was not categorically barred from filing an anti-SLAPP motion."]; *San Diego County*
8  *Water Authority v. Metropolitan Water District of Southern California*, 12 Cal. App. 5th 1124 (1st Dist.
9  2017), [collecting cases; "several appellate courts, applying the statute authorizing special motions to
10 strike strategic lawsuits against public participation … have held that government entities do have First
11 Amendment rights, including the right to petition"]; *Blue v. California Office of the Inspector General*,
12 23 Cal. App. 5th 138, 153–155 (3d Dist. 2018) [collecting line of cases since *Vargas*].)

13    **C.    Defendants' actions were not motivated by retaliation.**

14    Plaintiff boldly claims, with no evidentiary support, that Defendants' actions "in fact arose in the
15 implementation by Defendant Pisani of the retaliatory Defendant Sheriff Sergeant Briggs directive to
16 have 'a mental health worker check in' on Plaintiff, for Plaintiff exercising her First Amendment and
17 Article 1, Section 2 and 3 rights in sending a Police Report to the County Sheriff that Defendant Briggs
18 objected to."  (Plaintiff's Opposition at p. 10.)  Such unfounded assertions cannot be used to defeat a
19 Special Motion to Strike.  There is no evidence Defendant Pisani was there to "threaten[], coerce[], or
20 intimidate[]" Plaintiff Olfati so that she would "cease sending Police Reports to the County Sheriff" or
21 "be forced into accepting unwanted County mental health services," or that it was a "retaliatory ambush"
22 or "an attempt to entrap Plaintiff."  (*Ibid.*)  The uncontradicted evidence is that Ms. Pisani was there to
23 inform of, and offer, the support and services of the County—voluntary services Plaintiff could take or
24 leave at her discretion.  When Plaintiff made it clear that she did not want help, Defendant Pisani left, and
25 reported that back to the County.  She accepted Plaintiff's decision not to participate.  Further, Defendant
26 Pisani's job as a Senior Mental Health Counselor with the Community Support Team is centered around
27 helping with public mental health.

28  / / /

**DEFENDANTS COUNTY OF SACRAMENTO AND PAMELA PISANI'S REPLY TO PLAINTIFF'S OPPOSITION
TO SPECIAL MOTION TO STRIKE (CCP § 425.16)**

1

**D.    Defendants have provided the Judicial Council with notice of their motion.**

2       Plaintiff argues "[t]he Anti-SLAPP Statute motion by Defendants County of Sacramento

3   ("County") and Pamela Pisani ("Pisani") ("Defendants") should be denied at the outset because

4   Defendants did not comply with the Anti-SLAPP Statute requirement of Code of Civil Procedure (CCP)

5   Section 425.16, subdivision (j)(1).

6       It is true that "[a]ny party who files a special motion to strike pursuant to this section, and any

7   party who files an opposition to a special motion to strike, shall, promptly upon so filing, transmit to the

8   Judicial Council, by e-mail or facsimile, a copy of the endorsed, filed caption page of the motion or

9   opposition, a copy of any related notice of appeal or petition for a writ, and a conformed copy of any

10  order issued pursuant to this section, including any order granting or denying a special motion to strike,

11  discovery, or fees." But failure to comply with this statute is not a basis for dismissal of the motion.

12      In *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Ass'n*

13  (1st Dist. 2004) 125 Cal. App. 4th 343, 350–351 ("*San Ramon*"), a party made the same argument

14  Plaintiff makes here. They argued the "special motion to strike should have been denied" because of the

15  petitioner's "failure to comply with [Code of Civil Procedure (CCP) Section 425.16, subdivision (j)(1)]."

16  (*San Ramon, supra,* 125 Cal. App. 4th at p. 350.)  The court responded as follows: "It appears that this

17  defect has been cured, and in any event, the District does not point to anything in the record indicating

18  that this issue was raised at the trial court. Nor does the District cite any authority, or even seriously

19  argue, that this defect affects either the trial court's jurisdiction, or ours, to consider the merits, or that the

20  District was prejudiced in any way by the Board's failure to comply. The District also points to no

21  authority indicating that failure to serve a special motion to strike on the Judicial Council, standing alone,

22  warrants the denial of the motion, much less the dismissal of an appeal after the motion is denied on the

23  merits." (*Ibid.*)

24      Here, Plaintiff also has not shown any prejudice, nor does she cite any authority indicating that

25  failure to comply warrants denial of the motion.   Further, Defendants have cured this defect.

26  (Declaration of Jordan McCroskey in support of Defendants' Reply, Exhibit A, April 8, 2022, Email

27  from Jordan McCroskey to Judicial Council with the endorsed, filed caption page.)

28  / / /

**DEFENDANTS COUNTY OF SACRAMENTO AND PAMELA PISANI'S REPLY TO PLAINTIFF'S OPPOSITION
TO SPECIAL MOTION TO STRIKE (CCP § 425.16)**

1

**E.     Steve Maviglio has a permanent restraining order against Plaintiff.**

2          Plaintiff claims Defendants defamed her by stating she "*has a restraining order against her by a*

3    *city counselmen* [sic]."  (Opposition at p. 14; Declaration of Plaintiff at ¶ 4.)  First, there cannot be

4    defamation in the context alleged.  See, Civil Code § 47 (It is a privileged communication as it was made

5    in the discharge of an official duty, was made in the course of an official proceeding, or is an "interested

6    person" communication.)[2]

7          Second, "to state a defamation claim that survives a First Amendment challenge, plaintiff must

8    present evidence of a statement of fact that is provably false." (*Gilbert v. Sykes* (2007) 147 Cal.App.4th

9    13, 27 (*Gilbert*).).  "Statements do not imply a provably false factual assertion and thus cannot form the

10   basis of a defamation action if they cannot reasonably [be] interpreted as stating actual facts' about an

11   individual." (*Ibid.*)  "Thus, rhetorical hyperbole, vigorous epithet[s], "lusty and imaginative expression[s]

12   of ... contempt, and language used in a loose, figurative sense have all been accorded constitutional

13   protection. (*Ibid.*)  "The dispositive question . . . is whether a reasonable trier of fact could conclude that

14   the published statements imply a provably false factual assertion." (*Ibid.*)

15         Here, Plaintiff cannot prove this was a false factual assertion.  While Defendants were confused

16   on the position held by the person with the restraining order, one does exist.  In November of 2019,

17   Steven Maviglio, a political figure in Sacramento, <u>and the subject of Plaintiff's letter initiating this</u>

18   <u>incident</u> (see Defendants' Special Motion to Strike, Exhibit B, November 9, 2020, letter from Plaintiff to

19   the County), filed for and received a permanent restraining order against Plaintiff Olfati.  (Request for

20   Judicial Notice, Exhibit C, November 1, 2019, Restraining Order.)  This was personally served on

21   Plaintiff Olfati at 1859 45th Street, Sacramento, CA 95819 on November 12, 2019, at 12:30 p.m. (*Id.* at

22   p. 8.)

23

**F.     This matter is factually distinguishable from *Rivero* and *FilmOn***

24         Plaintiff claims that *Rivero v. American Federation of State, County and Municipal Employees,*

25   *AFL-CIO* (1st Dist. 2003) 105 Cal.App.4th 913 (*Rivero*) proves there was no public interest in this case

26   because it "actually held that the California Anti-SLAPP Statute *did not apply to statements by eight*

27   *employees or their union about a job supervisor*, because the job supervisor's conduct was not a 'public

28

---

[2] Plaintiff did not address this issue in her opposition thus concedes it applies.
{02613172.DOCX}                                                    5

1  issue.'" (Opposition at p. 17.) He argues the same with *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7

2  Cal5th 133 (*FilmOn*), as the Court in that case found the conduct was not done in connection with public

3  issue, given the reports were "*exchanged confidentially, without being part of any attempt to participate*

4  *in a larger discussion* . . . ." (Opposition at p. 17.)  Plaintiff forgets that "[w]hat it means to contribute to

5  the public debate will perhaps differ based on the state of public discourse at a given time, and the topic

6  of contention." (*FilmOn, supra*, 7 Cal.5th at p. 151-152.)  Courts must consider the unique context of the

7  speech/conduct, "including audience, speaker, and purpose," which will vary case by case.  So, simply

8  stating that the holdings in *Rivero* and *FilmOn* should be imputed to this case strays from the analytical

9  framework established by *FilmOn* and *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 900.

10  Further, the facts of these cases differ from ours in many significant ways.  *Rivero* involved a

11  Union that distributed documents to its members claiming that "management was forced to suspend [Mr.

12  Rivero]" because he "solicited bribes, hired family members and practiced favoritism." (*Rivero, supra,*

13  105 Cal.App.4th 913, 916-917.)  The speaker was a private Union, the audience was eight individuals,

14  and the purpose was to offer information about a single, private person. (*Id.* at p. 924-925.)  In our case,

15  the speech and conduct involve a different speaker, audience, and purpose.  Our case involves a public

16  employee providing information on public services, which affect the entire County.

17  *FilmOn* involved business reports describing websites with labels such as "Adult Content" and

18  "Copyright Infringement." (*FilmOn, supra,* 7 Cal.5th at p. 140-141.)  The court held that, because these

19  reports were "generated for profit, exchanged confidentially, without being part of any attempt to

20  participate in a larger public discussion," they were not made in connection with a public issue. (*Id.* at p.

21  140.)  The reports were "too tenuously tethered to the issues of public interest they implicate, and too

22  remotely connected to the public conversation about those issues, to merit protection under the catchall

23  provision." (*Ibid.*)  That is not the case here.  The County offers free services, tied to the public interest

24  of mental health, and provided by a government entity.  Thus, *FilmOn*, while providing the appropriate

25  analytical framework, is factually distinguishable.

26  **G.  The County and Ms. Pisani have discretionary immunity.**

27  Plaintiff argues discretionary immunity "is only available for acts in the making of a basic policy

28  decision at the planning stage rather than the operational stage; the Pisani and Reiman Declarations both

1  state that their acts were operational ones to implement a police [sic] to implement 'law enforcement
2  process referrals,' a policy already in place." (Opposition at p. 19.) Such an argument is misleading and
3  misses the point. Defendants in this matter took part in both the planning and operational stages.
4  Defendants have the discretion to act, or not, and if they do, it is up to them to decide what to do.
5  Defendant Pisani, a Senior Mental Health Coordinator with discretion to act in the best interest of the
6  public, weighed her options and chose to visit Ms. Olfati personally. Thus, Defendants can successfully
7  claim discretionary immunity.

8           **H.      Plaintiff's argument regarding improper PRA responses is irrelevant.**

9           Plaintiff repeatedly argues the County did not properly produce records in response to Plaintiff's
10  numerous PRA requests.     (Opposition at pp. 7, 14; Declaration of Parvin Olfati ISO Plaintiff's
11  Opposition at ¶ 3, 4.)  That argument is irrelevant for purposes of this special motion to strike. (See
12  *Decter v. Stevenson Properties, Inc.* (1952) 39 C2d 407, 420 [An irrelevant matter does not become
13  relevant simply because it appears in the pleadings.].  The evidence used to support these allegations
14  (Declaration of Plaintiff, Exhibits) is also objectionable. (See Objection to Evidence.)  Regardless of her
15  claims, the court has been provided with undisputed evidence as to the facts leading up to the contact
16  with Plaintiff. Those undisputed facts establish that Defendants were engaged in protected speech, and
17  that Plaintiff cannot support her claims.

18           **I.      Plaintiff's evidence does not substantiate her arguments.**

19                    1.      Step 1

20           While, at the second step, "a court must accept as true the *evidence* favorable to plaintiff" (*Soukup
21  v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (emphasis added.), the California
22  Supreme Court "has never insisted that the complaint's allegations be given similar credence in the face
23  of contrary evidence as the first step." (*Wilson, supra,* 7 Cal.5th at p. 887.) Here, undisputed evidence
24  supports Defendants' argument that their conduct was done in connection with a public issue. (See
25  Defendants' Special Motion to Strike.) And Plaintiff has not refuted Defendants' argument with any
26  admissible evidence. (See Objection to Evidence.)

27                    2.      Step 2

28           Once defendant makes its required showing, the burden shifts and Plaintiff must then show "a

{02613172.DOCX}                                           7

1   probability [they] will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).) A plaintiff "may

2   not rely solely on its complaint, even if verified; instead, its proof must be made upon competent

3   admissible evidence." (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th

4   931, 940.) "[D]eclarations that lack foundation or personal knowledge, or that are argumentative,

5   speculative, impermissible opinion, hearsay, or conclusory are to be disregarded." (*Gilbert, supra,* 147

6   Cal.App.4th at p. 26.)

7        Here, all of Plaintiff's evidence should be disregarded, as it is irrelevant, lacks

8   foundation/personal knowledge, and/or it is argumentative, speculative, conclusory, or hearsay. (See

9   Objection to Evidence.) Thus, Plaintiff has not presented any competent admissible evidence to support

10  her claims for relief. As such, Plaintiff failed to meet her Step 2 burden.

## III.

## CONCLUSION

Based on the foregoing, Defendants respectfully request this entire action be dismissed.

Dated: April 13, 2022                          PORTER SCOTT
                                               A PROFESSIONAL CORPORATION

                                       By      _Carl 2L_

                                               _____
                                               Carl L. Fessenden
                                               Jordan McCroskey
                                               Attorneys for Defendants

{02613172.DOCX}                         8
**DEFENDANTS COUNTY OF SACRAMENTO AND PAMELA PISANI'S REPLY TO PLAINTIFF'S OPPOSITION
TO SPECIAL MOTION TO STRIKE (CCP § 425.16)**

1

*Olfati v. County of Sacramento et al.*
**Sacramento County Superior Court – Case No. 34-2021-00310164**

2

3

## DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

4

5

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

6

7

That on the date below, I served the following **DEFENDANTS COUNTY OF SACRAMENTO AND PAMELA PISANI'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE (CCP § 425.16)** on all parties in the said action as addressed below by causing a true copy thereof to be served:

8

9

10

| | |
|---|---|
| | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| X | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
| | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

11

12

13

14

15

16

17

18

19

20

*Attorney for Plaintiff*
Steven Mark Kamp
STEVEN KAMP LAW OFFICES
22 Petrilli Circle
Sacramento, CA 95822
Steve.kamp@comcast.net

21

22

23

24

25

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California, on April 13, 2022.

26

*Estefanie Reyes*

27

28

_____
Estefanie Reyes

{02613172.DOCX}                                    9

**DEFENDANTS COUNTY OF SACRAMENTO AND PAMELA PISANI'S REPLY TO PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE (CCP § 425.16)**

1  **PORTER | SCOTT**
   A PROFESSIONAL CORPORATION
2  Carl L. Fessenden, SBN 161494
   Jordan M. McCroskey, SBN 340068
3  350 University Ave., Suite 200
4  Sacramento, California 95825
   TEL: 916.929.1481
5  FAX: 916.927.3706

6  Attorneys for Defendants
   COUNTY OF SACRAMENTO and PAMELA PISANI
7  *Exempt from Filing Fees Pursuant to Government Code § 6103*

8

9          SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

10

11  MS. PARVIN OLFATI,                           CASE NO.  34-2021-00310164

12          Plaintiffs,                          **DECLARATION OF JORDAN M.**
                                                 **MCCROSKEY IN SUPPORT OF**
13  v.                                           **DEFENDANTS' REPLY RELATING TO**
                                                 **DEFENDANTS' SPECIAL MOTION TO**
14                                               **STRIKE (CCP § 425.16)**
15  COUNTY OF SACRAMENTO; PAMELA
16  PASANI; JANE ROE DEFENDANT ONE;              **Date: April 20, 2022**
    JANE ROE DEFENDANT TWO; JANE                 **Time: 9:00 a.m.**
17  ROE DEFENDANT 3-100, JOHN DOE                **Dept.: 54**
    DEFENDANTS 1-100,                            **Reservation No.: 2613497**
18

19          Defendants.
                                                 Complaint Filed:  10/25/21
20  _____/

21

22          I, Jordan M. McCroskey, declare as follows:

23          1.      I am an associate attorney with the law firm of Porter Scott, counsel of record for

24  Defendant COUNTY OF SACRAMENTO ("County") and PAMELA PISANI and am licensed to

25  practice law before all courts of the State of California. I have personal knowledge of the facts stated in

26  this declaration and would testify to them if called to do so.

27          2.      On April 8, 2022, I sent an email to slapp@jud.ca.gov complying with Code of Civil

28  Procedure section 425.16, subdivision (j)(1). Attached hereto as **Exhibit A** is a true and correct copy of

{02671042.DOCX}                                        1
**DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' REPLY RELATING TO**
**DEFENDANTS' SPECIAL MOTION TO STRIKE (CCP § 425.16)**

1   that email.

2         I declare under penalty of perjury under the laws of the State of California that the foregoing is

3   true and correct. Executed this 11th day of April 2022, at Sacramento, California.

4

5

6   April 13, 2022                          PORTER SCOTT

7                                           A PROFESSIONAL CORPORATION

8

9

10

11                                     By

12

13                                          Jordan McCroskey
                                            Attorneys for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{02671042.DOCX}                                 2
**DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' REPLY RELATING TO
DEFENDANTS' SPECIAL MOTION TO STRIKE (CCP § 425.16)**

*Olfati v. County of Sacramento et al.*
**Sacramento County Superior Court – Case No. 34-2021-00310164**

## DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

That on the date below, I served the following **DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' REPLY RELATING TO DEFENDANTS' SPECIAL MOTION TO STRIKE (CCP § 425.16)** on all parties in the said action as addressed below by causing a true copy thereof to be served:

|   | |
|---|---|
|   | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
|   | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| X | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
|   | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
|   | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

*Attorney for Plaintiff*
Steven Mark Kamp
STEVEN KAMP LAW OFFICES
22 Petrilli Circle
Sacramento, CA 95822
Steve.kamp@comcast.net

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California, on April 13, 2022.

*Estefanie Reyes*

Estefanie Reyes

{02671042.DOCX}                                    3
**DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' REPLY RELATING TO DEFENDANTS' SPECIAL MOTION TO STRIKE (CCP § 425.16)**

| From: | Jordan McCroskey |
| Sent: | Fri 4/8/2022 02:11 PM |
| Rcvd: | Fri 4/8/2022 02:12 PM |
| To: | slapp@jud.ca.gov |
| CC: | Kilina Tellez |
| BCC: | |
| Subject: | Re: Olfati v. County of Sacramento - 34-2021-00310164-CU-CE-GDS - Special Motion to Strike (Civ. Proc. Code § 425.16, subd. (j)(1)) |

=========================================

Dear Madam/Sir:


Pursuant to Civ. Proc. Code § 425.16, subdivision (j)(1), enclosed please find a conformed copy of the face sheet of Defendant's Special Motion to Strike Under Anti-SLAPP Statute (Civ. Proc. Code § 425.16). This motion was filed on January 28, 2022, in the above-entitled action currently pending in the Sacramento County Superior Court. The matter is scheduled to be heard on April 20, 2022, at 9:00 a.m.

.

Should you need any further information, please contact me at (916) 929-1481 ext. 321.


Very truly yours,



**Jordan M. McCroskey**

Associate Attorney

350 University Avenue | Suite 200 | Sacramento, CA 95825

T| 916.929.1481 x 321 F| 916.927.3706

www.porterscott.com

**CONFIDENTIALITY NOTICE:** This email and any attachments are confidential and privileged. Any inadvertent disclosure shall not waive the attorney-client or work product privileges. If you have received this email in error, please notify the sender immediately and delete all copies of the email and any attachments.

- 
-

**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
Jordan M. McCroskey, SBN 340068
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants
COUNTY OF SACRAMENTO and PAMELA PISANI
*Exempt from Filing Fees Pursuant to Government Code § 6103*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

| | |
|---|---|
| MS. PARVIN OLFATI, | CASE NO. 34-2021-00310164 |
| Plaintiffs, | **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' REPLY RELATING TO DEFENDANTS' SPECIAL MOTION TO STRIKE (CCP § 425.16)** |
| v. | |
| COUNTY OF SACRAMENTO; PAMELA PASANI; JANE ROE DEFENDANT ONE; JANE ROE DEFENDANT TWO; JANE ROE DEFENDANT 3-100, JOHN DOE DEFENDANTS 1-100, | **Date: April 20, 2022**<br>**Time: 9:00 a.m.**<br>**Dept.: 54**<br>**Reservation No.: 2613497** |
| Defendants. | Complaint Filed: 10/25/21 |

Pursuant to California Evidence Code Section 452(c) and (d)(1), Defendant COUNTY OF SACRAMENTO respectfully requests that the Court take judicial notice of the following:

**1.    Restraining order issued on November 1, 2019, to Steve Maviglio against Ms. Olfati.**

"The trial court shall take judicial notice of any matter specified in [California Evidence Code] Section 452 if a party requests it and: (a) Gives each adverse party sufficient notice of the request, through the pleadings or otherwise, to enable such adverse party to prepare to meet the request; and (b)

{02670915.DOCX}                                                         1

**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' REPLY RELATING TO DEFENDANTS' SPECIAL MOTION TO STRIKE (CCP § 425.16)**

1  Furnishes the court with sufficient information to enable it to take judicial notice of the matter." (Cal.

2  Evid. Code, § 453.)  Section 452 includes "[o]fficial acts of the . . . judicial departments . . . of any state

3  of the United States," as well as, "[r]ecords of . . . any court . . . of any state of the United States."  This

4  includes restraining orders.  (*City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1162 ["[T]he trial

5  court took judicial notice of . . . the temporary restraining order . . . issued against him."].)

6        Attached hereto and marked as **Exhibit C** is a true and correct copy of a Restraining Order issued

7  by Sac County Superior Court to Steven Maviglio as against Parvin Olfati.  An order is an official act.

8  The Restraining Order itself is a record.  And Sac County is a court of California.  Thus, this Restraining

9  Order qualifies for Judicial Notice under California Evidence Code section 452.  Further, Defendants

10 have provided Plaintiff Olfati with a copy of this request, including Exhibit C, along with their Reply and

11 other supporting documents.  Thus, Defendants have satisfied California Evidence Code section 453.

12

13 Dated:  April 13, 2022                    PORTER SCOTT

14                             A PROFESSIONAL CORPORATION

15

16                          By

17                               Carl L. Fessenden

18                               Jordan McCroskey

                              Attorneys for Defendants

**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' REPLY RELATING TO DEFENDANTS' SPECIAL MOTION TO STRIKE (CCP § 425.16)**

*Olfati v. County of Sacramento et al.*
**Sacramento County Superior Court – Case No. 34-2021-00310164**

## DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

That on the date below, I served the following **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' REPLY RELATING TO DEFENDANTS' SPECIAL MOTION TO STRIKE (CCP § 425.16)** on all parties in the said action as addressed below by causing a true copy thereof to be served:

|   |   |
|---|---|
|   | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
|   | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| X | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
|   | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
|   | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

*Attorney for Plaintiff*
Steven Mark Kamp
STEVEN KAMP LAW OFFICES
22 Petrilli Circle
Sacramento, CA 95822
Steve.kamp@comcast.net

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California, on  April 13, 2022.

*Estefanie Reyes*

_____
Estefanie Reyes

| CH-130 | **Civil Harassment Restraining Order After Hearing** |

Clerk stamps date here when form is filed.

**FILED / ENDORSED**

NOV - 1 2019

By: _____ CLERK

*Person in ① must complete items ①, ②, and ③ only.*

**① Protected Person**
a. Your Full Name: STEVEN MAVIGLIO

Your Lawyer *(if you have one for this case)*
Name: _____ State Bar No.: _____
Firm Name: _____

b. Your Address *(If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or e-mail.)*
Address: 1901 45TH ST
City: SACRAMENTO State: CA Zip: 95819
Telephone: _____ Fax: _____
E-Mail Address: _____

*Fill in court name and street address:*
Superior Court of California, County of
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SACRAMENTO
720 9TH STREET, RM 102
SACRAMENTO, CA 95814

*Court fills in case number when form is filed.*
Case Number: 70006336

**② Restrained Person**
Full Name: CALVIN DLEAT, AKA PATTY DLEAT, AKA PATT, DLEAT,
Description:

Sex: ☐ M ☑ F Height: _____ Weight: _____ Date of Birth: _____
Hair Color: _____ Eye Color: _____ Age: 66 Race: _____
Home Address *(if known):* 1059 45TH ST
City: SACRAMENTO State: CA Zip: 95819
Relationship to Protected Person: _____

**③ ☐ Additional Protected Persons**
In addition to the person named in ①, the following family or household members of that person are protected by the orders indicated below:

| Full Name | Sex | Age | Lives with you? | How are they related to you? |
|---|---|---|---|---|
| | | | ☐ Yes ☐ No | |
| | | | ☐ Yes ☐ No | |
| | | | ☐ Yes ☐ No | |
| | | | ☐ Yes ☐ No | |

☐ *Check here if there are additional persons. List them on an attached sheet of paper and write "Attachment 3—Additional Protected Persons" as a title. You may use form MC-025, Attachment.*

**④ Expiration Date**
*This Order, except for any award of lawyer's fees, expires at*

Time: 11:59 ☐ a.m. ☑ p.m. ☐ midnight on *(date):* 11/1/2022

If no expiration date is written here, this Order expires three years from the date of issuance.

**This is a Court Order.**

Judicial Council of California, www.courts.ca.gov
Rev. March 15, 2019, Mandatory Form
Code of Civil Procedure, §§ 527.6 and 527.9
Approved by DOJ

**Civil Harassment Restraining Order After Hearing
(CLETS-CHO)**
(Civil Harassment Prevention)

CH-130, Page 1 of 6

Case Number:

**(5) Hearing**

a. There was a hearing on *(date):* 11/1/2019 at *(time):* 130 in Dept.: 1 Room: _____
   *(Name of judicial officer):* UMPUS F STANIEY made the orders at the hearing.

b. These people were at the hearing:

(1) ☑ The person in ①.   (3) ☐ The lawyer for the person in ① *(name):* _____

(2) ☐ The person in ②.   (4) ☐ The lawyer for the person in ② *(name):* _____

☐ Additional persons present are listed at the end of this Order on Attachment 5.

c. ☐ The hearing is continued. The parties must return to court on *(date):* _____ at *(time):* _____

**To the Person in ②**

**The court has granted the orders checked below. If you do not obey these orders, you can be arrested and charged with a crime. You may be sent to jail for up to one year, pay a fine of up to $1,000, or both.**

**(6) ☐ Personal Conduct Orders**

a. You must **not** do the following things to the person named in ①

☐ and to the other protected persons listed in ③:

(1) ☐ Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy personal property of, or disturb the peace of the person.

(2) ☐ Contact the person, either directly or indirectly, in any way, including, but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice mail, by e-mail, by text message, by fax, or by other electronic means.

(3) ☐ Take any action to obtain the person's address or location. If this item (3) is not checked, the court has found good cause not to make this order.

(4) ☐ Other *(specify):*

☐ Other personal conduct orders are attached at the end of this Order on Attachment 6a(4).

b. Peaceful written contact through a lawyer or process server or other person for service of legal papers related to a court case is allowed and does not violate this Order.

**(7) ☑ Stay-Away Orders**

a. You must stay at least 10 yards away from *(check all that apply):*

(1) ☑ The person in ①.   (7) ☐ The place of child care of the children of the person in ①.

(2) ☐ Each person in ③.

(3) ☑ The home of the person in ①.   (8) ☑ The vehicle of the person in ①.

(4) ☐ The job or workplace of the person in ①.   (9) ☐ Other *(specify):*

(5) ☐ The school of the person in ①.   _____

(6) ☐ The school of the children of the person in ①.   _____

b. This stay-away order does not prevent you from going to or from your home or place of employment.

**This is a Court Order.**

**Civil Harassment Restraining Order After Hearing
(CLETS-CHO)**
**(Civil Harassment Prevention)**

Case Number:

**(8)** **No Guns or Other Firearms and Ammunition**

    a. **You cannot own, possess, have, buy or try to buy, receive or try to receive, or in any other way get guns, other firearms, or ammunition.**

    b. If you have not already done so, you must:

       • Within 24 hours of being served with this Order, sell to or store with a licensed gun dealer, or turn in to a law enforcement agency, any guns or other firearms in your immediate possession or control.

       • File a receipt with the court within 48 hours of receiving this Order that proves that your guns or firearms have been turned in, sold, or stored. *(You may use form CH-800, Proof of Firearms Turned In, Sold, or Stored, for the receipt.)*

    c. ☐ The court has received information that you own or possess a firearm.

    d. ☐ The court has made the necessary findings and applies the firearm relinquishment exemption under Code of Civil Procedure section 527.9(f). Under California law, the person in **(2)** is not required to relinquish this firearm *(specify make, model, and serial number of firearm(s)):* _____

       The firearm must be in his or her physical possession only during scheduled work hours and during travel to and from his or her place of employment. Even if exempt under California law, the person in **(2)** may be subject to federal prosecution for possessing or controlling a firearm.

**(9)** ☐ **Lawyer's Fees and Costs**

    The person in ___ must pay to the person in ___ the following amounts for

    ☐ lawyer's fees    ☐ costs:

| Item | Amount | Item | Amount |
|---|---|---|---|
| | $ | | $ |
| | $ | | $ |

    ☐ Additional items and amounts are attached at the end of this Order on Attachment 9.

**(10)** ☐ **Possession and Protection of Animals**

    a. ☐ The person in **(1)** is given the sole possession, care, and control of the animals listed below, which are owned, possessed, leased, kept, or held by him or her, or reside in his or her household. *(Identify animals by, e.g., type, breed, name, color, sex.)*

    b. ☐ The person in **(2)** must stay at least _____ yards away from, and not take, sell, transfer, encumber, conceal, molest, attack, strike, threaten, harm, or otherwise dispose of, the animals listed above.

**(11)** ☐ **Other Orders** *(specify):*

    ☐ Additional orders are attached at the end of this Order on Attachment 11.

**This is a Court Order.**

**Civil Harassment Restraining Order After Hearing
(CLETS-CHO)**
**(Civil Harassment Prevention)**

→

Case Number:

**To the Person in ①**

**(12) Mandatory Entry of Order Into CARPOS Through CLETS**

This Order must be entered into the California Restraining and Protective Order System (CARPOS) through the California Law Enforcement Telecommunications System (CLETS). *(Check one):*

a. ☐ The clerk will enter this Order and its proof-of-service form into CARPOS.

b. ☒ The clerk will transmit this Order and its proof-of-service form to a law enforcement agency to be entered into CARPOS.

c. ☐ By the close of business on the date that this Order is made, the person in ① or his or her lawyer should deliver a copy of the Order and its proof-of-service form to the law enforcement agency listed below to enter into CARPOS:

<u>Name of Law Enforcement Agency</u>　　　　　　　<u>Address *(City, State, Zip)*</u>

☐ Additional law enforcement agencies are listed at the end of this Order on Attachment 12.

**(13) Service of Order on Restrained Person**

a. ☐ The person in ② personally attended the hearing. No other proof of service is needed.

b. ☒ The person in ② did not attend the hearing. — *Respondent filed responsive papers conferring jurisdiction*

(1) ☐ Proof of service of form CH-110, *Temporary Restraining Order*, was presented to the court. The judge's orders in this form are the same as in form CH-110 except for the expiration date. The person in ② must be served with this Order. Service may be by mail. *found by court in'cld advisement*

(2) ☒ The judge's orders in this form are different from the temporary restraining orders in form CH-110. Someone—but not anyone in ① or ③—must personally serve a copy of this Order on the person in ②. *would chose not to attend ct. proceeding*

**(14) ☒ No Fee to Serve (Notify) Restrained Person**

The sheriff or marshal will serve this Order without charge because:

a. ☒ The Order is based on unlawful violence, a credible threat of violence, or stalking.

b. ☐ The person in ① is entitled to a fee waiver.

**(15)** Number of pages attached to this Order, if any: _____

Date: 4/1/19

Judicial Officer: Philip F Stanger

**This is a Court Order.**

Case Number:

## Warning and Notice to the Restrained Person in ❷ :

### You Cannot Have Guns or Firearms

Unless item 8d is checked, you cannot own, have, possess, buy or try to buy, receive or try to receive, or otherwise get guns, other firearms, or ammunition while this Order is in effect. If you do, you can go to jail and pay a $1,000 fine. You must sell to or store with a licensed gun dealer, or turn in to a law enforcement agency, any guns or other firearms that you have or control as stated in item ⑧ above. The court will require you to prove that you did so.

## Instructions for Law Enforcement

### Enforcing the Restraining Order

This Order is enforceable by any law enforcement agency that has received the Order, is shown a copy of the Order, or has verified its existence on the California Restraining and Protective Order System (CARPOS). If the law enforcement agency has not received proof of service on the restrained person, and the restrained person was not present at the court hearing, the agency must advise the restrained person of the terms of the Order and then must enforce it. Violations of this Order are subject to criminal penalties.

### Start Date and End Date of Orders

This Order *starts* on the date next to the judge's signature on page 4 and *ends* on the expiration date in item ④ on page 1.

### Arrest Required if Order is Violated

If an officer has probable cause to believe that the restrained person had notice of the order and has disobeyed it, the officer must arrest the restrained person. (Pen. Code, §§ 836(c)(1), 13701(b).) A violation of the order may be a violation of Penal Code section 166 or 273.6. Agencies are encouraged to enter violation messages into CARPOS.

### Notice/Proof of Service

The law enforcement agency must first determine if the restrained person had notice of the order. Consider the restrained person "served" (given notice) if (Pen. Code, § 836(c)(2)):

* The officer sees a copy of the *Proof of Service* or confirms that the *Proof of Service* is on file; *or*
* The restrained person was at the restraining order hearing or was informed of the order by an officer.

An officer can obtain information about the contents of the order and proof of service in CARPOS. If proof of service on the restrained person cannot be verified and the restrained person was not present at the court hearing, the agency must advise the restrained person of the terms of the order and then enforce it.

### If the Protected Person Contacts the Restrained Person

Even if the protected person invites or consents to contact with the restrained person, this Order remains in effect and must be enforced. The protected person cannot be arrested for inviting or consenting to contact with the restrained person. The orders can be changed only by another court order. (Pen. Code, § 13710(b).)

## This is a Court Order.



**Civil Harassment Restraining Order After Hearing (CLETS-CHO)**
**(Civil Harassment Prevention)**



Case Number:

## Conflicting Orders—Priorities of Enforcement
**If more than one restraining order has been issued, the orders must be enforced according to the following priorities:** *(See Pen. Code, § 136.2; Fam. Code, §§ 6383(h)(2), 6405(b).)*

1. *EPO:* If one of the orders is an *Emergency Protective Order* (form EPO-001) and is more restrictive than other restraining or protective orders, it has precedence in enforcement over all other orders.
2. *No-Contact Order:* If there is no EPO, a no-contact order that is included in a restraining or protective order has precedence over any other restraining or protective order.
3. *Criminal Order:* If none of the orders includes a no contact order, a domestic violence protective order issued in a criminal case takes precedence in enforcement over any conflicting civil court order. Any nonconflicting terms of the civil restraining order remain in effect and enforceable.
4. *Family, Juvenile, or Civil Order:* If more than one family, juvenile, or other civil restraining or protective order has been issued, the one that was issued last must be enforced.

| *Clerk's Certificate* | *(Clerk will fill out this part.)* |
|---|---|
| *[seal]* | **—Clerk's Certificate—** |



I certify that this *Civil Harassment Restraining Order After Hearing* is a true and correct copy of the original on file in the court.

Date: 11\1\19          Clerk, by _____ , Deputy

**This is a Court Order.**

**Superior Court of California County of Sacramento**
**Minute Order**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Date:** | 11/1/2019 | **Time:** | 1:30 PM | **Department:** | 1 | **Judge:** Philip Stanger |
| **Clerk:** | B. Fergerson | | | **Court Attendant:** | | **Bailiff:** J. Scharosch |

**Case No.:** 34-2019-70006336    **TRO filed/issued Date:** 8/23/2019

| | | | | |
|---|---|---|---|---|
| Maviglio, Steven | | | [X] Present and Sworn | Counsel: _____ |
| **Petitioner** | | v. | [ ] Not Present | Interpreter: _____ |

| | | | | |
|---|---|---|---|---|
| Olfati, Parvin | | | [ ] Present and Sworn | Counsel: _____ |
| **Respondent** | | | [X] Not Present | Interpreter: _____ |

**Nature of Proceedings:**
[X] Petition for Permanent Injunction Prohibiting Harassment      [ ] Other: _____
[ ] Motion for Reconsideration of the: [ ] Petitioner [ ] Respondent
[ ] Request for Renewal of Permanent Injunction Prohibiting Harassment

**Dismissal - Before Hearing:**    This matter was dismissed prior to the hearing for the following:
[ ] At the request of the Petitioner. [ ] Non-appearance of Petitioner. [ ] Non-appearance of both sides.
[ ] Other: _____

**Minutes:**   The parties were present as noted above and the Court ordered the following:
[ ] This matter is continued to: _____ at [ ] 8:30 a.m. [ ] 1:30 p.m. in Dept. 1 due to: ____
  [ ] No proof of service [ ] Pending criminal case [ ] Pending family law case [ ] Party request
  [ ] Other: _____
[ ] The Temporary Restraining Order issued on the above date is to remain in effect pending the next hearing.
[ ] No Temporary orders are in effect.
[X] Witnesses Sworn and Testified: Barbara Andrus
[ ] Referred to Mediation: [ ] Successful (see Mediation Agreement filed this date).           [ ] Unsuccessful

**Modifications Regarding Temporary Restraining Order:**
[ ] The Temporary Restraining Order issued on the above date is to remain in effect until the termination date of
  _____ No further hearing required.

[ ] The Temporary Restraining Order is modified to a conduct only order.  No stay away orders are in place.
  [ ] Pending the next hearing.      [ ] Until the termination date of _____ . No further hearing is required.
    1. [ ] The restrained party shall not harass, attack, strike, threaten, assault (sexually or otherwise), hit,
       abuse, stalk, molest, destroy personal property, or disturb the peace of the protected
       [ ] person's [ ] person's address or location.
    2. [ ] The restrained party shall not contact (directly or indirectly) the protected [ ] person [ ] person's in
       any way, including but not limited to, in person, by telephone, in writing, by public or private email,
       by interoffice mail, by e-mail, by text message, by fax or by other electronic means.
    3. [ ] The restrained party shall not take any action to obtain the protected [ ] person's [ ] person's address or location.

[ ] The Temporary Restraining Order is modified to include a stay away order.
  [ ] Pending the next hearing      [ ] Until the termination date of _____ . No further hearing is required.
    1. [ ] The restrained party shall stay at least _____ yards away from the protected [ ] person [ ] persons and their:
       [ ] Home [ ] Job [ ] School [ ] Vehicle [ ] School of protected person's children.
       [ ] Place of childcare of the protected person's children.
       [ ] Other: _____
**Other:** _____

**Disposition/Outcome:**
[X] Petition [ ] Motion [ ] Request - Granted, see Restraining Order After Hearing (form CH-130) issued this date.
[ ] Petition [ ] Motion [ ] Request - Denied.
[ ] Petition [ ] Motion [ ] Request - Dismissed.
       **Other Orders:** _____

**Proof of Service**
[X] The protected person is responsible for having this Minute Order served personally on the restrained person.
    A Proof of Service must be filed with the Court.
[ ] No further service is needed.  A copy of this Minute Order was provided to the respondent in open court.

It is so ordered:
Dated:      11/1/2019               Philip Stanger
                               Judge of the Superior Court



ATTORNEY (Name and Address):                        SBN:

**Steven Maviglio**
**1901 45th Street**
**Sacramento, CA 95819**

EMAIL: **steven.maviglio@gmail.com**
ATTORNEY FOR: **In Propria Persona**

NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY:

**Sacramento Co. Superior Court-720**
**720 9th St**
**Sacramento, CA 95814**

FOR COURT USE ONLY

**FILED/ENDORSED**

**NOV 1 5 2019**

By: _____**K. Johnson**_____
          **Deputy Clerk**

PLAINTIFF:
**Steven Maviglio**
DEFENDANT:
**Parvin Olfati; aka Patty Olfati; aka Patti Olfati**

COURT CASE NO:
**94 2019 70006336**

**Proof of Service**

LEVYING OFFICER FILE NO:
**2019033677**

1. At the time of the service I was at least 18 years of age and not a party to this action.

2. I served copies of the:

   f. other *(specify documents):*
   **Civil Harassment Restraining Order After Hearing (CLETS-CHO) (Civil Harassment Prevention)**

3. a. Party Served *(specify name of party as shown on documents served):*

   **Parvin Olfati; aka Patty Olfati; aka Patti Olfati**

4. Address where party was served:     **1859 45th Street**
                                         **Sacramento, CA 95819**

5. I served the party:

   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: 11/12/2019 at: 12:30 PM.

7. **Person who served the papers**

   a. Name: **D. Gurnaby, #1133**

   b. Address: **Sheriff's Civil Bureau, 3341 Power Inn Road, #313, Sacramento, CA 95826-3889**

   c. Telephone number: **(916) 875-2665**

   d. The fee for the service was: **$40.00 (Waived)**

9. I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:  Wednesday, November 13, 2019              by: _____ **#1133**

                                                 **Sheriff's Authorized Agent**
                                                 **Scott R. Jones, Sheriff**

Judicial Council Form POS-010                    **Original**
                                                 (c) County/Suite Sheriff, TeleoSoft, Inc

*Olfati v. County of Sacramento et al.*
**Sacramento County Superior Court – Case No. 34-2021-00310164**

### DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

That on the date below, I served the following **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' REPLY RELATING TO DEFENDANTS' SPECIAL MOTION TO STRIKE (CCP § 425.16)** on all parties in the said action as addressed below by causing a true copy thereof to be served:

|   |   |
|---|---|
|   | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
|   | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| X | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
|   | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
|   | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

*Attorney for Plaintiff*
Steven Mark Kamp
STEVEN KAMP LAW OFFICES
22 Petrilli Circle
Sacramento, CA 95822
Steve.kamp@comcast.net

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California, on  April 13, 2022.

*Estefanie Reyes*

Estefanie Reyes

**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' REPLY RELATING TO DEFENDANTS' SPECIAL MOTION TO STRIKE (CCP § 425.16)**

**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
Jordan M. McCroskey, SBN 340068
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants
COUNTY OF SACRAMENTO and PAMELA PISANI
*Exempt from Filing Fees Pursuant to Government Code § 6103*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

| | |
|---|---|
| MS. PARVIN OLFATI,<br><br>        Plaintiffs,<br><br>v.<br><br>COUNTY OF SACRAMENTO; PAMELA PASANI; JANE ROE DEFENDANT ONE; JANE ROE DEFENDANT TWO; JANE ROE DEFENDANT 3-100, JOHN DOE DEFENDANTS 1-100,<br><br>        Defendants.<br>_____/ | CASE NO. 34-2021-00310164<br><br>**OBJECTION TO EVIDENCE SUBMITTED BY PLAINTIFF IN OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE (CCP § 425.16.)**<br><br>**Date: April 20, 2022**<br>**Time: 9:00 a.m.**<br>**Dept.: 54**<br>**Reservation No.: 2613497**<br><br>Complaint Filed: 10/25/21 |

Defendants COUNTY OF SACRAMENTO and PAMELA PISANI hereby submits the following objections to evidence submitted by plaintiff in opposition to Defendants' Special Motion to Strike.

/ / /

/ / /

/ / /

/ / /

/ / /

{02678372.DOCX}                                                     1
**OBJECTION TO EVIDENCE SUBMITTED BY PLAINTIFF IN OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## OBJECTION TO DECLARATION OF PLAINTIFF

### OBJECTION NO. 1:

**Material Objected to:** In paragraph 2, subsection (a), "PRA [22-491]: County responds 'no documents' to my PRA request . . . ."

**Grounds for Objection No. 1:** Plaintiff must support her opposition with admissible evidence. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) "Except as provided by law, hearsay evidence is inadmissible." (Evid. Code, § 1200, subd. (b).) "Hearsay" is an out-of-court statement offered for its truth. (Evid. Code, § 1200, subd. (a); see also FRE 801(c); and *Plancarte v. Guardsmark*, LLC (2004) 118 CA4th 640, 647.) Here, Plaintiff asserts that the written statement "no documents" was written by the County and was a response to her PRA request. However, this was a statement made out-of-court and is being offered for its truth. Further, the assertion is not relevant, lacks foundation and call for speculation. Thus, it is inadmissible.

### OBJECTION NO. 2:

**Material Objected to:** In paragraph 2, subsection (b), "PRA [22-471]: County responds 'no documents' to my PRA request . . . ."

**Grounds for Objection No. 2:** Plaintiff must support her opposition with admissible evidence. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) "Except as provided by law, hearsay evidence is inadmissible." (Evid. Code, § 1200, subd. (b).) "Hearsay" is an out-of-court statement offered for its truth. (Evid. Code, § 1200, subd. (a); see also FRE 801(c); and *Plancarte v. Guardsmark*, LLC (2004) 118 CA4th 640, 647.) Here, Plaintiff asserts that the written statement "no documents" was written by the County and was a response to her PRA request. However, this was a statement made out-of-court, and is being offered for its truth. Further, the assertion is not relevant, lacks foundation and call for speculation. Thus, it is inadmissible.

### OBJECTION NO. 3:

**Material Objected to:** In paragraph 3, "[t]he 'no documents' response to PRA 22-471 comes from the Clerk of the Board Office."

**Grounds for Objection No. 3:** Plaintiff must support her opposition with admissible evidence.

**OBJECTION TO EVIDENCE SUBMITTED BY PLAINTIFF IN OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE**

1   (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) "Except as

2   provided by law, hearsay evidence is inadmissible." (Evid. Code, § 1200, subd. (b).) "Hearsay" is an

3   out-of-court statement offered for its truth. (Evid. Code, § 1200, subd. (a); see also FRE 801(c); and

4   *Plancarte v. Guardsmark*, LLC (2004) 118 CA4th 640, 647.) Here, Plaintiff asserts that the written

5   statement "no documents" was written by the County Clerk of the Board's Office and was a response to

6   her PRA request. However, this was a statement made out-of-court, and is being offered for its truth.

7   Further, the assertion is not relevant, lacks foundation and call for speculation. Thus, it is inadmissible.

8                                      **OBJECTION NO. 4:**

9        **Material Objected to:**  In paragraph 3, "The County Sheriff has never responded to this PRA

10   request [22-471]."

11        **Grounds for Objection No. 4:**  Plaintiff must support her opposition with admissible evidence.

12   (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) Evidence that

13   is not relevant is not admissible.  (Evid. Code, § 350.)  Here, whether and in what way the County

14   Sheriff responded to this request is irrelevant for purposes of this motion.  Further, the assertion lacks

15   foundation and call for speculation. Thus, it is inadmissible.

16                                      **OBJECTION NO. 5:**

17        **Material Objected to:**  In paragraph 3, "The County Sheriff . . . has never responded to the

18   twenty-five PRA requests in Exhibit Eleven to my First Amended Complaint; and has not responded to

19   numerous other PRA requests . . . ."

20        **Grounds for Objection No. 5:**  Plaintiff must support her opposition with admissible evidence.

21   (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) Evidence that

22   is not relevant is not admissible.  (Evid. Code, § 350.)  Here, whether and in what way the County

23   Sheriff responded to these requests is irrelevant for purposes of this motion.  Further, the assertion lacks

24   foundation and call for speculation. Thus, it is inadmissible.

25                                      **OBJECTION NO. 6:**

26        **Material Objected to:**  In paragraph 4, "[a]ttached hereto is a true and correct copy of the City

27   of Sacramento PRA Response to my PRA request catalogued as Public Records Reference # P028660-

28   021522, where the City of Sacramento correctly states that on February 14, 2022, I sent the City a PRA

{02678372.DOCX}                                   3

1   request 'regarding any City Council Member restraining order restraining order against Parvin Olfati',

2   and responds: 'The City does not have any records that are responsive to your request.'"

3       **Grounds for Objection No. 6:**  Plaintiff must support her opposition with admissible evidence.

4   (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.)  Evidence that

5   is not relevant is not admissible.  (Evid. Code, § 350.)  Here, the letter is from the City of Sacramento.

6   Defendant here is the County of Sacramento.  The City is not a named defendant.  Thus, any actions

7   they took, such as issuing this letter, are irrelevant for purposes of this motion. Further, the evidence is

8   hearsay and lacks foundation.  Thus, it is inadmissible.

9

10                                              **II.**

11                               **OBJECTION TO EXHIBITS**

12                               <u>**OBJECTION NO. 1:**</u>

13       **Material Objected to:**  On Exhibit 1, PRA # 471, the handwritten "No documents."

14       **Grounds for Objection No. 1:**  "Authentication of a writing is required before it may be

15   received into evidence."  (Evid. Code, § 1401.)  The document lacks foundation. Plaintiff has not

16   authenticated or laid a foundation that this writing was in fact from the County.  Further, the document

17   as it relates to the handwritten note is hearsay. Thus, it is inadmissible.

18                               <u>**OBJECTION NO. 2:**</u>

19       **Material Objected to:**  On Exhibit 2, PRA # 491, the handwritten "No documents."

20       **Grounds for Objection No. 2:**  "Authentication of a writing is required before it may be

21   received into evidence."  (Evid. Code, § 1401.)  The document lacks foundation. Plaintiff has not

22   authenticated or laid a foundation that this writing was in fact from the County.  Further, the document

23   as it relates to the handwritten note is hearsay. Thus, it is inadmissible.

24                               <u>**OBJECTION NO. 3:**</u>

25       **Material Objected to:**  Exhibit 3, The February 22, 2022, letter from the City of Sacramento.

26       **Grounds for Objection No. 3:**  Evidence that is not relevant is not admissible.  (Evid. Code, §

27   350.)  Here, the letter is from the City of Sacramento.  Defendant here is the County of Sacramento.  The

28   City is not a named defendant.  Thus, any actions they took, such as issuing this letter, are irrelevant for

**OBJECTION TO EVIDENCE SUBMITTED BY PLAINTIFF IN OPPOSITION TO DEFENDANTS' SPECIAL
MOTION TO STRIKE**

purposes of this motion.  Further, the document lacks foundation and is hearsay. Thus, it is inadmissible.

Dated:  April 13, 2022                                    PORTER SCOTT
                                                          A PROFESSIONAL CORPORATION


                                                    By

                                                          _____
                                                          Carl L. Fessenden
                                                          Jordan McCroskey
                                                          Attorneys for Defendants

{02678372.DOCX}                              5
**OBJECTION TO EVIDENCE SUBMITTED BY PLAINTIFF IN OPPOSITION TO DEFENDANTS' SPECIAL
MOTION TO STRIKE**

*Olfati v. County of Sacramento et al.*
**Sacramento County Superior Court – Case No. 34-2021-00310164**

## DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

That on the date below, I served the following **OBJECTION TO EVIDENCE SUBMITTED BY PLAINTIFF IN OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE** on all parties in the said action as addressed below by causing a true copy thereof to be served:

| | |
|---|---|
| | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| X | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
| | **BY ELECTRONIC SERVICE**: Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

*Attorney for Plaintiff*
Steven Mark Kamp
STEVEN KAMP LAW OFFICES
22 Petrilli Circle
Sacramento, CA 95822
Steve.kamp@comcast.net

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California, on April 13, 2022.

_____
Estefanie Reyes

Plaintiff seeks leave to file a 1AC after Defendant Aliakbar's provided responses to Plaintiff's first set of written discovery on January 6, 2022, which disclosed Mustafa Aliakbar and Black White Logistics as the registered owners of the vehicle Defendant Aliakbar was driving at the time of the collision. (Thalheimer Decl. ¶¶ 3-6.) Plaintiff's counsel asked defense counsel if he would stipulate to allow Plaintiff to file a 1AC, but Plaintiff did not receive a response. (Thalheimer Decl. ¶¶ 7-9.)

Plaintiff seeks to amend the Complaint to include Mustafa Aliakbar and Black White Logistics as new parties and to add three additional causes of action against them so as to resolve legal claims against all parties.

Plaintiff's motion is procedurally defective. A motion to amend a pleading before trial must include a copy of the proposed amendment or amended pleading, which must be serially numbered to differentiate it from previous pleadings or amendments. Additionally, the motion must state what allegations in the previous pleading are proposed to be deleted, if any, and where, by page, paragraph, and line number, the deleted allegations are located; and must state what allegations are proposed to be added to the previous pleading, if any, and where, by page, paragraph, and line number, the additional allegations are located. (California Rules of Court, Rule 3.1324.) The motion fails to comply with these requirements. While the Memorandum of Points and Authorities states a proposed 1AC is attached to the moving papers in red line format, neither a clean copy nor a redline copy is attached. Plaintiff has also not identified in any manner specifically where the proposed additions and/or deletions can be found. As a result, the Court is unable to determine and evaluate whether the proposed amendments are proper. The motion is DENIED without prejudice.

The minute order is effective immediately. No formal order pursuant to CRC Rule 3.1312 or further notice is required.

---

Item 17    2021-00310164-CU-CR

Parvin Olfati vs. County of Sacramento

Nature of Proceeding:   Motion to Strike (SLAPP)

Filed By:   Fessenden, Carl L.

Defendants County of Sacramento (the "County") and Pamela Pisani's ("Pisani") (collectively, "Defendants") special motion to strike pursuant to CCP § 425.16 is DENIED.

Factual Background

On December 10, 2020, Jennifer Reiman, Mental Health Program Coordinator for the County ("Reiman") received an email from a county Senior Mental Health Counselor ("SMHC"). (Reiman Decl. ¶ 4, Exh. A.) The email included a letter written by plaintiff Parvin Olfati ("Plaintiff") to the County and other government representatives and agencies complaining about a conspiracy against her. (Reiman Decl. ¶ 5, Exh. B.)

Due to concerns for Plaintiff's mental health, Reiman asked Pisan, a SMCH with the County Community Support Team ("CST"), to help Plaintiff. (Reiman Decl. ¶ 8, Exh. A; Pisani Decl. ¶ 3, Exh. A.) Pisani read the letter, gathered more information, weighed her options, and decided to visit Plaintiff on December 14, 2020, around 4:33 p.m. at

her home. (Pisani Decl. ¶ 4, Exh. A.) When Pisani arrived, she knocked and Plaintiff answered the door. Plaintiff inquired about Pisani's identity and purpose. Pisani introduced herself, gave her a business card, and told Plaintiff she was looking for Parvin Olfati. Plaintiff became agitated, started raising her force, and asked "How is it that you can just come up and knock on my door?" Pisani told Plaintiff there was an anonymous referral in response to a complaint Plaintiff had written to the Sacramento County Sheriff's Department. Pisani told Plaintiff she was part of an outreach team that provides resources and support to individuals in the community. Plaintiff then cursed at Pisani and asked her to leave, which she did. (Pisani Decl. ¶ 5.) After the visit, Pisani called her supervisor and wrote out the details of her encounter in a post-incident report she provided to CST shortly after the visit. (Pisani Decl. ¶ 6, Exh. D.) Plaintiff disputes the interaction occurred exactly as described above, but the Court need not detail the specifics of the disagreement here.

Plaintiff then wrote a letter complaining about the visit and tying it to the larger conspiracy mentioned in her original letter. (Reiman Decl. ¶¶ 12-13, Exhs. E, F.) Reiman attempted to contact Plaintiff to rectify the situation, but contends she never sent any employees or agents to secretly spy on Plaintiff while shopping or eating as Plaintiff alleges. (Reiman Decl. ¶14, Exhs. G, H.)

Plaintiff filed her Complaint on October 25, 2021, alleging eight causes of action against Defendants, Jane Roe Defendants One and Two, Jane Roe Defendants 3-100, and John Doe Defendants 1-100.

Plaintiff alleges six causes of action against Pisani: trespass and invasion of privacy based on Pisani walking onto Plaintiff's property; IIED based on Pisani communicating with her; false light and defamation based on Pisani communicating with the County; and general negligence based on these actions. Plaintiff also alleges these six causes of action based on the actions of Does One and Two, but Defendants declare they did not and do not employ anyone fitting the descriptions of Does One and Two (Reiman Decl. ¶ 8), did not have any employees or agents other than Pisani attempt to assist Plaintiff, and therefore the causes of action all arise from the protected activity of Pisani

Plaintiff also two causes of action against the County: negligent hiring and respondeat superior. Defendant contend respondeat superior is not a proper causes of action, but both are based on the alleged wrongs of Pisani.

Legal Standard

The California legislature enacted Code of Civil Procedure section 425.16, known as the anti-SLAPP statute, to provide a procedural remedy to dispose of lawsuits and causes of action that are brought to chill the valid exercise of the constitutional rights to free speech and to petition the government for redress of grievances. (*See Rusheen v Cohen* (2006) 37 Cal.4th 1048, 1055-1056.) "The analysis of an anti-SLAPP motion thus involves two steps. First, the court decides whether the defendant moving to strike has made a threshold showing that the challenged cause of action is one "arising from" protected activity. If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim. Only a cause of action that satisfies both prongs of the anti-SLAPP statute - i.e., that arises from protected speech or petitioning and lacks even minimal merit-is a SLAPP, subject to being stricken under the statute." (*Oasis West Realty, LLC v.*

*Goldman* (2011) 51 Cal.4th 811, 819-820 [citations omitted].)

In order to sustain the initial burden on an anti-SLAPP motion, a defendant need only show that plaintiff's lawsuit "arises from" defendant's exercise of free speech or petition rights as defined in Section 425.16(e). (*Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61.) In other words, Defendants only need to make a prima facie showing that Plaintiff's FAC "arises from" their constitutionally-protected free speech or petition activity. (*Governor Gray Davis Committee v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 458-459.) "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage." (*Baral v. Schnitt* (2016) 1 Cal. 5th 376, 396.) "If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached." (*Id.*)

In order to satisfy the second prong, a plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ( *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) In considering the second prong, the court "accept[s] as true the evidence favorable to the plaintiff and evaluate[s] the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." (*Id.* citations omitted.)

If the plaintiff's showing is not sufficient to sustain a favorable judgment, "the allegations supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral v. Schnitt* (2016) 1 Cal.5 376, 396.)

In making its determination, the Court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based. (CCP § 425.16(b)(2).)

<u>First Prong - Arising from Protected Speech</u>

Pursuant to CCP § 425.16(e), an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial body, or any other official proceeding authorized by law,
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or'
> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (CCP § 425.16(e).)

In determining whether the anti-SLAPP statute applies, the Court looks to the pleadings and supporting and opposing affidavits stating the acts upon which the liability is based. (*Navallier v. Sletten* (2002) 29 Cal.4th 82, 88.) In the anti-SLAPP context, the critical consideration is whether the cause of action is based on the

defendant's protected free speech or petitioning activity." (*Navellier, supra,* at 89.) The "principal thrust or gravamen" of the claim determines what section 425.16 applies, not the title of the cause of action. (See *Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1279.) The statute cannot be invoked where allegations of protected activity are only incidental to a cause of action based on the non-protected activity. (*Martinez v Metabolife Int'l Inc.* (2003) 113 Cal.App.4th 181,187.)

Defendants contend Plaintiff's claims arise from statements relating to public issues of mental health and government action, which are protected under subdivision (e)(4), the catch-all provision of § 425.16. A claim falls within this subdivision "if (1) defendants' acts underlying the cause of action, and on which the cause of action is based, (2) were acts in furtherance of the defendants' right of petition or free speech (3) in connection with a public issue." (*Tamkin v. CBS Broadcasting, Inc.* (2011) 193 Cal.App.4th 133, 142-143.) "The inquiry under the catchall provision … calls for a two-part analysis rooted in the statute's purpose and internal logic-a question we answer by looking to the content of the speech... . Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest. It is at this latter stage that context proves useful." (*FilmOn.com, Inc. v. DoubleVerify, Inc.* (2019) 7 Cal.5th 133, 149-150.)

Generally, a matter constitutes a public issue if it concerns: (1) a person or entity in the public; (2) conduct that could directly affect a large number of people beyond the direct participants; or (3) a topic of widespread public interest. (*Rivero v. American Federation of State County, and MunicipalEmployees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924.) "'[A]n issue of public interest' within the meaning of section 425.16 subdivision (e)(4) is any issue in which the public is interested. In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute-it is enough that it is one in which the public takes an interest." (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1042 [citations omitted].)

Unlike subdivisions (e)(1)-(3), which define protected conduct not only by its content, but also by its location, its audience, and its timing, the catchall provision of subdivision (e)(4) contains "'no similar contextual references to help courts discern the type of conduct and speech to protect' [citation omitted]. But when a general provision follows specific examples, as subdivision (e)(4) follows subdivision (e)(1) through (3), we generally understand the provision as 'restricted to those things that are similar to those which are enumerated specifically.'"" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 900.) "The common thread that runs through section 425.16, subdivision
(e)(1) through (3) is that each provision protects speech that contributes to the public discussion or resolution of public issues-a thread that also ties these provisions together with the statute's stated purpose of furthering 'continued participation in matters of public significance.' (§ 425.16, subd. (a).) It follows that a defendant who claims its speech was protected as 'conduct in furtherance of the exercise of [free speech rights] in connection with a public issue or an issue of public interest' must show not only that its speech referred to an issue of public interest, but also that its speech contributed to public discussion or resolution of the issue [citation omitted]." (Id.)

Defendant asserts that Pisani's conduct in interacting with Plaintiff implicates two public issues: (1) preventing the negative impact of poor mental health in the community; and (2) the government's role in addressing that public issue. Thus,

government mental health services generally being the public issue. Defendant also asserts County action is a public issue because the County, by its nature, is in the public eye, and Pisani's statements concerned the services offered by the County to the entire community. Defendant contends Pisani's speech contributed to resolving the mental health issue as she was there on behalf of a County agency to help ease the negative impacts of Plaintiff's potential mental health issues. (Reiman Decl. ¶ 7.) Pisani was offering free and voluntary help regarding Plaintiff's mental health and wellness. (Pisani Decl. ¶ 5, Exh. D.)

Defendant likens the circumstances to *Cross v. Cooper* (2011) 197 Cal.App.4th 357, wherein defendant "disclosed, or threatened to disclose, information that a registered sex offender lived" near a house that plaintiff had put up for sale. (*Id.* at 364.) Plaintiff alleged that by doing so, defendant had interfered with a prospective purchase. The court found that CCP § 425.16 applied because of the "the obvious: preventing child sexual abuse and protecting children from sexual predators are issues of widespread public interest." (*Id.* at 375.) The *Cross* court noted the protection of children from sexual offenders "would be of interest to most people, especially those who are living in or considering moving to the area." (*Id.* at 382.) Defendant argues Pisani's speech is similar to that in *Cross* because she was a County mental health professional, speaking to a County resident interested in and affected by this information, whose purpose was to communicate County mental health services. Defendants surmise this information could be used to debate the efficacy of those services and whether anything needs to be done by vote to change the status quo. Similarly, Defendants contend Pisani's communications with the County (i.e., her supervisor) reporting her interaction with Plaintiff contributed to the resolution of Plaintiff's mental health issues.

Plaintiff opposes and argue the "protected activity" does not arise under either the U.S. Constitution First Amendment or the California Constitution, which is a foundational requirement for applying § 425.16. Plaintiff cites to *Kaye v. Board of Trustees of San Diego County Public Law Library* (2009) 179 Cal.App.4th 48 and *Garcetti v. Ceballos* (2006) 547 U.S. 410 as support that when public employees make statements pursuant to their employment duties, it is not protected speech under the First Amendment. Indeed, there appears to be no dispute that the alleged conduct by Pisani occurred in connection with her employment as SMHC, calling into question whether or not such activity can be deemed in furtherance of the right to free speech. Nonetheless, even if the activity does constitute free speech, the private context of the conduct and statements makes heavier Defendants' burden of showing that the alleged conduct contributed to discussion or resolution of a public issue for purposes of subdivision (e)(4). The purported conduct and communications were made privately by Pisani to Plaintiff and thereafter to her supervisor Reiman in an on-the-job communication. The speech was not advertising County mental health services to a public audience in an effort to further curb the negative effects of mental health issues in the community, nor is there any evidence the speech contributed to a public discussion about mental health in the community or how it can be treated. As noted by Defendants, they were offering to help Plaintiff treat possible mental health issues in her individual capacity. Defendants' argument that such activity concerns a public issue simply because it concerns mental health services offered by the County is too broad in the Court's opinion to come within the purview of subdivision (e)(4).

Given the foregoing, the Court finds Defendants have failed to meet their initial burden that the challenged claims arise from protected speech.

The motion is DENIED on this basis. As a result, the Court need not evaluate the second prong, probability of prevailing, and whether Plaintiffs have met that burden.

The minute order is effective immediately. No formal order pursuant to CRC Rule 3.1312 or further notice is required.

---

Item   18   **2021-00311344-CU-PA**

**Kimberly L. Martin vs. Daniil Oleksandrovych Osipov**

Nature of Proceeding:   Motion to Quash Service of Summons

Filed By:   Knaack, Joel C.

Defendants Daniil Oleksandrovych Osipov and Olena Niemchynova's (collectively, "Defendants") motion to quash service of summons and complaint is DENIED.

This action arises out of a motor vehicle accident that occurred on December 10, 2019, in Sacramento County, California. Plaintiff Kimberly L. Martin ("Plaintiff") filed her Complaint on November 19, 2021, against Defendants.

Proof of Service of the Summons and Complaint on Defendants was filed on January 3, 2022, January 10, 2022, and March 4, 2022. (ROAs 7, 8, 12.) Each Proof of Service for both defendants is nearly identical and indicates service was made by substitute service on December 19, 2021.

A declaration of diligence attached to the Proofs of Service indicates service was attempted unsuccessfully on December 9th, 12th, and 16th of 2021. Purported service was accomplished on December 19, 2021, by leaving the Summons and Complaint with a person named Ivan (33), who was a tenant of the property located at 5200 North Ave., Carmichael, CA 95608. Ivan informed the registered process server that Defendants no longer lived at the property, but that "he saw mail for them" and "will give the documents to the owner to give to them." (ROAs 7, 8, 12.)

Defendants move to quash service of the summons and complaint pursuant to CCP § 418.10 on the grounds Plaintiff did not exercise reasonable diligence in attempting personal service after being told by Ivan that Defendants no longer lived at the address where Plaintiff attempted service, and even if Plaintiff exercised reasonable diligence in effectuating personal service, Plaintiff did not comply with the requirements of CCP § 415.20(b) for substitute service by leaving the documents at Defendants' dwelling house, usual place of abode, or usual mailing address with a competent member of the household.

CCP § 415.20, subdivision (b), provides: "If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60, 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SACRAMENTO**

**GORDON D SCHABER COURTHOUSE**

**MINUTE ORDER**

DATE: 04/20/2022             TIME: 09:00:00 AM          DEPT:  54

JUDICIAL OFFICER PRESIDING: Raymond Cadei
CLERK:  A O'Donnell
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT: N. Alvi, J. Reilly

CASE NO: **34-2021-00310164-CU-CR-GDS** CASE INIT.DATE: 10/25/2021
CASE TITLE: **Olfati vs. County of Sacramento**
CASE CATEGORY: Civil - Unlimited

---

**EVENT TYPE**: Motion to Strike (SLAPP) - Civil Law and Motion - MSA/MSJ/SLAPP

---

**APPEARANCES**
Steven Mark Kamp, counsel, present for Plaintiff(s) remotely via video.
Carl L Fessenden, counsel, present for Defendant(s) remotely via video.

---

**Nature of Proceeding: Motion to Strike (SLAPP)**

**TENTATIVE RULING**

Defendants County of Sacramento (the "County") and Pamela Pisani's ("Pisani") (collectively, "Defendants") special motion to strike pursuant to CCP § 425.16 is DENIED.

Factual Background

On December 10, 2020, Jennifer Reiman, Mental Health Program Coordinator for the County ("Reiman") received an email from a county Senior Mental Health Counselor ("SMHC"). (Reiman Decl. ¶ 4, Exh. A.) The email included a letter written by plaintiff Parvin Olfati ("Plaintiff") to the County and other government representatives and agencies complaining about a conspiracy against her. (Reiman Decl. ¶ 5, Exh. B.)

Due to concerns for Plaintiff's mental health, Reiman asked Pisan, a SMCH with the County Community Support Team ("CST"), to help Plaintiff. (Reiman Decl. ¶ 8, Exh. A; Pisani Decl. ¶ 3, Exh. A.) Pisani read the letter, gathered more information, weighed her options, and decided to visit Plaintiff on December 14, 2020, around 4:33 p.m. at her home. (Pisani Decl. ¶ 4, Exh. A.) When Pisani arrived, she knocked and Plaintiff answered the door. Plaintiff inquired about Pisani's identity and purpose. Pisani introduced herself, gave her a business card, and told Plaintiff she was looking for Parvin Olfati. Plaintiff became agitated, started raising her force, and asked "How is it that you can just come up and knock on my door?" Pisani told Plaintiff there was an anonymous referral in response to a complaint Plaintiff had written to the Sacramento County Sheriff's Department. Pisani told Plaintiff she was part of an outreach team that provides resources and support to individuals in the community. Plaintiff then cursed at Pisani and asked her to leave, which she did. (Pisani Decl. ¶ 5.) After the visit, Pisani called her supervisor and wrote out the details of her encounter in a post-incident report she provided to CST shortly after the visit. (Pisani Decl. ¶ 6, Exh. D.) Plaintiff disputes the interaction occurred exactly as described above, but the Court need not detail the specifics of the disagreement here.

---

Plaintiff then wrote a letter complaining about the visit and tying it to the larger conspiracy mentioned in her original letter. (Reiman Decl. ¶¶ 12-13, Exhs. E, F.) Reiman attempted to contact Plaintiff to rectify the situation, but contends she never sent any employees or agents to secretly spy on Plaintiff while shopping or eating as Plaintiff alleges. (Reiman Decl. ¶14, Exhs. G, H.)

Plaintiff filed her Complaint on October 25, 2021, alleging eight causes of action against Defendants, Jane Roe Defendants One and Two, Jane Roe Defendants 3-100, and John Doe Defendants 1-100.

Plaintiff alleges six causes of action against Pisani: trespass and invasion of privacy based on Pisani walking onto Plaintiff's property; IIED based on Pisani communicating with her; false light and defamation based on Pisani communicating with the County; and general negligence based on these actions. Plaintiff also alleges these six causes of action based on the actions of Does One and Two, but Defendants declare they did not and do not employ anyone fitting the descriptions of Does One and Two (Reiman Decl. ¶ 8), did not have any employees or agents other than Pisani attempt to assist Plaintiff, and therefore the causes of action all arise from the protected activity of Pisani

Plaintiff also two causes of action against the County: negligent hiring and respondeat superior. Defendant contend respondeat superior is not a proper causes of action, but both are based on the alleged wrongs of Pisani.

Legal Standard

The California legislature enacted Code of Civil Procedure section 425.16, known as the anti-SLAPP statute, to provide a procedural remedy to dispose of lawsuits and causes of action that are brought to chill the valid exercise of the constitutional rights to free speech and to petition the government for redress of grievances. (*See Rusheen v Cohen* (2006) 37 Cal.4th 1048, 1055-1056.) "The analysis of an anti-SLAPP motion thus involves two steps. First, the court decides whether the defendant moving to strike has made a threshold showing that the challenged cause of action is one "arising from" protected activity. If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim. Only a cause of action that satisfies both prongs of the anti-SLAPP statute - i.e., that arises from protected speech or petitioning and lacks even minimal merit-is a SLAPP, subject to being stricken under the statute." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820 [citations omitted].)

In order to sustain the initial burden on an anti-SLAPP motion, a defendant need only show that plaintiff's lawsuit "arises from" defendant's exercise of free speech or petition rights as defined in Section 425.16(e). (*Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61.) In other words, Defendants only need to make a prima facie showing that Plaintiff's FAC "arises from" their constitutionally-protected free speech or petition activity. (*Governor Gray Davis Committee v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 458-459.) "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage." (*Baral v. Schnitt* (2016) 1 Cal. 5th 376, 396.) "If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached." (*Id.*)

In order to satisfy the second prong, a plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) In considering the second prong, the court "accept[s] as true the evidence favorable to the plaintiff and evaluate[s] the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." (*Id.* citations omitted.)

If the plaintiff's showing is not sufficient to sustain a favorable judgment, "the allegations supporting the

stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral v. Schnitt* (2016) 1 Cal.5 376, 396.)

In making its determination, the Court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based. (CCP § 425.16(b)(2).)

First Prong - Arising from Protected Speech

Pursuant to CCP § 425.16(e), an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:

(1) any written or oral statement or writing made before a legislative, executive, or judicial body, or any other official proceeding authorized by law,
(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,
(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or'
(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (CCP § 425.16(e).)

In determining whether the anti-SLAPP statute applies, the Court looks to the pleadings and supporting and opposing affidavits stating the acts upon which the liability is based. (*Navallier v. Sletten* (2002) 29 Cal.4th 82, 88.) In the anti-SLAPP context, the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity." (*Navellier, supra,* at 89.) The "principal thrust or gravamen" of the claim determines whether section 425.16 applies, not the title of the cause of action. (See *Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1279.) The statute cannot be invoked where allegations of protected activity are only incidental to a cause of action based on the non-protected activity. (*Martinez v Metabolife Int'l Inc.* (2003) 113 Cal.App.4th 181,187.)

Defendants contend Plaintiff's claims arise from statements relating to public issues of mental health and government action, which are protected under subdivision (e)(4), the catch-all provision of § 425.16. A claim falls within this subdivision "if (1) defendants' acts underlying the cause of action, and on which the cause of action is based, (2) were acts in furtherance of the defendants' right of petition or free speech (3) in connection with a public issue." (*Tamkin v. CBS Broadcasting, Inc.* (2011) 193 Cal.App.4th 133, 142-143.) "The inquiry under the catchall provision ... calls for a two-part analysis rooted in the statute's purpose and internal logic-a question we answer by looking to the content of the speech... . Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest. It is at this latter stage that context proves useful." (*FilmOn.com, Inc. v. DoubleVerify, Inc.* (2019) 7 Cal.5th 133, 149-150.)

Generally, a matter constitutes a public issue if it concerns: (1) a person or entity in the public; (2) conduct that could directly affect a large number of people beyond the direct participants; or (3) a topic of widespread public interest. (*Rivero v. American Federation of State County, and MunicipalEmployees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924.) "'[A]n issue of public interest' within the meaning of section 425.16 subdivision (e)(4) is any issue in which the public is interested. In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute-it is enough that it is one in which the public takes an interest." (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1042 [citations omitted].)

Unlike subdivisions (e)(1)-(3), which define protected conduct not only by its content, but also by its location, its audience, and its timing, the catchall provision of subdivision (e)(4) contains "'no similar contextual references to help courts discern the type of conduct and speech to protect' [citation omitted].

CASE TITLE: Olfati vs. County of Sacramento          CASE NO: **34-2021-00310164-CU-CR-GDS**

Case 2:22-at-00664   Document 1-2   Filed 06/29/22   Page 209 of 721

But when a general provision follows specific examples, as subdivision (e)(4) follows subdivision (e)(1) through (3), we generally understand the provision as 'restricted to those things that are similar to those which are enumerated specifically.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 900.) "The common thread that runs through section 425.16, subdivision

(e)(1) through (3) is that each provision protects speech that contributes to the public discussion or resolution of public issues-a thread that also ties these provisions together with the statute's stated purpose of furthering 'continued participation in matters of public significance.' (§ 425.16, subd. (a).) It follows that a defendant who claims its speech was protected as 'conduct in furtherance of the exercise of [free speech rights] in connection with a public issue or an issue of public interest' must show not only that its speech referred to an issue of public interest, but also that its speech contributed to public discussion or resolution of the issue [citation omitted]." (Id.)

Defendant asserts that Pisani's conduct in interacting with Plaintiff implicates two public issues: (1) preventing the negative impact of poor mental health in the community; and (2) the government's role in addressing that public issue. Thus, government mental health services generally being the public issue. Defendant also asserts County action is a public issue because the County, by its nature, is in the public eye, and Pisani's statements concerned the services offered by the County to the entire community. Defendant contends Pisani's speech contributed to resolving the mental health issue as she was there on behalf of a County agency to help ease the negative impacts of Plaintiff's potential mental health issues. (Reiman Decl. ¶ 7.) Pisani was offering free and voluntary help regarding Plaintiff's mental health and wellness. (Pisani Decl. ¶ 5, Exh. D.)

Defendant likens the circumstances to *Cross v. Cooper* (2011) 197 Cal.App.4th 357, wherein defendant "disclosed, or threatened to disclose, information that a registered sex offender lived" near a house that plaintiff had put up for sale. (*Id.* at 364.) Plaintiff alleged that by doing so, defendant had interfered with a prospective purchase. The

court found that CCP § 425.16 applied because of "the obvious: preventing child sexual abuse and protecting children from sexual predators are issues of widespread public interest." (*Id.* at 375.) The *Cross* court noted the protection of children from sexual offenders "would be of interest to most people, especially those who are living in or considering moving to the area." (*Id.* at 382.) Defendant argues Pisani's speech is similar to that in *Cross* because she was a County mental health professional, speaking to a County resident interested in and affected by this information, whose purpose was to communicate County mental health services. Defendants surmise this information could be used to debate the efficacy of those services and whether anything needs to be done by vote to change the status quo. Similarly, Defendants contend Pisani's communications with the County (i.e., her supervisor) reporting her interaction with Plaintiff contributed to the resolution of Plaintiff's mental health issues.

Plaintiff opposes and argue the "protected activity" does not arise under either the U.S. Constitution First Amendment or the California Constitution, which is a foundational requirement for applying § 425.16. Plaintiff cites to *Kaye v. Board of Trustees of San Diego County Public Law Library* (2009) 179 Cal.App.4th 48 and *Garcetti v. Ceballos* (2006) 547 U.S. 410 as support that when public employees make statements pursuant to their employment duties, it is not protected speech under the First Amendment. Indeed, there appears to be no dispute that the alleged conduct by Pisani occurred in connection with her employment as SMHC, calling into question whether or not such activity can be deemed in furtherance of the right to free speech. Nonetheless, even if the activity does constitute free speech, the private context of the conduct and statements makes heavier Defendants' burden of showing that the alleged conduct contributed to discussion or resolution of a public issue for purposes of subdivision (e)(4). The purported conduct and communications were made privately by Pisani to Plaintiff and thereafter to her supervisor Reiman in an on-the-job communication. The speech was not advertising County mental health services to a public audience in an effort to further curb the negative effects of mental health issues in the community, nor is there any evidence the speech contributed to a public discussion about mental health in the community or how it can be treated. As noted by

CASE TITLE: Olfati vs. County of Sacramento          CASE NO: **34-2021-00310164-CU-CR-GDS**

Case 2:22-at-00664   Document 1-2   Filed 06/29/22   Page 210 of 721

Defendants, they were offering to help Plaintiff treat possible mental health issues in her individual capacity. Defendants' argument that such activity concerns a public issue simply because it concerns mental health services offered by the County is too broad in the Court's opinion to come within the purview of subdivision (e)(4).

Given the foregoing, the Court finds Defendants have failed to meet their initial burden that the challenged claims arise from protected speech.

The motion is DENIED on this basis. As a result, the Court need not evaluate the second prong, probability of prevailing, and whether Plaintiffs have met that burden.

The minute order is effective immediately. No formal order pursuant to CRC Rule 3.1312 or further notice is required.

**COURT RULING**

The matter was argued and submitted.  The matter was taken under submission.

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SACRAMENTO**

**GORDON D SCHABER COURTHOUSE**

**MINUTE ORDER**

DATE: 04/21/2022          TIME: 02:42:00 PM          DEPT: 54

JUDICIAL OFFICER PRESIDING: Raymond Cadei
CLERK:  A O'Donnell
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:

CASE NO: **34-2021-00310164-CU-CR-GDS** CASE INIT.DATE: 10/25/2021
CASE TITLE: **Olfati vs. County of Sacramento**
CASE CATEGORY: Civil - Unlimited

---

**APPEARANCES**

---

**Nature of Proceeding: Ruling on Submitted Matter (Motion to Strike (SLAPP)) Taken Under Submission on 04/20/2022**

**TENTATIVE RULING**

Defendants County of Sacramento (the "County") and Pamela Pisani's ("Pisani") (collectively, "Defendants") special motion to strike pursuant to CCP § 425.16 is DENIED.

<u>Factual Background</u>

On December 10, 2020, Jennifer Reiman, Mental Health Program Coordinator for the County ("Reiman") received an email from a county Senior Mental Health Counselor ("SMHC"). (Reiman Decl. ¶ 4, Exh. A.) The email included a letter written by plaintiff Parvin Olfati ("Plaintiff") to the County and other government representatives and agencies complaining about a conspiracy against her. (Reiman Decl. ¶ 5, Exh. B.)

Due to concerns for Plaintiff's mental health, Reiman asked Pisan, a SMCH with the County Community Support Team ("CST"), to help Plaintiff. (Reiman Decl. ¶ 8, Exh. A; Pisani Decl. ¶ 3, Exh. A.) Pisani read the letter, gathered more information, weighed her options, and decided to visit Plaintiff on December 14, 2020, around 4:33 p.m. at her home. (Pisani Decl. ¶ 4, Exh. A.) When Pisani arrived, she knocked and Plaintiff answered the door. Plaintiff inquired about Pisani's identity and purpose. Pisani introduced herself, gave her a business card, and told Plaintiff she was looking for Parvin Olfati. Plaintiff became agitated, started raising her force, and asked "How is it that you can just come up and knock on my door?" Pisani told Plaintiff there was an anonymous referral in response to a complaint Plaintiff had written to the Sacramento County Sheriff's Department. Pisani told Plaintiff she was part of an outreach team that provides resources and support to individuals in the community. Plaintiff then cursed at Pisani and asked her to leave, which she did. (Pisani Decl. ¶ 5.) After the visit, Pisani called her supervisor and wrote out the details of her encounter in a post-incident report she provided to CST shortly after the visit. (Pisani Decl. ¶ 6, Exh. D.) Plaintiff disputes the interaction occurred exactly as described above, but the Court need not detail the specifics of the disagreement here.

Plaintiff then wrote a letter complaining about the visit and tying it to the larger conspiracy mentioned in her original letter. (Reiman Decl. ¶¶ 12-13, Exhs. E, F.) Reiman attempted to contact Plaintiff to rectify the situation, but contends she never sent any employees or agents to secretly spy on Plaintiff while shopping or eating as Plaintiff alleges. (Reiman Decl. ¶14, Exhs. G, H.)

---

CASE TITLE: Olfati vs. County of Sacramento                    CASE NO: **34-2021-00310164-CU-CR-GDS**

Case 2:22-at-00664   Document 1-2   Filed 06/29/22   Page 212 of 721

Plaintiff filed her Complaint on October 25, 2021, alleging eight causes of action against Defendants, Jane Roe Defendants One and Two, Jane Roe Defendants 3-100, and John Doe Defendants 1-100.

Plaintiff alleges six causes of action against Pisani: trespass and invasion of privacy based on Pisani walking onto Plaintiff's property; IIED based on Pisani communicating with her; false light and defamation based on Pisani communicating with the County; and general negligence based on these actions. Plaintiff also alleges these six causes of action based on the actions of Does One and Two, but Defendants declare they did not and do not employ anyone fitting the descriptions of Does One and Two (Reiman Decl. ¶ 8), did not have any employees or agents other than Pisani attempt to assist Plaintiff, and therefore the causes of action all arise from the protected activity of Pisani

Plaintiff also two causes of action against the County: negligent hiring and respondeat superior. Defendant contend respondeat superior is not a proper causes of action, but both are based on the alleged wrongs of Pisani.

Legal Standard

The California legislature enacted Code of Civil Procedure section 425.16, known as the anti-SLAPP statute, to provide a procedural remedy to dispose of lawsuits and causes of action that are brought to chill the valid exercise of the constitutional rights to free speech and to petition the government for redress of grievances. (*See Rusheen v Cohen* (2006) 37 Cal.4th 1048, 1055-1056.) "The analysis of an anti-SLAPP motion thus involves two steps. First, the court decides whether the defendant moving to strike has made a threshold showing that the challenged cause of action is one "arising from" protected activity. If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim. Only a cause of action that satisfies both prongs of the anti-SLAPP statute - i.e., that arises from protected speech or petitioning and lacks even minimal merit-is a SLAPP, subject to being stricken under the statute." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820 [citations omitted].)

In order to sustain the initial burden on an anti-SLAPP motion, a defendant need only show that plaintiff's lawsuit "arises from" defendant's exercise of free speech or petition rights as defined in Section 425.16(e). (*Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61.) In other words, Defendants only need to make a prima facie showing that Plaintiff's FAC "arises from" their constitutionally-protected free speech or petition activity. (*Governor Gray Davis Committee v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 458-459.) "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage." (*Baral v. Schnitt* (2016) 1 Cal. 5th 376, 396.) "If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached." (*Id.*)

In order to satisfy the second prong, a plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) In considering the second prong, the court "accept[s] as true the evidence favorable to the plaintiff and evaluate[s] the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." (*Id.* citations omitted.)

If the plaintiff's showing is not sufficient to sustain a favorable judgment, "the allegations supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral v. Schnitt* (2016) 1 Cal.5 376, 396.)

In making its determination, the Court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based. (CCP § 425.16(b)(2).)

First Prong - Arising from Protected Speech

Pursuant to CCP § 425.16(e), an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:

(1) any written or oral statement or writing made before a legislative, executive, or judicial body, or any other official proceeding authorized by law,
(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,
(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or'
(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (CCP § 425.16(e).)

In determining whether the anti-SLAPP statute applies, the Court looks to the pleadings and supporting and opposing affidavits stating the acts upon which the liability is based. (*Navallier v. Sletten* (2002) 29 Cal.4th 82, 88.) In the anti-SLAPP context, the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity." (*Navellier, supra,* at 89.) The "principal thrust or gravamen" of the claim determines whether section 425.16 applies, not the title of the cause of action. (See *Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1279.) The statute cannot be invoked where allegations of protected activity are only incidental to a cause of action based on the non-protected activity. (*Martinez v Metabolife Int'l Inc.* (2003) 113 Cal.App.4th 181,187.)

Defendants contend Plaintiff's claims arise from statements relating to public issues of mental health and government action, which are protected under subdivision (e)(4), the catch-all provision of § 425.16. A claim falls within this subdivision "if (1) defendants' acts underlying the cause of action, and on which the cause of action is based, (2) were acts in furtherance of the defendants' right of petition or free speech (3) in connection with a public issue." (*Tamkin v. CBS Broadcasting, Inc.* (2011) 193 Cal.App.4th 133, 142-143.) "The inquiry under the catchall provision ... calls for a two-part analysis rooted in the statute's purpose and internal logic-a question we answer by looking to the content of the speech... . Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest. It is at this latter stage that context proves useful." (*FilmOn.com, Inc. v. DoubleVerify, Inc.* (2019) 7 Cal.5th 133, 149-150.)

Generally, a matter constitutes a public issue if it concerns: (1) a person or entity in the public; (2) conduct that could directly affect a large number of people beyond the direct participants; or (3) a topic of widespread public interest. (*Rivero v. American Federation of State County, and MunicipalEmployees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924.) "'[A]n issue of public interest' within the meaning of section 425.16 subdivision (e)(4) is any issue in which the public is interested. In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute-it is enough that it is one in which the public takes an interest." (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1042 [citations omitted].)

Unlike subdivisions (e)(1)-(3), which define protected conduct not only by its content, but also by its location, its audience, and its timing, the catchall provision of subdivision (e)(4) contains "'no similar contextual references to help courts discern the type of conduct and speech to protect' [citation omitted]. But when a general provision follows specific examples, as subdivision (e)(4) follows subdivision (e)(1) through (3), we generally understand the provision as 'restricted to those things that are similar to those which are enumerated specifically.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 900.) "The common thread that runs through section 425.16, subdivision (e)(1) through (3) is that each provision protects speech that contributes to the public discussion or

resolution of public issues-a thread that also ties these provisions together with the statute's stated purpose of furthering 'continued participation in matters of public significance.' (§ 425.16, subd. (a).) It follows that a defendant who claims its speech was protected as 'conduct in furtherance of the exercise of [free speech rights] in connection with a public issue or an issue of public interest' must show not only that its speech referred to an issue of public interest, but also that its speech contributed to public discussion or resolution of the issue [citation omitted]." (Id.)

Defendant asserts that Pisani's conduct in interacting with Plaintiff implicates two public issues: (1) preventing the negative impact of poor mental health in the community; and (2) the government's role in addressing that public issue. Thus, government mental health services generally being the public issue. Defendant also asserts County action is a public issue because the County, by its nature, is in the public eye, and Pisani's statements concerned the services offered by the County to the entire community. Defendant contends Pisani's speech contributed to resolving the mental health issue as she was there on behalf of a County agency to help ease the negative impacts of Plaintiff's potential mental health issues. (Reiman Decl. ¶ 7.) Pisani was offering free and voluntary help regarding Plaintiff's mental health and wellness. (Pisani Decl. ¶ 5, Exh. D.)

Defendant likens the circumstances to *Cross v. Cooper* (2011) 197 Cal.App.4th 357, wherein defendant "disclosed, or threatened to disclose, information that a registered sex offender lived" near a house that plaintiff had put up for sale. (*Id.* at 364.) Plaintiff alleged that by doing so, defendant had interfered with a prospective purchase. The
court found that CCP § 425.16 applied because of "the obvious: preventing child sexual abuse and protecting children from sexual predators are issues of widespread public interest." (*Id.* at 375.) The *Cross* court noted the protection of children from sexual offenders "would be of interest to most people, especially those who are living in or considering moving to the area." (*Id.* at 382.) Defendant argues Pisani's speech is similar to that in *Cross* because she was a County mental health professional, speaking to a County resident interested in and affected by this information, whose purpose was to communicate County mental health services. Defendants surmise this information could be used to debate the efficacy of those services and whether anything needs to be done by vote to change the status quo. Similarly, Defendants contend Pisani's communications with the County (i.e., her supervisor) reporting her interaction with Plaintiff contributed to the resolution of Plaintiff's mental health issues.

Plaintiff opposes and argue the "protected activity" does not arise under either the U.S. Constitution First Amendment or the California Constitution, which is a foundational requirement for applying § 425.16. Plaintiff cites to *Kaye v. Board of Trustees of San Diego County Public Law Library* (2009) 179 Cal.App.4th 48 and *Garcetti v. Ceballos* (2006) 547 U.S. 410 as support that when public employees make statements pursuant to their employment duties, it is not protected speech under the First Amendment. Indeed, there appears to be no dispute that the alleged conduct by Pisani occurred in connection with her employment at SMHC, calling into question whether or not such activity can be deemed in furtherance of the right to free speech. Nonetheless, even if the activity does constitute free speech, the private context of the conduct and statements makes heavier Defendants' burden of showing that the alleged conduct contributed to discussion or resolution of a public issue for purposes of subdivision (e)(4). The purported conduct and communications were made privately by Pisani to Plaintiff and thereafter to her supervisor Reiman in an on-the-job communication. The speech was not advertising County mental health services to a public audience in an effort to further curb the negative effects of mental health issues in the community, nor is there any evidence the speech contributed to a public discussion about mental health in the community or how it can be treated. As noted by Defendants, they were offering to help Plaintiff treat possible mental health issues in her individual capacity. Defendants' argument that such activity concerns a public issue simply because it concerns mental health services offered by the County is too broad in the Court's opinion to come within the purview of subdivision (e)(4).

CASE TITLE: Olfati vs. County of Sacramento          CASE NO: **34-2021-00310164-CU-CR-GDS**

Case 2:22-at-00664   Document 1-2   Filed 06/29/22   Page 215 of 721

Given the foregoing, the Court finds Defendants have failed to meet their initial burden that the challenged claims arise from protected speech.

The motion is DENIED on this basis. As a result, the Court need not evaluate the second prong, probability of prevailing, and whether Plaintiffs have met that burden.

The minute order is effective immediately. No formal order pursuant to CRC Rule 3.1312 or further notice is required.

**COURT RULING**

The matter was argued and submitted.  The matter was taken under submission.

**SUBMITTED MATTER RULING**

Having taken the matter under submission, the Court now rules as follows:  After consideration and review the Court affirms the tentative ruling.

# EXHIBIT C

FILED/ENDORSED

MAY 17 2022

By: _E. Macdonald_
Deputy Clerk

1    STEVEN MARK KAMP (California State Bar Number 116817)
     STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
2    Electronic Mail Address: steve.kamp@comcast.net
     Telephone: (916) 501-1791 (cellular, voice/text)
3    Attorney for Plaintiff Ms. Parvin Olfati

4

5

6

7

8
                  IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                       IN AND FOR THE COUNTY OF SACRAMENTO
10

11
12                                          No.  34-2021-00310164-CU-CE-GDS

13   Ms. PARVIN OLFATI, Plaintiff            **PLAINTIFF Ms. PARVIN OLFATI'S**
                                             **NOTICE OF MOTION FOR LEAVE OF**
14        v.                                 **COURT TO FILE FIRST AMENDED**
                                             **COMPLAINT**
15   COUNTY OF SACRAMENTO; PAMELA
     PISANI; JANE ROE DEFENDANT ONE;         **Date: June 9, 2022**
16   JANE ROE DEFENDANT TWO;  JANE
     ROE DEFENDANTS 3-100; JOHN DOE          **Time: 9:00 a.m.**
17   DEFENDANTS 1-100,  Defendants
     Defendants                              **Department: 54**
18
                                             **Reservation No.: 2640543**
19
                                             **Complaint Filed: 10/25/21**
20

21   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

22        **PLEASE TAKE NOTICE** that on June 9,  2022, at 9:00 a.m. in Department 54 of the

23   above-entitled court, located at 813 6th Street, Sacramento, CA 95814, Plaintiff Ms. PARVIN

24   OLFATI will and hereby does move the Court, pursuant to California Code of Civil Procedure

25   ("CCP") Section 473, subdivision (a)(1);  CCP Section 426.50; and California Rules of Court

26   Rule 3.1324,  for an Order granting Plaintiff leave to file the First Amended Complaint attached

27   hereto as Exhibit A.
28

     PLAINTIFF Ms.  PARVIN OLFATI'S NOTICE OF MOTION FOR LEAVE OF COURT TO FILE FIRST
     AMENDED COMPLAINT  1

1   This Motion is made on the following grounds:

2   1. On April 21, 2022, this Court in Register of Actions (ROA) number 28 denied the Anti-

3   SLAPP Statute[1] Motion to Strike[2] filed by Defendants Pamela Pisani ("Pisani") and Pisani

4   employer County of Sacramento ("County") ("Defendants"). Therefore, the CCP Section

5   472, subdivision (b) and Anti-SLAPP Statute stay provision [CCP Section 425.16,

6   subdivision (g)] are no longer in effect.

7

8   2.   The proposed First Amended Complaint (Proposed FAC) is filed to add new facts, new

9   claims, and new parties based on evidence unknown to Plaintiff until January 29, 2022,

10   when her counsel received in the postal mail the January 28, 2022 Anti-SLAPP Statute

11   Motion and supporting documents filed by Defendants County and Pisani.[3] One of these

12   County supporting documents was the Declaration of Jennifer Reiman ("Reiman

13   Declaration")[4], where Reiman therein stated that she was the County Mental Health

14   Program Coordinator and the supervisor of Defendant Pisani. The Reiman Declaration

15   and its' supporting exhibits included County electronic mail messages[5] between defendant

16   Pisani and proposed new Defendants County Sheriff's Sergeant Ronald Briggs and

17   County Division of Behavioral Health Services employees Jennifer Stewart and Jennifer

18   Reiman, revealing that: (a) proposed new Defendant County Sheriff's Sergeant Ronald

19   Briggs ordered that a "mental health worker" be sent to "check in on the letter writer

20   [Plaintiff]" in retaliation for Plaintiff sending to the County Sheriff a Police Report letter[6]

21

22

23

24   [1] Code of Civil Procedure (CCP) Section 425.16 ("the Anti-SLAPP Statute").

25   [2] Register of Actions (ROA) numbers 11-12.

26   [3] ROA numbers 11-16.

27   [4] ROA number 15 (Reiman Declaration).

28   [5] ROA number 15 (Reiman Declaration), Exhibit A thereto.

[6] ROA number 15, Exhibit B thereto. This letter is also included as Exhibit Thirteen in the Exhibit A proposed First Amended Complaint (Proposed FAC).

1    regarding the theft of her cellphone in the Sheriff's Department jurisdiction Fair Oaks

2    area, a Police Report that Defendant Briggs determined without investigation to be

3    "unfounded" and merited County Community Support Team intervention that Defendant

4    Briggs believed would be "more effective" because Plaintiff's Police Report letter stated

5    an "identified belief that law enforcement is stalking her and colluding against her"; and

6    (b) new Defendants Reiman and Stewart, and Defendant Pisani, defamed Plaintiff and

7    placed Plaintiff in a false light with electronic mail message statements that Plaintiff was

8    the restrained party in a restraining order obtained against her by a member of the

9    Sacramento City Council[7], a statement that all three Defendants knew or in the exercise of

10   reasonable care should have known was false.

11

12   3.   Between January 28, 2022 (the day Defendants filed their Anti-SLAPP Statute Motion)

13        and April 21, 2022 (the day the Court denied the motion), the stay of proceedings effected

14        by CCP Sections 425.16, subdivision (g) and 472, subdivision (b), prevented Plaintiff

15        from filing an amended complaint or moving for leave to file one.[8]

16

17   4.   On April 25, 2022, the undersigned counsel for Plaintiff sent via electronic mail a letter to

18        counsel for Defendants asking if they would stipulate (pursuant to CCP Section 472,

19        subdivision (a), second sentence) to Plaintiff filing and serving the Proposed FAC.[9]

20        Attached as Exhibit C to the California Rule of Court 3.1324(b) Supporting Declaration

21        submitted herewith is the April 29, 2022 letter from Defendants;' counsel rejecting this

22        request.

23

24

25

26   [7] ROA number 15, Exhibit A thereto.

27   [8] In ROA number 10, Defendants on January 18, 2022 timely filed their Answer to the initial Complaint, based on an extension Plaintiff agreed to in writing.

28   [9] Exhibit B to the CRC Rule 3.1324(b) Declaration submitted herewith.

PLAINTIFF Ms.  PARVIN OLFATI'S NOTICE OF MOTION FOR LEAVE OF COURT TO FILE FIRST
AMENDED COMPLAINT   3

1    5. The Initial Complaint (IC) is Register of Actions (ROA) number 1 in this action. The

2       following IC allegations are deleted:

3       IC page 8: 17 – 28 (paragraph 16):  is replaced in the First Amended Complaint (FAC)

4       with paragraphs 21-47 at FAC pages 14: 22 – 24: 15.

5       IC pages 9: 1 – 12: 17 (paragraphs 17-33): is replaced in the FAC with paragraphs 48 – 66

6       at FAC pages 24: 16 – 29: 13.

7

8       IC pages 12: 18 – 14: 6 (paragraphs 34 – 38) are replaced in the FAC with paragraphs 67

9       – 71 at FAC pages 29: 15 – 31: 12.

10   6. The Proposed FAC is attached hereto as Exhibit A. It proposes to add the following new

11      allegations and new causes of action, as explained in the following  paragraph-by-

12      paragraph comparison of the Proposed FAC and the initial Complaint:

13

14

15   Proposed First Amended Complaint (FAC)            Initial Complaint (IC)

16   _Statement of Jurisdiction, Venue, and Reasons for Amendment_

17   FAC Pages 1: 22-28 through 3:15.              IC Pages 1:21 – 21:2. The FAC paragraph

18   includes the IC paragraph 1 allegations and adds allegations explaining the need for amendment.

19   These allegations summarize the new allegations, new defendants, and new causes of action.

20   FAC Pages 3: 16 – 4: 7. This is a new paragraph 2 that retains the unlimited civil action

21   allegations from IC paragraph 1; adds allegations about the new Defendants Briggs, Reiman, and

22   Stewart; and adds that Plaintiff pursuant to CCP Section 427.10 is adding a Twelfth Cause of

23   Action that is a Government Code 6262 petition for writ of mandate against Defendant COUNTY

24   for the failure of the COUNTY Sheriff and/or Clerk of the Board of Supervisors to respond or

25   produce records in response to Plaintiff's multiple Public Records Act (PRA) requests.

26

27

28

1   FAC Page 4: 8 – 10 (paragraph 3)                    IC Page 2: 4-6(paragraph 2). This is a venue

2   allegation that is unchanged from the IC to the FAC.

3   FAC Page 4: 11 – 5:7, paragraphs 4-6                    IC Page 2: 7-21 (paragraphs 3-5). This is a Notice

4   of California Government Tort Claims Act (CGTCA) Claim allegation that is expanded to include

5   (in FAC paragraph 6) Plaintiff's filing of a supplemental claim with the County on April 5, 2022

6   regarding the newly discovered information revealed by the County in its own' Jennifer Reiman

7   Declaration, and the County's rejection of said supplemental claim on April 9, 2022 (a

8   Saturday).[10]

9

10   FAC Page 5: 8-11 (paragraph 7)                    IC Page 2: 22-23 (paragraph 7). These allegations

11   both list the date the IC was filed. FAC paragraph 7 adds the noticed motion filing and hearing

12   dates of the Proposed FAC.

13

14   **PARTIES**

15   **Plaintiff**

16   FAC Pages 5: 12 - 8:5 (paragraphs 8-11)    IC Pages 3: 1 – 4:17 (paragraphs 6-9).  These are

17   party allegations about Plaintiff. FAC paragraph 11 states that the case number of Plaintiff's

18   federal Section 1983 civil rights against the City of Sacramento is numbered 2:21-cv-21-00606-

19   KJM-CKD.

20   FAC Pages 8:6 – 9:8 (paragraph 12)        IC Pages 4-18 – 5: 9 (paragraph 10). These are party

21   allegations about Defendant County.

22   FAC Page 9: 9 – 28 (paragraph 13)        IC page 5: 10-22 (paragraph 11).  These are party

23   allegations about Defendant Pamela Pisani.

---

[10] The April 9, 2022 rejection by the County of the supplemental CGTCA claim was not in the FAC that was Exhibit A to Plaintiff's ROA number 21 opposition memorandum served April 6, 2022.

1   FAC Pages 10: 1 – 10: 18 (paragraph 14). These are party allegations against new Defendant

2   County Sheriff's Sergeant Ronald Briggs. They are not in the IC.

3   FAC Pages 10: 19 – 11: 3 (paragraph 15). These are party allegations against new Defendant

4   Jennifer Stewart. They are not in the IC.

5
6   FAC Page 11: 4 – 18 (paragraph 16).    These are party allegations against new Defendant

7   Jennifer Reiman. They are not in the IC.

8   FAC Pages 11: 19 – 12: 28 (paragraph 17)    IC Pages 5: 23 – 6: 25 (paragraph 12). These are

9   party allegations against Jane Roe Defendant Number One.

10  FAC Pages 13: 1 – 14: 5 (paragraph 18)    IC Pages 6: 26 – 7: 28 (paragraph 13). These are

11  party allegations against Jane Roe Defendant Number Two.

12
    FAC Page 14: 6 – 17 (paragraph 19)    IC Page 8: 1 – 14 (paragraph 14). These are party
13
    allegations against Jane Roe Defendants 3-100 and John Doe Defendants 1-100.
14

15

16  **FACTS**

17  FAC Page 14: 18 – 21 (paragraph 20)    IC Page 8: 15-16 (paragraph 15). These are

18  introductory Facts paragraphs that incorporate allegations in the previous paragraphs.

19  FAC Pages 14: 22 – 24: 15 (paragraphs 21 – 47) IC Page 8: 17 – 28 (paragraph 16). These are

20  new FAC allegations that replace IC [paragraph 16. The new allegations come from facts

21  revealed in Defendant County's Jennifer Reiman Declaration and exhibits thereto, that were not

22  made available to Defendant by County until January 28, 2022, even though the Reiman

23  Declaration Exhibit A electronic mail message string records were covered by Plaintiff Public

24  Records Act (PRA) requests to County's Clerk of the Board and Sheriff's Department that

25  Plaintiff filed in December 2020 and in 2021, and in response to which Defendant County's: (a)

26
27
28

1   Sheriff's Department did not respond or produce records; and (b) Clerk of the Board Office

2   responded with electronic mail messages saying they had no records.

3   FAC Pages 24: 16 – 29: 14 (paragraphs 48 -66)        IC pages 9: 1 – 12: 17 (paragraphs 17-33):

4   The IC allegations remain in the FAC but are supplemented with new allegations from facts

5   revealed in Defendant County's Jennifer Reiman Declaration and exhibits thereto, that were not

6   made available to Defendant by County until January 28, 2022, even though the Reiman

7   Declaration Exhibit A electronic mail message string records were covered by Plaintiff Public

8   Records Act (PRA) requests to County's Clerk of the Board and Sheriff's Department that

9   Plaintiff filed in December 2020 and in 2021, and in response to which Defendant County's: (a)

10  Sheriff's Department did not respond or produce records; and (b) Clerk of the Board Office

11  responded with electronic mail messages saying they had no records.

12

13  FAC Pages 29: 15 – 31: 13 (paragraphs 67 – 71)     IC pages 12: 18 – 14: 6 (paragraphs 34 – 38).

14  The allegations in the FAC pages/paragraphs are similar to but not identical to the IC

15  pages/paragraphs. FAC paragraph 69 adds to the IC paragraph 36 allegation that Plaintiff's May

16

17  9, 2020 injuries from the City of Sacramento Police Department and its' officers are the subject of

18  the United States District Court for the Eastern District of California Case No. 21-cv-00606-

19  KJM-CKD, *Parvin Olfati v. City of Sacramento et al.*

20

21  FAC Pages 31: 14 – 31: 24 (paragraph 72). These are new allegations based upon the facts newly

22  revealed in Defendant County's Declaration of Jennifer Reiman and exhibits thereto.

23  FA C Pages 31: 25 – 34: 23 (paragraphs 73-74)    IC pages 14: 7 – 15: 22 (paragraphs 39-40)

24  These allegations are against Defendants Roe One and Roe Two,

25  FAC Page 34: 24 – 28 – 35: 23 (paragraphs 75-76)        IC pages 15: 23 – 16: 14. These are

26  Damages allegations.

27

28

1  **CAUSES OF ACTION**

2        **FIRST CAUSE OF ACTION: INVASION OF PRIVACY (INTRUSION INTO**
3  **PRIVATE AFFAIRS) versus DEFENDANTS PISANI, BRIGGS, STEWART,**
   **REIMAN, ROE ONE and ROE TWO [*Miller v. National Broadcasting Company*, 187**
4  **Cal.App.3d 1463 (1986)]**

5  FAC Pages 35: 24 – 36: 8 (paragraphs 77 – 92)   IC Pages 16: 15 – 17: 20 (paragraphs 43 – 57),

6  Identical to the IC First Cause of Action except that newly discovered facts are incorporated (in

7  FAC paragraph 77) and the Cause of Action is now made not only against Defendants Pisani, Roe

8  One, and Roe Two, but also against new Defendants Briggs, Stewart, and Reiman.

9        **SECOND CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL**
10  **DISTRESS versus DEFENDANTS PISANI, BRIGGS, STEWART, REIMAN, ROE**
   **ONE and ROE TWO [*Hughes v. Pair*, 46 Cal.4[th] 1035 (2009)]**
11

12  FAC Pages 36: 9 – 40: 7 (paragraphs 93 – 128)    IC Pages 17: 21 – 19: 20 (paragraphs 58 – 76):

13  Identical to the IC Second Cause of Action except that newly discovered facts are incorporated

14  (in FAC paragraph 93) and the Cause of Action is now made not only against Defendants Pisani,

15  Roe One, and Roe Two, but also against new Defendants Briggs, Stewart, and Reiman.

16        **THIRD CAUSE OF ACTION: TRESPASS versus DEFENDANT PISANI [*Miller v.***
17  ***National Broadcasting Company*, 187 Cal.App.3d 1463 (1986)]**

18  FAC Pages 40: 8 – 42: 28 (paragraphs 129 – 138)   IC Pages 19: 21 – 21: 9 (paragraphs 77 – 86).

19  Identical to the IC Third Cause of Action except that additional allegations are incorporated in

20  FAC paragraph 129.

21        **FOURTH CAUSE OF ACTION versus DEFENDANTS PISANI, BRIGGS,**
22  **STEWART, REIMAN, ROE ONE, and ROE TWO FOR NEGLIGENCE [Cal. Civil**
   **Code Section 1714(a); *Cabral v. Ralph's Grocery Co.*, 51 Cal.4[th] 764 (2011)]**
23

24  FAC Pages 43: 1 – 45: 20 (paragraphs 139 – 157)   IC Pages 21: 10 – 22: 23 (paragraphs 87 –

25  96). Identical to the IC Fourth Cause of Action except that newly discovered facts are

26  incorporated (in FAC paragraph 139) and the Cause of Action is now made not only against

27  Defendants Pisani, Roe One, and Roe Two, but also against new Defendants Briggs, Stewart, and

28  Reiman.

PLAINTIFF Ms. PARVIN OLFATI'S NOTICE OF MOTION FOR LEAVE OF COURT TO FILE FIRST
AMENDED COMPLAINT   8

1

2

**FIFTH CAUSE OF ACTION: FALSE LIGHT INVASION OF PRIVACY versus DEFENDANTS PISANI, STEWART, REIMAN, ROE ONE and ROE TWO [*Briscoe v. Reader's Digest Association*, 4 Cal.3d 529 (1971)]**

3

FAC Pages 45: 21 – 49: 15 (paragraphs 158 – 193)    IC Pages 22: 24 – 24: 28 (paragraphs 97 –

4

5

118). Identical to the IC Fifth Cause of Action except that newly discovered facts are

incorporated (in FAC paragraph 158) and the Cause of Action: (a) is now made not only against

6

7

Defendants Pisani, Roe One, and Roe Two, but also against new Defendants Stewart and

8

Reiman[11]; and (b) includes new allegations based upon the newly discovered evidence from

9

Defendant County's Declaration of Jennifer Reiman and exhibits thereto.

10

11

**SIXTH CAUSE OF ACTION: versus DEFENDANTS PISANI, STEWART, REIMAN, ROE ONE and ROE TWO for DEFAMATION [California Civil Code Sections 44, 45, 46]**

12

13

FAC Pages 49: 16 – 54: 28 (paragraphs 194 – 234)    IC Pages 25: 1 – 27: 15 (paragraphs 119 -

14

143). Identical to the IC Sixth Cause of Action except that newly discovered facts are

15

incorporated (in FAC paragraph 194) and the Cause of Action: (a) now includes allegations

16

17

against not only Defendants Pisani, Roe One, and Roe Two, but also against new Defendants

18

Stewart and Reiman[12]; and (b) includes new allegations based upon the newly discovered

19

evidence from Defendant County's Declaration of Jennifer Reiman and exhibits thereto.

20

21

22

23

24

25

26

27

28

---

[11] But not new Defendant Briggs.

[12] But not new Defendant Briggs.

1    **SEVENTH CAUSE OF ACTION: versus DEFENDANT COUNTY OF SACRAMENTO**
     **for NEGLIGENT TRAINING, DISCIPLINE, AND SUPERVISION OF COUNTY**
2    **DEPUTY SHERIFFS IN PROBLEM ORIENTED POLICING; COUNTY SENIOR**
     **MENTAL HEALTH COUNSELORS ; and COUNTY MENTAL HEALTH PROGRAM**
3    **COORDINATORS [Cal. Gov. Code Section 815.2(a); *C.A. v. William S. Hart Union High***
     ***School District*, 53 Cal.4[th] 861 (2012)]**
4

5
     FAC Pages 55: 1 – 56: 28 (paragraphs 235 - 240)    IC Pages 27: 16 – 29: 7 (paragraphs 144 -
6
7    149).  Identical to the IC Seventh Cause of Action except that newly discovered facts are

8    incorporated (in FAC paragraph 235) and the Cause of Action: (a) now includes allegations

9    regarding Defendant County's negligent training, discipline, and supervision of new Defendants

10   Briggs, Stewart and Reiman as well as Defendants Pisani, Roe One, and Roe Two; and (b)

11
     includes new allegations based upon the newly discovered evidence from Defendant County's
12
     Declaration of Jennifer Reiman and exhibits thereto.
13

14   **EIGHTH CAUSE OF ACTION: GOVERNMENT CODE SECTION 815.2(a)**
     ***RESPONDEAT SUPERIOR* versus DEFENDANT COUNTY OF SACRAMENTO FOR**
15   **THE ACTIONS OF DEFENDANT COUNTY SENIOR MENTAL HEALTH**
     **COUNSELORS PISANI and STEWART; COUNTY MENTAL HEALTH PROGRAM**
16   **COORDINATOR REIMAN; COUNTY SHERIFF'S SERGEANT RONALD BRIGGS;**
     **and COUNTY EMPLOYEE ROE and DOE DEFENDANTS [California Government**
17   **Code Section 815.2(a); *Mary M. v. City of Los Angeles*, 54 Cal.3d 202 (1991)]**
18

19   FAC Pages 57: 1 – 59: 12 (paragraphs 241 - 257)    IC Pages 29: 8 – 30: 26 (paragraphs 150 -

20   161).  Identical to the IC Eighth Cause of Action except that newly discovered facts are

21   incorporated (in FAC paragraph 241) and the Cause of Action: (a) now includes allegations

22   regarding Defendant County's Government Code Section 815.2(a) liability for the acts of new
23
     Defendants Briggs, Stewart and Reiman as well as Defendants Pisani, Roe One, and Roe Two;
24
     and (b) incorporates new allegations based upon the newly discovered evidence from Defendant
25
26   County's Declaration of Jennifer Reiman and exhibits thereto.

27

28

1

2  **NINTH CAUSE OF ACTION: TOM BANE CIVIL RIGHTS ACT versus DEFENDANTS COUNTY OF SACRAMENTO, BRIGGS, STEWART, REIMAN and PISANI FOR ACTS OF THREATS, INTIMIDATION, AND COERCION TO RETALIATE AGAINST PLAINTIFF FOR EXERCISING HER FEDERAL AND STATE CONSTITUTIONAL RIGHTS OF PETITION BY FILING POLICE REPORTS WITH DEFENDANT COUNTY'S SHERIFF DEPARTMENT [Civil Code Section 52.1]**

3

4

5

6

7  FAC Pages 59: 13 – 61: 9 (paragraphs 258-264). This is a new Cause of Action based upon the

8  newly discovered evidence from Defendant County's Declaration of Jennifer Reiman and exhibits

9  thereto.

10  **TENTH CAUSE OF ACTION: FEDERAL CIVIL RIGHTS ACT [United States Code, Title 42, Section 1983] versus DEFENDANTS BRIGGS, STEWART, REIMAN and PISANI FOR RETALIATING AGAINST PLAINTIFF FOR EXERCISING HER FEDERAL CONSTITUTIONAL RIGHT OF PETITION BY FILING POLICE REPORTS WITH DEFENDANT COUNTY'S SHERIFF DEPARTMENT**

11

12

13

14  FAC Pages 61: 10 – 63: 7 (paragraphs 265 - 272). This is a new Cause of Action based upon the

15

16  newly discovered evidence from Defendant County's Declaration of Jennifer Reiman and exhibits

17  thereto.

18  **ELEVENTH CAUSE OF ACTION: FEDERAL CIVIL RIGHTS ACT [United States Code, Title 42, Section 1983] MUNICIPAL AND SUPERVISORIAL LIABLITY versus DEFENDANT COUNTY for RATIFICATION, POLICIES, CUSTOMS, AND/OR DELIBERATELY  INDIFFERENT TRAINING, DISCIPLINE, and SUPERVISION OF BRIGGS, STEWART, REIMAN and PISANI THAT RATIFIED OR WERE THE MOVING FORCE BEHIND THE RETALIATING AGAINST PLAINTIFF FOR EXERCISING HER FEDERAL CONSTITUTIONAL RIGHT OF PETITION BY FILING POLICE REPORTS WITH DEFENDANT COUNTY'S SHERIFF DEPARTMENT**

19

20

21

22

23

24

25  FAC Pages 63: 8 – 64: 8 (paragraphs 273 - 274). This is a new Cause of Action based upon the

26  newly discovered evidence from Defendant County's Declaration of Jennifer Reiman and exhibits

27  thereto.

28

1  FAC Page 64: 9 – 23 (Prayer for Relief paragraph 275 and Jury Trial Demand paragraph 276) IC

2  Page 30: 27 – 31: 11). The referenced FAC pages/paragraphs add prayers against new Defendants

3  Briggs, Stewart, and Reiman, and prayers for relief under federal civil rights/Section 1983[13]

4  causes of action Tenth and Eleventh.

5
6  **TWELFTH CAUSE OF ACTION: PUBLIC RECORDS ACT PETITION FOR
   DECLARATORY JUDGMENT and WRIT OF MANDAMUS
7  versus COUNTY OF SACRAMENTO**

8
9  FAC Pages 64: 24 – 72: 9 (paragraphs 277 - 291). This is a new Cause of Action for writ of

10  mandamus relief against Defendant COUNTY for County's Sheriff's Department and Clerk of

11  the Board failure to comply with the COUNTY's obligations to respond in writing to PRA

12  requests within ten calendar days of receipt and/or to produce requested records within a

13  reasonable time, as is required under the PRA in Government Code Section 6250 et seq., 6253,

14  and 6258. It is joined in this action pursuant to CCP Section 427.10.

15  **COUNSEL SIGNATURE PAGE AND EXHIBITS**

16  FAC Pages 72: 10 – 74: 28 (counsel signature page and Exhibits 1 - 10) IC pages 31: 12 – 33: 28
17
18  (counsel signature page and Exhibits 1 - 10). These are identical except for the signature dates.

19  FAC Pages 75: 1 – 115: 28, This is a new Exhibit Eleven consisting of PRA requests that the

20  County has failed to answer or provide records in response thereto.

21  FAC Pages 116: 1 – 28 and subsequent unnumbered pages:  This is a new Exhibit Twelve

22  consisting of a copy of Plaintiff's supplemental CGTCA claim with Defendant County.

23  FAC Page 117: 1 – 28 and subsequent unnumbered pages: This is a new Exhibit Twelve-A –

24  Defendant County's April 9, 2022 claim rejection letter.

25
26
27
28  [13] of United States Code Title 42.

PLAINTIFF Ms. PARVIN OLFATI'S NOTICE OF MOTION FOR LEAVE OF COURT TO FILE FIRST
AMENDED COMPLAINT   12

1  **FAC Page 118: 1 – 28  and subsequent unnumbered pages:** This is a new Exhibit Thirteen --

2  Plaintiff's November 9, 2020 Police Report letter to the County Sheriff as received by the County

3  Sheriff.

4  **FAC Page 119:** Declaration of Service

5

6

7       This Motion is based on this Notice of Motion, the California Rule of Court 3.1324(b)

8  Supporting Declaration, and the Memorandum of Points and Authorities (all submitted herewith),

9  and all other papers, pleadings and records on file in this action, and any evidence offered in a

10  hearing on this matter.

11       Pursuant to Local Rule 1.06(A), the court will make a tentative ruling on the merits of this

12  matter by 2:00 p.m. the court day before the hearing. The complete text of the tentative rulings for

13  the department may be downloaded off the Court's website. If the party does not have online

14  access, they may call the dedicated phone number for the department as referenced in the local

15  telephone directory between the hours of 2:00 p.m. and 4:00 p.m. on the court day before the

16  hearing and receive the tentative ruling. The tentative ruling shall become the ruling of the court,

17  unless a party desiring to be heard so advises the department clerk that such party has notified the

18  other side of its' intention to appear. Notification to the clerk shall be made pursuant to

19

20  instructions on the court's website at https://www.saccourt.ca.gov

21  Respectfully submitted,

22  /s/ STEVEN MARK KAMP (California State Bar Number 116817), Attorney for Plaintiff/PRA

23  Petitioner Ms. Parvin Olfati

24

25  STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
   Electronic Mail Address:
26  Telephone: (916) 501-1791 (cellular, voice/text)
   Attorney for Plaintiff/PRA Petitioner Ms. Parvin Olfati
27

28  DATED: May 16, 2022

PLAINTIFF Ms.  PARVIN OLFATI'S NOTICE OF MOTION FOR LEAVE OF COURT TO FILE FIRST
AMENDED COMPLAINT   13

1    **DECLARATION OF SERVICE IN PERSON**

2    I, STEVEN M. KAMP, declare and state as follows:

3    1.    I am over the age of 18, and reside in the County of Sacramento, State of California.

4    2.    I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

5    3.    On May 16, 2022, I caused to be served by hand delivery on counsel for the Defendants in
      this action a true and correct copy of:

6
      **PLAINTIFF Ms. PARVIN OLFATI'S NOTICE OF MOTION FOR LEAVE OF**
7    **COURT TO FILE FIRST AMENDED COMPLAINT**

8

9    4. Service was effected in person on  May  16, 2022 by:

10          Personally delivering the copy to Porter Scott, 350 University Avenue, Suite 200,k
11          Sacramento, California 95825 of the above-referenced document in a manila envelope
            addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200,
12          Sacramento, CA 95825;

13

14   I declare under penalty of perjury that the foregoing statements are based on personal knowledge,
     and are true and correct. Executed at Sacramento, California, this 16th day of May, 2022.
15   _____
     /s/ STEVEN MARK KAMP (California State Bar Number 116817)
16   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
     Electronic Mail Address: steve.kamp@comcast.net
17   Telephone: (916) 501-1791 (cellular, voice/text)
     Attorney for Plaintiff/PRA Petitioner Ms. Parvin Olfati
18

19

20

21

22

23

24

25

26

27

28

1

**<u>Exhibit A: Plaintiff's Proposed First Amended Complaint</u>**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

1  STEVEN MARK KAMP (California State Bar Number 116817)
   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
2  Electronic Mail Address: steve.kamp@comcast.net
   Telephone: (916) 501-1791 (cellular, voice/text)
3  Attorney for Plaintiff Ms. Parvin Olfati

4

5

6

7

8

9              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 IN AND FOR THE COUNTY OF SACRAMENTO

11

12                                    No. **34-2021-00310164-CU-CE-GDS**

13  Ms. PARVIN OLFATI, Plaintiff      FIRST AMENDED  COMPLAINT FOR
                                      DAMAGES AND DEMAND FOR JURY
14          v.                        TRIAL

15  COUNTY OF SACRAMENTO; PAMELA
16  PISANI; JENNIFER REIMAN;
    JENNIFER STEWART; SHERIFF'S
17  SERGEANT RONALD BRIGGS; JANE
    ROE DEFENDANT ONE; JANE ROE
18  DEFENDANT TWO;  JANE ROE
    DEFENDANTS 3-100; JOHN DOE
19  DEFENDANTS 1-100,  Defendants

20

21

22  Plaintiff Ms. Parvin Olfati by her attorney, for her First Amended Complaint alleges as follows:

23

24

25       **STATEMENT OF JURISDICTION, VENUE, AND REASONS FOR**

26       **AMENDMENT**

27    1. This is Plaintiff's First Amended Complaint, filed in order to add new claims against

28       Defendant COUNTY and Defendant PISANI, and to add claims against new parties, who

PLAINTIFF's FIRST AMENDED COMPLAINT 1

are COUNTY employees:  Sheriff's Department Sergeant Ronald BRIGGS, and

COUNTY Division of Behavioral Health Services employees Jennifer REIMAN and

Jennifer STEWART. The facts revealing these claims were unknown to PLAINTIFF until

January 29, 2022, when the undersigned counsel for PLAINTIFF received Defendant

COUNTY's Declaration of Jennifer Reiman and attachments ("Reiman Declaration")

filed by Defendants COUNTY and PISANI in support of the COUNTY/PISANI Anti-

SLAPP Statute Motion to Strike calendared in Department 54 for April 20, 2022

("Defendants' Motion"), which the Court denied on April 21, 2022. The Reiman

Declaration revealed facts and exhibits showing that: (1) the acts of PISANI and

COUNTY pleaded in the Initial Complaint were part of a larger and coordinated

collection of acts by COUNTY Sheriff Sergeant Ronald Briggs, COUNTY Behavioral

Health Services employees Jennifer REIMAN and Jennifer STEWART, and Defendant

PISANI, all acting in the course and scope of their employment with COUNTY and under

color of state law. These Defendants  committed these acts to retaliate against

PLAINTIFF for her federal and state constitutionally protected speech and petitioning

activity of sending a Police Report to the COUNTY Sheriff that Defendant BRIGGS

without investigation or contacting PLAINTIFF required "get[ting] a mental health

worker to check in with the letter writer" and use COUNTY Community Support Team

that BRIGGS stated "would be more effective" in retaliating against PLAINTIFF by

intruding into zone of privacy in her residence and PLAINTIFF's "identified belief law

enforcement is stalking her and colluding against her" ; and (2) that Defendants PISANI,

Jennifer REIMAN and Jennifer STEWART within the course and scope of their

employment with COUNTY: defamed PLAINTIFF; placed PLAINTIFF in a false light;

intentionally inflicted emotional distress upon PLAINTIFF; and acted negligently toward

PLAINTIFF's FIRST AMENDED COMPLAINT 2

PLAINTIFF, all by knowingly and/or recklessly publishing a false statement that

PLAINTIFF was the restrained party in a restraining order obtained against her by a

Member of the Sacramento City Council.   Number (1) gives rise to the claims herein for

United States Constitution First Amendment retaliation under United States Code, Title

42, Section 1983, and California Tom Bane Civil Rights Act threats, intimidation, and

coercion under California Civil Code Section 52.1. Number (2) gives rise to common law

claims for defamation (libel) and false light invasion of privacy under Civil Code Sections

43, 44 and 45, and under the right to privacy in Article I, Section 1 of the California

Constitution. These acts of retaliation and defamation are displayed in the COUNTY

records attached to the COUNTY Reiman Declaration as Exhibits A, B, C, D and F

(Exhibit B is Plaintiff's November 9, 2020 Police Report as received by COUNTY's

Sheriff and Defendant BRIGGS; Exhibits A, C, and D are the COUNTY's own

communications).

2.   This action remains an unlimited civil action for damages in excess of twenty-five

thousand dollars ($25,000.00) by Plaintiff Ms. PARVIN OLFATI against County of

Sacramento Senior Mental Health Counselor Pamela Pisani ("Pisani"); multiple Jane Roe

and John Doe Defendants employed by Defendant County of Sacramento; and the County

of Sacramento ("County"), plus newly added Defendants COUNTY Sheriff's Sergeant

Ronald BRIGGS; COUNTY Mental Health Program Coordinator Jennifer REIMAN; and

COUNTY Senior Mental Heath Counselor Jennifer STEWART. Pursuant to Code of Civil

Procedure Section 427.10 and Government Code Section 6262, PLAINTIFF is also

joining a claim for mandamus relief against COUNTY's Sheriff for the Sheriff's

Department refusal to respond in writing to or produce records in response to multiple

California Public Records Act (PRA) requests from PLAINTIFF, including requests for

1   records included in the Reiman Declaration; and against COUNTY for COUNTY's Clerk

2   of the Board Office falsely responding that COUNTY had no records responsive to

3   PLAINTIFF's  Public Records Act (PRA) request of December 15, 2020 and subsequent

4   PRA requests for records related to or of the PISANI December 14, 2020 acts, when in

5   fact COUNTY had these records that COUNTY thirteen months later used in its' Reiman

6   Declaration.

7

8   3. Venue is laid within Sacramento County, in that: (a) PLAINTIFF resides in Sacramento

9   County; (b) all Defendants reside in or do business in Sacramento County; (c) the events

10   giving rise to this action took place in Sacramento County.

11   **NOTICE OF CLAIM**

12

13   4. PLAINTIFF first became aware of the acts of Defendants PISANI and COUNTY giving

14   rise to this action on December 14, 2020, when Defendant PISANI acting on behalf of

15   Defendant COUNTY invaded Plaintiff's privacy and personal affairs; intentionally

16   inflicted emotional distress; acted negligently toward PLAINTIFF; and trespassed on

17   Plaintiff's residence property.

18   5. On April 5, 2021, PLAINTIFF filed with the County of Sacramento ("County") Office of

19   the Clerk of the Board of Supervisors a California Government Tort Claims Act (CGTCA)

20   claim seeking compensation for the acts by the County of Sacramento and its' employees

21   complained of herein, as required by and pursuant to California Government Code Section

22   910 et. Seq.  On April 23, 2021, the County through its' authorized agent George Hills

23   Company, Inc. mailed to Plaintiff a written rejection of Plaintiff's claim. Defendant

24   County's claim rejection letter lists "claim no." as L2100524, and "our file no." as 87388-

25   35.

26

27

28

6.  On April 4, 2022, PLAINTIFF filed a supplemental CGTCA claim with the County Office of the Clerk of the Board of Supervisors under claim no. L2100524 and file no. 87388-35 that made claims for the damages to PLAINTIFF from the acts of PISANI, REIMAN, STEWART, BRIGGS and COUNTY not discovered by PLAINTIFF until January 29, 2022. By letter dated April 9, 2022 (a Saturday), COUNTY denied this supplemental claim, under the same claim and file numbers; see Exh.Twelve-A hereto.

7. This initial Complaint in this action was filed on Monday, October 25, 2021, the first business day after Saturday, October 23, 2021, the 183rd calendar day after April 23, 2021. This First Amended Complaint is proposed to be filed in Plaintiff's Motion For Leave of Court to File First Amended Complaint filed on May 16, 2022.

## PARTIES

### Plaintiff

8.  Plaintiff Ms. PARVIN OLFATI resides at 1859 45th Street in the City of Sacramento, a location in the neighborhood known as Elmhurst, a neighborhood for which there is an Elmhurst Neighborhood Association, and that is often referred to as the "Elmhurst Community."

9.  PLAINTIFF has resided at 1859 45th Street in the City of Sacramento since 2002; controls access to this property; and enjoys a zone of privacy, autonomy, and charting her own destiny in her residence and associated curtilage, including but not limited to the front porch and driveway. Plaintiff on December 14, 2020 when Plaintiff experienced the events giving rise to this action was 68 years of age; she is now age 69. Plaintiff is not now a client of and has never been a client of Defendant COUNTY's Department of Health Services Division of Behavioral Health Services.  Plaintiff has never been the restrained party in or the subject of any restraining order by any Member of the

PLAINTIFF's FIRST AMENDED COMPLAINT 5

1    Sacramento City Council.  Plaintiff has filed multiple Public Records Act (PRA) requests
2    with Defendant COUNTY's Sheriff's Department that have gone unanswered, including
3    but not limited to PRA requests for records that Defendant PISANI claimed to Plaintiff
4    that PISANI had received from the Sheriff's Department; records of acts by Defendant
5    Sergeant Ronald BRIGGS; and records of the Sheriff's Department interactions regarding
6    PLAINTIFF with County Behavioral Health and Defendants PISANI, REIMAN, and
7    STEWART giving rise to this action. PLAINTIFF has also filed multiple PRA requests
8    with Defendant COUNTY's Clerk of the Board of Supervisors Office for records of
9    COUNTY departments and employees outside of the Sheriff's Department, including
10   PRA requests for PISANI records of Sheriff's Department communications with PISANI,
11   to which COUNTY's Clerk of the Board office responded did not exist. COUNTY made
12   this response claiming it had no records when in fact COUNTY was in possession of them
13   and COUNTY would later use them as exhibits to the Reiman Declaration in support of
14   the COUNTY Motion to have this action dismissed under the Anti-SLAPP Statute.

10. PLAINTIFF at all times prior to approximately 4:33 p.m. on December 14, 2020 had
    never met nor heard of Defendants Pamela PISANI ("Pisani"), Jennifer REIMAN
    ("Reiman"), Jennifer STEWART ("Stewart"), or County Sheriff's Sergeant Ronald
    BRIGGS ("Briggs").

11. PLAINTIFF  seven months and five days before December 14, 2020  (on May 9, 2020),
    while Plaintiff was alone in  her house, was subjected to no-warrant false arrest and
    excessive force by City of Sacramento Police Department Officers Jared Robinet and
    Maryna Stanionis where Officer Robinet hid himself around the corner out of sight of
    Plaintiff and awaited a hand signal from 1870 45th Street resident Barbara Andres, a
    sequence of events that resulted in: (i) Plaintiff being stalked from behind without an

PLAINTIFF's FIRST AMENDED COMPLAINT 6

1    announcement from Officer Robinet, who stalked Plaintiff all the way up the driveway,

2    north side front porch steps, front porch, and inside Plaintiff's residence living room

3    without a warrant, and grabbed Plaintiff from behind after pushing open the closing front

4    door that Plaintiff had just closed; (ii) Plaintiff being subjected to excessive force that

5    fractured and lacerated Plaintiff's right hand ring finger and caused other great bodily

6    injury; (iii) Plaintiff being handcuffed on her front porch and dragged in full public view

7    to the Stanionis City Police car; (iv) Plaintiff being subjected to an intrusive body search

8    in full public view; (v) Plaintiff being detained handcuffed in a doors locked windows

9    closed Stanionis City Police car on a 91 degree day where Plaintiff was deprived of both

10   water and *Miranda v. Arizona* warnings; (vi) Plaintiff being subjected to custodial

11   interrogation while handcuffed where City Police Officer Stanionis did not question

12   Plaintiff until after Stanionis had met at the 1901 45th Street house of Steven Maviglio

13   with Maviglio and 1870 45th Street resident Barbara Andres and received interrogation

14   content from Maviglio and Andres (and whichever City Police officers were hiding at

15   Maviglio's house) and (vii) Plaintiff being served with a notice to appear for a California

16   Penal Code Section 148(a)(1) "resisting arrest" charge that on October 15, 2020, was

17   dismissed by the Sacramento County District Attorney on its own motion for Insufficient

18   Evidence, five days before the scheduled arraignment.  Plaintiff is informed and believed

19   that on and before December 14, 2020,  Defendants Pisani, Reiman and/or Stewart;

20   Defendant County through its' County Sheriff and County Behavioral Health; and one or

21   more of the Jane Roe Defendants and/or John Doe Defendants was or were aware of these

22   facts, including but not limited to Plaintiff's written police reports of the City of

23   Sacramento Police Department misconduct suffered by Plaintiff that Plaintiff copied to the

24   County Sheriff or included in one or more communications to County Behavioral Health

PLAINTIFF's FIRST AMENDED COMPLAINT 7

1   or other COUNTY agencies or employees, including but not limited to the

2   communications in the Reiman Declaration Exhibits B and E; and/or the federal Eastern

3   District of California case *Parvin Olfati v. City of Sacramento et al.*, Case No. 2:21-cv-

4   00606-KJM-CKD, filed on April 2, 2021.

5

6   **Defendant County of Sacramento**

7   12. Defendant County of Sacramento ("County") is a public entity organized and existing

8   under the laws of the State of California; is the employer of individual capacity

9   Defendants Pamela Pisani, Jennifer Reiman, Jennifer Stewart and Sheriff's Department

10  Sergeant Ronald Briggs; is believed to be the employer of one or more of Defendant Roe

11  One, Defendant Roe Two, and one or more of the Jane Roe Defendants 3-100 and John

12  Doe Defendants 1-100 named herein; and is the employer of one or more supervisorial

13  employees who supervised these named Defendants. Defendant COUNTY operates a

14  Department of Health Services ("County Health") with a Division of Behavioral Health

15  Services ("County Behavioral Health") where Defendants Pisani, Stewart and Reiman

16  were employed in December 2020, and where Defendants Pisani, Stewart, and Reiman are

17  believed to be still employed. Defendant County also operates a Sheriff's Department

18  ("County Sheriff") that in December 2020 employed Defendant BRIGGS and still

19  employs him; that Pisani said was the source of her information and authority for

20  committing her acts against Plaintiff alleged herein; that has refused to give Plaintiff

21  records of the content regarding Plaintiff that Defendant Pisani said the County Sheriff

22  had given to her; and is revealed in the Reiman Declaration as the source of the retaliation

23  and defamation acts committed by Defendant Sheriff's Sergeant Ronald BRIGGS that set

24  in motion the defamation and retaliation by Defendants REIMAN, STEWART and

25  PISANI.    Defendant County also operates a Clerk of the Board of Supervisors Office,

26

27

28

which in Public Records Act (PRA) responses to Plaintiff in 2020 and/or 2021 said it has

no records of any content Defendant Pisani says she received from the County Sheriff

regarding Plaintiff. PLAINTIFF was thus kept in the dark regarding such content until

January 29, 2022, when her undersigned counsel received the Reiman Declaration and its'

Exhibit A string of electronic mail messages from or to COUNTY employee Defendants

BRIGGS, STEWART, REIMAN and PISANI.


**Defendant Pamela Pisani**

13. In December 2020, including but not limited to the dates 10, 11, 14 and 18,  Defendant

Pamela PISANI ("Pisani") was employed by Defendant COUNTY as a Licensed Medical

Family Therapist (LMFT) and "Senior Mental Health Counselor" on the "Community

Support Team" of County Behavioral Health. Defendant PISANI used a business card work

address of 3321 Power Inn Road, Suite 110, Sacramento, California 95826; used business

card work telephone numbers (916) 804-1135 and (916) 874-2166; and used the business card

County electronic mail address PisaniP@saccounty.net   At all times material hereto,

Defendant Pisani was acting within the course and scope of her COUNTY employment, and

under color of state law. Defendant Pisani is sued in her individual capacity. Included herein

as Exhibits "1", "2" and "3" hereto are still photographs of Plaintiff's cellphone video of

Defendant Pisani: (1) and (2) on Plaintiff's residence front porch; and (3) on Plaintiff's

residence driveway. Electronic mail messages to and from PISANI giving rise to this action

are included in Exhibit A to the COUNTY's Reiman Declaration filed in this action on

January 28, 2022 as Register of Actions (ROA) number 15.

PLAINTIFF's FIRST AMENDED COMPLAINT 9

**Defendant Sheriff's Sergeant Ronald Briggs**

14. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto, in November and December of 2020, COUNTY's Sheriff's Department employed Defendant Ronald BRIGGS as a Sergeant assigned to "Problem Oriented Policing" or "POP" at the Sheriff's Department North Division (upon information and belief, Defendant BRIGGS is still employed at COUNTY's Sheriff's Department). As revealed in the Reiman Declaration and Exhibits A and B thereto, Defendant BRIGGS is the COUNTY employee who admits he read Plaintiff's November 9, 2020 Police Report letter (Exhibit Thirteen hereto) and in response thereto, communicated to Defendant Jennifer STEWART as to "how to get a mental health worker to check in with the letter writer because the complaint is unfounded so they cannot make a report but have valid concerns for her emotional well-being" and that "the letter suggests CST [Community Support Team] contact might be more effective (identified belief law enforcement is stalking her and colluding against her)." At all times material hereto, Defendant BRIGGS was acting under color of state law and in the course and scope of his employment with Defendant COUNTY.

**Defendant Jennifer Stewart**

15. Upon information from COUNTY's Reiman Declaration and Exhibit A thereto, in November and December of 2020 COUNTY's Division of Behavioral Health employed Defendant Jennifer STEWART as a Senior Mental Health Counselor, working under the supervision of Defendant REIMAN. (Upon information and belief, STEWART continues to be employed by the COUNTY). Defendant STEWART is the COUNTY Division of Behavioral Health Services employee who communicated to Defendant REIMAN the request by Defendant BRIGGS for County Behavioral Health to take action against

PLAINTIFF's FIRST AMENDED COMPLAINT 10

PLAINTIFF.   At all times material hereto, Defendant STEWART was acting under color of state law and in the course and scope of her employment with Defendant COUNTY.

**Defendant Jennifer Reiman**

16. Upon information from COUNTY's Reiman Declaration and Exhibits A and C thereto, in November and December of 2020, COUNTY's Division of Behavioral Health Services employed Defendant Jennifer REIMAN as the Mental Health Program Coordinator and direct supervisor assigned to the Community Support Team ("CST") and Mobile Crisis Support Team ("MCST"). This employment continued through at least October 1, 2021. Defendant REIMAN supervised and directed the acts of Defendants PISANI and STEWART alleged herein, and after receiving the communication from Defendant BRIGGS relayed to REIMAN by Defendant STEWART, REIMAN directed Defendant PISANI to take the action against PLAINTIFF requested by Defendant BRIGGS. At all times material hereto, Defendant REIMAN was acting under color of state law and in the course and scope of her employment with Defendant COUNTY.

**Jane Roe Defendant Number One**

17. Jane Roe Defendant One ("Roe One") is the female driver of the white Chevrolet sport utility vehicle with the California license plate number 8LTE039, who PLAINTIFF saw at the Tuesday Morning store at 2550 Fair Oaks Boulevard (a location in the unincorporated area of the County of Sacramento) on multiple dates, including but not limited to December 22, 2020 at about 11:55:40 a.m.. On December 22, 2020 Defendant ROE ONE in the Tuesday Morning store stalked Plaintiff. On other occasions (in the Ettore's European Bakery and Bella Bru Café restaurants on Fair Oaks Boulevard in the

1   unincorporated area of the County of Sacramento), Defendant Roe One attempted to

2   induce or entrap Plaintiff into one or more interactions. Attached as Exhibits "4", "5" "6"

3   and "7" hereto are: (4) a still photograph of the cellphone video taken by Plaintiff of Roe

4   One placing herself in close proximity to Plaintiff in the Bella Bru Café; (5) and (6) still

5   photographs of the cellphone video taken by Plaintiff showing Roe One in Tuesday

6   Morning on December 22, 2020 stalking Plaintiff; and (7) a still photograph of the

7   cellphone video taken by Plaintiff of the car Plaintiff saw being used by Defendant Roe

8   One.  Upon information and belief, Defendant Roe One is employed by Defendant County

9   or serves COUNTY in an agent, representative, or contractor capacity,  and: (i) invaded

10  Plaintiff's privacy and intruded into Plaintiff's private affairs; (ii) communicated to

11  persons other than Plaintiff content that placed Plaintiff in a false light, including but not

12  limited to statements stating that Plaintiff had committed acts or engaged in conduct

13  meriting law enforcement or County Behavioral Health intervention; (iii) communicated

14  to persons other than Plaintiff purported statements of fact, including but not limited to

15  statements stating that Plaintiff had committed acts or engaged in conduct meriting law

16  enforcement or County Behavioral Health intervention; and/or (iv) breached her duty of

17  reasonable care to Plaintiff. Plaintiff as of the filing of this Complaint is unaware of the

18  identity of Defendant Roe One and upon receipt of information from discovery or

19  otherwise will seek leave of Court to amend this Complaint with such identity and serve

20  Roe One within the period of California Code of Civil Procedure Section 474.  At all

21  times material hereto, Defendant ROE ONE was acting under color of state law and in the

22  course and scope of her employment, representative, contractor, or agency relationship

23  with Defendant COUNTY.

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 12

1

2

3    **Jane Roe Defendant Number Two**

4

5    18.      Jane Roe Defendant Two ("Roe Two") is the female driver of the convertible

6    Volkswagen with the California license plate "WMGLEN", who was at Bella Bru Café

7    stalking Plaintiff while appearing to work on puzzles, Defendant Roe Two attempted to

8    induce or entrap Plaintiff into an interaction on various dates in 2019 and 2020 at: (i) the

9    Starbucks on 5300 Folsom Boulevard in the City of Sacramento; (ii) the Bella Bru Café

10   on Fair Oaks Boulevard. When Plaintiff stopped going to the 5300 Folsom Boulevard

11   Starbucks in order to avoid Defendant ROE TWO, Defendant Roe Two began appearing

12   at the Bella Bru Café that Plaintiff went to in order to avoid the intrusive presence of

13   Defendant Roe Two. Attached hereto as Exhibits "8", "9" and "10" are still photographs

14   of the cellphone video taken by Plaintiff of Roe Two at the Bella Bru Café of Defendant

15   Roe Two appearing to work on puzzles while placing herself in close proximity to

16   Plaintiff.  Upon information and belief, Defendant Roe Two is employed by or serves

17   Defendant County in an agent, representative or contractor capacity and: (i) invaded

18   Plaintiff's privacy and intruded into Plaintiff's private affairs; (ii) communicated to

19   persons other than Plaintiff content that placed Plaintiff in a false light, including but not

20   limited to statements stating that Plaintiff had committed acts or engaged in conduct

21   meriting law enforcement or County Behavioral Health intervention; (iii) communicated

22   to persons other than Plaintiff purported statements of fact, including but not limited to

23   statements stating that Plaintiff had committed acts or engaged in conduct meriting law

24   enforcement or County Behavioral Health intervention; and/or (iv) breached her duty of

25   reasonable care to Plaintiff. Plaintiff as of the filing of this Complaint is unaware of the

26   identity of Defendant Roe Two and upon receipt of information from discovery or

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 13

1   otherwise will seek leave of Court to amend this Complaint with such identity and serve

2   Roe Two within the period of California Code of Civil Procedure Section 474.  At all

3   times material hereto, Defendant ROE TWO was acting under color of state law and in the

4   course and scope of her employment or agency relationship with Defendant COUNTY.

5

6   **Jane Roe Defendants 3-100 and John Doe Defendants 1-100**

7   19. Upon information and belief, PLAINTIFF alleges that one or females (Jane Roe

8   Defendants 3-100) and/or males (John Doe Defendants 1-100) have committed one or

9   more of the acts or omissions alleged in this Complaint. Plaintiff is unaware of their

10   identities and upon receipt of such information through discovery or otherwise, will seek

11   leave of Court to amend this Complaint with such identity and serve Roe One within the

12   period of California Code of Civil Procedure Section 474.  Upon information and belief,

13   At all times material hereto, JANE ROE Defendants 3-100 and JOHN DOE Defendants 1-

14   100 were acting under color of state law and in the course and scope of their employment,

15   representative, contractor, or agency relationship with Defendant COUNTY.

16

17

18   **FACTS**

19   20. PLAINTIFF re-alleges paragraphs 1-19 of this First Amended Complaint as though fully

20   set forth herein.

21   **Plaintiff's Act of Petitioning That Resulted in Retaliation and Defamation**

22

23   21. On November 9, 2020,  PLAINTIFF sent via postal mail and electronic mail to Defendant

24   COUNTY's Sheriff's Department the Police Report/Crime Report letter  that is attached

25   as Exhibit B to Defendant COUNTY's Reiman Declaration (and as Exhibit Thirteen

26   hereto) . This Police Report letter reported the theft of Plaintiff's cellphone in the

27   unincorporated area of the County of Sacramento area in and around Fair Oaks Boulevard

28

PLAINTIFF's FIRST AMENDED COMPLAINT 14

1  and the community known as Fair Oaks. Since the theft occurred in the unincorporated

2  area of the County of Sacramento, PLAINTIFF sent the report to Defendant COUNTY's

3  County Sheriff, with a copy to the City of Sacramento Police Department. Upon

4  PLAINTIFF's personal knowledge, Defendant COUINTY's Sheriff's Department on its'

5  website encourages persons who are crime victims to file Police Reports/Crime Reports.

6

7  22. On or shortly after November 9, 2020, Defendant COUNTY through its' County Sheriff

8  (including but not limited to Sheriff's Sergeant Ronald Briggs) received the Police Report

9  letter from PLAINTIFF that is attached as Exhibit B to the Reiman Declaration submitted

10  by COUNTY in support of the County Anti-SLAPP Statute Motion.  The Police Report

11  letter states in pertinent part that:

12

13  > On Saturday, November 7, 2020, at some time after 5:00 p.m., my cellphone (LG G7 ThinQ Silver) was stolen from the car I was driving. This theft occurred as I was driving from Fair Oaks back to 45th Street in Sacramento.

14

15  The Police Report letter goes on to state the names of multiple individuals PLAINTIFF

16  reasonably believes had a motive to steal or caused to be stolen PLAINTIFF's cellphone, and

17  their motive:

18

19  > "to gain access to the over one thousand photos and video of suspicious and criminal activities, crime against me, multiple gangstalkers, suspicious cars and drivers who stalk me around the town and many evidences of multiple crimes against me, my animals, and my house."

20

21  The Police Report letter also discusses acts of the City of Sacramento Police Department acting in

22  collusion with 45th Street residents Steven Maviglio and Barbara Andres on May 9, 2020 to have

23  PLAINTIFF falsely arrested. The Police Report letter describes this event as an example of law

24  enforcement colluding with Steven Maviglio and Barbara Andres against PLAINTIFF.

25

26  23. Defendants BRIGGS and COUNTY did not contact PLAINTIFF regarding this Police

27  Report letter, even though PLAINTIFF"s address was at the top of the Police Report

28  letter.

PLAINTIFF's FIRST AMENDED COMPLAINT 15

24. Defendants BRIGGS and COUNTY did not conduct any investigation of this Police Report letter.

25. Instead, Defendants BRIGGS, STEWART, REIMAN and COUNTY treated the Police Report as letter "not[ing] concerns about Plaintiff's well-being" and as containing "complaints indicative of potential mental health distress." Rather than investigating the Police Report letter, writing a postal mail letter to PLAINTIFF, or discussing it with PLAINTIFF, Defendants BRIGGS, STEWART, REIMAN, PISANI and COUNTY retaliated against PLAINTIFF by sending County Behavioral Health employees and Defendants STEWART, REIMAN and PISANI on a Community Support Team "intervention" mission to coerce, threaten, and/or intimidate PLAINTIFF into accepting COUNTY Behavioral Health Services and to force PLAINTIFF to stop filing Police Reports that Defendants would characterize as "complaints indicative of potential mental health distress."

26. Defendants BRIGGS, REIMAN, STEWART and COUNTY committed these acts to force PLAINTIFF to cease filing Police Reports with the COUNTY Sheriff regarding criminal acts PLAINTIFF reasonably believed had been committed against her, the persons who PLAINTIFF believed had committed these acts, their motivations, and their possible collusion with law enforcement.

27. Defendants BRIGGS, REIMAN, STEWART and/or PISANI determined that the COUNTY should use its' Community Support Team (CST) to coerce, threaten, and intimidate PLAINTIFF into accepting COUNTY "intervention" that would require PLAINTIFF to stop filing Police Reports with the COUNTY Sheriff, and/or to accept COUNTY mental health services that would enable COUNTY 's Sheriff's Department and other law enforcement agencies to ignore and refuse to investigate PLAINTIFF's

legitimate Police Reports and other writings, because the reports from PLAINTIFF could be treated as coming from a person receiving mental health services from Defendant COUNTY.

28. Defendants COUNTY, BRIGGS, REIMAN, STEWART and/or PISANI had the option of writing PLAINTIFF a postal mail letter addressed to PLAINTIFF's address at the top of her Police Report letter,  offering whatever  COUNTY mental health services they desired to offer, but did not do so. Had such a postal mail letter been sent by COUNTY, BRIGGS, PISANI, REIMAN and/or STEWART to Plaintiff, PLAINTIFF could have evaluated this information in the privacy of her residence, and made her own decision without being forced into a captive audience by Defendant PISANI at the direction of Defendants BRIGGS, STEWART, and REIMAN.

29. Instead, at the direction of Defendant BRIGGS, Defendants REIMAN, STEWART, and PISANI ambushed PLAINTIFF with an unannounced visit-cum-trespass by PISANI at PLAINTIFF's residence that would publicly stigmatize PLAINTIFF as a person needing COUNTY mental health services that PLAINTIFF does not need or want. Upon information and belief, PLAINTIFF alleges that Defendants PISANI, REIMAN, STEWART and COUNTY chose the ambush in order to coerce, threaten, or intimidate PLAINTIFF into a captive audience situation where PISANI and COUNTY could coerce, threaten, or intimidate PLAINTIFF into accepting COUNTY treatment of PLAINTIFF as a person in need of COUNTY mental health services, and coerce, threaten, or intimidate PLAINTIFF into not filing Police Reports with COUNTY's Sheriff's Department; or, alternatively, even if PLAINTIFF were to be allowed to continue filing Police Reports with the Sheriff, COUNTY would be able to discredit those reports as coming from someone receiving mental health treatment from the COUNTY.

30. Defendants REIMAN, STEWART, PISANI, and COUNTY in the Reiman Declaration refer to the "referral" from Defendant BRIGGS as a "process referral" that the COUNTY Community Support Team has "often received . . . from Law Enforcement personnel" like Defendant BRIGGS, but in the COUNTY's response to Public Records Act (PRA) request 22-474 from PLAINTIFF for records of such "process referrals" from "law enforcement" in since January 1, 2020, COUNTY responded: "no documents available."

31. Defendant COUNTY's Sheriff's Department received PLAINTIFF's Police Report letter, and one or more employees of the County Sheriff read the Police Report letter, including but not limited to Defendant BRIGGS.

32. Defendant BRIGGS did not send a postal mail letter to PLAINTIFF or otherwise contact PLAINTIFF regarding the Police Report letter, even though PLAINTIFF's physical address was at the top of the Police Report letter. Nor did any other employee of Defendant COUNTY's Sheriff's Department contact PLAINTIFF regarding the Police Report letter.

33. Upon information from Defendant COUNTY's PRA response to PLAINTIFF's PRA Request 22-471 ("no documents" regarding "any investigation or activity related to any determination that the November 9, 2020 Parvin Olfati police report/crime report was 'unfounded' or was a 'complaint indicative of potential mental health distress"), Defendants BRIGGS and COUNTY's Sheriff's Department did not conduct any investigation of Plaintiff's Police Report letter.

34. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto, Defendant BRIGGS on or about December 10, 2020 at sometime before 5:42 p.m. communicated to Defendant STEWART that PLAINTIFF should be subjected to the following acts by COUNTY's Division of Behavioral Health: "get a mental health worker

PLAINTIFF's FIRST AMENDED COMPLAINT 18

1      to check in with the letter writer" because of PLAINTIFF"s "identified belief that law

2      enforcement is stalking her and colluding against her."

3

4
        **The Retaliation For Petitioning Followed By Defamation and False Light Privacy**
5       **Invasion, Where County Employees Falsely Accuse Plaintiff Of Being The**
        **Restrained Party In A Restraining Order By A Member of the Sacramento City**
6       **Council**

7
       35. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto, in
8
           response, Defendant STEWART at about 5:42 p.m. on December 10, 2020 communicated
9
           the BRIGGS request in an electronic mail message to Defendant REIMAN.
10

11     36. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto,

12         Defendant REIMAN on December 11, 2020 at about 8:29 a.m. sent an electronic mail

13         message to Defendant PISANI containing the BRIGGS request and directing PISANI to

14         "potentially follow up on this one." Defendant PISANI spoke with Defendant STEWART

15         regarding PLAINTIFF, and in a December 14, 2020 2:37 p.m. electronic mail message to
16
           Defendant REIMAN, PISANI: (i) stated that she had "spoke[n] with [Defendant] Jennifer
17
           STEWART" regarding PLAINTIFF; and (ii) PISANI referred to PLAINTIFF as "this
18
           person who has a restraining order against her by a [Sacramento] city councilmen [sic]."
19
20         Upon reasonable inference from these COUNTY records, Defendant STEWART told

21         Defendant PISANI that there is a restraining order against PLAINTIFF by a Member of

22         the Sacramento City Council, and/or Defendant PISANI told Defendant STEWART that

23         there is a restraining order against PLAINTIFF by a Member of the Sacramento City
24
           Council.
25
       37. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto,
26
27         Defendant PISANI on December 14, 2020 at about 2:37 p.m. sent an electronic mail

28

message to Defendant REIMAN referring to PLAINTIFF as "this person who has a restraining order against her by a [Sacramento] city councilmen [sic]."

38. There never has been any restraining order against PLAINTIFF by any Member of the Sacramento City Council, as is confirmed: (i) by the City of Sacramento in February 22, 2022 its' response to Plaintiff's PRA request catalogued by the Sacramento City Clerk as Public Records Reference # P028660-021522; and (ii) by absence of any such restraining order in the Sacramento County Superior Court Public Case Access System.

39. Upon information from Defendant COUNTY's "no documents" response to PLAINTIFF's PRA request 22-491, Defendant STEWART prior to making her statement that PLAINTIFF "has a restraining order against her by a [Sacramento] city councilmen [sic]" did no research or fact finding to verify the accuracy of her statement, even though Defendant STEWART could have accessed the Superior Court Public Case Access System under PLAINTIFF's name. Instead, Defendant STEWART with either knowledge of her statement's falsity or with reckless disregard of its accuracy, and in order to vex, harass, annoy and injure PLAINTIFF, communicated the false statement to Defendant PISANI, Defendant REIMAN, and other COUNTY employees, where it was used as a purported basis for taking the retaliatory course of action requested by Defendant BRIGGS.

40.     Upon information from Defendant COUNTY's "no documents" response to PLAINTIFF's PRA request 22-491, Defendant REIMAN prior to making her statement that PLAINTIFF "has a restraining order against her by a [Sacramento] city councilmen [sic]" did no research or fact finding to verify the accuracy of her statement, even though Defendant REIMAN could have accessed the Superior Court Public Case Access System

1    under PLAINTIFF's name. Instead, Defendant REIMAN with either knowledge of her

2    statement's falsity or with reckless disregard of its accuracy, and in order to vex, harass,

3    annoy and injure PLAINTIFF, communicated the false statement to Defendant PISANI,

4    Defendant STEWART, and other COUNTY employees, where it was used as a purported

5    basis for taking the retaliatory course of action requested by Defendant BRIGGS.

6    41. Upon information from Defendant COUNTY's "no documents" response to

7    PLAINTIFF's PRA request 22-491, Defendant PISANI prior to making her statement that

8    PLAINTIFF "has a restraining order against her by a [Sacramento] city councilmen [sic]"

9    did no research or fact finding to verify the accuracy of her statement, even though

10   Defendant PISANI could have accessed the Superior Court Public Case Access System

11   under PLAINTIFF's name. Instead, Defendant PISANI with either knowledge of her

12   statement's falsity or with reckless disregard of its accuracy, and in order to vex, harass,

13   annoy and injure PLAINTIFF, communicated the false statement to Defendant REIMAN,

14   Defendant STEWART, and other COUNTY employees, where it was used as a purported

15   basis for taking the retaliatory course of action requested by Defendant BRIGGS.

16   42. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto,

17   the false statement that PLAINTIFF was the subject of a restraining order brought against

18   her by a Member of the Sacramento City Council was a motivating force behind

19   Defendants COUNTY, REIMAN, STEWART and PISANI committing their acts against

20   PLAINTIFF alleged herein.

21   **Defendant Pisani Goes Into Action To Carry Out The Retaliation Requested By Defendant Briggs: Instead of Sending Plaintiff A Postal Mail Letter, Briggs, Reiman, Stewart and Pisani Send Pisani To Entrap Plaintiff In A Captive Audience Ambush**

22   43. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto,

23   Defendant PISANI agreed to the request from Defendant BRIGGS communicated by

Defendants STEWART and REIMAN, and went to Plaintiff's residence front porch to invade PLAINTIFF's zone of privacy and autonomy by forcing PLAINTIFF into a captive audience situation in order to induce, entrap, coerce, threaten, and/or intimidate PLAINTIFF into recanting the content of her Police Report and instead enter into a client or other relationship with Defendant COUNTY's Behavioral Health that included treating Plaintiff as a person with a "mental health disorder"; as a person who is a "danger to [her]self"; as a person who "is a danger to others"; as a person who is "gravely disabled" as these terms are used in Welfare & Institutions Code Section 5150; or who is otherwise receiving mental health services from Defendant COUNTY.

44. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto, PLAINTIFF's identical physical and mailing addresses were known or should have been to Defendants BRIGGS, STEWART, REIMAN, PISANI and COUNTY during the period when the BRIGGS request was being implemented by these Defendants, since the address is at the very top of the Police Report letter that BRIGGS, STEWART, REIMAN and PISANI used as basis for sending PISANI to go unannounced to PLAINTIFF's residence.

45. Upon information and belief, postal mail is a method that Defendant COUNTY is authorized to use and has used to communicate mental health services information to residents of Sacramento County.

46. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto, at no time did any of Defendants BRIGGS, STEWART, REIMAN, PISANI and/or COUNTY consider sending only a postal mail letter to PLAINTIFF describing "the services we [COUNTY] offer"; how PLAINTIFF "could potentially benefit from MCST/CST intervention"; that PLAINTIFF shows "indications of distress"; COUNTY "services and supports"; "CST support and services"; or other COUNTY programs

administered by County Behavioral Health. Upon information and belief, the cost of preparing and sending one or more postal mail letters to PLAINTIFF would be vastly cheaper than the amount of COUNTY time and resources spent planning and sending PISANI to ambush PLAINTIFF by Defendants BRIGGS, STEWART, REIMAN and PISANI in December of 2020.

47. Upon Plaintiff's personal knowledge, had PLAINTIFF received from Defendants BRIGGS, STEWART, REIMAN,  PISANI and/or COUNTY only postal mail letters addressed to PLAINTIFF offering COUNTY mental health services and discussing PLAINTIFF's Police Report letter, Plaintiff would have been able to review and consider COUNTY's mental health program offerings and COUNTY's opinion regarding Plaintiff's Police Report letter in the privacy of her home, instead of being forced to interact with Defendant PISANI in a captive audience situation.  If PLAINTIFF had received such a postal mail letter, PLAINTIFF would  have responded in writing by explaining to the COUNTY letter writer the situation and PLAINTIFF's information and belief that COUNTY was using its' Division of Behavioral Health Services to cover up for over two decades of harassment of PLAINTIFF; the abuse against PLAINTIFF of the power and authority of multiple government agencies (including abuse of law enforcement agencies against PLAINTIFF); and that many of the people who were and are responsible for the years of abuse against PLAINTIFF would have been exposed on the record. PLAINTIFF is informed and believed that the reasons for the acts of Defendants BRIGGS, STEWART, REIMAN, PISANI and COUNTY include but are not limited to a desire to prevent these facts from being exposed and documented on any official COUNTY or other government agency records. PLAINTIFF is also informed and believed that one or more of the Defendants were aware of the City of Sacramento Police

Department May 9, 2020 no-warrant false arrest of PLAINTIFF and related police excessive force against PLAINTIFF, and that Defendants BRIGGS, STEWART, REIMAN, PISANI and/or COUNTY attempted to use the COUNTY Division of Behavioral Services to coerce, threaten, and intimidate PLAINTIFF as a follow-up to the City of Sacramento Police Departments acts against PLAINTIFF on May 9, 2020. PLAINTIFF is informed and believed that may be other reasons behind the acts of Defendants, including but not limited to retaliation against PLAINTIFF for the content of her November 9, 2020 Police Report regarding law enforcement agencies' collusion against PLAINTIFF. PLAINTIFF if offered the opportunity by Defendants including COUNTY would have explained this in writing to COUNTY; PLAINTIFF is informed and believed that Defendant BRIGGS used COUNTY, STEWART, REIMAN and PISANI to retaliate against PLAINTIFF to prevent the making by PLAINTIFF of any record with such content.

48. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto, and from PLAINTIFF's personal knowledge and home security system video, on December 14, 2020, Defendant PISANI acting upon information or content given to PISANI by Defendants BRIGGS, STEWART, and REIMAN, drove in a vehicle without County insignia or "CA Exempt" license plate to Plaintiff's residence at 1859 45th Street. Defendant Pisani parked the vehicle she was driving at the curb of 1851 45th Street (immediately north of Plaintiff's residence) and walked to Plaintiff's residence front door.

49. Upon PLAINTIFF's personal knowledge and home security system video, at about 4:33 p.m. on December 14, 2020, Defendant PISANI in the course and scope of her COUNTY employee duties and under color of state law knocked upon the front door of PLAINTIFF's residence with the intent to induce PLAINTIFF into an interaction with

PLAINTIFF's FIRST AMENDED COMPLAINT 24

Defendant PISANI. Defendant PISANI when she knocked on Plaintiff's residence front door was not wearing any COUNTY uniform, badge or insignia, and was not displaying any COUNTY or other identification. Defendant Pisani was wearing civilian clothes and what appeared to be an identification card holder that did not have any identification card, and only displayed a key or an object that looked like a key.

50. Upon PLAINTIFF's personal knowledge and home security system video, at all times on December 14, 2020 while Defendant PISANI was within the curtilage of Plaintiff's residence property or was otherwise on 45th Street, including the interaction with Plaintiff beginning at about 4:33 p.m. that was initiated by PISANI, PISANI never asked Plaintiff to give Plaintiff's name or otherwise identify Plaintiff as Parvin Olfati, Patty Olfati, Ms. Olfati or any other name.

**Defendant Pisani In Action: Saying She Came To Plaintiff's Residence Because Of An Anonymous Complaint About Plaintiff From The Sheriff's Department**

51. Upon PLAINTIFF's personal knowledge, PLAINTIFF was alone in her residence when she heard the knock on her residence front door at about 4:33 p.m. on December 14, 2020 that was made by Defendant PISANI.

52. Upon PLAINTIFF's personal knowledge and home security system video, in response to the door knock from Defendant PISANI, PLAINTIFF opened her residence front door and face to face saw a female with short hair that PLAINTIFF had never seen before. Plaintiff asked this person "who are you and what do you want", or words to that effect. This person who was Defendant Pisani did not identify herself, did not give Plaintiff a business card, did not show identification, did not give her name, and did not otherwise identify herself.

53. Upon PLAINTIFF's personal knowledge and home security system video, the person who was Defendant PISANI said that she was from the "community support team" or words to

PLAINTIFF's FIRST AMENDED COMPLAINT 25

that effect. Defendant Pisani did not explain or otherwise communicate what the "community support team" was. Defendant Pisani did not identify herself as a County employee, representative, or agent even though she had in her possession a County business card containing her name, the words "Community Support Team", and PISANI contact information.

54. Upon PLAINTIFF's personal knowledge and home security system video, PLAINTIFF then asked the person who was Defendant PISANI if that person was talking about the "Elmhurst Community", thinking the person who was Defendant Pisani was coming to Plaintiff's residence on behalf of the Elmhurst Neighborhood Association to sign Plaintiff up for the Elmhurst Neighborhood Association. The person who was Defendant Pisani responded as follows (in what Plaintiff saw and heard as very ambiguous): that she "works with all of the community" or words to that effect.

55. Upon PLAINTIFF's personal knowledge and home security system video, the person who was Defendant PISANI then said: (i) she was from the "community support team"; and (ii) that she had received or was aware of "an anonymous complaint" about PLAINTIFF.

56. Upon information from Defendant COUNTY's Reiman Declaration and Exhibits A and B thereto, and from COUNTY PRA response to PLAINTIFF's PRA request 22-471, in fact Defendant PISANI knew the source of the "anonymous complaint" was Defendant County Sheriff's Department Deputy Ronald BRIGGS and that Defendant BRIGGS was working with Defendants COUNTY, PISANI, REIMAN, and STEWART to retaliate against, entrap, coerce, threaten, and/or intimidate PLAINTIFF for sending a Police Report letter to the COUNTY Sheriff that Defendant BRIGGS determined without investigation to be "unfounded" because it contained an "identified belief law enforcement is stalking her and colluding against her", with the retaliation including

PLAINTIFF's FIRST AMENDED COMPLAINT 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"get[ting] a mental health worker to check in with the letter writer because the complaint is unfounded", as Defendant BRIGGS requested of Defendant STEWART on or about December 10, 2020.

57. Upon PLAINTIFF's personal knowledge and home security system video, the person who was Defendant PISANI then handed Plaintiff a Defendant COUNTY business card that listed Defendant Pisani as a "Senior Mental Health Counselor" with the "Community Support Team" of County Behavioral Health, with the COUNTY work address, work telephone numbers, and work electronic mail address alleged in paragraph 13 herein.

58. PLAINTIFF then realized that the person who was Defendant PISANI was not from the Elmhurst Neighborhood Association, but rather was from a government agency. PLAINTIFF realized that this person's visit and her claiming that her visit was based on anonymous complaint about Plaintiff, together with this person's attempting to let Plaintiff believe that this visit is from the Elmhurst Neighborhood Association or "Elmhurst community", meant that this person wanted to keep Plaintiff confused and/or did not want to explain to Plaintiff that Defendant PISANI was not from the "Elmhurst community" or Elmhurst Neighborhood Association  and was trying to keep the real and true source of the place, organization, and or agency that she was representing hidden from Plaintiff.  Plaintiff was very frightened when she realized what she now saw as the true purpose of the presence of Defendant Pisani on her front porch, a Defendant Pisani that Plaintiff had never seen before.

59. Therefore, PLAINTIFF told Defendant PISANI to "wait".  Plaintiff then closed the front door, went inside her residence, and picked up her cellphone, to make sure the rest of her conversation initiated by Defendant Pisani would be documented.

60. With her cellphone in hand and its' camera operating, PLAINTIFF went to the front door and opened the front door. Defendant PISANI was still on Plaintiff's residence front porch. Plaintiff said:"Ok, who are you again?" Defendant Pisani responded: "my name is Pam" and did not state her surname, an omission that escalated Plaintiff's suspicion of Defendant PISANI's very unusual and suspect visit and behavior.

61. PLAINTIFF then said: "Pam?" PISANI said "Pamela." Plaintiff said: "Community Support Team". Pisani said "right."

62. PLAINTIFF then said: "and you don't know who called you." Defendant PISANI responded: "I think it was maybe Sheriff Department they complained", or words to that effect that included the words "Sheriff Department" and "complained."

63. PLAINTIFF then asked Defendant PISANI: "Sheriff Department called you?" Defendant PISANI responded: "Well, no, they did not call me, they let us know that there was maybe some concern, you are out of the Sheriff Department jurisdiction right?"

64. PLAINTIFF ignored the above-quoted PISANI question and then said to Defendant PISANI: "So, the Sheriff Department has something to do with this?" Defendant PISANI then said: "well they forwarded some information, you know."

65. PLAINTIFF then asked Defendant PISANI, "what information?" Defendant PISANI replied: "Ok, I don't know exactly what information". Based upon information from Defendant COUNTY's Reiman Declaration and Exhibit A thereto, Defendant PISANI when she made this statement knew that the content communicated by Defendants BRIGGS, STEWART and REIMAN to PISANI was: (i) the false statement that PLAINTIFF was the subject of a restraining order obtained against her by a Member of the Sacramento City Council; (ii) the request from Defendant BRIGGS on behalf of COUNTY's Sheriff's Department that "a mental health worker check in with the letter

writer" through an unannounced "cold call contact" or "cold knock contact" visit to

PLAINTIFF in order to conduct Community Support Team "intervention" to retaliate

against PLAINTIFF for her "identified belief law enforcement is stalking her."

66. PLAINTIFF then said to Defendant PISANI: "how can you go to somebody's door when

you have no idea what you are doing there?" Defendant PISANI then said: "my

resources". Plaintiff then asked Defendant PISANI: "who are your resources?" Defendant

PISANI then said: "I work for Sacramento Community". Plaintiff then said to Defendant

PISANI: "who are Sacramento Community?" Defendant PISANI then said: "I work for

Behavioral Services". Plaintiff then said to Defendant PISANI: "Behavioral services

meaning what?" Defendant PISANI then said: "actually it doesn't mean anything. It's the

department I work for", or words to that effect.


**Defendant Pisani After Being Ordered To Leave Remains on Plaintiff's Property
And Stalks Plaintiff**

67. PLAINTIFF then said to Defendant PISANI: "here is my problem with you -- you knock on

my door out of the blue, you do not want to tell me who called you. The anonymous, that is

why there is a problem, so, you walk on people's porch and knock on their door based on

some anonymous BS you have heard". Defendant PISANI interrupted Plaintiff and said that:

"I have not heard". Plaintiff then said to Defendant PISANI: "ok they gave you, however, and

then you said the Sheriff Department was involved and then you said it is behavioral, you

know your whole behavior is suspect, just F---- Off." With that, PLAINTIFF ordered

Defendant Pisani to leave Plaintiff's residence property. Plaintiff was very scared.

68. PLAINTIFF closed the door, thinking Defendant PISANI would immediately leave as

PLAINTIFF had ordered PISANI to leave. A few minutes later, Plaintiff went outside and

PLAINTIFF's FIRST AMENDED COMPLAINT 29

walked on her north side front porch steps to check and make sure there were no law

enforcement officers on her driveway, or at the end of the 45th Street where it intersects with

"S" Street a few hundred feet north of Plaintiff's driveway. Plaintiff saw that Defendant

PISANI was still on Plaintiff's residence property, having ignored Plaintiff's command to

leave, and was actually following Plaintiff on her driveway.

69. PLAINTIFF was very frightened, because on May 9, 2020, similar following of Plaintiff on

Plaintiff's driveway by 1870 45th Street resident Barbara Andres resulted in the emergence of

a City of Sacramento Police Department vehicle from around the corner after Andres

followed Plaintiff on the driveway and hand signaled the hiding police office Jared Robinet

who without a warrant ran, stalked Plaintiff, grabbed Plaintiff, pulled Plaintiff out of her

living room and injured Plaintiff. These acts are now the subject of U.S. District Court for the

Eastern District of California Case No. 21-cv-00606-KJM-CKD, *Parvin Olfati v. City of

Sacramento et al.*

70. PLAINTIFF then again ordered Defendant PISANI to leave; told Pisani that nobody wants to

talk to Pisani; and that Pisani should leave. Defendant Pisani ignored Plaintiff's command to

leave and continued yelling at Plaintiff until Plaintiff went back inside her residence and

closed the front door. Upon information from COUNTY's Reiman Declaration and Exhibit D

thereto, Plaintiff alleges that Defendant Pisani after leaving Plaintiff's residence front porch

communicated to employees or agents of Defendant COUNTY including Defendant

REIMAN, and upon reasonable inference, to one or more of the Jane Roe Defendants or John

Doe Defendants, one or more false statements regarding Plaintiff alleging that PLAINTIFF

had committed one or more acts requiring law enforcement or COUNTY Behavioral Health

intervention, including or not limited to false statements that Defendant PISANI had not

remained on PLAINTIFF's residence property after being ordered to leave.

PLAINTIFF's FIRST AMENDED COMPLAINT 30

1    71. PLAINTIFF was scared, and for the rest of December 14, 2020, Plaintiff thought that within

2        minutes there would be another knock on her door by some law enforcement officers who

3        would try to arrest Plaintiff or seize Plaintiff under Welfare & Institutions Code Section 5150

4        or some other pretext. Plaintiff was extremely frightened of what would happen to her next

5        and knew that Defendant PISANI's finally leaving was not the end of this attempt to entrap

6        Plaintiff and that Plaintiff would have to face even much bigger, harsher, well-organized

7        retaliation and entrapment. Since Defendant PISANI's acts of December 14, 2020, Plaintiff

8        has become extremely scared of anyone from the COUNTY, including but not limited to the

9        County Sheriff.

10

11

12

13

14   **Defendant Pisani Defames Plaintiff Some More In Her Report To County**

15   72. On or about December 14, 2020,  Defendant PISANI in the Reiman Declaration Exhibit D

16       writing, communicated to one or more COUNTY employees the intentionally or recklessly

17       false statement of fact that PLAINTIFF after telling Defendant PISANI to leave, PLAINTIFF

18       "came back and started talking . . . attempting to speak with [PISANI]."  Defendant PISANI

19       from this writing intentionally or recklessly failed to disclose the fact known to PISANI that

20       PLAINTIFF remained in her house and that when PLAINTIFF saw that PISANI was still on

21       her residence premises, PLAINTIFF went into the driveway area to tell PISANI *a second time*

22       to leave, *and that PISANI followed PLAINTIFF on Plaintiff's driveway, as recorded on*

23       *PLAINTIFF"s home security system video and cellphone video.*

24   **Privacy-Invading Stalking of Plaintiff by County Agents Roe One and Roe Two shortly**
     **After December 14, 2020**

25   73. Plaintiff with her own eyes and ears on December 22, 2020, at about 11:55:40 a.m., saw

26

27       Defendant ROE ONE stalk PLAINTIFF in the aisles of the Tuesday Morning store at 2550

28

1   Fair Oaks Boulevard in the unincorporated area of the County of Sacramento.  Plaintiff with

2   her own eyes and ears has seen Defendant Roe One stalk Plaintiff on other dates near

3   December 14, 2020, including at Bella Bru Café on almost every day in 2020 whenever

4   Plaintiff dined at Bella Bru Café, including but not limited to August 26, 2020. Plaintiff was

5   very scared of Defendant ROE ONE and stopped going to Bella Bru Café and instead went to

6   Ettore's European Bakery and Restaurant ("Ettore's").  However, when PLAINTIFF arrived

7   at Ettore's, PLAINTIFF with her own eyes saw Defendant ROE ONE was there waiting for

8   PLAINTIFF.  PLAINTIFF reasonably inferred that Defendant ROE ONE was closely

9   stalking PLAINTIFF and that ROE ONE was one the people who was a part of this well

10  organized COUNTY stalking team targeting PLAINTIFF, and that ROE ONE has stalked

11  Plaintiff at Ettore's on multiple dates in December 2020.  Based on her personal knowledge of

12  being stalked by ROE ONE and others, PLAINTIFF starting on or about January 1, 2021

13  stopped going out for breakfast to avoid being stalked and framed by ROE ONE. These acts

14  of stalking and attempts to induce or entrap PLAINTIFF into a conversation and/or

15  videotaping of Plaintiff and retention and/or use of such videotapes by one or more of the

16  Defendants intruded into the private affairs of Plaintiff where she was attempting to enjoy a

17  zone of privacy while shopping at Tuesday Morning, dining at Bella Bru Café, or dining at

18  Ettore's. Upon information and belief, Plaintiff alleges that Defendant Roe One was working

19  for, as an agent of, or otherwise on behalf of Defendants COUNTY, REIMAN, STEWART,

20  PISANI and/or BRIGGS while committing these acts.  Defendant ROE ONE was constantly

21  writing and/or texting while constantly watching and monitoring Plaintiff, and many times

22  Plaintiff would leave without finishing her food just to get away from ROE ONE. Plaintiff

23  also alleges that Defendant ROE ONE from these activities communicated content,

24  information, or material about Plaintiff to one or more persons other than Plaintiff, including

but not limited to Defendants PISANI, REIMAN, STEWART, Defendant ROE TWO, employees or agents of COUNTY, and/or one or more of the Jane Roe Defendants or John Doe Defendants. PLAINTIFF when visiting the Bella Bru Cafe used to sit outside, but at one point, went inside the Bella Bru Café and sat inside in order to get away from Defendant ROE ONE, but with her own eyes saw that soon after PLAINTIFF went inside, ROE ONE came inside and sat at the table next to PLAINTIFF, interrupted PLAINTIFF's eating of her breakfast, and told PLAINTIFF that "she wanted to talk to" PLAINTIFF, or words to that effect. PLAINTIFF wanted to ask ROE ONE "why", but refrained from doing so because PLAINTIFF was very scared, so PLAINTIFF said "okay." PLAINTIFF then told ROE ONE about the May 9, 2020 false arrest of PLAINTIFF and related police brutality by the City of Sacramento Police Department, and said that PLAINTIFF was "very scared" or words to that effect. PLAINTIFF after she finished talking to ROE ONE was very scared of what ROE ONE was going to report about PLAINTIFF to COUNTY or other Defendants, and that ROE ONE was attempting to entrap PLAINTIFF in a staged incident. On another occasion at Bella Bru Café, ROE ONE again came inside accompanied by a Caucasian male wearing civilian clothes; both sat together at a table in close proximity to PLAINTIFF, but neither ate any food and instead spent all of their time watching PLAINTIFF; PLAINTIFF upon information and belief alleges that the Caucasian male accompanying ROE ONE was an employee, agent, or representative of Defendant COUNTY.

74. On August 10, 2020, Defendant ROE TWO stalked PLAINTIFF at the Bella Bru Café, placing herself in close proximity to Plaintiff while appearing to work on puzzles. Defendant Roe Two has stalked Plaintiff on other dates near December 14, 2020, including but not limited to dates in July, August and September of 2020.  Defendant

ROE TWO also stalked Plaintiff in other locations including but not limited to the Starbucks at 5300 Folsom Boulevard in the city of Sacramento.  The intrusive and privacy invading presence of Defendant ROE TWO and other stalkers at the 5300 Folsom Boulevard Starbucks caused Plaintiff to go to the Bella Bru Café on Fair Oaks Boulevard. Shortly after Plaintiff started to go to the Bella Bru Cafe, PLAINTIFF with her own eyes saw Defendant ROE TWO at the Bella Bru Café, where Plaintiff with her own eyes observed ROE TWO monitoring and stalking Plaintiff; keeping track of Plaintiff and the persons Plaintiff talked to; and monitoring all of Plaintiff's activity at Bella Bru Café. These acts of stalking and monitoring Plaintiff were very intrusive to PLAINTIFF. Defendants intruded into the private affairs of Plaintiff where Plaintiff was attempting to enjoy a zone of privacy while working on her computer.   Plaintiff alleges that Defendant ROE TWO was working for or on behalf of Defendants COUNTY, PISANI, REIMAN, STEWART and/or BRIGGS while committing these acts. Plaintiff also alleges that Defendant ROE TWO from these activities communicated content, information, or material about Plaintiff to one or more persons other than Plaintiff, including but not limited to Defendants PISANI, REIMAN, STEWART, and/or BRIGGS; Defendant Roe One; employees or agents of Defendant COUNTY; and/or one or more of the Jane Roe Defendants or John Doe Defendants.

## DAMAGES

75. As a direct and proximate result of each Defendant's acts and/or omissions as set forth herein, Plaintiff has suffered:

(a) Permanent and severe mental and emotional distress;

PLAINTIFF's FIRST AMENDED COMPLAINT 34

(b) Humiliation and the loss of dignity;

(c) Injury to reputation;

(d) Loss of enjoyment of life and other continued pain and suffering;

(e) Emotional trauma and suffering, including but not limited to fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, and anxiety – all of which will scar Plaintiff as long as Plaintiff lives.

(f)     Loss of trust in law enforcement agencies, to the point that Plaintiff is afraid to call law enforcement for any kind of assistance;

(g)     Loss of faith in County operations and personnel.

(h)     Fear of perpetual retaliation against herself and her family members.

76. Plaintiff requests punitive or exemplary damages against Defendants BRIGGS, STEWART, REIMAN, PISANI, and other individual capacity Defendants for their acts of oppression, fraud, and/or malice, and against Defendant COUNTY to the extent that Defendant County is liable for such damages under Civil Code Section 52.1 or Government Code Section 815.2(a).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: INVASION OF PRIVACY (INTRUSION INTO PRIVATE AFFAIRS) versus DEFENDANTS PISANI, BRIGGS, STEWART, REIMAN, ROE ONE and ROE TWO [*Miller v. National Broadcasting Company*, 187 Cal.App.3d 1463 (1986)]

77. PLAINTIFF hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-76 as though fully set forth herein.

78. PLAINTIFF had a reasonable expectation of privacy in her person and in her private affairs in all areas inside the curtilage of her residence property.

79. Defendant PISANI intentionally intruded into PLAINTIFF's privacy and private affairs inside the curtilage of her residence property.

80. The intrusion by Defendant PISANI would be highly offensive to a reasonable person.

81. PLAINTIFF was harmed by the intrusion by Defendant PISANI.

82. The acts and conduct of Defendant PISANI were a substantial factor in PLAINTIFF's harm, and Defendant Pisani is therefore liable to Plaintiff for invasion of privacy.

83. The acts of Defendant BRIGGS, Defendant STEWART, and Defendant REIMAN were also substantial factors in PLAINTIFF's harm, and each of Defendants Briggs, Stewart and Reiman are therefore liable to Plaintiff for invasion of privacy, since they intended to have and ordered PISANI to intrude into the curtilage of PLAINTIFF's residence, and their acts in ordering or abetting such intrusion would be highly offensive to a reasonable person.

84. PLAINTIFF has a reasonable expectation of privacy and in her private affairs when she is in retail establishments where she shops in her private space or dines in her private space.

85. Defendant ROE ONE intentionally intruded into PLAINTIFF's privacy, private space, and private affairs by her acts and conduct toward Plaintiff.

86. The intrusion by Defendant ROE ONE would be highly offensive to a reasonable person.

87. PLAINTIFF was harmed by the intrusion by Defendant ROE ONE.

88. The acts and conduct of Defendant ROE ONE were a substantial factor in PLAINTIFF's harm, and therefore Defendant Roe One is liable to Plaintiff for invasion of privacy.

89. Defendant ROE TWO intentionally intruded into PLAINTIFF's privacy, private space, and private affairs by her acts and conduct toward Plaintiff.

90. The intrusion by Defendant ROE TWO would be highly offensive to a reasonable person.

91. PLAINTIFF was harmed by the intrusion by Defendant ROE TWO.

92. The acts and conduct of Defendant ROE TWO were a substantial factor in PLAINTIFF's harm, and therefore Defendant Roe Two is liable to Plaintiff for invasion of privacy.

**SECOND CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS versus DEFENDANTS PISANI, BRIGGS, STEWART, REIMAN, ROE ONE and ROE TWO [*Hughes v. Pair*, 46 Cal.4th 1035 (2009)]**

93. PLAINTIFF hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-76 as though fully set forth herein.

94. The acts and conduct of Defendant PISANI were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

95. Defendant PISANI intended to cause PLAINTIFF severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

96. Defendant PISANI knew that PLAINTIFF would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

97. Defendant PISANI gave little or no thought to the probable effect of her conduct on Plaintiff.

98. PLAINTIFF suffered severe emotional distress from the acts and conduct of Defendant PISANI.

99. The acts and conduct of Defendant BRIGGS were a substantial factor in causing Plaintiff to suffer severe emotional distress, and Defendant BRIGGS is therefore liable to Plaintiff for intentional infliction of emotional distress.

100.  The acts and conduct of Defendant BRIGGS were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

101.    Defendant BRIGGS intended to cause Plaintiff severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

102.    Defendant BRIGGS knew that Plaintiff would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

103.    Defendant BRIGGS gave little or no thought to the probable effect of his conduct on Plaintiff.

104.    PLAINTIFF suffered severe emotional distress from the acts and conduct of Defendant Briggs.

105.  The acts and conduct of Defendant STEWART were a substantial factor in causing PLAINTIFF to suffer severe emotional distress, and Defendant STEWART is therefore liable to Plaintiff for intentional infliction of emotional distress.

106.  The acts and conduct of Defendant STEWART were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

107.    Defendant STEWART intended to cause Plaintiff severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

108.   Defendant STEWART knew that Plaintiff would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

109.   Defendant STEWART gave little or no thought to the probable effect of her conduct on Plaintiff.

110.   PLAINTIFF suffered severe emotional distress from the acts and conduct of Defendant STEWART.

111.   The acts and conduct of Defendant REIMAN were a substantial factor in causing PLAINTIFF to suffer severe emotional distress, and Defendant REIMAN is therefore liable to Plaintiff for intentional infliction of emotional distress.

112.   The acts and conduct of Defendant REIMAN were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

113.   Defendant REIMAN intended to cause Plaintiff severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

114.   Defendant REIMAN knew that Plaintiff would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

115.   Defendant REIMAN gave little or no thought to the probable effect of her conduct on Plaintiff.

116.   Plaintiff suffered severe emotional distress from the acts and conduct of Defendant REIMAN.

117.  The acts and conduct of Defendant ROE ONE were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

118.  Defendant ROE ONE intended to cause PLAINTIFF severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

119.  Defendant ROE ONE knew that PLAINTIFF would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

120.  Defendant ROE ONE gave little or no thought to the probable effect of her conduct on PLAINTIFF.

121.  Plaintiff suffered severe emotional distress from the acts and conduct of Defendant ROE ONE.

122.  The acts and conduct of Defendant ROE ONE were a substantial factor in causing Plaintiff to suffer severe emotional distress, and Defendant ROE ONE is therefore liable to Plaintiff for intentional infliction of emotional distress.

123.  The acts and conduct of Defendant ROE TWO were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

124.  Defendant ROE TWO intended to cause PLAINTIFF severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

125.  Defendant ROE TWO knew that PLAINTIFF would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

126.  Defendant ROE TWO gave little or no thought to the probable effect of her conduct on PLAINTIFF.

127.     PLAINTIFF suffered severe emotional distress from the acts and conduct of

Defendant ROE TWO.

128.     The acts and conduct of Defendant ROE TWO were a substantial factor in causing

PLAINTIFF to suffer severe emotional distress, and Defendant ROE TWO is therefore

liable to PLAINTIFF for intentional infliction of emotional distress.


**THIRD CAUSE OF ACTION: TRESPASS versus DEFENDANT PISANI [*Miller v.*
*National Broadcasting Company*, 187 Cal.App.3d 1463 (1986)]**

129.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in

the preceding paragraphs 1-76 as though fully set forth herein.

130.     Defendant PISANI entered PLAINTIFF's residence property on December 14, 2020

at about 4:33 p.m.

131.     PLAINTIFF did not give permission to Defendant PISANI for any entry by

Defendant Pisani on to Plaintiff's residence property.

132.   Upon information from PLAINTIFF's home security system video, PLAINTIFF's

cellphone video, and/or from PLAINTIFF's own eyes and ears, Defendant PISANI

remained on Plaintiff's residence front yard and driveway after being expressly ordered

by Plaintiff to leave, meaning Defendant PISANI intended to be in PLAINTIFF's

residence property front yard, driveway, and at other locations inside Plaintiff's

residence property curtilage and to remain there.

133.   Upon information from PLAINTIFF's home security system video, Plaintiff's

cellphone video, and from Plaintiff's own eyes and ears, the acts of Defendant PISANI

inside the curtilage of Plaintiff's residence property included: (a) Defendant Pisani

refusing to leave and remaining on Plaintiff's property after Plaintiff first told her to

leave, while Defendant Pisani was on Plaintiff's front porch; and (b) Defendant Pisani yelling at Plaintiff from Plaintiff's driveway after Plaintiff told Defendant Pisani for a second time to leave.

134. Upon information from PLAINTIFF's home security system video, Plaintiff's cellphone video, and from Plaintiff's own eyes and ears, Defendant PISANI after Plaintiff ordered Pisani to leave Plaintiff's residence front porch walked on Plaintiff's residence front yard to Plaintiff's residence driveway, and remained on Plaintiff's residence driveway after being told by Plaintiff to leave, meaning Pisani intended to be in Plaintiff's residence front yard and residence driveway inside Plaintiff's residence curtilage and to remain there.

135. PLAINTIFF was harmed by the trespass of Defendant PISANI, not only from the trespass itself, but also from the reasonably foreseeable and/or intended damages that came from Pisani using her presence on Plaintiff's residence property to cause emotional distress to Plaintiff, further intrude into Plaintiff's privacy and private affairs, and further damage Plaintiff.

136. The acts of Defendant PISANI were a substantial factor in causing harm to Plaintiff.

137. Plaintiff was harmed by the trespass committed by Defendant PISANI.

138. Defendant PISANI is therefore liable to Plaintiff for California law for trespass damages, including consequential damages intended or reasonably foreseeable from the trespass.

**FOURTH CAUSE OF ACTION versus DEFENDANTS PISANI, BRIGGS, STEWART, REIMAN, ROE ONE, and ROE TWO FOR NEGLIGENCE [Cal. Civil Code Section 1714(a); *Cabral v. Ralph's Grocery Co.*, 51 Cal.4[th] 764 (2011)]**

139.    PLAINTIFF realleges and incorporates by reference each of the preceding paragraphs 1-76 as though fully set forth herein.

140.    When Defendant PISANI committed her acts against Plaintiff alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant PISANI was under a duty to use reasonable care regarding Plaintiff.

141.    In committing each of her acts alleged against PLAINTIFF alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant PISANI breached her duty of reasonable care regarding Plaintiff.

142.    The breach of her duty of reasonable care by Defendant PISANI owed to PLAINTIFF was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Pisani liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

143.    When Defendant BRIGGS committed his acts against PLAINTIFF alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant Briggs was under a duty to use reasonable care regarding Plaintiff.

144.    In committing each of his acts alleged against PLAINTIFF alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant BRIGGS breached his duty of reasonable care owed to Plaintiff.

145.    The breach of his duty of reasonable care by Defendant BRIGGS owed to PLAINTIFF was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Briggs liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

146.    When Defendant STEWART committed her acts against Plaintiff alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant Stewart was under a duty to use reasonable care regarding Plaintiff.

147.    In committing each of her acts alleged against PLAINTIFF alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant STEWART breached her duty of reasonable care owed to Plaintiff.

148.    The breach of her duty of reasonable care by Defendant STEWART owed to PLAINTIFF was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Stewart liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

149.    When Defendant REIMAN committed her acts against Plaintiff alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant Reiman was under a duty to use reasonable care regarding Plaintiff.

150.    In committing each of her acts alleged against PLAINTIFF alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant REIMAN breached her duty of reasonable care owed to Plaintiff.

151.    The breach of her duty of reasonable care by Defendant REIMAN owed to PLAINTIFF was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Reiman liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

152.    When Defendant ROE ONE committed her acts against PLAINTIFF alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant ROE ONE was under a duty to use reasonable care regarding Plaintiff.

153.    In committing each of her acts alleged against PLAINTIFF alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant ROE ONE breached her duty of reasonable care owed to Plaintiff.

154.    The breach of her duty of reasonable care by Defendant Roe One regarding Plaintiff was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Roe One liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

155.    When Defendant ROE TWO committed her acts against Plaintiff alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant Roe Two was under a duty to use reasonable care regarding Plaintiff.

156.    In committing each of her acts alleged against PLAINTIFF alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant ROE TWO breached her duty of reasonable care regarding Plaintiff.

157.    The breach of her duty of reasonable care by Defendant ROE TWO owed to PLAINTIFF was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Roe Two liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

**FIFTH CAUSE OF ACTION: FALSE LIGHT INVASION OF PRIVACY versus DEFENDANTS PISANI, STEWART, REIMAN, ROE ONE and ROE TWO [*Briscoe v. Reader's Digest Association*, 4 Cal.3d 529 (1971)]**

158.    PLAINTIFF hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-76 as though fully set forth herein.

159.    Defendant PISANI communicated to one or more persons other than PLAINTIFF content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating that Plaintiff was the restrained party subject of a

PLAINTIFF's FIRST AMENDED COMPLAINT 45

restraining order by a Member of the Sacramento City Council, and had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

160.     The false light created by the disclosure would be highly offensive to a reasonable person in PLAINTIFF's position.

161.     Defendant PISANI knew the disclosure would create a false impression about PLAINTIFF.

162.     Defendant PISANI made the disclosures about Plaintiff with reckless disregard for the truth.

163.     Defendant PISANI was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

164.     PLAINTIFF was harmed by the disclosures made by Defendant PISANI.

165.     The conduct of Defendant PISANI was a substantial factor in causing harm to PLAINTIFF, and Defendant Pisani is therefore liable to Plaintiff for invasion of privacy.

166.     Defendant STEWART communicated to one or more persons other than PLAINTIFF content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating that Plaintiff was the restrained party subject of a restraining order by a Member of the Sacramento City Council, and had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

167.     The false light created by the disclosure would be highly offensive to a reasonable person in PLAINTIFF's position.

168.     Defendant STEWART knew the disclosure would create a false impression about PLAINTIFF.

169.    Defendant STEWART made the disclosures about PLAINTIFF with reckless disregard for the truth.

170.    Defendant STEWART was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

171.    PLAINTIFF was harmed by the disclosures made by Defendant STEWART.

172.    The conduct of Defendant STEWART was a substantial factor in causing harm to Plaintiff, and Defendant Stewart is therefore liable to Plaintiff for invasion of privacy.

173.    Defendant REIMAN communicated to one or more persons other than PLAINTIFF content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating that Plaintiff was the restrained party subject of a restraining order by a Member of the Sacramento City Council, and had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

174.    The false light created by the disclosure would be highly offensive to a reasonable person in PLAINTIFF's position.

175.    Defendant REIMAN knew the disclosure would create a false impression about PLAINTIFF.

176.    Defendant REIMAN made the disclosures about PLAINTIFF with reckless disregard for the truth.

177.    Defendant REIMAN was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

178.    PLAINTIFF was harmed by the disclosures made by Defendant REIMAN.

179.    The conduct of Defendant REIMAN was a substantial factor in causing harm to PLAINTIFF, and Defendant Reiman is therefore liable to Plaintiff for invasion of privacy.

PLAINTIFF's FIRST AMENDED COMPLAINT 47

180.   Defendant ROE ONE communicated to one or more persons other than PLAINTIFF content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

181.   The false light created by the disclosure would be highly offensive to a reasonable person in PLAINTIFF's position.

182.   Defendant ROE ONE knew the disclosure would create a false impression about PLAINTIFF.

183.   Defendant ROE ONE made the disclosures about PLAINTIFF with reckless disregard for the truth.

184.   Defendant ROE ONE was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

185.   PLAINTIFF was harmed by the disclosures made by Defendant ROE ONE.

186.   The conduct of Defendant ROE ONE was a substantial factor in causing harm to PLAINTIFF, and Defendant Roe One is therefore liable to Plaintiff for invasion of privacy.

187.   Defendant ROE TWO communicated to one or more persons other than PLAINTIFF content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

188.    The false light created by the disclosure would be highly offensive to a reasonable person in PLAINTIFF's position.

189.    Defendant ROE TWO knew the disclosure would create a false impression about PLAINTIFF.

190.    Defendant ROE TWO made the disclosures about PLAINTIFF with reckless disregard for the truth.

191.    Defendant ROE TWO was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

192.    PLAINTIFF was harmed by the disclosures made by Defendant ROE TWO.

193.    The conduct of Defendant ROE TWO was a substantial factor in causing harm to PLAINTIFF, and Defendant Roe Two is therefore liable to Plaintiff for invasion of privacy.

**SIXTH CAUSE OF ACTION: versus DEFENDANTS PISANI, STEWART, REIMAN, ROE ONE and ROE TWO for DEFAMATION [California Civil Code Sections 44, 45, 46]**

194.    PLAINTIFF hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-76 as though fully set forth herein.

195.    Defendant PISANI made one or more purported statements of fact of and concerning PLAINTIFF to one or more persons other than Plaintiff, including but not limited to content, material or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services, including but not limited to content or information stating that Plaintiff was the restrained party subject of a restraining order by a Member of the Sacramento City Council, and had committed one or more acts or

PLAINTIFF's FIRST AMENDED COMPLAINT 49

engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

196.     The persons other than PLAINTIFF who heard the communications from Defendant PISANI alleged in this cause of action reasonably understood these statements to be statements about Plaintiff and that stated Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services, including but not limited to understanding that Plaintiff was the restrained party subject of a restraining order by a Member of the Sacramento City Council, and had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

197.     These statements by Defendant PISANI were false when they were made.

198.     Defendant PISANI in making these statements knew they were false, or acted with reckless disregard of their truth or falsity.

199.     Defendant PISANI failed to use reasonable care in making these statements.

200.     Defendant PISANI in making these statements acted with hatred toward PLAINTIFF, spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or annoy Plaintiff.

201.     PLAINTIFF was harmed by the statements made by Defendant PISANI.

202.     The conduct of Defendant PISANI was a substantial factor in causing harm to PLAINTIFF, and Defendant Pisani is therefore liable to Plaintiff for defamation.

203.     Defendant STEWART made one or more purported statements of fact of and concerning PLAINTIFF to one or more persons other than Plaintiff, including but not limited to content, material or information stating Plaintiff had committed one or more

PLAINTIFF's FIRST AMENDED COMPLAINT 50

acts or engaged in conduct requiring intervention from law enforcement or from

COUNTY's Division of Behavioral Health Services, including but not limited to content

or information stating that Plaintiff was the restrained party subject of a restraining order

by a Member of the Sacramento City Council, and had committed one or more acts or

engaged in conduct requiring intervention from law enforcement or from COUNTY's

Division of Behavioral Health Services.

204.    The persons other than PLAINTIFF who heard the communications from Defendant

STEWART alleged in this cause of action reasonably understood these statements to be

statements about Plaintiff and that stated Plaintiff had committed one or more acts or

engaged in conduct requiring intervention from law enforcement or from COUNTY's

Division of Behavioral Health Services, including but not limited to understanding that

Plaintiff was the restrained party subject of a restraining order by a Member of the

Sacramento City Council, and had committed one or more acts or engaged in conduct

requiring intervention from law enforcement or from County Behavioral Health.

205.    These statements by Defendant STEWART were false when they were made.

206.    Defendant STEWART in making these statements knew they were false, or acted

with reckless disregard of their truth or falsity.

207.    Defendant STEWART failed to use reasonable care in making these statements.

208.    Defendant STEWART in making these statements acted with hatred toward

PLAINTIFF, spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or

annoy Plaintiff.

209.    PLAINTIFF was harmed by the statements made by Defendant STEWART.

PLAINTIFF's FIRST AMENDED COMPLAINT 51

210.    The conduct of Defendant STEWART was a substantial factor in causing harm to PLAINTIFF, and Defendant Stewart is therefore liable to Plaintiff for defamation.

211.    Defendant REIMAN made one or more purported statements of fact of and concerning PLAINTIFF to one or more persons other than Plaintiff, including but not limited to content, material or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services, including but not limited to content or information stating that Plaintiff was the restrained party subject of a restraining order by a Member of the Sacramento City Council, and had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

212.    The persons other than PLAINTIFF who heard the communications from Defendant REIMAN alleged in this cause of action reasonably understood these statements to be statements about Plaintiff and that stated Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services, including but not limited to understanding that Plaintiff was the restrained party subject of a restraining order by a Member of the Sacramento City Council, and had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

213.    These statements were false when they were made by Defendant REIMAN.

214.    Defendant REIMAN in making these statements knew they were false, or acted with reckless disregard of their truth or falsity.

215.    Defendant REIMAN failed to use reasonable care in making these statements.

216.     Defendant REIMAN in making these statements acted with hatred toward
PLAINTIFF, spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or
annoy Plaintiff.

217.     PLAINTIFF was harmed by the statements made by Defendant REIMAN.

218.     The conduct of Defendant REIMAN was a substantial factor in causing harm to
PLAINTIFF, and Defendant Reiman is therefore liable to Plaintiff for defamation.

219.     Defendant ROE ONE made one or more purported statements of fact of and
concerning PLAINTIFF to one or more persons other than Plaintiff, including but not
limited to content, material or information stating Plaintiff had committed one or more
acts or engaged in conduct requiring intervention from law enforcement or from
COUNTY's Division of Behavioral Health Services.

220.  The persons other than PLAINTIFF who heard the communications from Defendant ROE
ONE alleged in this cause of action reasonably understood these statements to be statements
about PLAINTIFF that stated Plaintiff had committed one or more acts or engaged in conduct
requiring intervention from law enforcement or from COUNTY's Division of Behavioral
Health Services.

221.     These statements by Defendant ROE ONE were false when they were made.

222.     Defendant ROE ONE in making these statements knew they were false, or acted
with reckless disregard of their truth or falsity.

223.     Defendant ROE ONE failed to use reasonable care in making these statements.

224.     Defendant ROE ONE in making these statements acted with hatred toward
PLAINTIFF, spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or
annoy Plaintiff.

225.    PLAINTIFF was harmed by the statements made by Defendant ROE ONE.

226.    The conduct of Defendant ROE ONE was a substantial factor in causing harm to

PLAINTIFF, and Defendant Roe One is therefore liable to Plaintiff for defamation.

227.    Defendant ROE TWO made one or more purported statements of fact of and

concerning PLAINTIFF to one or more persons other than Plaintiff, including but not

limited to content, material or information stating Plaintiff had committed one or more

acts or engaged in conduct requiring intervention from law enforcement or from

COUNTY's Division of Behavioral Health Services.

228.    The persons other than PLAINTIFF who heard the communications from Defendant ROE

TWO alleged in this cause of action reasonably understood these statements to be statements

about Plaintiff that stated Plaintiff had committed one or more acts or engaged in conduct

requiring intervention from law enforcement or from COUNTY's Division of Behavioral

Health Services.

229.    These statements by Defendant ROE TWO were false when they were made.

230.    Defendant ROE TWO in making these statements knew they were false, or acted

with reckless disregard of their truth or falsity.

231.    Defendant ROE TWO failed to use reasonable care in making these statements.

232.    Defendant ROE TWO in making these statements acted with hatred toward

PLAINTIFF, spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or

annoy Plaintiff.

233.    PLAINTIFF was harmed by the statements made by Defendant ROE TWO.

234.    The conduct of Defendant ROE TWO was a substantial factor in causing harm to

PLAINTIFF, and Defendant Roe Two is therefore liable to Plaintiff for defamation.

**SEVENTH CAUSE OF ACTION: versus DEFENDANT COUNTY OF SACRAMENTO for NEGLIGENT TRAINING, DISCIPLINE, AND SUPERVISION OF COUNTY DEPUTY SHERIFFS IN PROBLEM ORIENTED POLICING; COUNTY SENIOR MENTAL HEALTH COUNSELORS ; and COUNTY MENTAL HEALTH PROGRAM COORDINATORS [Cal. Gov. Code Section 815.2(a); _C.A. v. William S. Hart Union High School District_, 53 Cal.4th 861 (2012)]**

235. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-234 as though fully set forth herein.

236. Defendant COUNTY's training, supervision, and discipline of Defendant BRIGGS, Defendant PISANI, Defendant STEWART, Defendant REIMAN, Defendant ROE ONE, Defendant ROE TWO, and other County employee/agent ROE Defendants and DOE Defendants, was negligent in protecting inhabitants of the County of Sacramento (including PLAINTIFF), from County Deputy Sheriff, County Senior Mental Health Counselor, County Mental Health Program Coordinator,  and other County employee violations of Plaintiff's California law protection against intrusion into private affairs and invasions of privacy; intentional infliction of emotional distress; trespass; negligence; defamation; and retaliation for exercise of speech and writing protected under the United  States Constitution First Amendment and Article I, Sections 1, 2, and 3 of the California Constitution.

237.  In training, disciplining, and supervising, or in failing to train, discipline and supervise Defendants PISANI, BRIGGS, STEWART, REIMAN, County employees/agents ROE and DOE defendants, and other COUNTY employees in these positions, Defendant COUNTY and its supervisorial and final policy-making employees have a relationship with the inhabitants of the County of Sacramento (including PLAINTIFF) and owe inhabitants of the County of Sacramento (including Plaintiff) a duty of reasonable care. The relationship between Defendant COUNTY and Plaintiff includes but is not limited to the COUNTY's Sheriff's

1  Department website invitation for persons to send Police Reports to Defendant COUNTY's

2  Sheriff's Department,

3  238. Defendant COUNTY's failure to train, supervise, and discipline County Senior Mental

4  Health Counselor (SMHC) Pamela PISANI, SMHC Jennifer STEWART, County Mental

5  Health Program Coordinator Jennifer REIMAN, Sheriff's Sergeant Ronald BRIGGS,

6  Defendant ROE ONE, Defendant ROE TWO, other County employee/agent Roe Defendants

7

8  and Doe Defendants, and other COUNTY employees/agents in these positions  in obvious

9  procedures to prevent retaliation for protected speech and petitioning; trespasses; defamation;

10  false light invasion of privacy; and/or intrusions into the private affairs of and other violations

11  of the right of privacy of residents of Sacramento County (including PLAINTIFF) breached

12  Defendant COUNTY's duty of reasonable care, caused substantial harm to PLAINTIFF, and

13

14  was the proximate cause of Plaintiff's injuries from Defendant County's employees Pisani,

15  Briggs, Stewart, Reiman, Roe One, Roe Two, and County employee Roe Defendants and Doe

16  Defendants.

17  239. Defendant COUNTY's acts of ratification and in carrying out policies, procedures, final

18  decisions, or customs alleged herein also amount to negligent training, supervision, and

19  discipline of Defendants PISANI, STEWART, REIMAN, BRIGGS, ROE ONE, ROE TWO,

20  and other County employee Roe Defendants and Doe Defendants, violates the County's duty

21

22  to Plaintiff under California Government Code Section 815.2(a) and California Civil Code

23  Section 1714.

24  240. Defendant COUNTY is therefore liable to Plaintiff under California Government Code

25  Section 815.2(a) for negligent training, supervision, and discipline of Defendants PISANI,

26  BRIGGS, STEWART, REIMAN, ROE ONE, ROE TWO, and/or other County employee

27  ROE Defendants and DOE Defendants.

28

PLAINTIFF's FIRST AMENDED COMPLAINT 56

1

2   **EIGHTH CAUSE OF ACTION: GOVERNMENT CODE SECTION 815.2(a)**
    ***RESPONDEAT SUPERIOR* versus DEFENDANT COUNTY OF SACRAMENTO FOR**
3   **THE ACTIONS OF DEFENDANT COUNTY SENIOR MENTAL HEALTH**
    **COUNSELORS PISANI and STEWART; COUNTY MENTAL HEALTH PROGRAM**
    **COORDINATOR REIMAN; COUNTY SHERIFF'S SERGEANT RONALD BRIGGS;**
4   **and COUNTY EMPLOYEE ROE and DOE DEFENDANTS [California Government**
    **Code Section 815.2(a); *Mary M. v. City of Los Angeles*, 54 Cal.3d 202 (1991)]**

5

6   241. PLAINTIFF hereby re-alleges and incorporates by reference the allegations contained in

7   the preceding paragraphs 1-234 as though fully set forth herein.

8   242. California Government Code Section 815.2(a) makes Defendant COUNTY liable for the

9
    acts or omissions of County employees within the scope of the employee's employment if the
10
11  act or omission gives to a cause of action against that employee.

12
    243. At all times material hereto, Defendant COUNTY employs or employed Defendants
13
14  PISANI and STEWART as County Senior Mental Health Counselors during their acts

15  complained of herein.

16  244. At all times material hereto, Defendant COUNTY employed or employs Defendant

17  REIMAN as County Mental Health Program Coordinator during her acts complained of

18
    herein.
19
    245.  Defendant COUNTY employed or employs Defendant BRIGGS as a Sheriff's
20
21  Department Sergeant during his acts complained of herein.

22  246. Defendant County Senior Mental Health Counselor PISANI is sued for acts or omissions

23  committed within the scope of her COUNTY employment in Causes of Action First, Second,

24  Third, Fourth, Fifth, Sixth and Ninth herein.

25  247.  Defendant County Senior Mental Health Counselor STEWART is sued for acts or

26  omissions committed within the scope of her COUNTY employment in Causes of Action

27  First, Second, Fourth, Fifth, Sixth and Ninth herein.
28

248. Defendant County Mental Health Program Coordinator REIMAN is sued for acts or omissions committed within the scope of her COUNTY employment in Causes of Action First, Second, Fourth, Fifth, Sixth and Ninth herein.

249. Defendant County Sheriff's Department Sergeant BRIGGS is sued for acts or omissions committed within the scope of his COUNTY employment in Causes of Action First, Second, Fourth, Fifth, Sixth and Ninth herein.

250. Defendant COUNTY is therefore liable to Plaintiff under Government Code Section 815.2(a) for the acts or omissions of County employees PISANI, STEWART, REIMAN and BRIGGS in the Causes of Action pled against each of them.

251.    Defendant COUNTY employs or uses as an agent or representative Defendant ROE ONE.

252.    Defendant ROE ONE is sued for acts or omissions committed within the scope of her COUNTY employment, agency, or representation in Causes of Action First, Second, Fourth, Fifth and Sixth herein.

253.    Defendant COUNTY is therefore liable to Plaintiff under Government Code Section 815.2(a) for the acts or omissions of County employee ROE ONE in the Causes of Action pled against Defendant ROE ONE.

254.    Defendant COUNTY employs or uses as an agent or representative Defendant ROE TWO.

255.    Defendant ROE TWO is sued for acts or omissions committed within the scope of her County employment, agency, or representation in Causes of Action First, Second, Fourth, Fifth and Sixth herein.

1

2    256.    Defendant COUNTY is therefore liable to Plaintiff under California Government

3            Code Section 815.2(a) for the acts or omissions of County employee ROE TWO in the

4            Causes of Action pled against Defendant Roe Two.

5

6    257.    Defendant COUNTY employs one or more of the Jane Roe Defendants 3-100 and

7            John Doe Defendants 1-100.  These Defendants are sued for acts or omissions committed

8            within the scope of their COUNTY employment in Causes of Action First, Second,

9
             Fourth, Fifth and Sixth herein. Defendant County is therefore liable to Plaintiff under
10
             California Government Code Section 815.2(a) for the acts or omissions of these
11
12           employees that caused harm to Plaintiff.

13           **NINTH CAUSE OF ACTION: TOM BANE CIVIL RIGHTS ACT versus**
             **DEFENDANTS COUNTY OF SACRAMENTO, BRIGGS, STEWART, REIMAN**
14           **and PISANI FOR ACTS OF THREATS, INTIMIDATION, AND COERCION TO**
             **RETALIATE AGAINST PLAINTIFF FOR EXERCISING HER FEDERAL AND**
15           **STATE CONSTITUTIONAL RIGHTS OF PETITION BY FILING POLICE**
16           **REPORTS WITH DEFENDANT COUNTY'S SHERIFF DEPARTMENT [Civil**
             **Code Section 52.1]**
17

18

19   258.    PLAINTIFF hereby re-alleges and incorporates by reference the allegations contained

20           in the preceding paragraphs 1-76 as though fully set forth herein.

21   259.    Civil Code Section 52.1 (the Bane Act) makes it unlawful for any person (including

22           public entities such as COUNTY) to deprive or attempt to deprive PLAINTIFF of her

23           rights under the United States Constitution,  California Constitution, or California law,

24           through any act of threat, coercion, or intimidation.
25
     260.    PLAINTIFF's filing of Police Reports/Crime Reports with Defendant COUNTY's
26
27           Sheriff's Department, including but not limited to the November 9, 2020 Police Report

28           letter attached as Exhibit B to the COUNTY's Reiman Declaration,  is protected

expression under both the United States Constitution First Amendment and California Constitution, Article I, Sections 2 and 3. It is also an act encouraged by the website of Defendant COUNTY's Sheriff's Department.

261.    The acts of Defendant BRIGGS in causing the sending of a COUNTY "mental health worker to check in on PLAINTIFF" and to subject PLAINTIFF to the acts of Defendants PISANI, REIMAN and STEWART were done in retaliation for PLAINTIFF sending to Defendants COUNTY and BRIGGS a constitutionally protected Police Report/Crime Report that Defendant BRIGGS found to be "unfounded" and/or otherwise disagreeable to Defendant BRIGGS acting in the course and scope of his COUNTY employment as a Sheriff's Department Sergeant.

262.    The acts of Defendants BRIGGS, STEWART, REIMAN, and PISANI in the course and scope of their COUNTY employment committed against PLAINTIFF were acts of retaliation against PLAINTIFF for her exercise of the right to petition the government for redress of grievances under the United States Constitution First Amendment Petition Clause and her rights of expression under the First Amendment Speech and Press clauses; for her exercise of speaking and writing freely on all subjects protected by the California Constitution Article I, Section 2;  her right to petition under California Constitution Article I, Section 3; and her right to recover her stolen cellphone under California Constitution Article I, Section 1 protection of use of property,

by causing PLAINTIFF to suffer the acts of PISANI attempting to entrap, coerce, threaten or intimidate PLAINTIFF into not exercising her federal constitutional and state law rights to file Police Reports/Crime Reports with Defendant COUNTY's Sheriff's Department; into accepting COUNTY mental health services that PLAINTIFF did not

1    want; and/or to be stigmatized as a person receiving or offered COUNTY mental health

2    services in order to discredit her Police Reports/Crime Reports.

3    **263.**    The acts of Defendants BRIGGS, STEWART, REIMAN and PISANI in the course

4    and scope of their COUNTY employment were also acts of Defendant COUNTY that

5    violated the Bane Act.

6

7    **264.**    Defendants BRIGGS, STEWART, REIMAN, PISANI and COUNTY are therefore

8    each liable to PLAINTIFF under the Bane Act, individually, jointly, and severally.

9

10   **TENTH CAUSE OF ACTION: FEDERAL CIVIL RIGHTS ACT [United States
     Code, Title 42, Section 1983] versus DEFENDANTS BRIGGS, STEWART,
11   REIMAN and PISANI FOR RETALIATING AGAINST PLAINTIFF
     FOR EXERCISING HER FEDERAL CONSTITUTIONAL RIGHT OF PETITION
12   BY FILING POLICE REPORTS WITH DEFENDANT COUNTY'S SHERIFF
13   DEPARTMENT**

14

15   265.   Plaintiff hereby re-alleges and incorporates by reference the allegations contained in

16   the preceding paragraphs 1-76 and 258-264 as though fully set forth herein.

17   266.   United States Code, Title 42, Section 1983 ("Section 1983") makes it unlawful for

18   any person to deprive or attempt to deprive Plaintiff of her rights under the United States

19   Constitution. State courts such as this Court have jurisdiction over Section 1983 claims.

20

21   267.   PLAINTIFF's filing of Police Reports/Crime Reports with Defendant COUNTY's

22   Sheriff's Department, including but not limited to the November 9, 2020 Police Report

23   letter attached as Exhibit B to the COUNTY's Reiman Declaration,  is a protected act of

24   expression and/or protected act of petition under the  United States Constitution First

25   Amendment. It is also an act whose exercise is encouraged by the website of Defendant

26   COUNTY's Sheriff's Department.

27

28

268.    The acts of Defendants BRIGGS, STEWART, REIMAN and PISANI alleged herein were all committed under color of state law by these Defendants in the course and scope of their COUNTY employment.

269.    The acts of Defendant BRIGGS in causing the sending of a COUNTY "mental health worker to check in on PLAINTIFF" and to subject PLAINTIFF to the acts of Defendants PISANI, REIMAN and STEWART were done in retaliation for PLAINTIFF sending to Defendants COUNTY and BRIGGS a constitutionally protected Police Report/Crime Report that Defendant BRIGGS found to be "unfounded" and/or otherwise disagreeable to Defendant BRIGGS acting in the course and scope of his COUNTY employment and under color of state law as a Sheriff's Department Sergeant.

270.    The acts of Defendants BRIGGS, STEWART, REIMAN, and PISANI in the course and scope of their COUNTY employment and under color of state law that they committed against PLAINTIFF were acts of retaliation against PLAINTIFF for her exercise of the right to petition the government for redress of grievances under the United States Constitution First Amendment Petition Clause and her rights of expression under the First Amendment Speech and Press clauses.

271.    The acts of Defendants BRIGGS, STEWART, REIMAN and PISANI alleged herein deprived PLAINTIFF of her First Amendment rights to petition the government for redress of grievances, freedom of speech, and freedom of the press, by causing PLAINTIFF to suffer the acts of PISANI attempting to entrap, coerce, threaten or intimidate PLAINTIFF into not exercising her First Amendment rights to file Police Reports/Crime Reports with Defendant COUNTY's Sheriff's Department; into accepting COUNTY mental health services that PLAINTIFF did not want; and/or to be stigmatized

1   as a person receiving or offered COUNTY mental health services in order to discredit her

2   Police Reports/Crime Reports.

3

4

5   272.   Defendants BRIGGS, STEWART, REIMAN, and PISANI are therefore each liable to

6   PLAINTIFF under United States Code, Title 42, Section 1983, individually, jointly, and

7   severally.

8   **ELEVENTH CAUSE OF ACTION: FEDERAL CIVIL RIGHTS ACT [United States Code, Title 42, Section 1983] MUNICIPAL AND SUPERVISORIAL**

9   **LIABLITY versus DEFENDANT COUNTY for RATIFICATION, POLICIES,**

10  **CUSTOMS, AND/OR DELIBERATELY  INDIFFERENT TRAINING,**
    **DISCIPLINE, and SUPERVISION OF BRIGGS, STEWART, REIMAN and**

11  **PISANI THAT RATIFIED OR WERE THE MOVING FORCE BEHIND THE**

12  **RETALIATING AGAINST PLAINTIFF**
    **FOR EXERCISING HER FEDERAL CONSTITUTIONAL RIGHT OF PETITION**

13  **BY FILING POLICE REPORTS WITH DEFENDANT COUNTY'S SHERIFF**

14  **DEPARTMENT**

15

16  273.   PLAINTIFF hereby re-alleges and incorporates by reference the allegations contained

17  in the preceding paragraphs 1-76, and from Tenth Cause of Action paragraphs 265-272,

18  as though fully set forth herein.

19  274.   Defendant COUNTY is liable to PLAINTIFF under United States Code, Title 42,

20  Section 1983 for any or all of the following:

21  (a) Ratification of the acts of BRIGGS, STEWART, REIMAN and PISANI, through

22

23  REIMAN supervising PISANI in carrying out the request of BRIGGS communicated

24  through STEWART;

25  (b) Deliberately indifferent training, supervision, and discipline of Defendants BRIGGS,

26  PISANI, STEWART, and REIMAN in the state and federal constitutional

27  requirement not to retaliate against persons who file Police Reports/Crime Reports.

28

PLAINTIFF's FIRST AMENDED COMPLAINT 63

(c) Policies or customs so widespread as to be standard operating procedure; lack of policies that should have been in place; or absence of policies, that either allowed, encouraged, or failed to discourage the use of COUNTY mental health services to commit acts of retaliation against the filers of Police Reports/Crime Reports with Defendant COUINTY's Sheriff's Department, that were the moving force behind the acts of deprivation of PLAINTIFF's First Amendment rights committed by Defendants BRIGGS, STEWART, REIMAN and PISANI.

275.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

1. Compensatory damages in an amount according to proof that are fair, just, and reasonable against all Defendants in all Causes of Action.

2. Exemplary damages against individual capacity Defendants PISANI, BRIGGS, STEWART, REIMAN, ROE ONE, and ROE TWO.

3. All other damages, penalties, costs, interest and attorney's fees as allowed under California law and federal Section 1983, including but not limited to Bane Act treble damages; Bane Act attorney's fees; Bane Act exemplary damages; and Section 1983 attorney's fees under Section 1988 of United States Code Title 42.

276.  **JURY TRIAL DEMAND**

Plaintiff hereby demands trial by jury on all claims for relief that are triable by a jury.

**TWELFTH CAUSE OF ACTION: PUBLIC RECORDS ACT PETITION FOR DECLARATORY JUDGMENT and WRIT OF MANDAMUS versus COUNTY OF SACRAMENTO**

277.     Petitioner Ms. Parvin Olfati ("Petitioner" or "Ms. Olfati") petitions this Court for a declaratory judgment and/or alternate writ of mandate ordering Respondents COUNTY OF SACRAMENTO, County Clerk of the Board of Supervisors,

1   County's Sheriff's Department ("County Sheriff"), County Sheriff Scott Jones
2   ("Jones") and Sheriff's Records Officer Stacey Miyasaki to comply with the
3   Public Records Act (Government Code Section 6250 *et seq.*), and/or to issue an
4   order to show cause why such an order should not issue, a peremptory writ of
5   mandate upon return of the alternative writ, and an order awarding attorneys fees
6   and costs. The relief sought by Petitioner is authorized by Government Code
7   Sections 6258 and 6259.
8   278.   Petitioner, Ms. Parvin OLFATI, is a resident of the city and county of
9        Sacramento.
10  279.   Respondent COUNTY OF SACRAMENTO operates a County Sheriff's
11        Department and Clerk of the Board of Supervisors Office. By COUNTY policy or
12        custom announced on the COUNTY website, Public Records Act (PRA) requests
13        to COUNTY departments other than the County Sheriff or District Attorney are
14        handled by the Clerk of the Board of Supervisors Office, whereas PRA requests to
15        the County Sheriff are handled separately by the County Sheriff, which has its'
16        own Disclosure Officer.   Respondent COUNTY is a "local agency" within the
17        meaning of the California Public Records Act, Government. Code Section
18        6252(a).  Respondent has possession, control, and authority over the records and
19        information sought by Petitioner.  Because the COUNTY and its' County Sheriff's
20        Department and Clerk of the Board of Supervisors Office are all located in
21        Sacramento, upon information and belief, all of the records sought by Petitioner
22        are located in Sacramento.
23  280.   Respondent Scott Jones ("Sheriff Jones") is the elected Sheriff of the County
24        of Sacramento and is in charge of the County Sheriff's Department. Sheriff Jones
25        has appointed one or more employees of the County Sheriff's Department to act as
26        Disclosure Officers responsible for responding on behalf of the County Sheriff to
27        requests for records pursuant to the California Public Records Act (Govt. Code
28        §6250 et seq.), including but not limited to Respondent STACEY MIYASAKI,

1    who upon information and belief is the or one of the Disclosure Officers or

2    Records Officers for the County Sheriff.

3    281.    COUNTY's Sheriff's Department on its website and/or other public media

4    invites members of the public such as Petitioner to send PRA requests via

5    electronic mail to Records@SacSheriff.com  or via postal mail to the County

6    Sheriff at 4500 Orange Grove Avenue, Sacramento, California 95841 and/or (prior

7    to such office closure) via personal delivery to 701 "G" Street, Sacramento,

8    California 95814.

9

10   282.    COUNTY's Clerk of the Board of Supervisors Office on its' website and/other

11   public media invites members of the public such as Petitioner to send PRA

12   requests via in-person delivery to the Clerk of the Board of Supervisors Office at

13   Suite 2450, 700 "H" Street (Sacramento, California 95814) and/or via electronic

14   mail through its' website or to electronic mail addresses such as

15   KayR@saccounty.net

16   283.    Pursuant to the Public Records Act (Government Code §6253), on multiple

17   dates in 2020, 2021, and 2022, Petitioner sent via electronic mail and/or postal

18   mail to the addresses  Records@SacSheriff.com  or 4500 Orange Grove Avenue

19   (Sacramento, CA 95841) the following PRA requests attached in composite form

20   hereto as Exhibit Eleven; all of these were sent to the County Sheriff except for the

21   December 15, 2020, January 31, 2022; and March 29, 2022  PRA requests sent to

22   Defendant County's Clerk of the Board of Supervisors Office. The only content

23   missing are the complete photographs on the final page of the three PRA requests

24   headlined "Paragraph 283-(a)", "Paragraph 283-(i)" and "Paragraph 283-(k)",

25   which for formatting reasons did not copy over.

26

27   (a) On December 23, 2020, her PRA request for: **County of Sacramento Sheriff's**
     **Department Documents That Constitute Sheriff's Department Information**

28   **Communicated To County of Sacramento Department of Health Services**

PLAINTIFF's FIRST AMENDED COMPLAINT 66

1  **Division of Behavioral Health Services Senior Mental Health Counselor
2  LMFT Pamela Pisani That Mention, Refer to, or Relate to Parvin Olfati or
3  1859 45th Street;**

4  (b) On December 15, 2020, her request to Defendant County's Clerk of the Board
5  Office [via e mail to KayR@countyofsacramento.org] her PRA request for **County
   of Sacramento Documents That Constitute, Mention, Refer To, And/or Relate To
   December 14, 2020 Pamela Pisani Senior Mental Health Counselor or LMFT
6  Activity At 1859 45th Street And/or Related To Parvin Olfati**

7
8  (c) On December 13, 2020, her PRA request for: **Sheriff's Department Records
   Regarding Any County Sheriff Communications With Ettore's European Bakery
9  and Restaurant (2376 Fair Oaks Boulevard, Sacramento, CA 95825) That
   Mention, Refer To, And/or Relate to Parvin Olfati, Including But Not Limited To
10  Any Communications With Any Cook, Staff Member, or Employee Regarding
   Any Parvin Olfati Order on December 13, 2020;**
11

12                          (d)              On November 10, 2020, her PRA
13  request for: **Sheriff's Department Records Regarding Any County Sheriff Vehicle Activity
   On November 10, 2020 At Bella Bru Café At 5038 Fair Oaks Boulevard in Carmichael,
14  Including But Not Limited To Activity By Sheriff Employees Using The County Sheriff
   Vehicle With The California License Plate Number 1411641 And/or the Identification
15  Number 374B.**
16                          (e)     On November 30, 2020, her PRA request for:
   **Sheriff's Department Records Regarding Any County Sheriff Vehicle Activity On
17  November 30, 2020 At Bella Bru Café At 5038 Fair Oaks Boulevard in Carmichael,
   Including But Not Limited To Activity By Sheriff Employees Using Sheriff Vehicle With
18  The California License Plate Number 1552413**

19
20                          (f)     On December 21, 2020, her PRA request for:
   **Sheriff's Department Records of Purported "Review" Of Over 150 Unanswered Public
21  Records Act Requests from Parvin Olfati**

22                          (g)     On October 14, 2020, her PRA request for:
   **Sheriff's Department CAD Call Print Synopsis or Similar Document For 1859 45th Street,
23  Sacramento, California 95819**

24
25                          (h)     On November 6, 2020, her PRA request for: **Sheriff's
   Department Communications, Payments, And/or Emoluments Regarding Any Activity At
26  Bella Bru Café at 5038 Fair Oaks Boulevard on Any Date Including But Not Limited To
   November 6, 2020, Including But Not Limited To Any Activity Involving An Automobile
27  With The California License Pate "WMGLEN"**

28

PLAINTIFF's FIRST AMENDED COMPLAINT 67

1        (i) On January 21, 2021, her PRA request for:

2 **Sheriff's Department Communications That Mention, Refer To, And/or Relate to Any Stalking, Surveillance, Monitoring, Following or Reporting Regarding Parvin Olfati,**

3 **Including But Not Limited To Any Records Created, Transmitted, Stored And/or Received By The Woman Driver, Owner, or User of The White Chevrolet Sport Utility Vehicle With**

4 **The California License Plate 8LTE039**

5        (j) On February 26, 2021, her PRA request for:

6 **Sheriff's Department Records of Vehicle and/or Deputy Presence On 45th Street, "S" Street, "T" Street, and/or 46th Street At Any Time On December 14, 2020**

7        (k) On March 16, 2021, her PRA request for:

8

9 **Sheriff's Department Documents That Constitute Sheriff's Department Information Communicated To County of Sacramento Department of Health Services Division of Behavioral Health Services Senior Mental Health Counselor LMFT Pamela Pisani That**

10 **Mention, Refer to, or Relate to Parvin Olfati or 1859 45th Street**

11        (l) On September 10, 2021, her PRA request for:

12 **Sheriff's Department Records of Vehicle and/or Deputy Presence In The Area of American River Drive Between 11:00 a.m. and 2:00 p.m. on September 5, 2021**

13

14        (m) On October 8, 2021, her PRA request for:

15 **Sheriff's Department Documents Constituting, Mentioning, Referring To And/or Relating To Contracts, Agreements, And/or Memoranda of Understanding With**

16 **Visionary Integration Professionals In Force or Created, Transmitted, Received And/or Stored On or After January 1, 2003**

17
        (n) On December 16, 2021, her PRA request for:

18 **Sheriff's Department Records of Communications With George Hills Company, Inc.**

19 **Regarding Parvin Olfati Claim Against Sacramento County**

20        (o) On January 31, 2022, her PRA request for:

21 **Sheriff's Department or Division of Behavioral Health Services Records Constituting Department Policies In Force On Any Date On Or After October 1, 2020 Regarding**

22 **Referral Of Persons To The County Mobile Crisis Support Team, Problem Oriented Policing, or County Division of Behavioral Health Services**

23
        (p) On January 31, 2022, her PRA request for:

24 **Sheriff's Department Records Of Any Investigation or Other Activity Related To Any Determination That The November 9, 2020 Parvin Olfati Police Report/Crime**

25 **Report Was "Unfounded" or Was A "Complaint Indicative of Potential Mental Health Distress"**

26

27        (q) On January 31, 2022, her PRA request for:

  **Sheriff's Department Sergeant Ronald Briggs Records Of Electronic Mail, Text**

28 **Messages, CAD, or Other Communications That Mention, Refer to, or Relate to**

PLAINTIFF's FIRST AMENDED COMPLAINT 68

1  Parvin Olfati, Steven Maviglio, Barbara Andres, Or Any Resident, Owner, or User
2  of Any Address In The 1800-1900 Blocks of 45th Street in Sacramento, CA 95819

3                              (r)    On January 31, 2022, her PRA request for
   Sheriff's Department  Records Of Any And All Records of "Process Referrals" to
4  the "Community Support Team" Between January 1, 2020 And The Date Of Your
5  Receipt Of This PRA Request
                              (s)    On January 31, 2022, her PRA request for Sheriff's
6  Department  Sergeant Ronald Briggs Records Of Electronic Mail, Text Messages, CAD, or
   Other Communications That Mention, Refer to, or Relate to Parvin Olfati, Steven Maviglio,
7  Barbara Andres, Or Any Resident, Owner, or User of Any Address In The 1800-1900
8  Blocks of 45th Street in Sacramento, CA 95819

9                              (t)    On January 31, 2022, Sheriff's Department records
   Constituting Department Policies In Force On Any Date On Or After October 1, 2020
10 Regarding Referral Of Persons To The County Mobile Crisis Support Team, Problem
   Oriented Policing, or County Division of Behavioral Health Services
11

12                             (u)    On January 31, 2022, her PRA request for
   Sheriff's Department Records Of Any Investigation or Other Activity Related To
13 Any Determination That The November 9, 2020 Parvin Olfati Police Report/Crime
   Report Was "Unfounded" or Was A "Complaint Indicative of Potential Mental
14 Health Distress"
15
                              (v)    On February 14, 2022, her PRA request for
16 Sheriff's Department Sergeant Ronald Briggs Duty Statement, Assignments, And
   Sheriff's Car Driving Records From January 1, 2019 Through And Including The
17 Date of Your Response To This PRA Request
18

19                             (w)   On March 3, 2022, her PRA request for
   Sheriff's Department Communications To, With, or From The California Highway
20 Patrol That Mention, Refer to, And/or Relate to Parvin Olfati, That Were Created,
   Transmitted, Received And/or Stored Since January 1, 2017
21

22                             (x)    On March 3, 2022, her PRA request for
23 Sheriff's Department Documents That Constitute, Mention, Refer To, And/or Relate
   To Any Informant, Providing of Information,  or Other Activity By Martin Raygoza,
24 Petros Raygoza, Helen Vatthis, or Any Person At 1851 45th Street (Sacramento,
25 California 95819)

26                             (y)    On March 10, 2022, her PRA request for
   Sacramento Sheriff's Department CAD Call Print Synopsis or Other Records of Calls for
27 Service to County Sheriff To 1859 45th Street, Sacramento, California 95819 For 2020
   Period Between August 1 and August 31
28

1

2          (z)   On March 24, 2022, her PRA request for
3   **Sheriff's Department Records Created, Transmitted, Received And/or Stored On Or After**
**March 1, 2022 That Constitute, Mention, Refer To And/or Relate To Any Suspicious**
4   **Activity Report or Other Communication About Parvin Olfati Or 1859 45th Street Received**
**From Any Person or Entity**

5
          (aa)   On January 31, 2022, her PRA request for **County of**
6   **Sacramento Sheriff's Department or County Behavioral Health Records Of Any And All Records of "Process**
**Referrals" to the "Community Support Team" Between January 1, 2020 And The Date Of Your Receipt Of**
7   **This PRA Request**

8          (bb)   On March 25, 2022, her PRA request for **County of**
9   **Sacramento Division of Behavioral Health Services Documents That Constitute, Mention,**
**or Refer To All "Drop By" or "Cold Knock Contacts" by Senior Mental Health Counselors**
10  **or Community Support Team Members Between January 1, 2020 And The Date Of Your**
**Response To This PRA Request**

11

12  284.   Petitioner's requests reasonably described these records and were made in

13         accordance with all statutory requirements for obtaining access to or copies of

14         public records.

15  285.   Petitioner was at all times herein mentioned ready to tender any fees to cover

16         Respondents costs in providing access to or copies of the aforementioned records.

17  286.   Pursuant to the PRA, Government. Code Section 6253, Respondent was

18         obligated to make these records "promptly available" to Petitioner and, in any

19         event, to respond to PETITIONER within no more than ten days from its receipt of

20         the request. Therefore, Respondent's responses to these PRA requests from

21         Petitioner have been overdue since January 4, 2021 and April 4, 2022.   Petitioner

22         has not received any written response or records from Respondent on any date in

23         this period or on any 2022 date in April preceding the filing of this First Amended

24         Complaint.

25

26  287.   Respondents' refusal to respond in writing to Petitioner's PRA requests or to

27         produce responsive records is in violation of their statutory duties under

28         Government Code Section 6253.

288.	Petitioner has already sustained and will continue to sustain irreparable damage and injury in that she is being denied prompt access to records created, transmitted, received or stored by Respondent about activities of Respondent that affect Petitioner's life and that Petitioner believes disclose Respondent activities on behalf of COUNTY targeted at Petitioner, including but not limited to records regarding Petitioner's claims in this action.

289.	An actual controversy exists between Petitioner and Respondents because the latter have refused to comply with Petitioner's request for records and failed to respond within the statutory deadline.  Accordingly, pursuant to Government Code section 6258, Petitioner is entitled to an order declaring that the records sought must be disclosed promptly.

290.	Petitioner is also entitled to institute proceedings for a writ of mandate to enforce her right and to have these proceedings resolved on an expedited basis consistent "with the object of securing a decision as to these matters at the earliest possible time." (Government Code  Section 6258).

291.	In seeking this relief, Petitioner has incurred reasonable attorneys' fees and costs in an amount to be established by proof at the hearing of this matter.

WHEREFORE, PETITIONER prays for judgment on this Count as follows:

1.	For an order requiring Respondents COUNTY, County Sheriff's Department, County Sheriff, County Sheriff Disclosure Officer, to comply immediately with Petitioner's PRA request;

2.	For an alternative writ of mandate directing Respondents COUNTY, County Sheriff's Department, County Sheriff, and County Sheriff Disclosure Officer to disclose the public records requested by Petitioner or to show cause why respondent agency should not do so;

3.	If applicable, on return of the alternative writ and hearing on the order to show cause, that this Court issue a peremptory writ of mandate directing Respondents COUNTY, County Sheriff's Department, County Sheriff, and County Sheriff Disclosure Officer to disclose the public records requested by Petitioner;

4.	For an order requiring Respondent COUNTY and its' Clerk of the Board of Supervisors Office to comply immediately with Petitioner's PRA December 15, 2020 request reprinted in Exhibit Twelve and referenced in paragraph 283-(b) herein;

1     5.    For an alternative writ of mandate directing Respondent COUNTY and its' Clerk of the Board of Supervisors Office to disclose the public records requested by

2   Petitioner in her December 15, 2020 PRA request or to show cause why respondent agency should not do so;

3

4     6.    If applicable, on return of the alternative writ and hearing on the order to show cause, that this Court issue a peremptory writ of mandate directing Respondents COUNTY and COUNTY's Clerk of the Board of Supervisors Office to disclose the

5   public records requested by Petitioner;

6

7     7.    For costs of suit herein incurred and for reasonable litigation expenses and attorney's fees, in addition to any other relief granted or other costs awarded pursuant

8   to Government Code section 6259.7;

9     8.    For such other and further relief as the court may deem proper.

10

11   DATED: April 6, 2022

12   /s/ Steven Mark Kamp, Attorney for Plaintiff and PRA Petitioner Ms. Parvin Olfati

13   California State Bar Number 116817

14   Steven Kamp Law Office, 22 Petrilli Circle, Sacramento, California 95822; Electronic mail

15   address: steve.kamp@comcast.net ;  Telephone: (916) 501-1791 (cellular, voice/text)

16
17   **EXHIBITS 1-10 and EXHIBITS ELEVEN AND TWELVE FOLLOW ON THIS AND SUCCEEDING PAGES**

18

19   **EXHIBITS**

20

21

22

23

24

25

26

27   Exhibits 1 and 2: Defendant Pisani on Plaintiff's front porch

28

PLAINTIFF's FIRST AMENDED COMPLAINT 72

1
2
3
4
5
6



7   Exhibit 3: Defendant Pisani trespassing Plaintiff's driveway

8
9
10
11
12

   

13
14
15   Exhibits 4-5-6: Defendant Roe One: (4) Stalking Plaintiff at Bella Bru Café;

16   (5) and (6) Stalking Plaintiff at Tuesday Morning;

17   Exhibit 7: Automobile Used By Defendant Roe One.

18
19
20
21
22     

23
24
25   Exhibits (8) (9) and (10): Defendant Roe Two Stalking Plaintiff at Bella Bru Café

26
27
28

PLAINTIFF's FIRST AMENDED COMPLAINT 73

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**EXHIBIT ELEVEN: PETITIONER'S PUBLIC RECORDS ACT REQUESTS NOT
ANSWERED BY RESPONDENT COUNTY OF SACRAMENTO**

**Paragraph 283-(a):**

Parvin Olfati 1859 45th Street Sacramento, CA. 95819

December 23, 2020

Via email to Records@SacSheriff.com
SRO I Stacey Miyazaki, PSD Legal Affairs, Disclosure Officer, County of Sacramento Sheriff's Department, 4500
Orange Grove Avenue, Sacramento, CA 95841-4205

**RE: Public Records Act Request For County of Sacramento Sheriff's Department Documents That Constitute
Sheriff's Department Information Communicated To County of Sacramento Department of Health Services
Division of Behavioral Health Services Senior Mental Health Counselor LMFT Pamela Pisani That Mention,
Refer to, or Relate to Parvin Olfati or 1859 45th Street**

Dear Ms. Miuyasaki:

Please respond and provide any and all requested records via postal mail to my address above. Please use e mail
transmission only as a supplement to any postal mailed response. The only reason I am sending this Public Records
Act (PRA) request via e mail is that the County Sheriff office is no longer available for in-person delivery.

This is a simple PRA request for records that clearly exist -- because County Senior Mental Heath Counselor Pamela
Pisani on behalf of the County made an unannounced visit to my house and said she was doing so based on
information communicated to her or her department or division by the County Sheriff. Either the requested records
exist, or County employee Pam Pisani was lying while conducting County business.

On Monday, December 14, 2020, at about 4:36 p.m., the front door of my 1859 45th Street (Sacramento, California
95819) house was knocked upon by a woman who asked me "is this Parvin?" I opened the door, and took her
business card identifying her as "Pamela Pisani, LMFT Senior Mental Health Counselor" from the "Community
Support Team" of the County of Sacramento Department of Health Services Division of Behavioral Health Services.
I then heard Ms. Pisani say she had received an "anonymous call" and complaint about me. I told her to wait, closed
the door, and got my cellphone. I then opened the door. In response to my question "who are you again", she
identified herself as "Pam". I said "Pam Community Support Team". She said "right." <u>She never confirmed that I
was Parvin Olfati.</u> I then said "and you don't know who called you". Ms. Pisani then said "I think it was maybe the
Sheriff's Department", and then used the word "complaint." I then said "so the Sheriff's Department called you?"
and Ms. Pisani said: "They didn't call me. They let us know that maybe there were some concerns…they're out of
the Sheriff's Department jurisdiction…"

I then said "so the Sheriff's Department had something to do with this" and Ms. Pisani said: "they forwarded some
information." In response to my question as to "exactly" what "information" had been "forwarded", Ms. Pisani said
"they forwarded some information stating…" but "I don't know exactly" what the information was. I then asked:
"So how can you go to somebody's door when you don't have any idea what you're doing there?"

Ms. Pisani did not answer my question, but instead frantically and immediately wheeled to her scripted narrative
about "resources." She did not answer my questions about her "resources" or the function of the "Behavioral
Services" "department" (actually a division) that she said she worked for. <u>She never used the word County even
though she was here on purported County business. Instead she used the word "community" but never said who the
"community" was. I concluded by telling her that her "behavior" was suspect because her behavior as displayed to
me consisted of knocking unannounced on people's doors based on anonymous "b---s---."</u>

I told her to leave, but she refused to leave. Instead she yelled at me from my driveway, and she stalked me as I
walked out toward the end of my driveway toward the back yard to check some of the toxic and feces and toxic liquid
that had been placed immediately outside my bedroom window. <u>In other words, she trespassed my property by
refusing to leave after being ordered by me to leave.</u> She drove a white SUV vehicle with the California license plate
7WID019. This appeared to be her personal vehicle and/or vehicle given to her to use in her visit to my house and not
a County vehicle. **Displayed at the end of this PRA request letter are photographs of Ms. Pisani's behavior. I
took these pictures with my cellphone on December 14, 2020 starting at 4:36 p.m.**

PLAINTIFF's FIRST AMENDED COMPLAINT 75

1

2  Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I
   hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all
3  electronic messages, text messages, reports, notes, log entries, computer entries, CAD, memoranda, documents,
   records and/or writings that created on any County Sheriff sheriff, deputy, department, division, Impact Division,
4  Homeless Outreach Team, officer, chief, employee, agent or representative (County Sheriff)  computer or other
   medium created, transmitted, received and/or stored that constitute, mention, refer to and/or relate to any information
5  communicated on any date since January 1, 2020, to any employee, agent, or representative of the County of
   Sacramento Department of Health Services,  Division of  Behavioral Health Services, or any Community Support
6  Team, or to Pamela Pisani, that mention, refer to, or relate to Parvin Olfati and/or 1859 45th Street (Sacramento,
   California 95819).

7  If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
   please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
8  policies.  As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt
   of this request, and either produce the requested documents, or commit in writing to a production date that is within
9  the reasonable time period required by the PRA.

10 I look forward to your prompt and complete response. Thank you.

11 Sincerely,

12 Parvin Olfati

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 76

1

**Paragraph 283-(b):**

2

3

**Parvin Olfati 1859 45th Street Sacramento, CA. 95819**

December 15, 2020

Via email to KayR@saccounty.net

4

Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA 95814

5

6

**RE: Public Records Act Request For County of Sacramento Documents That Constitute, Mention, Refer To, And/or Relate To December 14, 2020 Pamela Pisani Senior Mental Health Counselor or LMFT Activity At 1859 45th Street And/or Related To Parvin Olfati**

7

Dear Sir or Madam:

Please respond and provide any and all requested records via postal mail to my address above. Please use e mail transmission only as a supplement to any postal mailed response. The only reason I am sending this Public Records Act (PRA) request via e mail is that the Clerk of the Board Office is no longer available for in-person delivery.

8

9

In the morning and early afternoon hours on Monday December 14, 2020, there were two suspicious cars and female visitors to Barbara Andres at 1870 45th street. One of the suspicious vehicles was a white SUV with a California license plate number of  8MUL994. I saw the driver of this vehicle later walking on 45th Street with Barbara Andres. I saw this person along with 1901 45th Street resident Mr. Steven Mavilgio trying to provoke me while Mr. Maviglio was waiting to start his spin doctor production of videotaping me to be used to abuse the government, law enforcement, and intelligence agencies against me. These cars have been at 1870 45th Street multiple times, and each time their visits were followed by extreme and violent criminal acts against me.

10

11

12

Later, as my friend was leaving 1859 45th Street and as I was walking up the front yard stairs toward my front door, I noticed Barbara Andres and the one of the female visitors were walking on the sidewalk toward my house, and I also heard Barbara Andres screaming and yelling some incoherent words against me and to me. I told her "I do not talk to felons",  and with that I kept on walking toward my front door. But she did not stop. At the same time, I noticed Mr. Maviglio jumping out of his house with his video/phone and starting his spin doctors style videotaping of me. I was sure this was another set up that starts with Barbara Andres acting as a gangstalker who has gone wild, is out of control, and has been released loose on the street to provoke me, with Mr. Maviglio in the operation to manufacture another piece of fraudulent "evidence" for his spin doctor production.  I also was sure that they were trying to manufacture more fraudulent documents to use against me by government and law enforcement agencies.  Therefore, I ignored Barbara Andres, Mr. Maviglio, and her visitor; I went inside and closed the door. However, I noticed Barbara Andres was still yelling at my friend, so I went out. As my friend was getting in his car, I asked him to hurry up and leave because Mr. Maviglio is working on manufacturing another one of his spin doctor fraudulent evidence fabrications.  So, my friend left.  I was very sick from the around the clock release of toxic gas and other chemicals as well as the exhaust gas of the 1871 45th Street resident Sean Majkovica's white junk truck that has been brought to 1871 to facilitate more physical assaults against me and my animals. Mr. Majokivica has doubled down on  this violent and intentional crime against me after I filed a City of Sacramento Police Department Police Report  against him and his intentional exposing me to this dangerous toxic gas and still is going on.

13

14

15

16

17

18

19

20

After a very torturous morning and midday -- featuring Barbara Andres acting as gangstalker and psychopath on the loose -- there was coming a much bigger abuse of power against me.  Obviously, this whole spin doctor production by Mr. Maviglio and his partner in perjury Barb Andres was to abuse the government agency power and authority against me.  Some of the details are as follows:

21

22

On Monday, December 14, 2020, at about 4:36 p.m., the front door of my 1859 45th Street house was knocked upon by a woman who asked me "is this Parvin?" I opened the door, and took her business card identifying her as "Pamela Pisani, LMFT Senior Mental Health Counselor" from the "Community Support Team" of the County of Sacramento Department of Health Services Division of Behavioral Health Services.  I then heard Ms. Pisani say she had received an "anonymous call" and complaint  about me. I told her to wait, closed the door, and got my cellphone. I then opened the door. In response to my question "who are you again", she identified herself as "Pam". I said "Pam Community Support Team". She said "right." She never confirmed that I was Parvin Olfati.

23

24

25

26

I then said "and you don't know who called you". Ms. Pisani then said "I think it was maybe the Sheriff's Department", and then used the word "complaint." I then said "so the Sheriff's Department called you?" and Ms. Pisani said: "They didn't call me. They let us know that maybe there were some concerns…they're out of the Sheriff's Department jurisdiction…"

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 77

1  I then said "so the Sheriff's Department had something to do with this" and Ms. Pisani said: "they forwarded some
   information." In response to my question as to "exactly" what "information" had been "forwarded", Ms. Pisani said
2  "they forwarded some information stating…" but "I don't know exactly" what the information was. I then asked:
   "So how can you go to somebody's door when you don't have any idea what you're doing there?"
3  Ms. Pisani did not answer my question, but instead frantically and immediately wheeled to her scripted narrative
   about "resources." She did not answer my questions about her "resources" or the function of the "Behavioral
4  Services" "department" (actually a division) that she said she worked for. She never used the word County even
   though she was here on purported County business. Instead she used the word "community" but never said who the
5  "community" was. I concluded by telling her that her "behavior" was suspect because her behavior as displayed to
   me consisted of knocking unannounced on people's doors based on anonymous "b---s---."
6  I told her to leave, but she refused to leave. Instead she yelled at me from my driveway, and she stalked me as I
   walked out toward the end of my driveway toward the back yard to check some of the toxic and feces and toxic liquid
7  that had been placed immediately outside my bedroom window. In other words, she trespassed my property by
   refusing to leave after being ordered by me to leave. She drove a white SUV vehicle with the California license plate
8  7WID019. This appeared to be her personal vehicle and/or vehicle given to her to use in her visit to my house and not
   a County vehicle.
9  **Displayed at the end of this PRA request letter are photographs of Ms. Pisani's behavior. I took these pictures
   with my cellphone on December 14, 2020 starting at 4:36 p.m.**
10 Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I
   hereby request that the County of Sacramento (County) produce to me any and all electronic messages, text
11 messages, emoluments, payments, reports, notes, log entries, computer entries, CAD, memoranda, documents,
   records and/or writings that created on any County county, County, Pamela Pisani, Senior Mental Health Counselor,
12 Department of Health Services, Division of Behavioral Health Services, Community Support Team, Howard
   Schmidt, Chief of Staff, Susan Peters, Supervisor, Board of Supervisors, department, division, officer, chief,
13 employee, agent or representative (County) computer or other medium created, transmitted, received and/or stored
   since January 1, 2015 that constitute, mention, refer to and/or relate to any communications, payments, emoluments,
14 informant activity, providing of information, or other activity by Senior Mental Health Counselor LMFT Pamela
   Pisani at 1859 45ᵗʰ Street on December 14, 2020 and/or that relate to, refer to, or mention Parvin Olfati or 1859 45ᵗʰ
15 Street (Sacramento, California 95819).
   The requested records include, but are not limited to the following:
16     1. The duty statement of Senior Mental Health Counselor LMFT Pamela Pisani in effect on December 14, 2020.
       2. The credentials of Pamela Pisani used by the County to authorize Pamela Pisani to act as a Senior Mental
17        Health Counselor.
       3. The definition of "LMFT."
18     4. Any and all file numbers or case numbers assigned to or that contain the name "Olfati" and/or the address
          "1859 45ᵗʰ Street."
19     5. Any communications or "information" from the County of Sacramento Sheriff's Department received by the
20        Division of Behavioral Health Services or Pamela Pisani that mentions, refers to, or relates to Parvin Olfati
          and/or 1859 45ᵗʰ Street.
21     6. Any information communicated to Pamela Pisani from any source that mentions, refers to, or relates to Parvin
          Olfati and/or 1859 45ᵗʰ Street
22     7. Any report made by Pamela Pisani regarding any activity in December 14, 2020 at 1859 45ᵗʰ Street or that
          relates to Parvin Olfati.
23     8. Any recordings made by Pamela Pisani of any activity at 1859 45th Street on December 14, 2020 and/or that
24        include any image or audio of any person believed by Pamela Pisani to be Parvin Olfati, or any person
          spoken to by Pamela Pisani at 1859 45ᵗʰ Street.
25     9. The names, job titles, and contact information for each and every person or entity included in the word "they"
          as such word was used by Pamela Pisani at 1859 45ᵗʰ Street on December 14, 2020.
26    10. The names, job titles, and contact information for each and every person or entity included in the word "us"
          as such word was used by Pamela Pisani at 1859 45ᵗʰ Street on December 14, 2020.
27    11.  The dispatch or other communication directing Pamela Pisani to come to 1859 45ᵗʰ Street and/or to contact
          Parvin Olfati at any time on December 14, 2020.
28

PLAINTIFF's FIRST AMENDED COMPLAINT 78

12. Any communications to, from, with, or about any County of Sacramento Sheriff's Department deputy sheriffs, employees, agents or representatives regarding any Pamela Pisani activity relating to Parvin Olfati or at 1859 45th Street on December 14, 2020.

13. Any communications to, from, with, or about any City of Sacramento Police Department officers regarding any Pamela Pisani activity relating to Parvin Olfati or at 1859 45th Street on December 14, 2020.

14. Any communications to, from, with, and/or about any resident of 45th Street in Sacramento, California 95819, including but not limited to Steven Maviglio (1901 45th Street), Barb Andres (1870 45th Street), Cecil Taylor (1870 45th Street). John Lisuk and his wife Mieke Smythe and /or Lisuk (1850 45th Street); June Lamoureaux and Bill Kellerhals (1856 45th Street); Martin Raygoza, his wife Helen and their son Petros Raygoza (1851 45th Street).

15. Any communications to, from, with, and/or about Kathryn Sweeney and/or Ben Wheeler (4501 "T" Street)

16. Any communications to, from, with and/or about any current or former tenant or resident of 1871 45th Street, including but not limited to: Melissa Grigsby, Michele Frayne, Sean Majkovica, Marko Majkovica, Adriana Sanchez, Kara Mullin, and/or Kristen Mullin.

17. Any communications to, from, with and/or about 1871 45th Street owner Camille Remy Obad or John Obad.

18. Any communications to, from, with and/or about the County of Sacramento Sheriff's Department that mention or refer to any Parvin Olfati PRA request, including but not limited to any Parvin Olfati PRA request regarding any County Sheriff Mental Health Unit.

19. The County Department of Health Services Division of Behavioral Health Services policies, procedures, rules, regulations, guidelines and/or protocols in effect on December 14, 2020 that govern any Pamela Pisani, Senior Mental Health Counselor, or LMFT activity at 1859 45th Street or with respect to Parvin Olfati, including but not limited to:

    (a)  The making of unannounced in-person visits

    (b)  Obtaining confirmation of identity from the person spoken to by the mental health counselor.

    (c)  Verification of information communicated to the mental health counselor regarding the person the mental health counselor is directed to visit.

    (d)  Remaining on property after being directed to leave.

    (e)  Use of the word "community" rather than "County" to identify the mental health counselor.

    (f)  Presentation of any County employee identification badge or credentials other than a business card.

As used herein, the term "emoluments" includes but is not limited to any job, contract, promise of any job, or promise of any contract.

The records requested include but are not limited to any records of any placement of Parvin Olfati and/or 1859 45th Street under any "intelligence", surveillance, monitoring, or other similar activity by any law enforcement agency. If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable, please provide the records of such destruction, transfer, or unavailability, together with applicable record retention policies. As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this request, and either produce the requested documents, or commit in writing to a production date that is within the reasonable time period required by the PRA.

Please note that all but one of my PRA requests to the County Sheriff have gone unanswered in clear violation of the PRA. Please also note that the unannounced unauthorized attempted ambush of me by Ms. Pisani based on anonymous fabricated "information" brought back frightening memories of the May 9, 2020 false arrest and great bodily injury of me in my own front door by City of Sacramento Police Department Officer Jared Robinet, one of the two officers who fired the bullets that killed Stephon Clark. This false arrest was capped with one and only one charge: a standalone Penal Code Section 148(a)(1) "resisting arrest" charge that the Sacramento County District Attorney dismissed on its own motion – for "Insufficient Evidence." Insufficient Evidence for a real criminal charge, but enough "evidence" to allow me to be stalked on my own driveway by a killer, who caused me great bodily injury and put on a false arrest show for Mr. Maviglio and his gangstalkers, who I reasonably believe are now working with the so-called Behavioral Services Division of the County.

I look forward to a prompt, honest, and complete response within ten (10) calendar days. Thank you.

PLAINTIFF's FIRST AMENDED COMPLAINT 79

1  Sincerely,
   Parvin Olfati
2              **Parvin Olfati 1859 45ᵗʰ Street Sacramento, CA. 95819**
                                                                    January 25,
3                                    2021
   Via email to KayR@saccounty.net
4  Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA
   95814
5
   **RE: RENEWED Public Records Act Request For County of Sacramento Documents That Constitute,**
6  **Mention, Refer To, And/or Relate To December 14, 2020 Pamela Pisani Senior Mental Health Counselor or**
   **LMFT Activity At 1859 45ᵗʰ Street And/or Related To Parvin Olfati**
7  Dear Sir or Madam:
   On December 15, 2020, I cased to be e mailed to the County of Sacramento Disclosure Officer the Public Records
8  Act (PRA) request reprinted below. This PRA request specifically requested documents that all relate to the
   December 14, 2020 unannounced visit to my home (really an attempted ambush) by County Department of Health
9  Services Division of Behavioral Health Services Community Support Team Senior Mental Health Counselor LMFT
   Pamela Pisani. The requested documents include, but are not limited to, Ms. Pisani's duty statement; the
10 "information" or "complaint" she said she "thinks" she received from or was communicated from the County
   Sheriff's Department or any other source; and any rules, regulations, protocols, guidelines or policies that govern
11 unannounced unrequested home visits such as the one imposed on me by Ms. Pisani on December 14, 2020.  In
   addition, as used in Request Item Number 8 below, the term "recordings" includes but is not limited to any use of any
12 body worn camera, wiretap, earpiece, audio recording device, and/or video recording device. Ass of the January 23,
   2021 mail delivery, I have not received any documents. As you know, my PRA request in its' first paragraph
13 requested hard copy documents via postal mail. Therefore, please immediately respond and provide any and all
   requested records in the December 15, 2020 PRA request reprinted below via postal mail to my address above. Please
14 use e mail transmission only as a supplement to any postal mailed response. The only reason I am sending this Public
   Records Act (PRA) request via e mail is that the Clerk of the Board Office is no longer available for in-person
15 delivery.
   Thank you.
16 Sincerely,
   Ms. Parvin Olfati
17             **Parvin Olfati 1859 45ᵗʰ Street Sacramento, CA. 95819**
                                                                    March 16, 2021
18 Via email to KayR@saccounty.net
   Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA
19 95814

20 **RE: RENEWED AGAIN AND ADDITIONAL REQUEST FOR RECORDS -- Public Records Act Request**
   **For County of Sacramento Documents That Constitute, Mention, Refer To, And/or Relate To December 14,**
21 **2020 Pamela Pisani Senior Mental Health Counselor or LMFT Activity At 1859 45ᵗʰ Street And/or Related To**
   **Parvin Olfati, Including But Not Limited To Communications With The City of Sacramento Police**
22 **Department Impact Team and/or City of Sacramento Police Department Mental Health Unit**
   Dear Sir or Madam:
23 On December 15, 2020, I caused to be e mailed to the County of Sacramento Disclosure Officer the Public Records
   Act (PRA) request reprinted below. This PRA request specifically requested documents that all relate to the
24 December 14, 2020 unannounced visit to my home (really an attempted ambush) by County Department of Health
   Services Division of Behavioral Health Services Community Support Team Senior Mental Health Counselor LMFT
25 Pamela Pisani. The requested documents include, but are not limited to, Ms. Pisani's duty statement; the
   "information" or "complaint" she said she "thinks" she received from or was communicated from the County
26 Sheriff's Department or any other source; and any rules, regulations, protocols, guidelines or policies that govern
   unannounced unrequested home visits such as the one imposed on me by Ms. Pisani on December 14, 2020.  In
27 addition, as used in Request Item Number 8 below, the term "recordings" includes but is not limited to any use of any
   body worn camera, wiretap, earpiece, audio recording device, and/or video recording device. As of the February 25,
28 2021 mail delivery, I had not received any documents, so I sent a renewed PRA request on February 26, 2021, the

PLAINTIFF's FIRST AMENDED COMPLAINT 80

response to which was due on March 8, 2021. As of the March 15, 2021 mail delivery, I have not received any response, nor have I received any documents.

As you know, my PRA request in its' first paragraph requested hard copy documents via postal mail. Therefore, please immediately respond and provide any and all requested records <u>in the December 15, 2020 PRA request reprinted below</u> **AND IN THIS REQUEST** via postal mail to my address above. Please use e mail transmission only as a supplement to any postal mailed response. The only reason I am sending this Public Records Act (PRA) request via e mail is that the Clerk of the Board Office is no longer available for in-person delivery.

**In addition to the records requested in the PRA request reprinted below that you have ignored, please ALSO provide the following records:**

A. Any and all electronic messages, text messages, emoluments, payments, reports, notes, log entries, computer entries, CAD, memoranda, documents, records and/or writings that created on any County county, Pamela Pisani, Senior Mental Health Counselor, Department of Health Services, Division of Behavioral Health Services, Community Support Team, Howard Schmidt, Chief of Staff, Susan Peters, Supervisor, Board of Supervisors, department, division, officer, chief, employee, agent or representative (County) computer or other medium created, transmitted, received and/or stored since January 1, 2015 that constitute, mention, refer to and/or relate to any communications, payments, emoluments, informant activity, providing of information, or other activity to, from, with and/or about:

**1. The City of Sacramento Police Department Mental Health Unit.**

**2. The City of Sacramento Police Department Impact Team.**

**3. Any officer, employee, agent, or representative of the City of Sacramento Police Department, the City of Sacramento Police Department Mental Health Unit, or the City of Sacramento Police Department Impact Team.**

Thank you.
Sincerely,
Ms. Parvin Olfati

PLAINTIFF's FIRST AMENDED COMPLAINT 81

1

**Paragraph 283-(c):**

2

PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819

December 15,

3

2020

Via email to Records@SacSheriff.com

4

Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

5

**RE:   Public Records Act Request – County of Sacramento Sheriff's Department Records Regarding Any**

6

**County Sheriff Comunications With Ettore's European Bakery and Restaurant (2376 Fair Oaks Boulevard, Sacramento, CA 95825) That Mention, Refer To, And/or Relate to Parvin Olfati, Including But Not Limited**

7

**To Any Communications With Any Cook, Staff Member, or Employee Regarding Any Parvin Olfati Order on December 13, 2020**

8

Dear Sir or Madam:

9

10

Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought." This records request includes not only documents on County of Sacramento Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative (County Sheriff) computers or other media, but also documents on Teale Data Center or other backup computers, media or facilities. Therefore, please produce to me true and correct copies of any documents, records and/or writings created, transmitted, received, and/or stored between December 1, 2020 and the date of your response to this PRA request that constitute, mention, refer to and/or relate to:

11

12

13

14

15

1. County Sheriff communications to, from, with, and/or about Ettore's European Bakery & Restaurant (2376 Fair Oaks Boulevard, Sacramento, CA 95825, "Ettore's") and/or any Ettore's owners, managers, staff, cooks, waiters, waitresses, employees, cashiers, or visitors, including but not limited to any communications that mention, refer to, and/or relate to Parvin Olfati, Patty Olfati, Patti Olfati, and/or Olfati.   .

16

17

2. Any and all reports made by any County Police officers or employees that mention, refer to, and/or relate to any person observed at Ettore's on 2376 Fair Oaks Boulevard in Sacramento, including but not limited to Parvin Olfati, Patty Olfati, Patti Olfati, and/or Olfati.

18

3. Any sending of any County Shertiff officer, undercover, plainclothes, or employees to stalk, observe, watch, or monitor Parvin Olfati, Patty Olfati, Patti Olfati and/or Olfati at Ettore's (2376 Fair Oaks Boulevard, Sacramento, CA 95825).

19

20

4. Any communications regarding any food ordered by Parvin Olfati on the morning of Sunday, December 13, 2020.

21

22

In addition, please produce any and all documents, records, and/or writings reflecting any destruction, alteration, removal, or other unavailability of any of the records requested in this request, together with applicable record retention policies.

23

24

As required by Government Code Section 6253(c), please respond within ten (10) calendar days  of your receipt of this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section 6258 if this request is not granted.

25

26

27

Very truly yours,

28

Ms. Parvin Olfati

PLAINTIFF's FIRST AMENDED COMPLAINT 82

**Paragraph 283-(d):**

PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819

November 10, 2020

Via e mail to Records@SacSheriff.com

Disclosure Officer, County of Sacramento Sheriff's Department, 701 "G" Street, Sacramento, CA 95814

RE:   Public Records Act Request – County of Sacramento Sheriff's Department Records Regarding Any County Sheriff Vehicle Activity On November 10, 2020 At Bella Bru Café At 5038 Fair Oaks Boulevard in Carmichael, Including But Not Limited To Activity By Sheriff Employees Using The County Sheriff Vehicle With The California License Plate Number 1411641 And/or the Identification Number 374B.

Dear Sir or Madam:

Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought." This records request includes not only documents on County of Sacramento Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative (County Sheriff) computers or other media, but also documents on Teale Data Center or other backup computers, media or facilities. Therefore, please produce to me true and correct copies of any documents, records and/or writings created, transmitted, received, and/or stored between January 1, 2020 and the date of your response to this PRA request that constitute, mention, refer to and/or relate to:

1. Any activity by any County Sheriff deputies or employees using the County Sheriff vehicle with the California license plate number 1411641 and/or the Identification Number 374B on  November 10,.2020  at any time between 6:00 a.m,. and 9:00 a.m,. at the Bella Bru Café at 5038 Fair Oaks Boulevard  in Carmichael.

2. The names, badge numbers, job titles, and duty statements of the County Sheriff deputies or employees driving or using the County Sheriff vehicle with the California license plate number 1411641 and/or the Identification Number 374B on November 10, 2020 when the vehicle was at the Bella Bru Café at 5038 Fair Oaks Boulevard in Carmichael.

3. The communications, dispatches, notes, CAD, memoranda or notes that relate to mention, or refer to any County Sheriff activity on November 10, 2020 at any location on Fair Oaks Boulevard between 6:00 a.m. and 9:00 a.m., including but not limited to any communications, dispatches, notes, CAD, memoranda or notes by any deputy or employee at or near the Bella Bru Café at 5038 Fair Oaks Boulevard in Carmichael, including but not limited to any County Sheriff deputies or employees using the County Sheriff vehicle with the California license plate number 1411641 and/or the Identification Number 374B.

4. Any and all reports made by any deputies or employees in any County Sheriff vehicle regarding any November 10, 2020 activity at or near the Bella Bru Café on 5038 Fair Oaks Boulevard in Carmichael,. but not limited to any County Sheriff deputies or employees using the County Sheriff vehicle with the California licens number 1411641 and/or the Ientification Number 374B.

5. Any communications to, from, with and/or about any resident or residents of any address on 45th Street or 46th Street, including but not limited to Steven Maviglio (1901 45th Street); June Lamoureaux and/or Bill Kellerhals (1856 45th Street);  Barb Andres and/or Cecil Taylor (1870 45th Street); Petros Raygoza,. Martin Rayfoza, and/or Helen Vatthis (1851 45th Street); Charles Schock and his wife Pam Schock, and all the residents  of 1900 45th street and/or Sharon Simms (1856 46th Street), or any person visiting Sharon Simms.

6. In addition, please produce any and all documents, records, and/or writings reflecting any destruction, alteration, removal, or other unavailability of any of the records requested in this request, together with applicable record retention policies.

PLAINTIFF's FIRST AMENDED COMPLAINT 83

1

2   As required by Government Code Section 6253(c), please respond within ten (10) calendar days  of your receipt of
this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days
3   of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period
of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section
6258 if this request is not granted.

4   Very truly yours,

5   Ms. Parvin Olfati

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 84

**Paragraph 283-(e):**

PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819

November 30, 2020

Via e mail to Records@SacSheriff.com

Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

RE:   **Public Records Act Request – County of Sacramento Sheriff's Department Records Regarding Any County Sheriff Vehicle Activity On November 30, 2020 At Bella Bru Café At 5038 Fair Oaks Boulevard in Carmichael, Including But Not Limited To Activity By Sheriff Employees Using Sheriff Vehicle With The California License Plate Number 1552413**

Dear Sir or Madam:

When I arrived at the Bella Bru Café on 5038 Fair Oaks Boulevard in Carmichael on November 30, 2020 at approximately 8:42 a.m., waiting for me were not one, but **two** County of Sacramento Sheriff's Department (County Sheriff) vehicles. One of these vehicles displayed the California license plate number 1552413. I was unable to get the license plate number of the other County Sheriff vehicle.

Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought." This records request includes not only documents on County of Sacramento Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative (County Sheriff) computers or other media, but also documents on Teale Data Center or other backup computers, media or facilities. Therefore, please produce to me true and correct copies of any documents, records and/or writings created, transmitted, received, and/or stored between January 1, 2020 and the date of your response to this PRA request that constitute, mention, refer to and/or relate to:

1. Any activity by any County Sheriff deputies or employees using the County Sheriff vehicle with the California license plate number 1552413 on November 30, 2020 at any time between 6:00 a.m,. and 9:00 a.m,. at the Bella Bru Café at 5038 Fair Oaks Boulevard in Carmichael, including but not limited to 8:42 a.m..

2. The names, badge numbers, job titles, and duty statements of the County Sheriff deputies or employees driving or using the County Sheriff vehicle with the California license plate number 1552413 on November 30, 2020 when the vehicle was at the Bella Bru Café at 5038 Fair Oaks Boulevard in Carmichael.

3. Any activity by any County Sheriff deputies or employees using any County Sheriff vehicle with a California license plate number other than 1552413 on November 30, 2020 at any time between 6:00 a.m,. and 9:00 a.m,. at the Bella Bru Café at 5038 Fair Oaks Boulevard in Carmichael, including but not limited to 8:42 a.m..

4. The names, badge numbers, job titles, and duty statements of the County Sheriff deputies or employees driving or using the County Sheriff vehicle with the California license plate number other than 1552413 on November 30, 2020 when the vehicle was at the Bella Bru Café at 5038 Fair Oaks Boulevard in Carmichael.

5. The communications, dispatches, notes, CAD, memoranda or notes that relate to mention, or refer to any County Sheriff activity on November 30, 2020 at any location on Fair Oaks Boulevard between 6:00 a.m. and 9:00 a.m., including but not limited to any communications, dispatches, notes, CAD, memoranda or notes by any deputy or employee at or near the Bella Bru Café at 5038 Fair Oaks Boulevard in Carmichael, including but not limited to any County Sheriff deputies or employees using County Sheriff vehicle with California license plates with the number 1552413.

6. Any and all reports made by any deputies or employees in any County Sheriff vehicle regarding any November 30, 2020 activity at or near the Bella Bru Café on 5038 Fair Oaks Boulevard in Carmichael,. but not limited to any County Sheriff deputies or employees using the County Sheriff vehicle with California license plate number 1552413..

PLAINTIFF's FIRST AMENDED COMPLAINT 85

1    7. Any communications to, from, with and/or about any resident or residents of any address on 45th Street or 46th Street, including but not limited to Steven Maviglio (1901 45th Street); June Lamoureaux and/or Bill Kellerhals (1856 45th Street);  Barb Andres and/or Cecil Taylor (1870 45th Street); Petros Raygoza,. Martin Rayfoza, and/or Helen Vatthis (1851 45th Street); Charles Schock and his wife Pam Schock, and all the residents  of 1900 45th street and/or Sharon Simms (1856 46th Street), or any person visiting Sharon Simms.

2

3

4    8. In addition, please produce any and all documents, records, and/or writings reflecting any destruction, alteration, removal, or other unavailability of any of the records requested in this request, together with applicable record retention policies.

5

6    As required by Government Code Section 6253(c), please respond within ten (10) calendar days  of your receipt of this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section 6258 if this request is not granted.

7

8    Very truly yours,

9    Ms. Parvin Olfati

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 86

1  **Paragraph 283-(f):**

2                   PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819

3                                                                        December 21,
                                                                         2020

   Via email to Records@SacSheriff.com
4  SRO I Stacey Miyazaki, PSD Legal Affairs, Disclosure Officer, County of Sacramento Sheriff's Department, 4500
   Orange Grove Avenue, Sacramento, CA 95841-4205
5
   **RE:   Public Records Act Request for County of Sacramento Sheriff's Department Records of Purported**
6  **"Review" Of Over 150 Unanswered Public Records Act Requests from Parvin Olfati**

7  Dear Stacey Miyasaki:

8  This letter is both a response to your December 15, 2020 letter regarding "PRA #20-0825" and as new Public
   Records Act (PRA) request for County of Sacramento Sheriff's Department (County Sheriff) purported "review" of
9  what your letter admits are over 150 unanswered PRA requests from me, Ms. Parvin Olfati.

10 Pursuant to the PRA and Article I, Section 3(b) of the California Constitution, please provides me with a listing of
   each and every PRA request received from Ms. Parvin Olfati that are referred to on page 3 under "Response" in the
11 County Sheriff December 15, 2020 letter to Ms. Parvin Olfati as having been "reviewed." For each PRA request from
   Parvin Olfati that the County Sheriff claims to have "reviewed", please provide the following for each Country
12 Sheriff PRA record number (e.g., "PRA #20-0825"):

13 County Sheriff PRA Record Number, Date of Request, Date of County Sheriff Receipt, Heading ("Re:..."), date of
   County Sheriff response (if any), copy of County Sheriff response (if any[1]), and all records (including but not limited
14 to electronic mail messages, text messages, notes, memoranda, documents, and/or writings) that constitute any
   County Sheriff "review" of the referenced PRA request (as the term "review" or "reviewed" is used in the County
15 Sheriff December 15, 2020 letter). .

16 Please do not respond with the boilerplate that characterizes page 3 of your December 15, 2020 letter, where you dig
   into your deep well of accusations that my PRA requests are "burdensome", "not narrow in scope", "seek an
17 extremely broad set of records to search", ad infinitum and ad nauseum. In fact, my PRA requests are quire specific,
   down to the license plate and identification numbers of the County Sheriff vehicles that appear whenever I go out to
18 eat at Bella Bru Café, Noah's NY Bagels, or anywhere else. This particular request asks for the specifics of the
   County Sheriff purported "review" of each PRA request. Your total of two written responses to these PRA requests
19 have no credibility with me, and neither does your above-referenced boilerplate.

20 If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
   please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
21 policies.  As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt
   of this request, and either produce the requested documents, or commit in writing to a production date that is within
   the reasonable time period required by the PRA. Thank you.
22
   Sincerely,
23
   Parvin Olfati
24

25

26

27

28
   _____
   ·[1] If there is no County Sheriff response, please so state in writing.

   PLAINTIFF's FIRST AMENDED COMPLAINT 87

1    **Paragraph 283-(g):**

2                    **PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819**
                                                                    October 14, 2020
3    Via email to Records@SacSheriff.com
     Disclosure Officer, County of Sacramento Sheriff's Department, 701 "G" Street, Sacramento, CA 95814

4    **RE:   Public Records Act Request for County of Sacramento Sheriff's Department CAD Call Print Synopsis**
5    **or Similar Document For 1859 45th Street, Sacramento, California 95819**

6    Dear Sir or Madam:

7    Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I
     hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all
8    "CAD Call Print Synopsis" or similar documents reflecting County Sheriff activity at 1859 45th Street, Sacramento,
     California 95819 during each of the following time periods:

9

10        1. January 1, 2020 through and including the date of your response to this PRA request.
          2. January 1, 2019 through and including December 31, 2019.
11        3. January 1, 2018 through and including December 31, 2018.
          4. January 1, 2017 through and including December 31, 2017.
12        5. January 1, 2016 through and including December 31, 2016
          6. January 1, 2015 through and including December 31, 2015.
13        7. January 1, 2014 through and including December 31, 2014.
          8. January 1, 2013 through and including December 31, 2013.
14        9. January 1, 2012 through and including December 31, 2012.
          10. January 1, 2011 through and including December 31, 2011.
15        11. January 1, 2010 through and including December 31, 2010.
          12. January 1, 2009 through and including December 31, 2009.
16        13. January 1, 2008 through and including December 31, 2008.
          14. January 1, 2007 through and including December 31, 2007
17        15. January 1, 2006 through and including December 31, 2006.
          16. January 1, 2005 through and including December 31, 2005.
18        17. January 1, 2004 through and including December 31, 2003.
          18. January 1, 2002 through and including December 31, 2002.

19

20   If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
21   please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
     policies.   As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt
22   of this request, and either produce the requested documents, or commit in writing to a production date that is within
     the reasonable time period required by the PRA. Thank you.

23   Sincerely,

24   Parvin Olfati

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 88

1

## Paragraph 283-(h):

2

PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819

November 6, 2020

3
Via email to Reciortds@SacSheriff.com
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, California 95841

4
**RE:     Public Records Act Request for County of Sacramento Sheriff's Department Communications, Payments, And/or Emoluments Regarding Any Activity At Bella Bru Café at 5038 Fair Oaks Boulevard on Any Date Including But Not Limited To November 6, 2020, Including But Not Limited To Any Activity Involving An Automobile With The California License Pate "WMGLEN"**

5

6
Dear Sir or Madam:

7
On the morning of Friday November 6, 2020, I was having breakfast at Bella Bru Café on 5038 Fair Oaks Boulevard when I received a third blast from the past: the Volkswagen automobile with the California personalized license plate "WMGLEN" – which back in March of 2020 regularly stalked me at Starbucks locations on Folsom Boulevard, and after March of 2020 multiple times (including but not limited to on October 27 and October 29 of 2020) at Bella Brue Café at 2376 Fair Oaks Blvd. I reasonably believe this serial stalking of me by the driver of this car is done at the direction of one or more law enforcement agencies whose vehicles and officers invariably show up whenever I am there.  As I am once again placed under fraudulent "investigation", "watch list", "non investigatory subject", and other surveillance to take away my legal, civil and human rights – all to protect from exposure Mr. Steven Maviglio and his partner in perjury Barb Andres as well as Camille Remy Obad and her new criminals/tenants. I am once again being stalked in every part of the City of Sacramento and beyond, and being physically tortured and emotionally and psychologically assaulted.

8

9

10

11

12
Pursuant to the Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all emoluments, payments, electronic mail messages, text messages, notes, communications, letters, memoranda, documents, emoluments, payments, records, and/or writings created, transmitted, received and/or stored on any County Sheriff sheriff, deputy, department, chief, officer, division, Impact Division, Homeless Outreach Team, plainclothes, undercover, office, agency, employee, agent, and/or representative computer or other medium on any date between January 1, 2020 and the date of your response to this PRA request, that constitute, mention, refer to, and/or relate to;

13

14

15

16
1. Any communications, payments, and/or emoluments to, from, with and/or about any person known or believed to stalking or following Parvin Olfati, including but not limited to any driver, owner, or user of any automobile with the license plate "WMGLEN", including but not limited to any activity on November 6, 2020.

17
2. Amy communications, emoluments, and/or payments to any driver, owner, or user of any automobile with the California license plate "WMGLEN."

18
3. Any County Sheriff ownership or lease interest in any automobile with the California license plate "WMGLEN."

19
To assist you in identifying the driver of the vehicle with the California license plate WMGLEN, her picture ia displayed below. I took this picture with my cellphone at 8:01 a.m. on Friday, November 6, 2020. As used in this PRA request, the term "communications" includes but is not limited to text messages, electronic mail messages, notes, memoranda, documents, records and/or writings.

20

21
If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable, please provide the records of such destruction, transfer, or unavailability, together with applicable record retention policies. As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this request, and either produce the requested documents, or commit in writing to a production date that is within the reasonable time period required by the PRA.

22

23
Thank you.

Sincerely,

24
Parvin Olfati

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 89

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1 **Paragraph 283-(i):**

2       **PARVIN OLFATI,** 1859 45th Street, Sacramento, California 95819

3                                                        January 21, 2021
    **Via email to Records@SacSheriff.com**

4 Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

5
6 **RE: Public Records Act  Request for County of Sacramento Sheriff's Department Communications That Mention, Refer To, And/or Relate to Any Stalking, Surveillance, Monitoring, Following or Reporting Regarding Parvin Olfati, Including But Not Limited To Any Records Created, Transmitted, Stored And/or Received By The Woman Driver, Owner, or User of The White Chevrolet Sport Utility Vehicle With The California License Plate 8LTE039**

7

8 Dear Sir or Madam:

9 During the month of December 2020 the woman whose picture is displayed below followed me to the Fair Oaks Boulevard locations of Bella Brue Café (5038), Ettore's (2376), and finally Tuesday Morning (2550). She followed me while driving a white Chevrolet sport utility vehicle with the California license plate number 8 LTE039. I took both pictures displayed below with my cellphone while this woman was stalking me at Tuesday Morning store on December 17, 2020. Every day when I went to Bella Bru Café I would see her sitting at restaurant tables near me while using two cellphones simultaneously – one videotaping me, and the other used by her to write and text. At one point, when we were allowed to use the indoor seating, she made it a point to come and sit next to me and tell me that she liked talking with me. I found her comment very odd, but by now I am used to getting all kinds of odd and strange treatments from the people who are stalking me. She sat next to me and I told her about the May 09, 2020 police brutality I experienced by the physical assault, battery, and illegal search and seizure of me on my own front porch committed by City of Sacramento Police Department officers Jared Robinet and Maryna Stanionis. I also noticed she was paying very detailed attention to my body language.  Please also note that during the last ten years, I have seen this female stalking me in other places as well.   In one of these stalkings, she was accompanied in the Bella Bru Café by a male, and I reasonably believe she brought this male with her to show me to that male.   As you can see, I do not get any break. My question remains:"what have I ever done to deserve this much intrusion and torture ?"

10
11
12
13
14
15
16

17 On December 13, 2020, this female followed me to Ettore's. This following of me to Ettore's occurred one day before the December 14, 2020 attempt by County of Sacramento Division of Behavioral Services Senior Mental Health Counselor Pamela Pisani to entrap me in her strategized threatening visit to my house. On December 17, 2020, this woman followed me to Tuesday Morning.

18
19

20 All of these Fair Oaks Boulevard stalkings of me by this same woman occurred within days of the December 14, 2020 attempted ambush of me at my home by County of Sacramento Division of Behavioral Health Services Community Support Team Senior Mental Health Counselor Pamela Pisani. When I asked Ms. Pisani why she came by my house unannounced, Ms. Pisani said she had been given "information" about me from the County Sheriff. I reason believe one of the sources of this "information" may be the woman  whose picture are displayed below.

21

22

23 Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought."  This records request includes not only documents on County of Sacramento Sheriff's Department (County Sheriff) department, division, Impact Division, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative (County Sheriff) computers or other media, but also documents on Teale Data Center or other backup computers, media or facilities. Therefore, please produce to me true and correct copies of any documents, records and/or writings created, transmitted, received, and/or stored between December 1, 2020 and the date of your response to this PRA request that constitute, mention, refer to and/or relate to:

24
25
26
27
        1. County Sheriff communications by, to, from, with and/or about any female driver, owner, or user of any
28              vehicle with the California license plate 8LTE039, including but not limited to any communications that

PLAINTIFF's FIRST AMENDED COMPLAINT 91

1    mention, refer to, and/or relate to Parvin Olfati, or any person recorded, written about, texted about, or
     reported on as being present at any location on Fair Oaks Boulevard.

2    2. Any report, notes, memoranda, documents, record, text message, electronic mail message, and/or writing by
     any female in the picture displayed below, that mentions, refers to and/or relates to Parvin Olfati, or any
3    person recorded, written about, texted about, or reported on as being present at any location on Fair Oaks
     Boulevard.

4    3. Any and all reports made by any County Sheriff officers or employees that mention, refer to, and/or relate to
     any person observed at any location on Fair Oaks Boulevard, including but not limited to Tuesday Morning
5    (2550), Ettore's (2376), and/or Bella Bru Café (5038), and including but not limited to Parvin Olfati.

     4. Any sending of any County Sheriff deputy, officer, undercover, plainclothes, or employees to stalk, observe,
6    watch, or monitor Parvin Olfati, Patty Olfati, Patti Olfati and/or Olfati.

     5. Any communications to Pamela Pisani or any employee of the County Division of Behavioral Health Services
7    that mention or refer to Parvin Olfati.

8    In addition, please produce any and all documents, records, and/or writings reflecting any destruction, alteration,
     removal, or other unavailability of any of the records requested in this request, together with applicable record
9    retention policies.

10   As required by Government Code Section 6253(c), please respond within ten (10) calendar days of your receipt of
     this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days
     of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period
11   of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section
     6258 if this request is not granted.

12
     Very truly yours,

13

14   Ms. Parvin Olfati

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 92

1  **Paragraph 283-(j):**

2  **Parvin Olfati 1859 45th Street Sacramento, CA. 95819**

   Via email to Records@SacSheriff.com                                    February 26, 2021

3

4  SRO I Stacey Miyasaki, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

5  **RE: Public Records Act Request For County of Sacramento Sheriff's Department Records of Vehicle and/or Deputy Presence On 45th Street, "S" Street, "T" Street, and/or 46th Street At Any Time On December 14, 2020**

6  Dear Sir or Madam:
   Please respond and provide any and all requested records via postal mail to my address above. Please use e mail

7  transmission only as a supplement to any postal mailed response.
   Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I

8  hereby request that the County of Sacramento Sheriff's  Department (County Sheriff) produce to me any and all reports, notes, log entries, computer entries, CAD, memoranda, documents, records and/or writings:

9  Created, transmitted, received and/or stored on any County Sheriff sheriff, department, division, Impact Division, Homeless Outreach Team, chief, officer, employee, agent or representative (County Sheriff)  computer or other

10 medium between December 1, 2020 and the date of your response to this PRA request that:

11      1. Mention or refer to the presence of any County Sheriff vehicles at any location in any of the following areas
           of the Elmhurst neighborhood of the City of Sacramento at any time on December 14, 2020: (a) the 1800 or

12         1900 blocks of 45th Street; (b) "S" Street between 45th and 46th Streets; ( c ) the 1800 or 1900 blocks of 46th
           Street; (d) and/or  ) "T" Street between 44th and 47th Streets.

13      2. Mention or refer to the presence of any County Sheriff sheriff, eputies, officers, employees, agents or
           representatives at any location in any of the following areas of the Elmhurst neighborhood of the City of

14         Sacramento at any time on December 14, 2020: (a) the 1800 or 1900 blocks of 45th Street; (b) "S" Street

15         between 45th and 46th Streets; ( c ) the 1800 or 1900 blocks of 46th Street; (d) and/or  ) "T" Street between
           44th and 47th Streets.

16      3. Mention or refer to any County Sheriff sheriff, deputies, officers, employees, agents, and/or representatives
           directed or ready to take any action on December 14, 2020 that involves Parvin Olfati or 1859 45th Street

17         (Sacramento, California 95819).

18 The records requested include but are not limited to any records of any placement of Parvin Olfati and/or 1859 45th
   Street under any "intelligence", surveillance, monitoring, or other similar activity by any law enforcement agency.

19 If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
   please provide the records of such destruction, transfer, or unavailability, together with applicable record retention

20 policies.  As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt
   of this request, and either produce the requested documents, or commit in writing to a production date that is within

21 the reasonable time period required by the PRA.

22 Sincerely,

23 Parvin Olfati

24

25

26

27

28

1    **Paragraph 283-(k):**

2                      **Parvin Olfati 1859 45th Street Sacramento, CA. 95819**
                                                                        March 16, 2021
3    Via email to Records@SacSheriff.com
     And via U.S. Mail to: SRO I Stacey Miyazaki, PSD Legal Affairs, Disclosure Officer, County of Sacramento
4    Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841-4205
     **RE: Public Records Act Request For County of Sacramento Sheriff's Department Documents That Constitute**
5    **Sheriff's Department Information Communicated To County of Sacramento Department of Health Services**
     **Division of Behavioral Health Services Senior Mental Health Counselor LMFT Pamela Pisani That Mention,**
6    **Refer to, or Relate to Parvin Olfati or 1859 45th Street**
     Dear Ms. Miyasaki:
7    Please respond and provide any and all requested records via postal mail to my address above. Please use e mail
     transmission only as a supplement to actual postal mailed response. The only reason I am sending this Public Records
8    Act (PRA) request via e mail is that the County Sheriff office is no longer available for in-person delivery. This time
     I am also postal mailing the PRA request to SRO I Stacey Miyasaki.
9    As of the March 15, 2021 mail delivery, I have not received any response or documents, even though the most recent
     PRA request was sent on March 1, and it renews previous PRA requests that have not been answered. **In addition,**
10   **this March 16, 2021 PRA request makes a request for three new categories of documents: communications**
     **with the City of Sacramento Police Department, City of Sacramento Police Department Mental Health Unit,**
11   **or City of Sacramento Police Department Impact Team.**

12   This is a simple PRA request for records that clearly exist -- because County Senior Mental Heath Counselor Pamela
     Pisani on behalf of the County made an unannounced visit to my house and said she was doing so based on
13   information communicated to her or her department or division by the County Sheriff). Either the requested records
     exist, or County employee Pam Pisani was lying while conducting County business.
14
     On Monday, December 14, 2020, at about 4:36 p.m., the front door of my 1859 45th Street (Sacramento, California
15   95819) house was knocked upon by a woman who asked me "is this Parvin?" I opened the door, and took her
     business card identifying her as "Pamela Pisani, LMFT Senior Mental Health Counselor" from the "Community
16   Support Team" of the County of Sacramento Department of Health Services Division of Behavioral Health Services.
     I then heard Ms. Pisani say she had received an "anonymous call" and complaint about me. I told her to wait, closed
17   the door, and got my cellphone. I then opened the door. In response to my question "who are you again", she
     identified herself as "Pam". I said "Pam Community Support Team". She said "right." She never confirmed that I
18   was Parvin Olfati.   I then said "and you don't know who called you". Ms. Pisani then said "I think it was maybe the
     Sheriff's Department", and then used the word "complaint." I then said "so the Sheriff's Department called you?"
19   and Ms. Pisani said: "They didn't call me. They let us know that maybe there were some concerns...they're out of
     the Sheriff's Department jurisdiction..."
20   I then said "so the Sheriff's Department had something to do with this" and Ms. Pisani said: "they forwarded some
     information." In response to my question as to "exactly" what "information" had been "forwarded", Ms. Pisani said
21   "they forwarded some information stating..." but "I don't know exactly" what the information was. I then asked:
     "So how can you go to somebody's door when you don't have any idea what you're doing there?"
22
     Ms. Pisani did not answer my question, but instead frantically and immediately wheeled to her scripted narrative
23   about "resources." She did not answer my questions about her "resources" or the function of the "Behavioral
     Services" "department" (actually a division) that she said she worked for. She never used the word County even
24   though she was here on purported County business. Instead she used the word "community" but never said who the
     "community" was. I concluded by telling her that her "behavior" was suspect because her behavior as displayed to
25   me consisted of knocking unannounced on people's doors based on anonymous "b---s---."
     I told her to leave, but she refused to leave. Instead she yelled at me from my driveway, and she stalked me as I
26   walked out toward the end of my driveway toward the back yard to check some of the toxic and feces and toxic liquid
     that had been placed immediately outside my bedroom window.  In other words, she trespassed my property by
27   refusing to leave after being ordered by me to leave.  She drove a white SUV vehicle with the California license plate
     7WID019. This appeared to be her personal vehicle and/or vehicle given to her to use in her visit to my house and not
28   a County vehicle. **Displayed at the end of this PRA request letter are photographs of Ms. Pisani's behavior. I**
     **took these pictures with my cellphone on December 14, 2020 starting at 4:36 p.m.**

     PLAINTIFF's FIRST AMENDED COMPLAINT 94

1

2    Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I
     hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all
3    electronic messages, text messages, reports, notes, log entries, computer entries, CAD, memoranda, documents,
     records and/or writings that created on any County Sheriff sheriff, deputy, department, division, Impact Division,
4    Homeless Outreach Team, officer, chief, employee, agent or representative (County Sheriff) computer or other
     medium created, transmitted, received and/or stored that constitute, mention, refer to and/or relate to any information
     communicated on any date since January 1, 2020:

5

6            1. To any employee, agent, or representative of the County of Sacramento Department of Health Services,
                Division of Behavioral Health Services, or any Community Support Team, or to Pamela Pisani, that
7               mention, refer to, or relate to Parvin Olfati and/or 1859 45th Street (Sacramento, California 95819).
             2. To any employee, officer, agent, chief, or representative of the City of Sacramento Police Department, that
8               mention, refer to, or relate to Parvin Olfati and/or 1859 45th Street (Sacramento, California 95819).
9            3. To any employee, officer, chief, representative, or agent of the City of Sacramento Police Department Mental
                Health Unit, , that mention, refer to, or relate to Parvin Olfati and/or 1859 45th Street (Sacramento,
                California 95819).

10

11           4. To any employee, officer, chief, representative, or agent of the City of Sacramento Police Department Impact
                Team, , that mention, refer to, or relate to Parvin Olfati and/or 1859 45th Street (Sacramento, California
12              95819).

13
     If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
14   please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
     policies. As required by the PRA, please [illegible] writing within ten (10) calendar days of the date of your receipt
15   of this request, and either produce the req[illegible] writing to a production date that is within
     the reasonable time period required by the [illegible]
16   I look forward to your prompt and comple[illegible]
     Sincerely,
17
     Parvin Olfati
18

19

20

21

22

23

24

25

26

27

28

     PLAINTIFF's FIRST AMENDED COMPLAINT 95

1    **Paragraph 283-(l):**

2                    **Parvin Olfati 1859 45th Street Sacramento, CA. 95819**
                                                                September 10, 2021
3    Via U.S. Mail only

4    Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA
     95841
5
     **RE: Public Records Act Request For County of Sacramento Sheriff's Department Records of Vehicle and/or**
6    **Deputy Presence In The Area of American River Drive Between 11:00 a.m. and 2:00 p,m. on September 5,**
     **2021**
7    Dear Sir or Madam:
     Please respond and provide any and all requested records via postal mail to my address above. Please use e mail
8    transmission only as a supplement to any postal mailed response.
     Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I
9    hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all
     reports, notes, log entries, computer entries, CAD, memoranda, documents, records and/or writings created,
10   transmitted, received and/or stored on any County Sheriff sheriff, department, division, Impact Division, Homeless
     Outreach Team, chief, officer, employee, agent or representative (County Sheriff)  computer or other medium
11   between January 1, 2021 and the date of your response to this PRA request that:

12        1. Mention or refer to the presence of any County Sheriff vehicles at any location on American River Drive or
             on any adjoining or surrounding streets any time between 11:00 a.m. and 2:00 p.m. on Sunday, September 5,
13           2021.
          2. Mention or refer to the presence of any County Sheriff sheriff, deputies, officers, employees, agents or
14           representatives at any location on American River Drive or on any adjoining or surrounding streets at any
             time between 11:00 a.m. and 2:00 p.m. on Sunday, September 5, 2021.
15        3. Mention or refer to the presence of any County Sheriff vehicles at any location at or near the Five Points
16           Shopping Center at Fair Oaks Boulevard and Arden Way, at any time between 11:00 a.m. and 2:00 p.m. on
             Sunday, September 5, 2021.
17        4. Mention or refer to the presence of any County Sheriff sheriff, deputies, officers, employees, agents or
             representatives at any location at or near the Five Points Shopping Center at Fair Oaks Boulevard and Arden
18           Way, at any time between 11:00 a.m. and 2:00 p.m. on Sunday, September 5, 2021.
          5. Mention or refer to any activity by the County Sheriff vehicle with the California license plate number
19           1409052 at any time between 11:00 a.m. and 2:00 p.m. on Sunday, September 5, 2021.

20        6. Mention or refer to any County Sheriff sheriff, deputies, officers, employees, agents, and/or representatives
             directed or ready to take any action on September 5, 2021 that involves Parvin Olfati, any vehicle believed
21           to be used by Parvin Olfati,  and/or 1859 45th Street (Sacramento, California 95819).

22        7. Constitute, mention, refer to, or relate to any transmission or communication of any reports, memoranda, text
23           messages, electronic mail messages or other communications of any officer in a County Sheriff vehicle
             following Parvin Olfati or any vehicle believed to be used by her, including but limited to any transmission
24           or communication to any County of Sacramento agency; the City of Sacramento Police Department; any
             City of Sacramento agency; or any State of California or federal government agency. These referenced
25           agencies include but are not limited to the City of Sacramento Police Department Mental Health Unit; the
             City of Sacramento Police Department Impact Team; the County of Sacramento Division of Behavioral
26           Health Services; and/or the County of Sacramento Community Support Team and/or Pamela Pisani.

27   The records requested include but are not limited to any reports, memoranda, text messages, electronic mail messages
28   or other communications or any officer in a County Sheriff vehicle following Parvin Olfati or any vehicle believed to
     be used by her. They also include any records of any placement of  Parvin Olfati, any vehicle she is believed to be

     PLAINTIFF's FIRST AMENDED COMPLAINT 96

1  using, or 1859 45th Street under any "intelligence", surveillance, monitoring, or other similar activity by any law
   enforcement agency.

2

3  If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
   please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
   policies. As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt

4  of this request, and either produce the requested documents, or commit in writing to a production date that is within
   the reasonable time period required by the PRA.

5  Sincerely,

6  Parvin Olfati

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 97

1   **Paragraph 283-(m):**

2                                    **PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819**
                                                                                October 8,
3                                                                          2021
    <u>Via U.S. Mail</u>
    Disclosure Officer, County of Sacramento, Clerk of the Board Office, 700 "H" Street, Suite 2450, Sacramento, CA
4   95814

5   **RE:   Public Records Act Request for County of Sacramento Sheriff's Department Documents Constituting,
    Mentioning, Referring To And/or Relating To Contracts, Agreements, And/or Memoranda of Understanding
6   With Visionary Integration Professionals In Force or Created, Transmitted, Received And/or Stored On or
    After January 1, 2003**

7   Dear Sir or Madam:

8   Pursuant to the Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I hereby request
    that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all electronic mail
9   messages, text messages, notes, communications, letters, memoranda, documents, records, and/or writings created,
    transmitted, received and/or stored on any County Sheriff sheriff, deputy, department, division, Impact Division,
10  Mental; Health Unit, Homeless Outreach Team, officer, employee, agent, and/or representative (collectively,
    "County Sheriff") computer or other medium on any date between January 1, 2003 and the date of your response to
11  this PRA request, that constitute, mention, refer to, and/or relate to any contracts, agreements, memoranda of
    understanding, proposed contracts, proposed agreements, proposed memoranda of understanding and/or
12  communications that mention, refer to, and/or relate to any contract, agreement, and/or memorandum of
    understanding that was <u>either</u> proposed, in force, in effect, created, transmitted, stored, and/or received on any
13  County Sheriff computer or other medium, and where the party other than the County Sheriff or County of
    Sacramento was or is Visionary Integration Professionals (VIP).
14
    In addition, pursuant to the PRA and Article I, Section 3(b) of the California Constitution, I also request that the
15  County Sheriff produce to me true and correct copies of any and all electronic mail messages, text messages, notes,
    letters, memoranda, documents, records and/or writings that constitute, mention, refer to and/or relate to: any
16  communications to, from, or with Jonna Ward or any VIP employee, officer, agent, and/or representative that
    mention or refer to mental health services and/or Parvin Olfati, Patty Olfati, Patti Olfati, Olfati, and/or 1859 45th
17  Street.

18  Finally, pursuant to the PRA and Article I, Section 3(b) of the California Constitution, I also request that the County
    Sheriff produce to me true and correct copies of any and all electronic mail messages, text messages, notes, letters,
19  memoranda, documents, records and/or writings that constitute, mention, refer to and/or relate to any
    communications to, from, with and/or about Visionary Integration Professionals (VIP) and/or any VIP employee,
20  representative, officer and/or agent that mention, refer to, and/or relate to any contract, agreement, memoranda of
    understanding, proposed contract, proposed agreement or proposed memorandum of understanding that was <u>either</u>
21  proposed, in force, in effect, created, transmitted, stored, and/or received on any County Sheriff computer or other
    medium, and where the party other than the County Sheriff or County of Sacramento was or is Visionary Integration
22  Professionals (VIP).

23  If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
    please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
24  policies.

25  As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this
    request, and either produce the requested documents, or commit in writing to a production date that is within the
26  reasonable time period required by the PRA.

    Sincerely,
27
    Parvin Olfati
28

1    **Paragraph 283-(n):**

          PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819
2
                                                                            December 16,
                                                        2021
3    Via U.S. Mail
     Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA
4    95841

5    **RE:   Public Records Act Request for County of Sacramento Sheriff's Department Records of
     Communications With George Hills Company, Inc. Regarding Parvin Olfati Claim Against Sacramento**
6    **County**

7    Dear Sir or Madam:

8    Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I
     hereby request that the City of Sacramento Sheriff's Department (County Sheriff)  produce to me any and all
9    electronic mail messages, text messages, notes, communications, letters, memoranda, documents, records, and/or
     writings created, transmitted, received and/or stored on any County Sheriff sheriff, deputy, department, division,
     Impact Division, Homeless Outreach Team, Mental Health Unit, chief, officer, office, agency, employee, agent,
10   and/or representative computer or other medium on any date between January 1, 2021 and the date of your response
     to this PRA request, that constitute, mention, refer to, and/or relate to any communications to, with, from and/or
11   about George Hills Company, Inc. that mentions, refers to, or relates to:

12        1. Parvin Olfati.
          2. Pamela Pisani.
13        3. The County Division of Behavioral Health Servicves.
          4. Any Parvin Olfati request for records to the County of Sacramento or County of Sacramento Sheriff's
14             Department.
          5. Any Parvin Olfati claim presented to the County of Sacramento.
15        6. Claim Number L2100524 or Claim File Number 87388-35.
          7. Any suggestion or communication that any Parvin Olfati PRA request or request for records not be responded
16             to.
     If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
17   please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
     policies.

18
     As used herein, the term "George Hills Company, Inc. ("George Hills")" includes any George Hills employee,
19   physician,  officer, agent, or representative.

20   As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this
     request, and either produce the requested documents, or commit in writing to a production date that is within the
21   reasonable time period required by the PRA. Thank you.

22   Sincerely,

     Parvin Olfati
23

24

25

26

27

28

     PLAINTIFF's FIRST AMENDED COMPLAINT 99

1  **Paragraph 283-(o):**

2
      Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822

3
                                             January 31, 2022

4  <u>Via personal delivery only to:</u> Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA 95814

5  <u>Via U.S. Mail to:</u>
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA
6  95841

7  **RE:    Public Records Act Request – County of Sacramento Sheriff's Department or Division of Behavioral Health Services Records Constituting Department Policies In Force On Any Date On Or After October 1,**
8  **2020 Regarding Referral Of Persons To The County Mobile Crisis Support Team, Problem Oriented Policing, or County Division of Behavioral Health Services**

9  Dear Sir or Madam:

10
Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or
11  writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical
12  basis for denying access to the records or information sought." This records request is for documents created, transmitted, received and/or stored on any computer or other medium in any of the following County of Sacramento
13  (County) operations:

14      1. County Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Mental
       Health Unit, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative.
15      2. County Mobile Crisis Support Team (MCST) and/or MCST-assigned Sheriff's Department officers and/or
       Senior Mental Health Counselors.
16      3. County Division of Behavioral Health Services ("County Behavioral Health") employees Jennifer Stewart,
       Jennifer Reiman, and/or Pamela Pisani.
17      4. Problem Oriented Policing (POP) at the Sacramento Sheriff's Department North Division.

18  that constitute policies, procedures, protocols, rules, regulations, or guidelines in effect on or on any date after October 1, 2020 regarding referral to MCST, POP, or County Behavioral Health of any person. This PRA request
19  includes but is not limited to any referral of any person determined by any County Sheriff employee (including but not limited to Sergeant Ronald Briggs) to have sent an "unfounded" police report or crime report to the County
20  Sheriff.

21  As required by Government Code Section 6253(c), please respond within ten (10) calendar days  of your receipt of this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days
22  of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section
23  6258 if this request is not granted.

24  Very truly yours,

25  Ms. Parvin Olfati

26

27

28

1

**Paragraph 283-(p):**

2

Ms. PARVIN OLFATI, **1859 45th Street, Sacramento, California 95822**

3

January 31, 2022

<u>Via personal delivery only to:</u> Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700
4 "H" Street, Sacramento, CA 95814

5 <u>Via U.S. Mail to:</u>
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA
6 95841

7 **RE:    Public Records Act Request – County of Sacramento Sheriff's Department or County Behavioral
Health Records Of Any Investigation or Other Activity Related To Any Determination That The November 9,
8 2020 Parvin Olfati Police Report/Crime Report Was "Unfounded" or Was A "Complaint Indicative of
Potential Mental Health Distress"**

9
Dear Sir or Madam:

10
Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3,
11 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or
writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are
12 responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical
basis for denying access to the records or information sought." This records request is for documents created,
13 transmitted, received and/or stored on any computer or other medium in any of the following County of Sacramento
(County) operations:

14
1. County Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Mental
15     Health Unit, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative.
2. County Mobile Crisis Support Team ("MCST") and/or MCST-assigned Sheriff's Department officers and/or
16     Senior Mental Health Counselors.
3. County Division of Behavioral Health Services ("County Behavioral Health") employees Jennifer Stewart,
17     Jennifer Reiman, and/or Pamela Pisani.
4. Problem Oriented Policing (POP) at the Sacramento Sheriff's Department North Division.
18 5. County Sheriff Sergeant Ronald Briggs.
6. County Mental Health Program Coordinator Jennifer Reiman.
7. County Senior Mental Health Counselor Jennifer Stewart.
19
that constitute, mention, refer to, and/or relate to any investigation or activity related to any determination that the
20 November 9, 2020 Parvin Olfati Police Report/Crime Report was: (i) "unfounded"; (ii) was a "complaint indicative
of potential mental health distress"; or (iii) merited referring the police report/crime report author and her address to
21 County Behavioral Health, MCST, and/or POP.

22 As required by Government Code Section 6253(c), please respond within ten (10) calendar days of your receipt of
this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days
23 of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period
of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section
24 6258 if this request is not granted.

25 Very truly yours,

Ms. Parvin Olfati
26

27

28

1    **Paragraph 283-(q):**

2          **Ms. PARVIN OLFATI, 1859 45ᵗʰ Street, Sacramento, California 95822**

3                                                                     January 31, 2022

4    <u>Via personal delivery only to:</u> Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA 95814

5    <u>Via U.S. Mail to:</u>

6    Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

7    **RE:    Public Records Act Request – County of Sacramento Sheriff's Department Sergeant Ronald Briggs Records Of Electronic Mail, Text Messages, CAD, or Other Communications That Mention, Refer to, or Relate to Parvin Olfati, Steven Maviglio, Barbara Andres, Or Any Resident, Owner, or User of Any Address In The 1800-1900 Blocks of 45ᵗʰ Street in Sacramento, CA 95819**

8

9    Dear Sir or Madam:

10    **The purpose of this Public Records Act (PRA) request is to determine how I became the subject of a "process referral" from the County Sheriff to the County Division of Behavioral Health Services and its' Senior Mental Health Counselor Pamela Pisani. Ms. Pisani intruded into my privacy on December 14, 2020 based on what she claimed was information from the County Sheriff, but when I asked her, she said she "did not know" where her information came from.**

11

12

13    **Attached to a County-submitted declaration from Jennifer Reiman is a December 10, 2020 electronic mail message authored by Jennifer Stewart to Jennifer Reiman and copied to Sergeant Ronald Briggs, The electronic mail message refers to Sergeant Briggs as providing a November 9, 2020 police report letter from me that, according to Sergeant Briggs, was "unfounded" and caused the Sergeant to have "concerns for [my] emotional well being", that the person I reported was "stalking" me "has a restraining order" and that the Community Support Team should contact me because of my allegedly "identified belief that law enforcement is stalking her and colluding against her."**

14

15

16

17    Therefore, pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought." This records request is for documents created, transmitted, received and/or stored on any Sergeant Ronald Briggs computer or other medium in the County Sheriff's Department:

18

19

20

21        1. Constitute, mention, refer to, and/or relate to any investigation or activity related to any determination that the November 9, 2020 Parvin Olfati Police Report/Crime Report was: (i) "unfounded"; (ii) was a "complaint indicative of potential mental health distress"; or (iii) merited referring the police report/crime report author and her address to County Behavioral Health, MCST, and/or POP.

22

23        2. Constitute, mention, refer to, or relate to any "restraining order" against Parvin Olfati.

       3. Constitute any December 10, 2020 communications to or from Jennifer Stewart, including but not limited to any "inquiry as to how to get a mental health worker to check with the letter writer."

24        4. Mention, refer to, or relate to any resident, owner or user of any address in the 1800-1900 blocks of 45ᵗʰ Street in Sacramento, CA 95819, including but not limited to Steven Maviglio (1901), Barbara Andres (1870), Cecil Taylor (1870), Camille Remy Obad (1871), Charles Schock (1914) and/or Pamela Kitchens-Schock (1914).

25

26        5. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or writing that mentions or refers to Parvin Olfati.

27        6. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or writing that mentions or refers to any Bella Bru Café location.

28        7. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or writing that mentions or refers to Starbucks location.

PLAINTIFF's FIRST AMENDED COMPLAINT 102

1    8. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or
          writing that mentions or refers to any restaurant or dining establishment.

2

As required by Government Code Section 6253(c), please respond within ten (10) calendar days  of your receipt of
3    this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days
     of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period
4    of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section
     6258 if this request is not granted.

5
     Very truly yours, /s/ Ms. Parvin Olfati
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 103

1 | **Paragraph 283-(r):**

2 | **Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822**
January 31, 2022

3 |

**Via personal delivery only to:** Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700

4 | "H" Street, Sacramento, CA 95814

5 | **Via U.S. Mail to:**
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA

6 | 95841

7 | **RE:   Public Records Act Request – County of Sacramento Sheriff's Department or County Behavioral
Health Records Of Any And All Records of "Process Referrals" to the "Community Support Team" Between**

8 | **January 1, 2020 And The Date Of Your Receipt Of This PRA Request**

9 | Dear Sir or Madam:

10 | Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3,
2004) and the California Public Records Act (PRA), please produce the following documents, records and/or

11 | writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are
responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical

12 | basis for denying access to the records or information sought." This records request is for documents created,
transmitted, received and/or stored on any computer or other medium in any of the following County of Sacramento

13 | (County) operations:

14 |     1. County Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Mental
       Health Unit, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative.

15 |     2. County Mobile Crisis Support Team ("MCST") and/or MCST-assigned Sheriff's Department officers and/or
       Senior Mental Health Counselors.

16 |     3. County Division of Behavioral Health Services ("County Behavioral Health") employees Jennifer Stewart,
       Jennifer Reiman, and/or Pamela Pisani.

17 |     4. Problem Oriented Policing (POP) at the Sacramento Sheriff's Department North Division.
    5. The "Community Support Team" (CST).

18 |     6. County Sheriff Sergeant Ronald Briggs.
    7. County Mental Health Program Coordinator Jennifer Reiman.
    8. County Senior Mental Health Counselor Jennifer Stewart.

19 | that constitute any Sheriff's Department "process referrals" to the Community Support Team between January 1,

20 | 2020 and the date of your receipt of this PRA request (January 31, 2022). Please feel free to redact any and all
privacy-implicating information for individuals other than the undersigned. My purpose in making this request is to

21 | find out how many (and on what basis) "process referrals" were made during the period of the "process referral"
about me on December 10-14 of 2020; the stated basis behind such "process referrals"; and their outcome. I had

22 | never heard of "process referrals" until I became the recipient of one.

23 | As required by Government Code Section 6253(c), please respond within ten (10) calendar days of your receipt of
this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days

24 | of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period
of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section

25 | 6258 if this request is not granted.

26 | Very truly yours,

27 | Ms. Parvin Olfati

28 |

PLAINTIFF's FIRST AMENDED COMPLAINT 104

1    **Paragraph 283-(s):**

2           **Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822**
                                                                    January 31, 2022
3
     Via personal delivery only to: Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700
4    "H" Street, Sacramento, CA 95814

5    Via U.S. Mail to:
     Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA
6    95841

7    RE:    **Public Records Act Request – County of Sacramento Sheriff's Department Sergeant Ronald Briggs
            Records Of Electronic Mail, Text Messages, CAD, or Other Communications That Mention, Refer to, or
8           Relate to Parvin Olfati, Steven Maviglio, Barbara Andres, Or Any Resident, Owner, or User of Any Address
            In The 1800-1900 Blocks of 45th Street in Sacramento, CA 95819**
9
     Dear Sir or Madam:
10
     **The purpose of this Public Records Act (PRA) request is to determine how I became the subject of a "process
11   referral" from the County Sheriff to the County Division of Behavioral Health Services  and its' Senior Mental
     Health Counselor Pamela Pisani. Ms. Pisani intruded into my privacy on December 14, 2020 based on what
12   she claimed was information from the County Sheriff, but when I asked her, she said she "did not know"
     where her information came from.**
13
     **Attached to a County-submitted declaration from Jennifer Reiman is a December 10, 2020 electronic mail
14   message authored by Jennifer Stewart to Jennifer Reiman and copied to Sergeant Ronald Briggs, The
     electronic mail message refers to Sergeant Briggs as  providing a November 9, 2020 police report letter from
15   me that, according to Sergeant Briggs, was "unfounded" and caused the Sergeant to have "concerns for [my]
     emotional well being", that the person I reported was "stalking" me "has a restraining order" and that the
16   Community Support Team should contact me because of my allegedly "identified belief that law enforcement
     is stalking her and colluding against her."**

17   Therefore, pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective
     November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records
18   and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that
     are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical
19   basis for denying access to the records or information sought."  This records request is for documents created,
     transmitted, received and/or stored on any Sergeant Ronald Briggs computer or other medium in the County Sheriff's
20   Department:

21       1. Constitute, mention,  refer to, and/or relate to any investigation or activity related to any determination that the
            November 9, 2020  Parvin Olfati Police Report/Crime Report was: (i) "unfounded"; (ii)  was a "complaint
22          indicative of potential mental health distress"; or (iii) merited referring the police report/crime report author
            and her address to County Behavioral Health, MCST, and/or POP.
23       2. Constitute, mention, refer to, or relate to any "restraining order" against Parvin Olfati.
         3. Constitute any December 10, 2020 communications to or from Jennifer Stewart, including but not limited to
24          any "inquiry as to how to get a mental health worker to check with the letter writer."
         4. Mention, refer to, or relate to any resident, owner or user of any address in the 1800-1900 blocks of 45th Street
25          in Sacramento, CA 95819, including but not limited to Steven Maviglio (1901), Barbara Andres (1870),
            Cecil Taylor (1870), Camille Remy Obad (1871), Charles Schock (1914) and/or Pamela Kitchens-Schock
26          (1914).
         5. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or
27          writing that mentions or refers to Parvin Olfati.
         6. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or
28          writing that mentions or refers to any Bella Bru Café location.
         7. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or
            writing that mentions or refers to Starbucks location.

     PLAINTIFF's FIRST AMENDED COMPLAINT 105

1

8. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or writing that mentions or refers to any restaurant or dining establishment.

2

As required by Government Code Section 6253(c), please respond within ten (10) calendar days of your receipt of this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section 6258 if this request is not granted.

3

4

5

Very truly yours, /s/ Ms. Parvin Olfati

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 106

1

**Paragraph 283-(t):**

2

Ms. PARVIN OLFATI, **1859 45th Street, Sacramento, California 95822**
January 31, 2022

3

Via personal delivery only to: Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700

4
"H" Street, Sacramento, CA 95814

5
Via U.S. Mail to:
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA

6
95841

7
**RE:    Public Records Act Request – County of Sacramento Sheriff's Department or Division of Behavioral**
**Health Services Records Constituting Department Policies In Force On Any Date On Or After October 1,**

8
**2020 Regarding Referral Of Persons To The County Mobile Crisis Support Team, Problem Oriented Policing,**
**or County Division of Behavioral Health Services**

9
Dear Sir or Madam:

10

11
Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are

12
responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought." This records request is for documents created,

13
transmitted, received and/or stored on any computer or other medium in any of the following County of Sacramento (County) operations:

14
    1. County Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Mental

15
       Health Unit, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative.
    2. County Mobile Crisis Support Team (MCST) and/or MCST-assigned Sheriff's Department officers and/or

16
       Senior Mental Health Counselors.
    3. County Division of Behavioral Health Services ("County Behavioral Health") employees Jennifer Stewart,

17
       Jennifer Reiman, and/or Pamela Pisani.
    4. Problem Oriented Policing (POP) at the Sacramento Sheriff's Department North Division.

18
that constitute policies, procedures, protocols, rules, regulations, or guidelines in effect on or on any date after October 1, 2020 regarding referral to MCST, POP, or County Behavioral Health of any person. This PRA request

19
includes but is not limited to any referral of any person determined by any County Sheriff employee (including but not limited to Sergeant Ronald Briggs) to have sent an "unfounded" police report or crime report to the County

20
Sheriff.

21
As required by Government Code Section 6253(c), please respond within ten (10) calendar days  of your receipt of this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days

22
of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section

23
6258 if this request is not granted.

24
Very truly yours,

25
Ms. Parvin Olfati

26

27

28

1

**Paragraph 283-(u):**

2

Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822
, January 31, 2022

3

<u>Via personal delivery only to:</u> Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA 95814

4

5

<u>Via U.S. Mail to:</u>
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

6

7

RE:   Public Records Act Request – County of Sacramento Sheriff's Department or County Behavioral Health Records Of Any Investigation or Other Activity Related To Any Determination That The November 9, 2020 Parvin Olfati Police Report/Crime Report Was "Unfounded" or Was A "Complaint Indicative of Potential Mental Health Distress"

8

9

Dear Sir or Madam:

10

Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought." This records request is for documents created, transmitted, received and/or stored on any computer or other medium in any of the following County of Sacramento (County) operations:

11

12

13

14

    1. County Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Mental Health Unit, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative.

15

    2. County Mobile Crisis Support Team ("MCST") and/or MCST-assigned Sheriff's Department officers and/or Senior Mental Health Counselors.

16

    3. County Division of Behavioral Health Services ("County Behavioral Health") employees Jennifer Stewart, Jennifer Reiman, and/or Pamela Pisani.

17

    4. Problem Oriented Policing (POP) at the Sacramento Sheriff's Department North Division.
    5. County Sheriff Sergeant Ronald Briggs.

18

    6. County Mental Health Program Coordinator Jennifer Reiman.
    7. County Senior Mental Health Counselor Jennifer Stewart.

19

that constitute, mention,  refer to, and/or relate to any investigation or activity related to any determination that the November 9, 2020  Parvin Olfati Police Report/Crime Report was: (i) "unfounded"; (ii)  was a "complaint indicative of potential mental health distress"; or (iii) merited referring the police report/crime report author and her address to County Behavioral Health, MCST, and/or POP.

20

21

As required by Government Code Section 6253(c), please respond within ten (10) calendar days  of your receipt of this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section 6258 if this request is not granted.

22

23

24

Very truly yours,

25

Ms. Parvin Olfati

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 108

1    **Paragraph 283-(v):**

2                      **Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822**
                                                                                    February 14, 2022
3
     Via personal delivery only to: Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700
4    "H" Street, Sacramento, CA 95814

5    Via U.S. Mail to:
     Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA
6    95841

7    **RE:    Public Records Act Request – County of Sacramento Sheriff's Department Sergeant Ronald Briggs
     Duty Statement, Assignments, And Sheriff's Car Driving Records From January 1, 2019 Through And
8    Including The Date of Your Response To This PRA Request**

9    Dear Sir or Madam:

10   Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3,
     2004) and the California Public Records Act (PRA), please produce the following documents, records and/or
11   writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are
     responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical
12   basis for denying access to the records or information sought." This records request is for documents created,
     transmitted, received and/or stored on any Sergeant Ronald Briggs computer or other medium in the County Sheriff's
13   Department:

14          1. Any and all duty statements for Sergeant Ronald Briggs in effect on any and all dates in 2019, 2020, 2021,
                and the 2022 dates between January 1 and the date of your response to this PRA request.
15          2. Assignment history for Sergeant Ronald Briggs for any and all dates in 2019, 2020, 2021, and the 2022 dates
                between January 1 and the date of your response to this PRA request.
            3. License plate numbers of Sheriff's Department vehicles driven or used by Sergeant Ronald Briggs on any and
16              all dates in 2019, 2020, 2021, and the 2022 dates between January 1 and the date of your response to this
                PRA request.
17

18   As required by Government Code Section 6253(c), please respond within ten (10) calendar days  of your receipt of
     this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days
19   of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period
     of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section
20   6258 if this request is not granted.

21   Very truly yours, /s/ Ms. Parvin Olfati

22

23

24

25

26

27

28

     PLAINTIFF's FIRST AMENDED COMPLAINT 109

1

**Paragraph 283-(w):**

2

PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819

3

March 03, 2022

Via U.S. Mail

4

Disclosure Officer, County of Sacramento Sheriff's Department , 4500 Orange Grove Avenue, Sacramento, CA 95841

5

**RE:    Public Records Act Request for County of Sacramento Sheriff's Department Communications To,**

6

**With, or From The California Highway Patrol That Mention, Refer to, And/or Relate to Parvin Olfati, That Were Created, Transmitted, Received And/or Stored Since January 1, 2017**

7

Dear Sir or Madam:

8

**Please do not respond via e mail. Instead, please respond via postal mail that includes a signed cover letter**

9

**describing the Public Records Act (PRA) being responded to, what is being produced, and what is being withheld (together with the exemptions claimed).  In addition, this letter should be signed with an actual**

10

**signature by whoever is answering the letter, and should include a contact mailing address, telephone number, and e mail address.**

11

This is a Public Records Act (PRA) request for County of Sacramento Sheriff's Department (County Sheriff)

12

documents of County Sheriff sheriff, department, deputy,  Ronald Briggs, office, board, division, agency, officer, employee, agent and/or representative communications to, with, and/or from the California Highway Patrol that

13

mention, refer to, and/or relate to Parvin Olfati, Patti Olfati, Patty Olfati, and/or Olfati.

14

Therefore, pursuant to the PRA and Article I, Section 3(b) of the California Constitution, I hereby request that the County Sheriff produce to me any and all electronic mail messages, text messages, notes, communications, letters,

15

memoranda, documents, records, and/or writings created, transmitted, received and/or stored on any County Sheriff sheriff, department, deputy,  Ronald Briggs, office, board, division, agency, officer, employee, agent and/or

16

representative computer or other medium on any date between January 1, 2017 and the date of your response to this PRA request, that constitute, mention, refer to, and/or relate to any communications to, with and/or from the

17

California Highway Patrol (CHP) that mention, refer to, and/or relate to Parvin Olfati, Patty Olfati, Patti Olfati, and/or Olfati.

18

If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,

19

please provide the records of such destruction, transfer, or unavailability, together with applicable record retention policies.

20

As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this

21

request, and either produce the requested documents, or commit in writing to a production date that is within the reasonable time period required by the PRA. Thank you.

22

Sincerely,

23

Parvin Olfati

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 110

## Paragraph 283-(x):

**Parvin Olfati 1859 45th Street Sacramento, CA. 95819**

Via U.S. Mail

March 04, 2022

Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, California 95841

**RE: Public Records Act Request For County of Sacramento Sheriff's Department Documents That Constitute, Mention, Refer To, And/or Relate To Any Informant, Providing of Information, or Other Activity By Martin Raygoza, Petros Raygoza, Helen Vatthis, or Any Person At 1851 45th Street (Sacramento, California 95819)**

Dear Sir or Madam:

Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all electronic messages, text messages, emoluments, payments, reports, notes, log entries, computer entries, CAD, memoranda, documents, records and/or writings that created on any County Sheriff sheriff, deputy, department, division, Impact Division, Mental Health Unit, Homeless Outreach Team, chief, employee, agent or representative (County Sheriff) computer or other medium created, transmitted, received and/or stored since January 1, 2020 that constitute, mention, refer to and/or relate to any communications or activity by Martin Raygoza, Petros Raygoza, and/or Helen Vatthis of 1851 45th Street and/or any person residing at, using, or hiding out at 1851 45th Street (Sacramento, California 95819). The records requested include but are not limited to:

1. Any communications, payments, and/or emoluments to, from, with and/or about Martin Raygoza, Petros Raygoza, and/or Helen Vatthis.
2. Any communications, payments, and/or emoluments to, from, with, and/or about any person hiding out in, residing at, or otherwise using 1851 45th Street (Sacramento, California 95819), including but not limited to Martin Raygoza, Petros Raygoza, and/or Helen Vatthis.
3. Any communications, payments, and/or emoluments that relate to, refer to, and/or mention any informant activity at 1851 45th Street (Sacramento, California 95819).
4. Any information provided by Martin Raygoza, Petros Raygoza, Helen Vatthis, or any person present at ort using 1851 45th Street.
5. Any communications, payments, and/or emoluments that relate to, refer to, and/or mention any placement of any substance, narcotic, animal feces, toxin, toxic, poison, or other matter on any portion of 1859 45th Street, including but not limited to any driveway, basement, side yard, front yard, or back yard.
6. Any communications, payments, and/or emoluments that relate to, refer to, and/or mention any placement of any substance, narcotic, animal feces, toxin, toxic, poison, or other matter in, on, or near any automobile believed to be used by Parvin Olfati, including but not limited to any automobile parked in the driveway or at any curb of 1859 45th Street, Sacramento, California 95819.

The records requested include but are not limited to any records of any placement of Parvin Olfati and/or 1859 45th Street under any "intelligence", surveillance, monitoring, or other similar activity by any law enforcement agency. If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable, please provide the records of such destruction, transfer, or unavailability, together with applicable record retention policies. As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this request, and either produce the requested documents, or commit in writing to a production date that is within the reasonable time period required by the PRA.

Thank you.

Sincerely,

Parvin Olfati .

PLAINTIFF's FIRST AMENDED COMPLAINT 111

1

**Paragraph 283-(y):**

2

<b>PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819</b>
March 10, 2022

Via U.S. Mail

3

Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

4

**RE:   Public Records Act Request for County of Sacramento Sheriff's Department CAD Call Print Synopsis**

5

**or Other Records of Calls for Service to County Sheriff To 1859 45th Street, Sacramento, California 95819 For 2020 Period Between August 1 and August 31**

6

Dear Sir or Madam:

7

Pursuant to the California Public Records Act (PRA) and Article 1, Section 3(b) of the California Constitution, I

8

hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all "Computer Aided or Assisted Dispatch [CAD] Call Print Synopsis" or other records reflecting County Sheriff

9

activity at 1859 45th Street, Sacramento, California 95819 during the following time period: August 1, 2020 through and including August 31, 2020.

10

In addition to the printout of the CAD calls, please produce all communications created, transmitted, received and/or

11

stored on County Sheriff radio, telecommunications, computers, or other media that mention, refer to, or relate to any of the CAD calls in the printout.

12

As used herein, the term "County Sheriff activity" includes but is not limited to any activity by any County Sheriff

13

sheriff, deputy, division, Impact Division, Mental Health Unit, Homeless Outreach Team, officer, employee, agent or representative.

14

If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,

15

please provide the records of such destruction, transfer, or unavailability, together with applicable record retention policies.  As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this request, and either produce the requested documents, or commit in writing to a production date that is within

16

the reasonable time period required by the PRA. Thank you.

17

Sincerely,
Parvin Olfati

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 112

1

**Paragraph 283-(z):**

2

**PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819**
March 24, 2022

3
Via U.S. Mail
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA

4
95841

5
**RE:   Public Records Act Request for County of Sacramento Sheriff's Department Records Created,
Transmitted, Received And/or Stored On Or After March 1, 2022 That Constitute, Mention, Refer To And/or**

6
**Relate To Any  Suspicious Activity Report or Other Communication About Parvin Olfati Or 1859 45th Street
Received From Any Person or Entity**

7
Dear Sir or Madam:

8
The time period covered by this Public Records Act (PRA) request is March 1, 2022 through and including the date
of your response to this PRA request.

9

10
Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I
hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all
electronic mail messages, text messages, notes, communications, letters, memoranda, documents, records, and/or

11
writings created, transmitted, received and/or stored on any County Sheriff sheriff, deputy,  department, division,
Impact Division,  Mental Health Unit, Homeless Outreach Team, officer, chief, division, agency, board, employee,

12
agent and/or representative person or medium, and/or any person or medium acting in concert with any of them,
created, transmitted, received and/or stored between March 1, 2022 and the date of your receipt of this PRA request,

13
that constitute, mention, refer to, and/or relate to any Suspicious Activity Report or communication, that mentions or
refers to Parvin Olfati or 1859 45th Street, and that was received from any person or entity.

14

15
If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
policies.  As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt

16
of this request, and either produce the requested documents, or commit in writing to a production date that is within
the reasonable time period required by the PRA. Thank you.

17
Sincerely,

18
Parvin Olfati

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 113

1

**Paragraph 283-(aa)**

2

3                    **Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822**
                                                                              January 31, 2022

4
        Via personal delivery only to: Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700
5       "H" Street, Sacramento, CA 95814

6       Via U.S. Mail to:
        Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA
7       95841

8       RE:   **Public Records Act Request – County of Sacramento Sheriff's Department or County Behavioral**
        **Health Records Of Any And All Records of "Process Referrals" to the "Community Support Team" Between**
9       **January 1, 2020 And The Date Of Your Receipt Of This PRA Request**

        Dear Sir or Madam:
10
        Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3,
11      2004) and the California Public Records Act (PRA), please produce the following documents, records and/or
        writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are
12      responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical
        basis for denying access to the records or information sought."  This records request is for documents created,
13      transmitted, received and/or stored on any computer or other medium in any of the following County of Sacramento
        (County) operations:
14
                1. County Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Mental
15                 Health Unit, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative.
                2. County Mobile Crisis Support Team ("MCST") and/or MCST-assigned Sheriff's Department officers and/or
16                 Senior Mental Health Counselors.
                3. County Division of Behavioral Health Services ("County Behavioral Health") employees Jennifer Stewart,
17                 Jennifer Reiman, and/or Pamela Pisani.
                4. Problem Oriented Policing (POP) at the Sacramento Sheriff's Department North Division.
18              5. The "Community Support Team" (CST).
                6. County Sheriff Sergeant Ronald Briggs.
19              7. County Mental Health Program Coordinator Jennifer Reiman.
                8. County Senior Mental Health Counselor Jennifer Stewart.
20
        that constitute any Sheriff's Department "process referrals" to the Community Support Team between January 1,
21      2020 and the date of your receipt of this PRA request (January 31, 2022). Please feel free to redact any and all
        privacy-implicating information for individuals other than the undersigned. My purpose in making this request is to
22      find out how many (and on what basis) "process referrals" were made during the period of the "process referral"
        about me on December 10-14 of 2020; the stated basis behind such "process referrals"; and their outcome. I had
23      never heard of "process referrals" until I became the recipient of one.

24      As required by Government Code Section 6253(c), please respond within ten (10) calendar days  of your receipt of
        this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days
25      of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period
        of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section
26      6258 if this request is not granted.

27      Very truly yours,

        Ms. Parvin Olfati
28

        PLAINTIFF's FIRST AMENDED COMPLAINT 114

1

## Paragraph 283-(bb)

2

**Parvin Olfati 1859 45th Street Sacramento, CA. 95819**

3
March 29, 2022

<u>Via personal delivery only</u>
Disclosure Officer, County of Sacramento, Clerk of the Board Office, 700 "H" Street, Suite 2450, Sacramento, CA
95814

4

5

**RE: Public Records Act Request For County of Sacramento Division of Behavioral Health Services
Documents That Constitute, Mention, or Refer To All "Drop By" or "Cold Knock Contacts" by Senior
Mental Health Counselors or Community Support Team Members Between January 1, 2020 And The Date Of
Your Response To This PRA Request**

6

7

Dear Sir or Madam:

8

Pursuant to the California Public Records Act (PRA), please provide County of Sacramento Division of Behavioral
Health Services documents, records or writings that constitute, mention, or refer to any County Division of
Behavioral Health Services "drop by" or "cold knock contacts" related to any police report or crime report to the
County Sheriff or any other law enforcement agency, made on any date between January 1, 2020 and the date of your
response to this PRA request by:

9

10

(1) County Senior Mental Health Counselors or Community Support Team members other than Pamela Pisani
(2) Pamela Pisani.

11

12

Please respond and provide any and all requested records via postal mail to my address above. Please do not use e
mail transmission.

13

14

If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
policies. As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt
of this request, and either produce the requested documents, or commit in writing to a production date that is within
the reasonable time period required by the PRA.

15

16

17

Thank you.

18

Sincerely,
Ms. Parvin Olfati

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 115

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT TWELVE: SUPPLEMENTAL CGTCA CLAIM WITH DEFENDANT COUNTY FILED APRIL 4, 2022**

May file in person, or mail form to: Clerk, Board of Supervisors, 700 H Street, Rm. 2450, Sacramento, CA .95814
Please keep one (1) copy for your records - Print/Type Only

| CLAIM NUMBER (Dept. Use Only) | **CLAIM AGAINST THE COUNTY OF SACRAMENTO** |
| --- | --- |

1. Claimant's Name  OLFATI  Mr. PARVIN        2. Date of Birth  08/03/195?
   Last          First          M.I.

3. Claimant's Address  1859  45TH STREET  SACRAMENTO CA  95819
   Street (or P.O. Box)          City          State     Zip Code

4. Address Where Correspondence Should Be Sent (if different from above)
   Name:

   Street (or P.O. Box)          City          State     Zip Code
5. Phone Number  916 949 4298
   Home          Work          Other

6. E-mail address  stevc.kamp@comcast.net

7. Amount of Claim  $  See attached

8. Itemized List of Claimed Expenses / Damages (should equal Line 7)

| ITEM | DOLLAR AMOUNT |
| --- | --- |
| See all | $ |
|  | $ |
|  | $ |

(Please attach any estimates* and/or receipts to your claim)
*1 estimate if repairs are less than $1,000       **TOTAL CLAIM**  $ See 7 Nth
*2 estimates if repairs are more than $1,000

Board of Supervisors Stamp

2022 APR -4 AM 11: 1

CLERK OF SACRAMENTO
BOARD OF SUPERVISORS

Do Not Write In This Space

9. Date of Accident / Incident / Loss:  DEC 2020 continued not revealed until 2022 JAN

10. Location of Accident / Incident / Loss:  1859 45TH ST, SACRAMENTO 95819

11. Provide your description of how the Accident / Incident / Loss Occurred:  See attach

12. Describe Damage / Injury / Losses being claimed (including prospective Damage / Injury / Losses to the extent it is known at the time of claim filing)  See attach

13. Name(s) of Public Employee(s) Involved:  SHERIFFS SERGEANT RON BRA
PAMELA PISANI, JENNIFER STEWART, JENNIFER BELMON...

14.  Are you receiving Medicare, or will you be receiving Medicare in the next 3 years?    ☒ YES  or  NO ☐

Section 72 of the Penal Code states: "Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, city, or district board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is punishable either by imprisonment in the county jail for a period of not more than one year, by a fine of not exceeding one thousand dollars ($1,000), or by both such imprisonment and fine, or by imprisonment in the state prison, or by a fine not exceeding ten thousand dollars ($10,000), or by both such imprisonment and fine."

15.  Signature of Claimant/Representative: _____  DATE  4/04/22

[Print Form]

Revised: 1/17       You must present your claim within the time prescribed by Govt. Code Section 911.2.

## LOCATION DIAGRAM

**Indicate Directional Points on the Compass (N, S, E, W)**



1. **Identify streets**
2. **If vehicles are involved, indicate COUNTY VEHICLE as #1, and all others in numerical sequence.**



Risk Management Office, P.O. Box 276130, Sacramento, CA 95827   Telephone: (916) 876 - 5251  Fax: (916) 876 – 5156
www.saccounty.net

Rev. 1/17

1

Ms. Parvin Olfati 1859 45th Street Sacramento, CA. 95819

April 4, 2022

<u>Via personal delivery to:</u>
Claims, Clerk of the Board Office, Sacramento County Board of Supervisors, Suite 2450, 700 "H" Street,
Sacramento, CA 95814

**RE: Update With Newly Discovered Information of Claim Number L2100524/Your File Number 87388-35 by Victim Ms. Parvin Olfati for Damages Caused by County Employees Ronald Briggs, Jennifer Stewart, Jennifer Reiman and Pamela Pisani on December 10-14 and 28 of 2020 Not Discovered by Claimant Until January 28, 2022 and March 8, 2022 From County of Sacramento Making Available Previously Undisclosed Records**

Dear Sir or Madam:

This letter and the attached form is the claimant's update with newly discovered previously unavailable information from County records, of the claimant's Claim Number L2100524, and "our file no." as 87388-35, which is a California Government Code 910 victim compensation claim for the damages the claimant ("claimant") suffered on December 14, 2020, when Ms. Pamela Pisani of the County Division of Behavioral Health Services ambushed me, trespassed my house, defamed me, invaded my privacy, and intentionally caused me to suffer severe emotional distress. It now appears from previously undisclosed and suppressed County information that claimant is the victim of additional related acts by Pisani, and acts by County Behavioral Health employees Jennifer Reiman and Jennifer Stewart, and County Sheriff Sergeant Ronald Briggs that were committed on the 2020 dates of December 10-14 and 28. **As discussed below, this information was not made available by the County until the *2022 dates of January 28 and March 8.***

The newly discovered information comes from two County sources: (1) the Jennifer Reiman Declaration and exhibits thereto in *Parvin Olfati v. County of Sacramento, et al.,* Sacramento County Superior Court Case Number 34-2021-00310164. This Declaration was filed and served by mail by County outside counsel on January 28, 2022, and received by Claimant's counsel on January 29, 2022; and (2) the County's Public Records Act (PRA) Request 22-740 hard copy response to the claimant's PRA request 22-491 delivered to the Clerk of the Board on January 31, 2022. Previous December 2020 and 2021 PRA requests to the County Sheriff and the County for information in both (1) and (2) both received responses from the County that no documents were available, and as for the County Sheriff, it did not respond.

The County records in (1) and (2) reveal the following newly discovered tortious acts against claimant by County employees:

(a)     On December 14, 2020, County Division of Behavioral Health Services employee Pamela Pisani sent an electronic mail message on a County computer during County working hours to County Division of Behavioral Health services employee Jennifer Reiman stating as follows: "[t]his person [Parvin Olfati] who has a restraining order against her by a [Sacramento] city councilmen [sic]." The Pisani e mail said Ms. Pisani's statement was based on a conversation she had with County Division of Behavioral Health Services employee Jennifer Stewart. An electronic mail message with nearly

1

2

identical content[1] was sent on December 28, 2020 by County Division of Behavior Health Services employee Jennifer Reiman to County Division of Behavioral Health Services employee Rolanda Adams.

In fact, there is no restraining order against the claimant by any member of the Sacramento City Council, as the City of Sacramento confirmed in its' response to the claimant's PRA request for precisely this and only this document. The County's response to the claimant's PRA Request 22-491 indicates that Ms. Reiman and Ms. Pisani made no attempt to check the accuracy of her statement about the claimant: "no documents."

These statements by County employees Pamela Pisani, Jennifer Stewart, and Jennifer Reiman constitute defamation. false light invasion of privacy, intentional infliction of emotional distress, and negligence, and were made with a combination of constitutional malice, common law malice, intent to place the claimant in a false light, and intent to vex, harass, and annoy the claimant. They were also made in retaliation for the claimant having filed a police report/crime report with the County Sheriff that is discussed below under (b).

(b)     On December 10, 2020, Sacramento County Sheriff's Department Sergeant Ronald Briggs communicated through County facilities to County Division of Behavioral Health Services employee Jennifer Stewart the following content: ". . . the attached letter with an inquiry as to how to get a mental health worker to check in with the letter writer because the complaint is unfounded so they cannot make a report but have valid concerns for her emotional well-being. . . the letter suggests CST [Community Support Team] contact might be more effective (identified belief law enforcement is stalking her and colluding against her)."

This content was communicated by County employee Jennifer Stewart to County Division of Behavioral Health Services employees Jennifer Reiman and Pamela Pisani, and resulted in the Pamela Pisani trespass, invasion of privacy, and other tortious acts regarding the claimant that occurred on December 14, 2020 and that are now the subject of the Sacramento County Superior Court action *Parvin Olfati v. County of Sacramento, et al.*, Sacramento County Superior Court Case Number 34-2021-00310164. The claimant in a December 23, 2020 Public Records Act (PRA) request to the County Sheriff requested a category of documents that covered these documents Claimant did not receive until the 2022 dates of January 29 and March 8 – but the County Sheriff *never responded to this PRA request.*

The "letter" referenced is the claimant's November 9, 2020 police report/crime report to the County Sheriff reporting the theft of Claimant's cellphone in the Fair Oaks area in unincorporated Sacramento County, which is in the Sheriff's Department jurisdiction. The above-quoted communication from County Sheriff's Sergeant Briggs demonstrates that the December 14, 2020 acts by County employee Pisani were part of a County-instigated retaliation against claimant for her exercise of United States Constitution First/Fourteenth Amendments and California Constitution Article I, Sections 2 and 3 rights of speech and petitioning in the filing of a police report/crime report with the County Sheriff reporting claimant's reasonable belief regarding the

---

[1] "This individual =[h]ad [sic] a restraining order against her by a city councilmen [sic]."

2

3

circumstances of the theft of her cellphone. The County in its' March 8, 2022 PRA 22-740 hard copy response to January 31, 2022 PRA Request 22-471 stated that it had "no documents" that constituted, mentioned, referred to, or related to "any investigation or activity related to any determination the November 9, 2020 Parvin Olfati Police Report/Crime Report was: (i) "unfounded"; (ii) a "complaint indicative of potential mental health distress"; or (iii) merited referring the police report/crime report author and her address to County Division of Behavioral Health Services, MCST, and/or POP. Thus, it reasonably appears to the claimant that in order to retaliate against claimant from sending a police report that County Sheriff Sergeant Ronald Briggs found to be "unfounded", and to chill, coerce, threaten, or intimidate claimant from making subsequent police reports/crime reports, the County between December 10 and 14 of 2020 sent Ms. Pisani on a December 14, 2020 mission to stigmatize claimant as a person whose police reports are the subject of "mental health distress" and to entrap claimant into accepting County Behavioral Services activity toward her that she did not need and did not want, including but not limited to a Welfare & Institutions Code Section 5150 72-hour hold.

Claimant also reasonably believes that the ambush was coordinated or directed not only by the above-named employees of the County Sheriff and the County Department of Health Services Division of Behavioral Health Services, it was also coordinated or assisted by Mr. Howard Schmidt, who until some day in January 2021 was the Chief of Staff to Third District County Supervisor Susan Peters.

Here are the answers to the questions on the attached filled-out questionnaire:

1. Claimant's Name: Ms. Parvin Olfati
2. Claimant's Date of Birth: August 23, 1952.
3. Claimant's Address: 1859 45th Street, Sacramento, CA 95819
4. Address Where Notices Are To Be Sent: 1859 45th Street, Sacramento, CA 95819
5. Claimant's Telephone Number: (916) 949-4298 (a cellphone)
6. Claimant's e mail address: Claimant does not use e mail, and requests that all communications be sent via postal mail to Ms. Parvin Olfati, 1859 45th Street, Sacramento, CA 95819
7. Amount of Claim: a second tripling of the amount of all salary and benefits paid to Ms. Pam Pisani; County Division of Behavioral Health Services employees Jennifer Reiman and Jennifer Stewart; County Sheriff employee Sergeant Ronald Briggs; and Mr. Howard Schmidt.

   For any and all tortious acts (trespass, defamation, invasion of privacy, and intentional infliction of emotional distress) complained of in this Claim. Since each of these County employees were conspirators, each of them are liable for their own acts as well as the acts committed by each of the other conspirators.

   With the newly discovered information described in this supplement, claimant's claims now include: (1) retaliation for claimant's exercise of United States Constitution First/Fourteenth and California Constitution Article I/Sections 2 and 3 rights of speech and petitioning, by County Sheriff employee Sergeant Ronald Briggs and County Behavioral Health Services employees Jennifer Stewart, Jennifer Reiman, and Pamela Pisani; (2) additional acts of defamation and false light invasion of privacy by

4

County employee Pamela Pisani; and (3) acts of defamation and false light invasion of privacy by County employees Jennifer Reiman and Jennifer Stewart. The acts described in (1) above are actionable under both the California Tom Bane Civil Rights Act (Civil Code Section 52.1) and United States Code, Title 42, Section 1983. With respect to (1), they are acts of threats, intimidation, and coercion, and with respect to (2), they are acts committed under color of state law to retaliate against claimant for her exercise of First/Fourteenth Amendment rights of speech and petitioning.

8. Itemized List of Damages: see item 7 above and items 11 and 12 below.
9. Date(s) of Incident: December 10-14, and 28 of 2020
10. Location of Incident: 1859 45th Street, Sacramento, CA 95819
11. How did this incident occur?  See above.
12. Describe damage/injury/loss: See above
13. Names of County Employees Causing Damage/Injury/Loss: (a) Ms. Pam Pisani, LMFT Senior Mental Health Counselor, Community Support Team, Division of Behavioral Health Services, Department of Health Services, whose business card lists her work address as 3321 Power Inn Road, Suite 110; (b) Jennifer Stewart, Senior Mental Health Counselor, Community Support Team, Division of Behavioral Health Services, Department of Health Services; (c) Jennifer Reiman, Mental Health Program Coordinator with the Mobile Crisis Support Team of the Division of Behavioral Health Services, Department of Health Services; (d) Sergeant Ron Briggs of the Sacramento County Sheriff's Department; and (e)  then-employee Mr. Howard Schmidt of the Third District Supervisor Susan Peters office;

14. Claimant is receiving Medicare.
15. Signature of Claimant – see below

Sincerely, /s/ Ms. Parvin Olfati, Claimant



4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT TWELVE-A: DEFENDANT COUNTY's APRIL 9, 2022 CLAIM REJECTION LETTER**

PLAINTIFF's FIRST AMENDED COMPLAINT 117



**GEORGE HILLS**

*Our minds over your matters.*

April 9, 2022

Parvin Olfati
1859 45ᵗʰ Street
Sacramento, CA 95819

### NOTICE OF REJECTION OF CLAIM

RE:     CLAIM NO:         L210054
        CLIENT:           COUNTY OF SACRAMENTO
        OUR FILE NO:      87388-35

Dear Mr. Olfati:

NOTICE IS HEREBY GIVEN that the claim which you presented to the County of Sacramento on **April 4, 2022** was rejected.

### WARNING

Subject to certain exceptions, you have only six (6) months from the date that this notice was personally delivered, or deposited in the mail, to file a court action on this claim. See Government Code §945.6.

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

### NOTICE OF UNTIMELY CLAIM

IN ADDITION, NOTICE IS HEREBY GIVEN that a portion of that same claim (any acts or events prior to **October 4, 2021** which you presented to the County of Sacramento on **April 4, 2022**) will not be accepted for consideration because it was not presented within six months of the date of accrual of the cause of action as required by law. Accordingly, that portion of the claim has not and will not be considered on its merits. See Government Code §911.2.

Nothing herein, nor any actions taken by this public entity, or any of its officers, employees or agents with regard to the above-referenced matter, should be construed as a relinquishment or waiver of any legal requirement or any right of defense such as timeliness, sufficiency, proper presentation or any other matter which may be available to the County of Sacramento or any of its officers, employees or agents.

Please also be advised that, pursuant to §128.7 and §1038 of the California Code of Civil Procedure, the County will seek to recover all costs of defense in the event an action was not brought in good faith and with reasonable cause.

Sincerely,
GEORGE HILLS COMPANY, INC.
Charles A. Torretta, SCLA, MCSA
Claims Administrator
Sacramento Office
Enclosure: Proof of Service



1

## EXHIBIT THIRTEEN: PLAINTIFF'S NOVEMBER 9, 2020 POLICE REPORT LETTER TO THE COUNTY SHERIFF

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Police report/ Crime Report regarding the theft of my cellphone
from my car in Fair Oaks neighborhood on Saturday November 07, 2020
and being stalked all day by multiple law enforcements and private people/gangstalkers.



Ms. Parvin Olfati 1859 45ᵗʰ Street Sacramento, CA. 95819

November 9, 2020
VIA personal delivery to the City Clerk Box at the City Hall Kiosk and by U.S. First Class Mail [CaSacramentoP4@coplogic.com disabled]
The Honorable Daniel Hahn, Chief of Police, City of Sacramento Police Department, 5770 Freeport Boulevard, Sacramento, CA 95822

Cc on November 9, 2020 via e mail to CaSacramentoCountySD@coplogic.com and U.S. Mail  to The Honorable Scott Jones, Sheriff, County of Sacramento Sheriff's
Department, 701 "G" Street, Sacramento, California 95814

CC via Personal Delivery on November 9, 2020 to The Honorable Mayor Darrell Steinberg, City Clerk's Office, City Hall 5ᵗʰ floor, Sacramento, CA 95814
The Honorable Eric Guerra, City Council Member 6ᵗʰ district, City Clerk's Office, City Hall 5ᵗʰ floor, Sacramento, CA 95814
The Honorable Xavier Becerra, Attorney General, California Department of Justice, 1300 "I" Street, Sacramento, CA 95814 (ATTN: Public Inquiry Unit)

Victim : Me (Ms. Parvin Olfati),whose cellphone was stolen as she was being stalked around the clock 24/7 around the City and the County.

Crime: cellphone theft and related suspicious activities and criminal stalking of me (Parvin Olfati)

CRIMINAL(S):  Although I do not know the name of these criminals, but I am sure that this cries against  me has occurred under the direction and supervision of Steve
Maviglio who always wants to destroy the evidences and proof of  his crime against me.  On May09, 2020 he managed to orchestrate the ambush of me and police
brutality to gain access to my house and documents, computer, phone and camera,  and now after another one of his well orchestrate and well funded crime against me o
October 11, 2020 was exposed, he wanted to get access to my phone and documents that exposed him taking a video and pictures of me to be used against me in his
spin doctor style and mob fashion distorting the truth and fabricate fraudulent story,  A police report was filed regarding October 11, 2020 incident and his outmost
violent abuse of power against me that has been one of many of his abuses that I have been suffering since 2010 and has not stopped.  This crime happened in Fair Oaks
and there was multiple gangstalkers and suspect animals shelter.  Evidence stealing is always one of the last stage of crime against me.  This crime against me serve
multiple purposes, first the destroy the evidence and proofs of their crime and then accuse me of imaging and the crime that they had made me a victim to.
In addition to the almost thousand video footages and pictures, there were hundreds of text messages that I have been receiving from multiple political campaign and
my response  to them that I was begging them not to send me any text because I was terrified of Mr, Maviglio's retaliation including but not limited to subjecting me to
chemical, bio chemical and toxic gas, fume and other poisons. I reasonably believe some of these political texts were sent under direction of Mr. Maviglio and his
friends and enablers to set me up in spin doctors and mob fashion for more retaliation , abuse  and torture.

On Saturday, November 7, 2020, at some time after 5:00 p.m., my cellphone (LG G7 ThinQ Silver) was stolen from the car I was driving. The theft occurred as I was
driving from  Fair Oaks back to 45ᵗʰ Street in Sacramento.
Saturday November 07, 2020 was one of  many very violent and toxic day of my life in 2020,  I was stalked from early morning and the stalking did not stop until my
cell phone was stolen.  In the afternoon, my cellphone was acting very weird and I was having hard time to make a call.  This is always a pre text to the upcoming theft
of my cellphone. The stalking continued to Fair Oaks and back home while my house was also broken into and my video footages were deleted remotely.  There was a
well orchestrated and well funded victimzing me on Saturday November 07, 2020 that has not stopped.  Again, this violent theft and stalking and exposing me to more
chemical and toxic were all after the latest visit by Ms. Schmidt to Barbara Andres and Cecell taylor at 1871 45ᵗʰ street.

I reasonably believe the motive for the cellphone theft was to gain access to the over one thousand photos and video of suspicious and criminal activities, crime against
me, multiple gangstalkers, suspicious cars and drivers  who stalk me around the town and many evidences of multiple crimes against me, my animals and my house.
This is in line with the pattern and practice of Mr. Thiella, his friends and enablers including but not limited to Steve Maviglio and his criminal puppets and
gangstalkers to steal the evidences of the crimes they had committed against me.  As you know they have already stolen, most of my documents and evidence of the
crimes against me including the medical records of mine and my dog Sasha (his X ray was stolen and replaced with fraudulent one.  They Have also stolen the
multiple CD contained my deposition taken by Deputy attorney general Glenda Reager, They also  I have stored on the cellphone. I reasonably believe that these
persons include Mr. Steven Maviglio of 1901 45ᵗʰ Street (Sacramento, California 95819), who was shown my cellphone by City of Sacramento Police Department
Officer Maryna Stanionis on May 9, 2020, when she took my cellphone to a meeting with Mr. Maviglio where she likely displayed its' contents to him  – as part of the
false arrest of me that morning by Officer Stanionis and Officer Jared Robinet, one of the two officers who fired the bullets that killed Stephon Clark. I reasonably
believe that Mr. Maviglio is angry that the District Attorney dismissed the one and only charge – "resisting arrest" – for Insufficient Evidence, meaning that all of
perjury and related criminal activity by Mr. Maviglio and his partner in perjury, 1870 45ᵗʰ Street resident Barb Andres, was for nothing…and making Mr, Maviglio and
Ms. Andres both liable for intentionally communicating fal se information to the City Police.

Signed by the Targeted Victim of Mr. John Anthony Thiella since 1994 who also managed to make me a targeted victim of Sacramento Polcie department since 2003,
the Targeted Victim of Steven Maviglio since 2010, the Victim of Jonna Ward "VIP", and the VIP silent roster (incldins local state and federal law enforcement
agencies and intelligence agencies including Sacramento Polcie Department and their impact Team, healthcare providers, hospitals, major insurance companies,
security alarm companies, banks, othr private companies including but not limited to Tyco, Simplex/Grinnell, Johnson Controls, and the Number one Johnson Controls
criminal employee Cecil Taylor, who has been extremely lethal to my health and to the security and safety of me, my animals, and my property.

Thank You,

Ms. Parvin Olfati

1    **DECLARATION OF SERVICE IN PERSON**

2    I, STEVEN M. KAMP, declare and state as follows:

3    1.    I am over the age of 18, and reside in the County of Sacramento, State of California.

4    2.    I am not a party to this lawsuit. I represent the Plaintiff/PRA Petitioner in this action, Ms.
     Parvin Olfati.

5
     3.    On June    2022, I caused to be served by hand delivery on counsel for the Defendants and
6    PRA Respondents in this action a true and correct copy:

7        **PLAINTIFF PARVIN OLFATI'S FIRST AMENDED COMPLAINT**

8
     4. Service was effected in person on June   , 2022 by:
9
         (a) Personally delivering a copy of the above-referenced document to Porter Scott, 350
10            University Avenue, Suite 200, Sacramento, California 95825 in a manila envelope
11            addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200,
              Sacramento, CA 95825;
12        (b) Including therewith a true and correct copy of the Sacramento County Superior Court June
13            9, 2022 Minute Order directing the filing and service of the above-referenced document.

14

15   I declare under penalty of perjury that the foregoing statements are based on personal knowledge,
     and are true and correct. Executed at Sacramento, California, this __ day of June, 2022.
16   _____.
     /s/ STEVEN MARK KAMP (California State Bar Number 116817)
17   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
     Electronic Mail Address: steve.kamp@comcast.net
18   Telephone: (916) 501-1791 (cellular, voice/text)
     Attorney for Plaintiff/PRA Petitioner Ms. Parvin Olfati
19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 119

RECEIVED
LAW AND MOTION DROP BOX

2022 MAY 17   AM 9: 49

GDSSC COURTHOUSE
SUPERIOR COURT
OF CALIFORNIA
SACRAMENTO COUNTY

1  STEVEN MARK KAMP (California State Bar Number 116817)
2  STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
   Electronic Mail Address: steve.kamp@comcast.net
3  Telephone: (916) 501-1791 (cellular, voice/text)
   Attorney for Plaintiff Ms. Parvin Olfati
4

5

6

7

8

9          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10             IN AND FOR THE COUNTY OF SACRAMENTO

11

12                                         No. 34-2021-00310164-CU-CE-GDS

13  Ms. PARVIN OLFATI, Plaintiff             **[Proposed]**

14      v.                                   **ORDER GRANTING**

15  COUNTY OF SACRAMENTO; PAMELA             **PLAINTIFF Ms. PARVIN OLFATI'S**
    PISANI; JANE ROE DEFENDANT ONE;          **MOTION FOR LEAVE OF COURT TO**
16  JANE ROE DEFENDANT TWO; JANE             **FILE FIRST AMENDED COMPLAINT**
17  ROE DEFENDANTS 3-100; JOHN DOE           **Date: June 9, 2022**
    DEFENDANTS 1-100, Defendants
18  Defendants                               **Time: 9:00 a.m.**

19                                           **Department: 54**

20                                           **Reservation No.: 2640543**

21                                           **Complaint Filed: 10/25/21**

22

23      Plaintiff's Motion for Leave of Court To File First Amended Complaint came for hearing

24  in Department 54 of this Court on June 9, 2022. Plaintiff Ms. Parvin Olfati appeared through

25  counsel Steven Mark Kamp, Esq. Defendants County of Sacramento (County) and Pamela Pisani

26  (Pisani) appeared through Porter Scott, A Professional Corporation, and its' attorneys Carl

27  Fessenden, Esq. and Jordan McCrosskey, Esq. After hearing argument of counsel and reviewing

28  [Proposed] ORDER GRANTING PLAINTIFF Ms. PARVIN OLFATI'S MOTION FOR LEAVE OF COURT TO
    FILE FIRST AMENDED COMPLAINT 1



1   Plaintiff's Notice of Motion For Leave of Court to File First Amended Complaint, Plaintiff's

2   Rule 3.12324 Declaration, Plaintiff's supporting memoranda, and Defendant's opposition

3   memoranda, the Court rules as follows::

4   1. On or before July 11, 2022, Plaintiff Ms. Parvin Olfati shall file and serve as her First

5   Amended Complaint (FAC) the FAC attached as Exhibit A to her Notice of Motion For

6   Leave to File First Amended Complaint (Register of Actions ("ROA")___ in this proceeding).

7   2. Service of the FAC upon Defendants County and Pisani shall be made by delivering two

8   conformed copies of the filed FAC to Porter Scott, A Professional Corporation (one for County,

9   one for Pisani).

10  3, Service of the FAC upon each of new Defendants County Sheriff's Sergeant Ronald Briggs

11  and County Department of Health Services/Division of Behavioral Health Services employees

12  Jennifer Reiman and Jennifer Stewart shall be effected either:

13      (a) By Plaintiff delivering three conformed copies of the filed FAC to Porter Scott, A

14          Professional Corporation (one each for Briggs, Reiman, and Stewart); or,

15      (b) By Plaintiff personally serving a conformed copy of the FAC to each of Briggs, Reiman,

16          and Stewart at their County working addressers, with County and Porter Scott A

17          Professional Corporation directed to make all reasonable efforts to make Briggs, Reiman,

18          and Stewart available for in-person service at such addresses or other convenient

19          addresses in the County of Sacramento.

20  4. Each filed or served copy of the FAC shall have appended to its' face this Court's June 9, 2022

21  or subsequent date Minute Order.

22  5. The Clerk's Office is directed to expeditiously return conformed copies to Plaintiff's counsel

23  upon receipt of the FAC.

[Proposed] ORDER GRANTING PLAINTIFF Ms. PARVIN OLFATI'S MOTION FOR LEAVE OF COURT TO
FILE FIRST AMENDED COMPLAINT   2

1  6. If Plaintiff is unable to serve any of County, Pisani, Briggs, Reiman, and/or Stewart as directed

2  by this Order on or before July 11, 2022, Plaintiff shall report to the Court pursuant to California

3  Rules of Court Rule 3.110, subdivisions (b) and (e).

4  **IT IS SO ORDERED.**

5  DATED: June __, 2022

6  /s/ The Honorable _____ , Judge, Superior Court of the State of California in and for the

7

8  County of Sacramento

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[Proposed] ORDER GRANTING PLAINTIFF Ms. PARVIN OLFATI'S MOTION FOR LEAVE OF COURT TO FILE FIRST AMENDED COMPLAINT   3

1   **DECLARATION OF SERVICE IN PERSON**

2   I, STEVEN M. KAMP, declare and state as follows:

3   1.      I am over the age of 18, and reside in the County of Sacramento, State of California.

4   2.      I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

5   3.      On May 16, 2022, I caused to be served by hand delivery on counsel for the Defendants in this action a true and correct copy of:

6
7       **[Proposed]**

        **ORDER GRANTING**

8       **PLAINTIFF Ms. PARVIN OLFATI'S MOTION FOR LEAVE OF COURT TO FILE**
9       **FIRST AMENDED COMPLAINT**

10

11

12   4.  Service was effected in person on  May  16, 2022 by:

13          Personally delivering the copy to Porter Scott, 350 University Avenue, Suite 200,k
            Sacramento, California 95825 of the above-referenced document in a manila envelope
14          addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200,
15          Sacramento, CA 95825;

16

17   I declare under penalty of perjury that the foregoing statements are based on personal knowledge,
     and are true and correct. Executed at Sacramento, California, this 16th day of May, 2022.
18
     /s/ STEVEN MARK KAMP (California State Bar Number 116817)
19   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
20   Electronic Mail Address: steve.kamp@comcast.net
     Telephone: (916) 501-1791 (cellular, voice/text)
21   Attorney for Plaintiff/PRA Petitioner Ms. Parvin Olfati
     /
22

23

24

25

26

27

28

[Proposed] ORDER GRANTING PLAINTIFF Ms.  PARVIN OLFATI'S  MOTION FOR LEAVE OF COURT TO
FILE FIRST AMENDED COMPLAINT   4

1   STEVEN MARK KAMP (California State Bar Number 116817)
    STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
2   Electronic Mail Address: steve.kamp@comcast.net
    Telephone: (916) 501-1791 (cellular, voice/text)
3   Attorney for Plaintiff Ms. Parvin Olfati

4

5

6

7

8
                    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                       IN AND FOR THE COUNTY OF SACRAMENTO
10

11

12                                              No. **34-2021-00310164-CU-CE-GDS**

13  Ms. PARVIN OLFATI, Plaintiff              **PLAINTIFF'S MEMORANDUM OF**
                                               **POINTS AND AUTHORITIES IN**
14          v.                                 **SUPPORT OF PLAINTIFF'S MOTION**
                                               **FOR LEAVE OF COURT TO FILE FIRST**
15                                             **AMENDED COMPLAINT**

16  COUNTY OF SACRAMENTO; PAMELA
    PISANI; JANE ROE DEFENDANT ONE;           **Date: June 9, 2022**
16  JANE ROE DEFENDANT TWO;  JANE
    ROE DEFENDANTS 3-100; JOHN DOE            **Time: 9:00 a.m.**
17  DEFENDANTS 1-100,  Defendants
                                               **Department: 54**
18
                                               **Reservation No.: 2640543**
19
                                               **Complaint Filed: 10/25/21**
20

21

22

23

24

25

26

27

28

    PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE
    TO FILE FIRST AMENDED COMPLAINT 1

FILED/ENDORSED

MAY 1 7 2022

By: _____ E. Macdonald
            Deputy Clerk

1

**TABLE OF CONTENTS**

2

I.       Introduction and  Summary of Argument.............................................5

3

4

II.     Plaintiff's Motion Meets The Requirements of Both Subdivisions of California

5             Rules of Court Rule 3.1324.................................................................13

6

III.    Plaintiff's Notice of Motion Through A Line-by-Line Comparison Chart

7             Explains The "Same General Facts" of Both the IC and Proposed FAC, And The
             New Material Added From Defendants' Reiman Declaration......................18

8

IV.    Long-Established Liberality of Amendment Precedent Supports The Granting of

9             Plaintiff's Motion...........................................................................18

10    V.      Conclusion .....................................................................................19

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

3

California Cases

4

*Board of Trustees v. Superior Court* (2007) 149 Cal.App.4th 1154................................18, 19

*Green v. Obledo* (1984) 161 Cal.App.3d 680............................................................12

5

*Hirsa v. Superior Court* (1981) 118 Cal.App.3d 486............................................ 18, 19

6

7

*Kittredge Sports Co. v. Superior Court* (1989) 213 Cal.App.3d 1045................................18

8

*Klopstock v. Superior Court* (1941) 17 Cal.2d 13......................................................18

9

10

*Magpali v. Farmers Group* (1998) 28 Cal.App.4th 471................................................19

11

*Nestle v. Santa Monica* (1972) 6 Cal.3d 920............................................................18

12

13

*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820............................................12

14

Federal Statutes

15

United States Code, Title 42, Section 1983............................................................12, 17

16

United States Code, Title 42, Section 1988............................................................12

17

18

California Statutes

19

Civil Code, Section 52.1............................................................................12, 16

20

Code of Civil Procedure, Section 425.16............................................................9, 10, 15

21

Code of Civil Procedure, Section 426.50............................................................5, 19

22

Code of Civil Procedure, Section 427.10............................................................13, 17

23

Code of Civil Procedure, Section 473, subdivision (a)(1)............................................5, 18

24

Government Code Section 815.2, subdivision (a),,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,8, 16

25

Government Code Section 946.6 ............................................................6

26

Government Code Section 6258............................................................17

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 3

Constitutional Provisions

United States Constitution, First Amendment...............................................9, 12, 16, 17

California Constitution, Article I, Section 2................................................ ..9, 12, 16

California Constitution, Article I, Section 3..................................................9, 12, 16

Rules

California Rules of Court Rule 3.1113.......................................................................5

California Rules of Court Rule 3.1324........................................5, 12, 13, 14, 16, 17, 18

Public Records Act Response

City of Sacramento P028660-021522................................................................11

## I. Introduction and Summary of Argument[1]

Defendants County of Sacramento ("County") and County employee Pamela Pisani ("Pisani") refused the request of Plaintiff Ms. Parvin Olfati ("Plaintiff") for a Code of Civil Procedure (CCP) Section 472, subdivision (a) stipulation to file the Exhibit A Proposed First Amended Complaint.[2]  Therefore, pursuant to CCP Section 473, subdivision (a)(1); CCP Section 426.50; and California Rules of Court ("CRC") Rule 3.1324,  Plaintiff respectfully moves this Court for an Order granting Plaintiff leave to file the Proposed First Amended Complaint ("Proposed FAC") attached to the Notice of Motion as Exhibit A[3], in order to plead newly discovered facts and related new defendants and new causes of action – all derived from the Declaration of County Mental Health Program Coordinator Jennifer Reiman and related County electronic mail messages made exhibit A thereto, that were filed by Defendants County and Pisani in support of their Anti-SLAPP Statute Motion[4] that this Court denied on April 21, 2022.[5]

---

[1] This Memorandum of Points & Authorities consists of 20 pages. However, five of these pages are the caption page (page 1), table of contents (page 2), table of authorities (pages 3-4) , and the declaration of service (page 20), so this Memorandum of Points & Authorities is within the 15-page limit of California Rules of Court Rule 3.1113, subdivision (d).

[2] See California Rules of Court (CRC) Rule 3.1324(b) Declaration (submitted herewith), at 2: 3 – 20 (paragraphs 2-3).

[3] As required by CRC Rule 3.1324, subdivision (a). As also required by this provision, the Notice of Motion also explains the additions and deletions through a line-by-line comparison of the Proposed FAC with the Initial Complaint (IC), in the Notice of Motion at 3: 23 – 12: 22.

[4] Register of Actions (ROA) numbers 11-16. The Reiman Declaration and exhibits is ROA 15.

[5] ROA numbers 28-29.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 5

1    Plaintiff on October 25, 2021 filed her Initial Complaint (IC) in this action[6] against

2    Defendants County and Pisani, based entirely on what she had seen and experienced with her own

3    eyes and cellphone video on December 14, 2020, when Pisani (whom Plaintiff had never seen,

4    met, or heard of[7]), and who is employed by the County Division of Behavioral Health Services[8]

5    as a Senior Mental Health Counselor, without invitation or consent intruded into Plaintiff's in-

6    home afternoon of December 14, 2020 by making an unannounced "drop by" or "cold call

7    contact"[9] ambush of Plaintiff.  Defendant Pisani never identified herself as a County employee,

8    and said she was from an unidentified "community support team." Pisani then said that Pisani

9    was aware of an "anonymous complaint" about Plaintiff, about which Pisani a few seconds later

10   said "I think it was the [County] Sheriff's Department who complained" about Plaintiff.[10]  When

11   Plaintiff then said to Defendant Pisani: "So, the Sheriff Department has something to do with

12   this?"  Defendant Pisani then said: "well they forwarded some information stating you know",

13   Pisani never told Plaintiff the content of "the information" or the "anonymous complaint", or that

14

15

16

17   _____

18   [6] ROA number 1. As alleged at Initial Complaint (IC) paragraph 4 and Exhibit A Proposed FAC paragraph 5, Plaintiff within six months of the December 14, 2020 County/Pisani ambush (on April 5, 2021), timely filed her California Government Tort Claims Act (CGTCA) claim with the County Clerk of the Board of Supervisors, and County through its' agent George Hills & Company denied the claim on April 23, 2021. This claim alleged only the facts known to Plaintiff on that date, claims that Plaintiff later plead in her ROA 1IC. The facts then unknown to Plaintiff – but known by County and kept out of County responses to December 2020 Public Records Act (PRA) requests from Plaintiff – obviously could not be included in this claim. As alleged in the Exhibit A Proposed FAC paragraph 6, Plaintiff on April 4, 2022 filed a supplemental claim with the County that added the newly discovered facts and claims that were unknown to Plaintiff when the initial CGTCA claim was filed. As also alleged in Exhibit A Proposed FAC paragraph 6, Defendant County by claim rejection letter dated April 9, 2022 (a Saturday), and under the same claim and file numbers, rejected these claims. The claim rejection letter included language stating the supplemental claim was rejected as "untimely" because it alleged acts that took place more than six months before the filing of the claim – even though County never revealed these facts to Plaintiff until January 28, 2022, which was more than six months after the December 2020 newly discovered facts. Therefore, Plaintiff has calendared for June 9, 2022 in Department 54 her Petition to File Late Tort Claim Against Governmental Entity, pursuant to Government Code Section 946.6, filed on or before May 17, 2022.

[7] ROA number 1 IC at paragraph 8; Exhibit A Proposed First Amended Complaint (Proposed FAC), at paragraph 10.

[8] Plaintiff has never been a client of the County Division of Behavioral Health Services (ROA number 1 IC, paragraph 7; Exhibit A Proposed FAC, paragraph 9).

[9] ROA 13 Declaration of Pamela Pisani, paragraph 4.

[10] ROA 1 IC, paragraphs 30-31; Exhibit A Proposed FAC, paragraphs 62-65.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 6

1   the County Sheriff through proposed new Defendant Sergeant Ronald Briggs had sent Pisani on

2   an entrapment mission to "check in the [police report] letter writer"[11] because "CST [Community

3   Support Team] contact might be more effective" in dealing with Plaintiff's "identified belief law

4
    enforcement is stalking her and colluding against her"[12] which Defendant Pisani and proposed
5
6   new Defendant Reiman both treated as "indicative of potential mental health distress" in the

7   previously hidden evidence in the Reiman and Pisani Declarations.[13] Plaintiff suffered severe

8   emotional distress from her encounter with Pisani, especially from the realization (through

9   Pisani's announcement) that the Sheriff was "complaining" about Plaintiff and sending County

10  employees unannounced to Plaintiff's front porch in what Defendants in their Reiman Declaration

11  thirteen months later revealed was an attempt to entrap Plaintiff.[14] The Pisani "ambush" occurred

12
    near the time of what Plaintiff believes to be other following of and privacy invasion of Plaintiff
13
14  by two women whose acts are specifically identified in the IC and Proposed FAC, and whom

15  Plaintiff believes are County agents, but whose identity is unknown to Plaintiff (so Plaintiff is

16  suing them as Defendants Roe One and Roe Two).[15] In addition, Pisani committed trespass, by

17  remaining on Plaintiff's front porch, front yard, and driveway after Plaintiff expressly ordered

18  Pisani to leave and went back inside her closed front door; Plaintiff came outside a few minutes

19

20

21

22

23

24

25  [11] ROA 15 Declaration of Jennifer Reiman ("Reiman Declaration"), Exhibit A thereto, pages 2-3 (December 10, 2020 5:42 PM e mail).

26  [12] Ibid.

27  [13] See ROA 15 Reiman Declaration, at 2: 15 (paragraph 5) and ROA 13 Pisani Declaration, at 2: 3-4 (paragraph 2).

    [14] Exhibit A Proposed FAC, paragraph 71.
28
    [15]ROA Number 1 IC, at paragraphs 12-13; Exhibit A Proposed FAC, at paragraphs 17-18.

    PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 7

1   later only to find that Pisani had not only remained on Plaintiff's residence property , but was

2   stalking Plaintiff.[16]

3       Plaintiff in her IC alleged six Causes of Action against Defendant Pisani and two identity-

4   unknown Defendants (Roe One and Roe Two) as follows:

5

6          • First Cause of Action – Invasion of Privacy Intrusion Into Private Affairs[17]

7          • Second Cause of Action – Intentional Infliction of Emotional Distress[18]

8          • Third Cause of Action – Trespass[19] against Pisani only

9          • Fourth Cause of Action – Negligence[20]

10

11         • Fifth Cause of Action – False Light Invasion of Privacy[21]

12         • Sixth Cause of Action -- Defamation[22]

13  Plaintiff in her IC also pleaded two Causes of Action against Defendant County:

14         • Seventh Cause of Action – Negligent Training, Supervision, and Discipline of County

15            Senior Mental Health Counselors and Employees[23]

16         • Eighth Cause of Action – Government Code Section 815.2(a) *respondeat superior* for

17            the acts Pisani, Roe One, Roe Two, and other County employees or agents sued as

18            Roe Defendants 3-199 and Doe Defendants 1-100.[24]

19

20

21  [16] ROA number 1 IC, paragraphs 77-86. The Third Cause of Action for Trespass is identical in both the IC and the Proposed FAC. During Pisani's front porch spiel, Plaintiff expressly told Pisani to leave, and Plaintiff closed her

22  front door. A few minutes later, Plaintiff walked out to her front porch and front yard *and found Pisani to be not only present, but actually stalking Plaintiff on Plaintiff's front yard and driveway.* See ROA number 1 IC paragraphs

23  34-38 and 77-86; Exhibit A Proposed FAC paragraphs 67-71 and 129-138.

24  [17] ROA Number 1 IC, paragraphs 43-57.

25  [18] ROA number 1 IC, paragraphs 58-76.

26  [19] ROA number 1 IC, paragraphs 77-86.

27  [20] ROA number 1 IC, paragraphs 87-96.

28  [21] ROA number 1 IC, paragraphs 97-118.

[22] ROA number 1 IC, paragraphs 119-143.

[23] ROA number 1 IC, paragraphs 144-149.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 8

1
2
3
4
5

   Pursuant to a written extension stipulation with Plaintiff's undersigned counsel, both Defendants timely filed their joint Answer on January 18, 2022.[25] No trial date has been set. This action was stayed for the 83 days between January 28 and April 21 of 2022 because of the County/Pisani Anti-SLAPP Statute[26] Motion[27].

6
7
8
9
10
11
12
13
14
15
16
17
18
19

   On January 28, 2022  -- ten days after Defendants filed their ROA 10 Answer – this action was stayed when County/Pisani jointly filed an Anti-SLAPP Statute Motion[28] claiming that the on-the-job government employee speech and acts (including trespassing[29]) by Defendant Pisani were acts of "speech and petitioning" that arose under the United States Constitution First Amendment and  California Constitution and were "in connection with a public issue" that County and Pisani framed as informing the public about County mental health services[30] , even though Pisani in her front porch spiel fell apart when Plaintiff asked her to identify "who are your resources"[31], and County could have communicated about its' mental health service with infinitely greater clarity, breadth, and precision simply by sending a postal mail letter to Plaintiff, which would have: provided substantially greater and more precise content; saved the County money; and avoided invading Plaintiff's privacy. [32]  On April 21, 2022, this Court denied the

20
21
22
23
24
25
26
27
28

[24] ROA number 1 IC, paragraphs 150-161.

[25] ROA number 10.

[26]  Code of Civil Procedure (CCP) Section 425.16.

[27] ROA number 11-16 and 25. Plaintiff's opposition memorandum, exhibits, and declarations are at ROA numbers 20-23. The Court in ROA 28-29 denied the motion on April 21, 2022.

[28] ROA numbers 11-16.

[29] During Pisani's front porch spiel, Plaintiff expressly told Pisani to leave, and Plaintiff closed her front door and went inside her residence. A few minutes later, Plaintiff walked out to her front porch and front yard *and found Pisani to be not only present, but actually stalking Plaintiff on Plaintiff's front yard and driveway.*  See ROA number 1 IC paragraphs 34-38 and 77-86; Exhibit A Proposed FAC paragraphs 67-71 and 129-138.

[30]  See, e.g., ROA numbers 12 and 25, County/Pisani memoranda in support of their Anti-SLAPP Statute Motion; ROA number 28, April 21, 2022 minute order at pages 4-5.

[31] ROA number 1 IC, at paragraph 33; Exhibit A Proposed FAC, at paragraph 66.

[32] Exhibit A Proposed FAC, at paragraphs 25, 28, 32.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 9

1   County/Pisani Anti-SLAPP Statute Motion[33], finding that County and Pisani had failed to meet

2   their burden of proving that the Pisani "speech" arose in connection with a public issue, which is

3   a foundational requirement of the Anti-SLAPP Statute[34]:

4

5   "Indeed, there appears to be no dispute that the alleged conduct by Pisani occurred in connection with her employment as a SMHC, calling into question whether or not such activity can be deemed in furtherance of the right to free speech. Nonetheless, even if the activity does constitute free speech, the private context of the conduct and statements alleged makes heavier Defendants' burden that the alleged conduct contributed to a discussion or resolution of a public issue for purposes of subdivision (e)(4). The purported conduct and communications were made privately by Pisani to Plaintiff and thereafter to her supervisor Reiman in an on-the-job communication. The speech was not advertising County mental health services to a public audience . . . nor is there any evidence that the speech contributed to a public discussion about mental health in the community or how it can be treated. . . . Defendants' argument that such activity concerns a public issue simply because it concerns mental health services offered by the County is too broad in the Court's opinion to come within the purview of subdivision (e)(4)."

10  ROA 28 minute order, page 5.

11      The denied Anti-SLAPP Statute Motion was premised on the Declaration of Jennifer

12  Reiman[35], the County Mental Health Program Coordinator. The Declaration text and the attached

13  exhibits A (a string of County e mail messages) and B (Plaintiff's November 9, 2020 Police

14  Report letter as received by the County Sheriff and proposed new Defendant Sheriff's Sergeant

15  Ronald Briggs) revealed that the December 14, 2020 Pisani acts were the result of a directive

16  from proposed new Defendant Sheriff's Sergeant Ronald Briggs to "get a mental health worker to

17  check in on the [Police Report] letter writer" and that using the "CST [Community Support Team,

18  of which Pisani identified herself as a member] might be more effective" in dealing with

19  Plaintiff's "identified belief law enforcement is stalking her and colluding against her"[36] This

20  "identified belief" was expressed in Reiman Declaration exhibit B, which was the Sheriff-

21  received Plaintiff's November 9, 2020 Police Report letter. Thus, the principal declaration for the

22  County's Anti-SLAPP Statute Motion revealed that Plaintiff's act of free speech and petitioning

[33] ROA numbers 28-29.

[34] CCP Section 425.16, first sentence.

[35] ROA number 15.

[36] Ibid.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 10

1   (sending a Police Report letter to the County Sheriff) resulted in retaliation against her by County

2   and Pisani acting at the direction of and in concert with proposed new Defendants Sheriff

3   Sergeant Ronald Briggs and Division of Behavioral Health Services employees Jennifer Reiman

4   and Jennifer Stewart[37]to stigmatize Plaintiff's speech and petitioning as the product of mental

5

6   illness[38];  indeed, County's Reiman and Pisani in their declarations both characterized Plaintiff's

7   Police Report letter as "indicative of potential mental health distress"[39] and stated that such

8   characterization was the reason sending Pisani unannounced to Plaintiff's residence.[40]

9       In addition, the Reiman Declaration exhibit A email string revealed that Defendant Pisani

10   and proposed new Defendants Reiman and Stewart defamed Plaintiff and placed her in a false

11   light by publishing County electronic mail message statements that Plaintiff was the restrained

12

13   party in a restraining order obtained against her by a member of the Sacramento City Council.[41]

14       Therefore, Plaintiff in her Proposed FAC adds the following new Causes of Action based

15   on these newly discovered facts known to Defendants County and Pisani but kept hidden from

16   Plaintiff until the January 28, 2022 filing of the ROA 11-16 Anti-SLAPP Statute Motion[42]:

17

18

19   [37] Exhibit A Proposed FAC, paragraphs 21-34, 43-47.

20   [38] See Exhibit A Proposed FAC, paragraphs 25-30.

21   [39] See ROA 15 Reiman Declaration, at 2: 15 (paragraph 5); ROA 13 (Pisani Declaration), at 2: 34-4 (paragraph 3).

22   [40] See ROA 15 (Reiman Declaration), at 2: 14-21 (paragraphs 5-6); ROA 13 (Pisani Declaration), at 2: 1-8 (paragraphs 3-4).

23   [41] Exhibit A Proposed FAC, paragraphs 35-42. As stated by the City of Sacramento in City of Sacramento PRA
    Reference Number P028660-021522, there is no restraining order against Plaintiff by any member of the Sacramento
24   City Council. This PRA response is judicially noticeable on the City of Sacramento website public records portal.
    The City of Sacramento is not a party to this action, nor are any of its' employees or agents.

25   [42] As alleged in the Exhibit A Proposed FAC, paragraphs 283-(a) and 283-(b), Plaintiff on December 15, 2020
    delivered to the County Clerk of the Board Office a Public Records Act (PRA) request for all records of **"County of**
26   **Sacramento Documents That Constitute, Mention, Refer To, And/or Relate To December 14, 2020 Pamela**
    **Pisani Senior Mental Health Counselor or LMFT Activity At 1859 45th Street And/or Related To Parvin**
27   **Olfati"**,  and on December 23, 2020 delivered to the County Sheriff's Department a PRA request for Sheriff's
    Department documents of:  **"Sheriff's Department Information Communicated To County of Sacramento**
28   **Department of Health Services Division of Behavioral Health Services Senior Mental Health Counselor LMFT**
    **Pamela Pisani That Mention, Refer to, or Relate to Parvin Olfati or 1859 45th Street"**;

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE
TO FILE FIRST AMENDED COMPLAINT 11

- Ninth Cause of Action[43] – Tom Bane Civil Rights Act [Civil Code Section 52.1] acts of threats, intimidation, and coercion committed by Defendants Pisani and County[44] and proposed new Defendants Sheriff's Sergeant Ronald Briggs and Division of Behavioral Health Services employees Reiman Stewart, for retaliating against Plaintiff for her exercise of speech and petitioning protected by the United States Constitution First Amendment and California Constitution, Article I, Sections 2 and 3;

- Tenth Cause of Action[45] – federal Civil Rights Act[46] against Defendant Pisani and proposed new Defendants Briggs, Reiman and Stewart for retaliating against Plaintiff for her exercise of First Amendment rights of speech and petitioning.

- Eleventh Cause of Action[47] – federal Civil Rights Act against Defendant County for ratification of the acts of Defendant Pisani and new Defendants Briggs, Reiman and Stewart; for deliberately indifferent training, supervision, and discipline of County Sheriff's Sergeants and County; and policies/customs that were the moving force behind the deprivations of First Amendment rights suffered by Plaintiff.

---

The Sheriff's Department never responded to Plaintiff's PRA request, and the County Clerk of the Board Office responded that it had no documents, even though these documents had already been created in the December 2020 email messages that would become exhibit A to the Reiman Declaration thirteen months later when the County and Pisani decided to use them for their unsuccessful Anti-SLAPP Statute Motion.

[43] Exhibit A Proposed FAC paragraphs 258-264.

[44] Defendant County is directly liable under the Tom Bane Civil Rights Act because Civil Code Section 52.1 includes counties within the Bane Act definition of "persons"; *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 841-844.

[45] Exhibit A FAC paragraphs 265-272.

[46] United States Code, Title 42, Section 1983. California state courts have concurrent jurisdiction over Section 1983 claims; *Green v. Obledo* (1984) 161 Cal.App.3d 680, 682-683, where the Third District Court of Appeal held that State Budget Act restrictions on payment of attorney's fee awards were irrelevant t a federal the Section 1983 attorney's fee statute (Section 1988 of Title 42, United States Code)) in a California state court Section 1983 action.

[47] Exhibit A FAC paragraphs 273-276. As discussed immediately above, this Court has concurrent jurisdiction with federal courts over this Section 1983 claim.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 12

Finally, a Twelfth Cause of Action is added for Public Records Act (PRA) writ of mandamus against Defendant County, for the failure of the County Sheriff to respond at all or to produce records in response to Plaintiff's multiple PRA requests, and for the County Clerk of the Board's failure to produce records regarding Pisani December 2020 activity regarding Plaintiff that Plaintiff requested in PRA requests, records in existence at the time of the PRA request that County would use thirteen months later for its' unsuccessful Anti-SLAPP Statute Motion. These PRA requests are delineated in 28 consecutively lettered sub-paragraphs[48] and electronic copies of the PRA requests are included in Exhibit Eleven to the Exhibit A Proposed FAC. The Twelfth Cause of Action is joined pursuant to CCP Section 427.10, subdivision (a):

> "A plaintiff who in a complaint, alone or with other co-plaintiffs, alleges a cause of action against one or more defendants may unite with such cause any other causes which [s]he has either alone or with any coplaintiffs against any of such defendants."

The Twelfth Cause of Action against County only for its' Sheriff's blatant refusal to comply with the PRA and the Clerk of the Board Office's willful or reckless failure to produce requested records in existence is such a Cause of Action.

## II.   Plaintiff's Motion Meets The Requirements of Both Subdivisions of California Rules of Court Rule 3.1324

The Proposed FAC is attached to the Notice of Motion as Exhibit A, as required by CRC Rule 3.1324, subdivision (a) (1).[49] In addition, as required by subdivision (a)(2), the Notice of Motion states which allegations are to be deleted "by page, paragraph and line number"[50]; and per subdivision (a)(3) of this Rule, states "what allegations are proposed to be added", also "by page, paragraph, and line number."[51] As stated in the California Rules of Court (CRC) Rule 3.1324,

---

[48] (a) through (z) and (aa), (bb).

[49] The Notice of Motion also explains the additions and deletions through a line-by-line comparison of the Proposed FAC with the Initial Complaint (IC), in the Notice of Motion at 3: 23 – 12: 22.

[50] Notice of Motion, at 3: 23 – 4: 7 (paragraph 5).

[51] Notice of Motion, at 4: 8 – 12:22 (paragraph 6).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 13

1   subdivision (b) Declaration of the undersigned counsel (submitted herewith)[52], Plaintiff has met

2   the requirements of each of the four subsections of CRC Rule 3.1324, subdivision (b), as follows:

3       1. Per subdivision (b) (3) of Rule 3.1324[53]: the facts giving rise to this Proposed FAC were

4           not discovered by Plaintiff until January 29, 2022, when the undersigned counsel received

5           in the postal mail Defendants' January 28, 2022 Anti-SLAPP Statute Motion and

6           supporting documents[54] including the Declaration of Jennifer Reiman ("Reiman

7

8           Declaration")[55], in which Ms. Reiman stated she was the County Mental Health Program

9           Coordinator and the supervisor of Defendant Pisani. The Reiman Declaration and its'

10          supporting exhibits included County electronic mail messages[56] revealing that: (a)

11          proposed new Defendant County Sheriff's Sergeant Ronald Briggs ordered that a "mental

12
          health worker" be sent to "check in on the letter writer [Plaintiff]" in retaliation for
13
          Plaintiff sending to the County Sheriff a Police Report letter[57] regarding the theft of her
14
15          cellphone in the Sheriff's Department jurisdiction Fair Oaks area, a Police Report that

16          Defendant Briggs determined without investigation to be "unfounded" and merited

17          County Community Support Team intervention that Defendant Briggs believed would be

18          "more effective" because Plaintiff's Police Report letter stated an "identified belief that

19
          law enforcement is stalking her and colluding against her"; and (b) new Defendants
20
          Reiman and Stewart, and Defendant Pisani, defamed Plaintiff with electronic mail
21
22          message statements that Plaintiff was the restrained party in a restraining order against her

23

24      [52] Referred to herein as the CRC Rule 3.1324(b) Declaration.

25      [53] Discussed in the CRC Rule 1.324(b) Declaration at 3: 6 – 4:2 (paragraph 5).

        [54] Register of Actions (ROA) numbers 11-16.
26
        [55] ROA number 15 (Reiman Declaration).
27
        [56] ROA number 15 (Reiman Declaration), Exhibit A thereto.

28      [57] ROA number 15, Exhibit B thereto. This letter is also included as Exhibit Thirteen in the proposed First Amended
        Complaint (FAC).

        PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE
        TO FILE FIRST AMENDED COMPLAINT 14

by a member of the Sacramento City Council[58], a statement that all three Defendants knew or in the exercise of reasonable care should have known was false.

2.  Per subdivision (b) (4) of Rule 3.1324[59], there are two sequential reasons why the request for amendment was not made earlier. First, the Defendant County electronic mail messages included in the Reiman Declaration should have been included in the County's response to Plaintiff's December 15, 2020 Public Records Act (PRA) request for:

> "County of Sacramento Documents That Constitute, Mention, Refer To, And/or Relate To December 14, 2020 Pamela Pisani Senior Mental Health Counselor or LMFT Activity At 1859 45th Street And/or Related To Parvin Olfati."

This PRA request is referenced in the Proposed FAC paragraph 283-(b), and an electronic copy of the PRA request is included in Exhibit Eleven thereto. **However, the County response to this PRA request was an electronic mail message stating that the County had no documents. Had Plaintiff been given these documents which were created by Defendant County shortly before and after Plaintiff sent her PRA request, the new allegations in the Proposed FAC would have been included in the ROA 1 IC.[60]**

Second, between January 28, 2022 (the day Defendants filed their Anti-SLAPP Statute Motion) and April 21, 2022 (the day the Court denied the motion), the Anti-SLAPP Statute stay of proceedings effected by CCP Sections 425.16, subdivision (g) and 472, subdivision (b), prevented Plaintiff from filing an amended complaint or moving for leave to file one. On Monday, April 25, 2022, the second court day after the Thursday, April 21, 2022 denial of the Anti-SLAPP Statute, Plaintiff's undersigned counsel called Department 54 to reserve

---

[58] ROA number 15, Exhibit A thereto.

[59] Discussed in the Rule 3.1324(b) Declaration, at 3: 4 – 4: 18 (paragraph 6)

[60] Plaintiff on December 23, 2020 sent the County Sheriff a PRA request for its' records of communications related to the Pisani acts of December 14, 2020; see Exhibit A Proposed FAC, paragraph 283-(b). The County Sheriff never responded.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 15

1    a hearing on this Motion, and was told the first available day was Thursday, June 9, 2022,

2    so Plaintiff agreed to make Reservation Number 2640543 for that date.[61]

3    3.    Per subdivision (b)(1) of Rule 3.1324[62], the effect of this Proposed FAC is to: (a) add as

4    new individual capacity Defendants County employees Sheriff's Sergeant Ronald Briggs,

5    Mental Health Counselor Jennifer Stewart, and Mental Health Program Coordinator

6    Jennifer Reiman, the three persons identified in the Reiman Declaration; (b) add new facts

7    and claims against new Defendants Briggs, Stewart, and Reiman, as well as existing

8    Defendant Pisani, to existing Causes of Action First (intrusion into private affairs invasion

9    of privacy) , Second (Intentional Infliction of Emotional Distress), and Fourth

10   (Negligence) ; (c) add new facts and claims against new Defendants Stewart and Reiman,

11   and existing Defendant Pisani, to existing causes of action Fifth (false light invasion of

12   privacy) and Sixth (defamation); (d) add new facts regarding new Defendants Briggs,

13   Stewart, and Reiman to the Seventh Cause of Action against Defendant County for

14   negligent training, supervision, and discipline; (e) add new facts regarding new

15   Defendants Briggs, Stewart, and Reiman to the Eighth Cause of Action against Defendant

16   County for Government Code Section 815.2, subdivision (a) *respondeat superior;* (f)

17   add a new Ninth Cause of Action against County, Pisani, Briggs, Stewart and Reiman for

18   violations of Civil Code Section 52.1, the Tom Bane Civil Rights Act, by retaliating

19   against Plaintiff for her exercise of her federal First Amendment and California

20   Constitution Article I, Sections 2 and 3 rights of speech and petitioning in filing the

[61] In the process, Department 54 staff made what they admit was an error, in listing this reservation under ROA number 30 as a "Motion to Withdraw as Counsel." Upon seeing this inaccurate and misleading information on the Superior Court Public Case Access System, Plaintiff's undersigned counsel immediately contacted Department 54 and received assurances that this error would be corrected, and also informed Defendants' counsel of this error in the April 25, 2022 letter attached hereto. By April 26, 2022, this erroneous information and ROA 30 had been removed from the website.

[62] Discussed in the CRC Rule 3.1324(b) Declaration at 5: 4 – 6: 19 (paragraph 7).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 16

1    Exhibit Thirteen Police Report letter with Defendant County's Sheriff's Department ; (g)

2    add a new Tenth Cause of Action under United States Code, Title 42, Section 1983

3    against new Defendants Briggs, Stewart and Reiman, and against Defendant Pisani, for

4    violation of Plaintiff's First Amendment rights of speech and petitioning by retaliating

5    against Plaintiff for her filing the Exhibit Thirteen Police Report letter with Defendant

6    County's Sheriff's Department; (h) add a new Eleventh Cause of Action against

7    Defendant County under  United States Code, Title 42, Section 1983 for its ratification of

8    the unconstitutional acts of new Defendants Briggs, Stewart and Reiman, and Defendant

9    Pisani; for policies and customs that were the moving force behind the unconstitutional

10   acts of new Defendants Briggs, Stewart and Reiman, and Defendant Pisani ; and

11   Defendant County's  deliberately indifferent training, supervision, and discipline of

12   County's Sheriff's Department Sergeants, Division of Behavioral Health Services Senior

13   Mental Health Counselors, and/or Division of Behavioral Health Services Mental Health

14   Program Coordinators that were the proximate cause of the constitutional violations by

15   new Defendants Briggs, Stewart and Reiman and Defendant Pisani;  and (i) add a new

16   Twelfth Cause of Action for a Public Records Act (PRA) writ of mandamus under

17   Government Code section 6258, joined pursuant to CCP Section of 427.10.

18   4.      Per subdivision (b)(2) of Rule 3.1324[63], the Proposed FAC is necessary and proper

19   to timely plea Plaintiff's causes of action based on facts that were unknown to Plaintiff

20   prior  to Defendant County's January 28, 2022 filing of the Reiman Declaration and

21   County electronic mail message; that were hidden from Plaintiff by County when County

22   responded to Plaintiff's December 15, 2020 PRA request regarding the Pisani and County

23   acts of December 14, 2020 with the false statement that County had no records, when in

---

[63] Discussed in the CRC Rule 3.1324(b) Declaration, at 6: 20 – 7: 5 (paragraph 8).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE
TO FILE FIRST AMENDED COMPLAINT 17

1    fact it had the electronic mail messages it would later attach to the Reiman Declaration;

2    and that Defendant County's Anti-SLAPP Statute Motion prevented from being made the

3    subject of any leave of Court Amended Complaint between January 28 and April 212.

4

5

6    **III.    Plaintiff's Notice of Motion Through A Line-by-Line Comparison Chart Explains The "Same General Facts" of Both the IC and Proposed FAC, And The New Material Added From Defendants' Reiman Declaration**

7

8    As required by CRC Rule 3.1324, subdivisions (a)(2) and (a)(3), Plaintiff's Notice of

9    Motion includes a line-by-line, paragraph-by-paragraph side-by-side comparison of the ROA 1 IC

10   and Exhibit A Proposed FAC. Notably, the Proposed FAC only deletes 21 paragraphs from the

11   IC, and replaces these paragraphs elsewhere in the Proposed FAC[64]; hence, the Proposed FAC

12   relates to "the same general set of facts"[65] alleged in the IC. The FAC then adds the newly

13   discovered facts and newly arising Causes of Action, as explained in the eight-page comparison

14

15   of the IC and FAC added allegations in the Notice of Motion, at  4: 8 – 12:23 (paragraph 6).

16   **IV.    Long-Established Liberality of Amendment Precedent Supports The Granting of Plaintiff's Motion**

17

18   It is well established that California courts have a policy of great liberality of amendment *at*

19   *any stage of the proceeding* so as to dispose of cases upon  their substantial merits. *Board of*

20   *Trustees v. Superior Court* (2007) 149 Cal.App.4[th] 1154, 1163; *Klopstock v. Superior Court*

21   (1941) 17 Cal.2d 13, 19-20. Consistent with these holdings, CCP Section 473, subdivision (a)(1)

22   gives our Superior Courts discretion to allow amendments in furtherance of justice. "This

23   discretion should be exercised liberally in favor of amendments, for judicial policy favors

24   resolution of all disputed issues in the same lawsuit" (*Nestle v. Santa Monica* (1972) 6 Cal.3d

25

26

27   [64] Notice of Motion, at 3: 23 – 4: 7 (paragraph 5).

28   [65] *Hirsa v. Superior Court* (1981) 118 Cal.App.3d 486, 489; *Kittredge Sports Co. v. Superior Court* (1989) 213 Cal.App.3d 1045, 1048.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 18

1   920, 939). In addition, CCP Section 426.50 states that leave to amend shall be granted whenever

2   "[a] party . . . fails to plead a cause of action . . . whether through oversight, inadvertence,

3   mistake, neglect, or other cause . . .", and: "[t]his subdivision shall be liberally construed to avoid

4   forfeiture of causes of action."

5

6        It is therefore "a rare case in which a court will be justified in refusing a party leave to

7   amend his or her pleading so that he or she may properly present his or her case. Thus, absent a

8   showing of prejudice to the adeverse party, the rule of great liberality in allowing amendment of

9   pladings will prevail." ( *Board of Trustees v. Superior Court*, supra). Here, the Proposed FAC is

10  based exclusively *upon newly discovered facts revealed by Defendants' sworn declarations and*

11  *electronic mail messages filed in support of a motion by Defendants that stayed discovery for 83*

12  *days.* Defendants should not be heard claiming they are "prejudiced" by Plaintiff's throwing their

13  own eletronic mail messages back at them.[66]  Indeed, "it is irrelevant that new legal theories are

14  introduced as long as the proposed amendments 'relate to the same general set of facts." *Hirsa v.*

15  *Superior Court* (1981) 118 Cal.App.3d 486, 489.

16

17      .    **V. Conclusion**

18      For the foregoing reasons, the Court is respectfully requested to grant Plaintiff leave to file

19  and serve the Exhibit A Proposed FAC by a date certain within 30 days, with filing and service to

20  include a copy of this Court's minute order on this Motion.

21

22  Respectfully submitted, /s/ STEVEN MARK KAMP (California State Bar Number 116817),

23  Attorney for Plaintiff/PRA Petitioner Ms. Parvin Olfati

24  STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
    Electronic Mail Address:
25  Telephone: (916) 501-1791 (cellular, voice/text)

26  DATED: May16, 2022

27  _____

28  [66] The only grounds for denying leave to amend are demonstrated "inexcusable delay and probable prejudice." *Magpali v. Farmers Group* (1998) 28 Cal.App.4th 471, 487-88. Neither is present here.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 19

1   **DECLARATION OF SERVICE IN PERSON**

2   I, STEVEN M. KAMP, declare and state as follows:

3   1.      I am over the age of 18, and reside in the County of Sacramento, State of California.

4   2.      I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

5   3.      On May 16, 2022, I caused to be served by hand delivery on counsel for the Defendants in this action a true and correct copy of:

6
7   **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE OF COURT TO FILE FIRST AMENDED COMPLAINT**

8
9

10  4.  Service was effected in person on May 16, 2022 by:

11      Personally delivering a true and correct copy of the above-referenced document to Porter

12      Scott, 350 University Avenue, Suite 200, Sacramento, California 95825 in a manila envelope addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200,

13      Sacramento, CA 95825;

14

15  I declare under penalty of perjury that the foregoing statements are based on personal knowledge, and are true and correct. Executed at Sacramento, California, this _16th_ day of May, 2022.

16  /s/ STEVEN MARK KAMP (California State Bar Number 116817)

17  STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
    Electronic Mail Address: steve.kamp@comcast.net

18  Telephone: (916) 501-1791 (cellular, voice/text)
    Attorney for Plaintiff/PRA Petitioner Ms. Parvin Olfati

19

20

21

22

23

24

25

26

27

28

STEVEN MARK KAMP (California State Bar Number 116817)
STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95835
Electronic Mail Address: steve.kamp@comcast.net
Telephone: (916) 501-1791 (cellular, voice/text)
Attorney for Plaintiff Ms. Parvin Olfati

FILED/ENDORSED

MAY 17 2022

By: _____ E. Macdonald
         Deputy Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SACRAMENTO

Ms. PARVIN OLFATI, Plaintiff

v.

COUNTY OF SACRAMENTO; PAMELA
PISANI; JANE ROE DEFENDANT ONE;
JANE ROE DEFENDANT TWO;  JANE
ROE DEFENDANTS 3-100; JOHN DOE
DEFENDANTS 1-100,  Defendants

No.  34-2021-00310164-CU-CE-GDS

**PLAINTIFF'S CRC RULE 3.1324(b)
DECLARATION OF STEVEN MARK
KAMP IN SUPPORT OF PLAINTIFF'S
MOTION FOR LEAVE OF COURT TO
FILE FIRST AMENDED COMPLAINT**

**Date: June 9, 2022**

**Time: 9:00 a.m.**

**Department: 54**

**Reservation No.: 2640543**

**Complaint Filed: 10/25/21**

I, STEVEN MARK KAMP, declare and state as follows:

1.  I represent the Plaintiff (Ms. Parvin Olfati) in this action. I have personal knowledge of the

facts set forth in this Declaration. I am an attorney at law licensed to practice in all state

and federal courts in the State of California, the U.S. Court of Appeals for the Ninth

Circuit, and the United States Supreme Court. I have been an active member of the State

1    Bar of California continuously since 1984 and an active member of The Florida Bar

2    continuously since 1982. I am also admitted to practice in the District of Columbia.

3  2.    Attached hereto as Exhibit B[1] is a true and correct electronic copy of the undersigned

4    counsel's April 25, 2022 electronic mail message/personal delivery letter to counsel for

5    Defendants County of Sacramento and Pamela Pisani, in which Plaintiff requested that

6    Defendants pursuant to Code of Civil Procedure (CCP) Section 472, subdivision (a), stipulate

7    that Plaintiff may file the Proposed FAC that was Exhibit A to her opposition memorandum

8    to Defendants' Anti-SLAPP Motion, a motion that the Court denied on April 21, 2022.

9    Attached as Exhibit C hereto is the April 29, 2022 letter from Defendants' counsel that in

10   paragraph 2 thereof rejects this request as follows:

11       "We cannot agree to so stipulate. Plaintiff has no basis on which to add any of the proposed
12       amendments. We believe that attempting to amend the complaint as proposed is in bad faith, especially
13       given that plaintiff is now on notice of the facts [sic]. We will oppose any attempt to amend, and, even
14       if the Court allows your amendment, [sic] will file as motion for summary judgment and ask for
         sanctions pursuant to C.C.P., Section 1038."

15

16  3.  Defendants' counsel refused to stipulate to amendment even though (as explained below)

17      the proposed amendments are derived exclusively from the content of and exhibits to the

18      County/Pisani Reiman Declaration in support of the County/Pisani unsuccessful Anti-

19      SLAPP Statute Motion[2] denied at ROA numbers 28-29.

20

21  4. The undersigned counsel's Exhibit B April 25, 2022 letter also informed Defendants'

22      counsel that June 9, 2022 had been reserved as the hearing date for this Plaintiff's Motion,

23      under Reservation Number 2640543, and that the content present on the Sacramento

24      County Superior Court Public Case Access System under Register of Actions (ROA)

25

26

27  [1] The Proposed First Amended Complaint is attached to the Notice of Motion as Exhibit A. There is no other Exhibit
    A filed under this Motion.

28  [2] ROA numbers 11-16.

PLAINTIFF'S CRC RULE 1.324(b) DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF
PLAINTIFF's MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 2

number 30 that the June 9, 2022 hearing had been served for a "motion to withdraw as counsel" was: (a) in error; and (b) Department 54 personnel were working to correct this error.   On April 26, 2022, the undersigned counsel checked this website and saw that this erroneous content under ROA number 30 had been removed, as had ROA number 30 itself.

5. Per subdivision (b)(3) of Rule 3.1324: the facts giving rise to this Proposed FAC were not discovered by Plaintiff until January 29, 2022, when the undersigned counsel received in the postal mail Defendants' January 28, 2022 Anti-SLAPP Statute Motion and supporting documents.[3]   One of these supporting documents was the Declaration of Jennifer Reiman ("Reiman Declaration")[4], in which Ms. Reiman stated she was the County Mental Health Program Coordinator and the supervisor of Defendant Pisani[5]. The Reiman Declaration and its' supporting exhibits included County electronic mail messages[6] revealing that: (a) proposed new Defendant County Sheriff's Sergeant Ronald Briggs ordered that a "mental health worker" be sent to "check in on the letter writer [Plaintiff]" in retaliation for Plaintiff sending to the County Sheriff a Police Report letter[7] regarding the theft of her cellphone in the Sheriff's Department jurisdiction Fair Oaks area, a Police Report that Defendant Briggs determined without investigation to be "unfounded" and merited County Community Support Team intervention that Defendant Briggs believed would be "more effective" because Plaintiff's Police Report letter stated an "identified belief that law enforcement is stalking her and colluding against her"; and (b) new Defendants

---

[3]  Register of Actions (ROA) numbers 11-16.

[4]  ROA number 15 (Reiman Declaration).

[5]  Whose declaration (ROA number 13) was also filed by Defendants in support of their Anti-SLAPP Statute Motion.

[6]  ROA number 15 (Reiman Declaration), Exhibit A thereto.

[7]  ROA number 15, Exhibit B thereto. This letter will be also included as Exhibit Thirteen in the proposed First Amended Complaint (FAC).

PLAINTIFF'S CRC RULE 1.324(b) DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 3

Reiman and Stewart, and Defendant Pisani, defamed Plaintiff with electronic mail message statements that Plaintiff was the restrained party in a restraining order against her by a member of the Sacramento City Council[8], a statement that all three Defendants knew or in the exercise of reasonable care should have known was false.

6. Per subdivision (b)(4) of Rule 3.1324, there are two sequential reasons why the request for amendment was not made earlier. First, the Defendant County electronic mail messages included in the Reiman Declaration should have been included in the County's response to Plaintiff's December 15, 2020 Public Records Act (PRA) request for: **County of Sacramento Documents That Constitute, Mention, Refer To, And/or Relate To December 14, 2020 Pamela Pisani Senior Mental Health Counselor or LMFT Activity At 1859 45th Street And/or Related To Parvin Olfati.** This PRA request is referenced in the Proposed FAC paragraph 283-(b), and an electronic copy of the PRA request is included in Exhibit Eleven thereto. **However, the County response to this PRA request was an electronic mail message stating that the County had no documents. Had Plaintiff been given these documents which were created by Defendant County shortly before Plaintiff sent her PRA request, the new allegations in the Proposed FAC would have been included in the Initial Complaint.**

Second, between January 28, 2022 (the day Defendants filed their Anti-SLAPP Motion) and April 21, 2022 (the day the Court denied the motion), the Anti-SLAPP Statute stay of proceedings effected by Code of Civil Procedure (CCP) Sections 425.16, subdivision (g) and 472, subdivision (b), prevented Plaintiff from filing an amended complaint or moving for leave to file one. On Monday, April 25, 2022, the second court day after the Thursday, April 21, 2022 denial of the Anti-SLAPP Statute, the undersigned counsel for Plaintiff

---

[8] ROA number 15, Exhibit A thereto.

PLAINTIFF'S CRC RULE 1.324(b) DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 4

1    called Department 54 to reserve a hearing on this Motion, and was told the first available

2    day was Thursday, June 9, 2022. Therefore, the undersigned counsel for Plaintiff agreed

3    to make Reservation Number 2640543 for that date.[9]

4

5

6    7.    Per subdivision (b)(1) of Rule 3.1324, the effect of this Proposed FAC is to: (a) add as

7    new individual capacity Defendants County employees Sheriff's Sergeant Ronald Briggs,

8    Mental Health Counselor Jennifer Stewart, and Mental Health Program Coordinator

9    Jennifer Reiman, the three persons identified in the Reiman Declaration; (b) add new facts

10    and claims against new Defendants Briggs, Stewart, and Reiman, as well as existing

11    Defendant Pisani, to existing Causes of Action First (intrusion into private affairs invasion

12    of privacy) , Second (Intentional Infliction of Emotional Distress), and Fourth

13    (Negligence) ; (c) add new facts and claims against new Defendants Stewart and Reiman,

14    and existing Defendant Pisani, to existing causes of action Fifth (false light invasion of

15    privacy) and Sixth (defamation); (d) add new facts regarding new Defendants Briggs,

16

17    Stewart, and Reiman to the Seventh Cause of Action against County for negligent

18    training, supervision, and discipline; (e) add new facts regarding new Defendants Briggs,

19    Stewart, and Reiman to the Eighth Cause of Action against County for Government Code

20    Section 815.2, subdivision (a) *respondeat superior;*   (f) add a new Ninth Cause of Action

21

22    against County, Pisani, Briggs, Stewart and Reiman for violations of Civil Code Section

23    52.1, the Tom Bane Civil Rights Act, by retaliating against Plaintiff for her exercise of her

24    federal First Amendment and California Constitution Article I, Sections 2 and 3 rights of

25

26    _____

[9] In the process, Department 54 staff made what they admit was an error, in listing this reservation under ROA
27   number 30 as a "Motion to Withdraw as Counsel." Upon seeing this inaccurate and misleading information on the
Superior Court Public Case Access System, I immediately contacted Department 54 and received assurances that this
28   error would be corrected. I also informed Defendants' counsel of this error in the April 25, 2022 letter attached
hereto. By April 26, 2022, this erroneous information and ROA 30 had been removed from the website.

PLAINTIFF'S CRC RULE 1.324(b) DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF
PLAINTIFF's MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 5

speech and petitioning in filing the Exhibit Thirteen Police Report letter with Defendant County's Sheriff's Department ; (g) add a new Tenth Cause of Action under United States Code, Title 42, Section 1983[10] against new Defendants Briggs, Stewart and Reiman, and against Defendant Pisani, for violation of Plaintiff's First Amendment rights of speech and petitioning by retaliating against Plaintiff for her filing the Exhibit Thirteen Police Report letter with Defendant County's Sheriff's Department; (h) add a new Eleventh Cause of Action against Defendant County under  United States Code, Title 42, Section 1983 for its ratification of the unconstitutional acts of new Defendants Briggs, Stewart and Reiman, and Defendant Pisani; for policies and customs that were the moving force behind the unconstitutional acts of new Defendants Briggs, Stewart and Reiman, and Defendant Pisani; and Defendant County's  deliberately indifferent training, supervision, and discipline of County Sheriff's Department Sergeants, Division of Behavioral Health Services Senior Mental Health Counselors, and/or Division of Behavioral Health Services Mental Health Program Coordinators that were the proximate cause of the constitutional violations by new Defendants Briggs, Stewart and Reiman and Defendant Pisani;  and (i) add a new Twelfth Cause of Action for PRA writ of mandamus against Defendant County under Government Code section 6258, joined pursuant to CCP Section 427.10.

8.     Per subdivision (b)(2) of Rule 3.1324, the Proposed FAC is necessary and proper to timely plea Plaintiff's causes of action under California and federal law based on facts that were unknown to Plaintiff prior  to Defendant County's filing of the Reiman Declaration

___

[10] Although Proposed FAC Causes of Action Tenth and Eleventh are based on a federal statute [United States Code, Title 42, Section 1983], they can be filed in California Superior Court because California state courts have concurrent jurisdiction over Section 1983 claims; *Green v. Obledo* (1984) 161 Cal.App.3d 680, 682-683, where the Third District Court of Appeal held that State Budget Act restrictions on payment of attorney's fee awards were irrelevant t a federal the Section 1983 attorney's fee statute (Section 1988 of Title 42, United States Code)) in a California state court Section 1983 action.

1   and County electronic mail message exhibits thereto on January 28, 2022; that were

2   hidden from Plaintiff by County when County responded to Plaintiff's December 15, 2020

3   PRA request for records related to the Pisani and County acts of December 14, 2020 with

4   the false statement that County had no records, when in fact it had created the electronic

5   mail messages it would later attach to the Reiman Declaration; and that Defendant

6   County's Anti-SLAPP Statute Motion prevented from being made the subject of any

7   Amended Complaint between January 28, 2022 and April 21, 2022.

8

9   I declare under penalty of perjury under the laws of the State of California that the statements

10  herein are true and correct, and that this Declaration was executed in Sacramento, California on

11  May 16, 2022.

12

13  /s/ Steven Mark Kamp, Attorney for Plaintiff Ms. Parvin Olfati

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S CRC RULE 1.324(b) DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF
PLAINTIFF's MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 7

**EXHIBIT B**

**<u>Exhibit B: Plaintiff's April 25, 2022 Electronic Mail Message/Hand Delivered Letter to</u>**
**<u>Defendants' Counsel Requesting Stipulation for Plaintiff to File First Amended Complaint</u>**

*STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, California 95822*
*Electronic Mail Address: steve.kamp@comcast.net*
*Telephone Number: (916) 501-1791 (cellular, voice/text)*
                                                        April 25, 2022
Via electronic mail to cfessenden@porterscott.com  and via personal delivery
Carl Fessenden, Esq., Porter Scott, 350 University Drive, Suite 200, Sacramento, CA 95825
RE: *Ms. Parvin Olfati vs. County of Sacramento, Pamela Pisani, et al.*, Sacramento County
Superior Court Case No. 34-2021-00310164-CU-CE-GDS
Dear Mr. Fessenden:
On April 21, 2022, the Court denied the Anti-SLAPP Motion filed by Defendants County of
Sacramento and Pamela Pisani. Therefore, the Anti-SLAPP statute stay of discovery and other
litigation activity is no longer in effect. Please advise in writing as follows:

  1. Whether Defendants County and Pisani can serve responses to the enclosed Set Two
     requests for production of documents and things[11] within thirty-five calendar days of April
     25, which I calculate to be Tuesday, May 31, 2022.
  2. Whether Defendants County and Pisani can serve responses to the enclosed Set Two form
     interrogatories[12] within thirty-five calendar days of April 25, which I calculate to be
     Tuesday, May 31, 2022.
  3. Whether Defendants County and Pisani will stipulate, pursuant to Code of Civil Procedure
     472, subdivision (a), second sentence, that Plaintiff may file and serve the First Amended
     Complaint attached as Exhibit A to Plaintiff's opposition memorandum to the
     County/Pisani Anti-SLAPP Motion, with minor changes that I will be glad to advise you
     of in writing upon request.
  4. Whether your office will accept service of process of the First Amended Complaint on new
     Defendants Sheriff's Sergeant Ronald Briggs, County Mental Health Program
     Coordinator Jennifer Reiman, and County Senior Mental Health Counselor Jennifer
     Stewart.

Thank you for your attention to this matter. Finally, please be advised that Register of Actions
number 30 on the Superior Court Public Case Access System is in error. The undersigned has
calendared (reservation 2640543) a hearing for June 9, 2022 (the first available date), but not for
a motion to withdraw as counsel. Rather, the hearing is for a Motion For Leave of Court to File
First Amended Complaint. The Department 54 personnel have been so advised and state they are
working to correct the error.


Very truly yours,
/s/ Steven Mark Kamp, State Bar of California Number 116817
Attorney for Plaintiff Ms. Parvin Olfati

---
[11] Which are identical to the Sets One served on January 24, 2022.

[12] Which are identical to the Sets One served on January 24, 2022.

PLAINTIFF'S CRC RULE 1.324(b) DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF
PLAINTIFF's MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 8

1   Enclosures: Plaintiff's Set Two requests for production of documents and things to County and
2   Pisani
    CC with Enclosures: Ms. Parvin Olfati
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT C

1

**<u>Exhibit C: Defendants' Counsel April 29, 2022 Electronic Mail Message/Postal Mail Letter Rejecting Stipulation for Plaintiff to File First Amended Complaint</u>**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S CRC RULE 1.324(b) DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF
PLAINTIFF's MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 10

# P O R T E R | S C O T T

ATTORNEYS

April 29, 2022

**VIA EMAIL and U.S. MAIL**
Steven Mark Kamp
STEVEN KAMP LAW OFFICE
22 Petrilli Circle
Sacramento, C 95822
Tel: (916) 501-1791
Steve.kamp@comcast.net

RE:     *Olfati v. County of Sacramento, et al.*
        **Sacramento County Superior Court Case No. 34-2021-00310164**
        **Date of Loss:  12/14/20**

Dear Mr. Kamp:
I am in receipt of your April 25, 2022, letter posing three issues:

1. **Whether Defendants County and Pisani can serve responses to the enclosed Set Two requests for production of documents and things within thirty-five calendar days of April 25, which [you] calculate to be Tuesday, May 31, 2022.**

We believe this is reasonable and will attempt to compile responses by May 31st.

2.      **Whether Defendants County and Pisani will stipulate, pursuant to Code of Civil Procedure 472, subdivision (a), second sentence, that Plaintiff may file and serve the First Amended Complaint attached as Exhibit A to Plaintiff's opposition memorandum to the County/Pisani Anti-SLAPP Motion, with minor changes.**

We cannot agree to so stipulate.  Plaintiff has no basis on which to add any of the proposed defendants.  We believe that attempting to amend the complaint as proposed is in bad faith, especially given that plaintiff is now on notice of the facts.  We will oppose any attempt to amend, and, even if the Court allows your amendment, will file a motion for summary judgment and ask for sanctions pursuant to C.C.P., § 1038.

3.      **Whether your office will accept service of process of the First Amended Complaint on new Defendants Sheriff's Sergeant Ronald Briggs, County Mental Health Program Coordinator Jennifer Reiman, and County Senior Mental Health Counselor Jennifer Stewart.**

As outlined above, we cannot accept service.

                                        Very truly yours,

                                        PORTER SCOTT
                                        A PROFESSIONAL CORPORATION

                                        By   _Carl L._

CLF/JMC/ere                                  Carl L. Fessenden

1  **DECLARATION OF SERVICE IN PERSON**

2  I, STEVEN M. KAMP, declare and state as follows:

3  1.    I am over the age of 18, and reside in the County of Sacramento, State of California.

4  2.    I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

5  3.    On May 16 , 2022, I caused to be served by hand delivery on counsel for the Defendants in this action a true and correct copy of:

6
7  **PLAINTIFF'S CRC RULE 3.1324(b) DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF'S  MOTION FOR LEAVE OF COURT TO FILE FIRST AMENDED COMPLAINT**

8

9
10  4. Service was effected in person on  May 16,  2022 by:

11   Personally delivering a true and correct copy of the above-referenced document to Porter Scott, 350 University Avenue, Suite 200, Sacramento, California 95825 in a manila envelope

12   addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200, Sacramento, CA 95825;

13

14  I declare under penalty of perjury that the foregoing statements are based on personal knowledge, and are true and correct. Executed at Sacramento, California, this _16th_ day of May, 2022.

15

16  /s/ STEVEN MARK KAMP (California State Bar Number 116817)
   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822

17  Electronic Mail Address: steve.kamp@comcast.net
   Telephone: (916) 501-1791 (cellular, voice/text)

18  Attorney for Plaintiff/PRA Petitioner  Ms. Parvin Olfati

19

20

21

22

23

24

25

26

27

28

**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
cfessenden@porterscott.com
Jordan M. McCroskey, SBN 340068
jmccroskey@porterscott.com
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants
COUNTY OF SACRAMENTO and PAMELA PISANI
*Exempt from Filing Fees Pursuant to Government Code § 6103*

FILED/ENDORSED

MAY 2 6 2022

By: _____ H. PEMELTON
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

MS. PARVIN OLFATI,

　　　　　Plaintiffs,

v.

COUNTY OF SACRAMENTO; PAMELA
PASANI; JANE ROE DEFENDANT ONE;
JANE ROE DEFENDANT TWO; JANE
ROE DEFENDANT 3-100, JOHN DOE
DEFENDANTS 1-100,

　　　　　Defendants.

_____/

CASE NO. 34-2021-00310164

**OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO FILE AMENDED
COMPLAINT**

**Date: June 9, 2022**
**Time: 9:00 a.m.**
**Department: 54**
**Reservation No.: 2640543**
**Complaint Filed: 10/25/21**

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

Defendant, COUNTY OF SACRAMENTO and PAMELA PASANI hereby oppose the motion

of to amend the Complaint in this action. This Opposition is based upon the following grounds:

1. Failure to state a valid claim against defendant;

2. New claims are time-barred;

3. Constitutes a sham amendment;

4. Impermissible addition of new defendant – time barred.

5. Writ of mandamus not procedurally appropriate

{02711640.DOCX}　　　　　　　　　　　　　　　　1
**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

1    This Opposition is further based upon the complete file and records in this action, the attached

2    Memorandum of Points and Authorities, the Declaration of Jordan McCroskey, and any and all

3    documentary or oral evidence as may be presented at the time of the hearing on this Motion.

4

5    Dated: May 26, 2022

6    Respectfully submitted,

7                                            PORTER SCOTT
                                             A PROFESSIONAL CORPORATION
8

9

10

11                                          By _____
                                                 Carl L. Fessenden
12                                               Jordan M. McCroskey
                                                 Attorneys for Defendants
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{02711640.DOCX}                              2
**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

### I.

### INTRODUCTION

4

5    Plaintiff seeks to add additional causes of action and additional parties without satisfying the

6    mandatory prelitigation requirements within the claim filing requirements pursuant to Government Code

7    section 945.6. Plaintiff seeks to add Jennifer Reiman, Jennifer Stewart, and Sergeant Roland Briggs but

8    failed to bring these parties and causes of action within the necessary timeframe articulated in the

9    Government Code section 945.6-six months from accrual. Additionally, the plaintiff fails to make a

10   sufficient showing pursuant to Government Code section 946.4.

11   The plaintiff's cause of action allegedly accrued on December 14, 2020.

12

13

### II.

14

### STATEMENT OF FACTS

15   Plaintiff filed her original government claim on April 5, 2021. (Declaration of Jordan

16   McCroskey (Decl. McCroskey), Exhibit A, Plaintiff's Government Claim.) Plaintiff filed her Complaint

17   on October 25, 2021. (Plaintiff's Original Complaint, ROA # 1.) No application to file a late claim was

18   submitted on the newly alleged conduct on behalf of the newly alleged defendants. The plaintiff filed a

19   new claim based on similar conduct, in December 2020, naming new defendants and conduct on April 4.

20   2022. Plaintiff attempts to file a first amended complaint to incorporate these new allegations and these

21   new defendants. (Petition for late claim, ROA # 36.) These allegations are brought 477 days late.

22   Plaintiff's motion must fail. Defendants oppose this motion on the grounds that: (1) the

23   complaint fails to state a valid cause of action against this defendant, and it cannot be cured by the

24   proposed amendment; (2) Plaintiff's amendment to add a new defendant is time-barred; (3) Plaintiff's

25   proposed amendment constitutes a "sham" amendment and should not be permitted; (4) Plaintiff's

26   amendment to add a new defendant is time-barred; and (5) Plaintiff cannot file a writ of mandamus at

27   this stage.

28   / / /

{02711640.DOCX}                                    3

**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

### III.

### THE COMPLAINT FAILS TO STATE A VALID CAUSE OF ACTION AGAINST THIS DEFENDANT, AND IT CANNOT BE CURED BY THE PROPOSED AMENDMENT

It is not abuse of discretion to deny leave to amend if it appears to a certainty that no basic right of action can possibly exist or no relief can possibly be granted. This is most apt to occur where, [as here], the purported amended pleading is deficient as a matter of law and the defect cannot be cured by further amendment. *California Casualty Gen. Ins. Co. v. Superior Court*, 173 Cal. App. 3d 274, 280–281 (4th Dist. 1985).) If the facts alleged in a motion for leave to amend show that plaintiff cannot amend to state a good cause of action, refusal of leave is not an abuse of the trial court's discretion. *Robertson v. City of Long Beach*, 19 Cal. App. 2d 676, 679 (2d Dist. 1937), *see also Mabie v. Hyatt*, 61 Cal. App. 4th 581, 596 (2d Dist. 1998).

### IV.

### PLAINTIFF'S AMENDMENT TO ADD A NEW DEFENDANT IS TIME-BARRED

Due process forbids relation back to escape the statute of limitations where the amended complaint is against a new defendant, i.e., one not named in the original complaint and not served as a "Doe." "The straightforward rule is that amendment after the statute of limitations has run will not be permitted where the result is the addition of a party who, up to the time of the proposed amendment, was neither a named nor a fictitiously designated party to the proceeding." *Ingram v. Superior Court,* 98 Cal. App. 3d 483, 492 (3d Dist. 1979); *Woo v. Superior Court*, 75 Cal. App. 4th 169, 176 (4th Dist. 1999). (See Weil & Brown, CAL. PRAC. GUIDE: CIV. PRO. BEFORE TRIAL (The Rutter Group 2012), section 6:750.)

Whether a plaintiff may amend the complaint to change a party's description or characterization "after the statute of limitations has run depends on whether the misdescription or mischaracterization is merely a misnomer or defect in the description or characterization, or whether it is a substitution or entire change of parties. In the former case an amendment will be allowed; in the latter, it will not be allowed." *Thompson v. Palmer Corp.,* 138 Cal. App. 2d 387, 390 (2d Dist. 1956); *accord, Diliberti v. Stage Call Corp.,* 4 Cal. App. 4th 1468 (4th Dist. 1992).

{02711640.DOCX}                                        4

**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Here, plaintiff seeks to name a completely new defendant, who neither has been served as a Doe defendant, nor has been misnamed or otherwise excusably omitted by mistake or inadvertence. In short, the statute of limitations has run, and Plaintiff is time-barred to bring this proposed Defendant into the action.

**V.**

## PLAINTIFF'S PROPOSED AMENDMENT CONSTITUTES A "SHAM" AMENDMENT AND SHOULD NOT BE PERMITTED

The court has discretion to deny leave to amend where the proposed amendment omits or contradicts harmful facts pleaded in the original pleading ... unless a showing is made of mistake or other sufficient excuse for changing the facts. Absent such a showing, the amendment may be treated as a sham. *Vallejo Development Co. v. Beck Development Co.,* 24 Cal. App. 4th 929, 946 (1st Dist. 1994). (See Weil & Brown, CAL. PRAC. GUIDE: CIV. PRO. BEFORE TRIAL (The Rutter Group 2014), Section 6:648.)

In this case, it is clear from a reading of the original complaint that plaintiff is attempting by amendment to eliminate or alter the averments in the initial pleading. Originally, Plaintiff denied the existence of any restraining orders against them. (Plaintiff's Declaration in support of Plaintiff's Opp. To Defendant's Anti-SLAPP motion, ROA # 22, "I am not now, nor have I ever been, the restrained party in any restraining order obtained by any member off the Sacramento City Council.") Plaintiff claimed Defendants defamed her by stating she "*has a restraining order against her by a city counselmen* [sic]." (Opposition to Anti-SLAPP motion, ROA # 20.)

But now, in meet and confer efforts prior to the CMC, Plaintiff claims the restraining order was the result of some sort of conspiracy against her. (Plaintiff's CMC statement, ROA # 41, p. 1-2.) She was clearly involved in the restraining order matter and was notified of the order against her (See restraining order case.) Thus, she would have known about the restraining order at the time she originally denied its existence.

Finally, Plaintiff has made no showing of mistake or other sufficient excuse for changing the facts in its pleading. Therefore, the motion to amend should be denied.

**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

# VI.
## PLAINTIFF'S AMENDMENT TO ADD A NEW DEFENDANT IS TIME-BARRED

Due process forbids relation back to escape the statute of limitations where the amended complaint is against a new defendant, i.e., one not named in the original complaint and not served as a "Doe." "The straightforward rule is that amendment after the statute of limitations has run will not be permitted where the result is the addition of a party who, up to the time of the proposed amendment, was neither a named nor a fictitiously designated party to the proceeding." Ingram v. Superior Court, 98 Cal. App. 3d 483, 492 (3d Dist. 1979); Woo v. Superior Court, 75 Cal. App. 4th 169, 176 (4th Dist. 1999). (See Weil & Brown, CAL. PRAC. GUIDE: CIV. PRO. BEFORE TRIAL (The Rutter Group 2012), section 6:750.)

Whether a plaintiff may amend the complaint to change a party's description or characterization "after the statute of limitations has run depends on whether the misdescription or mischaracterization is merely a misnomer or defect in the description or characterization, or whether it is a substitution or entire change of parties. In the former case an amendment will be allowed; in the latter, it will not be allowed." Thompson v. Palmer Corp., 138 Cal. App. 2d 387, 390 (2d Dist. 1956); accord, Diliberti v. Stage Call Corp., 4 Cal. App. 4th 1468 (4th Dist. 1992).

Here, plaintiff seeks to name a completely new defendant, who neither has been served as a Doe defendant, nor has been misnamed or otherwise excusably omitted by mistake or inadvertence. In short, the statute of limitations has run, and Plaintiff is time-barred to bring this proposed Defendant into the action.

# VII.

## PLAINTIFF CANNOT FILE A WRIT OF MANDAMUS WITH THIS PETITION

"The procedure for filing the writ petition depends on whether petitioner chooses to proceed by noticed motion or alternative writ. Historically, writ petitions were usually initiated by petitioning for alternative and peremptory writs and then securing ex parte an alternative writ, which, when served on respondent, functions like a summons." (See Rutter, Administrative Law, "D. Filing and Service of Writ Petition.") "If petitioner employs the noticed motion procedure, which has become the prevalent practice for initiating a writ proceeding, the filing process is generally identical to that for filing a normal civil

{02711640.DOCX}                                    6
**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

1  complaint—i.e., the petition is first filed with the court, then served on the other parties (*Id.*). On the
2  other hand, if petitioner proceeds by application for an alternative writ, service is generally required
3  before the petition is filed (*Id.*).

4      Here, Plaintiff has not followed the proper procedures.

## VIII.

## CONCLUSION

8      For all of the foregoing reasons, Plaintiff's motion to amend its complaint should be denied with
9  prejudice.

11 Dated: May 26, 2022
12 Respectfully submitted,

13                           PORTER SCOTT
14                           A PROFESSIONAL CORPORATION

16                           By _____
17                              Carl L. Fessenden
18                              Jordan M. McCroskey
                               Attorneys for Defendants

{02711640.DOCX}                        7
**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

*Olfati v. County of Sacramento et al.*
**Sacramento County Superior Court – Case No. 34-2021-00310164**

### DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

That on the date below, I served the following:  **OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** on all parties in the said action as addressed below by causing a true copy thereof to be served:

| | |
|---|---|
| **X** | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
| | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

*Attorney for Plaintiff*
Steven Mark Kamp
STEVEN KAMP LAW OFFICE
22 Petrilli Circle
Sacramento, C 95822
Steve.kamp@comcast.net

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California, on  May 26, 2022.

*Estefanie Reyes*

Estefanie Reyes

**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

# EXHIBIT A

May file in person, or mail form to: Clerk, Board of Supervisors, 700 H Street, Rm. 2450, Sacramento, CA 95814
Please keep one (1) copy for your records - Print/Type Only

**CLAIM AGAINST THE COUNTY OF SACRAMENTO**

CLAIM NUMBER (Dept. Use ONLY): L2100524

1. Claimant's Name: OLFATI ARVIN (Last / First / M.I.)
2. Date of Birth: 08/23/1952

3. Claimant's Address: 1859 45th St., SACRAMENTO, CA 95819
Street (or P.O. Box) / City / State / Zip Code

4. Address Where Correspondence Should Be Sent (if different from above)
Name: Same as above

Street (or P.O. Box) / City / State / Zip Code

5. Phone Number: 916 949 4298
Home / Work / Other

6. E-mail address: see a Nychel

7. Amount of Claim: $ See a Nychel

Board of Supervisors Stamp

8. Itemized List of Claimed Expenses / Damages (should equal Line 7)
ITEM: See a Nychl
DOLLAR AMOUNT: $ See a Nychl

(Please attach any estimates* and/or receipts to your claim)
*1 estimate if repairs are less than $1,000    **TOTAL CLAIM** $
*2 estimate if repairs are more than $1,000

Do Not Write in This Space

9. Date of Accident / Incident / Loss: DECEMBER 14 2020
10. Location of Accident / Incident / Loss: 1859 45th Street, Sacramento
11. Provide your description of how the Accident / Incident / Loss Occurred: See a Nychl

12. Describe Damage / Injury / Losses being claimed (including prospective Damage / Injury / Losses to the extent it is known at the time of claim filing): See a Nychl Abuse & attempted To use County Sheriff against me.

13. Name(s) of Public Employee(s) Involved: See a Nychl

14. Are you receiving Medicare, or will you be receiving Medicare in the next 3 years? YES or NO

Section 72 of the Penal Code states: "Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, city, or district board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is punishable either by imprisonment in the county jail for a period of not more than one year, by a fine of not exceeding one thousand dollars ($1,000), or by both such imprisonment and fine, or by imprisonment in the state prison, or by a fine not exceeding ten thousand dollars ($10,000), or by both such imprisonment and fine."

15. Signature of Claimant/Representative: _____ DATE: April 5 2021

Print Form

Revised: 1/17    You must present your claim within the time prescribed by Govt. Code Section 911.2.

**1**

Ms. Parvin Olfati 1859 45th Street Sacramento, CA. 95819

Via ~~Certified Mail Return Receipt Requested To:~~ *(PERSONAL DELIVERY)* April 5, 2021

Claims, Clerk of the Board Office, Sacramento County Board of Supervisors, Suite 2450, 700 "H" Street, Sacramento, CA 95814

**RE: Claim by Victim Ms. Parvin Olfati for Damages Caused by Senior Mental Health Counselor LMFT Pamela Pisani Ambush, Trespass, Defamation, Invasion of Privacy and Intentional Infliction of Emotional Distress on December 14, 2020**

Dear Sir or Madam:

This letter and the attached form is a California Government Code 910 victim compensation claim for the damages the undersigned ("claimant" or "I") suffered on December 14, 2020, and beyond. On December 14, 2020, at about 4:36 p.m., Ms. Pamela Pisani of the County Division of Behavioral Health Services ambushed me, trespassed my house, (trespassed on my porch) defamed me, invaded my privacy, frightened me, and intentionally inflicted emotional distress on me.

These damages were proximately caused by an unannounced and unwanted ambush of me by County Department of Health Services Division of Behavioral Health Services "Senior Mental Health Counselor" Ms. Pam Pisani or Ms. Pamela Pisani, whose business card lists her as an "LMFT" (which appears to mean "Licensed Marriage and Family Therapist" ) and as a member of a so-called Community Support Team for the County Division of Behavioral Health Services. This ambush occurred on December 14, 2020 at about 4:36 p.m.

In addition, I know that one or more employees of the County Sheriff were involved in this ambush. I also reasonably believe that the ambush was coordinated or directed by: (1) one or more employees of the County Department of Health Services Division of Behavioral Health Services; and (2) Mr. Howard Schmidt, who until some day in January 2021 was the Chief of Staff to Third District County Supervisor Susan Peters.

Here are the answers to the questions on the attached filled-out questionnaire:

1. Claimant's Name: Ms. Parvin Olfati
2. Claimant's Date of Birth: August 23, 1952.
3. Claimant's Address: 1859 45th Street, Sacramento, CA 95819
4. Address Where Notices Are To Be Sent: 1859 45th Street, Sacramento, CA 95819
5. Claimant's Telephone Number: (916) 949-4298 (a cellphone)
6. Claimant's e mail address: Claimant does not use e mail, and requests that all communications be sent via postal mail to Ms. Parvin Olfati, 1859 45th Street, Sacramento, CA 95819
7. Amount of Claim: triple the amount of all salary and benefits paid to Ms. Pam Pisani; other County Division of Behavioral Health Services employees; County Sheriff employees; Mr. Howard Schmidt
   for any and all tortuous acts (trespass, defamation, invasion of privacy, and intentional infliction of emotional distress) complained of in this Claim. Since each of these County employees were conspirators, each of them are liable for their own acts as well as the acts committed by each of the other conspirators.
8. Itemized List of Damages: see item 7 above and items 11 and 12 below.
9. Date of Incident: December 14, 2020
10. Location of Incident: 1859 45th Street, Sacramento, CA 95819
11. How did this incident occur? See below.
12. Describe damage/injury/loss: See below

Names of County Employees Causing Damage/Injury/Loss: (a) Ms. Pam Pisani, LMFT Senior Mental Health Counselor, Community Support Team, Division of Behavioral Health Services, Department of Health Services. Ms. Pisani's business card gives her work address as 3321 Power Inn Road, Suite 110, Sacramento, CA 95826; her telephone numbers as (916) 804-1135 and a "main line" number of (916) 874-2166; and an e mail address of PisaniP@saccounty.net . It describers her as a "Senior Mental Health Counselor" with the "Community Support Team" of the County of Sacramento Department of Health Services Division of Behavioral Health Services. Ms. Pisani was driving a non-County vehicle with the California license plate number 7WID019.

2

(b) then-employee Mr. Howard Schmidt of the Supervisor Susan Peters office;

( c ) unknown County Sheriff employees working with Ms. Pisani or Mr. Schmidt.

(d) unknown County Department of Health Services employees employees working with Ms. Pisani, Mr. Schmidt, and/or the County Sheriff.

13. Claimant is receiving Medicare.

14. Signature of Claimant – see below

Dear Sir or Madam:

This is a victim compensation claim regarding the attempted ambush and entrapment of me by Senior Mental Health Counselor LMFT Ms. Pam or Pamela Pisani on December 14, 2020 at about 4:26 p.m. As discussed below, I reasonably believe that Ms. Pisani was carrying out this attempted ambush and entrapment of me at the direction of multiple other persons in the County Division of Behavioral Services, County Department of Health Services; the County Sheriff's Department (County Sheriff); and I reasonably believe a then-employee named Mr. Howard Schmidt, who until some date in January 2021 was the Chief of Staff to then-Supervisor Susan Peters. I will explain the involvement of Ms. Pisani, Mr. Schmidt, and the unknown County or County Sheriff employees below.

While ambushing me, Ms. Pisani trespassed my residence property (1859 45th Street, Sacramento, CA 95819) in violation of California Penal Code Section 602, rendering Ms. Pisani and her employer (the County) liable for trespass damages, because Ms. Pisani refused to leave the property after I ordered it to her to leave. I have this trespass on videotape that I will be glad to share with you.

Ms. Pisani refused to leave 1859 45th Street after I told her to leave, meaning Ms. Pisani committed a trespass in violation of the City of Sacramento Code 9.16.140 B, which states as follows:

"1. It is unlawful for any person to enter or remain upon any private property or business premises after having been notified by the owner or agent to keep off or keep away therefrom. Such notification shall be provided by service of a notice of trespass on such person."

2 "A violation of this section is a misdemeanor and shall be punishable by a fine not exceeding five hundred dollars ($500.00) or by imprisonment for a period not exceeding six months, or by both such fine and imprisonment."

In addition, Ms. Pisani during this ambush, to my face invaded my privacy; defamed me; placed me in a false light; and intentionally inflicted emotional distress upon me, through intentionally inducing I n me a reasonable fear of further tortuous acts, criminal acts, and conspiracy against me by the County of Sacramento. Ms. Pisani committed all of these tortuous acts when:

1. Ms. Pisani began the ambush by knocking on my door unannounced and without prior permission from me.
2. Ms. Pisani demanded that I speak to her based on her claimed possession of "information" about me that "raised concerns."
3. Ms. Pisani gave two "sources" for this information: first she said "I don't know" and then she said "I think it was from the County Sheriff." Ms. Pisani also referred to her "resources", and I reasonably believe she was referring to some "County Mental Health Unit" or "Community Support Team"
4. Ms. Pisani demanded that I use "resources" from her "community", without explaining why I needed "resources" or what her "community" was.

Moreover, when I opened my front door for her unannounced visit, Ms. Pisani asked for "Parvin Olfati" and gave me her business card. I told Ms. Pisani to wait so I could get my cellphone camera. When I came back and opened the door, Ms. Pisani went into a scripted rant that I will detail below.

Two important things to note at the beginning: (1) when I came back to the door and opened it, Ms. Pisani did not verify if I was Parvin Olfati; and (2) in her scripted rant, Ms. Pisani never once mentioned that she was a County employee even though the business card that she gave me said "County of Sacramento."

Fortunately I was able to videotape all of Ms. Pisani's rant with my cellphone, and I will be more than pleased to share this video with the County – it captures Ms. Pisani's violation of my rights. In addition, it provides comic relief – the video shows Ms. Pam Pisani falling apart. Every time I asked Ms. Pisani a question, she tried to stick to her programmed rant, but fell apart yet again when I asked her to explain what she had just said. Toward the end of her disrupted (and disruptive) scripted rant, Ms. Pisani identified her "department" as "Behavioral Health Services".

As seen near the end of the video, I told Ms. Pisani that my problem with her "behavior" was that Ms. Pisani knocked on my door without notice relying upon "anonymous BS" (a phrase I am proud to say that I used to Ms. Pisani's face) that Pisani admitted she could not describe or explain – so I told Ms. Pisani, "your behavior is suspect", and I ordered her off the property of 1859 45th Street, which is my house and the area within the house curtilage. Ms. Pisani refused to leave and insisted upon stalking me as I walked out of my house, through the front yard, and on to my driveway. Ms. Pisani eventually left, but only after I was forced to tell her multiple

3

times to leave; was forced to listen to her ranting and raving; and being forced to do so in public in front of the 45th Street neighbors (for whose entertainment and benefit I reasonably believe Ms. Pisani staged this ambush).

Here Ms. Pisani was trespassing, and the County must pay me trespass damages the damages I suffered from Ms. Pisani refusing to leave when I told her to leave.

The County must also pay me for the damage I suffered from Ms. Pisani defaming me, since the Ms. Pisani ranting and raving was loud enough to be heard by other persons, and the spectacle that Ms. Pisani created (I believe intentionally) was in full view of 45th Street criminal busybodies including but not limited to Mr. Steven Maviglio (1901) and Ms. Barbara Andres (1870), This ambush and attempted of entrapment by Ms. Pisani was also captured not only by me, but also on multiple video cameras, hidden and other types placed by multiple residents of 45th Street at one or more addresses (including 1856, the house of June Lamoureaux and Bill Kellerhals), and/or was captured by multiple law enforcement and/or intelligence agencies. The 45th Street residents other than Lamoureaux/Kellerhal;s who could have captured the video of the Pisani ambush include: Barbara Andres and Cecil Taylor at 1870 45th Street; Camille Remy Obad, the owner of 1871 45th Street, and many others.

Turning to Mr. Howard Schmidt: before, around, and after December 14, 2020, Mr. Howard Schmidt was (and still is) a regular visitor to the 1870 45th Street house of Barbara Andres (who perjured herself against me in Mr. Steven Maviglio's fraudulent restraining order case against me, and who was also responsible in part for causing the May 09, 2020 Sacramento Police attempted kidnapping of me and actual subjecting of me to police brutality) and her husband Cecil Taylor. I reasonably believe that Mr. Schmidt, Ms. Pam Pisani, and other County and County Sheriff employees planned and executed this ambush of me not only to provide entertainment for Mr. Howard Schmidt, Ms. Barbara Andres, Mr. Cecil Taylor and/or Mr. Steven Maviglio, but also to attempt to entrap me in a staged incident that could be fabricated and published to place me in a false light. In fact, my having to publicly endure Ms. Pisani ambushing me, refusing to leave, stalking me, and yelling at me was in fact such as staged incident.

On May 9, 2020, a date that is a little more than seven months before the ambush by Ms. Pisani, I was the victim to another abuse of law enforcement and attempted kidnapping of me by the City of Sacramento Police Department. That morning, Mr. Steven Maviglio multiple times yelled at me: "seek counseling". When I told Mr. Maviglio that I would not talk to him, Mr. Maviglio and Ms. Andres (Mr. Maviglio's partner in perjury) retaliated by giving the City of Sacramento Police Department (City Police) false information claiming that I was involved in a "battery" or "altercation", so that the City Police could send City Police Officer Jared Robinet (one of the two City Police officers who fired the bullets that killed Stephon Clark) to get a hand-signal from Barbara Andres (who is frequently visited by Mr. and Mrs. Howard Schmidt) to come stalk me on my driveway and grab me from behind in my own living room – without a warrant. This attempted kidnapping by the City Police when the one charge filed against me (Penal Code Section 148(a)(1) "resisting arrest") was *dismissed by the Sacramento County District Attorney* for Insufficient Evidence.

So, I reasonably believe that Ms. Andres, Mr. Maviglio, and Mr. Howard Schmidt came up with the plot, plan or scheme to use Mr. Schmidt's Third District Supervisor Chief of Staff authority to send Ms. Pisani to ambush and entrap me into other threatening and dangerous situations.

In addition to paying me for Ms. Pisani's trespass and Ms. Pisani's defamation, the County should also pay me for Ms. Pisani invading my privacy in two ways: (1) by placing me in a false light; and (2) by intruding into my seclusion – the afternoon of December 14, 2020, I secluded myself was trying to take a break from the all day abuse I had endured from Mr. Steven Maviglio and Ms. Barbara Andres, and I was enjoying the short break in the afternoon of December 14, 2020 until Ms. Pisani ambushed me, which turned out to be the high point (or low point) of a day of physical torture by being subjected to multiple chemical bio chemical and toxic gas, smoke, odors and harassment by Barbara Andres and Steven Maviglio as a pretext to send Ms. Pisani to provoke and entrap me, at a time when their torture had made me exhausted and physically affected by all day breathing of toxic air and inhaling chemical and toxic gas.

In addition, I should be compensated for the intentional infliction of emotional distress that I suffered and am still suffering from the extreme and outrageous act of the Ms. Pisani who abused her authority and job at the County of Sacramento Division of Behavioral Health Servivces to ambush and plot the ambush targeted at me, and in the process fabricate fraudulent defamatory documents against me. By doing this Ms. Pisanie contributed to the smear campaign that has been going on against me by a current longtime State Board of Equalization (BOE) employee/annuitant/consultant/political appointee named John Anthony Thiella and his friends including Steven Maviglio and now Howard Schmidt, Mr. Thiella is retaliating against me for daring to sue Mr. Thiella and BOE management. Finally, I should be compensated for the County Sheriff for the County Sheriff taking part in this smear campaign and defamation of me by fabricating and sending to Ms. Pisani false and defamatory information about me; communicating this fabricated falsehood to Mr. Pisani and the County Division of Behavioral Health Services; and revealing its' existence (but not its' contents) to me in order cause me severe emotional distress and fear. I have sent multiple Public Records Act (PRA) requests to both the County Clerk of the Board and the County Sheriff asking for the "information" communicated by the County Sheriff to Ms. Pisani or County Division of Behavioral Health Services or that was in possession of Ms. Pisani. The Clerk of the Board says there are no documents (Pisani or otherwise), and the County Sheriff refuses to respond to multiple PRA requests. When my friend attempted to deliver my grievance letter to Ms. Pisani in person at the Power Inn Road address on her business card, Ms. Pisani simultaneously told the security guard to

4

tell my friend two simultaneous contradictory misstatements: that Ms. Pisani "would not accept" my grievance letter, and "she's not here."

When she ambushed me on December 14, 2020, Ms. Pisani was intentionally inflicting emotional distress upon me by outrageous conduct beyond all bounds of decency and human rights in a civilized society. Her conduct was the severe case of human abuse against me in the democratic State of California.

The Pisani December 14, 2020 attempted ambush and entrapment of me was one of many attempted ambushes in an ongoing effort to entrap me into physical government custody.

## The Full Story and Backstory of the Pisani Ambush

Here is the full story of the Pisani ambush of me, taken from the December 17, 2020 grievance that I filed with (and that was brushed off by) the County Department of Health Services Division of Behavioral Health Service that is displayed at the end of this Claim letter.

The attempt to entrap me into physical government custody is a plot, plan, or scheme by 45th Street (Sacramento, California 95819) residents including 1901 45th Street resident Steven Maviglio (who brags on his Forza Communications website that he is the "premier spin doctor in Sacramento"), who on May 09, 2020 just before he arranged the City Police brutality against me with the help of Mr. Howard Schmidt's friend Barbara Andres) yelled at me "seek counseling" -- but who needs counseling himself) and 1870 45th Street resident Barbara Andres, who is Mr. Maviglio's partner in perjury. Both Mr. Maviglio and Ms. Andres should either go to jail for perjury against me, or be placed under a Welfare & Institutions Code Section 5150 hold for acting delusional and suffering from hallucinations. In Mr. Maviglio's fraudulent restraining order application, Mr. Maviglio falsely stated under oath that he saw me in his backyard (on a day when I was verifiably in Los Angeles) , and at the hearing both Mr. Maviglio and Ms. Andres falsely testified under oath that they saw me "wandering in the backyard" of Mr. Maviglio on October 31, 2020, even though I was nowhere near Mr. Maviglio's house or backyard on that date. On November 2, 2019 and April 23, 2020, I sent to each of them certified mail return receipt letters asking them to retract their perjuries -- since then I have been retaliated against, on May 9, 2020 through the City Police attempted kidnapping and on December 14, 2020 through the Pisani Ambush.

## The Attempted Ambush and Entrapment: Prologue

In the morning and early afternoon hours on Monday December 14, 2020, there were two suspicious cars and female visitors to Barbara Andres at 1870 45th Street (Sacramento, California 95819). One of the suspicious vehicles was a white SUV with a California license plate number of 8MUL994. These cars have been at 1870 45th Street multiple times, and each time their visits were followed by extreme and violent criminal acts against me. I saw the driver of this vehicle later walking on 45th Street with Barbara Andres in their mission to provoke me. I saw this person along with 1901 45th Street resident Mr. Steven Maviglio trying to provoke me while Mr. Maviglio was waiting to start his spin doctor production of videotaping me to be used to abuse the government, law enforcement, and intelligence agencies against me. This events are after Mr. Cecil Taylor has again trespassed on my front porch and pounded on my front door. This trespassing of my front porch by Mr. Cecil Taylor is also a pattern and practice of Mr. Maviglio's using and abusing the residents of 45th Street; this group includes 1914 resident Mr. Charles Schock, who dressed as a thug trespassed on my front porch, pounded on my front door, and yelled and screamed about me while threatening me.[1]

Later, as my friend was leaving 1859 45th Street and as I was walking up the front yard stairs toward my front door, I noticed Barbara Andres and her female visitor were walking on the sidewalk toward my house, and I also heard Barbara Andres screaming and yelling some incoherent words against me and to me. I told her "I do not talk to felons", and with that I kept on walking toward my front door. But Ms. Andres did not stop. At the same time, I noticed Mr. Maviglio jumping out of his hiding place with his video/phone and starting his spin doctor style videotaping of me for his spin doctor production of more fraudulent documents and so-called evidence against me. I was sure this was another set up that starts with Barbara Andres acting as a gangstalker on steroids who has gone wild, is out of control, and has been released loose on the street to provoke me, with Mr. Maviglio in the operation to manufacture another piece of fraudulent "evidence" for his spin doctor production against me. I also was sure that they were trying to manufacture was more fraudulent documents to use against me by government and law enforcement agencies. But what I did not expect was for these fraudulent fabricated pictures and video footages to be used by the County Division of Behavioral Health Services and County Sheriff against me. Therefore, I ignored Barbara Andres, her visitor, and Mr. Maviglio; I went inside and closed the door. However, I noticed Barbara Andres was still yelling at my friend, so I went out. As my friend was getting in his car, I asked him to hurry up and leave because Mr. Maviglio is working on manufacturing another one of his spin doctor fraudulent evidence fabrications. So, my friend left. I was very sick from the around the clock being subjected to release of toxic gas and other chemicals as well as the exhaust gas of the 1871 45th Street resident Sean Majkovica's white junk truck with California license number 49475G2 that has been brought to 1871 to facilitate more physical assaults against me, my internal organs, and my lungs as well as my animals. Mr. Majkovica has doubled

---

[1] Mr. Schock trespassed on my front porch twice, on November 28 and December 2 of 2020.

down on this violent and intentional crime against me after I filed a City of Sacramento Police Department Police Report against him and his intentional exposing me to this dangerous toxic gas that is still going on and has not stopped.

On May 9, 2020, based on intentionally false statements communicated to the City of Sacramento Police Department by Mr. Maviglio and Ms. Andres, the City of Sacramento Police Department sent to 45ᵗʰ Street Officer Jared Robinet, one of the two officers who fired the bullets that killed Stephon Clark.Officer Jared Robinet hid around the corner in a City Police vehicle, and once he received a hand signal from a trespassing-on-my-driveway Barb Andres, drove to the edge of my driveway, jumped out of the City Police car, trespassed onto my driveway, and stalked me all the way to my front door without ever announcing himself. As soon as I opened my front door and stepped into my living room, Officer Robinet grabbed me from behind, pulled me out of my living room, assaulted and battered me, fractured and lacerated my finger, and threw me to the concrete floor of my front porch. Officer Robinet was then joined by City Police Officer Maryna Stanionis, and both proceeded to handcuff me and drag me to the Officer Stanionis City Police car while I was bleeding and blood was all over my cloths and my front porch, where Officer Stanionis detained me and threw me in the back seat handcuffed for an hour and deprived of water. Officer Robinet then grabbed my cellphone and gave it to Officer Stanionis, who took it with her to long meetings with Mr. Maviglio and Ms. Andres, where I reasonably believe she gave them access to my cellphone contents.**There was no warrant for seizing me or for seizing my cellphone, and there was no probable cause that I had committed any crime, making the whole operation illegal.**

Officer Stanionis tried to question me without Miranda v. Arizona warnings. When she and Robinet let me go they served with me with a Notice to Appear for one charge – a standalone Penal Code Section 148(a)(1) "resisting arrest" charge. The Sacramento County District Attorney dismissed this one and only charge for Insufficient Evidence, but the false arrest and resulting police brutality scars remain. As a result of this law enforcement assault, battery, brutality and emotional distress I am scared to talk to anyone who claims they represent any official authority in particular law enforcement authority – and Ms. Pisani claimed she was acting upon information from the County Sheriff.

The Attempted Ambush and Entrapment

After a very torturous December 14, 2020 morning and midday – featuring Barbara Andres acting as a gangstalker and psychopath on the loose – there was coming a much bigger abuse of power against me. Obviously, this whole spin doctor production by Mr. Maviglio and his partner in perjury Barbara Andres was to engage more abuse of the government agency power and authority against me. Some of the details are as follows:

On Monday, December 14, 2020, at about 4:36 p.m., the front door of my 1859 45ᵗʰ Street house was knocked upon by a woman who asked me "is this Parvin?" after I opened the door. I took her business card identifying her as "Pamela Pisani, LMFT Senior Mental Health Counselor" from the "Community Support Team" of the County of Sacramento Department of Health Services Division of Behavioral Health Services." I then heard Ms. Pisani say she had received an "anonymous call" about me. I told her to wait, closed the door, and got my cellphone. I then opened the door. In response to my question "who are you again", she identified herself as "Pam". I said "Pam Community Support Team". She said "right." She never confirmed that I was Parvin Olfati.

I then said "and you don't know who called you". Ms. Pisani then said "I think it was maybe the Sheriff's Department", and then used the word "complaint." I then said "so the Sheriff's Department called you?" and Ms. Pisani said: "They didn't call me. They let us know that maybe there were some concerns…they're out of the Sheriff's Department jurisdiction…"

I then said "so the Sheriff's Department had something to do with this" and Ms. Pisani said: "they forwarded some information." In response to my question as to "exactly" what "information" had been "forwarded", Ms. Pisani said "they forwarded some information stating…" but "I don't know exactly" what the information was. I then asked: "So how can you go to somebody's door when you don't have any idea what you're doing there?"

Ms. Pisani did not answer my question, but instead frantically and immediately wheeled to her scripted narrative about "resources." She did not answer my questions about her "resources" or the function of the "Behavioral Services" "department" (actually a division) that she said she worked for. She never used the word County even though she was here on purported County business. Instead she used the word "community" but never said who the "community" was. I concluded by telling her that her "behavior" was suspect because her behavior as displayed to me consisted of knocking unannounced on people's doors based on anonymous "b—s—."

6

I told her to leave, but she refused to leave. Instead she yelled at me from my driveway, and she stalked me as I walked out toward the end of my driveway toward the back yard to check some of the toxic and feces and toxic liquid that had been placed immediately outside my bedroom window. In other words, she trespassed my property by refusing to leave after being ordered by me to leave. She drove a white SUV vehicle with the California license plate 7WID019. This appeared to be her personal vehicle and/or vehicle given to her to use in her visit to my house and not a County vehicle.

Displayed at the end of this Grievance letter are photographs of Ms. Pisani's behavior. I took these pictures with my cellphone on December 14, 2020 starting at 4:36 p.m.

As can be seen from my statement above:

- Ms. Pisani made a determination that I needed County Division of Behavioral Services "resources" based on what she described as anonymous "complaints" – given to her and/or her resources said call or "information" that were either "anonymous" or not but came from the County Sheriff.

- Ms. Pisani did not confirm my identity as "Parvin Olfati" before she began her narrative, or at any time during her visit.

- Ms. Pisani did not present any credentials.

- Ms. Pisani never said she was working for the County of Sacramento, but instead said she was "from the community" but never said who the "community" was.

- Ms. Pisani both did not identify and could not identify the sources of her "complaints" or "information" that prompted her to use County resources to try to ambush or entrap me.

- Ms. Pisani used County government resources to defame me based on unverified anonymous statements whose source she could not identify, but she told that the sherriff Department has sent them to her and /or her office/resources.

- Ms. Pisani refused to leave 1859 45th Street after I told her to leave, meaning Ms. Pisani committed a trespass in violation of the City of Sacramento Code 9.16.140 B, which states as follows:

"1. It is unlawful for any person to enter or remain upon any private property or business premises after having been notified by the owner or agent to keep off or keep away therefrom. Such notification shall be provided by service of a notice of trespass on such person."

2 "A violation of this section is a misdemeanor and shall be punishable by a fine not exceeding five hundred dollars ($500.00) or by imprisonment for a period not exceeding six months, or by both such fine and imprisonment."

If this Claim is not resolved to my satisfaction, I will file a Police Report against Ms. Pisani with the City of Sacramento Police Department, and will cause her to be served at work with the no-trespass notice described in the Sacramento City Code provision quoted above. Thank you.

Sincerely,

Ms. Parvin Olfati

 

1 | **PORTER | SCOTT**
2 | A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
3 | Jordan M. McCroskey, SBN 340068
350 University Ave., Suite 200
4 | Sacramento, California 95825
TEL: 916.929.1481
5 | FAX: 916.927.3706

**FILED/ENDORSED**

**MAY 2 6 2022**

By: _____H. PEMELTON_____
Deputy Clerk

6 | Attorneys for Defendants
COUNTY OF SACRAMENTO and PAMELA PISANI
7 | *Exempt from Filing Fees Pursuant to Government Code § 6103*

8

9 | SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

10 | MS. PARVIN OLFATI, | CASE NO. 34-2021-00310164

11 | Plaintiffs, | **DECLARATION OF JORDAN M.**
**MCCROSKEY IN SUPPORT OF**
12 | | **DEFENDANTS' OPPOSITION TO MOTION**
v. | **TO FILE FIRST AMENDED COMPLAINT**
13 |

14 | COUNTY OF SACRAMENTO; PAMELA
15 | PASANI; JANE ROE DEFENDANT ONE;
JANE ROE DEFENDANT TWO; JANE | Complaint Filed: 10/25/21
16 | ROE DEFENDANT 3-100, JOHN DOE
DEFENDANTS 1-100,
17 |

18 | Defendants.

19 | _____/

20

21 | I, Jordan M. McCroskey, declare as follows:

22 | 1. I am an associate attorney with the law firm of Porter Scott, counsel of record for

23 | Defendants COUNTY OF SACRAMENTO ("County") and PAMELA PISANI, and am licensed to

24 | practice law before all courts of the State of California. I have personal knowledge of the facts stated in

25 | this declaration and would testify to them if called to do so.

26 | 2. On April 5, 2021, Plaintiff filed her original government claim. Attached hereto as

27 | **Exhibit "A"** is a true and correct copy of the government claim.

28 | //

{02713655.DOCX}                                          1
**DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION
TO FILE FIRST AMENDED COMPLAINT**

1     I declare under penalty of perjury under the laws of the State of California that the foregoing is

2   true and correct. Executed this 26th day of May 2022, at Sacramento, California.

3

4

5

6                                                          Jordan M. McCroskey

7                                                          Declarant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{02713655.DOCX}                                2

**DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION
TO FILE FIRST AMENDED COMPLAINT**

*Olfati v. County of Sacramento et al.*
**Sacramento County Superior Court – Case No. 34-2021-00310164**

## DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

That on the date below, I served the following **DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION TO FILE FIRST AMENDED COMPLAINT** on all parties in the said action as addressed below by causing a true copy thereof to be served:

| | |
|---|---|
| **X** | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
| | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

*Attorney for Plaintiff*
Steven Mark Kamp
STEVEN KAMP LAW OFFICES
22 Petrilli Circle,
Sacramento, CA 95822
Steve.kamp@comcast.net

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California, on May 26, 2022.

Estefanie Reyes

_____
Estefanie Reyes

{02713655.DOCX}                                                3
**DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION TO FILE FIRST AMENDED COMPLAINT**

1  STEVEN MARK KAMP (California State Bar Number 116817)
   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
2  Electronic Mail Address: steve.kamp@comcast.net
3  Telephone: (916) 501-1791 (cellular, voice/text)
   Attorney for Plaintiff Ms. Parvin Olfati
4
5
6                                              ;
7
8
9              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                  IN AND FOR THE COUNTY OF SACRAMENTO
11
12                                           No. **34-2021-00310164-CU-CE-GDS**
13  Ms. PARVIN OLFATI, Plaintiff           **PLAINTIFF'S REPLY MEMORANDUM**
                                           **IN SUPPORT OF PLAINTIFF'S MOTION**
14         v.                              **FOR LEAVE OF COURT TO FILE FIRST**
                                           **AMENDED COMPLAINT**
15  COUNTY OF SACRAMENTO; PAMELA
16  PISANI; JANE ROE DEFENDANT ONE;        **Date: June 9, 2022**
    JANE ROE DEFENDANT TWO; JANE           **Time: 9:00 a.m.**
17  ROE DEFENDANTS 3-100; JOHN DOE
    DEFENDANTS 1-100, Defendants           **Department: 54**
18
19                                         **Reservation No.: 2640543**
                                           **Complaint Filed: 10/25/21**
20
21
22
23
24
25
26
27
28
   PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED
   COMPLAINT 1

FILED/ENDORSED

JUN - 2 2022

By: _____S. Cade_____
           Deputy Clerk

1    **TABLE OF CONTENTS**

2

3    I.    Introduction and  Summary of Argument...........................................5

4    II.   Defendants Effectively Concede That Plaintiff's Proposed First Amended
5          Complaint (Proposed FAC) Meets All Requirements of California Rules of Court
           Rule 3.1324, And That The Proposed FAC Is Based  On The "Same General Set
6          of Facts" As The Initial Complaint ..........................................................6

7

8    III.  Defendants' Attack on The Substance Of The Proposed First Amended
           Complaint Is Without Merit Under Long-Established Liberality of Amendment
9          Precedent That Requires The Granting of Plaintiff's Motion.......................8

10   IV.   California Rule of Court 3.1103(a)(2) Permits The PRA Writ Action To Be
           Joined Under CCP Section 427.10 Through The ROA 35 Noticed Motion.......11
11

12   V.    Defendants' False Statements About Plaintiff's Proposed FAC Are Not A Basis
13         To Deny Plaintiff's Motion.............................................................. 12

14   VI.   Conclusion ................................................................................. 14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED
COMPLAINT 2

1 **TABLE OF AUTHORITIES**

2

3 <u>Cases</u>

4 *California Casualty Gen. Ins. Co. v. Superior Court* (1985) 173 Cal.App. 3d 274...............10

5 *D.I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal. 2d 723...................................5

6
7 *Diliberti v. Stage Call Corp.* (1992) 4 Cal.App.4th 1468...............................................9

8 *Hendy v. Losse* (1991) 54 Cal.3d 723.....................................................................12

9
10 *Hirsa v. Superior Court* (1981) 118 Cal.App.3d 486.......................................... 7, 9, 10

11 *Ingram v. Superior Court* (1979) 98 Cal.App.3d 483.....................................................9

12
13 *Kittredge Sports Co. v. Superior Court* (1989) 213 Cal.App.3d 1045.........................7, 10, 11

14 *Mabie v. Hyatt* (1998) 61 Cal.App.4th 581.....................................................   10, 11

15 *Magpali v. Farmers Group* (1988) 48 Cal.App.4th 471.........................................   6, 11

16 *Nestle v. Santa Monica* (1972) 6 Cal.3d 920.............................................................11

17 *Robertson v. City of Long Beach* (1937) 19 Cal.App.2d 676.........................................10

18 *Thompson v. Palmer Corp.* (1956) 138 Cal.App.2d 387..................................................9

19 *Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929....................12

20 *Woo v. Superior Court* (1999) 75 Cal.App.4th 169.......................................................9

21 <u>Federal Statutes</u>

22 United States Code, Title 42, Section 1983................................................................10

23
24 <u>California Statutes</u>

25 Civil Code, Section 52.1................................................................................ ...10

Code of Civil Procedure, Section 427.10................................................ .........2, 6, 11
26
27 Code of Civil Procedure, Section 474.......................................................................9

28 <u>Constitutional Provisions</u>

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED
COMPLAINT 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States Constitution, First Amendment……………………………….......................10

California Constitution, Article I, Section 3(b) (1)……………………………………… …..11

California Constitution, Article I, Section 3(b) (2)…………………………………….. ……..11

Rules

California Rules of Court Rule 3.1103 . . ………………………………………………6, 11, 12

California Rules of Court Rule 3.1113………………………………………………………....5

California Rules of Court Rule 3.1324……………………………………..…………………2, 5, 6

California Rules of Court Rule 3.300…………………………………………………………14

Other Authority

California Continuing Education of the Bar, *California Administrative Mandamus*. ………..12

California Continuing Education of the Bar, *California Civil Procedure Before Trial*............11

Rutter, *Administrative Law*……………………………………………………………………11

Weil & Brown, CAL PRAC. GUIDE: CIV. PROC. BEFORE TRIAL………………….9, 11, 12

Public Records Act Request Responses

City of Sacramento Reference Number P028660-021522………………………………………………………………………………………13

County of Sacramento PRA Reference Number 20-4765……………………………………5, 7

## I. Introduction and Summary of Argument[1]

This Court should grant Plaintiff Ms. Parvin Olfati's ("Plaintiff") motion for leave to file the Proposed First Amended Complaint ("Proposed FAC") attached as Exhibit A to the Register of Actions ("ROA") 35 Notice of Motion because:

1. Defendants County of Sacramento ("County") and Pamela Pisani ("Pisani") (collectively, "Defendants") by the silence in their ROA 46 opposition memorandum effectively concede[2] that the Proposed FAC and its' supporting Notice of Motion and Declaration meet all requirements of California Rules of Court (CRC) Rule 3.1324.

2. Defendants by their ROA 46 silence effectively admit that the Proposed FAC is based on the requisite "same general facts" as the ROA 1 Initial Complaint (IC), and that the new facts and causes of action arise from Defendants' own failed Anti-SLAPP Statute Motion[3] Declarations of Pamela Pisani[4] and Jennifer Reiman.[5] These facts and causes of action were not only unknown to Plaintiff until January 28, **2022,** they were in fact hidden from Plaintiff by Defendant County's false December 16, *2020* response to Plaintiff's December 15, 2020 Public Records Act (PRA) request, where the County in its' response in PRA Reference Number 20-4765[6] said "no documents to produce" in response to this

---

[1] This Memorandum of Points & Authorities consists of 15 pages. However, five of these 15 pages are the caption page (page 1), table of contents (page 2), table of authorities (pages 3-4) , and the declaration of service (page 15), so this Memorandum of Points & Authorities is within the 10-page reply memorandum limit of California Rules of Court (CRC) Rule 3.1113, subdivision (d).

[2] Where the nonmoving party fails to oppose a ground for a motion, "it is assumed that [nonmoving party] concedes that ground." *D.I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.3d 723, 728, fn. 4. Multiple such "concessions by silence" by Defendants recur throughout their ROA number 46 opposition memorandum.

[3] Denied by this Court on April 21, 2022 in Register of Actions (ROA) numbers 28-29.

[4] ROA number 13.

[5] ROA number 15.

[6] See Reply Memorandum Declaration of Steven Mark Kamp ("Kamp RM Declaration"), at 2: 3 – 5:8 (paragraphs 2-6) and Exhibit "I" ("eye") thereto.

1   Plaintiff's PRA request for the December 2020 County electronic mail messages that

2   thirteen months later the County would self-servingly submit in its' Reiman Declaration.[7]

3   3. Defendants' ROA 46 attack on the substance of the Proposed FAC to deny the motion for

4   leave to amend violates long-established liberality of amendment precedent, and

5   Defendants have not even attempted to demonstrate the requisite "inexcusable delay and

6   probable prejudice."[8]

7

8   4. Defendants' in their ROA 46 opposition memorandum effectively admit that Plaintiff's

9   Proposed FAC Twelfth Cause of Action PRA writ of mandamus action is properly

10  brought by the ROA 35 noticed motion (exactly what Exhibit A is attached to), and Code

11  of Civil Procedure (CCP) Section 427.10,subdivision (a)  and California Rule of Court

12  (CRC) Rule 3.1103, subdivision (a)(2) permits this joinder.

13

14  5.  Defendants in their ROA 46 opposition memorandum make false statements about the

15  Proposed FAC, and the falsity of these statements is demonstrated by Defendants' own

16  filings in this action.

17  **II.     Defendants Effectively Concede That Plaintiff's Proposed First Amended**
       **Complaint (Proposed FAC) Meets All Requirements of California Rules of Court**
18     **Rule 3.1324, And That The Proposed FAC Is Based  On The "Same General Set**
       **of Facts" As The Initial Complaint**
19

20      By their ROA 46 Opposition Memorandum failure to argue against Plaintiff's ROA 35

21  Notice of Motion  content and attachment A thereto and the ROA 34 California Rules of Court

22  (CRC) Rule 1.324(b) Declaration,  Defendants effectively concede that Plaintiff's Proposed FAC

23  meets all of the requirements CRC Rule 1.324 subdivisions (a) and (b): (a)(1), that the Proposed

24  FAC be attached as an exhibit to the Notice of Motion[9]; (a)(2), that the Notice of Motion state by

25

26  _____

27  [7] ROA number 15, exhibit A thereto.

    [8] *Magpali v. Farmers Group* (1988) 48 Cal.App.4th 471, 487-88.

28  [9] It is; see ROA number 35, Exhibit A.

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED
COMPLAINT 6

1  page, paragraph and line number which Initial Complaint (IC) allegations are deleted[10]; (a)(3),

2  that the Notice of Motion  similarly state  the allegations that are proposed to be added[11]; and

3  subdivision (b), that a separate declaration accompany the motion and specify:  the effect of the

4  amendment; why it is necessary and proper; when the amendment facts were discovered; and the

5  reasons why the request for amendment was not made earlier. Plaintiff's ROA 34 is this required

6  declaration, and regarding it Defendants' ROA 46 opposition memorandum is utterly silent,

7  therefore admitting Plaintiff's declaration statements that Plaintiff first learned of the new facts

8  and causes of action no earlier than the January 28, 2022 County Anti-SLAPP Statute Motion,

9  and that she tried to discover them in a December 15, 2020 Public Records Act (PRA) request to

10  the County, a request that the County responded to by saying it had no records.[12]  Defendant

11  County's own public records confirm its' admission by silence – submitted herewith is the

12  County's December 16, 2020 response in County PRA Reference Number 20-4765 that includes

13  a copy of Plaintiff's PRA request for the December 2020 electronic mail messages related to

14  Pisani December 14, 2020 acts at Plaintiff's residence -- and the County's next-day "no

15  documents to produce" electronic mail message response.[13]   Defendants' ROA 46 opposition

16  memorandum also does not argue that the Proposed FAC does not relate to the requisite "same

17  general set of facts" as the ROA 1 Initial Complaint (IC)[14] – nor could Defendants, because they

---

[10] It does; see ROA number 35, at 4: 1 – 9 (paragraph 5).

[11] It does this as well; see ROA number 35, at 4: 10 – 12:14 (paragraph 6).

[12] ROA number 34 (Kamp CRC Rule 3.1324(b) Declaration), at 3: 7 – 5: 3, paragraphs 5-6.

[13] Kamp Reply Memorandum ("RM") Declaration, Exhibit "I" ("eye") thereto.

[14] *Hirsa v. Superior Court* (1981), 118 Cal.App.3d 486, 489; *Kittredge Sports Co. v. Superior Court* (1989) 213 Cal.App.3d 1045, 1048.

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 7

do not deny that the proposed FAC only deletes 21 IC paragraphs; that it replaces them elsewhere in the Proposed FAC; and that the remainder is new facts and new causes of action.[15]

### III.   Defendants' Attack on The Substance Of The Proposed First Amended Complaint Is Without Merit Under Long-Established Liberality of Amendment Precedent That Requires The Granting of Plaintiff's Motion

Defendants instead argue that the Proposed FAC "fails to state a valid cause of action", apparently arguing that the Proposed FAC newly added causes of action, new facts added to the existing causes of action, and new defendants are "time barred". However, as explained in greater detail in Plaintiff's Reservation 2644627 ROA 36-38 papers[16], Plaintiff's new causes of action, new defeandants,  and enhanced existing cause of action[17] did not accrue until January 28, *2022,* when Defendants revealed them in the County electronic mail messages published by Defendant Pisani and proposed new Defendants Ronald Briggs[18], Jennifer Stewart, and Jennifer Reiman filed in support of the Defendants' ROA 11-16 Anti-SLAPP Statute Motion papers filed that day, after hiding them for 408 days starting when County on December 16, *2020* falsely responded "no documents to produce" in response to Plaintiff's December 15, *2020* PRA request for County electronic mail messages related to Pisani December 14, 2020 acts at Plaintiff's residence. The County's false response to Plaintiff's PRA request was  fraudulent concealment that tolled the running of any limitations period until Plaintiff discovered the hidden facts.[19] Plaintiff noticed the

---

[15] See ROA number 35 Notice of Motion, at 4: 1 - 9 (deleted allegations) and 4: 10 – 12: 14 (added allegations); ROA 33 (Plaintiff's Memorandum of Points and Authorities), at 18: 5-15.

[16] Petition For Leave To File Late Tort Claim Against Governmental Entity (ROA numbers 36-38), also calendared for June 9, 2022 (under Reservation 2644627).

[17] Newly discovered facts against Defendant Pisani, and newly discovered facts and defendants (Sheriff's Sergeant Ronald Briggs, and County Behavioral Health employees Jennifer Stewart and Jennifer Reiman).

[18] County Sheriff's Sergeant Ronald Briggs, whom Defendants refer to as "Roland Briggs" in their ROA number 46 (at 3: 7), even though the County's own ROA number 15 exhibit A electronic mail message (at pages 2-3 December 10, 2020 5:42 p.m. email message) at the top of page 3 displays "CC Briggs, Ronald."

[19] See cases discussed in Plaintiff's Reservation 2644627 ROA 37 memorandum of points and authorities, at 17: 17 – 18: 16.

1    January 28, 2022 newly discovered facts to the County in a supplemental California Government

2    Claims Act (CGCA) Claim on April 4, 2022– clearly inside the six month CGCA claim

3    window.[20]  County denied this with a claim letter dated April 9, 2022 (a Saturday) under the same

4
     claim and file number as the original 2021 April 5, 2021 CGCA claim.[21] In addition, the three
5
6    new proposed new Defendants are all County employees who are covered as Doe defendant 1

7    (Briggs) and Roe defendants 3 and 4 (Stewart and Reiman), who appear in the ROA 1 IC caption

8    and whose acts and employmernt with Defendant County  are alleged in ROA 1 IC paragraphs

9    10[22] and 14[23]. In support of Defendants' failed Anti-SLAPP Statute Motion, proposed new

10   Defendant Reiman declared under oath that she was the "direct supervisor" of Defendant Pisani[24],

11
     so Reiman, Stewart and Briggs were already named in ROA 1 IC as Doe 1 and Roes 3 and 4.[25]
12

13   _____

14   [20] Defendants in their ROA number 46 opposition memorandum mantra-chant that proposed new Defendants Briggs,
     Reiman, and Stewart are being added "after the statute of limitations has run" (ROA number 46, at 4: 23-28),
     ignoring the well-established law and undenied facts that the statute of limitations did not run because the new causes
15   of actions against these proposed new defendants did not accrue until January 28, 2022 and the claim was filed
     against them on April 4, 2022.

16   [21] See Plaintiff's Reservation 2644627 ROA number 38 Declaration of Steven Mark Kamp In Support of Plaintiff's
     Petition To File Late Tort Claim Against Governmental Entity, at 2: 15 – 3:20 and Exhibits "F" (Plaintiff's April 4,
17   2022 supplemental CGCA claim) and "G" (County April 9, 2022 claim rejection letter).

18   [22] ROA 1 IC paragraph 10 alleges as follows: "Upon information and belief, Plaintiff alleges that one or females
     (Jane Roe Defendants 2-100) and/or males (John Doe Defendants 1-100) have committed one or more of the acts or
19   omissions alleged in this Complaint. Plaintiff is unaware of their identities and upon receipt of such information
     through discovery or otherwise, will seek leave of Court to amend this Complaint with such identity and serve Roe
20   One within the period of California Code of Civil Procedure Section 474."

21   [23] ROA 1 IC paragraph 14 alleges as follows: "Defendant County of Sacramento ("County") is a public entity
     organized and existing under the laws of the State of California; is the employer of individual capacity Defendant
22   Pamela Pisani; is believed to be the employer of one or more of the Defendant Roe One, Defendant Roe Two, and
     one or more of the Jane Roe Defendants 3-100 and John Doe Defendants 1-100 named herein; and is the employer of
23   one or more supervisorial employees who supervised these named Defendants. Defendant County operates a
     Department of Health Services ("County Health") with a Division of Behavioral Health Services ("County
24   Behavioral Health") where Defendant Pisani was employed on December 14, 2020, and where Defendant Pisani is
     believed to be still employed. Defendant County also operates a Sheriff's Department ("County Sheriff") that Pisani
25   said was the source of her information and authority for committing her acts against Plaintiff alleged herein."

26   [24] ROA number 15 (Reiman Declaration), at 1: 25-27 (paragraph 2) and 3: 3-5 (paragraph 8).

27   [25] Thus rendering irrelevant Defendants' reliance (ROA number 46, at 4: 14-28 and 6: 1-20) on Ingram v. Superior
     Court (1979) 98 Cal.App.3d 483, 492; Woo v. Superior Court (1999) 75 Cal.App.4[th] 169, 176; Thompson v. Palmer
28   Corp. (1956) 138 Cal.App.2d 387, 390; Diliberti v. Stage Call Corp. (1992) 4 Cal.App.4[th] 1468; and Weil & Brown,
     CAL.PRAC.GUIDE.CIV.PRO.BEFORE TRIAL (The Rutter Group 2012), section 6:750.

     PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED
     COMPLAINT 9

1    Moreover, it is well-established law in our California courts that the validity of a proposed

2  amendment is not considered in deciding whether to grant leave to amend, and our courts

3  therefore hold that even if the proposed legal theory is a novel one, "the preferable practice would

4
   be to permit the amendment and allow the parties to test its legal suffciency by . . . appropriate
5
   proceedings." *California Casualty Gen. Ins. Co. v. Superior Court* (1985) 173 Cal.App.3d 274,
6
7  280-81 (*"California Casualty"*)[26]; *Kittredge Sports Co. v. Superior Court* (1989) 213 Cal.App.3d

8  1045, 1048 (*"Kittredge"* )(applying *California Casualty* to proposed amendments where "the

9  proposed legal theory is a novel one"). Here the Proposed FAC brings in long-established causes

10  of action[27] for federal Section 1983[28] retaliation for the exercise of United States Constitution

11
   First Amendment rights of speech and petitioning; Civil Code Section 52.1 Tom Bane Act
12
13  retaliation; defamation; and false light invasion of privacy.[29]  As the court held in another case

14  referenced by Defendants: "[i]f discovery and investigation develop factual grounds justifying a

15  timely amendment to a pleading, *leave to amend must be liberally granted"*(emphasis added)[30];

16  this is because "[t]hat trial courts are to liberally permit such amendments, at any stage of the

17  proceeding, has been established policy in this state . . . resting on the fundamental policy the

18  cases should be decided on the merits."[31]   When the Superior Court in *Kittredge Sports*
19
20  *Company , supra,* denied leave to amend in the pre-trial stage, such denial resulted in a writ of

21  [26] This is the actual holding of *California Casualty* at the Defendants' jump-cited pages (173 Cal.App.3d at 280-81),
    not the mis-citation by Defendants in their ROA number 46 opposition memorandum (at 4: 5-8) -- that leave to
22  amend can supposedly be denied because "where, as here, the purported amended pleading is deficient as a matter of
    law . . .".

23  [27] This is why Defendants' cited case (ROA number 46 at 4: 10-11) of *Robertson v. City of Long Beach* (1937) 19
    Cal.App.2d 676, 679 is irrelevant; all the court in that case held is that a city cannot be held not liable to a motorist
24  suing because a street does not run in a straight line but instead contained "jogs" or "offsets." Federal Section 1983,
    Civil Code 52.1, defamation, and false light invasion of privacy are far cries from the claim in *Robertson.*
25
    [28] United States Code, Title 42, Section 1983.
26
    [29] See ROA number 34 CRC Rule 3.1324(b) Declaration of Steven Mark Kamp, at 5: 5 – 6: 20 (paragraph 7); ROA
27  number 35 Notice of Motion, at 11: 1 – 12: 5.

28  [30] *Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 596, referenced by Defendants in ROA 46, at 4: 8-11.

    [31] *Hirsa v. Superior Court* (1981) 181 Cal.App.3d 486, 488-89.

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED
COMPLAINT 10

1    mandamus directing the Superior Court to allow the amendment; *Kittredge Sports Company*,

2    *supra* at 213 Cal.App.3d 1047, 1048-1050. Finally, Defendants have not even attempted to

3    demonstrate the requisite "inexcusable delay and probable prejudice."[32]

4

      **IV.    California Rule of Court 3.1103(a)(2) Permits The PRA Writ Action To Be**

5             **Joined Under CCP Section 427.10 Through The ROA 35 Noticed Motion**

6       As Plaintiff noted in her ROA 33 memorandum[33], CCP Section 427.10, subdivision (a) states:

7
         "A plaintiff who in a complaint, alone or with other co-plaintiffs, alleges a cause of action against one
8          or more defendants may unite with such cause any other causes which [s]he has either alone or with any
         coplaintiffs against any of such defendants."

9    This statute reflects "[t]h[e] broad principle of permissive joinder", eliminating demurrers for

10    "several causes of action improperly united in a complaint."[34] Defendants' silence regarding CCP

11    Section 427.10 in their ROA 46 memorandum concedes this point. Because judicial policy favors

12    resolution of all disputed matters between the parties in the same lawsuit, the court's discretion

13    will usually be exercised liberally to permit amendment of the pleadings[35], especially where CCP

14
15    427.10 expressly authorizes such joinder. In addition, California Constitution Article I, Section

16    3(b) (added by the November 2004 voters in Proposition 59) in subdivision (1) thereof declares

17    that ""[t]he people have the right of access to . . . the writings of public officials and agencies"

18    and therefore following subdivision (b)(2) expressly states: "A statute . . . including those in

19    effect on the effective date of this subdivision, *shall be broadly construed if it furthers the*

20    *people's right of access* . . ." (emphasis added). Thus, the express liberal joinder language of

21
22    CCP Section 427.10 (effective since 1972) under the pro-access-to-records rule of construction

23    demanded by the California Constitution requires that Plaintiff be permitted to join a PRA writ

24    action with her other causes of action. Plaintiff agrees with Defendants' that a writ proceeding is

25

26    [32] *Magpali v. Farmers Group* (1988) 48 Cal.App.4th 471, 487-88.

27    [33] At 13: 10-12.

     [34] California Continuing Education of the Bar, *California Civil Procedure Before Trial*, Section 15.24.1.

28    [35] See *Nestle v. Santa Monica* (1972) 6 Cal.3d 920, 939; *Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 596.

1   typically initiated either through an *ex parte* peremptory writ *or by filing a noticed motion*– and

2   Plaintiff's PRA writ action is in fact part of the noticed motion[36] demanded by Defendants[37], and

3   is treated as such under CRC Rule 3.1103(a)(2), which defines "law and motion" as "includ[ing]

4   any proceedings . . . [o[n application for . . . writs of . . . mandate . . ."[38]

5

6   **V.    Defendants' False Statements About Plaintiff's  Proposed FAC Are Not A Basis To Deny Plaintiff's Motion**

7
      Defendants' final straw is a claim that the Proposed FAC "omits or contradicts facts

8   pleaded in the original pleading"  and therefore should be treated as a "sham."[39] According to

9
   Defendants: "Originally, Plaintiff denied the existence of any restraining order against them

10  [sic]."[40] **In fact, the ROA 1 IC does not contain any allegations about any restraining order,**

11  **so any allegations about any restraining order in the Proposed FAC cannot contradict the**

12  **ROA 1 IC, thus rendering Defendants' cited authority foundationally inapplicable.[41]**

13
14  **Tellingly, Defendants do not cite the ROA 1 IC (because they cannot), but instead refer to**

15  **Plaintiff's ROA 23 Declaration in Opposition to the Defendants' Anti-SLAPP Statute**

16  **Motion.[42]** There, Plaintiff responded to the newly-revealed County electronic mail messages  in

17
18  the ROA 15 Reiman Declaration where Defendant Pisani and proposed new Defendants Reiman

19  _____

    [36] ROA number 35, Exhibit A, Twelfth Cause of Action (paragraphs 277-291).

20  [37] See ROA number 46 at 6: 21 – 7: 3, quoting Rutter, *Administrative Law,* , Section D, which notes that a "the
    noticed motion procedure [which] has become the prevailing practice for initiating a writ proceeding . . ." This is
21  exactly what Plaintiff is doing with the ROA 35 Exhibit A Proposed FAC. The notice of motion gives the County far
    more notice than a peremptory writ.

22  [38] As noted in California Continuing Education of the Bar, *California Administrative Mandamus*, Section 11.28 A:
    "[a] noticed motion for a peremptory writ of administrative mandamus is the same as any other civil motion.
23
    [39] ROA number 46 at 5: 6-12, quoting *Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th
24  929, 946, and Weil & Brown, CAL PRAC. GUIDE: CIV. PROC. BEFORE TRIAL (The Rutter Group 2014),
    Section 6.648. As demonstrated above, this cited authority is irrelevant because the requisite contradictions between
25  the ROA 1 IC and the Proposed FAC do not exist (the ROA 1 IC does not mention any restraining order).

    [40] ROA number 46, at 5: 14-15, which incorrectly cites this as ROA number 22 rather than ROA number 23.
26
    [41] An initial *pleading* that is contradicted by a subsequent *pleading* is required for the "sham pleading" doctrine to
27  apply. See *Hendy v. Losse* (1991) 54 Cal.3d 723, 742-43 ("Where a verified *complaint contains allegations* . . . the
    defect cannot be cured in *subsequently filed pleadings* . . .")(emphasis added).

28  [42] See ROA number 46 at 5: 15-19.

    PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED
    COMPLAINT 12

and Stewart published messages stating that Plaintiff "has a restraining order against her by a city

counselman [sic by Defendants]." Plaintiff then stated that "I am not now, nor have I ever been,

the restrained party in any restraining order obtained by any member of the Sacramento City

Council."[43] Plaintiff made this statement to demonstrate that the newly-revealed County

electronic mail messages gave rise to  new defamation and false light claims against existing

Defendant Pisani and proposed new Defendants Reiman and Stewart[44], and explaining her

amended complaint.[45]  This was not an allegation in the ROA 1 IC. Based on the newly

discovered County electronic mail messages, it now forms part of the ROA 35 Exhibit A

Proposed FAC allegations and causes of action against Defendant Pisani and proposed new

Defendants Stewart and Reiman.[46]  As their final last straw, Defendants claim: "But now, in meet

and confer efforts prior to the CMC, Plaintiff claims that the restraining order was the result of

some sort of conspiracy against her."[47] What Defendants dishonestly fail to note is that "the

restraining order" is not one brought by a Sacramento city councilmember, but one brought by

one Steven Maviglio, who as Defendants know is not a Sacramento city councilmember, but

[43] See ROA number 23, at 2: 26-28 (paragraph 4). Defendants in their ROA number 46 at 5: 13-19 incorrectly cite this as ROA number 22. As Plaintiff noted in her ROA number 33 memorandum of points and authorities (at page 11), the City of Sacramento in Public Records Act Reference Number P028660-021522 states that there is no restraining order against Plaintiff by any member of the Sacramento City Council. Defendants in their ROA number 46 said nothing in response.

[44] But not against Defendant Briggs, whose ROA number 15 exhibit A pages 2-3 December 10, 2020 communication about Plaintiff proposed illegal retaliation, but did not say that Plaintiff was the restrained party in a restraining order brought by a Sacramento City Council member. Therefore, in the ROA 35 Exhibit A Proposed FAC Briggs is not named in the Fifth Cause of Action for False Light Invasion of Privacy [ROA number 35 Exhibit A Proposed FAC at 158-193] or in the Sixth Cause of Action for Defamation [id., at paragraphs 194-234].

[45] Attached as Exhibit A in the ROA number 20 Exhibits in opposition to Defendants' Anti-SLAPP Statute Motion. The ROA number 35 Exhibit A Proposed FAC is substantially identical but in a few paragraphs has been updated (for example, to reflect the County's denial of the supplemental CGCA claim on April 9, 2022, an event that had not occurred when ROA number 20 was filed on April 6, 2022).

[46] Fifth Cause of Action for False Light Invasion of Privacy [ROA number 35 Exhibit A Proposed FAC at 158-193] or in the Sixth Cause of Action for Defamation [id., at paragraphs 194-234].

[47] ROA number 46 at 5: 20-22.

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 13

1   rather a person they describe in their ROA 25 as "a political figure in Sacramento"[48] a "status"

2   that somehow justified Pisani, Stewart, and Reiman falsely stating that Plaintiff was the subject of

3   a Sacramento City Councilmember restraining order.[49] The Maviglio restraining order is not

4   pleaded in the ROA 1 IC or in the ROA 35 Exhibit A Proposed FAC, but Defendants in their

5

6   initial CMC meet and confer letter proposed that Plaintiff agree to treat it as a "related case."[50]

7   Plaintiff refused because under the CRC Rule 3.300 definition of a "related case", this does not

8   qualify because it is not ongoing in Superior Court ; does not involve the County or Pisani as a

9   party; and is not based on identical transactions.[51] Nevertheless, Defendants in their May 12, 2022

10  CMC report refer to it as a "related case"[52], obviously grasping for straws to harass Plaintiff.

11  **VI.    Conclusion**

12

13          Therefore, for the reasons stated herein as well as in her ROA 33-35 motion papers,

14  Plaintiff respectfully requests this Court to grant Plaintiff leave to file her Proposed FAC.

15  Respectfully submitted,

16          /s/ STEVEN MARK KAMP (California State Bar Number 116817), Attorney for

17  Plaintiff/PRA Petitioner Ms. Parvin Olfati

18  STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822

19
    Electronic Mail Address:  steve.kamp@comcast.net
20
    Telephone: (916) 501-1791 (cellular, voice/text)
21
    DATED:  June 2, 2022
22

23

24  [48] ROA number 25, Defendants' Reply to Plaintiff's Opposition to Anti-SLAPP Statute Motion, at 5: 15-17.

25  [49] ROA number 25, at 5: 15-22.

26  [50] ROA number 42 (Plaintiff's First CMC Report, at 1: 23 – 3: 7; Exhibit B thereto (Declaration of Ms. Parvin
    Olfati); Exhibit C-3 thereto (Kamp declaration attaching Defendants'' letter as exhibit 1).

27  [51] ROA number 42 (Plaintiff's First CMC Report, at 1: 23 – 3: 7; Exhibit B thereto (Declaration of Ms. Parvin
    Olfati); Exhibit C-3 thereto (Kamp declaration attaching Defendants' letter as exhibit 1).

28  [52] See ROA number 41, Defendants' Case Management Statement, at page 1, question 1.

    PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED
    COMPLAINT 14

1    **DECLARATION OF SERVICE IN PERSON**

2    I, STEVEN M. KAMP, declare and state as follows:

3    1.      I am over the age of 18, and reside in the County of Sacramento, State of California.

4    2.      I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

5    3.      On June 2, 2022, I caused to be served by hand delivery on counsel for the Defendants in
     this action a true and correct copy of:

6
     **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
7    FOR LEAVE OF COURT TO FILE FIRST AMENDED COMPLAINT**

8

9

10
     4.  Service was effected in person on June 2, 2022 by:
11
         Personally delivering a true and correct copy of the above-referenced document to Porter
12       Scott, 350 University Avenue, Suite 200, Sacramento, California 95825 in a manila envelope
13       addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200,
         Sacramento, CA 95825;
14

15   I declare under penalty of perjury that the foregoing statements are based on personal knowledge,
     and are true and correct. Executed at Sacramento, California, this _2d day of June, 2022.
16
     /s/ STEVEN MARK KAMP (California State Bar Number 116817)
17   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
     Electronic Mail Address: steve.kamp@comcast.net
18   Telephone: (916) 501-1791 (cellular, voice/text)
19   Attorney for Plaintiff/PRA Petitioner Ms. Parvin Olfati

20

21

22

23

24

25

26

27

28

     PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED
     COMPLAINT 15

1   STEVEN MARK KAMP (California State Bar Number 116817)
    STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
2   Electronic Mail Address: steve.kamp@comcast.net
    Telephone: (916) 501-1791 (cellular, voice/text)
3   Attorney for Plaintiff Ms. Parvin Olfati

4

5

6

7

**FILED/ENDORSED**

**JUN – 2 2022**

By: _____ **S. Cade** _____
          **Deputy Clerk**

8

9              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  IN AND FOR THE COUNTY OF SACRAMENTO

11

12                                          No. **34-2021-00310164-CU-CE-GDS**

13   Ms. PARVIN OLFATI, Plaintiff          **REPLY MEMORANDUM DECLARATION
                                            OF STEVEN MARK KAMP IN SUPPORT
14          v.                             OF PLAINTIFF'S  MOTION FOR LEAVE
                                            OF COURT TO FILE FIRST AMENDED
15                                          COMPLAINT
     COUNTY OF SACRAMENTO; PAMELA
16   PISANI; JANE ROE DEFENDANT ONE;       **Date: June 9, 2022**
     JANE ROE DEFENDANT TWO;  JANE
17   ROE DEFENDANTS 3-100; JOHN DOE        **Time: 9:00 a.m.**
     DEFENDANTS 1-100,  Defendants
18                                          **Department: 54**

19                                          **Reservation No.: 2640543**

20                                          **Complaint Filed: 10/25/21**

21

22          I, STEVEN MARK KAMP, declare and state as follows:

23       1.  I represent the Plaintiff (Ms. Parvin Olfati) in this action. I have personal knowledge of the

24          facts set forth in this Declaration. I am an attorney at law licensed to practice in all state

25          and federal courts in the State of California, the U.S. Court of Appeals for the Ninth

26          Circuit, and the United States Supreme Court. I have been an active member of the State

27

28

PLAINTIFF'S REPLY MEMORANDUM DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF
PLAINTIFF's MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 1

1      Bar of California continuously since 1984 and an active member of The Florida Bar

2      continuously since 1982. I am also admitted to practice in the District of Columbia.

3   2.   Attached hereto as Exhibit "I" ("eye")[1] in pages 1-2 thereof  is a true and correct copy of the

4
       County of Sacramento (County)  electronic mail message response to Plaintiff Ms. Parvin
5
       Olfati's December 15, 2020 Public Records Act (PRA) request. This County electronic mail
6
7      message sent on December 16, 2020 in the right hand column of page 1 states "request

8      closed" and "fulfilled" because: "no documents to produce."

9   3.   Attached hereto in pages 3-5 of Exhibit "I" hereto is a true and correct copy of Plaintiff Ms.

10     Parvin Olfati's electronic mailed PRA request that the County is responding to with "no

11     documents to produce." Page 3 is a copy of the electronic mail message, which expressly

12
       states: "Attached please find a PRA Request from Ms. Parvin Olfati re County Division of
13
       Behavioral; Services Pam Pisani Activity At 1859 45th Street." On pages 4-5 of Exhibit "I" is
14
15     a true and correct copy of the attached PRA request, which begins by describing the

16     December 14, 2020 activity at Plaintiff's residence by Ms. Pamela Pisani, Senior Mental

17     Health Counselor with the County Division of Behavioral Health Services. At the bottom of

18     page 4 continuing to page 5, the PRA request states: "The requested records include, but are

19     not limited to the following:
20
       1. The duty statement of Senior Mental Health Counselor LMFT Pamela Pisani in effect on December 14, 2020.
21     2. The credentials of Pamela Pisani used by the County to authorize Pamela Pisani to act as a Senior Mental
          Health Counselor.
22     3. The definition of "LMFT."
       4. Any and all file numbers or case numbers assigned to or that contain the name "Olfati" and/or the address
23        "1859 45th Street."
24     5. Any communications or "information" from the County of Sacramento Sheriff's Department received by the
          Division of Behavioral Health Services or Pamela Pisani that mentions, refers to, or relates to Parvin Olfati
25        and/or 1859 45th Street.

26   ───────────────────────

27   [1] Exhibits "A" through "H" appear in this Reservation's Register of Actions (ROA)_ numbers 35 (Notice of Motion,
     Exhibit A), 34 (CRC Rule 1.324 (b) Declaration, Exhibits B and C), and in Reservation 2644627's  ROA number 38
28   (Kamp Declaration In Support of Petition to File Late Tort Claim Against Governmental Entity, Exhibits D, E, F, G
     and H).

PLAINTIFF'S REPLY MEMORANDUM DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF
PLAINTIFF's MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 2

6. Any information communicated to Pamela Pisani from any source that mentions, refers to, or relates to Parvin Olfati and/or 1859 45th Street

7. Any report made by Pamela Pisani regarding any activity in December 14, 2020 at 1859 45th Street or that relates to Parvin Olfati.

8. Any recordings made by Pamela Pisani of any activity at 1859 45th Street on December 14, 2020 and/or that include any image or audio of any person believed by Pamela Pisani to be Parvin Olfati, or any person spoken to by Pamela Pisani at 1859 45th Street.

9. The names, job titles, and contact information for each and every person or entity included in the word "they" as such word was used by Pamela Pisani at 1859 45th Street on December 14, 2020.

10. The names, job titles, and contact information for each and every person or entity included in the word "us" as such word was used by Pamela Pisani at 1859 45th Street on December 14, 2020.

11. The dispatch or other communication directing Pamela Pisani to come to 1859 45th Street and/or to contact Parvin Olfati at any time on December 14, 2020.

12. Any communications to, from, with, or about any County of Sacramento Sheriff's Department deputy sheriffs, employees, agents or representatives regarding any Pamela Pisani activity relating to Parvin Olfati or at 1859 45th Street on December 14, 2020.

13. Any communications to, from, with, or about any City of Sacramento Police Department officers regarding any Pamela Pisani activity relating to Parvin Olfati or at 1859 45th Street on December 14, 2020.

14. Any communications to, from, with, and/or about any resident of 45th Street in Sacramento, California 95819, including but not limited to Steven Maviglio (1901 45th Street), Barb Andres (1870 45th Street), Cecil Taylor (1870 45th Street). John Lisuk and his wife Mieke Smythe and /or Lisuk (1850 45th Street); June Lamoureaux and Bill Kellerhals (1856 45th Street); Martin Raygoza, his wife Helen and their son Petros Raygoza (1851 45th Street).

15. Any communications to, from, with, and/or about Kathryn Sweeney and/or Ben Wheeler (4501 "T" Street)

16. Any communications to, from, with and/or about any current or former tenant or resident of 1871 45th Street, including but not limited to: Melissa Grigsby, Michele Frayne, Sean Majkovica, Marko Majkovica, Adriana Sanchez, Kara Mullin, and/or Kristen Mullin.

17. Any communications to, from, with and/or about 1871 45th Street owner Camille Remy Obad or John Obad.

18. Any communications to, from, with and/or about the County of Sacramento Sheriff's Department that mention or refer to any Parvin Olfati PRA request, including but not limited to any Parvin Olfati PRA request regarding any County Sheriff Mental Health Unit.

19. The County Department of Health Services Division of Behavioral Health Services policies, procedures, rules, regulations, guidelines and/or protocols in effect on December 14, 2020 that govern any Pamela Pisani, Senior Mental Health Counselor, or LMFT activity at 1859 45th Street or with respect to Parvin Olfati, including but not limited to:

    (a) The making of unannounced in-person visits

    (b) Obtaining confirmation of identity from the person spoken to by the mental health counselor.

    (c) Verification of information communicated to the mental health counselor regarding the person the mental health counselor is directed to visit.

    (d) Remaining on property after being directed to leave.

    (e) Use of the word "community" rather than "County" to identify the mental health counselor.

    (f) Presentation of any County employee identification badge or credentials other than a business card.

4.  Note that the type of records expressly requested include "electronic messages . . . documents, records, and/or writings"[2], and that request items 5 through 12 expressly request:(a) Sheriff's Department communications to Pisani regarding Plaintiff [request items 5, 12]; (b) information communicated to Pisani from any source that mentions Plaintiff (request item 6); ( c) any Pisani report mentioning Plaintiff (request item 7); (d) the names, job titles, and contact information for any person or entity referred to by Pisani as "us" or "they" in December 14, 2020 front porch spiel to Plaintiff (request items 9 and 10); and (e) the dispatch or other communication directing Pisani to Plaintiff's residence on December 14, 2020.

5. The requested items in Plaintiff's PRA request clearly covered the following County electronic mail messages and related documents of 2020 December 10, 14, 15 and 18 that were unknown to Plaintiff both when she sent her PRA request on December 15, 2020 and when she received the County's "no documents to produce" response on December 16, 2020: County electronic mail messages[3] revealing that: (a) proposed new Defendant County Sheriff's Sergeant Ronald Briggs ordered that a "mental health worker" be sent to "check in on the letter writer [Plaintiff]" in retaliation for Plaintiff sending to the County Sheriff a Police Report letter[4] regarding the theft of her cellphone in the Sheriff's Department jurisdiction Fair Oaks area, a Police Report that Briggs determined without investigation to be "unfounded" and merited County Community Support Team intervention that Defendant Briggs believed would be "more effective" because Plaintiff's Police Report letter stated an "identified belief that law enforcement is stalking her and colluding against her"; and (b) electronic mail messages to, from, or with Defendant

---

[2] Page 4, first page of PRA request, eighth and ninth lines from the bottom: "produce to me all electronic messages . . .documents, records, and/or writings".

[3] ROA number 15 (County Jennifer Reiman Declaration), Exhibit A thereto.

[4] ROA number 15, Exhibit B thereto. This letter is also included as Exhibit Thirteen in the proposed First Amended Complaint (FAC).

1    Pisani and proposed new Defendants Jennifer Reiman and Jennifer Stewart stating that

2    Plaintiff was the restrained party in a restraining order against her by a member of the

3    Sacramento City Council[5], a statement that all three Defendants knew or in the exercise of

4    reasonable care should have known was false; (c) Pisani's report to Reiman[6]; (d) the

5    December 18, 2020 electronic mail message from Pisani to Reiman[7]; and (e) the fact

6    Plaintiff's November 9, 2020 Police Report to the County Sheriff[8] was attached to the

7    December 10, 2020 Jennifer Stewart to Jennifer Reiman electronic mail message that

8    communicated the directive from Sheriff's Sergeant Ronald Briggs to "get a mental health

9    worker to check in with the letter writer"[9] and that this was the hidden moving force

10   behind Pisani's December 14, 2020 activity at Plaintiff's residence.

11   6.   These County electronic mail messages included in the Reiman Declaration should have

12        been included in the County's response to Plaintiff's December 15, 2020 PRA request.

13        This PRA request is referenced in the Proposed FAC paragraph 283-(b), and an electronic

14        copy of the PRA request is included in Exhibit Eleven thereto. **However, as can be seen,**

15        **the County response to this PRA request was an electronic mail message stating that**

16        **the County had no documents. Had Plaintiff been given these documents which were**

17        **created by Defendant County shortly before Plaintiff sent her PRA request, the new**

18        **allegations in the Proposed FAC would have been included in both the April 5, 2021**

19        **initial California Government Claims Act claim and in the Initial Complaint.**

---

[5] ROA number 15, Exhibit A thereto.

[6] ROA number 15, Exhibit D thereto.

[7] ROA number 15, Exhibit C thereto.

[8] ROA number 15, Exhibit B thereto.

[9] ROA number 15, Exhibit A thereto (pages 2-3, December 10, 2020 5;42 p.m. email) and Exhibit B thereto.

1    7. **These documents should also have been included in any County Sheriff response to**

2    **Plaintiff's December 23, 2020 PRA request for:**

3
     "any and all electronic messages, text messages, reports, notes, log entries, computer entries, CAD,
4    memoranda, documents, records and/or writings that created on any County Sheriff sheriff, deputy,
     department, division, Impact Division, Homeless Outreach Team, officer, chief, employee, agent or
5    representative (County Sheriff) computer or other medium created, transmitted, received and/or stored that
     constitute, mention, refer to and/or relate to any information communicated on any date since January 1,
6    2020, to any employee, agent, or representative of the County of Sacramento Department of Health
     Services, Division of Behavioral Health Services, or any Community Support Team, or to Pamela Pisani,
7    that mention, refer to, or relate to Parvin Olfati and/or 1859 45th Street (Sacramento, California 95819)."[10]

8
     **The County Sheriff never responded to this PRA request, referenced in the Exhibit A**
9
     **Proposed FAC paragraph 283-(a) and included in Exhibit Eleven thereof.**
10

11   8.    Plaintiff first discovered the facts from the County electronic mail messages on January

12         29, 2022, when her undersigned counsel received in the postal mail the January 28, 2022

13         County Anti-SLAPP Statute Motion (ROA numbers 11-16) and Declaration of Jennifer

14         Reiman (ROA number 15) and exhibits thereto. Plaintiff on April 4, 2022 (a date within

15         six months of January 28, 2022) filed her supplemental CGCA claim that the County has
16
           treated as part of her Initial Claim, by giving it the same claim and file numbers.
17

18   9.    The County's December 16, 2020 statement that it had "no documents to produce" was

19         false when made, because in fact the County had created the December 10, 14, 15 and 18

20         electronic mail messages and related documents it would later attach to the January 28,

21         *2022* Reiman Declaration; and that Defendant County's Anti-SLAPP Statute Motion

22         prevented from being made the subject of any Amended Complaint between January 28,
23
           2022 and April 21, 2022.
24

25

26

27   _____

28   [10] Reservation 2640543 Exhibit A Proposed FAC, at pages 75-76 (copy of December 23, 2020 PRA request to
     County Sheriff alleged in paragraph 283-(a)).

     PLAINTIFF'S REPLY MEMORANDUM DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF
     PLAINTIFF's MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 6

1  I declare under penalty of perjury under the laws of the State of California that the statements

2  herein are true and correct, and that this Declaration was executed in Sacramento, California on

3  June 1, 2022.

4  /s/ Steven Mark Kamp, Attorney for Plaintiff Ms. Parvin Olfati

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S REPLY MEMORANDUM DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF
PLAINTIFF's MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 7

1   **Exhibit I: County of Sacramento Public Records Act Reference Number 20-4765 (December 16, 2020).**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S REPLY MEMORANDUM DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF
PLAINTIFF's MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT 8

Public Record Requests

## Sacramento County

# Request 20-4765  Closed                            

## Dates

**Received**

December 15, 2020 via email

## Staff Assigned

**Departments**

County Counsel

**Point of contact**

Natasha Drane

## Request

December 14, 2929
Dear Sir or Madam,
Attached please find a PRA Request from Ms.
Parvin Olfati re County Division of Behavioral;
Services Pam Pisani Activity At 1859 45th
Street Sacramento on December 14 2020

---

**Timeline**          Documents

👁 **Request Published**                              Public

December 16, 2020, 2:01pm by Krysta Guthrie

☑ **Request Closed**             Public

Fulfilled (no documents to produce)

December 16, 2020, 2:01pm by Krysta Guthrie

📄 **Document(s) Released to**                        Public
**Requester**

1758888.pdf

December 16, 2020, 2:01pm by Krysta Guthrie

🏛 **Department Assignment**                          Public

County Counsel

December 16, 2020, 11:49am by Rebecca Kay

🗁 **Request Opened**                                 Public

Request received via email

Case 2:22-at-00664 Document 1-2 Filed 06/29/22 Page 442 of 721

December 16, 2020, 11:49am by Rebecca Kay on behalf
of Steven Kamp

**FAQS HELP PRIVACY TERMS**

5/21/22, 10:10 AM    Xfinity Connect PRA Request from Ms_ Parvin Olfati re County Division of Behavioral; Services Pam Pisani Activity At 1859 45t...

Case 2:22-at-00664   Document 1-2   Filed 06/29/22   Page 443 of 721

STEVEN KAMP <steve.kamp@comcast.net>                                    12/15/2020 5:01 PM

PRA Request from Ms. Parvin Olfati re County Division of Behavioral; Services
Pam Pisani Activity At 1859 45th Street Sacramento on December 14 2020

To kayr@saccounty.net <kayr@saccounty.net>

---

December 14, 2929

Dear Sir or Madam,

Attached please find a PRA Request from Ms. Parvin Olfati re County Division of Behavioral; Services Pam Pisani Activity At 1859 45th Street
. Thank you. Sincerely, /s/ Ms. Parvin Olfati, 1849 45th Street, Sacramento, CA 95819

---

- PRA County Mental Pisani Pam ambush 2020 december 14 x.docx (90 KB)

Parvin Olfati 1859 45ᵗʰ Street Sacramento, CA. 95819

December 15, 2020

Via email to KayR@saccounty.net
Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA 95814

RE: Public Records Act Request For County of Sacramento Documents That Constitute, Mention, Refer To, And/or Relate To December 14, 2020 Pamela Pisani Senior Mental Health Counselor or LMFT Activity At 1859 45ᵗʰ Street And/or Related To Parvin Olfati

Dear Sir or Madam:

Please respond and provide any and all requested records via postal mail to my address above. Please use e mail transmission only as a supplement to any postal mailed response. The only reason I am sending this Public Records Act (PRA) request via e mail is that the Clerk of the Board Office is no longer available for in-person delivery

In the morning and early afternoon hours on Monday December 14, 2020, there were two suspicious cars and female visitors to Barbara Andres at 1870 45ᵗʰ street. One of the suspicious vehicles was a white SUV with a California license plate number of 8MUL994. I saw the driver of this vehicle later walking on 45ᵗʰ Street with Barbara Andres. I saw this person along with 1901 45ᵗʰ Street resident Mr. Steven Maviglio trying to provoke me while Mr. Maviglio was waiting to start his spin doctor production of videotaping me to be used to abuse the government, law enforcement, and intelligence agencies against me. These cars have been at 1870 45ᵗʰ Street multiple times, and each time their visits were followed by extreme and violent criminal acts against me.

Later, as my friend was leaving 1859 45ᵗʰ Street and as I was walking up the front yard stairs toward my front door, I noticed Barbara Andres and the one of the female visitors were walking on the sidewalk toward my house, and I also heard Barbara Andres screaming and yelling some incoherent words against me and to me. I told her "I do not talk to felons", and with that I kept on walking toward my front door. But she did not stop. At the same time, I noticed Mr. Maviglio jumping out of his house with his video/phone and starting his spin doctors style videotaping of me. I was sure this was another set up that starts with Barbara Andres acting as a gangstalker who has gone wild, is out of control, and has been released loose on the street to provoke me, with Mr. Maviglio in the operation to manufacture another piece of fraudulent "evidence" for his spin doctor production. I also was sure that they were trying to manufacture more fraudulent documents to use against me by government and law enforcement agencies. Therefore, I ignored Barbara Andres, Mr. Maviglio, and her visitor; I went inside and closed the door. However, I noticed Barbara Andres was still yelling at my friend, so I went out. As my friend was getting in his car, I asked him to hurry up and leave because Mr. Maviglio is working on manufacturing another one of his spin doctor fraudulent evidence fabrications. So, my friend left. I was very sick from the around the clock release of toxic gas and other chemicals as well as the exhaust gas of the 1871 45ᵗʰ Street resident Sean Majkovica's white junk truck that has been brought to 1871 to facilitate more physical assaults against me and my animals. Mr. Majokivica has doubled down on this violent and intentional crime against me after I filed a City of Sacramento Police Department Police Report against him and his intentional exposing me to this dangerous toxic gas and still is going on.

After a very torturous morning and midday -- featuring Barbara Andres acting as gangstalker and psychopath on the loose -- there was coming a much bigger abuse of power against me. Obviously, this whole spin doctor production by Mr. Maviglio and his partner in perjury Barb Andres was to abuse the government agency power and authority against me. Some of the details are as follows:

On Monday, December 14, 2020, at about 4:36 p.m., the front door of my 1859 45ᵗʰ Street house was knocked upon by a woman who asked me "is this Parvin?" I opened the door, and took her business card identifying her as "Pamela Pisani, LMFT Senior Mental Health Counselor" from the "Community Support Team" of the County of Sacramento Department of Health Services Division of Behavioral Health Services. I then heard Ms. Pisani say she had received an "anonymous call" and complaint about me. I told her to wait, closed the door, and got my cellphone. I then opened the door. In response to my question "who are you again", she identified herself as "Pam". I said "Pam confirmed that I was Parvin Olfati. <u>She never confirmed that I was Parvin Olfati.</u>

I then said "and you don't know who called you". Ms. Pisani then said "I think it was maybe the Sheriff's Department", and then used the word "complaint." I then said "so the Sheriff's Department called you?" and Ms. Pisani said: "They didn't call me. They let us know that maybe there were some concerns…they're out of the Sheriff's Department jurisdiction…"

I then said "so the Sheriff's Department had something to do with this" and Ms. Pisani said: "they forwarded some information." In response to my question as to "exactly" what "information" had been "forwarded", Ms. Pisani said "they forwarded some information stating…" but "I don't know exactly" what the information was. I then asked:   "So how can you go to somebody's door when you don't have any idea what you're doing there?"

Ms. Pisani did not answer my question, but instead frantically and immediately wheeled to her scripted narrative about "resources." She did not answer my questions about her "resources" or the function of the "Behavioral Services" "department" (actually a division) that she said she worked for. <u>She never used the word County even though she was here on purported County business. Instead she used the word "community" but never said who the "community" was. I concluded by telling her that her "behavior" was suspect because her behavior as displayed to me consisted of knocking unannounced on people's doors based on anonymous "b---s---."</u>

I told her to leave, but she refused to leave. Instead she yelled at me from my driveway, and she stalked me as I walked out toward the end of my driveway toward the back yard to check some of the toxic and feces and toxic liquid that had been placed immediately outside my bedroom window. <u>In other words, she trespassed my property by refusing to leave after being ordered by me to leave.</u> She drove a white SUV vehicle with the California license plate 7WID019. This appeared to be her personal vehicle and/or vehicle given to her for use in her visit to my house and not a County vehicle.

<u>Displayed at the end of this PRA request letter are photographs of Ms. Pisani's behavior. I took these pictures with my cellphone on December 14, 2020 starting at 4:36 p.m.</u>

Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I hereby request that the County of Sacramento (County) produce to me any and all electronic messages, text messages, emoluments, payments, reports, notes, log entries, computer entries, CAD, memoranda, documents, records and/or writings that created on any County county, Pamela Pisani, Senior Mental Health Counselor, Department of Health Services, Division of Behavioral Health Services, Community Support Team, Howard Schmidt, Chief of Staff, Susan Peters, Supervisor, Board of Supervisors, department, division, officer, chief, employee, agent or representative (County) computer or other medium created, transmitted, received and/or stored since January 1, 2015 that constitute, mention, refer to and/or relate to any communications, payments, emoluments, informant activity, providing of information, or other activity by Senior Mental Health Counselor LMFT Pamela Pisani at 1859 45ᵗʰ Street on December 14, 2020 and/or that relate to, refer to, or mention Parvin Olfati or 1859 45ᵗʰ Street (Sacramento, California 95819).

The requested records include, but are not limited to the following:
   1.   The duty statement of Senior Mental Health Counselor LMFT Pamela Pisani in effect on December 14, 2020.

1

2.  The credentials of Pamela Pisani used by the County to authorize Pamela Pisani to act as a Senior Mental Health Counselor.
3.  The definition of "LMFT."
4.  Any and all file numbers or case numbers assigned to or that contain the name "Olfati" and/or the address "1859 45ᵗʰ Street."
5.  Any communications or "information" from the County of Sacramento Sheriff's Department received by the Division of Behavioral Health Services or Pamela Pisani that mentions, refers to, or relates to Parvin Olfati and/or 1859 45ᵗʰ Street.
6.  Any information communicated to Pamela Pisani from any source that mentions, refers to, or relates to Parvin Olfati and/or 1859 45ᵗʰ Street
7.  Any report made by Pamela Pisani regarding any activity in December 14, 2020 at 1859 45ᵗʰ Street or that relates to Parvin Olfati.
8.  Any recordings made by Pamela Pisani of any activity at 1859 45th Street on December 14, 2020 and/or that include any image or audio of any person believed by Pamela Pisani to be Parvin Olfati, or any person spoken to by Pamela Pisani at 1859 45ᵗʰ Street.
9.  The names, job titles, and contact information for each and every person or entity included in the word "they" as such word was used by Pamela Pisani at 1859 45ᵗʰ Street on December 14, 2020.
10. The names, job titles, and contact information for each and every person or entity included in the word "us" as such word was used by Pamela Pisani at 1859 45ᵗʰ Street on December 14, 2020.
11. The dispatch or other communication directing Pamela Pisani to come to 1859 45ᵗʰ Street and/or to contact Parvin Olfati at any time on December 14, 2020.
12. Any communications to, from, with, or about any County of Sacramento Sheriff's Department sheriffs, employees, agents or representatives regarding any Pamela Pisani activity relating to Parvin Olfati or at 1859 45ᵗʰ Street on December 14, 2020.
13. Any communications to, from, with, or about any City of Sacramento Police Department officers regarding any Pamela Pisani activity relating to Parvin Olfati or at 1859 45ᵗʰ Street on December 14, 2020.
14. Any communications to, from, with, and/or about any resident of 45ᵗʰ Street in Sacramento, California 95819, including but not limited to Steven Maviglio (1901 45ᵗʰ Street), Barb Andres (1870 45ᵗʰ Street), Cecil Taylor (1870 45ᵗʰ Street). John Lisuk and his wife Mieke Smythe and /or Lisuk (1850 45ᵗʰ Street); June Lamoureaux and Bill Kellerhals (1856 45ᵗʰ Street); Martin Raygoza, his wife Helen and their son Petros Raygoza (1851 45ᵗʰ Street).
15. Any communications to, from, with, and/or about Kathryn Sweeney and/or Ben Wheeler (4501 "T" Street)
16. Any communications to, from, with and/or about any current or former tenant or resident of 1871 45ᵗʰ Street, including but not limited to: Melissa Grigsby, Michele Frayne, Sean Majkovica, Marko Majkovica, Adriana Sanchez, Kara Mullin, and/or Kristen Mullin.
17. Any communications to, from, with and/or about 1871 45ᵗʰ Street owner Camille Remy Obad or John Obad.
18. Any communications to, from, with and/or about the County of Sacramento Sheriff's Department that mention or refer to any Parvin Olfati PRA request, including but not limited to any Parvin Olfati PRA request regarding any County Sheriff Mental Health Unit.
19. The County Department of Health Services Division of Behavioral Health Services policies, procedures, rules, regulations, guidelines and/or protocols in effect on December 14, 2020 that govern any Pamela Pisani, Senior Mental Health Counselor,  or LMFT activity at 1859 45ᵗʰ Street or with respect to Parvin Olfati, including but not limited to:

(a)  The making of unannounced in-person visits
(b)  Obtaining confirmation of identity from the person spoken to by the mental health counselor.
(c)  Verification of information communicated to the mental health counselor regarding the person the mental health counselor is directed to visit.
(d)  Remaining on property after being directed to leave.
(e)  Use of the word "community" rather than "County" to identify the mental health counselor.
(f)  Presentation of any County employee identification badge or credentials other than a business card.

As used herein, the term "emoluments" includes but is not limited to any job, contract, promise of any job, or  promise of any contract.
The records requested include but are not limited to any records of any placement of Parvin Olfati and/or 1859 45ᵗʰ Street under any "intelligence", surveillance, monitoring, or other similar activity by any law enforcement agency.
If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable, please provide the records of such destruction, transfer, or unavailability, together with applicable record retention policies.  As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this request, and either produce the requested documents, or commit in writing to a production date that is within the reasonable time period required by the PRA.
Please note that all but one of my PRA requests to the County Sheriff have gone unanswered in clear violation of the PRA. Please also note that the unannounced unauthorized attempted ambush of me by Ms. Pisani based on anonymous fabricated "information" brought back frightening memories of the May 9, 2020 false arrest and great bodily injury of me in my own front door by City of Sacramento Police Department Officer Jared Robinet, one of the two officers who fired the bullets that killed Stephon Clark. This false arrest was capped with one and only one charge: a standalone Penal Code Section 148(a)(1) "resisting arrest" charge that the Sacramento County District Attorney dismissed on its own motion – for "Insufficient Evidence." Insufficient Evidence for a real criminal charge, but enough "evidence" to allow me to be stalked on my own driveway by a killer, who caused me great bodily injury and put on a false arrest show for Mr. Maviglio and his gangstalkers, who I reasonably believe are now working with the so-called Behavioral Services Division of the County.
I look forward to a prompt, honest, and complete response within ten (10) calendar days. Thank you.
Sincerely,

Parvin Olfati

2

1  **DECLARATION OF SERVICE IN PERSON**

2  I, STEVEN M. KAMP, declare and state as follows:

3  1.    I am over the age of 18, and reside in the County of Sacramento, State of California.

4  2.    I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

5  3.    On June 2, 2022, I caused to be served by hand delivery on counsel for the Defendants in
   this action a true and correct copy of:

6
7  **PLAINTIFF'S REPLY MEMORANDUM DECLARATION OF STEVEN MARK
   KAMP IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE OF COURT TO
   FILE FIRST AMENDED COMPLAINT**
8

9
   4. Service was effected in person on June 2, 2022 by:
10

11     Personally delivering a true and correct copy of the above-referenced document to Porter
       Scott, 350 University Avenue, Suite 200, Sacramento, California 95825 in a manila envelope
12     addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200,
       Sacramento, CA 95825;
13

14  I declare under penalty of perjury that the foregoing statements are based on personal knowledge,
    and are true and correct. Executed at Sacramento, California, this _2d_ day of June, 2022.
15
    /s/ STEVEN MARK KAMP (California State Bar Number 116817)
16  STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
    Electronic Mail Address: steve.kamp@comcast.net
17  Telephone: (916) 501-1791 (cellular, voice/text)
18  Attorney for Plaintiff/PRA Petitioner  Ms. Parvin Olfati

19

20

21

22

23

24

25

26

27

28

1

**PORTER | SCOTT**

2  A PROFESSIONAL CORPORATION
   Carl L. Fessenden, SBN 161494

3  Jordan M. McCroskey, SBN 340068
   350 University Ave., Suite 200

4  Sacramento, California 95825
   TEL: 916.929.1481

5  FAX: 916.927.3706

6  Attorneys for Defendants
   COUNTY OF SACRAMENTO and PAMELA PISANI

7  *Exempt from Filing Fees Pursuant to Government Code § 6103*

8

9              SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

10

11  MS. PARVIN OLFATI,                          CASE NO.  34-2021-00310164

12              Plaintiffs,                     **OBJECTION TO DECLARATION OF**
                                                **STEVEN KAMP IN SUPPORT OF MOTION**
13  v.                                          **FOR LEAVE OF COURT TO FILE FIRST**
                                                **AMENDED COMPLAINT**
14

15  COUNTY OF SACRAMENTO; PAMELA                **Date: June 9, 2022**
    PASANI; JANE ROE DEFENDANT ONE;            **Time: 9:00 a.m.**
16                                              **Dept.: 54**
    JANE ROE DEFENDANT TWO; JANE               **Reservation No.: 2640543**
17  ROE DEFENDANT 3-100, JOHN DOE
    DEFENDANTS 1-100,
18

19              Defendants.                     Complaint Filed:  10/25/21

20  _____/

21       Defendants COUNTY OF SACRAMENTO and PAMELA PISANI hereby submits the

22  following objections to statements and evidence submitted by Plaintiff in the Declaration of Steven

23  Kamp in Support of Plaintiff's Motion for Leave of Court to file First Amended Complaint.

24       As an initial matter, it is impermissible to submit evidence in Reply to an opposition as it denies

25  the opposing party of due process. See *Neighbours v. Buzz Oats Enterprises (1990) 217 Cal.App. 3d*

26  *325, 335, fn 8.* As such, all evidence submitted in connection with the Reply should be stricken and not

27  considered.  In addition, Defendants submit the follow specific objections to the evidence submitted.

28  / / /

{02720785.DOCX}                                   1

**OBJECTION TO DECLARATION OF STEVEN KAMP IN SUPPORT OF MOTION FOR LEAVE OF COURT TO
FILE FIRST AMENDED COMPLAINT**

FILED/ENDORSED

JUN - 6 2022

By: _____ E. Medina
              Deputy Clerk

BY FAX

I.

## OBJECTION TO DECLARATION OF STEVEN KAMP

### OBJECTION NO. 1:

**Material Objected to:** In paragraph 2, "true and correct copy of the County of Sacramento (County) electronic mail message response to Plaintiff Parvin Olfati's December 15, 2020, Public Records Act (PRA) request. This County electronic mail message sent on December 16, 2020, in the right hand column of page 1 states 'request closed' and 'fulfilled' because: 'no documents to produce.'"

**Grounds for Objection No. 1:** "Except as provided by law, hearsay evidence is inadmissible." (Evid. Code, § 1200, subd. (b).) "Hearsay" is an out-of-court statement offered for its truth. (Evid. Code, § 1200, subd. (a); see also FRE 801(c); and *Plancarte v. Guardsmark*, LLC (2004) 118 CA4th 640, 647.) Here, Plaintiff asserts that the email and statements were written by the County and were in response to her PRA request. However, this was a statement made out-of-court and is being offered for its truth. Further, the assertion is not relevant, lacks foundation and call for speculation. Thus, it is inadmissible.

### OBJECTION NO. 2:

**Material Objected to:** In paragraph 3, "that the County is responding to with 'no documents to produce.'"

**Grounds for Objection No. 2:** "Except as provided by law, hearsay evidence is inadmissible." (Evid. Code, § 1200, subd. (b).) "Hearsay" is an out-of-court statement offered for its truth. (Evid. Code, § 1200, subd. (a); see also FRE 801(c); and *Plancarte v. Guardsmark*, LLC (2004) 118 CA4th 640, 647.) Here, Plaintiff asserts that the email and statements were written by the County and were in response to her PRA request. However, this was a statement made out-of-court and is being offered for its truth. Further, the assertion is not relevant, lacks foundation and call for speculation. Thus, it is inadmissible.

### OBJECTION NO. 3:

**Material Objected to:** In paragraph 5, "received the County's 'no documents to produce' response . . . County electronic mail messages . . . ."

**Grounds for Objection No. 3:** "Except as provided by law, hearsay evidence is inadmissible."

{02720785.DOCX}                                    2
**OBJECTION TO DECLARATION OF STEVEN KAMP IN SUPPORT OF MOTION FOR LEAVE OF COURT TO FILE FIRST AMENDED COMPLAINT**

1  (Evid. Code, § 1200, subd. (b).)  "Hearsay" is an out-of-court statement offered for its truth. (Evid.

2  Code, § 1200, subd. (a); see also FRE 801(c); and *Plancarte v. Guardsmark*, LLC (2004) 118 CA4th

3  640, 647.)  Here, Plaintiff asserts that the email and statements were written by the County and were in

4  response to her PRA request.  However, this was a statement made out-of-court and is being offered for

5  its truth.  Further, the assertion is not relevant, lacks foundation and call for speculation. Thus, it is

6  inadmissible.

7                                    **OBJECTION NO. 4:**

8       **Material Objected to:**   In paragraph 6, "the County response to this PRA request was an

9  electronic mail message stating that the county had no documents. . . . [T]hese documents which were

10  created by Defendant County . . . ."

11      **Grounds for Objection No. 4:** "Except as provided by law, hearsay evidence is inadmissible."

12  (Evid. Code, § 1200, subd. (b).)  "Hearsay" is an out-of-court statement offered for its truth. (Evid.

13  Code, § 1200, subd. (a); see also FRE 801(c); and *Plancarte v. Guardsmark*, LLC (2004) 118 CA4th

14  640, 647.)  Here, Plaintiff asserts that the email and statements were written by the County and were in

15  response to her PRA request.  However, this was a statement made out-of-court and is being offered for

16  its truth.  Further, the assertion is not relevant, lacks foundation and call for speculation. Thus, it is

17  inadmissible.

18                                    **OBJECTION NO. 5:**

19      **Material Objected to:**   In paragraph 9, "[t]he County's December 16, 2020, statement that it

20  had 'no documents to produce' was false when made, because in fact County had created the December

21  10, 14, 15, and 18 electronic mail messages and related documents it would later attach . . . ."

22      **Grounds for Objection No. 5:** "Except as provided by law, hearsay evidence is inadmissible."

23  (Evid. Code, § 1200, subd. (b).)  "Hearsay" is an out-of-court statement offered for its truth. (Evid.

24  Code, § 1200, subd. (a); see also FRE 801(c); and *Plancarte v. Guardsmark*, LLC (2004) 118 CA4th

25  640, 647.)  Here, Plaintiff asserts that the email and statements were written by the County and were in

26  response to her PRA request.  However, this was a statement made out-of-court and is being offered for

27  its truth.  Further, the assertion is not relevant, lacks foundation and call for speculation. Thus, it is

28  inadmissible.

**OBJECTION TO DECLARATION OF STEVEN KAMP IN SUPPORT OF MOTION FOR LEAVE OF COURT TO
FILE FIRST AMENDED COMPLAINT**

## II.

### OBJECTION TO EXHIBITS

### OBJECTION NO. 1:

**Material Objected to:** Exhibit 1: County of Sacramento Public Records Act Request Reference Number 20-4765

**Grounds for Objection No. 1:** A party may not attach evidence to their reply. "While the code provides for reply papers, it makes no allowance for submitting additional evidence or filing a supplemental separate statement. (§ 437c, subd. (b).)" (*San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A.* (2002) 102 Cal.App.4th 308, 313.)

### OBJECTION NO. 2:

**Material Objected to:** On Exhibit 1: County of Sacramento Public Records Act Request Reference Number 20-4765, all text under the "Timeline" section including but not limited to "Request closed, fulfilled (no documents to produce)."

**Grounds for Objection No. 1:** "Authentication of a writing is required before it may be received into evidence." (Evid. Code, § 1401.) The document lacks foundation. Plaintiff has not authenticated or laid a foundation that this writing was in fact from the County. Thus, it is inadmissible.

Dated: June 6, 2022

PORTER SCOTT
A PROFESSIONAL CORPORATION

By

Carl L. Fessenden
Jordan McCroskey
Attorneys for Defendants

{02720785.DOCX}                    4
**OBJECTION TO DECLARATION OF STEVEN KAMP IN SUPPORT OF MOTION FOR LEAVE OF COURT TO FILE FIRST AMENDED COMPLAINT**

1

*Olfati v. County of Sacramento et al.*
**Sacramento County Superior Court – Case No. 34-2021-00310164**

2

3

## DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

4

5

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

6

7

That on the date below, I served the following **OBJECTION TO DECLARATION OF STEVEN KAMP IN SUPPORT OF MOTION FOR LEAVE OF COURT TO FILE FIRST AMENDED COMPLAINT** on all parties in the said action as addressed below by causing a true copy thereof to be served:

8

9

| | |
|---|---|
| | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| X | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
| | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

10

11

12

13

14

15

16

17

18

19

20

*Attorney for Plaintiff*
Steven Mark Kamp
STEVEN KAMP LAW OFFICES
22 Petrilli Circle
Sacramento, CA 95822
Steve.kamp@comcast.net

21

22

23

24

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California, on  June 6, 2022.

25

26

*Estefanie Reyes* (signature)

27

28

_____
Estefanie Reyes

{02720785.DOCX}                                          5
**OBJECTION TO DECLARATION OF STEVEN KAMP IN SUPPORT OF MOTION FOR LEAVE OF COURT TO FILE FIRST AMENDED COMPLAINT**

1   STEVEN MARK KAMP (California State Bar Number 116817)
    STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
2   Electronic Mail Address: steve.kamp@comcast.net
3   Telephone: (916) 501-1791 (cellular, voice/text)
    Attorney for Plaintiff/Petitioner Ms. Parvin Olfati

**FILED/ENDORSED**

JUN - 7 2022

By: _____
E. Medina
Deputy Clerk

4

5

6

7

8

9                    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                        IN AND FOR THE COUNTY OF SACRAMENTO

11

12                                              No. **34-2021-00310164-CU-CE-GDS**

13   Ms. PARVIN OLFATI, Plaintiff/Petitioner    **PLAINTIFF'S REPLY TO DEFENDANTS'**
                                                 **OBJECTION TO DECLARATION OF**
14            v.                                 **STEVEN KAMP IN SUPPORT OF**
                                                 **PLAINTIFF'S MOTION FOR LEAVE OF**
15                                               **COURT TO FILE FIRST AMENDED**
     COUNTY OF SACRAMENTO ;                      **COMPLAINT**
16   PAMELA PISANI; JANE ROE
     DEFENDANT ONE; JANE ROE                     **Date: June 9, 2022**
17   DEFENDANT TWO; JANE ROE
     DEFENDANTS 3-100; JOHN DOE                  **Time: 9:00 a.m.**
18   DEFENDANTS 1-100,
     Defendants/Respondents                      **Department: 54**
19
                                                 **Reservation No.: 2640543**
20
                                                 **Complaint Filed: 10/25/21**
21

22

23
         Defendants County of Sacramento (County) and County employee Pamela Pisani
24
     (Pisani)(collectively, "Defendants")  in their Register of Actions (ROA) numbers 57[1] and 58[2]
25

26   _____

27   [1] In opposition to Plaintiff's ROA 36-38 Petition For Permission To File Late Tort Claim Against Governmental
     Entity.
28   [2] In opposition to Plaintiff's ROA 33-35 Motion for Leave of Court to File First Amended Complaint.

     PLAINTIFF'S REPLY TO DEFENDANTS' OBJECTION TO DECLARATION OF STEVEN KAMP  IN
     SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST GVERNMENTAL ENTITY 1

1  boilerplate Objections are attacking the validity of their own documents now being used against

2  them. The document is the five pages of the County's "Open Public Records" website portal,

3  www.saccounty.nextrequest.com , a portal that advertises as follows:

4
   Open Public Records. This web portal is designed to assist you with obtaining Sacramento County public
5  records. Previous public record requests and responsive documents can be viewed here . . ."

6
   This is where the Steven Kamp Declarations Exhibits "I" and "J" may be found. Both of these
7
   exhibits consist of five pages of County Public Records Act (PRA) request and non-response
8
9  documents catalogued by the County as PRA Request 20-4765.

10      Page 1 is clearly a County document – the bottom contains the following footer:

11 "https://saccounty.nextrequest.com/requests/20-4765. The remainder of page one lists the PRA

12 request receipt date as December 15, 2020; lists the assignment of the PRA request to the County

13
   Counsel by Rebecca Kay with Natasha Drayne as the point of contact; states that the PRA request
14
15 was published on December 16, 2020 by Krysta Guthrie; states that the request was closed on

16 December 16, 2020 as "fulfilled -- no documents to produce"; and states that this statement was

17 "released to the requester" on December 16, 2020. Mostly blank page 2 contains the

18 "saccounty.nextrequest.com/requests/20-4765" footer. Page 3 is the email sent by the undersigned

19 counsel on behalf of Plaintiff to the following County e mail address: kayr@saccounty.net Pages

20
21 4 and 5 are the PRA request that Plaintiff sent to the County.  All five of these pages are on the

22 County PRA website portal under 20-4765; as the County advertises – "[p]revious public record

23 requests and responsive documents can be viewed here."

24      Not surprisingly, three Evidence Code  Sections exempt County PRA 20-4765 from the

25 Hearsay Rule. First, Evidence Code Section 1280 exempts records created by public employees,

26 as follows:

27

28

1  "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by

2  the hearsay rule when offered in any civil or criminal proceeding to prove, the act, condition, or

3  event if all of the following applies:

4
   (1) The writing was made by and within the scope of duty of a public employee;
5
   (2) The writing was made at or near the time of the act, condition or event and
6
7  (3) The sources of information and method and time of preparation were such as to indicate

8         its trustworthiness.

9   The County PRA 20-4765 document claimed by the County to be unauthenticated hearsay

10  facially satisfies these three Evidence Code Section 12890 requirements: (1) it shows that on

11  December 15, 2020, the County received the PRA request from Plaintiff for records related to

12  Defendant Pisani activity at Plaintiff's residence on December 14, 2020; (2) the writing was

13  created on December 16, 2020; and (3) the sources are three named County employees who

14  responded to a December 15, 2020 PRA request on December 16, 2020. The object of Evidence

15
16  Code Section 1280 "is to eliminate the calling of each witness involved in the preparation of the

17  record and substitute the record of the transaction itself." *Jazayeri v. Mao* (2009) 174 Cal.App.4th

18  301, 317, where the court found to "fall within the official records exemption to the hearsay rule

19  is beyond dispute" federal agency records obtained in a Freedom of Information Act request. <u>See</u>

20  <u>also</u>, *Imperial Cattle Co. v. Imperial Irrigation Dist.* (1985), 167 Cal.App.3d 263, 272 (same).

21  "Where an administrative agency's writing does not depend on memory but simply involves a

22  transfer of information from one form of storage to another, the timeliness requirement of the

23
24  official records exception of the statute authorizing admissions of a writing made by and within

25  the scope of duty of a public employee is met." *Cassidy v. California Board of Accountancy*

26  (2013) 220 Cal.App.4th 620, 629. Here, County PRA 20-4765 was created b y the County by

27

28

1   recording the receipt of Plaintiff's PRA request on December 15, 2020; uploading it to the portal;

2   assigning it; and the next day creating the "no documents to produce" resolution.

3       Second, County PRA 20-4765 is exempt from the Hearsay Rule as an admission of a party-

4   opponent. Evidence Code Section 1220 states as follows:

5

6       "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action in which he is a party in his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity."

7

8   Here, the County is a party to this action, and the County's non-response response to Plaintiff's

9   PRA request is therefore admissible notwithstanding the Hearsay Rule to demonstrate that the

10   County on December 16, 2020 represented to Plaintiff that County had "no documents to

11   produce" regarding Pisani activity at Plaintiff's residence on December 14, 2020, even though

12   County on December 10, 14 and 15 had created electronic mail messages of that very activity,

13

14   electronic mail messages that County hid from Plaintiff for the next 408 days through January 28,

15   2022. See *People v. Orey* (2021) 63 Cal.App.5th 529, 550-60, where prison and state hospital

16   records containing double hearsay were admitted because they were both public records and party

17   admissions.

18       Finally, County PRA 20-4765 is exempt from the Hearsay Rule under Evidence Code

19   Section 1222 as a "statement [that] was made by a person authorized by the party to make a

20   statement or statements from him concerning the subject matter of the statement." Pages 1 and 2

21   of County PRA 20-4765 contain the names of three County employees who prepared this record

22   that contained Plaintiff's December 15, 2020 PRA request and the response "no documents to

23   produce." As noted in the Law Revision Commission comment to this section: "Under this

24   hearsay exception, if a party authorized an agent to make statements on his or her behalf, such

25

26   statements may be introduced against the party under the same conditions as if they had been

27   made by the party. . .."

28

PLAINTIFF'S REPLY TO DEFENDANTS' OBJECTION TO DECLARATION OF STEVEN KAMP IN
SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 4

1    The fact that Defendant County's own PRA 20-4765 is attached as an exhibit in support of

2    reply memorandum is irrelevant. Not only has this document been known to the County, Plaintiff

3    in her moving papers for both matters on calendar for June 9, 2020 stated that Defendant

4    County's response to her December 15, 2020 PRA request was "an electronic mail message

5    saying that it had no documents responsive to the PRA request".[3]  In addition, Defendants

6    through their June 6, 2022 ROA 57 and ROA 58 Objections have been given ample opportunity

7    to respond, even if the County's own document is "new evidence" to the County. See *Alliant Ins.*

8    *Services, Inc. v. Gaddy* (2008) 159 Cal.App.4[th] 1292, 1307-1308 (court has discretion to accept

9    new evidence in reply papers as long as opponent given opportunity to respond). The one case

10   cited by Defendants[4] in the cited footnote 8 rejected a statutory construction argument not made

11   until the reply brief memorandum; in contrast, Plaintiff in her moving papers expressly noted the

12   County electronic mail message that the County is now trying to hide. This electronic mail

13   message at the time was already a public record and a County record.

14        Respectfully submitted,

15        /s/ STEVEN MARK KAMP (California State Bar Number 116817), Attorney for

16   Plaintiff/Petitioner/PRA Petitioner Ms. Parvin Olfati

17

18   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
     Electronic Mail Address:
19   Telephone: (916) 501-1791 (cellular, voice/text)

20   DATED:  June 7, 2022

---

[3] ROA 37, at 13: 12-15 (P&A Petition to File Late Tort Claim); ROA 38 (Kamp Declaration in Support of Petition, at 5: 18-21); ROA 33 (P&A In Support of Motion For Leave Of Court to File First Amended Complaint), at 15: 11-13; ROA 34 (Kamp CRC Rule 1.324(b) Declaration), at 4: 13-17. The December 15, 2020 PRA request is in Exhibit Eleven to the ROA 35 Exhibit A Proposed FAC, at pages 77-79, and is referenced in paragraph 283-(b) under Cause of Action Twelve.

[4] *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325.

PLAINTIFF'S REPLY TO DEFENDANTS' OBJECTION TO DECLARATION OF STEVEN KAMP IN
SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 5

1  **DECLARATION OF SERVICE IN PERSON**

2  I, STEVEN M. KAMP, declare and state as follows:

3  1.      I am over the age of 18, and reside in the County of Sacramento, State of California.

4  2.      I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

5  3.      On June 7, 2022, I caused to be served by hand delivery on counsel for the Defendants in this action a true and correct copy of:

6

7      **PLAINTIFF'S REPLY TO DEFENDANTS' OBJECTION TO DECLARATION OF STEVEN KAMP IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE OF COURT TO FILE FIRST AMENDED COMPLAINT**

8

9

10

11

12

13  4.  Service was effected in person on June 7, 2022 by:

14      Personally delivering a true and correct copy of the above-referenced document to Porter Scott, 350 University Avenue, Suite 200, Sacramento, California 95825 in a manila envelope addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200, Sacramento, CA 95825;

15

16

17

18  I declare under penalty of perjury that the foregoing statements are based on personal knowledge, and are true and correct. Executed at Sacramento, California, this _7th day of June, 2022.

19  /s/ STEVEN MARK KAMP (California State Bar Number 116817)

20  STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
    Electronic Mail Address: steve.kamp@comcast.net

21  Telephone: (916) 501-1791 (cellular, voice/text)
    Attorney for Plaintiff/Petitioner/PRA Petitioner Ms. Parvin Olfati

22

23

24

25

26

27

28

PLAINTIFF'S REPLY TO DEFENDANTS' OBJECTION TO DECLARATION OF STEVEN KAMP IN
SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 6

establish by a preponderance of the evidence that it would be prejudiced if the court [grants the petition]." (Ramirez v. County of Merced (1987) 194 Cal.App.3d 684, 688-689.) "The entity's showing of prejudice, when asserted, . . . require[s] a factual basis for concluding that the delay has substantially impaired the entity's ability to present a full and fair defense on the merits.' [Citation.]" (Id. at p. 689.)

In Opposition, Defendants assert that "Prejudice to the County is not relevant because Petitioners fail to meet their burden to show excusable neglect." Defendants offer no substantive argument in this regard, and accordingly, fail to meet their burden.

CONCLUSION

Plaintiff Parvin Olfati's ("Plaintiff") Petition to File a Late Tort Claim is GRANTED.

Plaintiff's counsel shall prepare an order in accordance with the tentative ruling for the Court's signature pursuant to California Rules of Court, rule 3.1312.

---

Item   17   2021-00310164-CU-CR

Parvin Olfati vs. County of Sacramento

Nature of Proceeding:   Motion to File First Amended Complaint

Filed By:   Kamp, Steven Mark

Plaintiff Parvin Olfati's ("Plaintiff") Motion for Leave to File a First Amended Complaint ("FAC") is GRANTED.

Defendants County of Sacramento ("Defendant Sacramento County") and Mental Health Counselor Pamela Pisani's ("Defendant Pisani") (collectively "Defendants") filed objections following Plaintiff's Reply briefing. Defendants specifically object to the supporting declaration provided with Plaintiff's Reply ("the Declaration of Steven Kamp"). Defendants raise issue with the exhibits attached to the Declaration of Steven Kamp and raise evidentiary objections on grounds of hearsay and improper authentication. The Court does note that it is elementary that points raised for the first time in a Reply brief are not considered. (See St. Mary v. Superior Court (2014) 223 Cal.App.4th 762, 783; Campos v. Anderson (1997) 57 Cal.App.4th 784, 794, fn. 3.) However, the Court declines to rule on Defendants' evidentiary objections as they are immaterial to the Court's decision on the motion.

FACTS:

Plaintiff filed her Complaint on October 25, 2021, alleging eight causes of action - (1) Invasion of Privacy, (2) Intentional Infliction of Emotional Distress, (3) Trespass, (4) Negligence, (5) False Light, (6) Defamation, (7) Negligent Training, and (8) Respondeat Superior. (ROA 1.) Plaintiff named as Defendants the County of Sacramento ("Defendant Sacramento County") and Mental Health Counselor Pamela Pisani ("Defendant Pisani") (collectively "Defendants"). (Ibid.) The causes of action for Negligent Hiring and Respondeat Superior were alleged against Defendant Sacramento County, and the remaining causes of action were alleged against Defendant Pisani. (Ibid.)

On January 28, 2022, Defendants filed a Special Motion to Strike pursuant to Code of

Civil Procedure section 425.16 ("anti-SLAPP Motion"). (ROA 11.) On April 21, 2022, this Court denied Defendants' anti-Slapp Motion finding that the Defendants failed to meet their initial burden that the challenged claims arose from protected speech. (ROA 28.)

DISCUSSION:

It is well established that California courts have a policy of great liberality in allowing amendments at any stage of the proceeding so as to dispose of cases upon their substantial merits where the authorization does not prejudice the substantial rights of others. (Board of Trustees v. Super. Court (2007) 149 Cal.App.4th 1154, 1163.) Moreover, section 473 of the Code of Civil Procedure authorizes the trial court, in its discretion, to allow amendments in furtherance of justice and upon any terms as may be just. (Code Civ. Proc., § 473(a)(1).) The policy of great liberality in permitting amendments at any stage of the proceeding has been declared by our courts. ( Klopstock v. Superior Court (1941) 17 Cal.2d 13, 19-20.)

Indeed, it is a rare case in which a court will be justified in refusing a party leave to amend his or her pleading so that he or she may properly present his or her case - thus, absent a showing of prejudice to the adverse party, the rule of great liberality in allowing amendment of pleadings will prevail. (Board of Trustees, supra, 149 Cal.App.4th at p. 1163.) Without a showing of prejudice, the failure to grant leave to amend may be considered an abuse of discretion. (Fair v. Bakitari (2011) 195 Cal.App.4th 1135, 1147; Thompson Pacific Construction, Inc. v. City of Sunnyvale (2007) 155 Cal.App.4th 525, 544-545.)

Here, Plaintiff seeks leave to file a FAC in order to "plead newly discovered facts and related new defendants and new causes of action - all derived from the Declaration of County Mental Health Program Coordinator Jennifer Reiman . . . filed by Defendants County and Pisani in support of their Anti-Slapp . . ." (Mov. P&A, p. 5: 10-14; Kapp Decl. ¶ 3.)

Cal. Rules of Court, rule 3.1324

Plaintiff attaches with her moving papers a copy of the proposed FAC, now upwards of 100 pages (including exhibits). (Mov. Ntc., Ex. A.) Plaintiff's proposed FAC would name additional Defendants Sergeant Ronald Briggs, Jennifer Reiman, and Jennifer Stewart. Plaintiff's proposed FAC would include the following additional causes of action: (9) Tom Bane Civil Rights Act, (10 &11) Federal Civil Rights Act, and (12) Public Records Act Petition for Declaratory Judgment and Writ of Mandamus. (Ibid.) Plaintiff's Motion reiterates that the purpose of the amendment is to plead newly discovered facts derived from Defendants' anti-SLAPP Motion. Plaintiff's Motion, Notice of Motion, and exhibits together state the basis for the relief sought, and appears to provide sufficient information in compliance with Cal. Rules of Court, rule 3.124. Further, as Plaintiff aptly points out in her Reply, Defendants do not raise issue with same.

Legal Deficiency of FAC

In Opposition, Defendants argue that Plaintiff's proposed FAC, as amended fails to state a valid cause of action, adding new Defendants is improper as time-barred, the amendment constitutes a "sham" amendment, and the attempt to file a writ of

mandamus with the FAC is improper. Defendants' sole contentions regarding the proposed FAC involve the purported legal deficiency of the proposed FAC and the allegations contained therein.

However, the validity of proposed amendments is generally not considered in deciding whether to grant leave to amend. (California Casualty General Ins. Co. v. Superior Court (1985) 173 Cal.App.3d 274, 280-281 [overruled on other grounds by Kransco v. American Empire Surplines Lines Ins. Co. (2000) 23 Cal.4th 390].) Such challenges to the pleadings are more properly addressed in a demurrer or a motion to strike rather than in an opposition to a motion to amend. It is axiomatic that "the preferable practice would be to permit the amendment and allow the parties to test its legal sufficiency by demurrer, motion for judgment on the pleadings or other appropriate proceedings." (Id. at p. 281.) Defendants are free to challenge the amended pleading by way of appropriate motion.

The Court notes Defendants do not appear to raise arguments that Defendants will be prejudiced by leave to amend nor has any probable prejudice been shown.

CONCLUSION:

Plaintiff's Motion for Leave to file a First Amended Complaint ("FAC") is GRANTED.

Plaintiff may file and serve the FAC no later than June 20, 2022.  Although not required by Court rule or statute, Plaintiff is directed to present a copy of this order when the FAC is presented for filing.

Defendants may file and serve a response within 30 days of service of the FAC, 35 days if served by mail.

The minute order is effective immediately. No formal order pursuant to Cal. Rules of Court, rule 3.1312 or further notice is required.

---

Item   18    2022-00314750-CU-PA

Francis Wyatt Day Bacchi vs. Michael Wayne Lorenz

Nature of Proceeding:   Motion to Strike Portions of Plaintiff's First Amended Complaint

Filed By:   Espinosa, Razelle P.

Defendants Michael Wayne Lorenz ("Defendant Lorenz") and Always Electric's (collectively "Defendants") Motion to Strike Portions of Plaintiff Francis Wyatt Day Bacchi's ("Plaintiff") First Amended Complaint ("FAC") is GRANTED with leave to amend.

The Court grants Defendants' Request for Judicial Notice of the FAC. In taking judicial notice of the FAC, the Court accepts the fact of its existence, not the truth of its contents. (See Professional Engineers v. Dep't of Transp. (1997) 15 Cal.4th 543, 590.) "There exists a mistaken notion that this means taking judicial notice of the existence of facts asserted in every document of a court file, including pleadings and affidavits. However, a court cannot take judicial notice of hearsay allegations as being true, just because they are part of a court record or file. A court may take judicial notice of the existence of each document in a court file, but can only take judicial notice of the truth

1 | STEVEN MARK KAMP (California State Bar Number 116817)
2 | STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
Electronic Mail Address: steve.kamp@comcast.net
3 | Telephone: (916) 501-1791 (cellular, voice/text)
Attorney for Plaintiff Ms. Parvin Olfati
4 |
5 |
6 |
7 |
8 |

**FILED/ENDORSED**

**MAY 1 7 2022**

By: _____H. PEMELTON_____
Deputy Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| Ms. PARVIN OLFATI, Plaintiff<br><br>v.<br><br>COUNTY OF SACRAMENTO; PAMELA PISANI; JANE ROE DEFENDANT ONE; JANE ROE DEFENDANT TWO; JANE ROE DEFENDANTS 3-100; JOHN DOE DEFENDANTS 1-100, Defendants<br>Defendants | No. 34-2021-00310164-CU-CE-GDS<br><br>**PLAINTIFF Ms. PARVIN OLFATI'S NOTICE OF PETITION AND PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY**<br><br>**Date: June 9, 2022**<br><br>**Time: 9:00 a.m.**<br><br>**Department: 54**<br><br>**Reservation No.: 2644627**<br><br>**Complaint Filed: 10/25/21** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 9, 2022, at 9:00 a.m. in Department 54 of the

above-entitled court, located at 813 6th Street, Sacramento, CA 95814, Plaintiff Ms. PARVIN

OLFATI will and hereby does Petition the Court, pursuant to California Government Code

Sections 911.4 and 946.6, For Permission To File Late Tort Claim Against Governmental Entity,

in the form of an Order relieving Petitioner from Government Code Section 945.4, on the

Government Code Section 946.6, subdivision (c)(1) ground of "surprise", or alternatively, that

PLAINTIFF Ms. PARVIN OLFATI'S NOTICE OF PETITION FOR PERMISSION TO FILE LATE TORT
CLAIM AGAINST GOVERNMENTAL ENTITY 1

1   Plaintiff's causes of action claimed in her April 4, 2022 California Government Claims Act

2   (CGCA) claim with Defendant County accrued when Plaintiff discovered them on January 29,

3   2022, when Plaintiff received the Defendants' ROA 11-16 Anti-SLAPP Statute Motion and its'

4   supporting Declaration of Jennifer Reiman and attached COUNTY electronic mail messages.

5

6   This Petition will be and is made[1] on the following grounds:

7   (1) the conduct of Defendants County and Pisani in creating in December of 2020 electronic

8   mail messages and other materials used in the County/Pisani unsuccessful Anti-SLAPP

9   Statute Motion[2] filed **January 28, 2022** , after not disclosing them to Plaintiff/Petitioner in

10   response to her Public Records Act (PRA) requests filed on December 15 and 23 of **2020,**

11   demonstrates "surprise" as this term used in Government Code Section 946.6, subdivision

12   (c)(1);

13

14   (2)   The conduct of Defendants County and Pisani between December 2020 and January 28,

15   2022 constitutes fraudulent concealment, which tolls any applicable statute of limitations,

16   including the California Government Claims Act (CGCA) claim presentation requirement.

17   (3) The new causes of action and enhanced causes of action in Plaintiff/Petitioner's April 4,

18   2022 supplemental CGCA claim and in her Proposed First Amended Complaint claims

19   against Defendant County and its' employees Defendant Pisani and proposed new Defendants

20   County Sheriff's Sergeant Ronald Briggs and County Division of Behavioral Health Services

21

22   employees Jennifer Reiman and Jennifer Stewart accrued when Plaintiff/Petitioner discovered

23

24   _____

25   [1]  Counsel for Defendants on May 11, 2022 refused to agree to Plaintiff's May 9, 2022 request to "stipulate that
    Plaintiff/Petitioner Ms. Parvin Olfati is excused from filing her April 4, 2022 supplemental claim with County and
26   may proceed on this part of her underlying claim pursuant to Government Code Section 946.6. See Declaration of
    Steven Mark Kamp (submitted herewith), Exhibits D and E (Exhibits A, B, and C are in the Reservation 2640453
27   motion papers). Exhibit D is Plaintiff's counsel's May 9, 2022 letter; Exhibit E is Defendants' counsel's May 11,
    2022 response.

28   [2]  Register of Actions (ROA) numbers 11-16. This County/Pisani motion was denied by this Court on April 21, 2022,
    in ROA numbers 28-29.

PLAINTIFF Ms.  PARVIN OLFATI'S NOTICE OF PETITION FOR PERMISSION TO FILE LATE TORT
CLAIM AGAINST GOVERNMENTAL ENTITY   2

them on January 28, 2022[3] [as Plaintiff/Petitioner informed Defendant County in her

California Government Claims Act (CGCA) supplemental claim filed April 4, 2022][4], not

when they took place in secret from Plaintiff/Petitionerin December 2020, thus making

Plaintiff's April 4, 2022 supplemental CGCA claim filed within six months of January 28,

2022 timely under Government Code Sections 911.2, subdivision (a) and 945.4; and/or

(4)    Government Code Section 946.6 is a remedial statute that is construed in favor of

relief whenever possible in order to insure causes of action are tried on the merits instead of

being suppressed.


This Petition is based on this Notice of Petition, the Declaration of Steven Mark Kamp, and

the Memorandum of Points and Authorities (all submitted herewith), and all other papers,

pleadings and records on file in this action, and any evidence offered in a hearing on this matter.

Pursuant to Local Rule 1.06(A), the court will make a tentative ruling on the merits of this

matter by 2:00 p.m. the court day before the hearing. The complete text of the tentative rulings for

the department may be downloaded off the Court's website. If the party does not have online

access, they may call the dedicated phone number for the department as referenced in the local

telephone directory between the hours of 2:00 p.m. and 4:00 p.m. on the court day before the

hearing and receive the tentative ruling. The tentative ruling shall become the ruling of the court,

unless a party desiring to be heard so advises the department clerk that such party has notified the

other side of its' intention to appear. Notification to the clerk shall be made pursuant to

instructions on the court's website at https://www.saccourt.ca.gov

---

[3] The date of the County/Pisani ROA numbers 11-16 Anti-SLAPP Statute Motion. Plaintiff/Petitioner actually received these County motion papers in the postal mail on January 29, 2022.

[4] See Kamp Declaration, paragraph 4 and Exhibit F thereto.

PLAINTIFF Ms. PARVIN OLFATI'S NOTICE OF PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY   3

Case 2:22-at-00664   Document 1-2   Filed 06/29/22   Page 464 of 721

1 | Respectfully submitted,

2 | /s/ STEVEN MARK KAMP (California State Bar Number 116817), Attorney for Plaintiff

3 | Plaintiff/GC Section 946.6/PRA Petitioner Ms. Parvin Olfati

4 |
5 | STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
  | Electronic Mail Address:
6 | Telephone: (916) 501-1791 (cellular, voice/text)
  | Attorney for Plaintiff/GC 946.6/PRA Petitioner  Ms. Parvin Olfati

7 | DATED:  May 17, 2022

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

PLAINTIFF Ms.  PARVIN OLFATI'S NOTICE OF PETITION FOR PERMISSION TO FILE LATE TORT
CLAIM AGAINST GOVERNMENTAL ENTITY   4

1   **DECLARATION OF SERVICE IN PERSON**

2   I, STEVEN MARK KAMP, declare and state as follows:

3   1.     I am over the age of 18, and reside in the County of Sacramento, State of California.

4   2.     I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

5   3.     On May 17, 2022, I caused to be served by hand delivery on counsel for the Defendants in this action a true and correct copy of:

6
7   **PLAINTIFF Ms. PARVIN OLFATI'S NOTICE OF PETITION AND PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY**

8

9   4. Service was effected in person on  May 17, 2022 by:

10          Personally delivering the copy to Porter Scott, 350 University Avenue, Suite 200,k
11          Sacramento, California 95825 of the above-referenced document in a manila envelope
            addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200,
12          Sacramento, CA 95825;

13

14   I declare under penalty of perjury that the foregoing statements are based on personal knowledge,
     and are true and correct. Executed at Sacramento, California, this _17th day of May, 2022.
15
     /s/ STEVEN MARK KAMP (California State Bar Number 116817)
16   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
     Electronic Mail Address: steve.kamp@comcast.net
17   Telephone: (916) 501-1791 (cellular, voice/text)
18   Attorney for Plaintiff/GC 946.6 Petitioner/PRA Petitioner  Ms. Parvin Olfati

19

20

21

22

23

24

25

26

27

28

1  STEVEN MARK KAMP (California State Bar Number 116817)
   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
2  Electronic Mail Address: steve.kamp@comcast.net
   Telephone: (916) 501-1791 (cellular, voice/text)
3  Attorney for Plaintiff Ms. Parvin Olfati

4

5

6

7

8

9            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10            IN AND FOR THE COUNTY OF SACRAMENTO

11

12                                          No. 34-2021-00310164-CU-CE-GDS

13  Ms. PARVIN OLFATI, Plaintiff          **[Proposed]**

14            v.                           **ORDER GRANTING**

15  PAMELA PISANI; JANE ROE              **PLAINTIFF Ms. PARVIN OLFATI'S
    DEFENDANT ONE; JANE ROE              PETITION TO FILE LATE TORT CLAIM
16  DEFENDANT TWO; JANE ROE              AGAINST GOVERNMENTAL ENTITY**
    DEFENDANTS 3-100; JOHN DOE
17  DEFENDANTS 1-100,  Defendants        **Date: June 9, 2022**
    Defendants
18                                        **Time: 9:00 a.m.**

19                                        **Department: 54**

20                                        **Reservation No.: 2644627**

21                                        **Complaint Filed: 10/25/21**

22

23        Plaintiff's Petition for Permission to File Late Tort Claim Against Governmental Entity

24  pursuant to Government Code Section 946.6 came for hearing in Department 54 of this Court on

25  June 9, 2022. Plaintiff Ms. Parvin Olfati appeared through counsel Steven Mark Kamp, Esq.

26  Defendants County of Sacramento (County) and Pamela Pisani (Pisani) appeared through Porter

27  Scott, A Professional Corporation, and its' attorneys Carl Fessenden, Esq. and Jordan

28  [Proposed] ORDER GRANTING PLAINTIFF Ms. PARVIN OLFATI'S MOTION FOR LEAVE OF COURT TO
    FILE FIRST AMENDED COMPLAINT  1



RECEIVED
MAY 1 7 2022
83
CIVIL

1  McCrosskey, Esq. After hearing argument of counsel and reviewing Plaintiff's Petition For

2  Permission To File Late Tort Claim Against Governmental Entity, Plaintiff's supporting

3  memorandum and Declaration of Steven Mark Kamp, and Defendants' opposition memoranda,

4  the Court rules as follows:

5
6  1. Plaintiff's April 4, 2022 supplemental California Government Claims Act claim filed with the

7  County of Sacramento regarding claims not discovered by Plaintiff until they were revealed by

8  Defendant County in its unsuccessful Anti-SLAPP Statute Motion[1], is timely for the causes of

9  action in these claims accruing on January 28, 2022 (when County filed the motion) or January

10  29, 2022 (when Plaintiff received the Motion); and,

11
12  2. Pursuant to California Government Code Section 946.6, Plaintiff is hereby excused from filing

13  a California Government Claims Act claim against Defendants County of Sacramento (County)

14  and County employees Pamela Pisani, Ronald Briggs, Jennifer Reiman and Jennifer Stewart, and

15  may therefore proceed with her First Amended Complaint against these Defendants.

16  **IT IS SO ORDERED.**

17  DATED: June __, 2022

18  /s/ The Honorable _____ , Judge, Superior Court of the State of California in and for the

19  County of Sacramento

20

21

22

23

24

25

26

27

28  _____
[1] ROA numbers 11-16.

[Proposed] ORDER GRANTING PLAINTIFF Ms. PARVIN OLFATI'S MOTION FOR LEAVE OF COURT TO
FILE FIRST AMENDED COMPLAINT   2

STEVEN MARK KAMP (California State Bar Number 116817)
STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
Electronic Mail Address: steve.kamp@comcast.net
Telephone: (916) 501-1791 (cellular, voice/text)
Attorney for Plaintiff/Petitioner Ms. Parvin Olfati

**FILED/ENDORSED**

MAY 1 7 2022

By:_____
H. PEMELTON
Deputy Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| Ms. PARVIN OLFATI, Plaintiff/Petitioner<br><br>v.<br><br>COUNTY OF SACRAMENTO ;<br>PAMELA PISANI; JANE ROE<br>DEFENDANT ONE; JANE ROE<br>DEFENDANT TWO;  JANE ROE<br>DEFENDANTS 3-100; JOHN DOE<br>DEFENDANTS 1-100,<br>Defendants/Respondents | No.  **34-2021-00310164-CU-CE-GDS**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY**<br><br>**Date: June 9, 2022**<br><br>**Time: 9:00 a.m.**<br><br>**Department: 54**<br><br>**Reservation No.: 2644627**<br><br>**Complaint Filed: 10/25/21** |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
LATE TORT CLAIM AGAINST GVERNMENTAL ENTITY 1

1

**TABLE OF CONTENTS**

2

I.     Introduction and  Summary of Argument.................................................6

3
        A.  Summary of Argument.................................................. 6

4
        B.  Applicable Law......................................................... 8

5

II.    The Facts: Plaintiff's Initial CGCA Claim and Complaint; Plaintiff's
6      Unanswered Public Records Act Requests; The Newly Discovered Facts Revealed
       by Defendants In Their Unsuccessful Anti-SLAPP Statute Motion; Plaintiff's
7      Supplemental CGCA Claim, County Denial, and Plaintiff's Proposed First
8      Amended Complaint ........................................................... 9

9
       A. Plaintiff's Initial CGCA Claim and Complaint.............................................9
10
11     B. Defendant County Suppresses California Public Records Act Disclosure of
       Electronic Mail Messages Revealing Retaliation, Defamation, and False Light
12     Invasion of Privacy Against Plaintiff/Petitioner By Defendant Pisani And Proposed
       New Defendants Briggs, Stewart and Reiman ...............................................11
13
       C. Defendants County and Pisani Reveal The Conspiracy To Retaliate and Defame
14     Plaintiff/Petitioner In Their Unsuccessful Anti-SLAPP Statute Motion ............  15

15     D. Plaintiff's Supplemental CGCA Claim, County Denial, And Plaintiff's Proposed
16     First Amended Complaint ........................................................... 16

17     III.   Defendants' Conduct Constitutes "Surprise" As This Term Is Used In
              Government Code Section 946.6, Subdivision (c)(1)..................................17
18
19     IV.    Defendants' Fraudulent Concealment of Plaintiff's Supplemental CGCA Claim
              Facts And Causes of Action Tolls The CGCA Claims Presentation Limitation
20            Period................................................................................17

21     V.     Plaintiff's Supplemental CGCA Claims Against Defendants County and Pisani,
              And Proposed New Defendants Briggs, Stewart, and Reiman, Arose When
22            Plaintiff/Petitioner Discovered Them In The January 28, 2022 County/Pisani
              Anti-SLAPP Statute Motion, Not When Defendants Suppressed Them In
23            December 2020.......................................................................18

24
25     VI.    Defendants Cannot Demonstrate Prejudice Because Their Own Electronic Mail
              Messages Used For Their Unsuccessful Anti-SLAPP Statute Motion Are Being
26            Used To Demonstrate The Conspiracy Whose Existence They Laughed At In
              Their Anti-SLAPP Statute Motion.....................................................19
27
28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 2

1

**TABLE OF AUTHORITIES**

2

California Cases

3   *Bettencourt v. Los Rios Community College District* (1986) 42 Cal.3d 270....................9, 20

4   *Cabamongan v. City of Long Beach* (1989) 208 Cal.App.3d 946....................................9

5   *Ebersol v. Cowan* (1983) 35 Cal.3d 427.............................................................9

6   *Green v. Obledo* (1984) 161Cal.App.3d 678 .......................................................19

7   *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1130......................................................18

8   *Kane v. Cook* (1857) 8 Cal. 449.....................................................................   18

9   *Kimball v. Pacific Gas & Electric* (1934) 220 Cal. 203.............................................18

10  *Oscar Martin Salazar-Vargas v. County of Sacramento*, Sacramento County Superior Court Case
11  No. 2022-00315982 (April 21, 2022 Minute Order) (Exhibit H to the Declaration of Steven Mark
    Kamp submitted herewith)............................................................................20

12  *Pashley v. Pacific Electric Railway Co.* (1944) 25 Cal.2d 226....................................17, 18

13  *Renteria v. Juvenile Justice, Dept. of Corrections & Rehab.* (2006) 135 Cal.App.4[th] 903.........19

14  *Segal v. Southern California Rapid Transit District* (1970) 12 Cal.App.3d 509....................20

15  *Viles v. California* (1967) 66 Cal.2d 24.............................................................9

16

California Statutes

17  Civil Code, Section 52.1 ...........................................................................19

18  Code of Civil Procedure Section 427.10.............................................................13

19  Government Code Section 911.2.....................................................................8

20  Government Code Section 911.4....................................................................7, 8

21  Government Code Section 911.6......................................................................8

22  Government Code Section 945.4....................................................................7, 8

23  Government Code Section 946.6...........................................................7, 8, 17, 19, 20

24  Government Code Section 6253.....................................................................13

25

Federal Statute

26  United States Code, Title 42, Section 1983.........................................................19

27

28

Rules

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 4

1

VII.   Government Code Section 946.6 Is A Remedial Statute That is Construed In
        Favor of Granting Relief Wherever Possible To Insure Trial on the Merits......19

2

3

VIII.  Conclusion..................................................................................20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

California Rules of Court Rule 3.1113.................................................................6

Other Authority

www.dictionary.com...................................................................................17

Public Records Act Response

City of Sacramento P028660-021522..............................................................14

## I. Introduction and Summary of Argument[1]

### A. <u>Summary of Argument</u>

Defendants County of Sacramento ("County") and County employee Pamela Pisani ("Pisani") refused the request of Plaintiff/Petitioner Ms. Parvin Olfati ("Plaintiff/Petitioner") for a stipulation to this Petition.[2] This Petition is styled as a Petition for Permission To File Late Tort Claim, but in fact the applicable claim[3] was timely filed well within six months of the *accrual* of the new claims in the supplemental California Government Claims Act (CGCA) claim and the Reservation 2640543 Exhibit A Proposed First Amended Complaint ("Proposed FAC").[4] Such *accrual* occurred on January 28, 2022, the date Defendants County and Pisani first revealed the underlying facts and parties associated with these claims in their Register of Actions (ROA) 11-16 Anti-SLAPP Statute Motion[5] papers supporting Declarations of Defendant Pisani[6] and proposed new Defendant Jennifer Reiman[7] -- especially in the County December 2020 electronic mail messages in exhibit A to the ROA 15 Reiman Declaration. Defendant County in its' claim rejection letter dated April 9, 2022 (a Saturday), with an apparent straight face, denied the claim on the "basis" that the supplemental claim was "untimely" as to anything occurring before October 4, 2021 because such dates are beyond six months before April 4, 2022.[8] But Plaintiff/Petitioner was unaware of the December 2020 facts giving rise to the supplemental

---

[1] This Memorandum of Points & Authorities consists of 21 pages. However, six of these pages are the caption page (page 1), table of contents (pages 2-3), table of authorities (pages 4-5), and the declaration of service (page 21), so this Memorandum is within the 15-page limit of California Rules of Court Rule 3.1113, subdivision (d).

[2] <u>See</u> Declaration of Steven Mark Kamp ("Kamp Declaration"), Exhibits D and E thereto.

[3] The April 4, 2022 supplemental California Government Claims Act (CGCA) form and attached letter that the County denied on Saturday, April 9, 2022. <u>See</u> Kamp Declaration, Exhibit F thereto (April 4, 2022 supplemental CGCA claim, including a letter attached to the form), and Exhibit G thereto (County claim rejection letter).

[4] Also calendared for hearing in Department 54 on June 9, 2022.

[5] That the Court denied in ROA 28-29 on April 21, 2022.

[6] ROA 13.

[7] ROA 15.

[8] Kamp Declaration, paragraph 5 and Exhibit G thereto.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 6

1   CGCA claim and its' new causes of action (and new defendants) until January 28, 2022, because

2   these facts were in County electronic mail messages that Defendant County kept hidden from its'

3   actions on Plaintiff/Petitioner's Public Records Act (PRA) requests by refusing to respond at all

4   (Sheriff) or claiming no documents existed (Clerk of the Board).[9]  Had County disclosed its'

5   December 2020 Pisani/Briggs/Stewart/Reiman electronic mail messages them in response to

6   Plaintiff/Petitioner's December 15/23 2020 PRA requests[10], Plaintiff/Petitioner would have

7

8   included them in her initial CGCA claim filed on April 5, **2021, and in the ROA 1 Initial**

9   **Complaint (IC). Note that Defendant County has given the 2022 supplemental claim the**

10  **same claim and file numbers as the initial 2021 claim.[11]**

11          Therefore, pursuant to Government Code Sections 911.4 and 946.6, Plaintiff/Petitioner Ms.

12  Parvin Olfati respectfully petitions this Court for an order relieving Plaintiff/Petitioner from

13  Government Code Section 945.4, on the basis of any one or more of the following points:

14

15          (1) the conduct of Defendants County and Pisani in creating in December of 2020 electronic mail messages
            and other materials used in the County/Pisani unsuccessful Anti-SLAPP Statute Motion[12] filed **January 28,**

16          **2022,** after not disclosing them to Plaintiff/Petitioner in response to her PRA requests filed on December 15
            and 23 of **2020,** demonstrates "surprise" as this term used in Government Code Section 946.6, subdivision (c)

17          (1);

18          (2)  The conduct of Defendants County and Pisani between December 2020 and January 28, 2022 constitutes
            fraudulent concealment, which tolls any applicable statute of limitations, including the CGCA claim

19          presentation requirement.

20          (3) The new causes of action and enhanced causes of action in Plaintiff/Petitioner's April 4, 2022
            supplemental CGCA claim and in her Reservation 2640543 Proposed FAC claims against Defendant County,
            its' employee Defendant Pisani, and proposed new Defendants County Sheriff's Sergeant Ronald Briggs and

21          County Division of Behavioral Health Services employees Jennifer Reiman and Jennifer Stewart, accrued
            when Plaintiff/Petitioner discovered them on January 28, 2022[13] [as Plaintiff/Petitioner informed Defendant

22

23          ─────────────────────
            [9] As Plaintiff/Petitioner expressly informed the County in its' supplemental CGCA claim of April 4, 2022; see Kamp

24          Declaration, paragraph 4 and Exhibit F thereto.

            [10] Included in Exhibit Eleven to the Reservation 2640543 Exhibit A Proposed First Amended Complaint (Proposed

25          FAC).

26          [11] See Reservation 2640543 Exhibit A Proposed FAC, paragraphs 5-6.

            [12] Register of Actions (ROA) numbers 11-16. This County/Pisani motion was denied by this Court on April 21, 2022,

27          in ROA numbers 28-29.

            [13] The date of the County/Pisani ROA numbers 11-16 Anti-SLAPP Statute Motion. Plaintiff/Petitioner actually

28          received these County motion papers in the postal mail on January 29, 2022.

            PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
            LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 7

County in her CGCA supplemental claim filed April 4, 2022][14], not when they took place in secret from Plaintiff/Petitioner in December 2020, thus making Plaintiff's April 4, 2022 supplemental CGCA claim filed within six months of January 28, 2022 timely under Government Code Sections 911.2, subdivision (a) and 945.4; and/or

(4)    Government Code Section 946.6 is a remedial statute that is construed in favor of relief whenever possible in order to insure causes of action are tried on the merits instead of being suppressed.

**B.    Applicable Law**

Government Code Section 911.4, subdivision (a) expressly states that when a claim is not presented within six months of the accrual of a cause of action, it may be presented to the public agency within a "reasonable time not to exceed one year from the accrual of the cause of action." As explained below, Plaintiff's new causes of action in the Reservation 2640543 Exhibit A Proposed FAC and in the April 4, 2022 supplemental CGCA claim accrued when Defendant County for the first time revealed their underlying facts on January 28, 2022, rather than thirteen months before in December 2020 when Defendant County was not answering or providing public records[15] of these documents that it had created and was required to disclose under the PRA.

Government Code Section 911.6, subdivision (b)(1) requires County to grant the late-filed CGCA application where any one of "mistake, inadvertence, surprise or excusable neglect" is present and the County "was not prejudiced in its defense of the claim" by the failure to present the claim within six months of December 14, 2020.   County did not.[16] Government Code Section 946.6, subdivision (c)(1)  requires that the Court hearing a Petition "shall relieve the Petitioner from the requirements of Section 945.4" if the denied claim was filed within one year of the accrual of the causes of action and the petitioner establishes the existence of any one of mistake, inadvertence, surprise or excusable neglect. Defendant County bears the burden of establishing that it will be prejudiced. "The policy favoring trial on the merits is the primary policy underlying section 946.6. In order to implement this policy, any doubts should be resolved in favor of

---

[14] See Kamp Declaration, paragraph 4 and Exhibit F thereto.

[15] The County electronic mail messages attached as exhibit A to the ROA 15 Reiman Declaration.

[16] See Kamp Declaration, Exhibit G (County supplemental claim denial letter).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 8

1  granting relief." *Cabamongan v. City of Long Beach* (1989) 208 Cal.App.3d 946, 950 (citations

2  omitted); *see also, Ebersol v. Cowan* (1983) 35 Cal.3d 427, 435; *Viles v. California* (1967) 66

3  Cal.2d 24, 30-31; *Bettencourt v. Los Rios Community College District* (1986) 42 Cal.3d 270, 276.

4  Plaintiff/Petitioner has established both "surprise" and first-knowledge causes of action

5  accrual on January 28, 2022 when on January 29, 2022, she discovered from the County January

6  28, 2022 ROA 11-16 Anti-SLAPP Statute Motion the existence of facts showing the additional

7  acts of Pisani and the acts of Briggs, Stewart, and Reiman in December 2020 that Defendants did

8  not disclose when Plaintiff/Petitioner made her PRA requests. Defendants cannot establish

9  prejudice, because it is their own electronic mail messages that were unsuccessful in their Anti-

10  SLAPP Statute Motion that are now being thrown back at them. The electronic mail messages

11  show Defendants old (Pisani, County) and new (Briggs, Stewart, and Reiman) knew their acts

12  created these causes of action, and they suppressed any PRA disclosure of them.

13  **II.    The Facts: Plaintiff's Initial CGCA Claim and Complaint; Plaintiff's Unanswered Public Records Act Requests; The Newly Discovered Facts Revealed by Defendants In Their Unsuccessful Anti-SLAPP Statute Motion; Plaintiff's Supplemental CGCA Claim, County Denial, and Plaintiff's Proposed First Amended Complaint**

**A.  Plaintiff's Initial CGCA Claim and Complaint**

Plaintiff/Petitioner on April 5, 2021 filed her initial CGCA claim with the County.[17]
Defendant County gave it the designation numbers claim no. L2100524 and file no. 87388-35.[18]
Defendant County rejected this claim on April 23, 2021.[19] On October 25, 2021,
Plaintiff/Petitioner filed her ROA 1 IC in this action[20] against Defendants County and Pisani.

---

[17] ROA number 1 Initial Complaint, paragraphs 3-4; Reservation 2640543 Notice of Motion Exhibit A Proposed First Amended Complaint ("Exhibit A Proposed FAC"), paragraphs 4-5.

[18] ROA 1 IC, paragraph 4; Reservation 2640543 Exhibit A Proposed FAC, paragraph 5.

[19] ROA 1 IC, paragraph 4; Reservation 26450543 Exhibit A Proposed FAC paragraph 5.

[20] ROA number 1.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 9

1    Both the initial 2021 CGCA claim and the ROA 1 IC were based entirely on what

2    Plaintiff/Petitioner had seen and experienced with her own eyes and cellphone video on

3    December 14, 2020, when Defendant Pisani (whom Plaintiff/Petitioner had previously never

4    seen, met, or heard of[21]), and who is employed by the County Division of Behavioral Health

5    Services[22] as a Senior Mental Health Counselor, without invitation or consent intruded into

6    Plaintiff's in-home afternoon of December 14, 2020 by making an unannounced "drop by" or

7    "cold call contact"[23] ambush of Plaintiff. Defendant Pisani never identified herself as a County

8    employee, and said she was from an unidentified "community support team." Pisani then said that

9    Pisani was aware of an "anonymous complaint" about Plaintiff, about which Pisani a few seconds

10   later said "I think it was the [County] Sheriff's Department who complained" about Plaintiff.[24]

11   When Plaintiff/Petitioner then said to Defendant Pisani: "So, the Sheriff Department has

12   something to do with this?" Defendant Pisani then said: "well they forwarded some information

13

14   stating you know". This Pisani "ambush" occurred near the time of what Plaintiff/Petitioner

15   believes to be other following of and privacy invasion of Plaintiff/Petitioner by two women

16   whose acts are specifically identified in the IC and Proposed FAC, and whom Plaintiff/Petitioner

17   believes are County agents, but whose identity is unknown to Plaintiff/Petitioner (so she is suing

18   them as Defendants Roe One and Roe Two). [25] In addition, Pisani committed trespass, by

19   remaining on Plaintiff/Petitioner's front porch, front yard, and driveway after Plaintiff/Petitioner

20

21   expressly ordered Pisani to leave and went back inside her closed front door; Plaintiff/Petitioner

22

23

24   [21] ROA number 1 IC at paragraph 8; Reservation 2640543 Exhibit A Proposed First Amended Complaint (Proposed
25   FAC), at paragraph 10.

26   [22] Plaintiff/Petitioner has never been a client of the County Division of Behavioral Health Services (ROA number 1
     IC, paragraph 7; Reservation 2640453 Exhibit A Proposed FAC, paragraph 9).

27   [23] ROA 13 Declaration of Pamela Pisani, paragraph 4.

     [24] ROA 1 IC, paragraphs 30-31; Reservation 2640453 Exhibit A Proposed FAC, paragraphs 62-65.
28   [25] ROA Number 1 IC, at paragraphs 12-13; Reservation 2640543 Exhibit A Proposed FAC, at paragraphs 17-18.

     PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
     LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 10

1   came outside a few minutes later only to find that Pisani had not only remained on

2   Plaintiff/Petitioner's residence property , but was stalking Plaintiff/Petitioner.[26]

3       Plaintiff/Petitioner's initial CGCA claim and ROA 1 IC alleged only the facts known to

4   Plaintiff/Petitioner on December 14, 2020. The facts then unknown to Plaintiff/Petitioner (but

5   known by County and kept out of County responses to December 2020 PRA requests from

6

7   Plaintiff/Petitioner) obviously could not be included in either the initial CGCA claim or ROA 1

8   IC by any reasonable person unwilling to make up allegations.

9       **B. Defendant County Suppresses California Public Records Act Disclosure of**
        **Electronic Mail Messages Revealing Retaliation, Defamation, and False Light**
10       **Invasion of Privacy Against Plaintiff/Petitioner By Defendant Pisani And Proposed**
        **New Defendants Briggs, Stewart and Reiman**
11

12      Defendant Pisani in her December 14, 2020 ambush for the County Sheriff never told

13   Plaintiff/Petitioner the content of "the information" or the "anonymous complaint", or that the

14   County Sheriff through proposed new Defendant Sergeant Ronald Briggs had sent Pisani on an

15   entrapment mission to "check in the [police report] letter writer"[27] because "CST [Community

16   Support Team] contact might be more effective" in dealing with Plaintiff's "identified belief law

17

18   enforcement is stalking her and colluding against her"[28] which Defendant Pisani and proposed

19   new Defendant Reiman both treated as "indicative of potential mental health distress" in the

20   previously hidden evidence in the Reiman and Pisani Declarations.[29] Plaintiff/Petitioner suffered

21   severe emotional distress from her encounter with Pisani, especially from the realization (through

22   Pisani's announcement) that the Sheriff was "complaining" about Plaintiff/Petitioner and sending

23

24   _____

25   [26] ROA number 1 IC, paragraphs 77-86. The Third Cause of Action for Trespass is identical in both the IC and the
     Reservation 2640543 Exhibit A Proposed FAC. See ROA number 1 IC paragraphs 34-38 and 77-86; Reservation
     2640543 Exhibit A Proposed FAC paragraphs 67-71 and 129-138.

26   [27] ROA 15 Declaration of Jennifer Reiman ("Reiman Declaration"), Exhibit A thereto, pages 2-3 (December 10,
     2020 5:42 PM e mail).

27   [28] Ibid.

28   [29] See ROA 15 Reiman Declaration, at 2: 15 (paragraph 5) and ROA 13 Pisani Declaration, at 2: 3-4 (paragraph 2).

     PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
     LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 11

1  County employees unannounced to Plaintiff's front porch in what Defendants in their Reiman

2  Declaration thirteen months later revealed was an attempt to entrap Plaintiff.[30]

3      Defendant Pisani in her unsolicited front porch and trespass babbling spiel spilled the fact

4  that Defendant County's Sheriff Department had something to do with Pisani's activity regarding

5  Plaintiff/Petitioner on December 14, 2020. So, Plaintiff/Petitioner did what any Californian

6  cognizant of her California Constitution Article I, Section 3(b) right of access to public records

7  would do: she sent PRA requests, on December 15, 2020 to the County Clerk of the Board Office

8  for County Division of Behavioral Health records of the Pisani December 14, 2020 activity, and

9  on December 23, 2020 to the County Sheriff.[31] Both requests were quite specific. To the County

10  Sheriff, Plaintiff/Petitioner requested:

11

12      "any and all electronic messages, text messages, reports, notes, log entries, computer entries, CAD, memoranda,
13      documents, records and/or writings that created on any County Sheriff sheriff, deputy, department, division,
      Impact Division, Homeless Outreach Team, officer, chief, employee, agent or representative (County Sheriff)
14      computer or other medium created, transmitted, received and/or stored that constitute, mention, refer to and/or
      relate to any information communicated on any date since January 1, 2020, to any employee, agent, or
15      representative of the County of Sacramento Department of Health Services, Division of Behavioral Health
      Services, or any Community Support Team, or to Pamela Pisani, that mention, refer to, or relate to Parvin Olfati
16      and/or 1859 45th Street (Sacramento, California 95819)."[32]

17  To the County Clerk of the Board Office, Plaintiff/Petitioner requested:

18      "any and all electronic messages, text messages, emoluments, payments, reports, notes, log entries, computer
19      entries, CAD, memoranda, documents, records and/or writings that created on any County county, Pamela
      Pisani, Senior Mental Health Counselor, Department of Health Services, Division of Behavioral Health Services,
20      Community Support Team, Howard Schmidt, Chief of Staff, Susan Peters, Supervisor, Board of Supervisors,
      department, division, officer, chief, employee, agent or representative (County) computer or other medium
      created, transmitted, received and/or stored since January 1, 2015 that constitute, mention, refer to and/or relate
21      to any communications, payments, emoluments, informant activity, providing of information, or other activity by
22      Senior Mental Health Counselor LMFT Pamela Pisani at 1859 45th Street on December 14, 2020 and/or that
      relate to, refer to, or mention Parvin Olfati or 1859 45th Street (Sacramento, California 95819). The requested
23      records include, but are not limited to the following:

24  _____
   [30] Reservation 2640543 Exhibit A Proposed FAC, paragraph 71.
25  [31] Reservation 2640543 Exhibit A Proposed FAC, paragraphs 283-(a) and 283-(b); id., Exhibit Eleven (pages 75-79)
   includes electronic copies of both PRA request letters. As alleged in Exhibit A Proposed FAC paragraphs 282-283,
26  although County runs both the Clerk of the Board Office and the Sheriff's Department, it requires PRA requesters to
   send PRA requests for Sheriff's Department records directly to the County Sheriff, whereas PRA requests for all
27  other County departments other than the District Attorney go to the Clerk of the Board Office.
28  [32] Reservation 2640543 Exhibit A Proposed FAC, at pages 75-76 (copy of December 23, 2020 PRA request to
   County Sheriff alleged in paragraph 283-(a)).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 12

1
2
3
4
5
6
7
8

. . .
5. Any communications or "information" from the County of Sacramento Sheriff's Department received by the Division of Behavioral Health Services or Pamela Pisani that mentions, refers to, or relates to Parvin Olfati and/or 1859 45th Street.
6. Any information communicated to Pamela Pisani from any source that mentions, refers to, or relates to Parvin Olfati and/or 1859 45th Street
7. Any report made by Pamela Pisani regarding any activity in December 14, 2020 at 1859 45th Street or that relates to Parvin Olfati.

. . . The dispatch or other communication directing Pamela Pisani to come to 1859 45th Street and/or to contact Parvin Olfati at any time on December 14, 2020.
11. Any communications to, from, with, or about any County of Sacramento Sheriff's Department deputy sheriffs, employees, agents or representatives regarding any Pamela Pisani activity relating to Parvin Olfati or at 1859 45th Street on December 14, 2020.[33]

9   The County Sheriff never responded to Plaintiff's PRA request[34], and this and other County

10   Sheriff non-responses are the subject of the Proposed FAC Claim Twelve, a PRA mandamus writ

11   action against Defendant County joined pursuant to Code of Civil Procedure (CCP) Section

12   427.10.[35] The County Clerk of the Board Office responded with an electronic mail message

13   saying that it had no documents responsive to the PRA request – even though County was in

14   possession of at least the following documents it had already created and would reveal thirteen

15   

16   months later:

17   1. The December 10, 2020 5:42 p.m. e-mail from Jennifer Stewart to Jennifer Reiman, with a

18      copy to Sheriff's Sergeant Ronald Briggs, stating in pertinent part as follows::

19      "The sergeant for the POP (Problem Oriented Policing) gave me the attached letter with an inquiry as to how
20      to get a mental health worker to check in with the letter writer . . . the letter suggests CST [Community
21      Support Team] might be more effective (identified belief law enforcement is stalking her and colluding against her."[36]

22   2. The "attached letter" referred to in the December 10, 2020 5:42 p.m. e-mail, which was the

23      as-received-by-Briggs-for-the-Sheriff copy of Plaintiff's November 9, 2020 Police Report

24   
25   
26   
27   
28

---

[33] Reservation 2640543 Proposed FAC, pages 78-79 (copy of PRA request alleged in paragraph 283-(b)).

[34] Even though the County Sheriff (like all government agencies) is under a Government Code Section 6253 mandatory duty to respond in writing within ten calendar days and to produce records within a reasonable time.

[35] Reservation 2640543 Proposed FAC, paragraphs 277-291.

[36] ROA 15 Declaration of Jennifer Reiman, exhibit A thereto, pages 2-3.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 13

1    letter to the County Sheriff reporting the theft of her cellphone in the unincorporated area

2    (Fair Oaks) in Sacramento County.[37]

3    3.  The December 11, 2020 8:29 a.m. e mail from Jennifer Reiman to Defendant Pisani,

4        directing Pisani to "potentially follow up on this one."[38]

5    4.  The December 14, 2020 2:37 p.m. e mail from Defendant Pisani to Reiman, where Pisani

6        and Stewart refer to Plaintiff/Petitioner as "this person who has a restraining order against

7        her by a [Sacramento] city councilmen [sic]"[39] – a statement that is false[40] and was either

8        known to be false by Defendant Pisani and proposed new Defendants Stewart and Reiman,

9        or these persons acted with reckless disregard of its probable falsity.

10   As can be seen, these December 10, 11 and 14 County electronic mail messages were clearly

11   covered by Plaintiff's December 2020 PRA requests. But County did not reveal them. Instead, as

12   the six-month CGCA claim presentation deadline drew near, Plaintiff/Petitioner between

13   December 14, 2020 and the April 5, 2021 initial CGCA claim filing was bereft of any pleadable

14   knowledge of County employee acts other than the trespass and other Pisani acts she saw on

15   December 14, 2020, and the acts of Defendants Roe One and Roe Two. Therefore, Plaintiff's

16   CGCA initial claim filed April 5, 2021 and her ROA 1 IC contained claims related only to the

17   Pisani December 14, 2020 and Roe One/Roe Two acts on behalf of Defendant County. No

18   reasonable person in  good faith could have conceived, much less alleged, the specifics of what

---

[37] ROA 15 Declaration of Jennifer Reiman, paragraph 5 and Exhibit B thereto. Plaintiff/Petitioner wrote and sent this Police Report letter to the County Sheriff on November 9, 2020, but had no way of knowing on December 14, 2020 that this letter was the moving force behind the Pisani conduct – because Pisani never told her, even though Pisani knew, as stated in the ROA 15 Reiman Declaration exhibit A emails and in Pisani's own ROA 13 declaration, par.3. Exhibit B to the Reiman Declaration is also Exhibit Thirteen in the Proposed FAC (Reservation 2640543 Exhibit A).

[38] ROA 15 Reiman Declaration, exhibit A thereto, page 2.

[39] ROA 15 Reiman Declaration, Exhibit A thereto, page 2.

[40] The City of Sacramento in its' Public Records Act Reference Number P028660-021522 [on the City of Sacramento website public records portal] stated that it had no record of any City of Sacramento city council member obtaining a restraining order against Plaintiff. There is also no record of any such restraining order on the Superior Court Public Case Access System.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 14

1   Defendant County's records *existing in December 2020* would reveal almost ten months later --

2   unless they had access to those records. Although the PRA gives Plaintiff/Petitioner such access,

3   and Plaintiff/Petitioner filed two PRA requests, Defendant County simply stonewalled Plaintiff

4   and either refused to respond or claimed it had no records.  Therefore, Plaintiff/Petitioner

5   (consistent with her initial CGCA claim) in her IC only alleged six Causes of Action against

6   Defendant Pisani and two identity-unknown Defendants Roe One and Roe Two, and two Causes

7   against the County only.

8

9         C.   **Defendants County and Pisani Reveal The Conspiracy To Retaliate and Defame**

10             **Plaintiff/Petitioner In Their Unsuccessful Anti-SLAPP Statute Motion**

11           Plaintiff/Petitioner filed her ROA 1 IC on October 25, 2021. Defendants County and Pisani

12   jointly answered on January 18, 2022.[41]  Ten days later on January 28, 2022, Defendants filed

13   their Anti-SLAPP Statute Motion calendared for hearing April 20, 2022. Plaintiff/Petitioner

14   received the Anti-SLAPP Statute motion papers on January 29, 2022. The ROA 15 Reiman

15   Declaration and its County electronic mail messages attached thereto (and quoted above) revealed

16   that Defendant Pisani had been sent by the County Sheriff to drop in unannounced on

17   Plaintiff/Petitioner in an attempt to threaten, coerce, or intimidate Plaintiff/Petitioner into

18   becoming a client of County's Division of Behavioral Health Services and either stop sending

19   Police Reports to the County Sheriff, or be stigmatized as someone getting mental health

20   treatment from the County shoes Police Reports and other writings could safely be dismissed as

21   coming from someone, in the words of both Reiman and Pisani, exhibiting "signs of mental

22   health distress"[42] or "indicative of potential mental health distress."[43]  The Anti-SLAPP Statute

23   Motion Reiman Declaration County electronic mail messages also revealed that in the process,

24

25

26

27   [41] ROA 10.

    [42] ROA 13 Pisani Declaration, at 2: 3-4 (paragraph 3).

28   [43] ROA 15 Reiman Declaration, at 2: 15 (paragraph 5).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 15

1  Stewart, Pisani and Reiman defamed Plaintiff/Petitioner and placed her in as false light in County

2  electronic mail messages referring to her as the restrained party in a restraining order obtained

3  against her by a member of the Sacramento City Council, a restraining order that does not exist

4
   and never has existed.  These acts begun by proposed new Defendant Briggs and carried out by
5
   proposed new Defendants Stewart and Reiman and Defendant Pisani were an attempt to threaten,
6
7  coerce, or intimidate Plaintiff/Petitioner into a captive audience situation where she could be

8  coerced into accepting unwanted County mental health services as part of new Defendant

9  Sheriff's Sergeant Ronald Briggs' retaliation for Plaintiff's Police Report letter.[44]  Ironically, the

10 County's own electronic mail messages revealed the existence of the conspiracy that Defendants

11
   laughed off in their unsuccessful Anti-SLAPP Statute Motion: "Plaintiff's claims are based on
12
   misconceptions about the actions of the Defendants", and accusing Plaintiff/Petitioner of
13
14 "believ[ing] [Defendants] were participating in a conspiracy against her, when really, they only

15 ever wanted to offer help and support."[45]

16    D.  **Plaintiff's Supplemental CGCA Claim, County Denial, And Plaintiff's Proposed**
         **First Amended Complaint**
17
18    Plaintiff/Petitioner therefore on April 4, 2022, two months and seven calendar days after

19 she learned of the County electronic mail messages in the County Anti-SLAPP Statute Motion,

20 filed a supplemental CGCA claim with Defendant County.[46] The supplemental claim expressly

21 references the claim and file numbers of the initial claim, and: (i) expressly states that it is for

22 "Dec.[ember] 2020 conduct  not revealed until 2022 January 28"[47] ; (ii) names as "employees

23

24

25 [44] This November 9, 2020 Police Report as received by Defendant County's Sheriff's Department, new Defendant
   Sheriff's Sergeant Briggs, new Defendants Stewart and Reiman, and Defendant Pisani, is eexhibit B to Defendants'
26 Reiman Declaration, and is Exhibit Thirteen to the Reservation 2640543 Exhibit A Proposed FAC.

27 [45] Defendants' ROA 12 Anti-SLAPP Statute Motion memorandum, at 1: 3-6.

   [46] Kamp Declaration, Exhibit F thereto; Reservation 2640543 Exhibit A Proposed FAC, Exhibit Thirteen thereto.
28 [47] Id., page 1, answer to question 9.

   PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
   LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 16

1   involved" Briggs, Pisani, Stewart and Reiman[48]; and (iii) in the letter included as part of the

2   supplemental claim, expressly informs the County that this is an "update with newly discovered

3   previously unavailable information ", and that "it now appears from previously undisclosed and

4
    suppressed County information that claimant is a victim of additional related acts by Pisani, and
5
    acts by . . .Reiman...and Stewart...and Briggs that were committed on the 2020 dates of
6
7   December 10-14 and 28", information about which "was not made available by the County until

8   the 2022 dates of January 28 and March 8."[49]

9       III.    Defendants' Conduct Constitutes "Surprise" As This Term Is Used In
                Government Code Section 946.6, Subdivision (c)(1)
10

11          "Surprise" is a separate ground for Government Code Section 946.6 relief that is

12   independent of the other three grounds: "excusable neglect", "mistake", or "inadvertence." The

13   definition of "surprise" is "a completely unexpected occurrence, appearance or statement."[50] This

14
     is succinctly descriptive of Defendant County's January 28, 2022 Anti-SLAPP Statute Motion
15
     Reiman Declaration exhibit A electronic mail messages.
16

17       IV.    Defendants' Fraudulent Concealment of Plaintiff's Supplemental CGCA Claim
                Facts And Causes of Action Tolls The CGCA Claims Presentation Limitation
18              Period

19
            It is long established California law that "when the defendant is guilty of fraudulent
20
21   concealment of the cause of action the statute [of limitations] is deemed not to become operative

22   until the aggrieved party discovers the existence of the cause of action." *Pashley v. Pacific*

23

24   ———————————————————
     [48] Id., page 1, answer to question 13.

25   [49] Id., first page of letter, first paragraph. March 8, 2022 is the date of the County Clerk of the Board Office PRA 22-
     740 Public Records Act response where the County stated that it had "no documents" that constituted, mentioned,
26   referred to, or related to "any investigation or activity related to any determination [that] the November 9, 2020
     Parvin Olfati Police Report/Crime Report was: (1) unfounded"; (2) a "complaint indicative of potential mental health
27   distress"; or (iii) merited referring the police report/crime report author and her address to County Division of
     Behavioral Health Services, MCST, and/or POP."
28   [50] www.dictionary.com, "Surprise" (noun), definition 7.

     PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
     LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 17

1    *Electric Railway Co.* (1944) 25 Cal.2d 226, 229; *accord, Kane v. Cook* (1857) 8 Cal. 449, 458

2    (where consignee failed to give accounting of sale of consigned goods, meaning "[h]is neglect not

3    only deprived them of their funds, but kept them in ignorance of their rights", prevents

4
     application of the statute of limitations  because to do so "would be to permit the defendant to
5
     take advantage of his own wrong"); *Kimball v. Pacific Gas & Electric* (1934), 220 Cal. 203, 210
6
7    ("a fraudulent concealment by the defendant of the facts upon which a legal common-law action

8    is based, under the proper circumstances, tolls the statute until discovery and upon discovery  the

9    statute . . . then commences to run"). In *Kimball, supra,* the fraudulent concealment was the

10   Pacific Gas & Electric (PG&E) not telling its' inquiring injured employee of General Electric

11
     (GE) employees working under contract with PG&E who were actually responsible for his
12
     injuries. Defendant County committed the same fraud here by concealing the acts of Reiman,
13
14   Stewart and Briggs, and the additional acts of Pisani, by not producing these records in response

15   to Plaintiff's PRA requests made in the same month as the acts were committed, and waiting until

16   thirteen months later  to disclose them.[51]

17
18   **V.      Plaintiff's Supplemental CGCA Claims Against Defendants County and Pisani,
             And Proposed New Defendants Briggs, Stewart, and Reiman, Arose When
19           Plaintiff/Petitioner Discovered Them In The January 28, 2022 County/Pisani
             Anti-SLAPP Statute Motion, Not When Defendants Suppressed Them In
20           December 2020**

21           It is equally well-established law that "the accrual date of a cause of action is delayed until

22   the plaintiff is aware of her injury and its' negligent cause." *Jolly v. Eli Lilly & Co.,* (1988) 44

23   Cal.3d 1103, 1109. Plaintiff when she filed her initial CGCA claim and ROA 1 IC was only

24

25   ───────────────────────

26   [51] In the *Kimball* case, PG&E knew that the plaintiff's injuries had been caused by the GE employees, but during
     plaintiff's inquiries, did not reveal their identities or the PGE/GE relationship. The plaintiff discovered  the GE acts
27   while visiting a PG&E power station clubhouse and finding on a desk in plain view, a GE letter to PG&E that "fully
     set forth the facts as to the accident and the facts as to the agreement between the two companies".  The court held
28   that even suit against GE was commenced after the one-year limitations period, it could proceed because the
     fraudulent concealment by PG&E and GE "tolls the statute until discovery." *Kimball, supra,* 220 Cal. at 210.

     PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
     LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 18

1   aware of the injuries caused by Pisani acting as Pisani, not the injuries caused by Pisani acting in

2   concert with Briggs, Stewart, and Reiman. Plaintiff prior to January 28, 2022 was unaware that

3   she had retaliation claims under the Bane Act[52] or federal Civil Rights Act[53] against Pisani,

4
5   Briggs, Stewart and Reiman, because until then she was not aware that the moving force for

6   Pisani's acts toward her was her November 9, 2020 Police Report letter to the County Sheriff,

7   Sheriff's Sergeant Briggs ordering "get a mental health worker to check in with the letter writer",

8   and Stewart, Reiman and Pisani carrying out the retaliation after reading the letter and deciding

9   for themselves that the letter showed "signs of mental health distress"[54] – because Plaintiff would

10  not see these December 2020 County records until the County filed its' January 28, 2022 ROA

11  11-16 motion, which also revealed for the first time to Plaintiff/Petitioner that she had

12
13  defamation and false light invasion of privacy claims against Reiman, Stewart and Pisani.

14  **VI.  Defendants Cannot Demonstrate Prejudice Because Their Own Electronic Mail**
15  **Messages Used For Their Unsuccessful Anti-SLAPP Statute Motion Are Being**
    **Used To Demonstrate The Conspiracy Whose Existence They Laughed At In**
16  **Their Anti-SLAPP Statute Motion**

17  "Once it has been shown . . . that the failure to present a timely claim was through . . .

18  surprise . . . the burden shifts to the public entity to establish . . . that it would be prejudiced . . ."

19  *Renteria v. Juvenile Justice, Dept. of Corrections & Rehab.* (2006) 135 Cal.App. 4th 903, 910

20  (citations omitted). There is no prejudice to County or Pisani because it is their own electronic

21  mail messages that will be thrown back at them.

22
23  **VII.  Government Code Section 946.6 Is A Remedial Statute That is Construed In**
    **Favor of Granting Relief Wherever Possible To Insure Trial on the Merits**
24
25
26  [52] Civil Code Section 52.1.

27  [53] United States Code, Title 42, Section 1983, causes of action over which this Court has concurrent jurisdiction (*Green v. Obledo* (1984) 161 Cal.App.3d 678)).

28  [54] ROA 13 Pisani Declaration, at 2: 3-45 (paragraph 3); ROA 15 Reiman Declaration, at 2: 15 (paragraph 5).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 19

1    The purpose of Government Code Section 946.6 is to alleviate the harshness of strict

2    compliance with the [Section 911.4] six-month rule for persons who are victims of surprise. *Segal*

3    *v. Southern Cal. Rapid Transit Dist.* (1970) 12 Cal.App.3d 509, 512. Therefore, this statute "is

4    construed in favor of relief wherever possible." *Bettencourt v. Los Rios Community College Dist.*,

5    *supra*, 42 Cal.3d at 275. On April 21, 2022, Department 54 of this Court granted a Government

6    Code Section 946.6 petition against Defendant County for petitioner counsel excusable neglect

7    where the petitioner's counsel failed to "track and verify" the missing return receipt for the

8    CGCA claim letter she had sent from Southern California to the County via certified mail.[55] In

9    this Petition, Plaintiff/Petitioner was the victim of County surprise that fraudulently concealed the

10   claims she has against the Defendants in her Reservation 2640453 Proposed FAC.

11

12

13   **VIII.   Conclusion**

14

15       For the foregoing reasons, this Court is respectfully requested to grant Plaintiff Ms. Parvin

16   Olfati's Petition For Leave to File Late Tort Claim Against Governmental Entity, by either: (i) an

17   order excusing Plaintiff/Petitioner from filing a CGCA claim with  Defendant County; or (ii) an

18   order finding that Plaintiff/Petitioner's April 4, 2022 CGCA was timely as to facts, parties, and

19   causes of action discovered by Plaintiff/Petitioner on any date six months prior to April 4, 2022,

20   including but not limited to the 2022 dates of January 28 or January 29.  Respectfully submitted,

21   /s/ STEVEN MARK KAMP (California State Bar Number 116817), Attorney for Plaintiff/PRA

22   Petitioner Ms. Parvin Olfati

23

24   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
     Electronic Mail Address:
25   Telephone: (916) 501-1791 (cellular, voice/text)

26   DATED: May 17, 2022

27   _____

28   [55] *Oscar Martin Salazar-Vargas vs. County of Sacramento*, Case No. 2022-00315982-CU-PT, April 21, 2022
     Tentative Rulings Item 22 (copy attached hereto as Exhibit H to the Kamp Declaration).

     PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
     LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 20

1   **DECLARATION OF SERVICE IN PERSON**

2   I, STEVEN M. KAMP, declare and state as follows:

3   1.      I am over the age of 18, and reside in the County of Sacramento, State of California.

4   2.      I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

5   3.      On May 17, 2022, I caused to be served by hand delivery on counsel for the Defendants in
    this action a true and correct copy of:

6
       **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
7      **PLAINTIFF'S PETITION TO FILE LATE TORT CLAIM AGAINST**
       **GOVERNMENTAL ENTITY**
8

9

10  4. Service was effected in person on May 17, 2022 by:

11      Personally delivering a true and correct copy of the above-referenced document to Porter

12      Scott, 350 University Avenue, Suite 200, Sacramento, California 95825 in a manila envelope
        addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200,

13      Sacramento, CA 95825;

14

    I declare under penalty of perjury that the foregoing statements are based on personal knowledge,
15  and are true and correct. Executed at Sacramento, California, this _17th day of May, 2022.

16  /s/ STEVEN MARK KAMP (California State Bar Number 116817)
    STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
17  Electronic Mail Address: steve.kamp@comcast.net
    Telephone: (916) 501-1791 (cellular, voice/text)
18  Attorney for Plaintiff/PRA Petitioner Ms. Parvin Olfati

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO FILE
LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 21

1    STEVEN MARK KAMP (California State Bar Number 116817)
2    STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
     Electronic Mail Address: steve.kamp@comcast.net
3    Telephone: (916) 501-1791 (cellular, voice/text)
     Attorney for Plaintiff Ms. Parvin Olfati

```
FILED/ENDORSED
   MAY 1 7 2022
By:_____H. PEMELTON____
            Deputy Clerk
```

9              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 IN AND FOR THE COUNTY OF SACRAMENTO

12                                          No.  34-2021-00310164-CU-CE-GDS

13   Ms. PARVIN OLFATI, Plaintiff/Petitioner   **DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF'S PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY**
14         v.

15   COUNTY OF SACRAMENTO; PAMELA    **Date: June 9, 2022**
16   PISANI; JANE ROE DEFENDANT ONE;
     JANE ROE DEFENDANT TWO;  JANE    **Time: 9:00 a.m.**
17   ROE DEFENDANTS 3-100; JOHN DOE
     DEFENDANTS 1-100,               **Department: 54**
18   Defendants/Respondents
                                     **Reservation No.: 2644627**
19
                                     **Complaint Filed: 10/25/21**
20

22       I, STEVEN MARK KAMP, declare and state as follows:

23   1.  I represent the Plaintiff (Ms. Parvin Olfati) in this action. I have personal knowledge of the

24       facts set forth in this Declaration. I am an attorney at law licensed to practice in all state

25       and federal courts in the State of California, the U.S. Court of Appeals for the Ninth

26       Circuit, and the United States Supreme Court. I have been an active member of the State

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 1

1   Bar of California continuously since 1984 and an active member of The Florida Bar

2   continuously since 1982. I am also admitted to practice in the District of Columbia.

3   2.   Attached hereto as Exhibit D[1] is a true and correct electronic copy of the undersigned

4   counsel's May 9, 2022 electronic mail message letter to counsel for Defendants County of

5   Sacramento and Pamela Pisani, in which Plaintiff: (a) advised Defendants' counsel that the

6   June 9, 2022 Department 54 hearing would also include  Plaintiff's Petition To File Late Tort

7   Claim Against Governmental Entity; and (b) requested that Defendants "stipulate that

8   Plaintiff/Petitioner Ms. Parvin Olfati is excused from filing her April 4, 2022

9   supplemental claim with County and may proceed on this part of her underlying claim

10  pursuant to Government Code Section 946.6.'

11  3.   Attached as Exhibit E hereto is a true and correct copy of the May 11, 2022 letter from

12  Defendants' counsel rejecting this request.

13  4.   Attached as Exhibit F hereto is a true and correct copy of Plaintiff's supplemental

14  California Government Claims Act claim received by Defendant County of

15  Sacramento on April 4, 2022. The answer to question 9 expressly states that the

16  supplemental claim is for "Dec [ember] 2020 not revealed until 2022 January 28". The

17  letter included as part of the claim expressly states that it presents "newly discovered

18  previously unavailable information from County records" and that: "It now appears

19  from previously undisclosed and suppressed County information that claimant is the

20  victim of additional related acts by Pisani, and by County [employees] Jennifer

21  Reiman and Jennifer Stewart, and County Sheriff Sergeant Ronald Briggs that were

22  committed on the 2020- dates of December 10-14 and 28. . . . this information was not

28  _____
    [1] Exhibits A, B, and C are in the Reservation 2640543 motion papers.

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT
CLAIM AGAINST GOVERNMENTAL ENTITY 2

made available by the County until the 2022 dates of January 28[2] and March 8.[3]" The

supplemental claim also stated that the newly discovered, previously suppressed

information gave rise to newly discovered claims for retaliation for protected speech,

defamation, and false light invasion of privacy" and that these acts were actionable

under both the federal Civil Rights Act and the Tom Bane Civil Rights Act.

5. Attached as Exhibit G hereto is Defendant County's claim rejection letter dated April

9, 2022 (a Saturday). The letter both rejects the April 4, 2022 "claim" and further

rejects it as "untimely: "NOTICE OF UNTIMELY CLAIM. IN ADDITION, NOTICE

IS HEREBY GIVEN that a portion of that same claim (any acts or events prior to

October 4, 2021 which you presented to the County of Sacramento on April 4, 2022)

will not be accepted for consideration because it was not presented within six months

of the date of accrual of the cause of action . . ." **Note that the Saturday-dated claims**

**rejection letter says nothing about the facts presented in Plaintiff's April 4, 2022**

**letter that the acts giving rise to newly discovered defendants and causes of action**

**were not discovered by Plaintiff until January 29, 2022 when she received County**

**electronic mail messages withheld from disclosure until January 28, 2022.**

6. These newly discovered facts giving rise to Plaintiff's Proposed First Amended Complaint

(Exhibit A under Reservation 2640543) were not discovered by Plaintiff until January 29,

2022, when the undersigned counsel received in the postal mail Defendants' January 28,

---

[2] The day the County and Pisani filed their ROA 11-16 Anti-SLAPP Statute Motion.

[3] The day the County Clerk of the Board Office in its' PRA 22-740 Public Records Act response stated that it had "no documents" that constituted, mentioned, referred to, or related to "any investigation or activity related to any determination [that] the November 9, 2020 Parvin Olfati Police Report/Crime Report was: (1) unfounded"; (2) a "complaint indicative of potential mental health distress"; or (iii) merited referring the police report/crime report author and her address to County Division of Behavioral Health Services, MCST, and/or POP."

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 3

1    2022 Anti-SLAPP Statute Motion and supporting documents.[4]   One of these supporting

2    documents was the Declaration of Jennifer Reiman ("Reiman Declaration")[5], in which

3    Ms. Reiman stated she was the County Mental Health Program Coordinator and the

4    supervisor of Defendant Pisani[6]. The Reiman Declaration and its' supporting exhibits

5    included County electronic mail messages[7] revealing that: (a) proposed new Defendant

6    County Sheriff's Sergeant Ronald Briggs ordered that a "mental health worker" be sent to

7    "check in on the letter writer [Plaintiff]" in retaliation for Plaintiff sending to the County

8    Sheriff a Police Report letter[8] regarding the theft of her cellphone in the Sheriff's

9    Department jurisdiction Fair Oaks area, a Police Report that Defendant Briggs determined

10   without investigation to be "unfounded" and merited County Community Support Team

11   intervention that Defendant Briggs believed would be "more effective" because Plaintiff's

12   Police Report letter stated an "identified belief that law enforcement is stalking her and

13   colluding against her"; and (b) new Defendants Reiman and Stewart, and Defendant

14   Pisani, defamed Plaintiff with electronic mail message statements that Plaintiff was the

15   restrained party in a restraining order against her by a member of the Sacramento City

16   Council[9], a statement that all three Defendants knew or in the exercise of reasonable care

17   should have known was false.

---

[4] Register of Actions (ROA) numbers 11-16.

[5] ROA number 15 (Reiman Declaration).

[6] Whose declaration (ROA number 13) was also filed by Defendants in support of their Anti-SLAPP Statute Motion.

[7] ROA number 15 (Reiman Declaration), Exhibit A thereto.

[8] ROA number 15, Exhibit B thereto. This Police Report letter from Plaintiff/Petitioner to the County Sheriff is also s Exhibit Thirteen in the Reservation 2640543 Proposed FAC.

[9] ROA number 15, Exhibit A thereto.

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 4

7. The Defendant County electronic mail messages included in the Reiman Declaration should have been included in the County's response to Plaintiff's December 15, 2020 Public Records Act (PRA) request for:

"any and all electronic messages, text messages, emoluments, payments, reports, notes, log entries, computer entries, CAD, memoranda, documents, records and/or writings that created on any County county, Pamela Pisani, Senior Mental Health Counselor, Department of Health Services, Division of Behavioral Health Services, Community Support Team, Howard Schmidt, Chief of Staff, Susan Peters, Supervisor, Board of Supervisors, department, division, officer, chief, employee, agent or representative (County) computer or other medium created, transmitted, received and/or stored since January 1, 2015 that constitute, mention, refer to and/or relate to any communications, payments, emoluments, informant activity, providing of information, or other activity by Senior Mental Health Counselor LMFT Pamela Pisani at 1859 45th Street on December 14, 2020 and/or that relate to, refer to, or mention Parvin Olfati or 1859 45th Street (Sacramento, California 95819). The requested records include, but are not limited to the following:
. . .
5. Any communications or "information" from the County of Sacramento Sheriff's Department received by the Division of Behavioral Health Services or Pamela Pisani that mentions, refers to, or relates to Parvin Olfati and/or 1859 45th Street.
6. Any information communicated to Pamela Pisani from any source that mentions, refers to, or relates to Parvin Olfati and/or 1859 45th Street.
7. Any report made by Pamela Pisani regarding any activity in December 14, 2020 at 1859 45th Street or that relates to Parvin Olfati.

. . . The dispatch or other communication directing Pamela Pisani to come to 1859 45th Street and/or to contact Parvin Olfati at any time on December 14, 2020.
11. Any communications to, from, with, or about any County of Sacramento Sheriff's Department deputy sheriffs, employees, agents or representatives regarding any Pamela Pisani activity relating to Parvin Olfati or at 1859 45th Street on December 14, 2020.[10]

This PRA request is referenced in the Proposed FAC paragraph 283-(b), and an electronic copy of the PRA request is included in Exhibit Eleven thereof. **However, the County response to this PRA request was an electronic mail message stating that the County had no documents. Had Plaintiff been given these documents which were created by Defendant County shortly before Plaintiff sent her PRA request, the new allegations in the Proposed FAC would have been included in the Initial Complaint. These documents could have been included in any County Sheriff response to Plaintiff's December 23, 2020 PRA request for:**

---

[10] Reservation 2640543 Proposed FAC, pages 78-79 (copy of PRA request alleged in paragraph 283-(b)).

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 5

"any and all electronic messages, text messages, reports, notes, log entries, computer entries, CAD, memoranda, documents, records and/or writings that created on any County Sheriff sheriff, deputy, department, division, Impact Division, Homeless Outreach Team, officer, chief, employee, agent or representative (County Sheriff) computer or other medium created, transmitted, received and/or stored that constitute, mention, refer to and/or relate to any information communicated on any date since January 1, 2020, to any employee, agent, or representative of the County of Sacramento Department of Health Services, Division of Behavioral Health Services, or any Community Support Team, or to Pamela Pisani, that mention, refer to, or relate to Parvin Olfati and/or 1859 45th Street (Sacramento, California 95819)."[11]

**The County Sheriff never responded to this PRA request, referenced in the Exhibit A Proposed FAC paragraph 283-(a) and included in Exhibit Eleven thereof.**

8.    The effect of the claims in the April 4, 2022 CGCA claim letter is seen in the Proposed FAC: (a) add as new individual capacity Defendants County employees Sheriff's Sergeant Ronald Briggs, Mental Health Counselor Jennifer Stewart, and Mental Health Program Coordinator Jennifer Reiman, the three persons identified in the Reiman Declaration; (b) add new facts and claims against new Defendants Briggs, Stewart, and Reiman, as well as existing Defendant Pisani, to existing Causes of Action First (intrusion into private affairs invasion of privacy) , Second (Intentional Infliction of Emotional Distress), and Fourth (Negligence) ; (c) add new facts and claims against new Defendants Stewart and Reiman, and existing Defendant Pisani, to existing causes of action Fifth (false light invasion of privacy) and Sixth (defamation); (d) add new facts regarding new Defendants Briggs, Stewart, and Reiman to the Seventh Cause of Action against County for negligent training, supervision, and discipline; (e) add new facts regarding new Defendants Briggs, Stewart, and Reiman to the Eighth Cause of Action against County for Government Code Section 815.2, subdivision (a) *respondeat superior;* (f) add a new Ninth Cause of Action against County, Pisani, Briggs, Stewart and Reiman for violations of Civil Code Section 52.1, the Tom Bane Civil Rights Act, by retaliating against Plaintiff for her exercise of her

---

[11]  Reservation 2640543 Exhibit A Proposed FAC, at pages 75-76 (copy of December 23, 2020 PRA request to County Sheriff alleged in paragraph 283-(a)).

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 6

1   federal First Amendment and California Constitution Article I, Sections 2 and 3 rights of

2   speech and petitioning in filing the Exhibit Thirteen Police Report letter with Defendant

3   County's Sheriff's Department ; (g) add a new Tenth Cause of Action under United States

4   Code, Title 42, Section 1983[12] against new Defendants Briggs, Stewart and Reiman, and

5   against Defendant Pisani, for violation of Plaintiff's First Amendment rights of speech and

6   petitioning by retaliating against Plaintiff for her filing the Exhibit Thirteen Police Report

7   letter with Defendant County's Sheriff's Department; (h) add a new Eleventh Cause of

8   Action against Defendant County under  United States Code, Title 42, Section 1983 for its

9   ratification of the unconstitutional acts of new Defendants Briggs, Stewart and Reiman,

10  and Defendant Pisani; for policies and customs that were the moving force behind the

11  unconstitutional acts of new Defendants Briggs, Stewart and Reiman, and Defendant

12  Pisani; and Defendant County's  deliberately indifferent training, supervision, and

13  discipline of County Sheriff's Department Sergeants, Division of Behavioral Health

14  Services Senior Mental Health Counselors, and/or Division of Behavioral Health Services

15  Mental Health Program Coordinators that were the proximate cause of the constitutional

16  violations by new Defendants Briggs, Stewart and Reiman and Defendant Pisani;  and (i)

17  add a new Twelfth Cause of Action for PRA writ of mandamus against Defendant County

18  under Government Code section 6258, joined pursuant to CCP Section 427.10.

19  9.      These facts were unknown to Plaintiff prior  to Defendant County's filing of the

20  Reiman Declaration and County electronic mail message exhibits thereto on January 28,

---

[12] Although Proposed FAC Causes of Action Tenth and Eleventh are based on a federal statute [United States Code, Title 42, Section 1983], they can be filed in California Superior Court because California state courts have concurrent jurisdiction over Section 1983 claims; *Green v. Obledo* (1984) 161 Cal.App.3d 680, 682-683, where the Third District Court of Appeal held that State Budget Act restrictions on payment of attorney's fee awards were irrelevant t a federal the Section 1983 attorney's fee statute (Section 1988 of Title 42, United States Code)) in a California state court Section 1983 action.

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 7

2022; and were hidden from Plaintiff by County when County responded to Plaintiff's

December 15, 2020 PRA request for records related to the Pisani and County acts of

December 14, 2020 with the false statement that County had no records, when in fact it

had created the electronic mail messages it would later attach to the Reiman Declaration;

and that Defendant County's Anti-SLAPP Statute Motion prevented from being made the

subject of any Amended Complaint between January 28, 2022 and April 21, 2022.

10. Attached as Exhibit H hereto is this Court's Department 54 April 21, 2022 minute order in

*Oscar-Martin Salazar-Vargas vs. County of Sacramento*, Case No. 2022-00315892-CU-

PT, where this Court granted a Government Code Section 946.6 Petition To File Late Tort

Claim Against Governmental Entity over the opposition of the County of Sacramento. In

this Exhibit H case, the petition was granted because of the plaintiff's attorney's admitted

excusable neglect in failing to recognize that a certified mail return receipt letter sent from

Southern California to the County Clerk of the Board Office containing a CGCA claim

was not received by the County. The Court granted the Government Code Section 946.6

petition in the face of the County's argument that the failure of the return receipt card to

be returned should have alerted the plaintiff's attorney to the possibility that the CGCA

claim letter had not been received, finding that the plaintiff has "satisfied his burden to

show mistake, inadvertence, surprise, or excusable neglect, and that [plaintiff] was

diligent in investigating and pursuing the claim."

I declare under penalty of perjury under the laws of the State of California that the statements

herein are true and correct, and that this Declaration was executed in Sacramento, California on

May 17, 2022. /s/ Steven Mark Kamp, Attorney for Plaintiff Ms. Parvin Olfati

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 8

**EXHIBIT D**

1   **Exhibit D: Plaintiff's May 9, 2022 Electronic Mail Message Letter to Defendants' Counsel**
2   **Requesting Stipulation to Plaintiff's Petition to File Late Tort Claim Against Governmental**
    **Entity**
3

4   ***STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento,***
    ***California 95822***
5   ***Electronic Mail Address: steve.kamp@comcast.net***
    ***Telephone Number: (916) 501-1791 (cellular, voice/text)***
6                                        May 9, 2022
    Via electronic mail only to cfessenden@porterscott.com
7   Carl Fessenden, Esq., Porter Scott, 350 University Drive, Suite 200, Sacramento, CA
    95825
8
    **RE: *Ms. Parvin Olfati vs. County of Sacramento, Pamela Pisani, et al.*, Sacramento**
9   **County Superior Court Case No. 34-2021-00310164-CU-CE-GDS –**
    **June 9, 2022 hearing will also include a Petition for Permission To File Late Tort**
10  **Claim Against Governmental Entity (Reservation Number 2644627)**
    **Status of Case Management Conference Submissions**
11
    Dear Mr. Fessenden:
12
    I am sending you this letter for two reasons. First, I have not received any communication
13  from your office regarding the Case Management Conference statement due May 12,
    2022, which is Thursday of this week, and for which I submitted Plaintiff's content on
14  May 5, 2022. Do you want to file a Joint Statement, or do you wish to file separate
    statements. Either way is fine with me as long as you advise soon so I can finalize any
15  necessary submission.

16  Second, I write to advise you that the June 9, 2022 hearing reserved by Plaintiff in
    Department 54 for 9:00 a.m. (Reservation Number 2640543) will also include a hearing
17  on Plaintiff's Petition for Permission to File Late Tort Claim Against Governmental
    Entity. I reserved the inclusion of this Petition in the June 9, 2022 hearing with
18  Department 54 this morning; Department 54 staff gave it the Reservation Number
    2644627. As you know, the Reservation Number 2640453 hearing is on Plaintiff's Motion
19  for Leave of Court to File First Amended Complaint.

20  The Petition and any supporting documents under Reservation 2644627 will be filed and
    served separately from the Reservation 2640543 documents, but both sets will be served
21  on or before May 17, 2022.

22  The reason for filing the Reservation 264427 Petition is that the County's agent, George
    Hills & Company, by letter dated April 9, 2022 (a Saturday) stated that Plaintiff's April 4,
23  2022 supplemental California Government Claims Act claim for the December 2020
    actions of County employees Pamela Pisani, Ronald Briggs, Jennifer Stewart, and Jennifer
24  Reiman revealed to Plaintiff for the first time in the County/Pisani Anti-SLAPP Statute
    Motion Declaration of Jennifer Reiman was both:
25          Rejected; and
            Would be treated as untimely.
26
    The County's agent makes the (b) assertion in the face of indisputable fact that Plaintiff
27  did not know and could not have known of the December 2020 actions of County, Pisani,
    Briggs, Stewart and Reiman revealed in the Reiman Declaration and exhibits thereto
28  (especially the Exhibit A email string and the County treatment of Exhibit B, Plaintiff's

    DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT
    CLAIM AGAINST GOVERNMENTAL ENTITY 9

1    November 9, 2020 Police Report letter). Hence, the facts in Plaintiff's supplemental claim
     clearly qualify as "surprise" under Government Code Section 946.6, subdivision (c)(1),
2    and Plaintiff is filing this Government Code Section 946.6, subdivision (a) Petition is filed
     within six months of the County's April 9, 2022 claim rejection letter.
3
     This letter also requests that your office on behalf of the County, Pisani, Briggs, Stewart
4    and Reiman stipulate that Plaintiff/Petitioner Ms. Parvin Olfati is excused from filing her
     April 4, 2022 supplemental claim with County and may proceed on this part of her
5    underlying claim pursuant to Government Code Section 946.6. If you can, please so state
     in writing and I will prepare a stipulation to be filed and served in lieu of the Petition. If
6    you cannot, please also so state in writing.

7    Thank you for your prompt and considered attention to these matters.

8    Very truly yours,

9    /s/ Steven Mark Kamp, State Bar of California Number 116817
     Attorney for Plaintiff Ms. Parvin Olfati
10   CC: Ms. Parvin Olfati

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT
     CLAIM AGAINST GOVERNMENTAL ENTITY 10

EXHIBIT E

1

2

**Exhibit E: Defendants' Counsel May 11, 2022 Electronic Mail Message/Postal Mail Letter Rejecting Stipulation to Plaintiff's Petition To File Late Tort Claim Against Governmental Entity**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 11

# PORTER | SCOTT
### ATTORNEYS

May 11, 2022

**VIA EMAIL and U.S. MAIL**

Steven Mark Kamp
STEVEN KAMP LAW OFFICE
22 Petrilli Circle
Sacramento, C 95822
Tel: (916) 501-1791
Steve.kamp@comcast.net

**RE:** *Olfati v. County of Sacramento, et al.*
**Sacramento County Superior Court Case No. 34-2021-00310164**
**Date of Loss: 12/14/20**

Dear Mr. Kamp:

I am in receipt of your May 5, 2022, and May 9, 2022, letters regarding the upcoming CMC. We do not agree to filing a joint CMC statement. We will be filing our own, so we encourage Plaintiff do the same. If you would like to meet and confer further before the CMC, please feel free to reach out.

Regarding your petition to file a late government claim, we will be opposing that petition, along with your request to file an amended complaint.

Very truly yours,

PORTER SCOTT
A PROFESSIONAL CORPORATION

By

Jordan M. McCroskey

CLF/JMC/ere

EXHIBIT

1   **Exhibit F: Plaintiff's April 4, 2022 Supplemental CGCA Claim With County of**
2   **Sacramento:**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT
CLAIM AGAINST GOVERNMENTAL ENTITY 12

May file in person, or mail form to: Clerk, Board of Supervisors, 700 H Street, Rm. 2450, Sacramento, CA 95814
Please keep one (1) copy for your records - Print/Type Only

## CLAIM AGAINST THE COUNTY OF SACRAMENTO

CLAIM NUMBER (Dept. Use ONLY)

1. Claimant's Name _OLFATI M. PARVIN_
   Last            First       M.I.

2. Date of Birth _08/23/1952_

3. Claimant's Address _1859 45TH STREET SACRAMENTO CA 95819_
   Street (or P.O. Box)    City    State    Zip Code

4. Address Where Correspondence Should Be Sent (if different from above)
   Name: _____

   Street (or P.O. Box) _____ City _____ State _____ Zip Code _____

5. Phone Number _916 949 4298_
   Home        Work        Other

6. E-mail address _steve.kump @comcus\.net_

7. Amount of Claim $ _See attached_

8. Itemized List of Claimed Expenses / Damages (should equal Line 7)

   ITEM _See all_

   | | DOLLAR AMOUNT |
   |---|---|
   | | $ |
   | | $ |
   | | $ |

   (Please attach any estimates* and/or receipts to your claim)
   *1 estimate if repairs are less than $1,000
   *2 estimates if repairs are more than $1,000
   **TOTAL CLAIM** $ _See 7 North_

Board of Supervisors Stamp

2022 APR -4 AH II: (Do Not Write In This Space)

9. Date of Accident / Incident / Loss: _DEC. 2020 continued not received until 2022 JANUARY_

10. Location of Accident / Incident / Loss: _1859 47TH ST, SACRAMENTO 95828_

11. Provide your description of how the Accident / Incident / Loss Occurred: _____
    _See Attach_

12. Describe Damage / Injury / Losses being claimed (including prospective Damage / Injury / Losses to the extent it is known at the time of claim filing) _See Attach_

13. Name(s) of Public Employee(s) Involved: _SHERIFFS SERGEANT RON BRIGGS PAMELA PISANI, JENNIFER STEWART, JENNIFER REIMAN_

14. Are you receiving Medicare, or will you be receiving Medicare in the next 3 years? ☒ YES or ☐ NO
    Below No=63

Section 72 of the Penal Code states: "Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, city, or district board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is punishable either by imprisonment in the county jail for a period of not more than one year, by a fine of not exceeding one thousand dollars ($1,000), or by both such imprisonment and fine, or by imprisonment in the state prison, or by a fine not exceeding ten thousand dollars ($10,000), or by both such imprisonment and fine."

15. Signature of Claimant/Representative: _____ DATE _4/04/22_

[Print Form]

Revised: 1/17    **You must present your claim within the time prescribed by Govt. Code Section 911.2.**

## LOCATION DIAGRAM

**Indicate Directional Points on the Compass (N, S, E, W)**



1. **Identify streets**
2. **If vehicles are involved, indicate COUNTY VEHICLE as #1, and all others in numerical sequence.**



Risk Management Office, P.O. Box 276130, Sacramento, CA 95827   Telephone: (916) 876 - 5251  Fax: (916) 876 – 5156
www.saccounty.net

Rev. 1/17

1

**Ms. Parvin Olfati 1859 45ᵗʰ Street Sacramento, CA. 95819**

April 4, 2022

<u>Via personal delivery to:</u>
Claims, Clerk of the Board Office, Sacramento County Board of Supervisors, Suite 2450, 700 "H" Street, Sacramento, CA 95814

**RE: Update With Newly Discovered Information of Claim Number L2100524/Your File Number 87388-35 by Victim Ms. Parvin Olfati for Damages Caused by County Employees Ronald Briggs, Jennifer Stewart, Jennifer Reiman and Pamela Pisani on December 10-14 and 28 of 2020 Not Discovered by Claimant Until January 28, 2022 and March 8, 2022 From County of Sacramento Making Available Previously Undisclosed Records**

Dear Sir or Madam:

This letter and the attached form is the claimant's update with newly discovered previously unavailable information from County records, of the claimant's Claim Number L2100524, and "our file no." as 87388-35, which is a California Government Code 910 victim compensation claim for the damages the claimant ("claimant") suffered on December 14, 2020, when Ms. Pamela Pisani of the County Division of Behavioral Health Services ambushed me, trespassed my house, defamed me, invaded my privacy, and intentionally caused me to suffer severe emotional distress. It now appears from previously undisclosed and suppressed County information that claimant is the victim of additional related acts by Pisani, and acts by County Behavioral Health employees Jennifer Reiman and Jennifer Stewart, and County Sheriff Sergeant Ronald Briggs that were committed on the 2020 dates of December 10-14 and 28. **As discussed below, this information was not made available by the County until the *2022 dates of January 28 and March 8.***

The newly discovered information comes from two County sources: (1) the Jennifer Reiman Declaration and exhibits thereto in *Parvin Olfati v. County of Sacramento, et al.,* Sacramento County Superior Court Case Number 34-2021-00310164. This Declaration was filed and served by mail by County outside counsel on January 28, 2022, and received by Claimant's counsel on January 29, 2022; and (2) the County's Public Records Act (PRA) Request 22-740 hard copy response to the claimant's PRA request 22-491 delivered to the Clerk of the Board on January 31, 2022. Previous December 2020 and 2021 PRA requests to the County Sheriff and the County for information in both (1) and (2) both received responses from the County that no documents were available, and as for the County Sheriff, it did not respond.

The County records in (1) and (2) reveal the following newly discovered tortious acts against claimant by County employees:

(a)   On December 14, 2020, County Division of Behavioral Health Services employee Pamela Pisani sent an electronic mail message on a County computer during County working hours to County Division of Behavioral Health services employee Jennifer Reiman stating as follows: "[t]his person [Parvin Olfati] who has a restraining order against her by a [Sacramento] city councilmen [sic]." The Pisani e mail said Ms. Pisani's statement was based on a conversation she had with County Division of Behavioral Health Services employee Jennifer Stewart. An electronic mail message with nearly

1

2

identical content[1] was sent on December 28, 2020 by County Division of Behavior Health Services employee Jennifer Reiman to County Division of Behavioral Health Services employee Rolanda Adams.

In fact, there is no restraining order against the claimant by any member of the Sacramento City Council, as the City of Sacramento confirmed in its' response to the claimant's PRA request for precisely this and only this document. The County's response to the claimant's PRA Request 22-491 indicates that Ms. Reiman and Ms. Pisani made no attempt to check the accuracy of her statement about the claimant: "no documents."

These statements by County employees Pamela Pisani, Jennifer Stewart, and Jennifer Reiman constitute defamation. false light invasion of privacy, intentional infliction of emotional distress, and negligence, and were made with a combination of constitutional malice, common law malice, intent to place the claimant in a false light, and intent to vex, harass, and annoy the claimant. They were also made in retaliation for the claimant having filed a police report/crime report with the County Sheriff that is discussed below under (b).

(b)    On December 10, 2020, Sacramento County Sheriff's Department Sergeant Ronald Briggs communicated through County facilities to County Division of Behavioral Health Services employee Jennifer Stewart the following content: ". . . the attached letter with an inquiry as to how to get a mental health worker to check in with the letter writer because the complaint is unfounded so they cannot make a report but have valid concerns for her emotional well-being. . . the letter suggests CST [Community Support Team] contact might be more effective (identified belief law enforcement is stalking her and colluding against her)."

This content was communicated by County employee Jennifer Stewart to County Division of Behavioral Health Services employees Jennifer Reiman and Pamela Pisani, and resulted in the Pamela Pisani trespass, invasion of privacy, and other tortious acts regarding the claimant that occurred on December 14, 2020 and that are now the subject of the Sacramento County Superior Court action *Parvin Olfati v. County of Sacramento, et al.,* Sacramento County Superior Court Case Number 34-2021-00310164. The claimant in a December 23, 2020 Public Records Act (PRA) request to the County Sheriff requested a category of documents that covered these documents Claimant did not receive until the 2022 dates of January 29 and March 8 – but the County Sheriff *never responded to this PRA request.*

The "letter" referenced is the claimant's November 9, 2020 police report/crime report to the County Sheriff reporting the theft of Claimant's cellphone in the Fair Oaks area in unincorporated Sacramento County, which is in the Sheriff's Department jurisdiction. The above-quoted communication from County Sheriff's Sergeant Briggs demonstrates that the December 14, 2020 acts by County employee Pisani were part of a County-instigated retaliation against claimant for her exercise of United States Constitution First/Fourteenth Amendments and California Constitution Article I, Sections 2 and 3 rights of speech and petitioning in the filing of a police report/crime report with the County Sheriff reporting claimant's reasonable belief regarding the

---

[1] "This individual =[h]ad [sic] a restraining order against her by a city councilmen [sic]."

2

3

circumstances of the theft of her cellphone. The County in its' March 8, 2022 PRA 22-740 hard copy response to January 31, 2022 PRA Request 22-471 stated that it had "no documents" that constituted, mentioned, referred to, or related to "any investigation or activity related to any determination the November 9, 2020 Parvin Olfati Police Report/Crime Report was: (i) "unfounded"; (ii) a "complaint indicative of potential mental health distress"; or (iii) merited referring the police report/crime report author and her address to County Division of Behavioral Health Services, MCST, and/or POP. Thus, it reasonably appears to the claimant that in order to retaliate against claimant from sending a police report that County Sheriff Sergeant Ronald Briggs found to be "unfounded", and to chill, coerce, threaten, or intimidate claimant from making subsequent police reports/crime reports, the County between December 10 and 14 of 2020 sent Ms. Pisani on a December 14, 2020 mission to stigmatize claimant as a person whose police reports are the subject of "mental health distress" and to entrap claimant into accepting County Behavioral Services activity toward her that she did not need and did not want, including but not limited to a Welfare & Institutions Code Section 5150 72-hour hold.

Claimant also reasonably believes that the ambush was coordinated or directed not only by the above-named employees of the County Sheriff and the County Department of Health Services Division of Behavioral Health Services, it was also coordinated or assisted by Mr. Howard Schmidt, who until some day in January 2021 was the Chief of Staff to Third District County Supervisor Susan Peters.

Here are the answers to the questions on the attached filled-out questionnaire:


1. Claimant's Name: Ms. Parvin Olfati
2. Claimant's Date of Birth: August 23, 1952.
3. Claimant's Address: 1859 45th Street, Sacramento, CA 95819
4. Address Where Notices Are To Be Sent: 1859 45th Street, Sacramento, CA 95819
5. Claimant's Telephone Number: (916) 949-4298 (a cellphone)
6. Claimant's e mail address: Claimant does not use e mail, and requests that all communications be sent via postal mail to Ms. Parvin Olfati, 1859 45th Street, Sacramento, CA 95819
7. Amount of Claim: a second tripling of the amount of all salary and benefits paid to Ms. Pam Pisani; County Division of Behavioral Health Services employees Jennifer Reiman and Jennifer Stewart; County Sheriff employee Sergeant Ronald Briggs; and Mr. Howard Schmidt.

   For any and all tortious acts (trespass, defamation, invasion of privacy, and intentional infliction of emotional distress) complained of in this Claim. Since each of these County employees were conspirators, each of them are liable for their own acts as well as the acts committed by each of the other conspirators.

   With the newly discovered information described in this supplement, claimant's claims now include: (1) retaliation for claimant's exercise of United States Constitution First/Fourteenth and California Constitution Article I/Sections 2 and 3 rights of speech and petitioning, by County Sheriff employee Sergeant Ronald Briggs and County Behavioral Health Services employees Jennifer Stewart, Jennifer Reiman, and Pamela Pisani; (2) additional acts of defamation and false light invasion of privacy by

4

County employee Pamela Pisani; and (3) acts of defamation and false light invasion of privacy by County employees Jennifer Reiman and Jennifer Stewart.   The acts described in (1) above are actionable under both the California Tom Bane Civil Rights Act (Civil Code Section 52.1) and United States Code, Title 42, Section 1983. With respect to (1), they are acts of threats, intimidation, and coercion, and with respect to (2), they are acts committed under color of state law to retaliate against claimant for her exercise of First/Fourteenth Amendment rights of speech and petitioning.

8.  Itemized List of Damages: see item 7 above and items 11 and 12 below.
9.  Date(s) of Incident: December 10-14, and 28 of 2020
10. Location of Incident: 1859 45th Street, Sacramento, CA 95819
11. How did this incident occur?  See above.
12. Describe damage/injury/loss: See above
13. Names of County Employees Causing Damage/Injury/Loss: (a) Ms. Pam Pisani, LMFT Senior Mental Health Counselor, Community Support Team, Division of Behavioral Health Services, Department of Health Services, whose business card lists her work address as 3321 Power Inn Road, Suite 110; (b) Jennifer Stewart, Senior Mental Health Counselor, Community Support Team, Division of Behavioral Health Services, Department of Health Services; (c) Jennifer Reiman, Mental Health Program Coordinator with the Mobile Crisis Support Team of the Division of Behavioral Health Services, Department of Health Services; (d) Sergeant Ron Briggs of the Sacramento County Sheriff's Department; and (e)  then-employee Mr. Howard Schmidt of the Third District Supervisor Susan Peters office;

14. Claimant is receiving Medicare.
15. Signature of Claimant – see below


Sincerely, /s/ Ms. Parvin Olfati, Claimant



4

1    **<u>Exhibit G: County's April 9, 2022 Claim Rejection Letter</u>**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT
CLAIM AGAINST GOVERNMENTAL ENTITY 13



**GEORGE HILLS**

*Our minds over your matters.*

April 9, 2022

Parvin Olfati
1859 45th Street
Sacramento, CA 95819

### NOTICE OF REJECTION OF CLAIM

RE:       CLAIM NO:         L210054
          CLIENT:           COUNTY OF SACRAMENTO
          OUR FILE NO:      87388-35

Dear Mr. Olfati:

NOTICE IS HEREBY GIVEN that the claim which you presented to the County of Sacramento on **April 4, 2022** was rejected.

### WARNING

Subject to certain exceptions, you have only six (6) months from the date that this notice was personally delivered, or deposited in the mail, to file a court action on this claim. See Government Code §945.6.

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you shoul do so immediately.

### NOTICE OF UNTIMELY CLAIM

IN ADDITION, NOTICE IS HEREBY GIVEN that a portion of that same claim (any acts or events prior to **October 4, 2021** which you presented to the County of Sacramento on **April 4, 2022**) will not be accepted for consideration because it was not presented within six months of the date of accrual of the cause of action as required by law. Accordingly, that portion of the claim has not and will not be considered on its merits. See Government Code §911.2.

Nothing herein, nor any actions taken by this public entity, or any of its officers, employees or agents with regard to the above-referenced matter, should be construed as a relinquishment or waiver of any legal requirement or any right of defense such as timeliness, sufficiency, proper presentation or any other matter which may be available to the County of Sacramento or any of its officers, employees or agents.

Please also be advised that, pursuant to §128.7 and §1038 of the California Code of Civil Procedure, the County will seek to recove all costs of defense in the event an action was not brought in good faith and with reasonable cause.

Sincerely,
GEORGE HILLS COMPANY, INC.
Charles A. Torretta, SCLA, MCSA
Claims Administrator
Sacramento Office
Enclosure: Proof of Service

1    **Exhibit H: Sacramento County Superior Court April 21, 2022 Department 54 Minute**
**Order In *Oscar-Martin Salazar-Vargas v. County of Sacramento*, Case No. 2022-00315892-**
2    **CU-PT**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT
CLAIM AGAINST GOVERNMENTAL ENTITY 14

**NOTICE:**

Consistent with Local Rule 1.06(B), any party requesting oral argument on any matter on this calendar must comply with the following procedure:

To request limited oral argument, on any matter on this calendar, you must call the Law and Motion Oral Argument Request Line at (916) 874-2615 by 4:00 p.m. the Court day before the hearing and advise opposing counsel. At the time of requesting oral argument, the requesting party shall leave a voice mail message: a) identifying themselves as the party requesting oral argument; b) indicating the specific matter/motion for which they are requesting oral argument; and c) confirming that it has notified the opposing party of its intention to appear and that opposing party may appear via Zoom using the Zoom link and Meeting ID indicated below. If no request for oral argument is made, the tentative ruling becomes the final order of the Court.

Unless ordered to appear in person by the Court, parties may appear remotely either telephonically or by video conference via the Zoom video/audio conference platform with notice to the Court and all other parties in accordance with Code of Civil Procedure 367.75. Although remote participation is not required, the Court will presume all parties are appearing remotely for non-evidentiary civil hearings. The Department 53/54 Zoom Link is https://saccourt-ca-gov.zoomgov.com/my/sscdept53.54 and the Zoom Meeting ID is 161 4650 6749. To appear on Zoom telephonically, call (833) 568-8864 and enter the Zoom Meeting ID referenced above. NO COURTCALL APPEARANCES WILL BE ACCEPTED.

Effective January 31, 2022, official court reporters will not be available in Departments 53 and 54, with exceptions listed in the Court's Policy Regarding Availability and Unavailability of Official Court Reporters. Additional information regarding this policy as well as the Court's No. 6A Policy for Official Court Reporter's Pro Tempore in Departments 53 and 54 can be found on the Court's website at https://www.saccourt.ca.gov/court-reporters/court-reporters.aspx.

Parties arranging for their own reporter must file a completed Stipulation and Appointment of Official Reporter Pro Tempore - form CV/E-206 (https://www.saccourt.ca.gov/forms/docs/cv-206.pdf) prior to the hearing.  Stipulations filed on or the day before the hearing must be emailed to the assigned Law and Motion department inbox at Dept53@saccourt.ca.gov or Dept54@saccourt.ca.gov.

**Department  54**
**Superior Court of California**
**813 Sixth Street, 2nd Floor**
**Raymond M Cadei, Judge**
**G. Toda, Clerk**
**J. Reilly/N. Alvi, Bailiff**

**Thursday, April 21, 2022, 9:00 AM**

Item   1      **2012-90012370-CU-OE**

**State of California, EDD vs. Douglas Keijuan**

Nature of Proceeding:   Notice of Hearing on Claim of Exemption

Filed By:   Figueroa, M.

The Claim of Exemption is GRANTED in that the sheriff is directed to withhold $573 per pay period, up to $1,146 per month and to return to the judgment debtor any funds it is holding greater than that amount forthwith. The employer may send one payment of $573 per month to avoid unnecessary administrative expenses. CCP § 706.025.

---

Item   2      **2017-00212288-CU-BC**

**Baljinder Singh vs. Phanikumar Vadarevu & Sita Vadarevu**

Nature of Proceeding:   Motion for Summary Judgment and/or Adjudication

Opposition, 12:19-24.) The Court shares Respondents' concerns that adjudicating these petitions separately may result in the duplication of judicial resources and possible inconsistent rulings, and thus perceives that consolidation may be warranted here. However, the parties have not brought a motion to consolidate before the Presiding Judge. Therefore, the petition to confirm arbitration award and cross-petition to vacate arbitration award is continued to 06/22/2022 and the Court strongly urges the parties to file a motion to consolidate the actions before the Presiding Judge.

---

Item   22   **2022-00315892-CU-PT**

**Oscar Martin Salazar-Vargas vs. County of Sacramento**

Nature of Proceeding:   Petition for Permission to File Late Tort Claim Against Governmental

Filed By:   Sedaghat, Lillian

Petitioner Oscar Martin Salazar-Vargas' ("Petitioner") petition for relief from the provisions of Gov't Code §§ 945.4 and 945.6 is ruled upon as follows.

On July 28, 2021, Petitioner was involved in a car accident with an employee of Respondent, County of Sacramento ("County"). Pursuant to CCP §911.2(a), Petitioner was required to file his tort claim by January 28, 2021. Petitioner failed to timely file his claim, and now seeks relief due to Petitioner's counsel's mistake, inadvertence and/or excusable neglect.

"In deciding whether counsel's error is excusable, this court looks to: (1) the nature of the mistake or neglect; and (2) whether counsel was otherwise diligent in investigating and pursuing the claim." (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276 [excusable neglect where attorney timely filed a tort claim, but with the wrong public entity].) To determine whether the mistake or neglect was excusable, "the court inquires whether 'a reasonably prudent person under the same or similar circumstances' might have made the same error." (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276; *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1423; see *Solv-All v. Superior Court* (2005) 131 Cal.App.4th 1003, 1007.)

**Legal Standard**

Personal injury claims must be presented to the public entity no later than six months after accrual of the cause of action. (Gov't, Code § 911.2(a).) Government Code § 946.6 provides that where "an application for leave to present a claim is denied or deemed denied pursuant to Section 911.6, a petition may be made to the court for an order relieving the petitioner from Section 945.4." (Gov't Code § 946.6(a).)

The petitioner must demonstrate by a preponderance of the evidence both that (1) the application to the public entity to present a late claim was filed within a reasonable time (not to exceed one year) after the accrual of the cause of action and (2) the failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect

unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner from the requirements of Section 945.4. (Gov. Code §946.6; *Dept. of Water v. Superior Court* (2000) 82 Cal.App.4th 1288, 1293.)

"The mere recital of mistake, inadvertence, surprise or excusable neglect is not sufficient to warrant relief. Relief on grounds of mistake, inadvertence, surprise or excusable neglect is available only on a showing that the claimant's failure to timely present a claim was reasonable when tested by the objective 'reasonably prudent person' standard. The definition of excusable neglect is defined as 'neglect that might have been the act or omission of a reasonably prudent person under the same or similar circumstances.'" (*Ebersol v. Cowan* (1983) 35 Cal.3d 427, 435.)

The party seeking relief based on a claim of mistake must establish he was diligent in investigating and pursuing the claim. (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276.)

## Analysis

Petitioner's counsel submits her declaration in support of the motion. Petitioner's counsel, Lillian Sedaghat ("Sedaghat") explains that on September 14, 2021, she prepared and mailed one claim to the County ("Claim"). (Declaration of Lillian Sedaghat ("Sedaghat Decl."), ¶ 5.) Within the first week following January 28, 2021, Sedaghat reviewed Petitioner's file and discovered that no response to the Claim had been received. (*Id.*, ¶ 7.) Sedaghat and her office immediately contacted the County and learned that the County never received the Claim. (*Id.*) Sedaghat mistakenly believed that the claim was received by County when she prepared and mailed the claim via certified mail on September 14, 2021. (*Id.*, ¶ 8.) On February 4, 2022, seven days after the expiration of Petitioner's six-month, Petitioner presented his Claim as well as an Application for Permission to Present a Late Claim. (*Id.*, ¶ 9.) The County denied the Claim and Application. (*Id.*, ¶ 10.)

The County opposes the motion, rejoining that Petitioner fails to show by a preponderance of evidence that the failure to comply was due to excusable neglect. The County disputes that the claim was ever mailed. The County's counsel proffers evidence that he accessed the USPS website and searched the two USPS tracking numbers located on the certified mail form attached to the September 14, 2021 letter. (Declaration of Van Longyear ("Longyear Decl."), ¶¶ 3, 7; Sedaghat Decl., Ex 1.) The search produced the following results:

"Status Not Available. The tracking number may be incorrect or the status update is not yet available. Please verify your tracking number and try again later."

"USPS doesn't yet have a status update on this item shipped from the Post Office.
Information is usually updated within the hour of your visit. Please check back soon."

(*Id.*, Exs. A-B.)

The County questions how counsel obtained an image of the September 14, 2021 envelope with the certified mail post card attached to the back (Sedaghat Decl., Ex 1), and what efforts Petitioner's counsel took to check the status of the delivery. The County suggests that the failure to receive the returned postcard within a reasonable time - two/three weeks - should have alerted counsel that the Claim had either never been mailed or somehow lost before it was scanned by USPS, and that if counsel had checked the USPS website, she would have known that the Claim had not been delivered. The County lastly states that if the Court finds mistake, inadvertence, surprise or excusable neglect, it agrees that once Sedaghat learned the claim had not been received, Sedaghat acted diligently to comply with the Government Code.

In reply, Petitioner indicates (without any supporting declaration), that Sedaghat has the custom and practice of making copies of the front and back of all envelopes that are mailed via certified mail from her office. Petitioner further argues that it was reasonable to expect a mailing to be delivered by USPS when mailed from her office with the correct address and sufficient postage, and that it was Sedaghat's mistake, inadvertence or excusable neglect to track and verify that the claim was actually delivered or confirming that the postcard was not delivered back to counsel.

Although Sedaghat did not include a reply declaration averring to her firm's custom and practice, the Court will accept Petitioner's representation that Sedaghat makes copies of the front and back of all envelopes. The Court finds that Petitioner has satisfied his burden to show mistake, inadvertence, surprise or excusable neglect, and that Petitioner was diligent in investigating and pursuing the claim.

Accordingly, Petitioner's motion is GRANTED. Petitioner is hereby excused from filing a claim with respondent and Petitioner may pursuant to Government Code §946.6 file suit on the underlying claim.

The minute order is effective immediately.  No formal order pursuant to CRC Rule 3.1312 or further notice is required.

Moving counsel's notice of motion does not provide notice of the Court's tentative ruling system, as required by Local Rule 1.06. Moving counsel is directed to contact the County's counsel and advise counsel of Local Rule 1.06 and the Court's tentative ruling procedure and the manner to request a hearing.

---

Item   23   **2019-00249964-CL-PA**

**Safeway Insurance Co. vs. Timothy Allen McCarter Jr.**

Nature of Proceeding:   Motion to Strike Answer for Failure to Comply with Court Order

Filed By:   Smith, Jay W.

Plaintiff's motion to strike pro per Defendant Timothy Allen McCarter Jr.'s ("Defendant") Answer is UNOPPOSED and is GRANTED as follows.

On June 16, 2021, this Court granted Plaintiff's motion to compel responses to form interrogatories. Defendant was ordered to serve verified responses to the form interrogatories no later than July 2, 2021. (ROA 17.) Defendant failed to provide responses. As a result of Defendant's failure to obey this Court's order, Plaintiff moved

1    **DECLARATION OF SERVICE IN PERSON**

2    I, STEVEN M. KAMP, declare and state as follows:

3    1.    I am over the age of 18, and reside in the County of Sacramento, State of California.

4    2.    I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

5    3.    On May 17, 2022, I caused to be served by hand delivery on counsel for the Defendants in
     this action a true and correct copy of:

6
     **DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF'S**
7    **PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST**
     **GOVERNMENTAL ENTITY**
8

9

10
     4. Service was affected in person on May 17, 2022 by:
11
          Personally delivering a true and correct copy of the above-referenced document to Porter
12        Scott, 350 University Avenue, Suite 200, Sacramento, California 95825 in a manila envelope
13        addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200,
          Sacramento, CA 95825;
14

15   I declare under penalty of perjury that the foregoing statements are based on personal knowledge,
     and are true and correct. Executed at Sacramento, California, this _17th_ day of May, 2022.
16
     /s/ STEVEN MARK KAMP (California State Bar Number 116817)
17   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
18   Electronic Mail Address: steve.kamp@comcast.net
     Telephone: (916) 501-1791 (cellular, voice/text)
19   Attorney for Plaintiff/PRA Petitioner/GC 946.6 Petitioner  Ms. Parvin Olfati

20

21

22

23

24

25

26

27

28

     DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT
     CLAIM AGAINST GOVERNMENTAL ENTITY 15

**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
cfessenden@porterscott.com
Jordan M. McCroskey, SBN 340068
jmccroskey@porterscott.com
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706



By: _____ H. PEMELTON
Deputy Clerk

Attorneys for Defendants
COUNTY OF SACRAMENTO and PAMELA PISANI
*Exempt from Filing Fees Pursuant to Government Code § 6103*

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

| | |
|---|---|
| MS. PARVIN OLFATI, | CASE NO. 34-2021-00310164 |
| Plaintiffs, | **OPPOSITION TO PLAINTIFF'S PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY** |
| v. | |
| COUNTY OF SACRAMENTO; PAMELA PASANI; JANE ROE DEFENDANT ONE; JANE ROE DEFENDANT TWO; JANE ROE DEFENDANT 3-100, JOHN DOE DEFENDANTS 1-100, | **Date: June 9, 2022**<br>**Time: 9:00 a.m.**<br>**Department: 54**<br>**Reservation No.: 2640543**<br>**Complaint Filed: 10/25/21** |
| Defendants. | |

Defendants COUNTY OF SACRAMENTO and PAMELA PISANI (collectively "Defendants"), hereby submit the following opposition to Plaintiff PARVIN OLFATI's ("Plaintiff") petition for permission to file late tort claim against governmental entity.

///

///

{02711642.DOCX}                                           1
**OPPOSITION TO PLAINTIFF'S PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY**

## I.     INTRODUCTION

Plaintiff seeks to add additional causes of action and additional parties without satisfying the mandatory prelitigation requirements within the claim filing requirements pursuant to Government Code section 945.6. Plaintiff seeks to add Jennifer Reiman, Jennifer Stewart, and Sergeant Roland Briggs but failed to bring these parties and causes of action within the necessary timeframe articulated in the Government Code section 945.6-six months from accrual. Additionally, the plaintiff fails to make a sufficient showing pursuant to Government Code section 946.4.

The plaintiff's cause of action allegedly accrued on December 14, 2020.

## II.     STATEMENT OF FACTS

Plaintiff filed her original government claim on April 5, 2021. (Declaration of Jordan McCroskey (Decl. McCroskey), Exhibit A, Plaintiff's Government Claim.) Plaintiff filed her Complaint on October 25, 2021. (Plaintiff's Original Complaint, ROA # 1.) No application to file a late claim was submitted on the newly alleged conduct on behalf of the newly alleged defendants. The plaintiff filed a new claim based on similar conduct, in December 2020, naming new defendants and conduct on April 4. 2022. Plaintiff attempts to file a first amended complaint to incorporate these new allegations and these new defendants. (Petition for late claim, ROA # 36.) These allegations are brought 477 days late.

Plaintiff's petition must fail. Defendants oppose this petition on the grounds that: (1) Plaintiff did not bring their claim within a reasonable amount of time; and (2) Plaintiff's arguments are not sufficient to warrant excusable neglect.

## III.     ARGUMENT

The Government Claims Act provides that no suit for money or damages may be maintained against a public entity unless a timely written claim has first been presented to it. (Gov. Code, § 945.6.) However, under Government Code section 946.6 it states the applicable circumstances when that requirement does not have to be met. Government Code section 946.6 states in relevant part:

> (c) The court shall relieve the petitioner from the requirements of Section 945.4 if the court finds that the application to the board under Section 911.4 **was made within a reasonable time** not to exceed that specified in subdivision (b) of Section 911.4 and was denied or deemed denied pursuant to Section 911.6 and that **one or more of the**

{02711642.DOCX}                    2

**OPPOSITION TO PLAINTIFF'S PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY**

**following is applicable:**

> (1) The failure to present the claim was through mistake, inadvertence, **surprise, or excusable neglect** unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner from the requirements of Section 945.4.

(Gov. Code, § 946.6 [emphasis added].)

Further, 911.4 states:

> (a) When a claim that is required by Section 911.2 to be presented not later than six months after the accrual of the cause of action is not presented within that time, a written application may be made to the public entity for leave to present that claim.

> (b) The application shall be presented to **the public entity as provided in Article 2 (commencing with Section 915) within a reasonable time not to exceed one year after the accrual of the cause of action** and shall state the reason for the delay in presenting the claim. The proposed claim shall be attached to the application.

(Gov. Code, § 911.4 [emphasis added].)

## A.   PETITIONER'S PETITION MUST BE DENITED BECAUSE IS BARRED BECAUSE IT WAS NOT BROUGHT WITHIN ONE YEAR OF ACCRUAL OF THE ACTION

Plaintiff's petition must be denied because the one-year statute of limitations bars any claim brought outside this claim filing requirement. (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1779.) A claim relating to a cause of action for personal injury or injury to personal property must be presented within six months after the accrual of the cause of action and must not be brought after one year. (§§ 911.2, subd. (a) and 911.4.)  For purposes of the claim presentation requirement, the date of accrual is the same date on which the cause of action would accrue within the meaning of the applicable statute of limitations in an action against a nonpublic entity. (Govt. Code § 901; see also *K.J. v. Arcadia Unified School Dist.* (2009) 172 Cal.App.4th 1229, 1239.) "Timely claim presentation is not merely a procedural requirement but is a condition precedent to the claimant's ability to maintain an action against

{02711642.DOCX}                                    3

1  the public entity.  (*California Restaurant Management Systems v. City of San Diego* (2011) 195
2  Cal.App.4th 1581, 1591.)

3      Here, the plaintiff attempts to add new causes of action against several new defendants for
4  conduct that occurred more than 477 days before the claim was submitted. Because this claim was
5  submitted more than a year, the plaintiff is barred from adding the new allegations against new
6  defendants. And therefore, the plaintiff's petition to file a complaint notwithstanding the claim filing
7  requirements must be denied.

8      **B.    PETITIONERS' PETITION SHOULD BE DENIED BECAUSE THEIR CLAIM
             WAS NOT BROUGHT WITHIN A REASONABLE AMOUNT OF TIME**
9

10      To warrant relief from the statutory tort claim filing requirements, there must be more than the
11  mere failure to discover a fact; the party seeking relief must establish the failure to discover the fact in
12  the exercise of reasonable diligence. (*Department of Water & Power v. Superior Court* (2000) 82
13  Cal.App.4th 1288, 1293.) The court in *Department of Water & Power* held that the plaintiff was not
14  sufficiently diligent when he "filed a late claim in which he merely alleged he was unaware of the
15  potential liability of the [defendant] until informed of the matter by 'a third-party insurance carrier.'"
16- (*Ibid.*) In this case, similar to *Department of Water & Power*, Plaintiff is claiming she was not alerted of
17  the potential liability of Respondent until she discover subsequent information through discovery. . This
18  is not enough to justify relief.

19      Petitioners were certainly aware that the potential defendant was a public entity.  "A claimant is
20  required to show that within the statutory time period he "'did not know or have reason to know'" that a
21  government entity is involved." (*Id.* At 1294.) That standard cannot be met here. Further that,
22  "[e]xcusable neglect is that neglect which might have been the act of a reasonably prudent person under
23  the circumstances." (*Id.* At 1296.) In *Department of Water & Power*, the court reasoned because the
24  claimant had readily available access to information which would have enabled him to file claim, that
25  failure to do so was not excusable. (*Ibid.*)

26      Certainly, the plaintiff had adequate information to bring these additional claims against the
27  responding party. And further, she fails to sufficiently demonstrate adequate justification why these
28  defendants and accompanying causes of action were not discovered sooner.

**OPPOSITION TO PLAINTIFF'S PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST
GOVERNMENTAL ENTITY**

## C.   PETITIONERS' PETITION SHOULD BE DENIED BECAUSE THEIR ARGUMENTS ARE NOT SUFFICIENT TO WARRANT EXCUSABLE NEGLECT

When relief is sought on grounds of "excusable neglect," there must be specific reasons why the claim was not discovered and filed within the claims-filing period. *(Rodriguez v. County of Los Angeles* (1985) 171 Cal.App.3d 171, 174 [reviewing a claim that failed to meet the then existing 100 day requirement.) As one court explained:

> [I]t has been explained that "'[t]he mere recital of mistake, inadvertence, surprise or excusable neglect is not sufficient to warrant relief. Relief on grounds of mistake, inadvertence, surprise or excusable neglect is available only on a showing that the claimant's failure to timely present a claim was reasonable when tested by the objective 'reasonably prudent person' standard. The definition of excusable neglect is defined as 'neglect that might have been the act or omission of a reasonably prudent person under the same or similar circumstances.' " *(Department of Water & Power v. Superior Court* (2000) 82 Cal.App.4th 1288, 1293, 99 Cal.Rptr.2d 173.)

*(Lincoln Unified School Dist v. Superior Court* (2020) 45 Cal.app.5th 1079, 1093.)

"In most cases, 'a petitioner may not successfully argue excusable neglect when he or she fails to take any action in pursuit of the claim within the six-month period,' including making an attempt to retain counsel. [Citation omitted.]" *(N.G. v. County of San Diego* (Cal. Ct. App., Dec. 28, 2020, No. D076539) 2020 WL 7692285, at 6 [holding, no excusable neglect despite evidence of trauma]; see *Harrison v. County of Del Norte* (1985) 168 Cal.App.3d 1, 5.)

In *Rodriguez*, that court held the **discovery** of negligence after the claims period was not sufficient to be deemed excusable neglect. *(Rodriguez, supra,* 171 Cal.App.3d at 174 [emphasis added].) The court reasoned that the discovery of negligence ten months after the death of their child, absent evidence as to why it was not discovered sooner, was not sufficient to overcome the claims requirement. *(Ibid.)* In that case, Plaintiffs argued it wasn't until they retained counsel that they discovered the negligence.

Here, similar to *Rodriguez* Petitioners are claiming that they were not alerted to any liability until after the claims period passed. Petitioners fail to state why not under the facts, a reasonable person

{02711642.DOCX}

**OPPOSITION TO PLAINTIFF'S PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY**

1  would have presented a claim prior to 477 days past the required statute of limitations. The plaintiff's
2  request for relief should be denied because she has not shown sufficient facts to indicate excusable
3  neglect.

4       Prejudice to the County is not relevant because Petitioners fail to meet their burden to show
5  excusable neglect. "The public entity has no burden of establishing prejudice arising from the failure to
6  file a timely claim until after the party seeking relief has made prima facie showing of entitlement to
7  relief." (*Department of Water & Power, supra*, 82 Cal.App.4th at 1297.) It is the claimant's burden to
8  make the prima facie showing for excusable neglect. (*Rodriguez, supra*, 171 Cal.App.3d at 175.)
9  Petitioners' have not met their burden to show excusable neglect and thus the County does not have to
10  show prejudice. Petitioners' request should be denied because they unreasonably failed to file a timely
11  claim and have not shown excusable neglect.

12                    **IV.   CONCLUSION**

13       The new claims against the new defendants were not brought within one year of accrual as
14  required by the Government Code section 911.4 and thus this petition must be denied. Further, the
15  plaintiff failed to make a reasonable investigation and thus should not be granted relief pursuant to
16  Government Code section 946.6 because the claim was not brought within a reasonable time, and the
17  plaintiff has not met the bar to show excusable neglect.

19  Dated: May 26, 2022              PORTER SCOTT
20                                   A PROFESSIONAL CORPORATION

22                                   By _____
23                                        Carl L. Fessenden
                                          Jordan M. McCroskey
24                                        Attorneys for Defendants

{02711642.DOCX}                    6

**OPPOSITION TO PLAINTIFF'S PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST
GOVERNMENTAL ENTITY**

1

*Olfati v. County of Sacramento et al.*
**Sacramento County Superior Court – Case No. 34-2021-00310164**

2

### DECLARATION OF SERVICE

3

    I am a resident of the United States and of the County, of Sacramento, California. I am over the

4

age of eighteen years and not a party to the within above-entitled action. My business address is 350
University Avenue, Suite 200, Sacramento, California.

5

    I am familiar with this Company's practice whereby the mail, after being placed in a designated

6

area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento,
California, after the close of the day's business.

7

    That on the date below, I served the following: **OPPOSITION TO PLAINTIFF'S PETITION**

**FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY** on all

8

parties in the said action as addressed below by causing a true copy thereof to be served:

9

| | |
|---|---|
| | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
| **X** | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

10
11
12
13
14
15
16·
17
18
19
20

21

*Attorney for Plaintiff*
Steven Mark Kamp

22

STEVEN KAMP LAW OFFICE

23

22 Petrilli Circle
Sacramento, C 95822

24

Steve.kamp@comcast.net

    I declare under the penalty of perjury that the foregoing is true and correct. Executed at

25

Sacramento, California, on  May 26, 2022.

26

*Estefanie Reyes* (signature)

27

28

_____

Estefanie Reyes

{02711642.DOCX}              7

**OPPOSITION TO PLAINTIFF'S PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST
GOVERNMENTAL ENTITY**

# EXHIBIT A

May file in person, or mail form to: Clerk, Board of Supervisors, 700 H Street, Rm. 2450, Sacramento, CA 95814
Please keep one (1) copy for your records - Print/Type Only

**L2100524**
CLAIM NUMBER (Dept. Use ONLY)

**CLAIM AGAINST THE COUNTY OF SACRAMENTO**

1. Claimant's Name _OLFATI_ _MARVIN_ 2. Date of Birth _08/23/1959_
Last        First        M.I.

3. Claimant's Address _9859 45th St., SACRAMENTO CA 95819_
Street (or P.O. Box)        City        State        Zip Code

4. Address Where Correspondence Should Be Sent (if different from above)
Name: _Same as above_

Street (or P.O. Box)        City        State        Zip Code
5. Phone Number _916-949-4298_
Home        Work        Other

6. E-mail address _See g Nachel_

7. Amount of Claim $ _See a Nachel_

Board of Supervisors Stamp

8. Itemized List of Claimed Expenses / Damages (should equal Line 7)
ITEM _See g Null_        DOLLAR AMOUNT $ _See 4/Null_
$
$

(Please attach any estimates* and/or receipts to your claim)
*1 estimate if repairs are less than $1,000        **TOTAL CLAIM** $
*2 estimates if repairs are more than $1,000        Do Not Write In This Space

9. Date of Accident / Incident / Loss: _DECEMBER 14 2020_

10. Location of Accident / Incident / Loss: _1859 45th Street Sacramento_

11. Provide your description of how the Accident / Incident / Loss Occurred: _See g Nachel_

12. Describe Damage / Injury / Losses being claimed (including prospective Damage / Injury / Losses to the extent it is known at the time of claim filing)
_See g Nachel House & attempted To use County Sheriff against me._

13. Name(s) of Public Employee(s) involved: _See g Nachel_

14. Are you receiving Medicare, or will you be receiving Medicare in the next 3 years? ☐ YES or ☑ NO

Section 72 of the Penal Code states: "Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, city, or district board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is punishable either by imprisonment in the county jail for a period of not more than one year, by a fine of not exceeding one thousand dollars ($1,000), or by both such imprisonment and fine, or by imprisonment in the state prison, or by a fine not exceeding ten thousand dollars ($10,000), or by both such imprisonment and fine."

15. Signature of Claimant/Representative: _____ DATE _April 5 2021_

Print Form

Revised: 1/17        You must present your claim within the time prescribed by Govt. Code Section 911.2.

1

Ms. Parvin Olfati 1859 45th Street Sacramento, CA. 95819

Via ~~Certification Return Receipt Requested To:~~ *PERSONAL DELIVERY)* April 5, 2021
Claims, Clerk of the Board Office, Sacramento County Board of Supervisors, Suite 2450, 700 "H" Street, Sacramento, CA 95814

**RE: Claim by Victim Ms. Parvin Olfati for Damages Caused by Senior Mental Health Counselor LMFT Pamela Pisani Ambush, Trespass, Defamation, Invasion of Privacy and Intentional Infliction of Emotional Distress on December 14, 2020**

Dear Sir or Madam:

This letter and the attached form is a California Government Code 910 victim compensation claim for the damages the undersigned ("claimant" or "I") suffered on December 14, 2020, and beyond. On December 14, 2020, at about 4:36 p.m., Ms. Pamela Pisani of the County Division of Behavioral Health Services ambushed me, (trespassed on my porch) defamed me, invaded my privacy, frightened me, and intentionally inflicted emotional distress on me.

These damages were proximately caused by an unannounced and unwanted ambush of me by County Department of Health Services Division of Behavioral Health Services "Senior Mental Health Counselor" Ms. Pam Pisani or Ms. Pamela Pisani, whose business card lists her as an "LMFT" (which appears to mean "Licensed Marriage and Family Therapist" ) and as a member of a so-called Community Support Team for the County Division of Behavioral Health Services. This ambush occurred on December 14, 2020 at about 4:36 p.m.

In addition, I know that one or more employees of the County Sheriff were involved in this ambush. I also reasonably believe that the ambush was coordinated or directed by: (1) one or more employees of the County Department of Health Services Division of Behavioral Health Services; and (2) Mr. Howard Schmidt, who until some day in January 2021 was the Chief of Staff to Third District County Supervisor Susan Peters.
Here are the answers to the questions on the attached filled-out questionnaire:

1. Claimant's Name: Ms. Parvin Olfati
2. Claimant's Date of Birth: August 23, 1952.
3. Claimant's Address: 1859 45th Street, Sacramento, CA 95819
4. Address Where Notices Are To Be Sent: 1859 45th Street, Sacramento, CA 95819
5. Claimant's Telephone Number: (916) 949-4298 (a cellphone)
6. Claimant's e mail address: Claimant does not use e mail, and requests that all communications be sent via postal mail to Ms. Parvin Olfati, 1859 45th Street, Sacramento, CA 95819
7. Amount of Claim: triple the amount of all salary and benefits paid to Ms. Pam Pisani; other County Division of Behavioral Health Services employees; County Sheriff employees; Mr. Howard Schmidt
   for any and all tortuous acts (trespass, defamation, invasion of privacy, and intentional infliction of emotional distress) complained of in this Claim. Since each of these County employees were conspirators, each of them are liable for their own acts as well as the acts committed by each of the other conspirators.
8. Itemized List of Damages: see item 7 above and items 11 and 12 below.
9. Date of Incident: December 14, 2020
10. Location of Incident: 1859 45th Street, Sacramento, CA 95819
11. How did this incident occur? See below.
12. Describe damage/injury/loss: See below

Names of County Employees Causing Damage/Injury/Loss: (a) Ms. Pam Pisani, LMFT Senior Mental Health Counselor, Community Support Team, Division of Behavioral Health Services, Department of Health Services. Ms. Pisani's business card gives her work address as 3321 Power Inn Road, Suite 110, Sacramento, CA 95826; her telephone numbers as (916) 804-1135 and a "main line" number of (916) 874-2166; and an e mail address of PisaniP@saccounty.net . It describers her as a "Senior Mental Health Counselor" with the "Community Support Team" of the County of Sacramento Department of Health Services Division of Behavioral Health Services. Ms. Pisani was driving a non-County vehicle with the California license plate number 7WID019.

2

(b) then-employee Mr. Howard Schmidt of the Supervisor Susan Peters office;

( c ) unknown County Sheriff employees working with Ms. Pisani or Mr. Schmidt.

(d) unknown County Department of Health Services employees employees working with Ms. Pisani, Mr. Schmidt, and/or the County Sheriff.

13. Claimant is receiving Medicare.

14. Signature of Claimant – see below

Dear Sir or Madam:

This is a victim compensation claim regarding the attempted ambush and entrapment of me by Senior Mental Health Counselor LMFT Ms. Pam or Pamela Pisani on December 14, 2020 at about 4:26 p.m. As discussed below, I reasonably believe that Ms. Pisani was carrying out this attempted ambush and entrapment of me at the direction of multiple other persons in the County Division of Behavioral Services, County Department of Health Services; the County Sheriff's Department (County Sheriff); and I reasonably believe a then-employee named Mr. Howard Schmidt, who until some date in January 2021 was the Chief of Staff to then-Supervisor Susan Peters. I will explain the involvement of Ms. Pisani, Mr. Schmidt, and the unknown County or County Sheriff employees below.

While ambushing me, Ms. Pisani trespassed my residence property (1859 45th Street, Sacramento, CA 95819) in violation of California Penal Code Section 602, rendering Ms. Pisani and her employer (the County) liable for trespass damages, because Ms. Pisani refused to leave the property after I ordered to her to leave. I have this trespass on videotape that I will be glad to share with you.

Ms. Pisani refused to leave 1859 45th Street after I told her to leave, meaning Ms. Pisani committed a trespass in violation of the City of Sacramento Code 9.16.140 B, which states as follows:

"1. It is unlawful for any person to enter or remain upon any private property or business premises after having been notified by the owner or agent to keep off or keep away therefrom. Such notification shall be provided by service of a notice of trespass on such person."

 2 "A violation of this section is a misdemeanor and shall be punishable by a fine not exceeding five hundred dollars ($500.00) or by imprisonment for a period not exceeding six months, or by both such fine and imprisonment."

In addition, Ms. Pisani during this ambush, to my face invaded my privacy; defamed me; placed me in a false light; and intentionally inflicted emotional distress upon me, through intentionally inducing I n me a reasonable fear of further tortuous acts, criminal acts, and conspiracy against me by the County of Sacramento. Ms. Pisani committed all of these tortuous acts when:

1. Ms. Pisani began the ambush by knocking on my door unannounced and without prior permission from me.
2. Ms. Pisani demanded that I speak to her based on her claimed possession of "information" about me that "raised concerns."
3. Ms. Pisani gave two "sources" for this information: first she said "I don't know" and then she said "I think it was from the County Sheriff." Ms. Pisani also referred to her "resources", and I reasonably believe she was referring to some "County Mental Health Unit" or "Community Support Team"
4. Ms. Pisani demanded that I use "resources" from her "community", without explaining why I needed "resources" or what her "community" was.

Moreover, when I opened my front door for her unannounced visit, Ms. Pisani asked for "Parvin Olfati" and gave me her business card. I told Ms. Pisani to wait so I could get my cellphone camera. When I came back and opened the door, Ms. Pisani went into a scripted rant that I will detail below.

Two important things to note at the beginning: (1) when I came back to the door and opened it, Ms. Pisani did not verify if I was Parvin Olfati; and (2) in her scripted rant, Ms. Pisani never once mentioned that she was a County employee even though the business card that she gave me said "County of Sacramento."

Fortunately I was able to videotape all of Ms. Pisani's rant with my cellphone, and I will be more than pleased to share this video with the County – it captures Ms. Pisani's violation of my rights. In addition, it provides comic relief – the video shows Ms. Pam Pisani falling apart. Every time I asked Ms. Pisani a question, she tried to stick to her programmed rant, but fell apart yet again when I asked her to explain what she had just said. Toward the end of her disrupted (and disruptive) scripted rant, Ms. Pisani identified her "department" as "Behavioral Health Services".

As seen near the end of the video, I told Ms. Pisani that my problem with her "behavior" was that Ms. Pisani knocked on my door without relying upon "anonymous BS" (a phrase I am proud to say that I used to Ms. Pisani's face) that Pisani admitted she could not describe or explain – so I told Ms. Pisani, "your behavior is suspect", and I ordered her off the property of 1859 45th Street, which is my house and the area within the house curtilage. Ms. Pisani refused to leave and insisted upon stalking me as I walked out of my house, through the front yard, and on to my driveway. Ms. Pisani eventually left, but only after I was forced to tell her multiple

3

times to leave; was forced to listen to her ranting and raving; and being forced to do so in public in front of the 45th Street neighbors (for whose entertainment and benefit I reasonably believe Ms. Pisani staged this ambush).

Here Ms. Pisani was trespassing, and the County must pay me trespass damages the damages I suffered from Ms. Pisani refusing to leave when I told her to leave.

The County must also pay me for the damage I suffered from Ms. Pisani defaming me, since the Ms. Pisani ranting and raving was loud enough to be heard by other persons, and the spectacle that Ms. Pisani created (I believe intentionally) was in full view of 45th Street criminal busybodies including but not limited to Mr. Steven Maviglio (1901) and Ms. Barbara Andres (1870), This ambush and attempted of entrapment by Ms. Pisani was also captured not only by me, but also on multiple video cameras, hidden and other types placed by multiple residents of 45th Street at one or more addresses (including 1856, the house of June Lamoureaux and Bill Kellerhals), and/or was captured by multiple law enforcement and/or intelligence agencies. The 45th Street residents other than Lamoureaux/Kellerhal;s who could have captured the video of the Pisani ambush include: Barbara Andres and Cecil Taylor at 1870 45th Street; Camille Remy Obad, the owner of 1871 45th Street, and many others.

Turning to Mr. Howard Schmidt: before, around, and after December 14, 2020, Mr. Howard Schmidt was (and still is) a regular visitor to the 1870 45th Street house of Barbara Andres (who perjured herself against me in Mr. Steven Maviglio's fraudulent restraining order case against me, and who was also responsible in part for causing the May 09, 2020 Sacramento Police attempted kidnapping of me and actual subjecting of me to police brutality) and her husband Cecil Taylor. I reasonably believe that Mr. Schmidt, Ms. Pam Pisani, and other County and County Sheriff employees planned and executed this ambush of me not only to provide entertainment for Mr. Howard Schmidt, Ms. Barbara Andres, Mr. Cecil Taylor and/or Mr. Steven Maviglio, but also to attempt to entrap me in a staged incident that could be fabricated and published to place me in a false light. In fact, my having to publicly endure Ms. Pisani ambushing me, refusing to leave, stalking me, and yelling at me was in fact such as staged incident.

On May 9, 2020, a date that is a little more than seven months before the ambush by Ms. Pisani, I was the victim to another abuse of law enforcement and attempted kidnapping of me by the City of Sacramento Police Department. That morning, Mr. Steven Maviglio multiple times yelled at me: "seek counseling". When I told Mr. Maviglio that I would not talk to him, Mr. Maviglio and Ms. Andres (Mr. Maviglio's partner in perjury) retaliated by giving the City of Sacramento Police Department (City Police) false information claiming that I was involved in a "battery" or "altercation", so that the City Police could send City Police Officer Jared Robinet (one of the two City Police officers who fired the bullets that killed Stephon Clark) to get a hand-signal from Barbara Andres (who is frequently visited by Mr. and Mrs. Howard Schmidt) to come stalk me on my driveway and grab me from behind in my own living room – without a warrant. This attempted kidnapping by the City Police when the one charge filed against me (Penal Code Section 148(a)(1) "resisting arrest") was *dismissed by the Sacramento County District Attorney* for insufficient Evidence.

So, I reasonably believe that Ms. Andres, Mr. Maviglio, and Mr. Howard Schmidt came up with the plot, plan or scheme to use Mr. Schmidt's Third District Supervisor Chief of Staff authority to send Ms. Pisani to ambush and entrap me into other threatening and dangerous situations.

In addition to paying me for Ms. Pisani's trespass and Ms. Pisani's defamation, the County should also pay me for Ms. Pisani invading my privacy in two ways: (1) by placing me in a false light; and (2) by intruding into my seclusion – the afternoon of December 14, 2020, I secluded myself was trying to get a break from the all day abuse I had endured from Mr. Steven Maviglio and Ms. Barbara Andres, and I was enjoying the short break in the afternoon of December 14, 2020 until Ms. Pisani ambushed me, which turned out to be the high point (or low point) of a day of physical torture by being subjected to multiple chemical bio chemical and toxic gas, smoke, odors and harassment by Barbara Andres and Steven Maviglio *as a pretext to send Ms. Pisani to provoke and entrap me, at a time* when their torture had made me exhausted and physically affected by all day breathing of toxic air and inhaling chemical and toxic gas.

In addition, I should be compensated for the intentional infliction of emotional distress that I suffered and am still suffering from the extreme and outrageous act of the Ms. Pisani who abused her authority and job at the County of Sacramento Division of Behavioral Health Servivces to ambush and plot the ambush targeted at me, and in the process fabricate fraudulent defamatory documents against me. By doing this Ms. Pisanie contributed to the smear campaign that has been going on against me by a current longtime State Board of Equalization (BOE) employee/annuitant/consultant/political appointee named John Anthony Thiella and his friends including Steven Maviglio and now Howard Schmidt. Mr. Thiella is retaliating against me for daring to sue Mr. Thiella and BOE management. Finally, I should be compensated for the County Sheriff for the County Sheriff taking part in this smear campaign and defamation of me by fabricating and sending to Ms. Pisani false and defamatory information about me; communicating this fabricated falsehood to Mr. Pisani and the County Division of Behavioral Health Services; and revealing its' existence (but not its' contents) to me in order cause me severe emotional distress and fear. I have sent multiple Public Records Act (PRA) requests to both the County Clerk of the Board and the County Sheriff asking for the "information" communicated by the County Sheriff to Ms. Pisani or County Division of Behavioral Health Services or that was in possession of Ms. Pisani. The Clerk of the Board says there are no documents (Pisani or otherwise), and the County Sheriff refuses to respond to multiple PRA requests. When my friend attempted to deliver my grievance letter to Ms. Pisani in person at the Power Inn Road address on her business card, Ms. Pisani simultaneously told the security guard to

**4**

tell my friend two simultaneous contradictory misstatements: that Ms. Pisani "would not accept" my grievance letter, and "she's not here."

When she ambushed me on December 14, 2020, Ms. Pisani was intentionally inflicting emotional distress upon me by outrageous conduct beyond all bounds of decency and human rights in a civilized society. Her conduct was the severe case of human abuse against me in the democratic State of California.

The Pisani December 14, 2020 attempted ambush and entrapment of me was one of many attempted ambushes in an ongoing effort to entrap me into physical government custody.

The Full Story and Backstory of the Pisani Ambush

Here is the full story of the Pisani ambush of me, taken from the December 17, 2020 grievance that I filed with (and that was brushed off by) the County Department of Health Services Division of Behavioral Health Service that is displayed at the end of this Claim letter,

The attempt to entrap me into physical government custody is a plot, plan, or scheme by 45th Street (Sacramento, California 95819) residents including 1901 45th Street resident Steven Maviglio (who brags on his Forza Communications website that he is the "premier spin doctor in Sacramento"), who on May 09, 2020 just before he arranged the City Police brutality against me with the help of Mr. Howard Schmidt's friend Barbara Andres) yelled at me "seek counseling" -- but who needs counseling himself) and 1870 45th Street resident Barbara Andres, who is Mr. Maviglio's partner in perjury. Both Mr. Maviglio and Ms. Andres should either go to jail for perjury against me, or be placed under a Welfare & Institutions Code Section 5150 hold for acting delusional and suffering from hallucinations. In Mr. Maviglio's fraudulent restraining order application, Mr. Maviglio falsely stated under oath that he saw me in his backyard (on a day when I was verifiably in Los Angeles) , and at the hearing both Mr. Maviglio and Ms. Andres falsely testified under oath that they saw me "wandering in the backyard" of Mr. Maviglio on October 31, 2020, even though I was nowhere near Mr. Maviglio's house or backyard on that date. On November 2, 2019 and April 23, 2020, I sent to each of them certified mail return receipt letters asking them to retract their perjuries -- since then I have been retaliated against, on May 9, 2020 through the City Police attempted kidnapping and on December 14, 2020 through the Pisani Ambush.
The Attempted Ambush and Entrapment: Prologue

In the morning and early afternoon hours on Monday December 14, 2020, there were two suspicious cars and female visitors to Barbara Andres at 1870 45th Street (Sacramento, California 95819). One of the suspicious vehicles was a white SUV with a California license plate number of 8MUL994. These cars have been at 1870 45th Street multiple times, and each time their visits were followed by extreme and violent criminal acts against me. I saw the driver of this vehicle later walking on 45th Street with Barbara Andres in their mission to provoke me. I saw this person along with 1901 45th Street resident Mr. Steven Maviglio trying to provoke me while Mr. Maviglio was waiting to start his spin doctor production of videotaping me to be used to abuse the government, law enforcement, and intelligence agencies against me. This events are after Mr. Cecil Taylor has again trespassed on my front porch and pounded on my front door. This trespassing of my front porch by Mr. Cecil Taylor is also a pattern and practice of Mr. Maviglio's using and abusing the residents of 45th Street; this group includes 1914 resident Mr. Charles Schock, who dressed as a thug trespassed on my front porch, pounded on my front door, and yelled and screamed about me while threatening me.[1]

Later, as my friend was leaving 1859 45th Street and as I was walking up the front yard stairs toward my front door, I noticed Barbara Andres and her female visitor were walking on the sidewalk toward my house, and I also heard Barbara Andres screaming and yelling some incoherent words against me and to me. I told her "I do not talk to felons", and with that I kept on walking toward my front door. But Ms. Andres did not stop. At the same time, I noticed Mr. Maviglio jumping out of his hiding place with his video/phone and starting his spin doctor style videotaping of me for his spin doctor production of more fraudulent documents and so-called evidence against me. I was sure this was another set up that starts with Barbara Andres acting as a gangstalker on steroids who has gone wild, is out of control, and has been released loose on the street to provoke me, with Mr. Maviglio in the operation to manufacture another piece of fraudulent "evidence" for his spin doctor production against me. I also was sure that they were trying to manufacture was more fraudulent documents to use against me by government and law enforcement agencies. But what I did not expect was for these fraudulent fabricated pictures and video footages to be used by the County Division of Behavioral Health Services and County Sheriff against me. Therefore, I ignored Barbara Andres, her visitor, and Mr. Maviglio; I went inside and closed the door. However, I noticed Barbara Andres was still yelling at my friend, so I went out. As my friend was getting in his car, I asked him to hurry up and leave because Mr. Maviglio is working on manufacturing another one of his spin doctor fraudulent evidence fabrications. So, my friend left. I was very sick from the around the clock being subjected to release of toxic gas and other chemicals as well as the exhaust gas of the 1871 45th Street resident Sean Majkovica's white junk truck with California license number 49475G2 that has been brought to 1871 to facilitate more physical assaults against me, my internal organs, and my lungs as well as my animals. Mr. Majkovica has doubled

---

[1] Mr. Schock trespassed on my front porch twice, on November 28 and December 2 of 2020.

5

down on this violent and intentional crime against me after I filed a City of Sacramento Police Department Police Report against him and his intentional exposing me to this dangerous toxic gas that is still going on and has not stopped.

On May 9, 2020, based on intentionally false statements communicated to the City of Sacramento Police Department by Mr. Maviglio and Ms. Andres, the City of Sacramento Police Department sent to 45th Street Officer Jared Robinet, one of the two officers who fired the bullets that killed Stephon Clark. Officer Jared Robinet hid around the corner in a City Police vehicle, and once he received a hand signal from a trespassing-on-my-driveway Barb Andres, drove to the edge of my driveway, jumped out of the City Police car, trespassed onto my driveway, and stalked me all the way to my front door without ever announcing himself. As soon as I opened my front door and stepped into my living room, Officer Robinet grabbed me from behind, pulled me out of my living room, assaulted and battered me, fractured and lacerated my finger, and threw me to the concrete floor of my front porch. Officer Robinet was then joined by City Police Officer Maryna Stanionis, and both proceeded to handcuff me and drag me to the Officer Stanionis City Police car while I was bleeding and blood was all over my cloths and my front porch, where Officer Stanionis detained me and threw me in the back seat handcuffed for an hour and deprived of water. Officer Robinet then grabbed my cellphone and gave it to Officer Stanionis, who took it with her to long meetings with Mr. Maviglio and Ms. Andres, where I reasonably believe she gave them access to my cellphone contents. **There was no warrant for seizing me or for seizing my cellphone, and there was no probable cause that I had committed any crime, making the whole operation illegal.**

Officer Stanionis tried to question me without Miranda v. Arizona warnings. When she and Robinet let me go they served with me with a Notice to Appear for one charge – a standalone Penal Code Section 148(a)(1) "resisting arrest" charge. The Sacramento County District Attorney dismissed this one and only charge for Insufficient Evidence, but the false arrest and resulting police brutality scars remain. As a result of this law enforcement assault, battery, brutality and emotional distress I am scared to talk to anyone who claims they represent any official authority in particular law enforcement authority – and Ms. Pisani claimed she was acting upon information from the County Sheriff.

The Attempted Ambush and Entrapment

After a very torturous December 14, 2020 morning and midday -- featuring Barbara Andres acting as a gangstalker and psychopath on the loose -- there was coming a much bigger abuse of power against me. Obviously, this whole spin doctor production by Mr. Maviglio and his partner in perjury Barbara Andres was to engage more abuse of the government agency power and authority against me. Some of the details are as follows:

On Monday, December 14, 2020, at about 4:36 p.m., the front door of my 1859 45th Street house was knocked upon by a woman who asked me "is this Parvin?" after I opened the door. I took her business card identifying her as "Pamela Pisani, LMFT Senior Mental Health Counselor" from the "Community Support Team" of the County of Sacramento Department of Health Services Division of Behavioral Health Services." I then heard Ms. Pisani say she had received an "anonymous call" about me. I told her to wait, closed the door, and got my cellphone. I then opened the door. In response to my question "who are you again", she identified herself as "Pam". I said "Pam Community Support Team". She said "right." She never confirmed that I was Parvin Olfati.

I then said "and you don't know who called you". Ms. Pisani then said "I think it was maybe the Sheriff's Department", and then used the word "complaint." I then said "so the Sheriff's Department called you?" and Ms. Pisani said: "They didn't call me. They let us know that maybe there were some concerns...they're out of the Sheriff's Department jurisdiction..."

I then said "so the Sheriff's Department had something to do with this" and Ms. Pisani said: "they forwarded some information." In response to my question as to "exactly" what "information" had been "forwarded", Ms. Pisani said "they forwarded some information stating..." but "I don't know exactly" what the information was. I then asked: "So how can you go to somebody's door when you don't have any idea what you're doing there?"

Ms. Pisani did not answer my question, but instead frantically and immediately wheeled to her scripted narrative about "resources." She did not answer my questions about her "resources" or the function of the "Behavioral Services" "department" (actually a division) that she said she worked for. She never used the word County even though she was here on purported County business. Instead she used the word "community" but never said who the "community" was. I concluded by telling her that her "behavior" was suspect because her behavior as displayed to me consisted of knocking unannounced on people's doors based on anonymous "b--s—."

6

I told her to leave, but she refused to leave. Instead she yelled at me from my driveway, and she stalked me as I walked out toward the end of my driveway toward the back yard to check some of the toxic and feces and toxic liquid that had been placed immediately outside my bedroom window. In other words, she trespassed my property by refusing to leave after being ordered by me to leave. She drove a white SUV vehicle with the California license plate 7WID019. This appeared to be her personal vehicle and/or vehicle given to her to use in her visit to my house and not a County vehicle.

Displayed at the end of this Grievance letter are photographs of Ms. Pisani's behavior. I took these pictures with my cellphone on December 14, 2020 starting at 4:36 p.m.
As can be seen from my statement above:

- Ms. Pisani made a determination that I needed County Division of Behavioral Services "resources" based on what she described as anonymous "complaints" -- given to her and/or her resources said call or "information" that were either "anonymous" or not but came from the County Sheriff.
- Ms. Pisani did not confirm my identity as "Parvin Olfati" before she began her narrative, or at any time during her visit.
- Ms. Pisani did not present any credentials.
- Ms. Pisani never said she was working for the County of Sacramento, but instead said she was "from the community" but never said who the "community" was.
- Ms. Pisani both did not identify and could not identify the sources of her "complaints" or "information" that prompted her to use County resources to try to ambush or entrap me.
- Ms. Pisani used County government resources to defame me based on unverified anonymous statements whose source she could not identify, but she told that the sherriff Department has sent them to her and /or her office/resources.
- Ms. Pisani refused to leave 1859 45th Street after I told her to leave, meaning Ms. Pisani committed a trespass in violation of the City of Sacramento Code 9.16.140 B, which states as follows:

"1. It is unlawful for any person to enter or remain upon any private property or business premises after having been notified by the owner or agent to keep off or keep away therefrom. Such notification shall be provided by service of a notice of trespass on such person."

2 "A violation of this section is a misdemeanor and shall be punishable by a fine not exceeding five hundred dollars ($500.00) or by imprisonment for a period not exceeding six months, or by both such fine and imprisonment."

If this Claim is not resolved to my satisfaction, I will file a Police Report against Ms. Pisani with the City of Sacramento Police Department, and will cause her to be served at work with the no-trespass notice described in the Sacramento City Code provision quoted above. Thank you.

Sincerely,

Ms. Parvin Olfati

 

1 **PORTER | SCOTT**
2 A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
3 Jordan M. McCroskey, SBN 340068
350 University Ave., Suite 200
4 Sacramento, California 95825
TEL: 916.929.1481
5 FAX: 916.927.3706

6 Attorneys for Defendants
COUNTY OF SACRAMENTO and PAMELA PISANI
7 *Exempt from Filing Fees Pursuant to Government Code § 6103*

8



FILED/ENDORSED

MAY 2 6 2022

By:_____ H. PEMELTON
Deputy Clerk

9                SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

10 MS. PARVIN OLFATI,                    CASE NO. 34-2021-00310164

11              Plaintiffs,              **DECLARATION OF JORDAN M.**
                                         **MCCROSKEY IN SUPPORT OF**
12 v.                                    **DEFENDANTS' OPPOSITION TO PETITION**

13

14 COUNTY OF SACRAMENTO; PAMELA
15 PASANI; JANE ROE DEFENDANT ONE;       Complaint Filed: 10/25/21
JANE ROE DEFENDANT TWO; JANE
16 ROE DEFENDANT 3-100, JOHN DOE
17 DEFENDANTS 1-100,

18              Defendants.
                              /
19

20

21 I, Jordan M. McCroskey, declare as follows:

22      1. I am an associate attorney with the law firm of Porter Scott, counsel of record for
23 Defendants COUNTY OF SACRAMENTO ("County") and PAMELA PISANI, and am licensed to
24 practice law before all courts of the State of California. I have personal knowledge of the facts stated in
25 this declaration and would testify to them if called to do so.
26      2. On April 5, 2021, Plaintiff filed her original government claim. Attached hereto as
27 **Exhibit "A"** is a true and correct copy of the government claim.
28 //

{02713658.DOCX}                            1
**DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' OPPOSITION TO PETITION**

1    I declare under penalty of perjury under the laws of the State of California that the foregoing is

2    true and correct. Executed this 26th day of May 2022, at Sacramento, California.

3

4

5

6                                                         Jordan M. McCroskey
                                                          Declarant
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{02713658.DOCX}                                    2
**DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' OPPOSITION TO PETITION**

*Olfati v. County of Sacramento et al.*
**Sacramento County Superior Court – Case No. 34-2021-00310164**

## DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

That on the date below, I served the following **DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' OPPOSITION TO PETITION** on all parties in the said action as addressed below by causing a true copy thereof to be served:

| | |
|---|---|
| **X** | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
| | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

*Attorney for Plaintiff*
Steven Mark Kamp
STEVEN KAMP LAW OFFICES
22 Petrilli Circle,
Sacramento, CA 95822
Steve.kamp@comcast.net

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California, on May 26, 2022.

*Estefanie Reyes*

_____
Estefanie Reyes

{02713658.DOCX}                                    3
**DECLARATION OF JORDAN M. MCCROSKEY IN SUPPORT OF DEFENDANTS' OPPOSITION TO PETITION**

1  STEVEN MARK KAMP (California State Bar Number 116817)
2  STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
   Electronic Mail Address: steve.kamp@comcast.net
3  Telephone: (916) 501-1791 (cellular, voice/text)
   Attorney for Plaintiff/Petitioner Ms. Parvin Olfati

**FILED/ENDORSED**

**JUN - 2 2022**

By: _____S. Cade_____
Deputy Clerk

8
9          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
10             IN AND FOR THE COUNTY OF SACRAMENTO
11

12  No. **34-2021-00310164-CU-CE-GDS**

13  Ms. PARVIN OLFATI, Plaintiff/Petitioner      **PLAINTIFF/PETITIONER'S REPLY
                                                 MEMORANDUM  IN SUPPORT OF**
14          v.                                   **PLAINTIFF/PETITIONER'S  PETITION
                                                 TO FILE LATE TORT CLAIM AGAINST
15                                               GOVERNMENTAL ENTITY**

    COUNTY OF SACRAMENTO ;
16  PAMELA PISANI; JANE ROE                      **Date: June 9, 2022**
    DEFENDANT ONE; JANE ROE
17  DEFENDANT TWO;  JANE ROE                     **Time: 9:00 a.m.**
    DEFENDANTS 3-100; JOHN DOE
18  DEFENDANTS 1-100,                            **Department: 54**
    Defendants/Respondents
19                                               **Reservation No.: 2644627[1]**

20                                               **Complaint Filed: 10/25/21**

21

22

23

24

25

26

27  _____

28  [1] The caption page of Defendants' Register of Actions (ROA) number 47 incorrectly displays Reference Number
    2640543, the Reference Number for the ROA 33-35 motion for leave of court to file First Amended Complaint.

    PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST
    GVERNMENTAL ENTITY 1

1

**TABLE OF CONTENTS**

2

I.     Introduction and Summary of Argument............................................5

   A. Plaintiff Complied With The California Government Claims Act – Twice.....5

   B. Plaintiff's Proposed First Amended Complaint New Facts, New Defendants, And
      New and Enhanced Causes of Action Accrued on January 28, 2022, When
      Defendant County Revealed Them After Suppressing Them on December 16, 2020
      And Fraudulently Concealing Them For 408 Days..................................6

   C. Plaintiff's April 4, 2022 Supplemental California Government Claims Act Claim
      Informed Defendant County of The Newly Discovered Facts, New Defendants,
      New Causes of Action, And The County's Fraudulent Concealment............8

   D. Plaintiff's Proposed First Amended Complaint And April 4, 2022 Claim Filing
      Satisfy the California Government Claims Act Requirements Under Any of:
      County Fraudulent Concealment, County Surprise, or Cause of Action Accrual on
      January 28, 2022.............................................................9

II.    Government Code Section 946.6 Is A Remedial Statute That is Construed In
       Favor of Granting Relief Wherever Possible To Insure Trial on the Merits.....10

III.   Defendants' ROA 47 Opposition Memorandum Silence Concedes That Plaintiff's
       Causes of Action In Her Proposed First Amended Complaint Did Not Accrue
       Until January 28, 2022, When Defendants Revealed The Underlying December
       2020 Facts In Their 2022 Anti-SLAPP Statute Motion After Fraudulently
       Concealing Them From County's Actions on Plaintiff's Public Records Act
       Requests....................................................................11

   A. Under The Delayed Discovery Rule, The Proposed First Amended Complaint
      Causes of Action Accrued on January 28, 2022 ...............................11

   B. Defendants' Fraudulent Concealment and "Surprise" Is Admitted By
      Defendants In Their Own Records..............................................12

   C. Defendants' Only ROA 47 Cited Cases Are Excusable Neglect Cases  -- And
      Plaintiff Is Not Arguing Excusable Neglect....................................13

   D. Defendants Have Not Attempted To Demonstrate Prejudice, Nor Could They
      .............................................................................14

IV.    Conclusion..................................................................14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **TABLE OF AUTHORITIES**

2  California Cases

3  *Bettencourt v. Los Rios Community College District* (1986) 42 Cal.3d 270....................11

4  *California Restaurant Management Systems v. City of San Diego* (2011) 195 Cal.App.4th 1581
5  ..............................................................................................................5

6  *Department of Water and Power v. Superior Court* (2000) 85 Cal.App.4th 1288..............13, 14

7  *D.I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.3d 723....................................10

8  *Harrison v. County of Del Norte* (1985) 168 Cal.App.3d 1...........................................13

9
10  *Kane v. Cook* (1857) 8 Cal. 449............................................................... 12

11  *Kimball v. Pacific Gas & Electric* (1934) 220 Cal. 203.............................................12

12  *K.J. v. Arcadia Unified School Dist.* (2009) 172 Cal.App.4th 1229..............................6, 11

13  *Lincoln Unified School District v. Superior Court* (2020) 45 Cal.App.5th 1079...............13

14  *Munoz v. State of California* (1995) 33 Cal.App.4th 1767.........................................11

15  *N.G. v. County of San Diego* (2020) 59 Cal.App.5th 63.............................................13

16  *Oscar Martin Salazar-Vargas v. County of Sacramento,* Sacramento County Superior Court Case
17  No. 2022-00315982 (April 21, 2022 Minute Order) (Exhibit H to the ROA 38 Declaration of
   Steven Mark Kamp submitted
   herewith).....................................................................................................13

18  *Pashley v. Pacific Electric Railway Co.* (1944) 25 Cal.2d 226.....................................12

19  *Rodriguez v. County of Los Angeles* (1985) 17 Cal.App.3d 171...............................13, 14

20  *Segal v. Southern California Rapid Transit District* (1970) 12 Cal.App.3d 509..................10

21  *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201...........................................6

22  *Williams v. Horvath* (1976) 16 Cal.3d 834..............................................................5

23  California Statutes

24  Evidence Code Section 451...............................................................................12

25  Government Code Section 905............................................................................5

26  Government Code Section 911.4.........................................................................10

27  Government Code Section
28  945.6.......................................................................................................5

Government Code Section 946.6.....................................................10, 11, 12, 13.

Government Code Section 6253...........................................................................8

California Government Claims Act (CGCA).................................2, 5, 6, 7, 8, passim

Public Records Act (PRA).....................................................2, 7, 8, 9, 10, passim

Federal Statute

United States Code, Title 42, Section 1983.........................................................5

Rules

California Rules of Court Rule 3.1113................................................................5

Other Authority

www.dictionary.com...................................................................................................12

Public Records Act Response

County of Sacramento Public Records Act Response Reference Number 20-4765...................................................................................................7, 8

1  **I. Introduction and Summary of Argument[2]**

2  **A. Plaintiff Complied With The California Government Claims Act – Twice[3]**

3  Contrary to the Register of Actions (ROA) 47 opposition memorandum of Defendants

4  County of Sacramento ("County") and County employee Pamela Pisani("Pisani")(collectively,

5
6  "Defendants"), Plaintiff/Petitioner Ms. Parvin Olfati ("Plaintiff") is not seeking to "add additional

7  causes of action and additional parties without satisfying the mandatory prelitigation requirements

8  within the claim filing requirements pursuant to Government Code Section 945.6."[4] Rather,

9  Plaintiff has **twice** satisfied the Government Code Section 945.6 California Government Claims

10  Act (CGCA) pre-litigation filing requirements for claims regarding Defendants' acts in December

11  10, 14, 15 and 18 of *2020*: (1) the acts of Defendant Pisani that Plaintiff saw and videotaped on

12  December 14, *2020*, for which Plaintiff filed a CGCA Claim on April 5, *2021*[5] that the County

13
14  denied[6]; and that Plaintiff pleaded in her ROA 1 Initial Complaint (IC); and (2) on April 4, *2022*,

15  by filing with County a Supplemental CGCA Claim[7] for Proposed First Amended Complaint

16

17
18  [2] This Reply Memorandum consists of 15 pages. However, five of these pages are the caption page (page 1), table of contents (page 2), table of authorities (pages 3-4), and the declaration of service (page 15), so this Memorandum is within the 10-page limit of California Rules of Court Rule 3.1113, subdivision (d).

19  [3] Thus, Defendants' cited case [at ROA number 47, at 3: 27 – 4: 1-2] of *California Restaurant Management Systems v. City of San Diego* (2011) 195 Cal.App.4th 1581, 1591, for the proposition that "timely presentation" of a California Government Claims Act (CGCA) claim "is a condition precedent", is irrelevant, because Plaintiff filed two timely CGCA claims. The *California Restaurant Management* case involved a restaurant trade association who attempted to use the CGCA claim filed by an individual in a class action; here Plaintiff is relying only on herself.

20
21
22  [4] Register of Actions (ROA) number 47 (Defendants' Opposition to Plaintiff's Petition for Permission To File Late Tort Claim Against Governmental Entity), at 2: 1 – 4. It should be noted that the CGCA does not apply as a matter of law to ROA 35 Exhibit A Proposed FAC Tenth and Eleventh Causes of Action under Federal Section 1983 [id., paragraphs 265-274] or to the Twelfth Cause of Action PRA mandamus writ petition[id., paragraphs 277-283], because: (1) the CGCA prelitigation claim filing requirement does not apply to federal Section 1983 claims [*Williams v. Horvath* (1976) 16 Cal.3d 834, 837-843] and (2) the CGCA applies only to "claims for money or damages" [Government Code Section 905], which is a PRA writ action is not.

23
24
25  [5] ROA number 48 Declaration of Jordan McCrosskey, Exhibit A; ROA 1 Initial Complaint (IC), paragraph 4; ROA 35 Exhibit A Proposed FAC, paragraph 5.

26
27  [6] On April 23, 2021; see ROA 1 IC paragraph 4; ROA 35 Exhibit A Proposed FAC paragraph 5.

28  [7] ROA number 38 (Declaration of Steven Mark Kamp In Support of Plaintiff's Petition for Permission To File Late Tort Claim Against Governmental Entity, "Kamp RM Petition Declaration"), Exhibit "F" thereto.

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 5

1  (Proposed FAC) [8] newly revealed (by County on January 28, **2022**) of County-suppressed facts of

2  <u>additional December 2020 acts against Plaintiff</u> by Pisani and by proposed new Defendants

3  Sheriff's Sergeant Ronald Briggs[9] and County Behavioral Health employees Jennifer Stewart[10]

4
   and Jennifer Reiman.[11] The April 4, **2022** Supplemental CGCA Claim[12] also informed the County
5
6  of County's December 16, **2020** fraudulent concealment that delayed Plaintiff's discovery of

7  these new facts, defendants, and causes of action for 408 days.[13]

8      B.  <u>**Plaintiff's Proposed First Amended Complaint New Facts, New Defendants, And**</u>
   <u>**New and Enhanced Causes of Action Accrued on January 28, 2022, When**</u>
9            <u>**Defendant County Revealed Them After Suppressing Them on December 16, 2020**</u>
10            <u>**And Fraudulently Concealing Them For 408 Days**</u>

11

12  ───────────────

[8] Plaintiff's ROA 35 Exhibit A Proposed FAC is the subject of Reservation 2640543 calendared for June 9, 2022.
13
[9] Referred to by Defendants in their ROA number 47 (at 2: 4) as "Roland Briggs", even though even though the
14  County's own ROA number 15 exhibit A electronic mail message (at pages 2-3, December 10, 2020 5:42 p.m. email
   message) at the top of page 3 displays "CC Briggs, Ronald." These County e-mail messages revealed that the
15  Defendant Pisani December 14, 2020 acts at Plaintiff's residence that are the subject of both the ROA number 1
   Initial Complaint (IC) and the ROA number 35 Exhibit A Proposed FAC were ordered by Briggs in retaliation for
16  Plaintiff's sending to the County Sheriff a police report that Briggs responded to by ordering: "get a mental health
   worker to check in with the letter writer."
17
[10] A County Senior Mental Health Counselor who is revealed in the ROA number 15 Jennifer Reiman Declaration
18  ("Reiman Declaration") exhibit A electronic mail messages as a participant in both the Briggs-ordered retaliation
   against Plaintiff and the Stewart/Reiman/Pisani defamation/false light privacy invasion that also occurred.

19  [11] Revealed in the ROA number 15 Reiman Declaration as: (1) the County Behavioral Services Mental Health
   Program Coordinator; (2) the supervisor of Defendant Pisani who selected Defendant Pisani to carry out the Briggs-
20  ordered retaliation; and (3) one of the defamers of Plaintiff in the County electronic mail messages.

[12] ROA number 38, Exhibit "F" thereto. In Defendants' ROA number 47 (at 3: 24-28) cited case of *K.J. v. Arcadia*
21  *Unified School Dist.* (2009) 172 Cal.App.4th 1229, 1243 ("*K.J.*"), the court rejected the district's argument that the
   victim was required to "upon [district's] rejection of [the victim's] claim as untimely, K.J. should have filed an
22  application for leave to present a *late* claim … (emphasis included). The court explained: "[w]e reject the District's
   contention that K.J. was required to take these procedural steps prior to filing suit. A complaint against a public entity
23  must "allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is
   excused" (citing *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 209) and that "pursuant to the delayed
24  discovery rule of accrual, K.J.'s first amended complaint adequately alleged that the claim she presented to the
   district . . . was timely").

25  [13] Thus, Defendants' ROA number 47 pages 2: 21 – 3: 16 analysis of the CGCA does not cite anything that Plaintiff
   failed to comply with. What Defendants will not admit is that the accrual date of the Proposed FAC is January 28,
26  2022 rather than December 14, 2020, and that Plaintiff filed her CGCA claim 83 days later <u>noting this accrual date</u>
   (see ROA number 38 Kamp RM Petition Declaration, Exhibit "F" thereto). As the court noted in *K.J.*, *supra* at 172
27  Cal.App.4th 1238: "the government claims statutes do not contain a unique definition of accrual. Rather, accrual of
   the cause of action for purposes of the claims statute is the date of accrual that would pertain under the statute of
28  limitations applicable to a dispute between private litigants."

1   These County-suppressed facts did not accrue into causes of action until January 28, 2022,

2   when Defendants for the first time revealed their existence in Defendants' unsuccessful ROA 11-

3   16 Anti-SLAPP Statute Motion filed on that date.[14] Thus, the time gap between the Proposed

4
5   FAC causes of action accrual and the supplemental CGCA filing was the eighty-three (83) days

6   between January 28, 2022 and April 4, 2022, not the "477 days late"[15] starting on December 14,

7   2020, as falsely stated by Defendants. Defendants throughout their ROA 47 steadfastly ignore the

8   "inconvenient fact" that *eighty-five percent* of their claimed "477 days late" includes *408 days of*

9   *County fraudulent concealment* that began on December 16, 2020, when County in response to

10  Plaintiff's December 15, 2020 Public Records Act (PRA) request for "electronic [mail] messages

11  . . . documents, records and writings" of County Sheriff communications with Pisani, and Pisani

12  communications with other persons regarding Pisani December 14, 2020 acts at Plaintiff's

13
14  residence, stated: "no documents to produce"[16]. In this PRA request, Plaintiff expressly requested

15  "electronic messages . . .documents, records, and/or writings" for (among 19 request items):

16      5. Any communications or "information" from the County of Sacramento Sheriff's Department received by the
         Division of Behavioral Health Services or Pamela Pisani that mentions, refers to, or relates to Parvin Olfati
17       and/or 1859 45th Street.
18      6. Any information communicated to Pamela Pisani from any source that mentions, refers to, or relates to Parvin
         Olfati and/or 1859 45th Street
19      7. Any report made by Pamela Pisani regarding any activity in December 14, 2020 at 1859 45th Street or that
         relates to Parvin Olfati.
20      11. The dispatch or other communication directing Pamela Pisani to come to 1859 45th Street and/or to contact
          Parvin Olfati at any time on December 14, 2020.
21      12. Any communications to, from, with, or about any County of Sacramento Sheriff's Department deputy
          sheriffs, employees, agents or representatives  regarding any Pamela Pisani activity relating to Parvin Olfati
22        or at 1859 45th Street on December 14, 2020.

23
24  _____

25  [14] In the ROA number 15 Reiman Declaration and exhibits thereto, especially exhibit A (County electronic mail
     messages among Pisani, Briggs, Reiman and Stewart), and exhibit B (Plaintiff's November 9, 2020 Police Report
26   letter as received by the County Sheriff and Briggs that Pisani in her ROA number 13 declaration and Reiman in her
     ROA 15 declaration say was the moving force behind the Pisani acts of December 14, 2020).

27  [15] ROA number 47, at 2: 16.

28  [16] County Public Records Act Request Reference Number 20-4765, included in Exhibit "J" to the Reply
     Memorandum Declaration of Steven Mark Kamp ("Kamp RM Petition Declaration") submitted herewith.

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST
GOVERNMENTAL ENTITY 7

These December 15, *2020* PRA request items clearly requested the disclosure of the ROA 15 January 28, *2022* Reiman Declaration exhibit A electronic mail messages[17] the County had already created on December 10, 14 and 15 *of 2020* regarding the Briggs, Stewart, and Reiman acts and involvement in the Pisani December 14, *2020* acts seen and videotaped by Plaintiff that day and alleged in the initial April 5, *2021* CGCA claim and in the ROA 1 Initial Complaint (IC). If County had performed its' PRA mandatory duty to disclose, Plaintiff would have had possessed these County records in time to include their facts, defendants, and causes of action in her April 5, *2021* initial CGCA claim and in her October 25, *2021* ROA 1 IC.

## C. Plaintiff's April 4, 2022 Supplemental California Government Claims Act Claim Informed Defendant County of The Newly Discovered Facts, New Defendants, New Causes of Action, And The County's Fraudulent Concealment

Thanks to this fraudulent concealment by both Defendants[18], Plaintiff did not discover these foundational facts until January 28, *2022*, when Defendants filed the ROA 13 Pisani Declaration and 15 Reiman Declaration in their ROA 11-16 Anti-SLAPP Statute Motion.[19] Plaintiff 83 days later on April 4, 2022 filed a Supplemental CGCA Claim with Defendant County that: (i) expressly referenced the initial CGCA claim she filed on April 5, *2021* by both claim number and file number[20]; (ii) expressly stated that the supplemental claim is for "Dec.[ember] 2020 conduct

---

[17] Including the attachment to the electronic mail messages of Stewart, Reiman and Pisani of the Reiman Declaration exhibit B – Plaintiff's November 9, 2020 Police Report letter as received by County Sheriff's Sergeant Ronald Briggs, who used this report to order "get a mental health worker to check in with the letter writer."

[18] The County sent the false December 16, 2020 PRA non-response response the day after Plaintiff's December 15, 2020 PRA request for County records related to Pisani December 14, 2020 acts at Plaintiff's residence, even though the PRA in Government Code Section 6253, subdivision (c) gave County ten days to respond.

[19] Plaintiff first became aware of them when her undersigned counsel received the ROA 11-16 papers in the postal mail on January 29, 2022.

[20] Claim Number L2100524, and "our file no." 87388-35; compare ROA number 48 Declaration of Jordan McCrosskey, Exhibit A thereto, first page (April 5, 2021 CGCA claim with Claim Number L2100524) with ROA number 38 Kamp RM Petition Declaration, Exhibit "G" thereto (County April 9, 2022 letter rejecting supplemental claim under "claim no. L210054" and "our file no. 87388-35.").

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 8

1    not revealed until 2022 January 28"[21] ; (iii) named as "employees involved" Defendant Pisani,

2    plus Briggs, Stewart and Reiman[22]; and (iv) in the letter part of the Supplemental Claim,

3    expressly informed County that this is an "update with newly discovered previously unavailable

4    information " , and that:

5
6        "it now appears from previously undisclosed and suppressed County information that claimant is a victim of
         additional related acts by Pisani, and acts by . . .Reiman...and Stewart...and Briggs that were committed on
7        the 2020 dates of December 10-14 and 28", information about which "was not made available by the County
         until the 2022 dates of January 28 and March 8."[23]

8
9    Defendant County by letter dated April 9, 2022 (a Saturday) denied this supplemental claim and

10   stated that the claim was "untimely" as to any acts prior to October 4, 2021[24], even though

11   Plaintiff's April 4, *2022* claim informed the County that County had failed to disclose these

12   underlying facts revealed in Defendants' January 28, *2022* ROA 11-16 Anti-SLAPP Statute

13   Motion when Plaintiff requested them in her PRA requests on December 15, *2020* (to the County

14   Clerk of the Board) and December 23, *2020* to the County Sheriff.[25]

15
16       **D. Plaintiff's Proposed First Amended Complaint And April 4, 2022 Claim Filing**
            **Satisfy the California Government Claims Act Requirements Under Any of:**
17          **County Fraudulent Concealment, County Surprise, or Cause of Action Accrual on**
            **January 28, 2022**
18
19       As can be seen, the foundation of Defendants' "time barred by the CGCA" argument is

20   conveniently turning blind eyes to the "inconvenient fact" of fraudulent concealment by

21   Defendant County of the facts, new defendants, and new causes of action revealed in the

22   December 10, 14, and 15 *2020* electronic mail messages and related documents that Plaintiff

23
24   _____

25   [21] ROA number 38 Kamp RM Petition Declaration, Exhibit "F" thereto, page 1, answer to question 9.

     [22] Id., page 1, answer to question 13.
26
     [23] Id., first page of letter, first paragraph.
27   [24] See ROA 38 Kamp RM Petition Declaration, Exhibit G thereto.

28   [25] A copy of Plaintiff's December 23, 2020 PRA request to the County Sheriff is in the ROA 35 Exhibit A Proposed
     FAC Exhibit Eleven at pages 75-76.

     PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST
     GOVERNMENTAL ENTITY 9

requested in two PRA requests on December 15 and 23 of *2020* that the County Sheriff ignored, that the County Clerk of the Board Office falsely claimed did not exist, and that Defendants as a result withheld from Plaintiff until January 28, *2022*. Fortunately, Government Code Section 946.6 is a remedial statute that is construed in favor of granting relief "wherever possible" to insure a trial on the merits, and therefore:

1.   Plaintiff's discovery of her ROA 35 Proposed FAC new facts, new defendants, and new or enhanced causes of action was delayed until January 28, 2022, making her 83 days later April 4, 2022 CGCA supplemental claim[26] timely.

2.   County's fraudulent concealment of the  ROA 35 Exhibit A Proposed FAC new facts, new defendants, and new or enhanced causes of action tolled the CGCA limitations period until January 28, 2022, again making Plaintiff's April 4, 2022 CGCA Supplemental Claim timely.

3.   County's misconduct in withholding records from Plaintiff for 408 days after December 15, 2022 created "surprise" as this term is exceptionally used in Government Code Section 946.6, subdivision (c)(1), thus relieving Plaintiff of CGCA claim filing requirements.

**II.     Government Code Section 946.6 Is A Remedial Statute That is Construed In Favor of Granting Relief Wherever Possible To Insure Trial on the Merits**

Defendants by their ROA 47 opposition memorandum silence concede[27]  Plaintiff's argument that Government Code Section 946.6 is a remedial statute intended to alleviate the harshness of strict compliance with the [Section 911.4] six-month rule for persons who are victims of surprise. *Segal v. Southern Cal. Rapid Transit Dist.* (1970) 12 Cal.App.3d 509, 512.

---

[26] A copy of this supplemental CGCA claim is Exhibit "F" to the ROA number 38 Kamp RM Petition Declaration.

[27] Where the nonmoving party fails to oppose a ground for a motion, "it is assumed that [nonmoving party] concedes that ground." *D.I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.3d 723, 728, fn. 4. Multiple such "concessions by silence" by Defendants recur throughout their ROA number 47 opposition memorandum.

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 10

1   Therefore, this statute "is construed in favor of relief wherever possible." *Bettencourt v. Los Rios*

2   *Community College Dist.* (1986) 42 Cal.3d 270, 275. The Court should therefore relieve Plaintiff

3   of the rotted fruit of Defendants' fraudulent concealment on any of at least three bases: (i) County

4   fraudulent concealment; (ii) Government Code Section 946.6, subdivision (c) (2) "surprise"; or

5

6   (iii) that the Proposed FAC causes of action accrued on the delayed discovery date of January 28,

7   2022, the date when Plaintiff first discovered them when Defendant County first disclosed them.

8   **III.    Defendants' ROA 47 Opposition Memorandum Silence Concedes That Plaintiff's**
        **Causes of Action In Her Proposed First Amended Complaint Did Not Accrue**
9       **Until January 28, 2022, When Defendants Revealed The Underlying December**
        **2020 Facts In Their 2022 Anti-SLAPP Statute Motion After Fraudulently**
10      **Concealing Them From County's Actions on Plaintiff's PRA Requests**

11      **A.  Under The Delayed Discovery Rule, The Proposed First Amended Complaint**
12          **Causes of Action Accrued on January 28, 2022**

13      In their ROA 47 opposition memorandum, Defendants admit that under the CGCA, "the

14  date of accrual is the same date on which the cause of action would accrue . . . in an action against

15  a nonpublic entity"[28], citing *K.J. v. Arcadia Unified School Dist.* (2009) 172 Cal.App.4th 1229,

16
    1239 ("*K.J.*"). In *K.J., supra,* the court held that "the delayed discovery doctrine postpones
17
18  accrual until the plaintiff discovers, or has reason to discover, the cause of action" and that "K.J.'s

19  tort claim, which she presented to the district . . . two months after she allegedly realized she had

20  been victimized by Sutcliff, is deemed timely." Id., 172 Cal.App.4th at 1242, 1244.  Plaintiff did

21  exactly that 83 days after the County notified her in its' ROA 15 exhibits A and B electronic mail

22  messages that Plaintiff had been subjected to retaliation by Briggs, Stewart, Reiman and Pisani,

23  and defamation/false light privacy invasion by the latter three.[29]

24

25

26  [28] ROA number 47, at 3: 23-27.

27  [29] Thus, Defendants' ROA number 47 page 3: 19-21 citation of *Munoz v. State of California* (1995) 33 Cal.App.4th
    1767, 1779, for the proposition that "Plaintiff's petition must be denied because the one-year statute of limitations
28  bars any claim brought outside this claim filing requirement" is irrelevant, because Plaintiff filed her supplemental
    CGCA claim well within six months after the January 28, 2022 facts, defendants, and causes of action.

1

2

**B.  Defendants' Fraudulent Concealment and "Surprise" Is Admitted By Defendants In Their Own Records**

3   Defendants in their ROA 47 opposition memorandum concede through silence the 165

4   years of California case law that "when the defendant is guilty of fraudulent concealment of the

5   cause of action the statute [of limitations] is deemed not to become operative until the aggrieved

6   party discovers the existence of the cause of action." *Pashley v. Pacific Electric Railway Co.*

7   (1944) 25 Cal.2d 226, 229.[30] This is exactly what happened here, as revealed by the County's

8
9   own ***December 16, 2020*** PRA Request Reference Number 20-4765 claiming "no documents to

10   produce"[31] when in fact the County had already created them and would use them 408 days later

11   on January 28, *2022*.  Defendants also concede by their ROA 47 silence that "surprise" under

12   Government Code Section 946.6, subdivision (c) (2) occurred through "a completely unexpected

13   occurrence, appearance or statement."[32] This is succinctly descriptive of Defendant County's

14   January 28, 2022 ROA 15 Reiman Declaration exhibits A and B[33]. There is no way Plaintiff

15
16   could have known of the existence of these County electronic mail messages unless she received

17   an honest County response to her December 15, 2020 PRA request. Instead County gave Plaintiff

18   a non-response response.

19

20   ───────────────

[30] Applying the rule first announced by our Supreme Court in *Kane v. Cook* (1857) 8 Cal. 449, 458 (where consignee
21   failed to give accounting of sale of consigned goods, meaning "[h]is neglect not only deprived them of their funds,
but kept them in ignorance of their rights", prevents application of the statute of limitations  because to do so "would
22   be to permit the defendant to take advantage of his own wrong") and in; *Kimball v. Pacific Gas & Electric* (1934), 20
Cal. 203, 210 ("a fraudulent concealment by the defendant of the facts upon which a legal common-law action is
23   based . . . tolls the statute until discovery and upon discovery  the statute . . . then commences to run").

[31] See Kamp RM Petition Declaration, Exhibit "J" thereto and 2: 3 – 6: 28 (paragraphs 2-8).
24
[32] www.dictionary.com, "Surprise" (noun), definition 7. Surprisingly, there appear to be no cases decided under
25   Government Code Section 946.6, subdivision (c) (2) that define the meaning of "surprise." Therefore, judicial notice
shall be taken "of [t]he true significance of all English words and phrases and all legal expressions" (Evidence Code
26   Section 451, subdivision (e)).

[33] ROA number 15 Exhibit A are the electronic mail messages, and Exhibit B is Plaintiff's November 9, 2020 Police
27   Report as received by the County Sheriff that is attached to the electronic mail messages and is stated by both Pisani
(in ROA number 13) and Reiman (in ROA number 15) as the motivating force for their December 14, 2020 acts
28   toward Plaintiff.

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST
GOVERNMENTAL ENTITY 12

1

## C. **Defendants' Only ROA 47 Cited Cases Are Excusable Neglect Cases -- And Plaintiff Is Not Arguing Excusable Neglect**

2

3    Defendants' ROA 47 opposition memorandum says nary a word about Government Code

4    Section 946.6 subdivision (c) (2) "surprise", much less fraudulent concealment. Instead,

5    Defendants rely exclusively upon cases of "excusable neglect" or "mistake", which are two

6    separate and distinct categories of the four in Government Code Section 946.6, subdivision (c)(2)

7    – and two that Plaintiff has never relied upon, because she complied with the CGCA not once, but

8
9    twice. In contrast, Defendants' cases at ROA 47 pages 5:9 – 6:11 *are stated by Defendants* to be

10    "excusable neglect" cases[34] -- which they are[35], as follows:

11    - *Rodriguez v. County of Los Angeles* (1985) 171 Cal.App.3d 171, 174("*Rodriguez*"): public record death certificate issued 64 days after child's death listed cause of death of the same 'acute pyelonephritis' that Plaintiff claimed did not discover until 10 months later (outside the claim period).

12

13    - *Department of Water & Power v. Superior Court* (2000) 85 Cal.App.4th 1288, 1293 ("*DWP*"): a "mistake" case where public records showed DWP was liable for road flooding that caused plaintiff's accident "and simply failed to take the steps necessary to protect the right to seek relief."[36]

14

15    - *Lincoln Unified School District v. Superior Court* (2020) 45 Cal.App.5th 1079, 1093: mother of football-injured son timely filed CGCA claim for son's injury, but later filed untimely CGCA claim on her own behalf based on "their impact on her own life", and her attorney both committed a calendaring error and presented contradictory "excusable neglect" facts in the second claim and to the court.

16

17    - *N.G. v. County of San Diego* (2020) 59 Cal.App.5th 63[37], 68, 79-81: a "mistake or excusable neglect" case where plaintiff knew that she had been sexually assaulted by the deputy sheriff named in her claim, but because of trauma filed the claim more than six months after the assault. The court rejected her argument that "emotional trauma and psychological difficulties faced by victims of sexual assault by law enforcement officers, which can cause those victims to delay coming forward" were "mistake or excusable neglect."

18

19

20    - *Harrison v. County of Del Norte* (1985) 168 Cal.App.3d 1, 5: rejecting "excusable neglect" claim based on plaintiff (a "layman unschooled in legal matters") first contacting attorney after CGCA filing period expired.

21

22

---

23    [34] See, e.g., ROA number 47 at 5: 1-3 (heading C, "Petitioners' [sic] Petition should be denied because their arguments are not sufficient to warrant excusable neglect").

24    [35] One is a "mistake" case, and another is both "mistake and excusable neglect." Plaintiff does not claim either. Plaintiff in her ROA 37 and 38 did include this Court's April 21, 2022 Government Code Section 946.6 minute order that granted relief on "excusable neglect" [see ROA number 37 at 20: 6-12 and fn. 55, and ROA number 38 Exhibit

25    "H", *Oscar Martin Salazar-Vargas v. County of Sacramento*, Sacramento County Superior Court Case No. 2022-00315982], *but only to argue that if Government Code Section 946.6 relief can be granted against Defendant County*

26    *on the basis of counsel's failure to follow up on the United States Postal Service return receipt green cards, it can certainly be granted for Plaintiff's sufferance of demonstrated County fraudulent concealment and surprise.*

27
     [36] *Department of Water & Power v. Superior Court* (2000) 82 Cal.App.4th 1288, 1291.

28    [37] Cited by Defendants in ROA number 47 at 5: 18-19 with Westlaw cite instead of California official reports cite.

1    Defendants in their ROA 47 at 4: 8 – 6: 3 rely heavily on two cases -- *DWP* and *Rodriguez* – to

2    claim that Plaintiff "fail[ed] to sufficiently demonstrate adequate justification why these

3    defendants and accompanying causes of action were not discovered sooner".[38] As explained

4
5    throughout Plaintiff's ROA 36, 37 and 38 and herein, Defendants for 408 days "past the required

6    statute of limitations" fraudulently concealed from Plaintiff their own County electronic mail

7    messages that Plaintiff had requested of County in a PRA request well before the statute of

8    limitations had run. Once Defendants disclosed them, Plaintiff timely filed a supplemental CGCA

9    claim, followed by the ROA 35 Motion and Proposed FAC.

10            **D. Defendants Have Not Attempted To Demonstrate Prejudice, Nor Could They**

11           Defendants in their ROA 47 opposition memorandum at 6: 4-5 claim that: "Prejudice to the

12   County is not relevant because Petitioners [sic] fail to meet their burden to show excusable
13
14   neglect." Never mind that Plaintiff/Petitioner is not arguing "excusable neglect", just fraudulent

15   concealment and surprise – and Plaintiff has more than met her burden of showing her sufferance

16   of them during her twin sequential compliances with the CGCA.

17   **IV.    Conclusion**

18           For the foregoing reasons, as well as the reasons stated in the ROA 36-38 petition papers,

19   the Court is respectfully requested to grant Plaintiff Ms. Parvin Olfati's Petition For Leave to File

20   Late Tort Claim Against Governmental Entity.  Respectfully submitted,
21
22            /s/ STEVEN MARK KAMP (California State Bar Number 116817), Attorney for

23   Plaintiff/Petitioner/PRA Petitioner Ms. Parvin Olfati

24   STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
     Electronic Mail Address:
25   Telephone: (916) 501-1791 (cellular, voice/text)

26   DATED: June 2, 2022

27
     _____
28   [38] ROA number 47 at 4: 27-28. This is only one of the eight false claims about the timing of Plaintiff's Proposed
     FAC that litter ROA number 47 at pages 4: 10 – 6:1

     PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST
     GOVERNMENTAL ENTITY 14

1  **DECLARATION OF SERVICE IN PERSON**

2  I, STEVEN M. KAMP, declare and state as follows:

3  1.    I am over the age of 18, and reside in the County of Sacramento, State of California.

4  2.    I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

5  3.    On June 2, 2022, I caused to be served by hand delivery on counsel for the Defendants in
   this action a true and correct copy of:

6
7  **PLAINTIFF/PETITIONER'S REPLY MEMORANDUM IN SUPPORT OF
   PLAINTIFF/PETITIONER'S PETITION TO FILE LATE TORT CLAIM AGAINST
   GOVERNMENTAL ENTITY**

8
9
10
11  4. Service was effected in person on June 2, 2022 by:

12      Personally delivering a true and correct copy of the above-referenced document to Porter
        Scott, 350 University Avenue, Suite 200, Sacramento, California 95825 in a manila envelope
13      addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200,
14      Sacramento, CA 95825;

15
    I declare under penalty of perjury that the foregoing statements are based on personal knowledge,
16  and are true and correct. Executed at Sacramento, California, this _2d day of June, 2022.

17  /s/ STEVEN MARK KAMP (California State Bar Number 116817)
    STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
18  Electronic Mail Address: steve.kamp@comcast.net
    Telephone: (916) 501-1791 (cellular, voice/text)
19  Attorney for Plaintiff/Petitioner/PRA Petitioner Ms. Parvin Olfati

20
21
22
23
24
25
26
27
28
    PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PETITION TO FILE LATE TORT CLAIM AGAINST
    GOVERNMENTAL ENTITY 15

1    STEVEN MARK KAMP (California State Bar Number 116817)
2    STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
     Electronic Mail Address: steve.kamp@comcast.net
3    Telephone: (916) 501-1791 (cellular, voice/text)
     Attorney for Plaintiff Ms. Parvin Olfati
4
5                                                    **FILED/ENDORSED**
6                                                    **JUN - 2 2022**
7                                                    By: _____S. Cade_____
                                                          Deputy Clerk
8
9              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                 IN AND FOR THE COUNTY OF SACRAMENTO
11
12                                          No. **34-2021-00310164-CU-CE-GDS**
13   Ms. PARVIN OLFATI, Plaintiff/Petitioner   **REPLY MEMORANDUM DECLARATION
                                               OF STEVEN MARK KAMP IN SUPPORT
14         v.                                  OF PLAINTIFF'S PETITION FOR
                                               PERMISSION TO FILE LATE TORT
15   COUNTY OF SACRAMENTO; PAMELA              CLAIM AGAINST GOVERNMENTAL
16   PISANI; JANE ROE DEFENDANT ONE;           ENTITY**
     JANE ROE DEFENDANT TWO; JANE
17   ROE DEFENDANTS 3-100; JOHN DOE            **Date: June 9, 2022**
     DEFENDANTS 1-100,
18   Defendants/Respondents                    **Time: 9:00 a.m.**
19                                             **Department: 54**
20                                             **Reservation No.: 2644627**
21                                             **Complaint Filed: 10/25/21**
22
23        I, STEVEN MARK KAMP, declare and state as follows:
24   1.  I represent the Plaintiff (Ms. Parvin Olfati) in this action. I have personal knowledge of the
25       facts set forth in this Declaration. I am an attorney at law licensed to practice in all state
26       and federal courts in the State of California, the U.S. Court of Appeals for the Ninth
27       Circuit, and the United States Supreme Court. I have been an active member of the State
28

DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT
CLAIM AGAINST GOVERNMENTAL ENTITY 1

1    Bar of California continuously since 1984 and an active member of The Florida Bar

2    continuously since 1982. I am also admitted to practice in the District of Columbia.

3  2.  Attached hereto as Exhibit J[1] in pages 1-2 thereof is a true and correct copy of the County of

4
     Sacramento (County) electronic mail message response to Plaintiff Ms. Parvin Olfati's
5
6    December 15, 2020 Public Records Act (PRA) request. This County electronic mail message

7    sent on December 16, 2020 in the right hand column of page 1 states "request closed" and

8    "fulfilled" because: "no documents to produce."

9  3.  Attached hereto in pages 3-5 of Exhibit J hereto is a true and correct copy of Plaintiff Ms.

10    Parvin Olfati's electronic mailed PRA request that the County is responding to with "no

11
      documents to produce." Page 3 is a copy of the electronic mail message, which expressly
12
13    states: "Attached please find a PRA Request from Ms. Parvin Olfati re County Division of

14    Behavioral; Services Pam Pisani Activity At 1859 45th Street." On pages 4-5 of Exhibit J is a

15    copy of the attached PRA request, which begins by describing the December 14, 2020 activity

16    at Plaintiff's residence by Ms. Pamela Pisani, Senior Mental Health Counselor with the

17    County Division of Behavioral Health Services. At the bottom of page 4 continuing to page 5,

18    the PRA request states: "The requested records include, but are not limited to the following:

19
      1. The duty statement of Senior Mental Health Counselor LMFT Pamela Pisani in effect on December 14, 2020.
20    2. The credentials of Pamela Pisani used by the County to authorize Pamela Pisani to act as a Senior Mental
      Health Counselor.
21    3. The definition of "LMFT."
      4. Any and all file numbers or case numbers assigned to or that contain the name "Olfati" and/or the address
22    "1859 45[th] Street."
      5. Any communications or "information" from the County of Sacramento Sheriff's Department received by the
23    Division of Behavioral Health Services or Pamela Pisani that mentions, refers to, or relates to Parvin Olfati
      and/or 1859 45th Street.
24

25
     _____
26  [1] Exhibits "A" through "I" appear in Reservation's 2640543's Register of Actions (ROA) numbers 35 (Notice of
     Motion, Exhibit A), 34 (CRC Rule 1.324 (b) Declaration, Exhibits B and C); in Reservation 2644627's ROA
27   number 38 (Kamp Declaration In Support of Petition to File Late Tort Claim Against Governmental Entity, Exhibits
     D, E, F, G and H); and in Reservation 2640543's Reply Memorandum Declaration of Steven Mark Kamp In Support
28   of Plaintiff's Motion for Leave of Court to File First Amended Complaint (Exhibit I).

     REPLY MEMORANDUM DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's
     PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 2

6. Any information communicated to Pamela Pisani from any source that mentions, refers to, or relates to Parvin Olfati and/or 1859 45th Street

7. Any report made by Pamela Pisani regarding any activity in December 14, 2020 at 1859 45th Street or that relates to Parvin Olfati.

8. Any recordings made by Pamela Pisani of any activity at 1859 45th Street on December 14, 2020 and/or that include any image or audio of any person believed by Pamela Pisani to be Parvin Olfati, or any person spoken to by Pamela Pisani at 1859 45th Street.

9. The names, job titles, and contact information for each and every person or entity included in the word "they" as such word was used by Pamela Pisani at 1859 45th Street on December 14, 2020.

10. The names, job titles, and contact information for each and every person or entity included in the word "us" as such word was used by Pamela Pisani at 1859 45th Street on December 14, 2020.

11. The dispatch or other communication directing Pamela Pisani to come to 1859 45th Street and/or to contact Parvin Olfati at any time on December 14, 2020.

12. Any communications to, from, with, or about any County of Sacramento Sheriff's Department deputy sheriffs, employees, agents or representatives regarding any Pamela Pisani activity relating to Parvin Olfati or at 1859 45th Street on December 14, 2020.

13. Any communications to, from, with, or about any City of Sacramento Police Department officers regarding any Pamela Pisani activity relating to Parvin Olfati or at 1859 45th Street on December 14, 2020.

14. Any communications to, from, with, and/or about any resident of 45th Street in Sacramento, California 95819, including but not limited to Steven Maviglio (1901 45th Street), Barb Andres (1870 45th Street), Cecil Taylor (1870 45th Street). John Lisuk and his wife Mieke Smythe and /or Lisuk (1850 45th Street); June Lamoureaux and Bill Kellerhals (1856 45th Street); Martin Raygoza, his wife Helen and their son Petros Raygoza (1851 45th Street).

15. Any communications to, from, with, and/or about Kathryn Sweeney and/or Ben Wheeler (4501 "T" Street)

16. Any communications to, from, with and/or about any current or former tenant or resident of 1871 45th Street, including but not limited to: Melissa Grigsby, Michele Frayne, Sean Majkovica, Marko Majkovica, Adriana Sanchez, Kara Mullin, and/or Kristen Mullin.

17. Any communications to, from, with and/or about 1871 45th Street owner Camille Remy Obad or John Obad.

18. Any communications to, from, with or about the County of Sacramento Sheriff's department that mention or refer to any Parvin Olfati PRA request, including but not limited to any Parvin Olfati PRA request regarding any County Sheriff Mental Health Unit.

19. The County Department of Health Services Division of Behavioral Health Services policies, procedures, rules, regulations, guidelines and/or protocols in effect on December 14, 2020 that govern any Pamela Pisani, Senior Mental Health Counselor, or LMFT activity at 1859 45th Street or with respect to Parvin Olfati, including but not limited to:

    (a) The making of unannounced in-person visits

    (b) Obtaining confirmation of identity from the person spoken to by the mental health counselor.

    (c) Verification of information communicated to the mental health counselor regarding the person the mental health counselor is directed to visit.

    (d) Remaining on property after being directed to leave.

    (e) Use of the word "community" rather than "County" to identify the mental health counselor.

    (f) Presentation of any County employee identification badge or credentials other than a business card.

4.   Note that the type of records expressly requested include "electronic messages . . . documents, records, and/or writings"[2], and that request items 5 through 12 expressly request:(a) Sheriff's Department communications to Pisani regarding Plaintiff (request items 5, 12); (b) information communicated to Pisani from any source that mentions Plaintiff (request item 6); (c) any Pisani report mentioning Plaintiff (request item 7); (d) the names, job titles, and contact information for any person or entity referred to by Pisani as "us" or "they" in December 14, 2020 front porch spiel to Plaintiff (request items 9 and 10); and (e) the dispatch or other communication directing Pisani to Plaintiff's residence on December 14, 2020.

5. The requested items in Plaintiff's PRA request clearly covered the following County electronic mail messages and related documents of 2020 December 10, 14, 15 and 18 that were unknown to Plaintiff both when she sent her PRA request on December 15, 2020 and when she received the County's "no documents to  produce" response on December 16, 2020: County electronic mail messages[3] revealing that: (a) proposed new Defendant County Sheriff's Sergeant Ronald Briggs ordered that a "mental health worker" be sent to "check in on the letter writer [Plaintiff]" in retaliation for Plaintiff sending to the County Sheriff a Police Report letter[4] regarding the theft of her cellphone in the Sheriff's Department jurisdiction Fair Oaks area, a Police Report that Briggs determined without investigation to be "unfounded" and merited County Community Support Team intervention that Defendant Briggs believed would be "more effective" because Plaintiff's Police Report letter stated an "identified belief that law enforcement is stalking her and colluding against her"; and (b) electronic mail messages to, from, or with Defendant

---

[2] Page 4, first page of PRA request, eighth and ninth lines from the bottom: "produce to me all electronic messages . . documents, records, and/or writings".

[3] ROA number 15 (County Jennifer Reiman Declaration), Exhibit A thereto.

[4] ROA number 15, Exhibit B thereto. This letter is also included as Exhibit Thirteen in the Proposed First Amended Complaint (FAC).

Pisani and proposed new Defendants Jennifer Reiman and Jennifer Stewart stating that Plaintiff was the restrained party in a restraining order against her by a member of the Sacramento City Council[5], a statement that all three Defendants knew or in the exercise of reasonable care should have known was false; (c) Pisani's report to Reiman[6]; (d) the December 18, 2020 electronic mail message from Pisani to Reiman[7]; and (e) the fact Plaintiff's November 9, 2020 Police Report to the County Sheriff[8] was attached to the December 10, 2020 Jennifer Stewart to Jennifer Reiman electronic mail message that communicated the directive from Sheriff's Sergeant Ronald Briggs to "get a mental health worker to check in with the letter writer"[9] and that this was the hidden moving force behind Pisani's December 14, 2020 activity at Plaintiff's residence.

6.  These County electronic mail messages included in the Reiman Declaration should have been included in the County's response to Plaintiff's December 15, 2020 PRA request. This PRA request is referenced in the Proposed FAC paragraph 283-(b), and an electronic copy of the PRA request is included in Exhibit Eleven thereto. **However, as can be seen, the County response to this PRA request was an electronic mail message stating that the County had no documents. Had Plaintiff been given these documents which were created by Defendant County shortly before Plaintiff sent her PRA request, the new allegations in the Proposed FAC would have been included in both the April 5, 2021 initial California Government Claims Act claim and in the Initial Complaint.**

---

[5] ROA number 15, Exhibit A thereto.

[6] ROA number 15, Exhibit D thereto.

[7] ROA number 15, Exhibit C thereto.

[8] ROA number 15, Exhibit B thereto.

[9] ROA number 15, Exhibit A thereto (pages 2-3, December 10, 2020 5;42 p.m. email) and Exhibit B thereto.

REPLY MEMORANDUM DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's
PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 5

7. **These documents should also have been included in any County Sheriff response to Plaintiff's December 23, 2020 PRA request for:**

"any and all electronic messages, text messages, reports, notes, log entries, computer entries, CAD, memoranda, documents, records and/or writings that created on any County Sheriff sheriff, deputy, department, division, Impact Division, Homeless Outreach Team, officer, chief, employee, agent or representative (County Sheriff) computer or other medium created, transmitted, received and/or stored that constitute, mention, refer to and/or relate to any information communicated on any date since January 1, 2020, to any employee, agent, or representative of the County of Sacramento Department of Health Services, Division of Behavioral Health Services, or any Community Support Team, or to Pamela Pisani, that mention, refer to, or relate to Parvin Olfati and/or 1859 45th Street (Sacramento, California 95819)."[10]

**The County Sheriff never responded to this PRA request, referenced in the Exhibit A Proposed FAC paragraph 283-(a) and included in Exhibit Eleven thereof.**

8.    Plaintiff first discovered the facts from the County electronic mail messages on January 29, 2022, when her undersigned counsel received in the postal mail the January 28, 2022 County Anti-SLAPP Statute Motion (ROA numbers 11-16) and Declaration of Jennifer Reiman (ROA number 15) and exhibits thereto. Plaintiff on April 4, 2022 (a date within six months of January 28, 2022) filed her supplemental CGCA claim that the County has treated as part of her Initial Claim, by giving it the same claim and file numbers.

9.    The County's December 16, 2020 statement that it had "no documents to produce" was false when made, because in fact the County had created the December 10, 14, 15 and 18 electronic mail messages and related documents it would later attach to the January 28, *2022* Reiman Declaration; and that Defendant County's Anti-SLAPP Statute Motion prevented from being made the subject of any Amended Complaint between January 28, 2022 and April 21, 2022.

---

[10] Reservation 2640543 Exhibit A Proposed FAC, at pages 75-76 (copy of December 23, 2020 PRA request to County Sheriff alleged in paragraph 283-(a)).

1    I declare under penalty of perjury under the laws of the State of California that the statements

2    herein are true and correct, and that this Declaration was executed in Sacramento, California on

3    June 1, 2022.

4    /s/ Steven Mark Kamp, Attorney for Plaintiff Ms. Parvin Olfati

REPLY MEMORANDUM DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's
PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 7

1

2   **Exhibit J: County of Sacramento Public Records Act Request Reference Number 20-4765**

3   **(December 16, 2020).**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's
PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 8


Public Record Requests

## Sacramento County

# Request 20-4765 ☑ Closed                                 

## Dates

### Received
December 15, 2020 via email

## Staff Assigned

**Departments**
County Counsel

**Point of contact**
Natasha Drane

## Request

December 14, 2929
Dear Sir or Madam,
Attached please find a PRA Request from Ms.
Parvin Olfati re County Division of Behavioral;
Services Pam Pisani Activity At 1859 45th
Street Sacramento on December 14 2020

## **Timeline**    Documents

👁 **Request Published**                          Public

December 16, 2020, 2:01pm by Krysta Guthrie

☑ **Request Closed**           Public

Fulfilled (no documents to produce)

December 16, 2020, 2:01pm by Krysta Guthrie

📄 **Document(s) Released to Requester**          Public

1758888.pdf

December 16, 2020, 2:01pm by Krysta Guthrie

🏛 **Department Assignment**                      Public

County Counsel

December 16, 2020, 11:49am by Rebecca Kay

🗂 **Request Opened**                             Public

Request received via email

December 16, 2020, 11:49am by Rebecca Kay on behalf
of Steven Kamp

**FAQS  HELP  PRIVACY  TERMS**

5/21/22, 10:10 AM        Xfinity Connect PRA Request from Ms_ Parvin Olfati re County Division of Behavioral; Services Pam Pisani Activity At 1859 45t...

Case 2:22-at-00664   Document 1-2   Filed 06/29/22   Page 563 of 721

**STEVEN KAMP <steve.kamp@comcast.net>**                                        12/15/2020 5:01 PM

## PRA Request from Ms. Parvin Olfati re County Division of Behavioral; Services Pam Pisani Activity At 1859 45th Street Sacramento on December 14 2020

To kayr@saccounty.net <kayr@saccounty.net>

December 14, 2929

Dear Sir or Madam,

Attached please find a PRA Request from Ms. Parvin Olfati re County Division of Behavioral; Services Pam Pisani Activity At 1859 45th Street . Thank you. Sincerely, /s/ Ms. Parvin Olfati, 1849 45th Street, Sacramento, CA 95819

- PRA County Mental Pisani Pam ambush 2020 december 14 x.docx (90 KB)

Parvin Olfati 1859 45ᵃ Street Sacramento, CA. 95819

December 15, 2020

Via email to KayR@saccounty.net
Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA 95814

RE: Public Records Act Request For County of Sacramento Documents That Constitute, Mention, Refer To, And/or Relate To December 14, 2020 Pamela Pisani Senior Mental Health Counselor or LMFT Activity At 1859 45ᵃ Street And/or Related To Parvin Olfati

Dear Sir or Madam:

Please respond and provide any and all requested records via postal mail to my address above. Please use e mail transmission only as a supplement to any postal mailed response. The only reason I am sending this Public Records Act (PRA) request via e mail is that the Clerk of the Board Office is no longer available for in-person delivery

In the morning and early afternoon hours on Monday December 14, 2020, there were two suspicious cars and female visitors to Barbara Andres at 1870 45ᵃ street. One of the suspicious vehicles was a white SUV with a California license plate number of 8MUL994. I saw the driver of this vehicle later walking on 45ᵃ Street with Barbara Andres. I saw this person along with 1901 45ᵃ Street resident Mr. Steven Maviglio trying to provoke me while Mr. Maviglio was waiting to start his spin doctor production of videotaping me to be used to abuse the government, law enforcement, and intelligence agencies against me. These cars have been at 1870 45ᵃ Street multiple times, and each time their visits were followed by extreme and violent criminal acts against me.

Later, as my friend was leaving 1859 45ᵃ Street and as I was walking up the front yard stairs toward my front door, I noticed Barbara Andres and the one of the female visitors were walking on the sidewalk toward my house, and I also heard Barbara Andres screaming and yelling some incoherent words against me and to me. I told her "I do not talk to felons", and with that I kept on walking toward my front door. But she did not stop. At the same time, I noticed Mr. Maviglio jumping out of his house with his video/phone and starting his spin doctors style videotaping of me. I was sure this was another set up that starts with Barbara Andres acting as a gangstalker who has gone wild, is out of control, and has been released loose on the street to provoke me, with Mr. Maviglio in the operation to manufacture another piece of fraudulent "evidence" for his spin doctor production. I also was sure that they were trying to manufacture more fraudulent documents to use against me by government and law enforcement agencies. Therefore, I ignored Barbara Andres, Mr. Maviglio, and her visitor; I went inside and closed the door. However, I noticed Barbara Andres was still yelling at my friend, so I went out. As my friend was getting in his car, I asked him to hurry up and leave because Mr. Maviglio is working on manufacturing another one of his spin doctor fraudulent evidence fabrications. So, my friend left. I was very sick from the around the clock release of toxic gas and other chemicals as well as the exhaust gas of the 1871 45ᵃ Street resident Sean Majkovica's white junk truck that has been brought to 1871 to facilitate more physical assaults against me and my animals. Mr. Majokivica has doubled down on this violent and intentional crime against me after I filed a City of Sacramento Police Department Police Report against him and his intentional exposing me to this dangerous toxic gas and still is going on.

After a very torturous morning and midday — featuring Barbara Andres acting as gangstalker and psychopath on the loose — there was coming a much bigger abuse of power against me. Obviously, this whole spin doctor production by Mr. Maviglio and his partner in perjury Barb Andres was to abuse the government agency power and authority against me. Some of the details are as follows:

On Monday, December 14, 2020, at about 4:36 p.m., the front door of my 1859 45ᵃ Street house was knocked upon by a woman who asked me "is this Parvin?" I opened the door, and took her business card identifying her as "Pamela Pisani, LMFT Senior Mental Health Counselor" from the "Community Support Team" of the County of Sacramento Department of Health Services Division of Behavioral Health Services. I then heard Ms. Pisani say she had received an "anonymous call" and complaint about me. I told her to wait, closed the door, and got my cellphone. I then opened the door. In response to my question "who are you again", she identified herself as "Pam". I said "Pam Community Support Team". She said "right." She never confirmed that I was Parvin Olfati.

I then said "and you don't know who called you". Ms. Pisani then said "I think it was maybe the Sheriff's Department", and then used the word "complaint." I then said "so the Sheriff's Department called you?" and then said "so the Sheriff's Department called you?" and Ms. Pisani said: "They didn't call me. They let us know that maybe there were some concerns...they're out of the Sheriff's Department jurisdiction..."

I then said "so the Sheriff's Department had something to do with this" and Ms. Pisani said: "they forwarded some information." In response to my question as to "exactly" what "information" had been "forwarded", Ms. Pisani said "they forwarded some information stating..." but "I don't know exactly" what the information was. I then asked:  "So how can you go to somebody's door when you don't have any idea what you're doing there?"

Ms. Pisani did not answer my question, but instead frantically and immediately wheeled to her scripted narrative about "resources." She did not answer my questions about her "resources" or the function of the "Behavioral Services" "department" (actually a division) that she said she worked for. She never used the word County even though she was here on purported County business. Instead she used the word "community" but never said who the "community" was. I concluded by telling her that her "behavior" was suspect because her behavior as displayed to me consisted of knocking unannounced on people's doors based on anonymous "b—s—."

I told her to leave, but she refused to leave. Instead she yelled at me from my driveway, and she stalked me as I walked out toward the end of my driveway toward the back yard to check some of the toxic and feces and toxic liquid that had been placed immediately outside my bedroom window.  In other words, she trespassed my property by refusing to leave after being ordered by me to leave. She drove a white SUV vehicle with the California license plate 7WID019. This appeared to be her personal vehicle and/or vehicle given to her to use in her visit to my house and not a County vehicle.

Displayed at the end of this PRA request letter are photographs of Ms. Pisani's behavior. I took these pictures with my cellphone on December 14, 2020 starting at 4:36 p.m.

Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I hereby request that the County of Sacramento (County) produce to me any and all electronic messages, text messages, emoluments, payments, reports, notes, log entries, computer entries, CAD, memoranda, documents, records and/or writings that created on any County county, Pamela Pisani, Senior Mental Health Counselor, Department of Health Services, Division of Behavioral Health Services, Community Support Team, Howard Schmidt, Chief of Staff, Susan Peters, Supervisor, Board of Supervisors, department, division, officer, chief, employee, agent or representative (County) computer or other medium created, transmitted, received and/or stored since January 1, 2015 that constitute, mention, refer to and/or relate to any communications, payments, emoluments, informant activity, providing of information, or other activity by Senior Mental Health Counselor LMFT Pamela Pisani at 1859 45ᵃ Street on December 14, 2020 and/or that relate to, refer to, or mention Parvin Olfati or 1859 45ᵃ Street (Sacramento, California 95819).

The requested records include, but are not limited to the following:

1. The duty statement of Senior Mental Health Counselor LMFT Pamela Pisani in effect on December 14, 2020.

1

2. The credentials of Pamela Pisani used by the County to authorize Pamela Pisani to act as a Senior Mental Health Counselor.

3. The definition of "LMFT."

4. Any and all file numbers or case numbers assigned to or that contain the name "Olfati" and/or the address "1859 45ᵗʰ Street."

5. Any communications or "information" from the County of Sacramento Sheriff's Department received by the Division of Behavioral Health Services or Pamela Pisani that mentions, refers to, or relates to Parvin Olfati and/or 1859 45ᵗʰ Street.

6. Any information communicated to Pamela Pisani from any source that mentions, refers to, or relates to Parvin Olfati and/or 1859 45ᵗʰ Street

7. Any report made by Pamela Pisani regarding any activity in December 14, 2020 at 1859 45ᵗʰ Street or that relates to Parvin Olfati.

8. Any recordings made by Pamela Pisani of any activity at 1859 45th Street on December 14, 2020 and/or that include any image or audio of any person believed by Pamela Pisani to be Parvin Olfati, or any person spoken to by Pamela Pisani at 1859 45ᵗʰ Street.

9. The names, job titles, and contact information for each and every person or entity included in the word "they" as such word was used by Pamela Pisani at 1859 45ᵗʰ Street on December 14, 2020.

10. The names, job titles, and contact information for each and every person or entity included in the word "us" as such word was used by Pamela Pisani at 1859 45ᵗʰ Street on December 14, 2020.

11. The dispatch or other communication directing Pamela Pisani to come to 1859 45ᵗʰ Street and/or to contact Parvin Olfati at any time on December 14, 2020.

12. Any communications to, from, with, or about any County of Sacramento Sheriff's Department deputy sheriffs, employees, agents or representatives regarding any Pamela Pisani activity relating to Parvin Olfati or at 1859 45ᵗʰ Street on December 14, 2020.

13. Any communications to, from, with, or about any City of Sacramento Police Department officers regarding any Pamela Pisani activity relating to Parvin Olfati or at 1859 45ᵗʰ Street on December 14, 2020.

14. Any communications to, from, with, and/or about any resident of 45ᵗʰ Street in Sacramento, California 95819, including but not limited to Steven Maviglio (1901 45ᵗʰ Street), Barb Andres (1870 45ᵗʰ Street), Cecil Taylor (1870 45ᵗʰ Street), John Lisuk and his wife Micke Smythe and /or Lisuk (1850 45ᵗʰ Street); June Lamoureaux and Bill Kellerhals (1856 45ᵗʰ Street); Martin Raygoza, his wife Helen and their son Petros Raygoza (1851 45ᵗʰ Street).

15. Any communications to, from, with, and/or about Kathryn Sweeney and/or Ben Wheeler (4501 "T" Street)

16. Any communications to, from, with and/or about any current or former tenant or resident of 1871 45ᵗʰ Street, including but not limited to: Melissa Grigsby, Michele Frayne, Sean Majkovica, Marko Majkovica, Adriana Sanchez, Kara Mullin, and/or Kristen Mullin.

17. Any communications to, from, with and/or about 1871 45ᵗʰ Street owner Camille Remy Obad or John Obad.

18. Any communications to, from, with and/or about the County of Sacramento Sheriff's Department that mention or refer to any Parvin Olfati PRA request, including but not limited to any Parvin Olfati PRA request regarding any County Sheriff Mental Health Unit.

19. The County Department of Health Services Division of Behavioral Health Services policies, procedures, rules, regulations, guidelines and/or protocols in effect on December 14, 2020 that govern any Pamela Pisani, Senior Mental Health Counselor, or LMFT activity at 1859 45ᵗʰ Street or with respect to Parvin Olfati, including but not limited to:

    (a) The making of unannounced in-person visits

    (b) Obtaining confirmation of identity from the person spoken to by the mental health counselor.

    (c) Verification of information communicated to the mental health counselor regarding the person the mental health counselor is directed to visit.

    (d) Remaining on property after being directed to leave.

    (e) Use of the word "community" rather than "County" to identify the mental health counselor.

    (f) Presentation of any County employee identification badge or credentials other than a business card.

As used herein, the term "emoluments" includes but is not limited to any job, contract, promise of any job, or promise of any contract.

The records requested include but are not limited to any records of any placement of Parvin Olfati and/or 1859 45ᵗʰ Street under any "intelligence", surveillance, monitoring, or other similar activity by any law enforcement agency.

If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable, please provide the records of such destruction, transfer, or unavailability, together with applicable record retention policies. As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this request, and either produce the requested documents, or commit in writing to a production date that is within the reasonable time period required by the PRA.

Please note that all but one of my PRA requests to the County Sheriff have gone unanswered in clear violation of the PRA. Please also note that the unannounced unauthorized attempted ambush of me by Ms. Pisani based on anonymous fabricated "information" brought back frightening memories of the May 9, 2020 false arrest and great bodily injury of me in my own front door by City of Sacramento Police Department Officer Jared Robinet, one of the two officers who fired the bullets that killed Stephon Clark. This false arrest was capped with one and only one charge: a standalone Penal Code Section 148(a)(1) "resisting arrest" charge that the Sacramento County District Attorney dismissed on its own motion – for "Insufficient Evidence." Insufficient Evidence for a real criminal charge, but enough "evidence" to allow me to be stalked on my own driveway by a killer, who caused me great bodily injury and put on a false arrest show for Mr. Maviglio and his gangstalkers, who I reasonably believe are now working with the so-called Behavioral Services Division of the County.

I look forward to a prompt, honest, and complete response within ten (10) calendar days. Thank you.

Sincerely,

Parvin Olfati

2

1

2  **DECLARATION OF SERVICE IN PERSON**

3  I, STEVEN M. KAMP, declare and state as follows:

4  1.    I am over the age of 18, and reside in the County of Sacramento, State of California.

5  2.    I am not a party to this lawsuit. I represent the Respondent in this action, Ms. Parvin Olfati.

6  3.    On June 2, 2022, I caused to be served by hand delivery on counsel for the Defendants in this action a true and correct copy of:

7

8  **REPLY MEMORANDUM DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF'S PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY**

9

10

11

12  4. Service was affected in person on June 2, 2022 by:

13  Personally delivering a true and correct copy of the above-referenced document to Porter Scott, 350 University Avenue, Suite 200, Sacramento, California 95825 in a manila envelope addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200, Sacramento, CA 95825;

14

15

16  I declare under penalty of perjury that the foregoing statements are based on personal knowledge, and are true and correct. Executed at Sacramento, California, this _2d_ day of June, 2022.

17

18  /s/STEVEN MARK KAMP (California State Bar Number 116817)
STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822

19  Electronic Mail Address: steve.kamp@comcast.net
Telephone: (916) 501-1791 (cellular, voice/text)

20  Attorney for Plaintiff/PRA Petitioner/GC 946.6 Petitioner Ms. Parvin Olfati

21

22

23

24

25

26

27

28

REPLY MEMORANDUM DECLARATION OF STEVEN MARK KAMP IN SUPPORT OF PLAINTIFF's PETITION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY 9

**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
Jordan M. McCroskey, SBN 340068
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706



FILED/ENDORSED

JUN - 6 2022

By: _____E. Medina_____
Deputy Clerk

Attorneys for Defendants
COUNTY OF SACRAMENTO and PAMELA PISANI
*Exempt from Filing Fees Pursuant to Government Code § 6103*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

MS. PARVIN OLFATI,

        Plaintiffs,

v.

COUNTY OF SACRAMENTO; PAMELA
PASANI; JANE ROE DEFENDANT ONE;
JANE ROE DEFENDANT TWO; JANE
ROE DEFENDANT 3-100, JOHN DOE
DEFENDANTS 1-100,

        Defendants.

_____/

CASE NO.  34-2021-00310164

**OBJECTION TO DECLARATION OF
STEVEN KAMP IN SUPPORT OF PETITION
FOR PERMISSION TO FILE LATE TORT
CLAIM AGAINST GOVERNMENTAL
ENTITY**

**Date: June 9, 2022**
**Time: 9:00 a.m.**
**Dept.: 54**
**Reservation No.: 2644627**

Complaint Filed: 10/25/21

      Defendants COUNTY OF SACRAMENTO and PAMELA PISANI hereby submits the following objections to statements and evidence submitted by Plaintiff in the Declaration of Steven Kamp in Support of Plaintiff's Petition for Permission to File Late Tort Claim Against Governmental Entity.

      As an initial matter, it is impermissible to submit evidence in Reply to an opposition as it denies the opposing party of due process. See *Neighbours v. Buzz Oats Enterprises (1990) 217 Cal.App. 3d 325, 335, fn 8*. As such, all evidence submitted in connection with the Reply should be stricken and not

{02720722.DOCX}                1

**OBJECTION TO DECLARATION OF STEVEN KAMP IN SUPPORT OF PETITION FOR PERMISSION TO
FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY**

1  considered. In addition, Defendants submit the follow specific objections to the evidence submitted.

2                                            **I.**

3                  **OBJECTION TO DECLARATION OF STEVEN KAMP**

4                                  **OBJECTION NO. 1:**

5       **Material Objected to:**  In paragraph 2, "true and correct copy of the County of Sacramento

6  (County) electronic mail message response to Plaintiff Parvin Olfati's December 15, 2020, Public

7  Records Act (PRA) request. This County electronic mail message sent on December 16, 2020, in the

8  right hand column of page 1 states 'request closed' and 'fulfilled' because: 'no documents to produce.'"

9       **Grounds for Objection No. 1:** "Except as provided by law, hearsay evidence is inadmissible."

10  (Evid. Code, § 1200, subd. (b).) "Hearsay" is an out-of-court statement offered for its truth. (Evid.

11  Code, § 1200, subd. (a); see also FRE 801(c); and *Plancarte v. Guardsmark*, LLC (2004) 118 CA4th

12  640, 647.) Here, Plaintiff asserts that the email and statements were written by the County and were in

13  response to her PRA request. However, this was a statement made out-of-court and is being offered for

14  its truth. Further, the assertion is not relevant, lacks foundation and call for speculation. Thus, it is

15  inadmissible.

16                                  **OBJECTION NO. 2:**

17       **Material Objected to:**  In paragraph 3, "that the County is responding to with 'no documents to

18  produce.'"

19       **Grounds for Objection No. 2:** "Except as provided by law, hearsay evidence is inadmissible."

20  (Evid. Code, § 1200, subd. (b).) "Hearsay" is an out-of-court statement offered for its truth. (Evid.

21  Code, § 1200, subd. (a); see also FRE 801(c); and *Plancarte v. Guardsmark*, LLC (2004) 118 CA4th

22  640, 647.) Here, Plaintiff asserts that the email and statements were written by the County and were in

23  response to her PRA request. However, this was a statement made out-of-court and is being offered for

24  its truth. Further, the assertion is not relevant, lacks foundation and call for speculation. Thus, it is

25  inadmissible.

26                                  **OBJECTION NO. 3:**

27       **Material Objected to:**  In paragraph 5, "received the County's 'no documents to produce'

28  response . . . County electronic mail messages . . . ."

{02720722.DOCX}                                    2
**OBJECTION TO DECLARATION OF STEVEN KAMP IN SUPPORT OF PETITION FOR PERMISSION TO
FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY**

1   **Grounds for Objection No. 3:** "Except as provided by law, hearsay evidence is inadmissible."
2   (Evid. Code, § 1200, subd. (b).) "Hearsay" is an out-of-court statement offered for its truth. (Evid.
3   Code, § 1200, subd. (a); see also FRE 801(c); and *Plancarte v. Guardsmark*, LLC (2004) 118 CA4th
4   640, 647.) Here, Plaintiff asserts that the email and statements were written by the County and were in
5   response to her PRA request. However, this was a statement made out-of-court and is being offered for
6   its truth. Further, the assertion is not relevant, lacks foundation and call for speculation. Thus, it is
7   inadmissible.

8                                            **OBJECTION NO. 4:**

9   **Material Objected to:** In paragraph 6, "the County response to this PRA request was an
10  electronic mail message stating that the county had no documents. . . . [T]hese documents which were
11  created by Defendant County . . . ."

12  **Grounds for Objection No. 4:** "Except as provided by law, hearsay evidence is inadmissible."
13  (Evid. Code, § 1200, subd. (b).) "Hearsay" is an out-of-court statement offered for its truth. (Evid.
14  Code, § 1200, subd. (a); see also FRE 801(c); and *Plancarte v. Guardsmark*, LLC (2004) 118 CA4th
15  640, 647.) Here, Plaintiff asserts that the email and statements were written by the County and were in
16  response to her PRA request. However, this was a statement made out-of-court and is being offered for
17  its truth. Further, the assertion is not relevant, lacks foundation and call for speculation. Thus, it is
18  inadmissible.

19                                           **OBJECTION NO. 5:**

20  **Material Objected to:** In paragraph 9, "[t]he County's December 16, 2020, statement that it
21  had 'no documents to produce' was false when made, because in fact County had created the December
22  10, 14, 15, and 18 electronic mail messages and related documents it would later attach . . . ."

23  **Grounds for Objection No. 5:** "Except as provided by law, hearsay evidence is inadmissible."
24  (Evid. Code, § 1200, subd. (b).) "Hearsay" is an out-of-court statement offered for its truth. (Evid.
25  Code, § 1200, subd. (a); see also FRE 801(c); and *Plancarte v. Guardsmark*, LLC (2004) 118 CA4th
26  640, 647.) Here, Plaintiff asserts that the email and statements were written by the County and were in
27  response to her PRA request. However, this was a statement made out-of-court and is being offered for
28  its truth. Further, the assertion is not relevant, lacks foundation and call for speculation. Thus, it is

**OBJECTION TO DECLARATION OF STEVEN KAMP IN SUPPORT OF PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY**

1 | inadmissible.

2 | ## II.

3 | ## OBJECTION TO EXHIBITS

4 | ## OBJECTION NO. 1:

5 | **Material Objected to:** Exhibit J: County of Sacramento Public Records Act Request Reference

6 | Number 20-4765

7 | **Grounds for Objection No. 1:** A party may not attach evidence to their reply. "While the code

8 | provides for reply papers, it makes no allowance for submitting additional evidence or filing a

9 | supplemental separate statement. (§ 437c, subd. (b).)" (*San Diego Watercrafts, Inc. v. Wells Fargo*

10 | *Bank, N.A.* (2002) 102 Cal.App.4th 308, 313.)

11 | ## OBJECTION NO. 2:

12 | **Material Objected to:** On Exhibit J: County of Sacramento Public Records Act Request

13 | Reference Number 20-4765, all text under the "Timeline" section including but not limited to

14 | "Request closed, fulfilled (no documents to produce)."

15 | **Grounds for Objection No. 1:** "Authentication of a writing is required before it may be

16 | received into evidence." (Evid. Code, § 1401.) The document lacks foundation. Plaintiff has not

17 | authenticated or laid a foundation that this writing was in fact from the County. Thus, it is inadmissible.

18 |

19 | Dated: June 6, 2022                     PORTER SCOTT

20 |                                         A PROFESSIONAL CORPORATION

21 |

22 |                                 By

23 |

24 |                                         _____

25 |                                         Carl L. Fessenden
                                            Jordan McCroskey
                                            Attorneys for Defendants

26 |

27 |

28 |

{02720722.DOCX}                          4

**OBJECTION TO DECLARATION OF STEVEN KAMP IN SUPPORT OF PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY**

*Olfati v. County of Sacramento et al.*
**Sacramento County Superior Court – Case No. 34-2021-00310164**

## DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

That on the date below, I served the following **OBJECTION TO DECLARATION OF STEVEN KAMP IN SUPPORT OF PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY** on all parties in the said action as addressed below by causing a true copy thereof to be served:

|   | |
|---|---|
|  | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| X | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
|  | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
|  | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
|  | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

*Attorney for Plaintiff*
Steven Mark Kamp
STEVEN KAMP LAW OFFICES
22 Petrilli Circle
Sacramento, CA 95822
Steve.kamp@comcast.net

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California, on June 6, 2022.

Estefanie Reyes

_____
Estefanie Reyes

{02720722.DOCX}                                       5
**OBJECTION TO DECLARATION OF STEVEN KAMP IN SUPPORT OF PETITION FOR PERMISSION TO FILE LATE TORT CLAIM AGAINST GOVERNMENTAL ENTITY**

later than June 23, 2022.

Sanctions awarded herein are to be paid by Plaintiff to Defendant's counsel by no later than July 11, 2022. If sanctions are not paid by that date, Defendant may prepare for the Court's signature a formal order granting the sanctions, which may then be enforced as a separate judgment. (Newland v. Superior Court (1995) 40 Cal.App.4th 608, 615.)

The minute order is effective immediately.  No formal order pursuant to CRC Rule 3.1312 or further notice is required.

---

Item   16    2021-00310164-CU-CR

Parvin Olfati vs. County of Sacramento

Nature of Proceeding:    Petition for Permission to File Late Tort Claim

Filed By:   Kamp, Steven Mark

Plaintiff Parvin Olfati's ("Plaintiff") Petition to File a Late Tort Claim is GRANTED.

Defendants County of Sacramento ("Defendant Sacramento County") and Mental Health Counselor Pamela Pisani's ("Defendant Pisani") (collectively "Defendants") filed objections following Plaintiff's Reply briefing. Defendants specifically object to the supporting declaration provided with Plaintiff's Reply ("the Declaration of Steven Kamp"). Defendants raise issue with the exhibits attached to the Declaration of Steven Kamp and raise evidentiary objections on grounds of hearsay and improper authentication. The Court does note that it is elementary that points raised for the first time in a Reply brief are not considered. (See St. Mary v. Superior Court (2014) 223 Cal.App.4th 762, 783; Campos v. Anderson (1997) 57 Cal.App.4th 784, 794, fn. 3.) However, the Court declines to rule on Defendants' evidentiary objections as they are immaterial to the Court's decision on the Petition.

FACTS:

Plaintiff filed her Complaint on October 25, 2021, alleging eight causes of action - (1) Invasion of Privacy, (2) Intentional Infliction of Emotional Distress, (3) Trespass, (4) Negligence, (5) False Light, (6) Defamation, (7) Negligent Training, and (8) Respondeat Superior. (ROA 1.) Plaintiff named as Defendants the County of Sacramento ("Defendant Sacramento County") and Mental Health Counselor Pamela Pisani ("Defendant Pisani") (collectively "Defendants"). (Ibid.) The causes of action for Negligent Hiring and Respondeat Superior were alleged against Defendant Sacramento County, and the remaining causes of action were alleged against Defendant Pisani. (Ibid.)

On January 28, 2022, Defendants filed a Special Motion to Strike pursuant to Code of Civil Procedure section 425.16 ("anti-SLAPP Motion"). (ROA 11.) On April 21, 2022, this Court denied Defendants' anti-Slapp Motion finding that the Defendants failed to meet their initial burden that the challenged claims arose from protected speech. (ROA 28.) The Court notes Plaintiff also has a Motion for Leave to File a First Amended Complaint ("FAC") to plead newly discovered facts, related new defendants, and new causes of action derived from the Defendants anti-SLAPP Motion. (Item No. 16 on this

June 9, 2022, calendar.) As discussed further in the Court's ruling on same, Plaintiff's proposed FAC would name additional Defendants Sergeant Ronald Briggs, Jennifer Reiman, and Jennifer Stewart. Plaintiff's proposed FAC would include the following additional causes of action: (9) Tom Bane Civil Rights Act, (10 &11) Federal Civil Rights Act, and (12) Public Records Act Petition for Declaratory Judgment and Writ of Mandamus.

Plaintiff contends the accrual of the claims subject to this Petition occurred on January 28, 2022, the date Defendants "first revealed the underlying facts and parties associated with these claims in their [anti-SLAPP motion]." (Mov. P&A, p. 6: 8-12.) Specifically, Plaintiff asserts that she was unaware of the "December 2020 facts giving rise to the supplemental CGCA claim and its' [sic] new causes of action (and new defendants) until January 28, 2022, because these facts were in County electronic mail messages that Defendant County kept hidden from its' [sic] actions on [Plaintiff's] Public Records Act (PRA) requests by refusing to respond . . . or claiming no documents existed . . . ."(Mov. P&A, p. 7: 1-5 [citing to Kemp Decl. ¶ 4].)

In this regard, on April 4, 2022, Plaintiff submitted a Supplemental California Government Claims Act Claim ("Supplemental Claim") to Defendant Sacramento County. (Kamp Decl. ¶ 4, Ex. F.) Plaintiff's Supplemental Claim described the following claim:

> "This letter and the attached form is the [Plaintiff's] update with newly discovered previously unavailable information from County records . . . which is a California Government Code 910 victim compensation claim for the damages [Plaintiff] suffered on December 14, 2020, when Ms. Pamela Pisani . . . ambushed me, trespassed my house, defamed me, invaded my privacy, and intentionally caused me to suffer severe emotional distress. It now appears from previously undisclosed and suppressed County information that claimant is the victim of <u>additional related acts by Pisani, and acts by . . . Jennifer Reiman and Jennifer Stewart, and County Sheriff Sergeant Ronald Briggs that were committed on the 2020 dates of December 10-14 and 28 . . .</u> "

(Ibid. [emphasis added].)

Plaintiff again reiterates that she was not made aware of this information until made available by Defendant Sacramento County on January 28, 2022, and March 8, 2022.

In a letter dated April 9, 2022, Defendant Sacramento County rejected Plaintiff's claims subject to this Petition on grounds that the claims were "untimely". (Kamp Decl. ¶ 5; Ex. G.)

Plaintiff filed this Petition on May 17, 2022. (ROA 36-38.)

DISCUSSION:

The Government Claims Act "establishes certain conditions precedent to the filing of a lawsuit against a public entity." (Gov. Code, § 810 et seq.) As relevant here, a plaintiff must timely file a claim for money or damages with the public entity. (Gov. Code, § 911.2.) The failure to do so bars the plaintiff from bringing suit against that entity. (Gov. Code, § 945.4; State of California v. Superior Court (2004) 32 Cal.4th 1234, 1237.) "'[T]he claims presentation requirement applies to all forms of monetary demands,

regardless of the theory of the action . . . .' [Citation.] 'The policy underlying the claims presentation requirements is to afford prompt notice to public entities. This permits early investigation and evaluation of the claim and informed fiscal planning in light of prospective liabilities.' [Citation.]" (California Restaurant Management Systems v. City of San Diego (2011) 195 Cal.App.4th 1581, 1591.)

A claim relating to a cause of action for personal injury or injury to personal property must be presented within six months after the accrual of the cause of action. (Gov. Code, § 911.2(a).) For purposes of the claim presentation requirement, the date of accrual is the same date on which the cause of action would accrue within the meaning of the applicable statute of limitations in an action against a nonpublic entity. (Gov. Code., § 901; see also K.J. v. Arcadia Unified School Dist. (2009) 172 Cal.App.4th 1229, 1239.) "Timely claim presentation is not merely a procedural requirement, but is a condition precedent to the claimant's ability to maintain an action against the public entity. [Citation.] 'Only after the public entity's board has acted upon or is deemed to have rejected the claim may the injured person bring a lawsuit alleging a cause of action in tort against the public entity.' [Citation.]" (California Restaurant Management Systems, supra, 195 Cal.App.4th at p. 1591.)

Under Government Code section 945.4, a person seeking to sue a public entity for money or damages must generally first file a claim with that entity. (Gov. Code, § 945.4.) The claim must be filed within six months of the accrual of the plaintiff's cause of action, and if it is not timely filed, the plaintiff must then file, under Government Code section 911.4, a request with the public entity for permission to file a late claim. If such request is denied, the plaintiff's next step is to invoke the provisions of Government Code section 946.6 and petition the court for relief from the claim-filing requirements of Section 945.4. (Han v City of Pomona (1995) 37 Cal.App.4th 552, 557.) If a claim is rejected or is not ruled on within 45 days (deemed rejected) under Government Code section 945.6, subdivision (a), a civil action must be filed within six months after service of rejection of any claim.

Where, as here, the public entity denies leave to present a late claim, the claimant may petition the court under section 946.6 for relief from the claim presentation requirement. (Gov. Code, § 946.6(a).) The Court must grant the petition pursuant to Government Code section 946.6(c) "if the claimant demonstrates by a preponderance of the evidence the application to the public entity under Government Code section 911.4 was made within a reasonable time <u>not exceeding one year after the accrual of the cause of action</u>, and <u>one of the other four requirements listed in Government Code section 946.6, subdivision (c) is met.</u>" (Munoz v. State of California (1995) 33 Cal.App.4th 1767, 1778 [emphasis added].)

> The court shall relieve the petitioner from the requirements of Section 945.4 if the court finds that the application to the board under Section 911.4 was made within a reasonable time not to exceed [one year] and was denied or deemed denied pursuant to Section 911.6 and that one or more of the following is applicable:
>
> > (1) The failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner from the requirements of Section 945.4.

  (2) The person who sustained the alleged injury, damage, or loss was a minor during all of the time specified in Section 911.2 for the presentation of the claim.

  (3) The person who sustained the alleged injury, damage, or loss was a minor during any of the time specified in Section 911.2 for the presentation of the claim, provided the application is presented within six months of the person turning 18 years of age or a year after the claim accrues, whichever occurs first.

  (4) The person who sustained the alleged injury, damage, or loss was physically or mentally incapacitated during all of the time specified in Section 911.2 for the presentation of the claim and by reason of that disability failed to present a claim during that time.

(Gov. Code, § 946.6(c).)

The trial court's discretion in granting or denying a petition for relief under section 946.6 is not "unfettered." (Bettencourt v. Los Rios Community College Dist. (1986) 42 Cal.3d 270, 275.) "It is "'to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.'" [Citation.]" (Ibid.) "Section 946.6 is a remedial statute . . . . As such, it is construed in favor of relief whenever possible. [Citation.]" (Ibid.) "The policy favoring trial on the merits is the primary policy underlying section 946.6. [Citation.] In order to implement this policy, any doubts should be resolved in favor of granting relief. [Citation.]" (Id. at p. 276.)

In determining whether relief is warranted, the court will consider the petition, any supporting or opposing affidavits, and any other evidence received at the hearing on the petition. (Gov. Code, § 946.6(e).)

Timing/Tolling

Here, Plaintiff seemingly concedes that the underlying conduct, giving rise to the new causes of action subject to this Petition, relate to alleged acts by "Pisani, and acts by . . . Jennifer Reiman and Jennifer Stewart, and County Sheriff Sergeant Ronald Briggs that were committed on the 2020 dates of December 10-14 and 28." (Kamp Decl. ¶ 4, Ex. F.) As Defendants point out in their Opposition, these claims appear to be well past the one-year statute of limitations period and because they are "submitted more than a year [later], the plaintiff is barred from adding the new allegations against the new defendants." (Oppos., p. 4: 4-6.)

However, citing to the case Pashley v. Pacific Electric Railway Co. (1944) 25 Cal.2d 226, Plaintiff also argues that the applicable statute of limitations was tolled due to the Defendants' fraudulent concealment - that the Defendant committed fraud by concealing the acts of Reiman, Stewart and Briggs, and the additional facts of Pisani, by not producing records in response to Plaintiff's PRA request. (Mov. P&A, p. 18: 13-16.) In this regard, Plaintiff contends the conduct of Defendants between December 2020 and January 28, 2022, constituted fraudulent concealment, which would toll the applicable statute of limitations, including the Government Claims Act. (Mov. P&A, p. 7: 18-19.)

Plaintiff points out in her Reply that Defendants leave this argument unaddressed in their Opposition and accordingly "concede through their silence". (Reply, p. 12: 3-6.) The Court agrees that Defendants have failed to address this argument.

The Court construes Defendants' lack of opposition as a concession on the merits. ( D.I. Chadbourne, Inc. v. Superior Court (1964) 60 Cal.2d 723, 728, fn. 4 [where nonmoving party fails to oppose a ground for a motion "it is assumed that [nonmoving party] concedes" that ground].)

Surprise

Here, Plaintiff argues that the failure to timely file a tort claim was the result of surprise. In Reply, Plaintiff makes clear that she does not raise any arguments regarding excusable neglect. (Reply, p. 12: 3-4.) Accordingly, the crux of Plaintiff's argument in this regard is that Plaintiff was "surprised" on January 28, 2022, when she first discovered additional facts when Defendants filed their anti-SLAPP Motion. (Mov. P&A, p. 9: 5-7.)

Defendants argue in Opposition only that Plaintiff's Petition should be denied because their arguments are not sufficient to warrant excusable neglect. Defendants rely primarily on the Rodriguez case, and assert that here, similar to Rodriguez, Plaintiff claims she was not alerted to any liability until after the claims period passed  - "plaintiff's request for relief should be denied because she has not shown sufficient facts to indicate excusable neglect." (Oppos., p. 5: 21 - 6: 3 [citing to Rodriguez v. County of Los Angeles (1985) 171 Cal.App.3d 171, 174].)

Defendants do correctly note in their Opposition that the "mere recital of mistake, inadvertence, surprise or excusable neglect is not sufficient to warrant relief. Relief on grounds of mistake, inadvertence, surprise or excusable neglect is available only on a showing that the claimant's failure to timely present a claim was reasonable when tested by the objective 'reasonably prudent person' standard." (Oppos., p. 5: 7-14 [citing to Department of Water & Power v. Superior Court (2000) 82 Cal.App.4th 1288, 1293].)

Plaintiff contends that no reasonable person could have conceived, much less alleged the specifics of the Defendants records existing in December 2020 would reveal unless they had access to those records. (Mov. P&A, p. 15: 1-2.) Further, Plaintiff asserts that she filed two PRA requests, but the Defendants refused to respond or claimed it had no records. (Mov. P&A, p. 15: 2-5; Kamp Decl. ¶ 7.)

Defendants do not rebut the above assertion in their Opposition and are silent on the issue of "surprise". The Court construes Defendants' lack of opposition as a concession on the merits. (D.I. Chadbourne, Inc. v. Superior Court (1964) 60 Cal.2d 723, 728, fn. 4 [where nonmoving party fails to oppose a ground for a motion "it is assumed that [nonmoving party] concedes" that ground].) Accordingly, the policy favoring trial on the merits prevails.

Prejudice

"[O]nce it has been shown that an application for leave to file a late claim was [timely] made  . . .  and that the failure to present a timely claim 'was through mistake, inadvertence, surprise or excusable neglect' the burden shifts to the public entity to

establish by a preponderance of the evidence that it would be prejudiced if the court [grants the petition]." (Ramirez v. County of Merced (1987) 194 Cal.App.3d 684, 688-689.) "The entity's showing of prejudice, when asserted, . . . require[s] a factual basis for concluding that the delay has substantially impaired the entity's ability to present a full and fair defense on the merits.' [Citation.]" (Id. at p. 689.)

In Opposition, Defendants assert that "Prejudice to the County is not relevant because Petitioners fail to meet their burden to show excusable neglect." Defendants offer no substantive argument in this regard, and accordingly, fail to meet their burden.

CONCLUSION

Plaintiff Parvin Olfati's ("Plaintiff") Petition to File a Late Tort Claim is GRANTED.

Plaintiff's counsel shall prepare an order in accordance with the tentative ruling for the Court's signature pursuant to California Rules of Court, rule 3.1312.

---

Item   17   2021-00310164-CU-CR

Parvin Olfati vs. County of Sacramento

Nature of Proceeding:   Motion to File First Amended Complaint

Filed By:   Kamp, Steven Mark

Plaintiff Parvin Olfati's ("Plaintiff") Motion for Leave to File a First Amended Complaint ("FAC") is GRANTED.

Defendants County of Sacramento ("Defendant Sacramento County") and Mental Health Counselor Pamela Pisani's ("Defendant Pisani") (collectively "Defendants") filed objections following Plaintiff's Reply briefing. Defendants specifically object to the supporting declaration provided with Plaintiff's Reply ("the Declaration of Steven Kamp"). Defendants raise issue with the exhibits attached to the Declaration of Steven Kamp and raise evidentiary objections on grounds of hearsay and improper authentication. The Court does note that it is elementary that points raised for the first time in a Reply brief are not considered. (See St. Mary v. Superior Court (2014) 223 Cal.App.4th 762, 783; Campos v. Anderson (1997) 57 Cal.App.4th 784, 794, fn. 3.) However, the Court declines to rule on Defendants' evidentiary objections as they are immaterial to the Court's decision on the motion.

FACTS:

Plaintiff filed her Complaint on October 25, 2021, alleging eight causes of action - (1) Invasion of Privacy, (2) Intentional Infliction of Emotional Distress, (3) Trespass, (4) Negligence, (5) False Light, (6) Defamation, (7) Negligent Training, and (8) Respondeat Superior. (ROA 1.) Plaintiff named as Defendants the County of Sacramento ("Defendant Sacramento County") and Mental Health Counselor Pamela Pisani ("Defendant Pisani") (collectively "Defendants"). (Ibid.) The causes of action for Negligent Hiring and Respondeat Superior were alleged against Defendant Sacramento County, and the remaining causes of action were alleged against Defendant Pisani. (Ibid.)

On January 28, 2022, Defendants filed a Special Motion to Strike pursuant to Code of

# EXHIBIT D

{01732159.DOCX}

FILED
Superior Court Of California,
Sacramento
06/10/2022
rsanmiguel
By_____ , Deputy
Case Number:
**34-2021-00310164**

1   \STEVEN MARK KAMP (California State Bar Number 116817)
     STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95829
2   Electronic Mail Address: steve.kamp@comcast.net
3   Telephone: (916) 501-1791 (cellular, voice/text)
     Attorney for Plaintiff Ms. Parvin Olfati

4

5

6

7

8

9            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10              IN AND FOR THE COUNTY OF SACRAMENTO

11

12                            No. **34-2021-00310164-CU-CE-GDS**

13   Ms. PARVIN OLFATI, Plaintiff         FIRST AMENDED COMPLAINT FOR
                                   DAMAGES AND DEMAND FOR JURY
14       v.                            TRIAL

15   COUNTY OF SACRAMENTO; PAMELA
16   PISANI; JENNIFER REIMAN;
     JENNIFER STEWART; SHERIFF'S
17   SERGEANT RONALD BRIGGS; JANE
     ROE DEFENDANT ONE; JANE ROE
18   DEFENDANT TWO; JANE ROE
     DEFENDANTS 3-100; JOHN DOE
19   DEFENDANTS 1-100, Defendants

20

21

22   Plaintiff Ms. Parvin Olfati by her attorney, for her First Amended Complaint alleges as follows:

23

24

25      **STATEMENT OF JURISDICTION, VENUE, AND REASONS FOR**

26      **AMENDMENT**

27   1. This is Plaintiff's First Amended Complaint, filed in order to add new claims against

28      Defendant COUNTY and Defendant PISANI, and to add claims against new parties, who

PLAINTIFF's FIRST AMENDED COMPLAINT 1

1    are COUNTY employees:  Sheriff's Department Sergeant Ronald BRIGGS, and

2    COUNTY Division of Behavioral Health Services employees Jennifer REIMAN and

3    Jennifer STEWART. The facts revealing these claims were unknown to PLAINTIFF until

4    January 29, 2022, when the undersigned counsel for PLAINTIFF received Defendant

5    COUNTY's Declaration of Jennifer Reiman and attachments ("Reiman Declaration")

6    filed by Defendants COUNTY and PISANI in support of the COUNTY/PISANI Anti-

7    SLAPP Statute Motion to Strike calendared in Department 54 for April 20, 2022

8    ("Defendants' Motion"), which the Court denied on April 21, 2022. The Reiman

9    Declaration revealed facts and exhibits showing that: (1) the acts of PISANI and

10   COUNTY pleaded in the Initial Complaint were part of a larger and coordinated

11   collection of acts by COUNTY Sheriff Sergeant Ronald Briggs, COUNTY Behavioral

12   Health Services employees Jennifer REIMAN and Jennifer STEWART, and Defendant

13   PISANI, all acting in the course and scope of their employment with COUNTY and under

14   color of state law. These Defendants  committed these acts to retaliate against

15   PLAINTIFF for her federal and state constitutionally protected speech and petitioning

16   activity of sending a Police Report to the COUNTY Sheriff that Defendant BRIGGS

17   without investigation or contacting PLAINTIFF required "get[ting] a mental health

18   worker to check in with the letter writer" and use COUNTY Community Support Team

19   that BRIGGS stated "would be more effective" in retaliating against PLAINTIFF by

20   intruding into zone of privacy in her residence and PLAINTIFF's "identified belief law

21   enforcement is stalking her and colluding against her" ; and (2) that Defendants PISANI,

22   Jennifer REIMAN and Jennifer STEWART within the course and scope of their

23   employment with COUNTY: defamed PLAINTIFF; placed PLAINTIFF in a false light;

24   intentionally inflicted emotional distress upon PLAINTIFF; and acted negligently toward

PLAINTIFF's FIRST AMENDED COMPLAINT 2

PLAINTIFF, all by knowingly and/or recklessly publishing a false statement that PLAINTIFF was the restrained party in a restraining order obtained against her by a Member of the Sacramento City Council.   Number (1) gives rise to the claims herein for United States Constitution First Amendment retaliation under United States Code, Title 42, Section 1983, and California Tom Bane Civil Rights Act threats, intimidation, and coercion under California Civil Code Section 52.1. Number (2) gives rise to common law claims for defamation (libel) and false light invasion of privacy under Civil Code Sections 43, 44 and 45, and under the right to privacy in Article I, Section 1 of the California Constitution. These acts of retaliation and defamation are displayed in the COUNTY records attached to the COUNTY Reiman Declaration as Exhibits A, B, C, D and F (Exhibit B is Plaintiff's November 9, 2020 Police Report as received by COUNTY's Sheriff and Defendant BRIGGS; Exhibits A, C, and D are the COUNTY's own communications).

2.   This action remains an unlimited civil action for damages in excess of twenty-five thousand dollars ($25,000.00) by Plaintiff Ms. PARVIN OLFATI against County of Sacramento Senior Mental Health Counselor Pamela Pisani ("Pisani"); multiple Jane Roe and John Doe Defendants employed by Defendant County of Sacramento; and the County of Sacramento ("County"), plus newly added Defendants COUNTY Sheriff's Sergeant Ronald BRIGGS; COUNTY Mental Health Program Coordinator Jennifer REIMAN; and COUNTY Senior Mental Heath Counselor Jennifer STEWART. Pursuant to Code of Civil Procedure Section 427.10 and Government Code Section 6262, PLAINTIFF is also joining a claim for mandamus relief against COUNTY's Sheriff for the Sheriff's Department refusal to respond in writing to or produce records in response to multiple California Public Records Act (PRA) requests from PLAINTIFF, including requests for

PLAINTIFF's FIRST AMENDED COMPLAINT 3

records included in the Reiman Declaration; and against COUNTY for COUNTY's Clerk of the Board Office falsely responding that COUNTY had no records responsive to PLAINTIFF's Public Records Act (PRA) request of December 15, 2020 and subsequent PRA requests for records related to or of the PISANI December 14, 2020 acts, when in fact COUNTY had these records that COUNTY thirteen months later used in its' Reiman Declaration.

3. Venue is laid within Sacramento County, in that: (a) PLAINTIFF resides in Sacramento County; (b) all Defendants reside in or do business in Sacramento County; (c) the events giving rise to this action took place in Sacramento County.

**<u>NOTICE OF CLAIM</u>**

4. PLAINTIFF first became aware of the acts of Defendants PISANI and COUNTY giving rise to this action on December 14, 2020, when Defendant PISANI acting on behalf of Defendant COUNTY invaded Plaintiff's privacy and personal affairs; intentionally inflicted emotional distress; acted negligently toward PLAINTIFF; and trespassed on Plaintiff's residence property.

5. On April 5, 2021, PLAINTIFF filed with the County of Sacramento ("County") Office of the Clerk of the Board of Supervisors a California Government Tort Claims Act (CGTCA) claim seeking compensation for the acts by the County of Sacramento and its' employees complained of herein, as required by and pursuant to California Government Code Section 910 et. Seq. On April 23, 2021, the County through its' authorized agent George Hills Company, Inc. mailed to Plaintiff a written rejection of Plaintiff's claim. Defendant County's claim rejection letter lists "claim no." as L2100524, and "our file no." as 87388-35.

6.   On April 4, 2022, PLAINTIFF filed a supplemental CGTCA claim with the County Office of the Clerk of the Board of Supervisors under claim no. L2100524 and file no. 87388-35 that made claims for the damages to PLAINTIFF from the acts of PISANI, REIMAN, STEWART, BRIGGS and COUNTY not discovered by PLAINTIFF until January 29, 2022. By letter dated April 9, 2022 (a Saturday), COUNTY denied this supplemental claim, under the same claim and file numbers; see Exh.Twelve-A hereto.

7. This initial Complaint in this action was filed on Monday, October 25, 2021, the first business day after Saturday, October 23, 2021, the 183rd calendar day after April 23, 2021. This First Amended Complaint is proposed to be filed in Plaintiff's Motion For Leave of Court to File First Amended Complaint filed on May 16, 2022.

## PARTIES

### Plaintiff

8.  Plaintiff Ms. PARVIN OLFATI resides at 1859 45th Street in the City of Sacramento, a location in the neighborhood known as Elmhurst, a neighborhood for which there is an Elmhurst Neighborhood Association, and that is often referred to as the "Elmhurst Community."

9.  PLAINTIFF has resided at 1859 45th Street in the City of Sacramento since 2002; controls access to this property; and enjoys a zone of privacy, autonomy, and charting her own destiny in her residence and associated curtilage, including but not limited to the front porch and driveway. Plaintiff on December 14, 2020 when Plaintiff experienced the events giving rise to this action was 68 years of age; she is now age 69. Plaintiff is not now a client of and has never been a client of Defendant COUNTY's Department of Health Services Division of Behavioral Health Services.  Plaintiff has never been the restrained party in or the subject of any restraining order by any Member of the

PLAINTIFF's FIRST AMENDED COMPLAINT 5

1  Sacramento City Council.  Plaintiff has filed multiple Public Records Act (PRA) requests

2  with Defendant COUNTY's Sheriff's Department that have gone unanswered, including

3  but not limited to PRA requests for records that Defendant PISANI claimed to Plaintiff

4  that PISANI had received from the Sheriff's Department; records of acts by Defendant

5  Sergeant Ronald BRIGGS; and records of the Sheriff's Department interactions regarding

6  PLAINTIFF with County Behavioral Health and Defendants PISANI, REIMAN, and

7  STEWART giving rise to this action. PLAINTIFF has also filed multiple PRA requests

8  with Defendant COUNTY's Clerk of the Board of Supervisors Office for records of

9  COUNTY departments and employees outside of the Sheriff's Department, including

10  PRA requests for PISANI records of Sheriff's Department communications with PISANI,

11  to which COUNTY's Clerk of the Board office responded did not exist. COUNTY made

12  this response claiming it had no records when in fact COUNTY was in possession of them

13  and COUNTY would later use them as exhibits to the Reiman Declaration in support of

14  the COUNTY Motion to have this action dismissed under the Anti-SLAPP Statute.

10. PLAINTIFF at all times prior to approximately 4:33 p.m. on December 14, 2020 had

never met nor heard of Defendants Pamela PISANI ("Pisani"), Jennifer REIMAN

("Reiman"), Jennifer STEWART ("Stewart"), or County Sheriff's Sergeant Ronald

BRIGGS ("Briggs").

11. PLAINTIFF  seven months and five days before December 14, 2020  (on May 9, 2020),

while Plaintiff was alone in  her house, was subjected to no-warrant false arrest and

excessive force by City of Sacramento Police Department Officers Jared Robinet and

Maryna Stanionis where Officer Robinet hid himself around the corner out of sight of

Plaintiff and awaited a hand signal from 1870 45th Street resident Barbara Andres, a

sequence of events that resulted in: (i) Plaintiff being stalked from behind without an

PLAINTIFF's FIRST AMENDED COMPLAINT 6

1    announcement from Officer Robinet, who stalked Plaintiff all the way up the driveway,

2    north side front porch steps, front porch, and  inside Plaintiff's residence living room

3    without a warrant, and grabbed Plaintiff from behind after pushing open the closing front

4    door that Plaintiff had just closed; (ii) Plaintiff being subjected to excessive force that

5    fractured and lacerated Plaintiff's right hand ring finger and caused other great bodily

6    injury; (iii) Plaintiff being handcuffed on her front porch and dragged in full public view

7    to the Stanionis City Police car; (iv) Plaintiff being subjected to an intrusive body search

8    in full public view; (v) Plaintiff being detained handcuffed in a doors locked windows

9    closed Stanionis City Police car on a 91 degree day where Plaintiff was deprived of both

10    water and *Miranda v. Arizona* warnings; (vi) Plaintiff being subjected to custodial

11    interrogation while handcuffed where City Police Officer Stanionis did not question

12    Plaintiff until after Stanionis had met at the 1901 45th Street house of Steven Maviglio

13    with Maviglio and 1870 45th Street resident Barbara Andres and received interrogation

14    content from Maviglio and Andres (and whichever City Police officers were hiding at

15    Maviglio's house) and (vii) Plaintiff being served with a notice to appear for a California

16    Penal Code Section 148(a)(1) "resisting arrest" charge that on October 15, 2020, was

17    dismissed by the Sacramento County District Attorney on its own motion for Insufficient

18    Evidence, five days before the scheduled arraignment.  Plaintiff  is informed and believed

19    that on and before December 14, 2020,  Defendants Pisani, Reiman and/or Stewart;

20    Defendant County through its' County Sheriff and County Behavioral Health; and one or

21    more of the Jane Roe Defendants and/or John Doe Defendants was or were aware of these

22    facts, including but not limited to Plaintiff's written police reports of the City of

23    Sacramento Police Department misconduct suffered by Plaintiff that Plaintiff copied to the

24    County Sheriff or included in one or more communications to County Behavioral Health

PLAINTIFF's FIRST AMENDED COMPLAINT 7

1   or other COUNTY agencies or employees, including but not limited to the

2   communications in the Reiman Declaration Exhibits B and E; and/or the federal Eastern

3   District of California case *Parvin Olfati v. City of Sacramento et al.,* Case No. 2:21-cv-

4   00606-KJM-CKD, filed on April 2, 2021.

5   **Defendant County of Sacramento**

6

7   12. Defendant County of Sacramento ("County") is a public entity organized and existing

8       under the laws of the State of California; is the employer of individual capacity

9       Defendants Pamela Pisani, Jennifer Reiman, Jennifer Stewart and Sheriff's Department

10      Sergeant Ronald Briggs; is believed to be the employer of one or more of Defendant Roe

11      One, Defendant Roe Two, and one or more of the Jane Roe Defendants 3-100 and John

12      Doe Defendants 1-100 named herein; and is the employer of one or more supervisorial

13      employees who supervised these named Defendants. Defendant COUNTY operates a

14      Department of Health Services ("County Health") with a Division of Behavioral Health

15      Services ("County Behavioral Health") where Defendants Pisani, Stewart and Reiman

16      were employed in December 2020, and where Defendants Pisani, Stewart, and Reiman are

17      believed to be still employed. Defendant County also operates a Sheriff's Department

18      ("County Sheriff") that in December 2020 employed Defendant BRIGGS and still

19      employs him; that Pisani said was the source of her information and authority for

20      committing her acts against Plaintiff alleged herein; that has refused to give Plaintiff

21      records of the content regarding Plaintiff that Defendant Pisani said the County Sheriff

22      had given to her; and is revealed in the Reiman Declaration as the source of the retaliation

23      and defamation acts committed by Defendant Sheriff's Sergeant Ronald BRIGGS that set

24      in motion the defamation and retaliation by Defendants REIMAN, STEWART and

25      PISANI.   Defendant County also operates a Clerk of the Board of Supervisors Office,

26

27

28

1   which in Public Records Act (PRA) responses to Plaintiff in 2020 and/or 2021 said it has

2   no records of any content Defendant Pisani says she received from the County Sheriff

3   regarding Plaintiff. PLAINTIFF was thus kept in the dark regarding such content until

4   January 29, 2022, when her undersigned counsel received the Reiman Declaration and its'

5   Exhibit A string of electronic mail messages from or to COUNTY employee Defendants

6   BRIGGS, STEWART, REIMAN and PISANI.

7

8

9   **Defendant Pamela Pisani**

10  13. In December 2020, including but not limited to the dates 10, 11, 14 and 18,  Defendant

11  Pamela PISANI ("Pisani") was employed by Defendant COUNTY as a Licensed Medical

12  Family Therapist (LMFT) and "Senior Mental Health Counselor" on the "Community

13  Support Team" of County Behavioral Health. Defendant PISANI used a business card work

14  address of 3321 Power Inn Road, Suite 110, Sacramento, California 95826; used business

15  card work telephone numbers (916) 804-1135 and (916) 874-2166; and used the business card

16  County electronic mail address PisaniP@saccounty.net   At all times material hereto,

17  Defendant Pisani was acting within the course and scope of her COUNTY employment, and

18  under color of state law. Defendant Pisani is sued in her individual capacity. Included herein

19  as Exhibits "1",  "2" and "3" hereto are still photographs of Plaintiff's cellphone video of

20  Defendant Pisani: (1) and (2) on Plaintiff's residence front porch; and (3) on Plaintiff's

21  residence driveway. Electronic mail messages to and from PISANI giving rise to this action

22  are included in Exhibit A to the COUNTY's Reiman Declaration filed in this action on

23  January 28, 2022 as Register of Actions (ROA) number 15.

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 9

**Defendant Sheriff's Sergeant Ronald Briggs**

14. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto, in November and December of 2020, COUNTY's Sheriff's Department employed Defendant Ronald BRIGGS as a Sergeant assigned to "Problem Oriented Policing" or "POP" at the Sheriff's Department North Division (upon information and belief, Defendant BRIGGS is still employed at COUNTY's Sheriff's Department). As revealed in the Reiman Declaration and Exhibits A and B thereto, Defendant BRIGGS is the COUNTY employee who admits he read Plaintiff's November 9, 2020 Police Report letter (Exhibit Thirteen hereto) and in response thereto, communicated to Defendant Jennifer STEWART as to "how to get a mental health worker to check in with the letter writer because the complaint is unfounded so they cannot make a report but have valid concerns for her emotional well-being" and that "the letter suggests CST [Community Support Team] contact might be more effective (identified belief law enforcement is stalking her and colluding against her)." At all times material hereto, Defendant BRIGGS was acting under color of state law and in the course and scope of his employment with Defendant COUNTY.

**Defendant Jennifer Stewart**

15. Upon information from COUNTY's Reiman Declaration and Exhibit A thereto, in November and December of 2020 COUNTY's Division of Behavioral Health employed Defendant Jennifer STEWART as a Senior Mental Health Counselor, working under the supervision of Defendant REIMAN. (Upon information and belief, STEWART continues to be employed by the COUNTY). Defendant STEWART is the COUNTY Division of Behavioral Health Services employee who communicated to Defendant REIMAN the request by Defendant BRIGGS for County Behavioral Health to take action against

PLAINTIFF's FIRST AMENDED COMPLAINT 10

1    PLAINTIFF.   At all times material hereto, Defendant STEWART was acting under color

2    of state law and in the course and scope of her employment with Defendant COUNTY.

3

4    **Defendant Jennifer Reiman**

5
6    16. Upon information from COUNTY's Reiman Declaration and Exhibits A and C thereto, in

7        November and December of 2020, COUNTY's Division of Behavioral Health Services

8        employed Defendant Jennifer REIMAN as the Mental Health Program Coordinator and

9        direct supervisor assigned to the Community Support Team ("CST") and Mobile Crisis

10       Support Team ("MCST"). This employment continued through at least October 1, 2021.

11       Defendant REIMAN supervised and directed the acts of Defendants PISANI and

12       STEWART alleged herein, and after receiving the communication from Defendant

13       BRIGGS relayed to REIMAN by Defendant STEWART, REIMAN directed Defendant

14       PISANI to take the action against PLAINTIFF requested by Defendant BRIGGS. At all

15
16       times material hereto, Defendant REIMAN was acting under color of state law and in the

17       course and scope of her employment with Defendant COUNTY.

18

19   **Jane Roe Defendant Number One**

20
21   17. Jane Roe Defendant One ("Roe One") is the female driver of the white Chevrolet sport

22       utility vehicle with the California license plate number 8LTE039, who PLAINTIFF saw at

23       the Tuesday Morning store at 2550 Fair Oaks Boulevard (a location in the unincorporated

24       area of the County of Sacramento) on multiple dates, including but not limited to

25       December 22, 2020 at about 11:55:40 a.m.. On December 22, 2020 Defendant ROE ONE

26       in the Tuesday Morning store stalked Plaintiff. On other occasions (in the Ettore's

27       European Bakery and Bella Bru Café restaurants on Fair Oaks Boulevard in the

28

1    unincorporated area of the County of Sacramento), Defendant Roe One attempted to

2    induce or entrap Plaintiff into one or more interactions. Attached as Exhibits "4", "5" "6"

3    and "7" hereto are: (4) a still photograph of the cellphone video taken by Plaintiff of Roe

4    One placing herself in close proximity to Plaintiff in the Bella Bru Café; (5) and (6) still

5    photographs of the cellphone video taken by Plaintiff showing Roe One in Tuesday

6    Morning on December 22, 2020 stalking Plaintiff; and (7) a still photograph of the

7    cellphone video taken by Plaintiff of the car Plaintiff saw being used by Defendant Roe

8    One.  Upon information and belief, Defendant Roe One is employed by Defendant County

9    or serves COUNTY in an agent, representative, or contractor capacity,  and: (i) invaded

10   Plaintiff's privacy and intruded into Plaintiff's private affairs; (ii) communicated to

11   persons other than Plaintiff content that placed Plaintiff in a false light, including but not

12   limited to statements stating that Plaintiff had committed acts or engaged in conduct

13   meriting law enforcement or County Behavioral Health intervention; (iii) communicated

14   to persons other than Plaintiff purported statements of fact, including but not limited to

15   statements stating that Plaintiff had committed acts or engaged in conduct meriting law

16   enforcement or County Behavioral Health intervention; and/or (iv) breached her duty of

17   reasonable care to Plaintiff. Plaintiff as of the filing of this Complaint is unaware of the

18   identity of Defendant Roe One and upon receipt of information from discovery or

19   otherwise will seek leave of Court to amend this Complaint with such identity and serve

20   Roe One within the period of California Code of Civil Procedure Section 474.  At all

21   times material hereto, Defendant ROE ONE was acting under color of state law and in the

22   course and scope of her employment, representative, contractor, or agency relationship

23   with Defendant COUNTY.

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 12

**Jane Roe Defendant Number Two**

18.     Jane Roe Defendant Two ("Roe Two") is the female driver of the convertible Volkswagen with the California license plate "WMGLEN", who was at Bella Bru Café stalking Plaintiff while appearing to work on puzzles, Defendant Roe Two attempted to induce or entrap Plaintiff into an interaction on various dates in 2019 and 2020 at: (i) the Starbucks on 5300 Folsom Boulevard in the City of Sacramento; (ii) the Bella Bru Café on Fair Oaks Boulevard. When Plaintiff stopped going to the 5300 Folsom Boulevard Starbucks in order to avoid Defendant ROE TWO, Defendant Roe Two began appearing at the Bella Bru Café that Plaintiff went to in order to avoid the intrusive presence of Defendant Roe Two. Attached hereto as Exhibits "8", "9" and "10" are still photographs of the cellphone video taken by Plaintiff of Roe Two at the Bella Bru Café of Defendant Roe Two appearing to work on puzzles while placing herself in close proximity to Plaintiff.  Upon information and belief, Defendant Roe Two is employed by or serves Defendant County in an agent, representative or contractor capacity and: (i) invaded Plaintiff's privacy and intruded into Plaintiff's private affairs; (ii) communicated to persons other than Plaintiff content that placed Plaintiff in a false light, including but not limited to statements stating that Plaintiff had committed acts or engaged in conduct meriting law enforcement or County Behavioral Health intervention; (iii) communicated to persons other than Plaintiff purported statements of fact, including but not limited to statements stating that Plaintiff had committed acts or engaged in conduct meriting law enforcement or County Behavioral Health intervention; and/or (iv) breached her duty of reasonable care to Plaintiff. Plaintiff as of the filing of this Complaint is unaware of the identity of Defendant Roe Two and upon receipt of information from discovery or

PLAINTIFF's FIRST AMENDED COMPLAINT 13

1    otherwise will seek leave of Court to amend this Complaint with such identity and serve

2    Roe Two within the period of California Code of Civil Procedure Section 474.  At all

3    times material hereto, Defendant ROE TWO was acting under color of state law and in the

4    course and scope of her employment or agency relationship with Defendant COUNTY.

**Jane Roe Defendants 3-100 and John Doe Defendants 1-100**

19. Upon information and belief, PLAINTIFF alleges that one or females (Jane Roe

Defendants 3-100) and/or males (John Doe Defendants 1-100) have committed one or

more of the acts or omissions alleged in this Complaint. Plaintiff is unaware of their

identities and upon receipt of such information through discovery or otherwise, will seek

leave of Court to amend this Complaint with such identity and serve Roe One within the

period of California Code of Civil Procedure Section 474.  Upon information and belief,

At all times material hereto, JANE ROE Defendants 3-100 and JOHN DOE Defendants 1-

100 were acting under color of state law and in the course and scope of their employment,

representative, contractor, or agency relationship with Defendant COUNTY.


**FACTS**

20. PLAINTIFF re-alleges paragraphs 1-19 of this First Amended Complaint as though fully

set forth herein.

**Plaintiff's Act of Petitioning That Resulted in Retaliation and Defamation**

21. On November 9, 2020,  PLAINTIFF sent via postal mail and electronic mail to Defendant

COUNTY's Sheriff's Department the Police Report/Crime Report letter  that is attached

as Exhibit B to Defendant COUNTY's Reiman Declaration (and as Exhibit Thirteen

hereto) . This Police Report letter reported the theft of Plaintiff's cellphone in the

unincorporated area of the County of Sacramento area in and around Fair Oaks Boulevard

PLAINTIFF's FIRST AMENDED COMPLAINT 14

1  and the community known as Fair Oaks. Since the theft occurred in the unincorporated

2  area of the County of Sacramento, PLAINTIFF sent the report to Defendant COUNTY's

3  County Sheriff, with a copy to the City of Sacramento Police Department. Upon

4  PLAINTIFF's personal knowledge, Defendant COUINTY's Sheriff's Department on its'

5  website encourages persons who are crime victims to file Police Reports/Crime Reports.

6

7  22. On or shortly after November 9, 2020, Defendant COUNTY through its' County Sheriff

8  (including but not limited to Sheriff's Sergeant Ronald Briggs) received the Police Report

9  letter from PLAINTIFF that is attached as Exhibit B to the Reiman Declaration submitted

10  by COUNTY in support of the County Anti-SLAPP Statute Motion.  The Police Report

11  letter states in pertinent part that:

12  
On Saturday, November 7, 2020, at some time after 5:00 p.m., my cellphone (LG G7 ThinQ Silver)
13  was stolen from the car I was driving. This theft occurred as I was driving from Fair Oaks back to 45th
Street in Sacramento.

14

15  The Police Report letter goes on to state the names of multiple individuals PLAINTIFF

16  reasonably believes had a motive to steal or caused to be stolen PLAINTIFF's cellphone, and

17  their motive:

18  
"to gain access to the over one thousand photos and video of suspicious and criminal activities, crime
19  against me, multiple gangstalkers, suspicious cars and drivers who stalk me around the town and many
evidences of multiple crimes against me, my animals, and my house."

20

21  The Police Report letter also discusses acts of the City of Sacramento Police Department acting in

22  collusion with 45th Street residents Steven Maviglio and Barbara Andres on May 9, 2020 to have

23  PLAINTIFF falsely arrested. The Police Report letter describes this event as an example of law

24  enforcement colluding with Steven Maviglio and Barbara Andres against PLAINTIFF.

25

26  23. Defendants BRIGGS and COUNTY did not contact PLAINTIFF regarding this Police

27  Report letter, even though PLAINTIFF"s address was at the top of the Police Report

28  letter.

PLAINTIFF's FIRST AMENDED COMPLAINT 15

1    24. Defendants BRIGGS and COUNTY did not conduct any investigation of this Police

2    Report letter.

3    25. Instead, Defendants BRIGGS, STEWART, REIMAN and COUNTY treated the Police

4    Report as letter "not[ing] concerns about Plaintiff's well-being" and as containing

5    "complaints indicative of potential mental health distress."  Rather than investigating the

6    Police Report letter, writing a postal mail letter to PLAINTIFF, or discussing it with

7    PLAINTIFF,  Defendants BRIGGS, STEWART, REIMAN, PISANI and COUNTY

8    retaliated against PLAINTIFF by sending County Behavioral Health employees and

9    Defendants STEWART, REIMAN and PISANI on a Community Support Team

10   "intervention" mission  to  coerce, threaten, and/or intimidate PLAINTIFF into accepting

11   COUNTY Behavioral Health Services and to force PLAINTIFF to stop filing Police

12   Reports that Defendants would characterize as "complaints indicative of potential mental

13   health distress."

14   26. Defendants BRIGGS, REIMAN, STEWART and COUNTY committed these acts to force

15   PLAINTIFF to cease filing Police Reports with the COUNTY Sheriff regarding criminal

16   acts PLAINTIFF reasonably believed had been committed against her, the persons who

17   PLAINTIFF believed had committed these acts, their motivations, and their possible

18   collusion with law enforcement.

19   27. Defendants BRIGGS, REIMAN, STEWART  and/or PISANI determined that the

20   COUNTY should use its' Community Support Team (CST) to coerce, threaten, and

21   intimidate PLAINTIFF into accepting COUNTY "intervention"  that would require

22   PLAINTIFF to stop filing Police Reports with the COUNTY Sheriff, and/or to accept

23   COUNTY mental health services that would enable COUNTY 's Sheriff's Department

24   and other law enforcement agencies to ignore and refuse to investigate PLAINTIFF's

1    legitimate Police Reports and other writings, because the reports from PLAINTIFF could

2    be treated as coming from a person receiving mental health services from Defendant

3    COUNTY.

4    28. Defendants COUNTY, BRIGGS, REIMAN, STEWART and/or PISANI had the option of

5    writing PLAINTIFF a postal mail letter addressed to PLAINTIFF's address at the top of

6    her Police Report letter,  offering whatever  COUNTY mental health services they desired

7    to offer, but did not do so. Had such a postal mail letter been sent by COUNTY, BRIGGS,

8    PISANI, REIMAN and/or STEWART to Plaintiff, PLAINTIFF could have evaluated this

9    information in the privacy of her residence, and made her own decision without being

10    forced into a captive audience by Defendant PISANI at the direction of Defendants

11    BRIGGS, STEWART, and REIMAN.

12    29. Instead, at the direction of Defendant BRIGGS, Defendants REIMAN, STEWART, and

13    PISANI ambushed PLAINTIFF with an unannounced visit-cum-trespass by PISANI at

14    PLAINTIFF's residence that would publicly stigmatize PLAINTIFF as a person needing

15    COUNTY mental health services that PLAINTIFF does not need or want. Upon

16    information and belief, PLAINTIFF alleges that Defendants PISANI, REIMAN,

17    STEWART and COUNTY chose the ambush in order to coerce, threaten, or intimidate

18    PLAINTIFF into a captive audience situation where PISANI and COUNTY could coerce,

19    threaten, or intimidate PLAINTIFF into accepting COUNTY treatment of PLAINTIFF as

20    a person in need of COUNTY mental health services, and coerce, threaten, or intimidate

21    PLAINTIFF into not filing Police Reports with COUNTY's Sheriff's Department; or,

22    alternatively, even if PLAINTIFF were to be allowed to continue filing Police Reports

23    with the Sheriff, COUNTY would be able to discredit those reports as coming from

24    someone receiving mental health treatment from the COUNTY.

25

26

27

28

30. Defendants REIMAN, STEWART, PISANI, and COUNTY in the Reiman Declaration refer to the "referral" from Defendant BRIGGS as a "process referral" that the COUNTY Community Support Team has "often received . . . from Law Enforcement personnel" like Defendant BRIGGS, but in the COUNTY's response to Public Records Act (PRA) request 22-474 from PLAINTIFF for records of such "process referrals" from "law enforcement" in since January 1, 2020, COUNTY responded: "no documents available."

31. Defendant COUNTY's Sheriff's Department received PLAINTIFF's Police Report letter, and one or more employees of the County Sheriff read the Police Report letter, including but not limited to Defendant BRIGGS.

32. Defendant BRIGGS did not send a postal mail letter to PLAINTIFF or otherwise contact PLAINTIFF regarding the Police Report letter, even though PLAINTIFF's physical address was at the top of the Police Report letter. Nor did any other employee of Defendant COUNTY's Sheriff's Department contact PLAINTIFF regarding the Police Report letter.

33. Upon information from Defendant COUNTY's PRA response to PLAINTIFF's PRA Request 22-471 ("no documents" regarding "any investigation or activity related to any determination that the November 9, 2020 Parvin Olfati police report/crime report was 'unfounded' or was a 'complaint indicative of potential mental health distress"), Defendants BRIGGS and COUNTY's Sheriff's Department did not conduct any investigation of Plaintiff's Police Report letter.

34. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto, Defendant BRIGGS on or about December 10, 2020 at sometime before 5:42 p.m. communicated to Defendant STEWART that PLAINTIFF should be subjected to the following acts by COUNTY's Division of Behavioral Health: "get a mental health worker

PLAINTIFF's FIRST AMENDED COMPLAINT 18

1    to check in with the letter writer" because of PLAINTIFF"s "identified belief that law

2    enforcement is stalking her and colluding against her."

3

4    **The Retaliation For Petitioning Followed By Defamation And False Light Privacy**

5    **Invasion, Where County Employees Falsely Accuse Plaintiff Of Being The**
     **Restrained Party In A Restraining Order By A Member of the Sacramento City**

6    **Council**

7    35. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto, in

8    response, Defendant STEWART at about 5:42 p.m. on December 10, 2020 communicated

9    the BRIGGS request in an electronic mail message to Defendant REIMAN.

10

11   36. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto,

12   Defendant REIMAN on December 11, 2020 at about 8:29 a.m. sent an electronic mail

13   message to Defendant PISANI containing the BRIGGS request and directing PISANI to

14   "potentially follow up on this one."  Defendant PISANI spoke with Defendant STEWART

15   regarding PLAINTIFF, and in a December 14, 2020 2:37 p.m. electronic mail message to

16   Defendant REIMAN, PISANI: (i) stated that she had "spoke[n] with [Defendant] Jennifer

17   STEWART" regarding PLAINTIFF; and (ii) PISANI referred to PLAINTIFF as "this

18
     person who has a restraining order against her by a [Sacramento] city councilmen [sic]."
19
     Upon reasonable inference from these COUNTY records, Defendant STEWART told
20
     Defendant PISANI that there is a restraining order against PLAINTIFF by a Member of
21
     the Sacramento City Council, and/or Defendant PISANI told Defendant STEWART that
22
     there is a restraining order against PLAINTIFF by a Member of the Sacramento City
23
     Council.
24

25   37. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto,

26   Defendant PISANI on December 14, 2020 at about 2:37 p.m. sent an electronic mail

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 19

1   message to Defendant REIMAN referring to PLAINTIFF as "this person who has a

2   restraining order against her by a [Sacramento] city councilmen [sic]."

3

4   38. There never has been any restraining order against PLAINTIFF by any Member of the

5   Sacramento City Council, as is confirmed: (i) by the City of Sacramento in February 22,

6   2022 its' response to Plaintiff's PRA request catalogued by the Sacramento City Clerk as

7   Public Records Reference # P028660-021522; and (ii) by absence of any such restraining

8   order in the Sacramento County Superior Court Public Case Access System.

9

10  39. Upon information from Defendant COUNTY's "no documents" response to

11  PLAINTIFF's PRA request 22-491, Defendant STEWART prior to making her statement

12  that PLAINTIFF "has a restraining order against her by a [Sacramento] city councilmen

13  [sic]" did no research or fact finding to verify the accuracy of her statement, even though

14  Defendant STEWART could have accessed the Superior Court Public Case Access

15  System under PLAINTIFF's name. Instead, Defendant STEWART with either knowledge

16  of her statement's falsity or with reckless disregard of its accuracy, and in order to vex,

17  harass, annoy and injure PLAINTIFF, communicated the false statement to Defendant

18  PISANI, Defendant REIMAN, and other COUNTY employees, where it was used as a

19  purported basis for taking the retaliatory course of action requested by Defendant

20  BRIGGS.

21

22  40.      Upon information from Defendant COUNTY's "no documents" response to

23  PLAINTIFF's PRA request 22-491, Defendant REIMAN prior to making her statement

24  that PLAINTIFF "has a restraining order against her by a [Sacramento] city councilmen

25  [sic]" did no research or fact finding to verify the accuracy of her statement, even though

26  Defendant REIMAN could have accessed the Superior Court Public Case Access System

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 20

under PLAINTIFF's name. Instead, Defendant REIMAN with either knowledge of her statement's falsity or with reckless disregard of its accuracy, and in order to vex, harass, annoy and injure PLAINTIFF, communicated the false statement to Defendant PISANI, Defendant STEWART, and other COUNTY employees, where it was used as a purported basis for taking the retaliatory course of action requested by Defendant BRIGGS.

41. Upon information from Defendant COUNTY's "no documents" response to PLAINTIFF's PRA request 22-491, Defendant PISANI prior to making her statement that PLAINTIFF "has a restraining order against her by a [Sacramento] city councilmen [sic]" did no research or fact finding to verify the accuracy of her statement, even though Defendant PISANI could have accessed the Superior Court Public Case Access System under PLAINTIFF's name. Instead, Defendant PISANI with either knowledge of her statement's falsity or with reckless disregard of its accuracy, and in order to vex, harass, annoy and injure PLAINTIFF, communicated the false statement to Defendant REIMAN, Defendant STEWART, and other COUNTY employees, where it was used as a purported basis for taking the retaliatory course of action requested by Defendant BRIGGS.

42. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto, the false statement that PLAINTIFF was the subject of a restraining order brought against her by a Member of the Sacramento City Council was a motivating force behind Defendants COUNTY, REIMAN, STEWART and PISANI committing their acts against PLAINTIFF alleged herein.

**Defendant Pisani Goes Into Action To Carry Out The Retaliation Requested By Defendant Briggs: Instead of Sending Plaintiff A Postal Mail Letter, Briggs, Reiman, Stewart and Pisani Send Pisani To Entrap Plaintiff In A Captive Audience Ambush**

43. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto, Defendant PISANI agreed to the request from Defendant BRIGGS communicated by

1    Defendants STEWART and REIMAN, and went to Plaintiff's residence front porch to

2    invade PLAINTIFF's zone of privacy and autonomy by forcing PLAINTIFF into a

3    captive audience situation in order to induce, entrap, coerce, threaten, and/or intimidate

4    PLAINTIFF into recanting the content of her Police Report and instead  enter into a client

5    or other relationship with Defendant COUNTY's Behavioral Health  that included treating

6    Plaintiff as a person with a "mental health disorder"; as a person who is a "danger to

7    [her]self"; as a person who "is a danger to others"; as a person who is "gravely disabled"

8    as these terms are used in Welfare & Institutions Code Section 5150; or who is otherwise

9    receiving mental health services from Defendant COUNTY.

10
11   44. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto,

12       PLAINTIFF's identical physical and mailing addresses were known or should have been

13       to Defendants BRIGGS, STEWART, REIMAN, PISANI and COUNTY during the period

14       when the BRIGGS request was being implemented by these Defendants, since the address

15       is at the very top of the Police Report letter that BRIGGS, STEWART, REIMAN and

16       PISANI used as basis for sending PISANI to go unannounced to PLAINTIFF's residence.

17
18   45. Upon information and belief, postal mail is a method that Defendant COUNTY is

19       authorized to use and has used to communicate mental health services information to

20       residents of Sacramento County.

21
22   46. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto,

23       at no time did any of Defendants BRIGGS, STEWART, REIMAN, PISANI and/or

24       COUNTY consider sending only a postal mail letter to PLAINTIFF describing "the

25       services we [COUNTY] offer"; how PLAINTIFF "could potentially benefit from

26       MCST/CST intervention";  that PLAINTIFF shows "indications of distress"; COUNTY

27       "services and supports"; "CST support and services"; or other COUNTY programs

28

PLAINTIFF's FIRST AMENDED COMPLAINT 22

administered by County Behavioral Health. Upon information and belief, the cost of preparing and sending one or more postal mail letters to PLAINTIFF would be vastly cheaper than the amount of COUNTY time and resources spent planning and sending PISANI to ambush PLAINTIFF by Defendants BRIGGS, STEWART, REIMAN and PISANI in December of 2020.

47. Upon Plaintiff's personal knowledge, had PLAINTIFF received from Defendants BRIGGS, STEWART, REIMAN, PISANI and/or COUNTY only postal mail letters addressed to PLAINTIFF offering COUNTY mental health services and discussing PLAINTIFF's Police Report letter, Plaintiff would have been able to review and consider COUNTY's mental health program offerings and COUNTY's opinion regarding Plaintiff's Police Report letter in the privacy of her home, instead of being forced to interact with Defendant PISANI in a captive audience situation.  If PLAINTIFF had received such a postal mail letter, PLAINTIFF would  have responded in writing by explaining to the COUNTY letter writer the situation and PLAINTIFF's information and belief that COUNTY was using its' Division of Behavioral Health Services to cover up for over two decades of harassment of PLAINTIFF; the abuse against PLAINTIFF of the power and authority of multiple government agencies (including abuse of law enforcement agencies against PLAINTIFF); and that many of the people who were and are responsible for the years of abuse against PLAINTIFF would have been exposed on the record. PLAINTIFF is informed and believed that the reasons for the acts of Defendants BRIGGS, STEWART, REIMAN, PISANI and COUNTY include but are not limited to a desire to prevent these facts from being exposed and documented on any official COUNTY or other government agency records. PLAINTIFF is also informed and believed that one or more of the Defendants were aware of the City of Sacramento Police

Department May 9, 2020 no-warrant false arrest of PLAINTIFF and related police excessive force against PLAINTIFF, and that Defendants BRIGGS, STEWART, REIMAN, PISANI and/or COUNTY attempted to use the COUNTY Division of Behavioral Services to coerce, threaten, and intimidate PLAINTIFF as a follow-up to the City of Sacramento Police Departments acts against PLAINTIFF on May 9, 2020. PLAINTIFF is informed and believed that may be other reasons behind the acts of Defendants, including but not limited to retaliation against PLAINTIFF for the content of her November 9, 2020 Police Report regarding law enforcement agencies' collusion against PLAINTIFF. PLAINTIFF if offered the opportunity by Defendants including COUNTY would have explained this in writing to COUNTY; PLAINTIFF is informed and believed that Defendant BRIGGS used COUNTY, STEWART, REIMAN and PISANI to retaliate against PLAINTIFF to prevent the making by PLAINTIFF of any record with such content.

48. Upon information from COUNTY's Reiman Declaration and Exhibits A and B thereto, and from PLAINTIFF's personal knowledge and home security system video, on December 14, 2020, Defendant PISANI acting upon information or content given to PISANI by Defendants BRIGGS, STEWART, and REIMAN, drove in a vehicle without County insignia or "CA Exempt" license plate to Plaintiff's residence at 1859 45th Street. Defendant Pisani parked the vehicle she was driving at the curb of 1851 45th Street (immediately north of Plaintiff's residence) and walked to Plaintiff's residence front door.

49. Upon PLAINTIFF's personal knowledge and home security system video, at about 4:33 p.m. on December 14, 2020, Defendant PISANI in the course and scope of her COUNTY employee duties and under color of state law knocked upon the front door of PLAINTIFF's residence with the intent to induce PLAINTIFF into an interaction with

PLAINTIFF's FIRST AMENDED COMPLAINT 24

Defendant PISANI. Defendant PISANI when she knocked on Plaintiff's residence front door was not wearing any COUNTY uniform, badge or insignia, and was not displaying any COUNTY or other identification. Defendant Pisani was wearing civilian clothes and what appeared to be an identification card holder that did not have any identification card, and only displayed a key or an object that looked like a key.

50. Upon PLAINTIFF's personal knowledge and home security system video, at all times on December 14, 2020 while Defendant PISANI was within the curtilage of Plaintiff's residence property or was otherwise on 45th Street, including the interaction with Plaintiff beginning at about 4:33 p.m. that was initiated by PISANI, PISANI never asked Plaintiff to give Plaintiff's name or otherwise identify Plaintiff as Parvin Olfati, Patty Olfati, Ms. Olfati or any other name.

**Defendant Pisani In Action: Saying She Came To Plaintiff's Residence Because Of An Anonymous Complaint About Plaintiff From The Sheriff's Department**

51. Upon PLAINTIFF's personal knowledge, PLAINTIFF was alone in her residence when she heard the knock on her residence front door at about 4:33 p.m. on December 14, 2020 that was made by Defendant PISANI.

52. Upon PLAINTIFF's personal knowledge and home security system video, in response to the door knock from Defendant PISANI, PLAINTIFF opened her residence front door and face to face saw a female with short hair that PLAINTIFF had never seen before.  Plaintiff asked this person "who are you and what do you want", or words to that effect.  This person who was Defendant Pisani did not identify herself, did not give Plaintiff a business card, did not show identification, did not give her name, and did not otherwise identify herself.

53. Upon PLAINTIFF's personal knowledge and home security system video, the person who was Defendant PISANI said that she was from the "community support team" or words to

that effect. Defendant Pisani did not explain or otherwise communicate what the

"community support team" was. Defendant Pisani did not identify herself as a County

employee, representative, or agent even though she had in her possession a County

business card containing her name, the words "Community Support Team", and PISANI

contact information.

54. Upon PLAINTIFF's personal knowledge and home security system video, PLAINTIFF

then asked the person who was Defendant PISANI if that person was talking about the

"Elmhurst Community", thinking the person who was Defendant Pisani was coming to

Plaintiff's residence on behalf of the Elmhurst Neighborhood Association to sign Plaintiff

up for the Elmhurst Neighborhood Association. The person who was Defendant Pisani

responded as follows (in what Plaintiff saw and heard as very ambiguous): that she

"works with all of the community" or words to that effect.

55. Upon PLAINTIFF's personal knowledge and home security system video, the person who

was Defendant PISANI then said: (i) she was from the "community support team"; and

(ii) that she had received or was aware of "an anonymous complaint" about PLAINTIFF.

56. Upon information from Defendant COUNTY's Reiman Declaration and Exhibits A and B

thereto, and from COUNTY PRA response to PLAINTIFF's PRA request 22-471, in fact

Defendant PISANI knew the source of the "anonymous complaint" was Defendant

County Sheriff's Department Deputy Ronald BRIGGS and that Defendant BRIGGS was

working with Defendants COUNTY, PISANI, REIMAN, and STEWART to retaliate

against, entrap, coerce, threaten, and/or intimidate PLAINTIFF for sending a Police

Report letter to the COUNTY Sheriff that Defendant BRIGGS determined without

investigation to be "unfounded" because it contained an "identified belief law

enforcement is stalking her and colluding against her", with the retaliation including

PLAINTIFF's FIRST AMENDED COMPLAINT 26

"get[ting] a mental health worker to check in with the letter writer because the complaint is unfounded", as Defendant BRIGGS requested of Defendant STEWART on or about December 10, 2020.

57. Upon PLAINTIFF's personal knowledge and home security system video, the person who was Defendant PISANI then handed Plaintiff a Defendant COUNTY business card that listed Defendant Pisani as a "Senior Mental Health Counselor" with the "Community Support Team" of County Behavioral Health, with the COUNTY work address, work telephone numbers, and work electronic mail address alleged in paragraph 13 herein.

58. PLAINTIFF then realized that the person who was Defendant PISANI was not from the Elmhurst Neighborhood Association, but rather was from a government agency. PLAINTIFF realized that this person's visit and her claiming that her visit was based on anonymous complaint about Plaintiff, together with this person's attempting to let Plaintiff believe that this visit is from the Elmhurst Neighborhood Association or "Elmhurst community", meant that this person wanted to keep Plaintiff confused and/or did not want to explain to Plaintiff that Defendant PISANI was not from the "Elmhurst community" or Elmhurst Neighborhood Association  and was trying to keep the real and true source of the place, organization, and or agency that she was representing hidden from Plaintiff.  Plaintiff was very frightened when she realized what she now saw as the true purpose of the presence of Defendant Pisani on her front porch, a Defendant Pisani that Plaintiff had never seen before.

59. Therefore, PLAINTIFF told Defendant PISANI to "wait".  Plaintiff then closed the front door, went inside her residence, and picked up her cellphone, to make sure the rest of her conversation initiated by Defendant Pisani would be documented.

PLAINTIFF's FIRST AMENDED COMPLAINT 27

60. With her cellphone in hand and its' camera operating, PLAINTIFF went to the front door and opened the front door. Defendant PISANI was still on Plaintiff's residence front porch. Plaintiff said:"Ok, who are you again?" Defendant Pisani responded: "my name is Pam" and did not state her surname, an omission that escalated Plaintiff's suspicion of Defendant PISANI's very unusual and suspect visit and behavior.

61. PLAINTIFF then said: "Pam?" PISANI said "Pamela." Plaintiff said: "Community Support Team". Pisani said "right."

62. PLAINTIFF then said: "and you don't know who called you." Defendant PISANI responded: "I think it was maybe Sheriff Department they complained", or words to that effect that included the words "Sheriff Department" and "complained."

63. PLAINTIFF then asked Defendant PISANI: "Sheriff Department called you?" Defendant PISANI responded: "Well, no, they did not call me, they let us know that there was maybe some concern, you are out of the Sheriff Department jurisdiction right?"

64. PLAINTIFF ignored the above-quoted PISANI question and then said to Defendant PISANI: "So, the Sheriff Department has something to do with this?" Defendant PISANI then said: "well they forwarded some information, you know."

65. PLAINTIFF then asked Defendant PISANI, "what information?" Defendant PISANI replied: "Ok, I don't know exactly what information". Based upon information from Defendant COUNTY's Reiman Declaration and Exhibit A thereto, Defendant PISANI when she made this statement knew that the content communicated by Defendants BRIGGS, STEWART and REIMAN to PISANI was: (i) the false statement that PLAINTIFF was the subject of a restraining order obtained against her by a Member of the Sacramento City Council; (ii) the request from Defendant BRIGGS on behalf of COUNTY's Sheriff's Department that "a mental health worker check in with the letter

writer" through an unannounced "cold call contact" or "cold knock contact" visit to PLAINTIFF in order to conduct Community Support Team "intervention" to retaliate against PLAINTIFF for her "identified belief law enforcement is stalking her."

66. PLAINTIFF then said to Defendant PISANI: "how can you go to somebody's door when you have no idea what you are doing there?" Defendant PISANI then said: "my resources". Plaintiff then asked Defendant PISANI: "who are your resources?" Defendant PISANI then said: "I work for Sacramento Community". Plaintiff then said to Defendant PISANI: "who are Sacramento Community?" Defendant PISANI then said: "I work for Behavioral Services". Plaintiff said to Defendant PISANI: "Behavioral services meaning what?" Defendant PISANI then said: "actually it doesn't mean anything. It's the department I work for", or words to that effect.

### Defendant Pisani After Being Ordered To Leave Remains on Plaintiff's Property And Stalks Plaintiff

67. PLAINTIFF then said to Defendant PISANI: "here is my problem with you -- you knock on my door out of the blue, you do not want to tell me who called you. The anonymous, that is why there is a problem, so, you walk on people's porch and knock on their door based on some anonymous BS you have heard". Defendant PISANI interrupted Plaintiff and said that: "I have not heard". Plaintiff then said to Defendant PISANI: "ok they gave you, however, and then you said the Sheriff Department was involved and then you said it is behavioral, you know your whole behavior is suspect, just F---- Off." With that, PLAINTIFF ordered Defendant Pisani to leave Plaintiff's residence property. Plaintiff was very scared.

68. PLAINTIFF closed the door, thinking Defendant PISANI would immediately leave as PLAINTIFF had ordered PISANI to leave. A few minutes later, Plaintiff went outside and

PLAINTIFF's FIRST AMENDED COMPLAINT 29

1    walked on her north side front porch steps to check and make sure there were no law

2    enforcement officers on her driveway, or at the end of the 45th Street where it intersects with

3    "S" Street a few hundred feet north of Plaintiff's driveway. Plaintiff saw that Defendant

4    PISANI was still on Plaintiff's residence property, having ignored Plaintiff's command to

5    leave, and was actually following Plaintiff on her driveway.

6

7    69. PLAINTIFF was very frightened, because on May 9, 2020, similar following of Plaintiff on

8    Plaintiff's driveway by 1870 45th Street resident Barbara Andres resulted in the emergence of

9    a City of Sacramento Police Department vehicle from around the corner after Andres

10    followed Plaintiff on the driveway and hand signaled the hiding police office Jared Robinet

11    who without a warrant ran, stalked Plaintiff, grabbed Plaintiff, pulled Plaintiff out of her

12    living room and injured Plaintiff. These acts are now the subject of U.S. District Court for the

13    Eastern District of California Case No. 21-cv-00606-KJM-CKD, *Parvin Olfati v. City of*

14    *Sacramento et al.*

15

16    70. PLAINTIFF then again ordered Defendant PISANI to leave; told Pisani that nobody wants to

17    talk to Pisani; and that Pisani should leave. Defendant Pisani ignored Plaintiff's command to

18    leave and continued yelling at Plaintiff until Plaintiff went back inside her residence and

19    closed the front door. Upon information from COUNTY's Reiman Declaration and Exhibit D

20    thereto,  Plaintiff alleges that Defendant Pisani after leaving Plaintiff's residence front porch

21    communicated to employees or agents of Defendant COUNTY including Defendant

22    REIMAN,  and upon reasonable inference, to one or more of the Jane Roe Defendants or John

23    Doe Defendants, one or more false statements regarding Plaintiff alleging that PLAINTIFF

24    had committed one or more acts requiring law enforcement or COUNTY Behavioral Health

25    intervention, including or not limited to false statements that Defendant PISANI had not

26    remained on PLAINTIFF's residence property after being ordered to leave.

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 30

1   71. PLAINTIFF was scared, and for the rest of December 14, 2020, Plaintiff thought that within

2   minutes there would be another knock on her door by some law enforcement officers who

3   would try to arrest Plaintiff or seize Plaintiff under Welfare & Institutions Code Section 5150

4   or some other pretext. Plaintiff was extremely frightened of what would happen to her next

5   and knew that Defendant PISANI's finally leaving was not the end of this attempt to entrap

6   Plaintiff and that Plaintiff would have to face even much bigger, harsher, well-organized

7   retaliation and entrapment. Since Defendant PISANI's acts of December 14, 2020, Plaintiff

8   has become extremely scared of anyone from the COUNTY, including but not limited to the

9   County Sheriff.

10

11

12

13

14   **Defendant Pisani Defames Plaintiff Some More In Her Report To County**

15   72. On or about December 14, 2020,  Defendant PISANI in the Reiman Declaration Exhibit D

16   writing, communicated to one or more COUNTY employees the intentionally or recklessly

17   false statement of fact that PLAINTIFF after telling Defendant PISANI to leave, PLAINTIFF

18   "came back and started talking . . . attempting to speak with [PISANI]."  Defendant PISANI

19   from this writing intentionally or recklessly failed to disclose the fact known to PISANI that

20   PLAINTIFF remained in her house and that when PLAINTIFF saw that PISANI was still on

21   her residence premises, PLAINTIFF went into the driveway area to tell PISANI *a second time*

22   to leave, *and that PISANI followed PLAINTIFF on Plaintiff's driveway, as recorded on*

23   *PLAINTIFF''s home security system video and cellphone video.*

24

25   **Privacy-Invading Stalking of Plaintiff by County Agents Roe One and Roe Two shortly**

26   **After December 14, 2020**

27   73. Plaintiff with her own eyes and ears on December 22, 2020, at about 11:55:40 a.m., saw

28   Defendant ROE ONE stalk PLAINTIFF in the aisles of the Tuesday Morning store at 2550

PLAINTIFF's FIRST AMENDED COMPLAINT 31

1   Fair Oaks Boulevard in the unincorporated area of the County of Sacramento.  Plaintiff with

2   her own eyes and ears has seen Defendant Roe One stalk Plaintiff on other dates near

3   December 14, 2020, including at Bella Bru Café on almost every day in 2020 whenever

4   Plaintiff dined at Bella Bru Café, including but not limited to August 26, 2020. Plaintiff was

5   very scared of Defendant ROE ONE and stopped going to Bella Bru Café and instead went to

6   Ettore's European Bakery and Restaurant ("Ettore's").  However, when PLAINTIFF arrived

7   at Ettore's, PLAINTIFF with her own eyes saw Defendant ROE ONE was there waiting for

8   PLAINTIFF.   PLAINTIFF reasonably inferred that Defendant ROE ONE was closely

9   stalking PLAINTIFF and that ROE ONE was one the people who was a part of this well

10  organized COUNTY stalking team targeting PLAINTIFF, and that ROE ONE has stalked

11  Plaintiff at Ettore's on multiple dates in December 2020.  Based on her personal knowledge of

12  being stalked by ROE ONE and others, PLAINTIFF starting on or about January 1, 2021

13  stopped going out for breakfast to avoid being stalked and framed by ROE ONE. These acts

14  of stalking and attempts to induce or entrap PLAINTIFF into a conversation and/or

15  videotaping of Plaintiff and retention and/or use of such videotapes by one or more of the

16  Defendants intruded into the private affairs of Plaintiff where she was attempting to enjoy a

17  zone of privacy while shopping at Tuesday Morning, dining at Bella Bru Café, or dining at

18  Ettore's. Upon information and belief, Plaintiff alleges that Defendant Roe One was working

19  for, as an agent of, or otherwise on behalf of Defendants COUNTY, REIMAN, STEWART,

20  PISANI and/or BRIGGS while committing these acts.  Defendant ROE ONE was constantly

21  writing and/or texting while constantly watching and monitoring Plaintiff, and many times

22  Plaintiff would leave without finishing her food just to get away from ROE ONE. Plaintiff

23  also alleges that Defendant ROE ONE from these activities communicated content,

24  information, or material about Plaintiff to one or more persons other than Plaintiff, including

but not limited to Defendants PISANI, REIMAN, STEWART, Defendant ROE TWO,

employees or agents of COUNTY, and/or one or more of the Jane Roe Defendants or John

Doe Defendants.  PLAINTIFF when visiting the Bella Bru Cafe used to sit outside, but at one

point, went inside the Bella Bru Café and sat inside in order to get away from Defendant ROE

ONE, but with her own eyes saw that soon after PLAINTIFF went inside, ROE ONE came

inside and sat at the table next to PLAINTIFF, interrupted PLAINTIFF's eating of her

breakfast, and told PLAINTIFF that "she wanted to talk to" PLAINTIFF, or words to that

effect.  PLAINTIFF wanted to ask ROE ONE "why", but refrained from doing so because

PLAINTIFF was very scared, so PLAINTIFF said "okay."  PLAINTIFF then told ROE ONE

about the May 9, 2020 false arrest of PLAINTIFF and related police brutality by the City of

Sacramento Police Department, and said that PLAINTIFF was "very scared" or words to that

effect.  PLAINTIFF after she finished talking to ROE ONE was very scared of what ROE

ONE was going to report about PLAINTIFF to COUNTY or other Defendants, and that ROE

ONE was attempting to entrap PLAINTIFF in a staged incident.  On another occasion at Bella

Bru Café, ROE ONE again came inside accompanied by a Caucasian male wearing civilian

clothes; both sat together at a table in close proximity to PLAINTIFF, but neither ate any food

and instead spent all of their time watching PLAINTIFF; PLAINTIFF upon information and

belief alleges that the Caucasian male accompanying ROE ONE was an employee, agent, or

representative of Defendant COUNTY.

74. On August 10, 2020, Defendant ROE TWO stalked PLAINTIFF at the Bella Bru Café,

placing herself in close proximity to Plaintiff while appearing to work on puzzles.

Defendant Roe Two has stalked Plaintiff on other dates near December 14, 2020,

including but not limited to dates in July, August and September of 2020.   Defendant

ROE TWO also stalked Plaintiff in other locations including but not limited to the Starbucks at 5300 Folsom Boulevard in the city of Sacramento.  The intrusive and privacy invading presence of Defendant ROE TWO and other stalkers at the 5300 Folsom Boulevard Starbucks caused Plaintiff to go to the Bella Bru Café on Fair Oaks Boulevard. Shortly after Plaintiff started to go to the Bella Bru Cafe, PLAINTIFF with her own eyes saw Defendant ROE TWO at the Bella Bru Café, where Plaintiff with her own eyes observed ROE TWO monitoring and stalking Plaintiff; keeping track of Plaintiff and the persons Plaintiff talked to; and monitoring all of Plaintiff's activity at Bella Bru Café. These acts of stalking and monitoring Plaintiff were very intrusive to PLAINTIFF. Defendants intruded into the private affairs of Plaintiff where Plaintiff was attempting to enjoy a zone of privacy while working on her computer.   Plaintiff alleges that Defendant ROE TWO was working for or on behalf of Defendants COUNTY, PISANI, REIMAN, STEWART and/or BRIGGS while committing these acts. Plaintiff also alleges that Defendant ROE TWO from these activities communicated content, information, or material about Plaintiff to one or more persons other than Plaintiff, including but not limited to Defendants PISANI, REIMAN, STEWART, and/or BRIGGS; Defendant Roe One; employees or agents of Defendant COUNTY; and/or one or more of the Jane Roe Defendants or John Doe Defendants.

**DAMAGES**

75. As a direct and proximate result of each Defendant's acts and/or omissions as set forth herein, Plaintiff has suffered:

(a) Permanent and severe mental and emotional distress;

PLAINTIFF's FIRST AMENDED COMPLAINT 34

(b) Humiliation and the loss of dignity;

(c) Injury to reputation;

(d) Loss of enjoyment of life and other continued pain and suffering;

(e) Emotional trauma and suffering, including but not limited to fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, and anxiety – all of which will scar Plaintiff as long as Plaintiff lives.

(f)   Loss of trust in law enforcement agencies, to the point that Plaintiff is afraid to call law enforcement for any kind of assistance;

(g)   Loss of faith in County operations and personnel.

(h)   Fear of perpetual retaliation against herself and her family members.

76.  Plaintiff requests punitive or exemplary damages against Defendants BRIGGS, STEWART, REIMAN, PISANI, and other individual capacity Defendants for their acts of oppression, fraud, and/or malice, and against Defendant COUNTY to the extent that Defendant County is liable for such damages under Civil Code Section 52.1 or Government Code Section 815.2(a).

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION: INVASION OF PRIVACY (INTRUSION INTO PRIVATE AFFAIRS) versus DEFENDANTS PISANI, BRIGGS, STEWART, REIMAN, ROE ONE and ROE TWO [*Miller v. National Broadcasting Company*, 187 Cal.App.3d 1463 (1986)]**

77. PLAINTIFF hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-76 as though fully set forth herein.

78. PLAINTIFF had a reasonable expectation of privacy in her person and in her private affairs in all areas inside the curtilage of her residence property.

79. Defendant PISANI intentionally intruded into PLAINTIFF's privacy and private affairs inside the curtilage of her residence property.

80. The intrusion by Defendant PISANI would be highly offensive to a reasonable person.

81. PLAINTIFF was harmed by the intrusion by Defendant PISANI.

82. The acts and conduct of Defendant PISANI were a substantial factor in PLAINTIFF's harm, and Defendant Pisani is therefore liable to Plaintiff for invasion of privacy.

83. The acts of Defendant BRIGGS, Defendant STEWART, and Defendant REIMAN were also substantial factors in PLAINTIFF's harm, and each of Defendants Briggs, Stewart and Reiman are therefore liable to Plaintiff for invasion of privacy, since they intended to have and ordered PISANI to intrude into the curtilage of PLAINTIFF's residence, and their acts in ordering or abetting such intrusion would be highly offensive to a reasonable person.

84. PLAINTIFF has a reasonable expectation of privacy and in her private affairs when she is in retail establishments where she shops in her private space or dines in her private space.

85. Defendant ROE ONE intentionally intruded into PLAINTIFF's privacy, private space, and private affairs by her acts and conduct toward Plaintiff.

86. The intrusion by Defendant ROE ONE would be highly offensive to a reasonable person.

87. PLAINTIFF was harmed by the intrusion by Defendant ROE ONE.

88. The acts and conduct of Defendant ROE ONE were a substantial factor in PLAINTIFF's harm, and therefore Defendant Roe One is liable to Plaintiff for invasion of privacy.

89. Defendant ROE TWO intentionally intruded into PLAINTIFF's privacy, private space, and private affairs by her acts and conduct toward Plaintiff.

90. The intrusion by Defendant ROE TWO would be highly offensive to a reasonable person.

91. PLAINTIFF was harmed by the intrusion by Defendant ROE TWO.

92. The acts and conduct of Defendant ROE TWO were a substantial factor in PLAINTIFF's harm, and therefore Defendant Roe Two is liable to Plaintiff for invasion of privacy.

**SECOND CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS versus DEFENDANTS PISANI, BRIGGS, STEWART, REIMAN, ROE ONE and ROE TWO [*Hughes v. Pair*, 46 Cal.4th 1035 (2009)]**

93. PLAINTIFF hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-76 as though fully set forth herein.

94. The acts and conduct of Defendant PISANI were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

95. Defendant PISANI intended to cause PLAINTIFF severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

96. Defendant PISANI knew that PLAINTIFF would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

97. Defendant PISANI gave little or no thought to the probable effect of her conduct on Plaintiff.

98. PLAINTIFF suffered severe emotional distress from the acts and conduct of Defendant PISANI.

99. The acts and conduct of Defendant BRIGGS were a substantial factor in causing Plaintiff to suffer severe emotional distress, and Defendant BRIGGS is therefore liable to Plaintiff for intentional infliction of emotional distress.

100.   The acts and conduct of Defendant BRIGGS were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

101.   Defendant BRIGGS intended to cause Plaintiff severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

102.   Defendant BRIGGS knew that Plaintiff would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

103.   Defendant BRIGGS gave little or no thought to the probable effect of his conduct on Plaintiff.

104.   PLAINTIFF suffered severe emotional distress from the acts and conduct of Defendant Briggs.

105.   The acts and conduct of Defendant STEWART were a substantial factor in causing PLAINTIFF to suffer severe emotional distress, and Defendant STEWART is therefore liable to Plaintiff for intentional infliction of emotional distress.

106.   The acts and conduct of Defendant STEWART were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

107.   Defendant STEWART intended to cause Plaintiff severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

PLAINTIFF's FIRST AMENDED COMPLAINT 38

108.   Defendant STEWART knew that Plaintiff would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

109.   Defendant STEWART gave little or no thought to the probable effect of her conduct on Plaintiff.

110.   PLAINTIFF suffered severe emotional distress from the acts and conduct of Defendant STEWART.

111.   The acts and conduct of Defendant REIMAN were a substantial factor in causing PLAINTIFF to suffer severe emotional distress, and Defendant REIMAN is therefore liable to Plaintiff for intentional infliction of emotional distress.

112.   The acts and conduct of Defendant REIMAN were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

113.   Defendant REIMAN intended to cause Plaintiff severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

114.   Defendant REIMAN knew that Plaintiff would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

115.   Defendant REIMAN gave little or no thought to the probable effect of her conduct on Plaintiff.

116.   Plaintiff suffered severe emotional distress from the acts and conduct of Defendant REIMAN.

117.   The acts and conduct of Defendant ROE ONE were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

118.     Defendant ROE ONE intended to cause PLAINTIFF severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

119.     Defendant ROE ONE knew that PLAINTIFF would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

120.     Defendant ROE ONE gave little or no thought to the probable effect of her conduct on PLAINTIFF.

121.     Plaintiff suffered severe emotional distress from the acts and conduct of Defendant ROE ONE.

122.   The acts and conduct of Defendant ROE ONE were a substantial factor in causing Plaintiff to suffer severe emotional distress, and Defendant ROE ONE is therefore liable to Plaintiff for intentional infliction of emotional distress.

123.   The acts and conduct of Defendant ROE TWO were extreme, outrageous, and exceeded the bounds of conduct usually tolerated in a civilized community.

124.   Defendant ROE TWO intended to cause PLAINTIFF severe emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

125.     Defendant ROE TWO knew that PLAINTIFF would suffer emotional distress, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame from her conduct.

126.     Defendant ROE TWO gave little or no thought to the probable effect of her conduct on PLAINTIFF.

127.    PLAINTIFF suffered severe emotional distress from the acts and conduct of

Defendant ROE TWO.

128.    The acts and conduct of Defendant ROE TWO were a substantial factor in causing

PLAINTIFF to suffer severe emotional distress, and Defendant ROE TWO is therefore

liable to PLAINTIFF for intentional infliction of emotional distress.


**THIRD CAUSE OF ACTION: TRESPASS versus DEFENDANT PISANI [*Miller v. National Broadcasting Company*, 187 Cal.App.3d 1463 (1986)]**

129.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in

the preceding paragraphs 1-76 as though fully set forth herein.

130.    Defendant PISANI entered PLAINTIFF's residence property on December 14, 2020

at about 4:33 p.m.

131.    PLAINTIFF did not give permission to Defendant PISANI for any entry by

Defendant Pisani on to Plaintiff's residence property.

132.   Upon information from PLAINTIFF's home security system video, PLAINTIFF's

cellphone video, and/or from PLAINTIFF's own eyes and ears, Defendant PISANI

remained on Plaintiff's residence front yard and driveway after being expressly ordered

by Plaintiff to leave, meaning Defendant PISANI intended to be in PLAINTIFF's

residence property front yard, driveway, and at other locations inside Plaintiff's

residence property curtilage and to remain there.

133.   Upon information from PLAINTIFF's home security system video, Plaintiff's

cellphone video, and from Plaintiff's own eyes and ears, the acts of Defendant PISANI

inside the curtilage of Plaintiff's residence property included: (a) Defendant Pisani

refusing to leave and remaining on Plaintiff's property after Plaintiff first told her to

1    leave, while Defendant Pisani was on Plaintiff's front porch; and (b) Defendant Pisani

2    yelling at Plaintiff from Plaintiff's driveway after Plaintiff told Defendant Pisani for a

3    second time to leave.

4

5

6    134.   Upon information from PLAINTIFF's home security system video, Plaintiff's

7    cellphone video, and from Plaintiff's own eyes and ears, Defendant PISANI after

8    Plaintiff ordered Pisani to leave Plaintiff's residence front porch walked on Plaintiff's

9    residence front yard to Plaintiff's residence driveway, and remained on Plaintiff's

10   residence driveway after being told by Plaintiff to leave, meaning Pisani intended to be

11   in Plaintiff's residence front yard and residence driveway inside Plaintiff's residence

12   curtilage and to remain there.

13

14   135.   PLAINTIFF was harmed by the trespass of Defendant PISANI, not only from the

15   trespass itself, but also from the reasonably foreseeable and/or intended damages that

16   came from Pisani using her presence on Plaintiff's residence property to cause

17   emotional distress to Plaintiff, further intrude into Plaintiff's privacy and private affairs,

18   and further damage Plaintiff.

19   136.   The acts of Defendant PISANI were a substantial factor in causing harm to Plaintiff.

20

21   137.   Plaintiff was harmed by the trespass committed by Defendant PISANI.

22   138.   Defendant PISANI is therefore liable to Plaintiff for California law for trespass

23   damages, including consequential damages intended or reasonably foreseeable from the

24   trespass.

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 42

**FOURTH CAUSE OF ACTION versus DEFENDANTS PISANI, BRIGGS, STEWART, REIMAN, ROE ONE, and ROE TWO FOR NEGLIGENCE [Cal. Civil Code Section 1714(a); *Cabral v. Ralph's Grocery Co.*, 51 Cal.4th 764 (2011)]**

139.   PLAINTIFF realleges and incorporates by reference each of the preceding paragraphs 1-76 as though fully set forth herein.

140.   When Defendant PISANI committed her acts against Plaintiff alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant PISANI was under a duty to use reasonable care regarding Plaintiff.

141.    In committing each of her acts alleged against PLAINTIFF alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant PISANI breached her duty of reasonable care regarding Plaintiff.

142.    The breach of her duty of reasonable care by Defendant PISANI owed to PLAINTIFF was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Pisani liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

143.    When Defendant BRIGGS committed his acts against PLAINTIFF alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant Briggs was under a duty to use reasonable care regarding Plaintiff.

144.    In committing each of his acts alleged against PLAINTIFF alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant BRIGGS breached his duty of reasonable care owed to Plaintiff.

145.    The breach of his duty of reasonable care by Defendant BRIGGS owed to PLAINTIFF was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Briggs liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

PLAINTIFF's FIRST AMENDED COMPLAINT 43

146.     When Defendant STEWART committed her acts against Plaintiff alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant Stewart was under a duty to use reasonable care regarding Plaintiff.

147.     In committing each of her acts alleged against PLAINTIFF alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant STEWART breached her duty of reasonable care owed to Plaintiff.

148.     The breach of her duty of reasonable care by Defendant STEWART owed to PLAINTIFF was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Stewart liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

149.     When Defendant REIMAN committed her acts against Plaintiff alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant Reiman was under a duty to use reasonable care regarding Plaintiff.

150.     In committing each of her acts alleged against PLAINTIFF alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant REIMAN breached her duty of reasonable care owed to Plaintiff.

151.     The breach of her duty of reasonable care by Defendant REIMAN owed to PLAINTIFF was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Reiman liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

152.     When Defendant ROE ONE committed her acts against PLAINTIFF alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant ROE ONE was under a duty to use reasonable care regarding Plaintiff.

PLAINTIFF's FIRST AMENDED COMPLAINT 44

153.     In committing each of her acts alleged against PLAINTIFF alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant ROE ONE breached her duty of reasonable care owed to Plaintiff.

154.     The breach of her duty of reasonable care by Defendant Roe One regarding Plaintiff was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Roe One liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

155.     When Defendant ROE TWO committed her acts against Plaintiff alleged herein, including the acts alleged in this Cause of Action through incorporation by reference, Defendant Roe Two was under a duty to use reasonable care regarding Plaintiff.

156.     In committing each of her acts alleged against PLAINTIFF alleged in this Cause of Action, including the acts alleged through incorporation by reference, Defendant ROE TWO breached her duty of reasonable care regarding Plaintiff.

157.     The breach of her duty of reasonable care by Defendant ROE TWO owed to PLAINTIFF was the proximate cause of the loss, harm, damages and/or injuries suffered by Plaintiff, rendering Defendant Roe Two liable to Plaintiff for negligence under California law including but not limited to California Civil Code Section 1714.

**FIFTH CAUSE OF ACTION: FALSE LIGHT INVASION OF PRIVACY versus DEFENDANTS PISANI, STEWART, REIMAN, ROE ONE and ROE TWO [*Briscoe v. Reader's Digest Association*, 4 Cal.3d 529 (1971)]**

158.     PLAINTIFF hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-76 as though fully set forth herein.

159.     Defendant PISANI communicated to one or more persons other than PLAINTIFF content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating that Plaintiff was the restrained party subject of a

1   restraining order by a Member of the Sacramento City Council, and had committed one or

2   more acts or engaged in conduct requiring intervention from law enforcement or from

3   COUNTY's Division of Behavioral Health Services.

4   160.   The false light created by the disclosure would be highly offensive to a reasonable

5   person in PLAINTIFF's position.

6

7   161.   Defendant PISANI knew the disclosure would create a false impression about

8   PLAINTIFF.

9   162.   Defendant PISANI made the disclosures about Plaintiff with reckless disregard for

10   the truth.

11   163.   Defendant PISANI was negligent in determining the truth of the information or

12   whether a false impression would be created by its disclosure.

13

14   164.   PLAINTIFF was harmed by the disclosures made by Defendant PISANI.

15   165.   The conduct of Defendant PISANI was a substantial factor in causing harm to

16   PLAINTIFF, and Defendant Pisani is therefore liable to Plaintiff for invasion of privacy.

17   166.   Defendant STEWART communicated to one or more persons other than PLAINTIFF

18   content, information, or material that showed Plaintiff in a false light, including but not

19   limited to content or information stating that Plaintiff was the restrained party subject of a

20   restraining order by a Member of the Sacramento City Council, and had committed one or

21   more acts or engaged in conduct requiring intervention from law enforcement or from

22   COUNTY's Division of Behavioral Health Services.

23

24   167.   The false light created by the disclosure would be highly offensive to a reasonable

25   person in PLAINTIFF's position.

26   168.   Defendant STEWART knew the disclosure would create a false impression about

27   PLAINTIFF.

28

PLAINTIFF's FIRST AMENDED COMPLAINT 46

169.   Defendant STEWART made the disclosures about PLAINTIFF with reckless disregard for the truth.

170.   Defendant STEWART was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

171.   PLAINTIFF was harmed by the disclosures made by Defendant STEWART.

172.   The conduct of Defendant STEWART was a substantial factor in causing harm to Plaintiff, and Defendant Stewart is therefore liable to Plaintiff for invasion of privacy.

173.   Defendant REIMAN communicated to one or more persons other than PLAINTIFF content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating that Plaintiff was the restrained party subject of a restraining order by a Member of the Sacramento City Council, and had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

174.   The false light created by the disclosure would be highly offensive to a reasonable person in PLAINTIFF's position.

175.   Defendant REIMAN knew the disclosure would create a false impression about PLAINTIFF.

176.   Defendant REIMAN made the disclosures about PLAINTIFF with reckless disregard for the truth.

177.   Defendant REIMAN was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

178.   PLAINTIFF was harmed by the disclosures made by Defendant REIMAN.

179.   The conduct of Defendant REIMAN was a substantial factor in causing harm to PLAINTIFF, and Defendant Reiman is therefore liable to Plaintiff for invasion of privacy.

180.   Defendant ROE ONE communicated to one or more persons other than PLAINTIFF content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

181.   The false light created by the disclosure would be highly offensive to a reasonable person in PLAINTIFF's position.

182.   Defendant ROE ONE knew the disclosure would create a false impression about PLAINTIFF.

183.   Defendant ROE ONE made the disclosures about PLAINTIFF with reckless disregard for the truth.

184.   Defendant ROE ONE was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

185.   PLAINTIFF was harmed by the disclosures made by Defendant ROE ONE.

186.   The conduct of Defendant ROE ONE was a substantial factor in causing harm to PLAINTIFF, and Defendant Roe One is therefore liable to Plaintiff for invasion of privacy.

187.   Defendant ROE TWO communicated to one or more persons other than PLAINTIFF content, information, or material that showed Plaintiff in a false light, including but not limited to content or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

PLAINTIFF's FIRST AMENDED COMPLAINT 48

188.    The false light created by the disclosure would be highly offensive to a reasonable person in PLAINTIFF's position.

189.    Defendant ROE TWO knew the disclosure would create a false impression about PLAINTIFF.

190.    Defendant ROE TWO made the disclosures about PLAINTIFF with reckless disregard for the truth.

191.    Defendant ROE TWO was negligent in determining the truth of the information or whether a false impression would be created by its disclosure.

192.    PLAINTIFF was harmed by the disclosures made by Defendant ROE TWO.

193.    The conduct of Defendant ROE TWO was a substantial factor in causing harm to PLAINTIFF, and Defendant Roe Two is therefore liable to Plaintiff for invasion of privacy.

**SIXTH CAUSE OF ACTION: versus DEFENDANTS PISANI, STEWART, REIMAN, ROE ONE and ROE TWO for DEFAMATION [California Civil Code Sections 44, 45, 46]**

194.    PLAINTIFF hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-76 as though fully set forth herein.

195.    Defendant PISANI made one or more purported statements of fact of and concerning PLAINTIFF to one or more persons other than Plaintiff, including but not limited to content, material or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services, including but not limited to content or information stating that Plaintiff was the restrained party subject of a restraining order by a Member of the Sacramento City Council, and had committed one or more acts or

1  engaged in conduct requiring intervention from law enforcement or from COUNTY's

2  Division of Behavioral Health Services.

3

4  196.    The persons other than PLAINTIFF who heard the communications from Defendant

5  PISANI alleged in this cause of action reasonably understood these statements to be

6  statements about Plaintiff and that stated Plaintiff had committed one or more acts or

7  engaged in conduct requiring intervention from law enforcement or from COUNTY's

8  Division of Behavioral Health Services, including but not limited to understanding that

9  Plaintiff was the restrained party subject of a restraining order by a Member of the

10  Sacramento City Council, and had committed one or more acts or engaged in conduct

11  requiring intervention from law enforcement or from County Behavioral Health.

12

13  197.    These statements by Defendant PISANI were false when they were made.

14  198.    Defendant PISANI in making these statements knew they were false, or acted with

15  reckless disregard of their truth or falsity.

16  199.    Defendant PISANI failed to use reasonable care in making these statements.

17  200.    Defendant PISANI in making these statements acted with hatred toward PLAINTIFF,

18  spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or annoy

19  Plaintiff.

20  201.    PLAINTIFF was harmed by the statements made by Defendant PISANI.

21  202.    The conduct of Defendant PISANI was a substantial factor in causing harm to

22  PLAINTIFF, and Defendant Pisani is therefore liable to Plaintiff for defamation.

23  203.    Defendant STEWART made one or more purported statements of fact of and

24  concerning PLAINTIFF to one or more persons other than Plaintiff, including but not

25  limited to content, material or information stating Plaintiff had committed one or more

acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services, including but not limited to content or information stating that Plaintiff was the restrained party subject of a restraining order by a Member of the Sacramento City Council, and had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

204.    The persons other than PLAINTIFF who heard the communications from Defendant STEWART alleged in this cause of action reasonably understood these statements to be statements about Plaintiff and that stated Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services, including but not limited to understanding that Plaintiff was the restrained party subject of a restraining order by a Member of the Sacramento City Council, and had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

205.    These statements by Defendant STEWART were false when they were made.

206.     Defendant STEWART in making these statements knew they were false, or acted with reckless disregard of their truth or falsity.

207.    Defendant STEWART failed to use reasonable care in making these statements.

208.    Defendant STEWART in making these statements acted with hatred toward PLAINTIFF, spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or annoy Plaintiff.

209.    PLAINTIFF was harmed by the statements made by Defendant STEWART.

210. The conduct of Defendant STEWART was a substantial factor in causing harm to PLAINTIFF, and Defendant Stewart is therefore liable to Plaintiff for defamation.

211. Defendant REIMAN made one or more purported statements of fact of and concerning PLAINTIFF to one or more persons other than Plaintiff, including but not limited to content, material or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services, including but not limited to content or information stating that Plaintiff was the restrained party subject of a restraining order by a Member of the Sacramento City Council, and had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

212. The persons other than PLAINTIFF who heard the communications from Defendant REIMAN alleged in this cause of action reasonably understood these statements to be statements about Plaintiff and that stated Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services, including but not limited to understanding that Plaintiff was the restrained party subject of a restraining order by a Member of the Sacramento City Council, and had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from County Behavioral Health.

213. These statements were false when they were made by Defendant REIMAN.

214. Defendant REIMAN in making these statements knew they were false, or acted with reckless disregard of their truth or falsity.

215. Defendant REIMAN failed to use reasonable care in making these statements.

PLAINTIFF's FIRST AMENDED COMPLAINT 52

216.    Defendant REIMAN in making these statements acted with hatred toward PLAINTIFF, spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or annoy Plaintiff.

217.    PLAINTIFF was harmed by the statements made by Defendant REIMAN.

218.    The conduct of Defendant REIMAN was a substantial factor in causing harm to PLAINTIFF, and Defendant Reiman is therefore liable to Plaintiff for defamation.

219.    Defendant ROE ONE made one or more purported statements of fact of and concerning PLAINTIFF to one or more persons other than Plaintiff, including but not limited to content, material or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

220.    The persons other than PLAINTIFF who heard the communications from Defendant ROE ONE alleged in this cause of action reasonably understood these statements to be statements about PLAINTIFF that stated Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

221.    These statements by Defendant ROE ONE were false when they were made.

222.    Defendant ROE ONE in making these statements knew they were false, or acted with reckless disregard of their truth or falsity.

223.    Defendant ROE ONE failed to use reasonable care in making these statements.

224.    Defendant ROE ONE in making these statements acted with hatred toward PLAINTIFF, spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or annoy Plaintiff.

225.   PLAINTIFF was harmed by the statements made by Defendant ROE ONE.

226.   The conduct of Defendant ROE ONE was a substantial factor in causing harm to PLAINTIFF, and Defendant Roe One is therefore liable to Plaintiff for defamation.

227.   Defendant ROE TWO made one or more purported statements of fact of and concerning PLAINTIFF to one or more persons other than Plaintiff, including but not limited to content, material or information stating Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

228.   The persons other than PLAINTIFF who heard the communications from Defendant ROE TWO alleged in this cause of action reasonably understood these statements to be statements about Plaintiff that stated Plaintiff had committed one or more acts or engaged in conduct requiring intervention from law enforcement or from COUNTY's Division of Behavioral Health Services.

229.   These statements by Defendant ROE TWO were false when they were made.

230.   Defendant ROE TWO in making these statements knew they were false, or acted with reckless disregard of their truth or falsity.

231.   Defendant ROE TWO failed to use reasonable care in making these statements.

232.   Defendant ROE TWO in making these statements acted with hatred toward PLAINTIFF, spite toward Plaintiff, ill will toward Plaintiff, and/or intent to vex, injure or annoy Plaintiff.

233.   PLAINTIFF was harmed by the statements made by Defendant ROE TWO.

234.   The conduct of Defendant ROE TWO was a substantial factor in causing harm to PLAINTIFF, and Defendant Roe Two is therefore liable to Plaintiff for defamation.

**SEVENTH CAUSE OF ACTION: versus DEFENDANT COUNTY OF SACRAMENTO for NEGLIGENT TRAINING, DISCIPLINE, AND SUPERVISION OF COUNTY DEPUTY SHERIFFS IN PROBLEM ORIENTED POLICING; COUNTY SENIOR MENTAL HEALTH COUNSELORS ; and COUNTY MENTAL HEALTH PROGRAM COORDINATORS [Cal. Gov. Code Section 815.2(a); _C.A. v. William S. Hart Union High School District_, 53 Cal.4[th] 861 (2012)]**

235. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-234 as though fully set forth herein.

236. Defendant COUNTY's training, supervision, and discipline of Defendant BRIGGS, Defendant PISANI, Defendant STEWART, Defendant REIMAN, Defendant ROE ONE, Defendant ROE TWO, and other County employee/agent  ROE Defendants and DOE Defendants, was negligent in protecting inhabitants of the County of Sacramento (including PLAINTIFF), from County Deputy Sheriff, County Senior Mental Health Counselor, County Mental Health Program Coordinator,  and other County employee violations of Plaintiff's California law protection against intrusion into private affairs and invasions of privacy; intentional infliction of emotional distress; trespass; negligence; defamation; and retaliation for exercise of speech and writing protected under the United  States Constitution First Amendment and Article I, Sections 1, 2, and 3 of the California Constitution.

237.  In training, disciplining, and supervising, or in failing to train, discipline and supervise Defendants PISANI, BRIGGS, STEWART, REIMAN, County employees/agents  ROE and DOE defendants, and other COUNTY employees in these positions, Defendant COUNTY and its supervisorial and final policy-making employees have a relationship with the inhabitants of the County of Sacramento (including PLAINTIFF) and owe inhabitants of the County of Sacramento (including Plaintiff) a duty of reasonable care. The relationship between Defendant COUNTY and Plaintiff includes but is not limited to the COUNTY's Sheriff's

1   Department website invitation for persons to send Police Reports to Defendant COUNTY's

2   Sheriff's Department,

3   238. Defendant COUNTY's failure to train, supervise, and discipline County Senior Mental

4   Health Counselor (SMHC) Pamela PISANI, SMHC Jennifer STEWART, County Mental

5   Health Program Coordinator Jennifer REIMAN, Sheriff's Sergeant Ronald BRIGGS,

6   Defendant ROE ONE, Defendant ROE TWO, other County employee/agent Roe Defendants

7   and Doe Defendants, and other COUNTY employees/agents in these positions  in obvious

8   procedures to prevent retaliation for protected speech and petitioning; trespasses; defamation;

9   false light invasion of privacy; and/or intrusions into the private affairs of and other violations

10  of the right of privacy of residents of Sacramento County (including PLAINTIFF) breached

11  Defendant COUNTY's duty of reasonable care, caused substantial harm to PLAINTIFF, and

12  was the proximate cause of Plaintiff's injuries from Defendant County's employees Pisani,

13  Briggs, Stewart, Reiman, Roe One, Roe Two, and County employee Roe Defendants and Doe

14  Defendants.

15  239. Defendant COUNTY's acts of ratification and in carrying out policies, procedures, final

16  decisions, or customs alleged herein also amount to negligent training, supervision, and

17  discipline of Defendants PISANI, STEWART, REIMAN, BRIGGS, ROE ONE, ROE TWO,

18  and other County employee Roe Defendants and Doe Defendants, violates the County's duty

19  to Plaintiff under California Government Code Section 815.2(a) and California Civil Code

20  Section 1714.

21  240. Defendant COUNTY is therefore liable to Plaintiff under California Government Code

22  Section 815.2(a) for negligent training, supervision, and discipline of Defendants PISANI,

23  BRIGGS, STEWART, REIMAN, ROE ONE, ROE TWO, and/or other County employee

24  ROE Defendants and DOE Defendants.

PLAINTIFF's FIRST AMENDED COMPLAINT 56

**EIGHTH CAUSE OF ACTION: GOVERNMENT CODE SECTION 815.2(a)**
***RESPONDEAT SUPERIOR* versus DEFENDANT COUNTY OF SACRAMENTO FOR**
**THE ACTIONS OF DEFENDANT COUNTY SENIOR MENTAL HEALTH**
**COUNSELORS PISANI and STEWART; COUNTY MENTAL HEALTH PROGRAM**
**COORDINATOR REIMAN; COUNTY SHERIFF'S SERGEANT RONALD BRIGGS;**
**and COUNTY EMPLOYEE ROE and DOE DEFENDANTS [California Government**
**Code Section 815.2(a); *Mary M. v. City of Los Angeles*, 54 Cal.3d 202 (1991)]**

241. PLAINTIFF hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-234 as though fully set forth herein.

242. California Government Code Section 815.2(a) makes Defendant COUNTY liable for the acts or omissions of County employees within the scope of the employee's employment if the act or omission gives to a cause of action against that employee.

243. At all times material hereto, Defendant COUNTY employs or employed Defendants PISANI and STEWART as County Senior Mental Health Counselors during their acts complained of herein.

244. At all times material hereto, Defendant COUNTY employed or employs Defendant REIMAN as County Mental Health Program Coordinator during her acts complained of herein.

245. Defendant COUNTY employed or employs Defendant BRIGGS as a Sheriff's Department Sergeant during his acts complained of herein.

246. Defendant County Senior Mental Health Counselor PISANI is sued for acts or omissions committed within the scope of her COUNTY employment in Causes of Action First, Second, Third, Fourth, Fifth, Sixth and Ninth herein.

247. Defendant County Senior Mental Health Counselor STEWART is sued for acts or omissions committed within the scope of her COUNTY employment in Causes of Action First, Second, Fourth, Fifth, Sixth and Ninth herein.

248. Defendant County Mental Health Program Coordinator REIMAN is sued for acts or omissions committed within the scope of her COUNTY employment in Causes of Action First, Second, Fourth, Fifth, Sixth and Ninth herein.

249. Defendant County Sheriff's Department Sergeant BRIGGS is sued for acts or omissions committed within the scope of his COUNTY employment in Causes of Action First, Second, Fourth, Fifth, Sixth and Ninth herein.

250. Defendant COUNTY is therefore liable to Plaintiff under Government Code Section 815.2(a) for the acts or omissions of County employees PISANI, STEWART, REIMAN and BRIGGS in the Causes of Action pled against each of them.

251.    Defendant COUNTY employs or uses as an agent or representative Defendant ROE ONE.

252.    Defendant ROE ONE is sued for acts or omissions committed within the scope of her COUNTY employment, agency, or representation in Causes of Action First, Second, Fourth, Fifth and Sixth herein.

253.    Defendant COUNTY is therefore liable to Plaintiff under Government Code Section 815.2(a) for the acts or omissions of County employee ROE ONE in the Causes of Action pled against Defendant ROE ONE.

254.    Defendant COUNTY employs or uses as an agent or representative Defendant ROE TWO.

255.    Defendant ROE TWO is sued for acts or omissions committed within the scope of her County employment, agency, or representation in Causes of Action First, Second, Fourth, Fifth and Sixth herein.

256.   Defendant COUNTY is therefore liable to Plaintiff under California Government Code Section 815.2(a) for the acts or omissions of County employee ROE TWO in the Causes of Action pled against Defendant Roe Two.

257.   Defendant COUNTY employs one or more of the Jane Roe Defendants 3-100 and John Doe Defendants 1-100. These Defendants are sued for acts or omissions committed within the scope of their COUNTY employment in Causes of Action First, Second, Fourth, Fifth and Sixth herein. Defendant County is therefore liable to Plaintiff under California Government Code Section 815.2(a) for the acts or omissions of these employees that caused harm to Plaintiff.

**NINTH CAUSE OF ACTION: TOM BANE CIVIL RIGHTS ACT versus DEFENDANTS COUNTY OF SACRAMENTO, BRIGGS, STEWART, REIMAN and PISANI FOR ACTS OF THREATS, INTIMIDATION, AND COERCION TO RETALIATE AGAINST PLAINTIFF FOR EXERCISING HER FEDERAL AND STATE CONSTITUTIONAL RIGHTS OF PETITION BY FILING POLICE REPORTS WITH DEFENDANT COUNTY'S SHERIFF DEPARTMENT [Civil Code Section 52.1]**

258.   PLAINTIFF hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs 1-76 as though fully set forth herein.

259.   Civil Code Section 52.1 (the Bane Act) makes it unlawful for any person (including public entities such as COUNTY) to deprive or attempt to deprive PLAINTIFF of her rights under the United States Constitution, California Constitution, or California law, through any act of threat, coercion, or intimidation.

260.   PLAINTIFF's filing of Police Reports/Crime Reports with Defendant COUNTY's Sheriff's Department, including but not limited to the November 9, 2020 Police Report letter attached as Exhibit B to the COUNTY's Reiman Declaration, is protected

expression under both the United States Constitution First Amendment and California

Constitution, Article I, Sections 2 and 3. It is also an act encouraged by the website of

Defendant COUNTY's Sheriff's Department.

261.    The acts of Defendant BRIGGS in causing the sending of a COUNTY "mental health

worker to check in on PLAINTIFF" and to subject PLAINTIFF to the acts of Defendants

PISANI, REIMAN and STEWART were done in retaliation for PLAINTIFF sending to

Defendants COUNTY and BRIGGS a constitutionally protected Police Report/Crime

Report that Defendant BRIGGS found to be "unfounded" and/or otherwise disagreeable

to Defendant BRIGGS acting in the course and scope of his COUNTY employment as a

Sheriff's Department Sergeant.

262.    The acts of Defendants BRIGGS, STEWART, REIMAN, and PISANI in the course

and scope of their COUNTY employment committed against PLAINTIFF were acts of

retaliation against PLAINTIFF for her exercise of the right to petition the government for

redress of grievances under the United States Constitution First Amendment Petition

Clause and her rights of expression under the First Amendment Speech and Press clauses;

for her exercise of speaking and writing freely on all subjects protected by the California

Constitution Article I, Section 2;  her right to petition under California Constitution

Article I, Section 3; and her right to recover her stolen cellphone under California

Constitution Article  I, Section 1 protection of use of property,

by causing PLAINTIFF to suffer the acts of PISANI attempting to entrap, coerce,

threaten or intimidate PLAINTIFF into not exercising her federal constitutional and state

law rights to file Police Reports/Crime Reports with Defendant COUNTY's Sheriff's

Department; into accepting COUNTY mental health services that PLAINTIFF did not

1  want; and/or to be stigmatized as a person receiving or offered COUNTY mental health

2  services in order to discredit her Police Reports/Crime Reports.

3  **263.**  The acts of Defendants BRIGGS, STEWART, REIMAN and PISANI in the course

4  and scope of their COUNTY employment were also acts of Defendant COUNTY that

5  violated the Bane Act.

6

7  **264.**  Defendants BRIGGS, STEWART, REIMAN, PISANI and COUNTY are therefore

8  each liable to PLAINTIFF under the Bane Act, individually, jointly, and severally.

9

10  **TENTH CAUSE OF ACTION: FEDERAL CIVIL RIGHTS ACT [United States Code, Title 42, Section 1983] versus DEFENDANTS BRIGGS, STEWART, REIMAN and PISANI FOR RETALIATING AGAINST PLAINTIFF FOR EXERCISING HER FEDERAL CONSTITUTIONAL RIGHT OF PETITION BY FILING POLICE REPORTS WITH DEFENDANT COUNTY'S SHERIFF DEPARTMENT**

11

12

13

14

15  265.  Plaintiff hereby re-alleges and incorporates by reference the allegations contained in

16  the preceding paragraphs 1-76 and 258-264 as though fully set forth herein.

17  266.  United States Code, Title 42, Section 1983 ("Section 1983") makes it unlawful for

18  any person to deprive or attempt to deprive Plaintiff of her rights under the United States

19  Constitution. State courts such as this Court have jurisdiction over Section 1983 claims.

20  267.  PLAINTIFF's filing of Police Reports/Crime Reports with Defendant COUNTY's

21  Sheriff's Department, including but not limited to the November 9, 2020 Police Report

22  letter attached as Exhibit B to the COUNTY's Reiman Declaration,  is a protected act of

23

24  expression and/or protected act of petition under the  United States Constitution First

25  Amendment. It is also an act whose exercise is encouraged by the website of Defendant

26  COUNTY's Sheriff's Department.

27

28

268.    The acts of Defendants BRIGGS, STEWART, REIMAN and PISANI alleged herein were all committed under color of state law by these Defendants in the course and scope of their COUNTY employment.

269.    The acts of Defendant BRIGGS in causing the sending of a COUNTY "mental health worker to check in on PLAINTIFF" and to subject PLAINTIFF to the acts of Defendants PISANI, REIMAN and STEWART were done in retaliation for PLAINTIFF sending to Defendants COUNTY and BRIGGS a constitutionally protected Police Report/Crime Report that Defendant BRIGGS found to be "unfounded" and/or otherwise disagreeable to Defendant BRIGGS acting in the course and scope of his COUNTY employment and under color of state law as a Sheriff's Department Sergeant.

270.    The acts of Defendants BRIGGS, STEWART, REIMAN, and PISANI in the course and scope of their COUNTY employment and under color of state law that they committed against PLAINTIFF were acts of retaliation against PLAINTIFF for her exercise of the right to petition the government for redress of grievances under the United States Constitution First Amendment Petition Clause and her rights of expression under the First Amendment Speech and Press clauses.

271.    The acts of Defendants BRIGGS, STEWART, REIMAN and PISANI alleged herein deprived PLAINTIFF of her First Amendment rights to petition the government for redress of grievances, freedom of speech, and freedom of the press, by causing PLAINTIFF to suffer the acts of PISANI attempting to entrap, coerce, threaten or intimidate PLAINTIFF into not exercising her First Amendment rights to file Police Reports/Crime Reports with Defendant COUNTY's Sheriff's Department; into accepting COUNTY mental health services that PLAINTIFF did not want; and/or to be stigmatized

1    as a person receiving or offered COUNTY mental health services in order to discredit her

2    Police Reports/Crime Reports.

3

4    272.    Defendants BRIGGS, STEWART, REIMAN, and PISANI are therefore each liable to

5    PLAINTIFF under United States Code, Title 42, Section 1983, individually, jointly, and

6    severally.

7

8    **ELEVENTH CAUSE OF ACTION: FEDERAL CIVIL RIGHTS ACT [United
     States Code, Title 42, Section 1983] MUNICIPAL AND SUPERVISORIAL
9    LIABLITY versus DEFENDANT COUNTY for RATIFICATION, POLICIES,
     CUSTOMS, AND/OR DELIBERATELY  INDIFFERENT TRAINING,
10   DISCIPLINE, and SUPERVISION OF BRIGGS, STEWART, REIMAN and
     PISANI THAT RATIFIED OR WERE THE MOVING FORCE BEHIND THE
11   RETALIATING AGAINST PLAINTIFF
     FOR EXERCISING HER FEDERAL CONSTITUTIONAL RIGHT OF PETITION
12   BY FILING POLICE REPORTS WITH DEFENDANT COUNTY'S SHERIFF
13   DEPARTMENT**

14

15   273.    PLAINTIFF hereby re-alleges and incorporates by reference the allegations contained

16   in the preceding paragraphs 1-76, and from Tenth Cause of Action paragraphs 265-272,

17   as though fully set forth herein.

18   274.    Defendant COUNTY is liable to PLAINTIFF under United States Code, Title 42,

19   Section 1983 for any or all of the following:

20   (a) Ratification of the acts of BRIGGS, STEWART, REIMAN and PISANI, through

21   REIMAN supervising PISANI in carrying out the request of BRIGGS communicated

22   through STEWART;

23   (b) Deliberately indifferent training, supervision, and discipline of Defendants BRIGGS,

24   PISANI, STEWART, and REIMAN in the state and federal constitutional

25   requirement not to retaliate against persons who file Police Reports/Crime Reports.

(c) Policies or customs so widespread as to be standard operating procedure; lack of policies that should have been in place; or absence of policies, that either allowed, encouraged, or failed to discourage the use of COUNTY mental health services to commit acts of retaliation against the filers of Police Reports/Crime Reports with Defendant COUINTY's Sheriff's Department, that were the moving force behind the acts of deprivation of PLAINTIFF's First Amendment rights committed by Defendants BRIGGS, STEWART, REIMAN and PISANI.

**275.   PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

1. Compensatory damages in an amount according to proof that are fair, just, and reasonable against all Defendants in all Causes of Action.

2. Exemplary damages against individual capacity Defendants PISANI, BRIGGS, STEWART, REIMAN, ROE ONE, and ROE TWO.

3. All other damages, penalties, costs, interest and attorney's fees as allowed under California law and federal Section 1983, including but not limited to Bane Act treble damages; Bane Act attorney's fees; Bane Act exemplary damages; and Section 1983 attorney's fees under Section 1988 of United States Code Title 42.

276.   **JURY TRIAL DEMAND**

Plaintiff hereby demands trial by jury on all claims for relief that are triable by a jury.

**TWELFTH CAUSE OF ACTION: PUBLIC RECORDS ACT PETITION FOR DECLARATORY JUDGMENT and WRIT OF MANDAMUS**
**versus COUNTY OF SACRAMENTO**

277.   Petitioner Ms. Parvin Olfati ("Petitioner" or "Ms. Olfati") petitions this Court for a declaratory judgment and/or alternate writ of mandate ordering Respondents COUNTY OF SACRAMENTO, County Clerk of the Board of Supervisors,

1   County's Sheriff's Department ("County Sheriff"), County Sheriff Scott Jones
2   ("Jones") and Sheriff's Records Officer Stacey Miyasaki to comply with the
3   Public Records Act (Government Code Section 6250 *et seq.*), and/or to issue an
4   order to show cause why such an order should not issue, a peremptory writ of
5   mandate upon return of the alternative writ, and an order awarding attorneys fees
6   and costs. The relief sought by Petitioner is authorized by Government Code
7   Sections 6258 and 6259.

8   278.   Petitioner, Ms. Parvin OLFATI, is a resident of the city and county of
9   Sacramento.

10  279.   Respondent COUNTY OF SACRAMENTO operates a County Sheriff's
11  Department and Clerk of the Board of Supervisors Office. By COUNTY policy or
12  custom announced on the COUNTY website, Public Records Act (PRA) requests
13  to COUNTY departments other than the County Sheriff or District Attorney are
14  handled by the Clerk of the Board of Supervisors Office, whereas PRA requests to
15  the County Sheriff are handled separately by the County Sheriff, which has its'
16  own Disclosure Officer.   Respondent COUNTY is a "local agency" within the
17  meaning of the California Public Records Act, Government. Code Section
18  6252(a).  Respondent has possession, control, and authority over the records and
19  information sought by Petitioner.  Because the COUNTY and its' County Sheriff's
20  Department and Clerk of the Board of Supervisors Office are all located in
21  Sacramento, upon information and belief, all of the records sought by Petitioner
22  are located in Sacramento.

23  280.   Respondent Scott Jones ("Sheriff Jones") is the elected Sheriff of the County
24  of Sacramento and is in charge of the County Sheriff's Department. Sheriff Jones
25  has appointed one or more employees of the County Sheriff's Department to act as
26  Disclosure Officers responsible for responding on behalf of the County Sheriff to
27  requests for records pursuant to the California Public Records Act (Govt. Code
28  §6250 et seq.), including but not limited to Respondent STACEY MIYASAKI,

PLAINTIFF's FIRST AMENDED COMPLAINT 65

1      who upon information and belief is the or one of the Disclosure Officers or

2      Records Officers for the County Sheriff.

3    281.    COUNTY's Sheriff's Department on its website and/or other public media

4      invites members of the public such as Petitioner to send PRA requests via

5      electronic mail to Records@SacSheriff.com  or via postal mail to the County

6      Sheriff at 4500 Orange Grove Avenue, Sacramento, California 95841 and/or (prior

7      to such office closure) via personal delivery to 701 "G" Street, Sacramento,

8      California 95814.

9

10    282.    COUNTY's Clerk of the Board of Supervisors Office on its' website and/other

11      public media invites members of the public such as Petitioner to send PRA

12      requests via in-person delivery to the Clerk of the Board of Supervisors Office at

13      Suite 2450, 700 "H" Street (Sacramento, California 95814) and/or via electronic

14      mail through its' website or to electronic mail addresses such as

15      KayR@saccounty.net

16    283.    Pursuant to the Public Records Act (Government Code §6253), on multiple

17      dates in 2020, 2021, and 2022, Petitioner sent via electronic mail and/or postal

18      mail to the addresses  Records@SacSheriff.com  or 4500 Orange Grove Avenue

19      (Sacramento, CA 95841) the following PRA requests attached in composite form

20      hereto as Exhibit Eleven; all of these were sent to the County Sheriff except for the

21      December 15, 2020, January 31, 2022; and March 29, 2022  PRA requests sent to

22      Defendant County's Clerk of the Board of Supervisors Office. The only content

23      missing are the complete photographs on the final page of the three PRA requests

24      headlined "Paragraph 283-(a)", "Paragraph 283-(i)" and "Paragraph 283-(k)",

25      which for formatting reasons did not copy over.

26

27    (a) On December 23, 2020, her PRA request for: **County of Sacramento Sheriff's**
     **Department Documents That Constitute Sheriff's Department Information**

28      **Communicated To County of Sacramento Department of Health Services**

**Division of Behavioral Health Services Senior Mental Health Counselor LMFT Pamela Pisani That Mention, Refer to, or Relate to Parvin Olfati or 1859 45th Street;**

(b) On December 15, 2020, her request to Defendant County's Clerk of the Board Office [via e mail to KayR@countyofsacramento.org] her PRA request for **County of Sacramento Documents That Constitute, Mention, Refer To, And/or Relate To December 14, 2020 Pamela Pisani Senior Mental Health Counselor or LMFT Activity At 1859 45th Street And/or Related To Parvin Olfati**

(c) On December 13, 2020, her PRA request for: **Sheriff's Department Records Regarding Any County Sheriff Communications With Ettore's European Bakery and Restaurant (2376 Fair Oaks Boulevard, Sacramento, CA 95825) That Mention, Refer To, And/or Relate to Parvin Olfati, Including But Not Limited To Any Communications With Any Cook, Staff Member, or Employee Regarding Any Parvin Olfati Order on December 13, 2020;**

(d) On November 10, 2020, her PRA request for: **Sheriff's Department Records Regarding Any County Sheriff Vehicle Activity On November 10, 2020 At Bella Bru Café At 5038 Fair Oaks Boulevard in Carmichael, Including But Not Limited To Activity By Sheriff Employees Using The County Sheriff Vehicle With The California License Plate Number 1411641 And/or the Identification Number 374B.**

(e) On November 30, 2020, her PRA request for: **Sheriff's Department Records Regarding Any County Sheriff Vehicle Activity On November 30, 2020 At Bella Bru Café At 5038 Fair Oaks Boulevard in Carmichael, Including But Not Limited To Activity By Sheriff Employees Using Sheriff Vehicle With The California License Plate Number 1552413**

(f) On December 21, 2020, her PRA request for: **Sheriff's Department Records of Purported "Review" Of Over 150 Unanswered Public Records Act Requests from Parvin Olfati**

(g) On October 14, 2020, her PRA request for: **Sheriff's Department CAD Call Print Synopsis or Similar Document For 1859 45th Street, Sacramento, California 95819**

(h) On November 6, 2020, her PRA request for: Sheriff's Department **Communications, Payments, And/or Emoluments Regarding Any Activity At Bella Bru Café at 5038 Fair Oaks Boulevard on Any Date Including But Not Limited To November 6, 2020, Including But Not Limited To Any Activity Involving An Automobile With The California License Pate "WMGLEN"**

1

(i)    On January 21, 2021, her PRA request for:

2

**Sheriff's Department Communications That Mention, Refer To, And/or Relate to Any Stalking, Surveillance, Monitoring, Following or Reporting Regarding Parvin Olfati,**

3

**Including But Not Limited To Any Records Created, Transmitted, Stored And/or Received By The Woman Driver, Owner, or User of The White Chevrolet Sport Utility Vehicle With**

4

**The California License Plate 8LTE039**

5

(j)    On February 26, 2021, her PRA request for:

6

**Sheriff's Department Records of Vehicle and/or Deputy Presence On 45th Street, "S" Street, "T" Street, and/or 46th Street At Any Time On December 14, 2020**

7

(k)    On March 16, 2021, her PRA request for:

8

**Sheriff's Department Documents That Constitute Sheriff's Department Information**

9

**Communicated To County of Sacramento Department of Health Services Division of Behavioral Health Services Senior Mental Health Counselor LMFT Pamela Pisani That**

10

**Mention, Refer to, or Relate to Parvin Olfati or 1859 45th Street**

11

(l)    On September 10, 2021, her PRA request for:

12

**Sheriff's Department Records of Vehicle and/or Deputy Presence In The Area of American River Drive Between 11:00 a.m. and 2:00 p.m. on September 5, 2021**

13

14

(m)    On October 8, 2021, her PRA request for:

15

**Sheriff's Department Documents Constituting, Mentioning, Referring To And/or Relating To Contracts, Agreements, And/or Memoranda of Understanding With**

16

**Visionary Integration Professionals In Force or Created, Transmitted, Received And/or Stored On or After January 1, 2003**

17

(n)    On December 16, 2021, her PRA request for:

18

**Sheriff's Department Records of Communications With George Hills Company, Inc.**

19

**Regarding Parvin Olfati Claim Against Sacramento County**

20

(o)    On January 31, 2022, her PRA request for:

21

**Sheriff's Department or Division of Behavioral Health Services Records Constituting Department Policies In Force On Any Date On Or After October 1, 2020 Regarding**

22

**Referral Of Persons To The County Mobile Crisis Support Team, Problem Oriented Policing, or County Division of Behavioral Health Services**

23

(p)    On January 31, 2022, her PRA request for:

24

**Sheriff's Department Records Of Any Investigation or Other Activity Related To Any Determination That The November 9, 2020 Parvin Olfati Police Report/Crime**

25

**Report Was "Unfounded" or Was A "Complaint Indicative of Potential Mental Health Distress"**

26

27

(q)    On January 31, 2022, her PRA request for:

28

**Sheriff's Department Sergeant Ronald Briggs Records Of Electronic Mail, Text Messages, CAD, or Other Communications That Mention, Refer to, or Relate to**

1  Parvin Olfati, Steven Maviglio, Barbara Andres, Or Any Resident, Owner, or User
2  of Any Address In The 1800-1900 Blocks of 45th Street in Sacramento, CA 95819

3          (r)    On January 31, 2022, her PRA request for
4  Sheriff's Department  Records Of Any And All Records of "Process Referrals" to
   the "Community Support Team" Between January 1, 2020 And The Date Of Your
5  Receipt Of This PRA Request

6          (s)    On January 31, 2022, her PRA request for Sheriff's
   Department  Sergeant Ronald Briggs Records Of Electronic Mail, Text Messages, CAD, or
7  Other Communications That Mention, Refer to, or Relate to Parvin Olfati, Steven Maviglio,
   Barbara Andres, Or Any Resident, Owner, or User of Any Address In The 1800-1900
8  Blocks of 45th Street in Sacramento, CA 95819

9          (t)    On January 31, 2022, Sheriff's Department records
   Constituting Department Policies In Force On Any Date On Or After October 1, 2020
10 Regarding Referral Of Persons To The County Mobile Crisis Support Team, Problem
   Oriented Policing, or County Division of Behavioral Health Services
11

12         (u)    On January 31, 2022, her PRA request for
13 Sheriff's Department Records Of Any Investigation or Other Activity Related To
   Any Determination That The November 9, 2020 Parvin Olfati Police Report/Crime
14 Report Was "Unfounded" or Was A "Complaint Indicative of Potential Mental
   Health Distress"
15

16         (v)    On February 14, 2022, her PRA request for
   Sheriff's Department Sergeant Ronald Briggs Duty Statement, Assignments, And
17 Sheriff's Car Driving Records From January 1, 2019 Through And Including The
   Date of Your Response To This PRA Request
18

19         (w)    On March 3, 2022, her PRA request for
   Sheriff's Department Communications To, With, or From The California Highway
20 Patrol That Mention, Refer to, And/or Relate to Parvin Olfati, That Were Created,
   Transmitted, Received And/or Stored Since January 1, 2017
21

22         (x)    On March 3, 2022, her PRA request for
23 Sheriff's Department Documents That Constitute, Mention, Refer To, And/or Relate
   To Any Informant, Providing of Information,  or Other Activity By Martin Raygoza,
24 Petros Raygoza, Helen Vatthis, or Any Person At 1851 45th Street (Sacramento,
   California 95819)
25

26         (y)    On March 10, 2022, her PRA request for
   Sacramento Sheriff's Department CAD Call Print Synopsis or Other Records of Calls for
27 Service to County Sheriff To 1859 45th Street, Sacramento, California 95819 For 2020
   Period Between August 1 and August 31
28

PLAINTIFF's FIRST AMENDED COMPLAINT 69

1

2          (z)   On March 24, 2022, her PRA request for

3    **Sheriff's Department Records Created, Transmitted, Received And/or Stored On Or After March 1, 2022 That Constitute, Mention, Refer To And/or Relate To Any Suspicious**

4    **Activity Report or Other Communication About Parvin Olfati Or 1859 45ᵗʰ Street Received From Any Person or Entity**

5

6          (aa)   On January 31, 2022, her PRA request for **County of Sacramento Sheriff's Department or County Behavioral Health Records Of Any And All Records of "Process**

7    **Referrals" to the "Community Support Team" Between January 1, 2020 And The Date Of Your Receipt Of This PRA Request**

8          (bb)  On March 25, 2022, her PRA request for **County of Sacramento Division of Behavioral Health Services Documents That Constitute, Mention,**

9    **or Refer To All "Drop By" or "Cold Knock Contacts" by Senior Mental Health Counselors or Community Support Team Members Between January 1, 2020 And The Date Of Your**

10   **Response To This PRA Request**

11

12   284.    Petitioner's requests reasonably described these records and were made in

13          accordance with all statutory requirements for obtaining access to or copies of

14          public records.

15   285.    Petitioner was at all times herein mentioned ready to tender any fees to cover

16          Respondents costs in providing access to or copies of the aforementioned records.

17   286.    Pursuant to the PRA, Government. Code Section 6253, Respondent was

18          obligated to make these records "promptly available" to Petitioner and, in any

19          event, to respond to PETITIONER within no more than ten days from its receipt of

20          the request. Therefore, Respondent's responses to these PRA requests from

21          Petitioner have been overdue since January 4, 2021 and April 4, 2022.   Petitioner

22          has not received any written response or records from Respondent on any date in

23          this period or on any 2022 date in April preceding the filing of this First Amended

24          Complaint.

25

26   287.    Respondents' refusal to respond in writing to Petitioner's PRA requests or to

27          produce responsive records is in violation of their statutory duties under

28          Government Code Section 6253.

PLAINTIFF's FIRST AMENDED COMPLAINT 70

288.    Petitioner has already sustained and will continue to sustain irreparable damage
and injury in that she is being denied prompt access to records created,
transmitted, received or stored by Respondent about activities of Respondent that
affect Petitioner's life and that Petitioner believes disclose Respondent activities
on behalf of COUNTY targeted at Petitioner, including but not limited to records
regarding Petitioner's claims in this action.

289.    An actual controversy exists between Petitioner and Respondents because the
latter have refused to comply with Petitioner's request for records and failed to
respond within the statutory deadline.  Accordingly, pursuant to Government Code
section 6258, Petitioner is entitled to an order declaring that the records sought
must be disclosed promptly.

290.    Petitioner is also entitled to institute proceedings for a writ of mandate to
enforce her right and to have these proceedings resolved on an expedited basis
consistent "with the object of securing a decision as to these matters at the earliest
possible time." (Government Code  Section 6258).

291.    In seeking this relief, Petitioner has incurred reasonable attorneys' fees and
costs in an amount to be established by proof at the hearing of this matter.

WHEREFORE, PETITIONER prays for judgment on this Count as follows:

1.    For an order requiring Respondents COUNTY, County Sheriff's
Department, County Sheriff, County Sheriff Disclosure Officer, to comply immediately
with Petitioner's PRA request;

2.    For an alternative writ of mandate directing Respondents COUNTY,
County Sheriff's Department, County Sheriff, and County Sheriff Disclosure Officer to
disclose the public records requested by Petitioner or to show cause why respondent
agency should not do so;

3.    If applicable, on return of the alternative writ and hearing on the order to
show cause, that this Court issue a peremptory writ of mandate directing Respondents
COUNTY, County Sheriff's Department, County Sheriff, and County Sheriff Disclosure
Officer to disclose the public records requested by Petitioner;

4.    For an order requiring Respondent COUNTY and its' Clerk of the Board
of Supervisors Office to comply immediately with Petitioner's PRA December 15, 2020
request reprinted in Exhibit Twelve and referenced in paragraph 283-(b) herein;

1    5.    For an alternative writ of mandate directing Respondent COUNTY and
its' Clerk of the Board of Supervisors Office to disclose the public records requested by
2    Petitioner in her December 15, 2020 PRA request or to show cause why respondent
agency should not do so;

3

4    6.    If applicable, on return of the alternative writ and hearing on the order to
show cause, that this Court issue a peremptory writ of mandate directing Respondents
COUNTY and COUNTY's Clerk of the Board of Supervisors Office to disclose the
5    public records requested by Petitioner;

6

7    7.    For costs of suit herein incurred and for reasonable litigation expenses
and attorney's fees, in addition to any other relief granted or other costs awarded pursuant
8    to Government Code section 6259.7;

9    8.    For such other and further relief as the court may deem proper.

10

11   DATED: June 10, 2022

12   /s/ Steven Mark Kamp, Attorney for Plaintiff and PRA Petitioner Ms. Parvin Olfati

13   California State Bar Number 116817

14   Steven Kamp Law Office, 22 Petrilli Circle, Sacramento, California 95822; Electronic mail

15   address: steve.kamp@comcast.net ;  Telephone: (916) 501-1791 (cellular, voice/text)

16
     **EXHIBITS 1-10 and EXHIBITS ELEVEN AND TWELVE FOLLOW ON THIS AND**
17   **SUCCEEDING PAGES**

18

19   **EXHIBITS**

20

21   

22

23

24

25

26

27   Exhibits 1 and 2: Defendant Pisani on Plaintiff's front porch

28

PLAINTIFF's FIRST AMENDED COMPLAINT 72



Exhibit 3: Defendant Pisani trespassing Plaintiff's driveway




Exhibits 4-5-6: Defendant Roe One: (4) Stalking Plaintiff at Bella Bru Café;

(5) and (6) Stalking Plaintiff at Tuesday Morning;

Exhibit 7: Automobile Used By Defendant Roe One.





Exhibits (8) (9) and (10): Defendant Roe Two Stalking Plaintiff at Bella Bru Café

PLAINTIFF's FIRST AMENDED COMPLAINT 73

1
2
3
4



5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF's FIRST AMENDED COMPLAINT 74

**EXHIBIT ELEVEN: PETITIONER'S PUBLIC RECORDS ACT REQUESTS NOT ANSWERED BY RESPONDENT COUNTY OF SACRAMENTO**

**Paragraph 283-(a):**

Parvin Olfati 1859 45th Street Sacramento, CA. 95819

December 23, 2020

Via email to Records@SacSheriff.com
SRO I Stacey Miyazaki, PSD Legal Affairs, Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841-4205

**RE: Public Records Act Request For County of Sacramento Sheriff's Department Documents That Constitute Sheriff's Department Information Communicated To County of Sacramento Department of Health Services Division of Behavioral Health Services Senior Mental Health Counselor LMFT Pamela Pisani That Mention, Refer to, or Relate to Parvin Olfati or 1859 45th Street**

Dear Ms. Miuyasaki:
Please respond and provide any and all requested records via postal mail to my address above. Please use e mail transmission only as a supplement to any postal mailed response. The only reason I am sending this Public Records Act (PRA) request via e mail is that the County Sheriff office is no longer available for in-person delivery.

This is a simple PRA request for records that clearly exist -- because County Senior Mental Heath Counselor Pamela Pisani on behalf of the County made an unannounced visit to my house and said she was doing so based on information communicated to her or her department or division by the County Sheriff). Either the requested records exist, or County employee Pam Pisani was lying while conducting County business.

On Monday, December 14, 2020, at about 4:36 p.m., the front door of my 1859 45th Street (Sacramento, California 95819) house was knocked upon by a woman who asked me "is this Parvin?" I opened the door, and took her business card identifying her as "Pamela Pisani, LMFT Senior Mental Health Counselor" from the "Community Support Team" of the County of Sacramento Department of Health Services Division of Behavioral Health Services. I then heard Ms. Pisani say she had received an "anonymous call" and complaint  about me. I told her to wait, closed the door, and got my cellphone. I then opened the door. In response to my question "who are you again", she identified herself as "Pam". I said "Pam Community Support Team". She said "right." She never confirmed that I was Parvin Olfati.  I then said "and you don't know who called you". Ms. Pisani then said "I think it was maybe the Sheriff's Department", and then used the word "complaint." I then said "so the Sheriff's Department called you?" and Ms. Pisani said: "They didn't call me. They let us know that maybe there were some concerns…they're out of the Sheriff's Department jurisdiction…"

I then said "so the Sheriff's Department had something to do with this" and Ms. Pisani said: "they forwarded some information." In response to my question as to "exactly" what "information" had been "forwarded", Ms. Pisani said "they forwarded some information stating…" but "I don't know exactly" what the information was. I then asked: "So how can you go to somebody's door when you don't have any idea what you're doing there?"

Ms. Pisani did not answer my question, but instead frantically and immediately wheeled to her scripted narrative about "resources". She did not answer my questions about her "resources" or the function of the "Behavioral Services" "department" (actually a division) that she said she worked for. She never used the word County even though she was here on purported County business. Instead she used the word "community" but never said who the "community" was. I concluded by telling her that her "behavior" was suspect because her behavior as displayed to me consisted of knocking unannounced on people's doors based on anonymous "b---s---."

I told her to leave, but she refused to leave. Instead she yelled at me from my driveway, and she stalked me as I walked out toward the end of my driveway toward the back yard to check some of the toxic and feces and toxic liquid that had been placed immediately outside my bedroom window.  In other words, she trespassed my property by refusing to leave after being ordered by me to leave.  She drove a white SUV vehicle with the California license plate 7WID019. This appeared to be her personal vehicle and/or vehicle given to her for use in her visit to my house and not a County vehicle. **Displayed at the end of this PRA request letter are photographs of Ms. Pisani's behavior. I took these pictures with my cellphone on December 14, 2020 starting at 4:36 p.m.**

PLAINTIFF's FIRST AMENDED COMPLAINT 75

1

2   Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I
    hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all
3   electronic messages, text messages, reports, notes, log entries, computer entries, CAD, memoranda, documents,
    records and/or writings that created on any County Sheriff sheriff, deputy, department, division, Impact Division,
4   Homeless Outreach Team, officer, chief, employee, agent or representative (County Sheriff)  computer or other
    medium created, transmitted, received and/or stored that constitute, mention, refer to and/or relate to any information
5   communicated on any date since January 1, 2020, to any employee, agent, or representative of the County of
    Sacramento Department of Health Services,  Division of  Behavioral Health Services, or any Community Support
6   Team, or to Pamela Pisani, that mention, refer to, or relate to Parvin Olfati and/or 1859 45th Street (Sacramento,
    California 95819).

7   If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
    please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
8   policies.  As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt
    of this request, and either produce the requested documents, or commit in writing to a production date that is within
9   the reasonable time period required by the PRA.

10  I look forward to your prompt and complete response. Thank you.

11  Sincerely,

12  Parvin Olfati

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 76

**Paragraph 283-(b):**

**Parvin Olfati 1859 45th street Sacramento, CA. 95819**

December 15, 2020

Via email to KayR@saccounty.net

Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA 95814

**RE: Public Records Act Request For County of Sacramento Documents That Constitute, Mention, Refer To, And/or Relate To December 14, 2020 Pamela Pisani Senior Mental Health Counselor or LMFT Activity At 1859 45th Street And/or Related To Parvin Olfati**

Dear Sir or Madam:

Please respond and provide any and all requested records via postal mail to my address above. Please use e mail transmission only as a supplement to any postal mailed response. The only reason I am sending this Public Records Act (PRA) request via e mail is that the Clerk of the Board Office is no longer available for in-person delivery.

In the morning and early afternoon hours on Monday December 14, 2020, there were two suspicious cars and female visitors to Barbara Andres at 1870 45th street. One of the suspicious vehicles was a white SUV with a California license plate number of 8MUL994. I saw the driver of this vehicle later walking on 45th Street with Barbara Andres. I saw this person along with 1901 45th Street resident Mr. Steven Maviglio trying to provoke me while Mr. Maviglio was waiting to start his spin doctor production of videotaping me to be used to abuse the government, law enforcement, and intelligence agencies against me. These cars have been at 1870 45th Street multiple times, and each time their visits were followed by extreme and violent criminal acts against me.

Later, as my friend was leaving 1859 45th Street and as I was walking up the front yard stairs toward my front door, I noticed Barbara Andres and the one of the female visitors were walking on the sidewalk toward my house, and I also heard Barbara Andres screaming and yelling some incoherent words against me and to me. I told her "I do not talk to felons", and with that I kept on walking toward my front door. But she did not stop. At the same time, I noticed Mr. Maviglio jumping out of his house with his video/phone and starting his spin doctors style videotaping of me. I was sure this was another set up that starts with Barbara Andres acting as a gangstalker who has gone wild, is out of control, and has been released loose on the street to provoke me, with Mr. Maviglio in the operation to manufacture another piece of fraudulent "evidence" for his spin doctor production. I also was sure that they were trying to manufacture more fraudulent documents to use against me by government and law enforcement agencies. Therefore, I ignored Barbara Andres, Mr. Maviglio, and her visitor; I went inside and closed the door. However, I noticed Barbara Andres was still yelling at my friend, so I went out. As my friend was getting in his car, I asked him to hurry up and leave because Mr. Maviglio is working on manufacturing another one of his spin doctor fraudulent evidence fabrications. So, my friend left. I was very sick from the around the clock release of toxic gas and other chemicals as well as the exhaust gas of the 1871 45th Street resident Sean Majkovica's white junk truck that has been brought to 1871 to facilitate more physical assaults against me and my animals. Mr. Majokivica has doubled down on this violent and intentional crime against me after I filed a City of Sacramento Police Department Police Report against him and his intentional exposing me to this dangerous toxic gas and still is going on.

After a very torturous morning and midday -- featuring Barbara Andres acting as gangstalker and psychopath on the loose -- came a much bigger abuse of power against me. Obviously, this whole spin doctor production by Mr. Maviglio and his partner in perjury Barb Andres was to abuse the government agency power and authority against me. Some of the details are as follows:

On Monday, December 14, 2020, at about 4:36 p.m., the front door of my 1859 45th Street house was knocked upon by a woman who asked me "is this Parvin?" I opened the door, and took her business card identifying her as "Pamela Pisani, LMFT Senior Mental Health Counselor" from the "Community Support Team" of the County of Sacramento Department of Health Services Division of Behavioral Health Services. I then heard Ms. Pisani say she had received an "anonymous call" and complaint about me. I told her to wait, closed the door, and got my cellphone. I then opened the door. In response to my question "who are you again", she identified herself as "Pam". I said "Pam Community Support Team". She said "right". She never confirmed that I was Parvin Olfati.

I then said "and you don't know who called you". Ms. Pisani then said "I think it was maybe the Sheriff's Department", and then used the word "complaint." I then said "so the Sheriff's Department called you?" and Ms. Pisani said: "They didn't call me. They let us know that maybe there were some concerns…they're out of the Sheriff's Department jurisdiction…"

PLAINTIFF's FIRST AMENDED COMPLAINT 77

1   I then said "so the Sheriff's Department had something to do with this" and Ms. Pisani said: "they forwarded some
    information." In response to my question as to "exactly" what "information" had been "forwarded", Ms. Pisani said
2   "they forwarded some information stating…" but "I don't know exactly" what the information was. I then asked:
    "So how can you go to somebody's door when you don't have any idea what you're doing there?"
3   Ms. Pisani did not answer my question, but instead frantically and immediately wheeled to her scripted narrative
    about "resources." She did not answer my questions about her "resources" or the function of the "Behavioral
4   Services" "department" (actually a division) that she said she worked for. She never used the word County even
    though she was here on purported County business. Instead she used the word "community" but never said who the
5   "community" was. I concluded by telling her that her "behavior" was suspect because her behavior as displayed to
    me consisted of knocking unannounced on people's doors based on anonymous "b---s---."
6   I told her to leave, but she refused to leave. Instead she yelled at me from my driveway, and she stalked me as I
    walked out toward the end of my driveway toward the back yard to check some of the toxic and feces and toxic liquid
7   that had been placed immediately outside my bedroom window.  In other words, she trespassed my property by
    refusing to leave after being ordered by me to leave.  She drove a white SUV vehicle with the California license plate
8   7WID019. This appeared to be her personal vehicle and/or vehicle given to her to use in her visit to my house and not
    a County vehicle.
9   **Displayed at the end of this PRA request letter are photographs of Ms. Pisani's behavior. I took these pictures
    with my cellphone on December 14, 2020 starting at 4:36 p.m.**
10  Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I
    hereby request that the County of Sacramento (County) produce to me any and all electronic messages, text
11  messages, emoluments, payments, reports, notes, log entries, computer entries, CAD, memoranda, documents,
    records and/or writings that created on any County county, Pamela Pisani, Senior Mental Health Counselor,
12  Department of Health Services, Division of Behavioral Health Services, Community Support Team, Howard
    Schmidt, Chief of Staff, Susan Peters, Supervisor, Board of Supervisors, department, division, officer, chief,
13  employee, agent or representative (County)  computer or other medium created, transmitted, received and/or stored
    since January 1, 2015 that constitute, mention, refer to and/or relate to any communications, payments, emoluments,
14  informant activity, providing of information, or other activity by Senior Mental Health Counselor LMFT Pamela
    Pisani at 1859 45th Street on December 14, 2020 and/or that relate to, refer to, or mention Parvin Olfati or 1859 45th
15  Street (Sacramento, California 95819).
    The requested records include, but are not limited to the following:
16      1. The duty statement of Senior Mental Health Counselor LMFT Pamela Pisani in effect on December 14, 2020.
17      2. The credentials of Pamela Pisani used by the County to authorize Pamela Pisani to act as a Senior Mental
           Health Counselor.
18      3. The definition of "LMFT."
        4. Any and all file numbers or case numbers assigned to or that contain the name "Olfati" and/or the address
19         "1859 45th Street."
20      5. Any communications or "information" from the County of Sacramento Sheriff's Department received by the
           Division of Behavioral Health Services or Pamela Pisani that mentions, refers to, or relates to Parvin Olfati
21         and/or 1859 45th Street.
        6. Any information communicated to Pamela Pisani from any source that mentions, refers to, or relates to Parvin
22         Olfati and/or 1859 45th Street
23      7. Any report made by Pamela Pisani regarding any activity in December 14, 2020 at 1859 45th Street or that
           relates to Parvin Olfati.
24      8. Any recordings made by Pamela Pisani of any activity at 1859 45th Street on December 14, 2020 and/or that
           include any image or audio of any person believed by Pamela Pisani to be Parvin Olfati, or any person
           spoken to by Pamela Pisani at 1859 45th Street.
25      9. The names, job titles, and contact information for each and every person or entity included in the word "they"
           as such word was used by Pamela Pisani at 1859 45th Street on December 14, 2020.
26      10. The names, job titles, and contact information for each and every person or entity included in the word "us"
           as such word  was used by Pamela Pisani at 1859 45th Street on December 14, 2020.
27      11.  The dispatch or other communication directing Pamela Pisani to come to 1859 45th Street and/or to contact
           Parvin Olfati at any time on December 14, 2020.
28

PLAINTIFF's FIRST AMENDED COMPLAINT 78

12. Any communications to, from, with, or about any County of Sacramento Sheriff's Department deputy sheriffs, employees, agents or representatives regarding any Pamela Pisani activity relating to Parvin Olfati or at 1859 45th Street on December 14, 2020.

13. Any communications to, from, with, or about any City of Sacramento Police Department officers regarding any Pamela Pisani activity relating to Parvin Olfati or at 1859 45th Street on December 14, 2020.

14. Any communications to, from, with, and/or about any resident of 45th Street in Sacramento, California 95819, including but not limited to Steven Maviglio (1901 45th Street), Barb Andres (1870 45th Street), Cecil Taylor (1870 45th Street). John Lisuk and his wife Mieke Smythe and /or Lisuk (1850 45th Street); June Lamoureaux and Bill Kellerhals (1856 45th Street); Martin Raygoza, his wife Helen and their son Petros Raygoza (1851 45th Street).

15. Any communications to, from, with, and/or about Kathryn Sweeney and/or Ben Wheeler (4501 "T" Street)

16. Any communications to, from, with and/or about any current or former tenant or resident of 1871 45th Street, including but not limited to: Melissa Grigsby, Michele Frayne, Sean Majkovica, Marko Majkovica, Adriana Sanchez, Kara Mullin, and/or Kristen Mullin.

17. Any communications to, from, with and/or about 1871 45th Street owner Camille Remy Obad or John Obad.

18. Any communications to, from, with and/or about the County of Sacramento Sheriff's Department that mention or refer to any Parvin Olfati PRA request, including but not limited to any Parvin Olfati PRA request regarding any County Sheriff Mental Health Unit.

19. The County Department of Health Services Division of Behavioral Health Services policies, procedures, rules, regulations, guidelines and/or protocols in effect on December 14, 2020 that govern any Pamela Pisani, Senior Mental Health Counselor, or LMFT activity at 1859 45th Street or with respect to Parvin Olfati, including but not limited to:

   (a) The making of unannounced in-person visits
   (b) Obtaining confirmation of identity from the person spoken to by the mental health counselor.
   (c) Verification of information communicated to the mental health counselor regarding the person the mental health counselor is directed to visit.
   (d) Remaining on property after being directed to leave.
   (e) Use of the word "community" rather than "County" to identify the mental health counselor.
   (f) Presentation of any County employee identification badge or credentials other than a business card.

As used herein, the term "emoluments" includes but is not limited to any job, contract, promise of any job, or promise of any contract.

The records requested include but are not limited to any records of any placement of Parvin Olfati and/or 1859 45th Street under any "intelligence", surveillance, monitoring, or other similar activity by any law enforcement agency.

If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable, please provide the records of such destruction, transfer, or unavailability, together with applicable record retention policies. As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this request, and either produce the requested documents, or commit in writing to a production date that is within the reasonable time period required by the PRA.

Please note that all but one of my PRA requests to the County Sheriff have gone unanswered in clear violation of the PRA. Please also note that the unannounced unauthorized attempted ambush of me by Ms. Pisani based on anonymous fabricated "information" brought back frightening memories of the May 9, 2020 false arrest and great bodily injury of me in my own front door by City of Sacramento Police Department Officer Jared Robinet, one of the two officers who fired the bullets that killed Stephon Clark. This false arrest was capped with one and only one charge: a standalone Penal Code Section 148(a)(1) "resisting arrest" charge that the Sacramento County District Attorney dismissed on its own motion – for "Insufficient Evidence." Insufficient Evidence for a real criminal charge, but enough "evidence" to allow me to be stalked on my own driveway by a killer, who caused me great bodily injury and put on a false arrest show for Mr. Maviglio and his gangstalkers, who I reasonably believe are now working with the so-called Behavioral Services Division of the County.

I look forward to a prompt, honest, and complete response within ten (10) calendar days. Thank you.

PLAINTIFF's FIRST AMENDED COMPLAINT 79

1  Sincerely,
   Parvin Olfati

2                    **Parvin Olfati 1859  45th Street Sacramento, CA. 95819**

                                                                                        January 25,

3                                                      2021

4  <u>Via email to KayR@saccounty.net</u>
   Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA
   95814

5

6  **RE: RENEWED Public Records Act Request For County of Sacramento Documents That Constitute,
   Mention, Refer To, And/or Relate To December 14, 2020 Pamela Pisani Senior Mental Health Counselor or
   LMFT Activity At 1859 45th Street And/or Related To Parvin Olfati**

7  Dear Sir or Madam:
   On December 15, 2020, I cased to be e mailed to the County of Sacramento Disclosure Officer the Public Records

8  Act (PRA) request reprinted below. This PRA request specifically requested  documents that all relate to the
   December 14, 2020 unannounced visit to my home (really an attempted ambush) by County Department of Health

9  Services Division of Behavioral Health Services Community Support Team Senior Mental Health Counselor LMFT
   Pamela Pisani. The requested documents include, but are not limited to, Ms. Pisani's duty statement; the

10 "information" or "complaint" she said she "thinks" she received from or was communicated from the County
   Sheriff's Department or any other source; and any rules, regulations, protocols, guidelines or policies that govern

11 unannounced unrequested home visits such as the one imposed on me by Ms. Pisani on December 14, 2020.  In
   addition, as used in Request Item Number 8 below, the term "recordings" includes but is not limited to any use of any

12 body worn camera, wiretap, earpiece, audio recording device, and/or video recording device. Ass of the January 23,
   2021 mail delivery, I have not received any documents. As you know, my PRA request in its' first paragraph

13 requested hard copy documents via postal mail. Therefore, please immediately respond and provide any and all
   requested records <u>in the December 15, 2020 PRA request reprinted below</u> via postal mail to my address above. Please

14 use e mail transmission only as a supplement to any postal mailed response. The only reason I am sending this Public
   Records Act (PRA) request via e mail is that the Clerk of the Board Office is no longer available for in-person

15 delivery.
   Thank you.

16 Sincerely,
   Ms. Parvin Olfati

17                    **Parvin Olfati 1859  45th Street Sacramento, CA. 95819**

                                                                                        March 16, 2021

18 <u>Via email to KayR@saccounty.net</u>
   Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA

19 95814

20 **RE: RENEWED AGAIN AND ADDITIONAL REQUEST FOR RECORDS -- Public Records Act Request
   For County of Sacramento Documents That Constitute, Mention, Refer To, And/or Relate To December 14,**

21 **2020 Pamela Pisani Senior Mental Health Counselor or LMFT Activity At 1859 45th Street And/or Related To
   Parvin Olfati, Including But Not Limited To Communications With The City of Sacramento Police**

22 **Department Impact Team and/or City of Sacramento Police Department Mental Health Unit**
   Dear Sir or Madam:

23 On December 15, 2020, I caused to be e mailed to the County of Sacramento Disclosure Officer the Public Records
   Act (PRA) request reprinted below. This PRA request specifically requested  documents that all relate to the

24 December 14, 2020 unannounced visit to my home (really an attempted ambush) by County Department of Health
   Services Division of Behavioral Health Services Community Support Team Senior Mental Health Counselor LMFT

25 Pamela Pisani. The requested documents include, but are not limited to, Ms. Pisani's duty statement; the
   "information" or "complaint" she said she "thinks" she received from or was communicated from the County

26 Sheriff's Department or any other source; and any rules, regulations, protocols, guidelines or policies that govern
   unannounced unrequested home visits such as the one imposed on me by Ms. Pisani on December 14, 2020.  In

27 addition, as used in Request Item Number 8 below, the term "recordings" includes but is not limited to any use of any
   body worn camera, wiretap, earpiece, audio recording device, and/or video recording device. As of the February 25,

28 2021 mail delivery, I had not received any documents, so I sent a renewed PRA request on February 26, 2021, the

   PLAINTIFF's FIRST AMENDED COMPLAINT 80

1   response to which was due on March 8, 2021. As of the March 15, 2021 mail delivery, I have not received any
    response, nor have I received any documents.
2    As you know, my PRA request in its' first paragraph requested hard copy documents via postal mail. Therefore,
    please immediately respond and provide any and all requested records in the December 15, 2020 PRA request
3   reprinted below **AND IN THIS REQUEST** via postal mail to my address above. Please use e mail transmission only
    as a supplement to any postal mailed response. The only reason I am sending this Public Records Act (PRA) request
4   via e mail is that the Clerk of the Board Office is no longer available for in-person delivery.
    **In addition to the records requested in the PRA request reprinted below that you have ignored, please ALSO**
5   **provide the following records:**
        A. Any and all electronic messages, text messages, emoluments, payments, reports, notes, log entries, computer
6          entries, CAD, memoranda, documents, records and/or writings that created on any County county, Pamela
           Pisani, Senior Mental Health Counselor, Department of Health Services, Division of Behavioral Health
7          Services, Community Support Team, Howard Schmidt, Chief of Staff, Susan Peters, Supervisor, Board of
           Supervisors, department, division, officer, chief, employee, agent or representative (County)  computer or
8          other medium created, transmitted, received and/or stored since January 1, 2015 that constitute, mention,
           refer to and/or relate to any communications, payments, emoluments, informant activity, providing of
9          information, or other activity to, from, with and/or about:
10         **1. The City of Sacramento Police Department Mental Health Unit.**
           **2. The City of Sacramento Police Department Impact Team.**
11         **3. Any officer, employee, agent, or representative of the City of Sacramento Police Department, the City**
              **of Sacramento Police Department Mental Health Unit, or the City of Sacramento Police Department**
12            **Impact Team.**

13

14  Thank you.
    Sincerely,
15  Ms. Parvin Olfati

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 81

1    **Paragraph 283-(c):**

2                    PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819
                                                                                    December 15,
3                                                                                         2020
     Via email to Records@SacSheriff.com
4    Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA
     95841
5
     **RE:   Public Records Act Request – County of Sacramento Sheriff's Department Records Regarding Any**
6    **County Sheriff Comunications With Ettore's European Bakery and Restaurant (2376 Fair Oaks Boulevard,**
     **Sacramento, CA 95825) That Mention, Refer To, And/or Relate to Parvin Olfati, Including But Not Limited**
7    **To Any Communications With Any Cook, Staff Member, or Employee Regarding Any Parvin Olfati Order on**
     **December 13, 2020**
8
     Dear Sir or Madam:
9

10   Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3,
     2004) and the California Public Records Act (PRA), please produce the following documents, records and/or
11   writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are
     responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical
12   basis for denying access to the records or information sought." This records request includes not only documents on
     County of Sacramento Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division,
13   Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative (County Sheriff)
     computers or other media, but also documents on Teale Data Center or other backup computers, media or facilities.
14   Therefore, please produce to me true and correct copies of any documents, records and/or writings created,
     transmitted, received, and/or stored between December 1, 2020 and the date of your response to this PRA request that
15   constitute, mention, refer to and/or relate to:

16         1. County Sheriff communications to, from, with, and/or about Ettore's European Bakery & Restaurant (2376
              Fair Oaks Boulevard, Sacramento, CA 95825, "Ettore's") and/or any Ettore's owners, managers, staff,
17            cooks, waiters, waitresses, employees, cashiers, or visitors, including but not limited to any communications
              that mention, refer to, and/or relate to Parvin Olfati, Patty Olfati, Patti Olfati, and/or Olfati.   .
18         2. Any and all reports made by any County Police officers or employees that mention, refer to, and/or relate to
              any person observed at Ettore's on 2376 Fair Oaks Boulevard in Sacramento, including but not limited to
19            Parvin Olfati, Patty Olfati, Patti Olfati, and/or Olfati.
           3. Any sending of any County Shertiff officer, undercover, plainclothes, or employees to stalk, observe, watch,
20            or monitor Parvin Olfati, Patty Olfati, Patti Olfati and/or Olfati at Ettore's (2376 Fair Oaks Boulevard,
              Sacramento, CA 95825).
21         4. Any communications regarding any food ordered by Parvin Olfati on the morning of Sunday, December 13,
              2020.
22
     In addition, please produce any and all documents, records, and/or writings reflecting any destruction, alteration,
23   removal, or other unavailability of any of the records requested in this request, together with applicable record
     retention policies.
24
     As required by Government Code Section 6253(c), please respond within ten (10) calendar days  of your receipt of
25   this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days
     of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period
26   of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section
     6258 if this request is not granted.
27
     Very truly yours,
28
     Ms. Parvin Olfati


     PLAINTIFF's FIRST AMENDED COMPLAINT 82

1   **Paragraph 283-(d):**

2                           PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819

                                                                                      November 10,
                                                                2020

3   Via e mail to Records@SacSheriff.com

    Disclosure Officer, County of Sacramento Sheriff's Department, 701 "G" Street, Sacramento, CA 95814

4

5   **RE:    Public Records Act Request – County of Sacramento Sheriff's Department Records Regarding Any**
    **County Sheriff Vehicle Activity On November 10, 2020 At Bella Bru Café At 5038 Fair Oaks Boulevard in**
    **Carmichael, Including But Not Limited To Activity By Sheriff Employees Using The County Sheriff Vehicle**
    **With The California License Plate Number 1411641 And/or the Identification Number 374B.**

6

7   Dear Sir or Madam:

8   Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3,
    2004) and the California Public Records Act (PRA), please produce the following documents, records and/or
9   writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are
    responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical
10  basis for denying access to the records or information sought." This records request includes not only documents on
    County of Sacramento Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division,
11  Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative (County Sheriff)
    computers or other media, but also documents on Teale Data Center or other backup computers, media or facilities.
12  Therefore, please produce to me true and correct copies of any documents, records and/or writings created,
    transmitted, received, and/or stored between January 1, 2020 and the date of your response to this PRA request that
13  constitute, mention, refer to and/or relate to:

14      1. Any activity by any County Sheriff deputies or employees using the County Sheriff vehicle with the
           California license plate number 1411641 and/or the Identification Number 374B on  November 10,.2020  at
15         any time between 6:00 a.m,. and 9:00 a.m,. at the Bella Bru Café at 5038 Fair Oaks Boulevard  in
           Carmichael.

16      2. The names, badge numbers, job titles, and duty statements of the County Sheriff deputies or employees
           driving or using the County Sheriff vehicle with the California license plate number 1411641 and/or the
17         Identification Number 374B on November 10, 2020 when the vehicle was at the Bella Bru Café at 5038 Fair
           Oaks Boulevard in Carmichael.

18

19      3. The communications, dispatches, notes, CAD, memoranda or notes that relate to mention, or refer to any
           County Sheriff activity on November 10, 2020 at any location on Fair Oaks Boulevard between 6:00 a.m.
20         and 9:00 a.m., including but not limited to any communications, dispatches, notes, CAD, memoranda or
           notes by any deputy or employee at or near the Bella Bru Café at 5038 Fair Oaks Boulevard in Carmichael,
21         including but not limited to any County Sheriff deputies or employees using the County Sheriff vehicle with
           the California license plate number 1411641 and/or the Identification Number 374B.

22      4. Any and all reports made by any deputies or employees in any County Sheriff vehicle regarding any
23         November 10, 2020 activity at or near the Bella Bru Café on 5038 Fair Oaks Boulevard in Carmichael,. but
           not limited to any County Sheriff deputies or employees using the County Sheriff vehicle with the California
24         licens number 1411641 and/or the Ientification Number 374B.

25      5. Any communications to, from, with and/or about any resident or residents of any address on 45th Street or 46th
           Street, including but not limited to Steven Maviglio (1901 45th Street); June Lamoureaux and/or Bill
26         Kellerhals (1856 45th Street); Barb Andres and/or Cecil Taylor (1870 45th Street); Petros Raygoza,. Martin
           Rayfoza, and/or Helen Vatthis (1851 45th Street); Charles Schock and his wife Pam Schock, and all the
27         residents  of 1900 45th street and/or Sharon Simms (1856 46th Street), or any person visiting Sharon Simms.

28      6. In addition, please produce any and all documents, records, and/or writings reflecting any destruction,
           alteration, removal, or other unavailability of any of the records requested in this request, together with
           applicable record retention policies.

PLAINTIFF's FIRST AMENDED COMPLAINT 83

1

2   As required by Government Code Section 6253(c), please respond within ten (10) calendar days  of your receipt of this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days

3   of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section 6258 if this request is not granted.

4

5   Very truly yours,

    Ms. Parvin Olfati

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Paragraph 283-(e):**

PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819

November 30, 2020

Via e mail to Records@SacSheriff.com
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

**RE:   Public Records Act Request – County of Sacramento Sheriff's Department Records Regarding Any County Sheriff Vehicle Activity On November 30, 2020 At Bella Bru Café At 5038 Fair Oaks Boulevard in Carmichael, Including But Not Limited To Activity By Sheriff Employees Using Sheriff Vehicle With The California License Plate Number 1552413**

Dear Sir or Madam:

When I arrived at the Bella Bru Café on 5038 Fair Oaks Boulevard in Carmichael on November 30, 2020 at approximately 8:42 a.m., waiting for me were not one, but **two** County of Sacramento Sheriff's Department (County Sheriff) vehicles. One of these vehicles displayed the California license plate number 1552413. I was unable to get the license plate number of the other County Sheriff vehicle.

Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought." This records request includes not only documents on County of Sacramento Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative (County Sheriff) computers or other media, but also documents on Teale Data Center or other backup computers, media or facilities. Therefore, please produce to me true and correct copies of any documents, records and/or writings created, transmitted, received, and/or stored between January 1, 2020 and the date of your response to this PRA request that constitute, mention, refer to and/or relate to:

1. Any activity by any County Sheriff deputies or employees using the County Sheriff vehicle with the California license plate number 1552413 on November 30, 2020 at any time between 6:00 a.m,. and 9:00 a.m,. at the Bella Bru Café at 5038 Fair Oaks Boulevard in Carmichael, including but not limited to 8:42 a.m..
2. The names, badge numbers, job titles, and duty statements of the County Sheriff deputies or employees driving or using the County Sheriff vehicle with the California license plate number 1552413 on November 30, 2020 when the vehicle was at the Bella Bru Café at 5038 Fair Oaks Boulevard in Carmichael.
3. Any activity by any County Sheriff deputies or employees using any County Sheriff vehicle with a California license plate number other than 1552413  on November 30, 2020 at any time between 6:00 a.m,. and 9:00 a.m,. at the Bella Bru Café at 5038 Fair Oaks Boulevard in Carmichael, including but not limited to 8:42 a.m..
4. The names, badge numbers, job titles, and duty statements of the County Sheriff deputies or employees driving or using the County Sheriff vehicle with the California license plate number other than 1552413 on November 30, 2020 when the vehicle was at the Bella Bru Café at 5038 Fair Oaks Boulevard in Carmichael.

5. The communications, dispatches, notes, CAD, memoranda or notes that relate to mention, or refer to any County Sheriff activity on November 30, 2020 at any location on Fair Oaks Boulevard between 6:00 a.m. and 9:00 a.m., including but not limited to any communications, dispatches, notes, CAD, memoranda or notes by any deputy or employee at or near the Bella Bru Café at 5038 Fair Oaks Boulevard in Carmichael, including but not limited to any County Sheriff deputies or employees using County Sheriff vehicle with California license plates with the number 1552413.   .
6. Any and all reports made by any deputies or employees in any County Sheriff vehicle regarding any November 30, 2020 activity at or near the Bella Bru Café on 5038 Fair Oaks Boulevard in Carmichael,. but not limited to any County Sheriff deputies or employees using the County Sheriff vehicle with California license plate number 1552413..

PLAINTIFF's FIRST AMENDED COMPLAINT 85

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7. Any communications to, from, with and/or about any resident or residents of any address on 45th Street or 46th Street, including but not limited to Steven Maviglio (1901 45th Street); June Lamoureaux and/or Bill Kellerhals (1856 45th Street);  Barb Andres and/or Cecil Taylor (1870 45th Street); Petros Raygoza,. Martin Rayfoza, and/or Helen Vatthis (1851 45th Street); Charles Schock and his wife Pam Schock, and all the residents  of 1900 45th street and/or Sharon Simms (1856 46th Street), or any person visiting Sharon Simms.

8. In addition, please produce any and all documents, records, and/or writings reflecting any destruction, alteration, removal, or other unavailability of any of the records requested in this request, together with applicable record retention policies.

As required by Government Code Section 6253(c), please respond within ten (10) calendar days  of your receipt of this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section 6258 if this request is not granted.

Very truly yours,

Ms. Parvin Olfati

PLAINTIFF's FIRST AMENDED COMPLAINT 86

1   **Paragraph 283-(f):**

2                                PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819
                                                                                         December 21,
3                                                                                              2020
        Via email to Records@SacSheriff.com
4       SRO I Stacey Miyazaki, PSD Legal Affairs, Disclosure Officer, County of Sacramento Sheriff's Department, 4500
        Orange Grove Avenue, Sacramento, CA 95841-4205
5
        **RE:   Public Records Act Request for County of Sacramento Sheriff's Department Records of Purported**
6       **"Review" Of Over 150 Unanswered Public Records Act Requests from Parvin Olfati**

7       Dear Stacey Miyasaki:

8       This letter is both a response to your December 15, 2020 letter regarding "PRA #20-0825" and as new Public
        Records Act (PRA) request for County of Sacramento Sheriff's Department (County Sheriff) purported "review" of
9       what your letter admits are over 150 unanswered PRA requests from me, Ms. Parvin Olfati.

10      Pursuant to the PRA and Article I, Section 3(b) of the California Constitution, please provides me with a listing of
        each and every PRA request received from Ms. Parvin Olfati that are referred to on page 3 under "Response" in the
11      County Sheriff December 15, 2020 letter to Ms. Parvin Olfati as having been "reviewed." For each PRA request from
        Parvin Olfati that the County Sheriff claims to have "reviewed",  please provide the following for each Country
12      Sheriff PRA record number (e.g., "PRA #20-0825"):

13      County Sheriff PRA Record Number, Date of Request, Date of County Sheriff Receipt, Heading ("Re:..."), date of
        County Sheriff response (if any), copy of County Sheriff response (if any[1]), and all records (including but not limited
14      to electronic mail messages, text messages, notes, memoranda, documents, and/or writings) that constitute any
        County Sheriff "review" of the referenced PRA request (as the term "review" or "reviewed" is used in the County
15      Sheriff December 15, 2020 letter). .

16      Please do not respond with the boilerplate that characterizes page 3 of your December 15, 2020 letter, where you dig
        into your deep well of accusations that my PRA requests are "burdensome", "not narrow in scope", "seek an
17      extremely broad set of records to search", ad infinitum and ad nauseum. In fact, my PRA requests are quire specific,
        down to the license plate and identification numbers of the County Sheriff vehicles that appear whenever I go out to
18      eat at Bella Bru Café, Noah's NY Bagels, or anywhere else. This particular request asks for the specifics of the
        County Sheriff purported "review" of each PRA request. Your total of two written responses to these PRA requests
19      have no credibility with me, and neither does your above-referenced boilerplate.

20      If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
        please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
21      policies.  As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt
        of this request, and either produce the requested documents, or commit in writing to a production date that is within
22      the reasonable time period required by the PRA. Thank you.

23      Sincerely,

        Parvin Olfati
24

25

26

27

28      _____
        [1] If there is no County Sheriff response, please so state in writing.


        PLAINTIFF's FIRST AMENDED COMPLAINT 87

1
**Paragraph 283-(g):**

2
          **PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819**
                                     October 14, 2020

3
Via email to Records@SacSheriff.com
Disclosure Officer, County of Sacramento Sheriff's Department, 701 "G" Street, Sacramento, CA 95814

4

5
**RE:    Public Records Act Request for County of Sacramento Sheriff's Department CAD Call Print Synopsis
or Similar Document For 1859 45th Street, Sacramento, California 95819**

6
Dear Sir or Madam:

7
Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I
hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all

8
"CAD Call Print Synopsis" or similar documents reflecting County Sheriff activity at 1859 45th Street, Sacramento,
California 95819 during each of the following time periods:

9

10
    1. January 1, 2020 through and including the date of your response to this PRA request.
    2. January 1, 2019 through and including December 31, 2019.

11
    3. January 1, 2018 through and including December 31, 2018.
    4. January 1, 2017 through and including December 31, 2017.

12
    5. January 1, 2016 through and including December 31, 2016
    6. January 1, 2015 through and including December 31, 2015.

13
    7. January 1, 2014 through and including December 31, 2014.
    8. January 1, 2013 through and including December 31, 2013.

14
    9. January 1, 2012 through and including December 31, 2012.
    10.  January 1, 2011 through and including December 31, 2011.

15
    11.  January 1, 2010 through and including December 31, 2010.
    12.  January 1, 2009 through and including December 31, 2009.

16
    13.  January 1, 2008 through and including December 31, 2008.
    14.  January 1, 2007 through and including December 31, 2007

17
    15.  January 1, 2006 through and including December 31, 2006.
    16.  January 1, 2005 through and including December 31, 2005.

18
    17.  January 1, 2004 through and including December 31, 2003.
    18.  January 1, 2002 through and including December 31, 2002.

19

20

21
If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
policies.   As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt

22
of this request, and either produce the requested documents, or commit in writing to a production date that is within
the reasonable time period required by the PRA. Thank you.

23
Sincerely,

24
Parvin Olfati

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 88

**Paragraph 283-(h):**

PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819

November 6, 2020

Via email to Reciortds@SacSheriff.com
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, California 95841

**RE:    Public Records Act Request for County of Sacramento Sheriff's Department Communications, Payments, And/or Emoluments Regarding Any Activity At Bella Bru Café at 5038 Fair Oaks Boulevard on Any Date Including But Not Limited To November 6, 2020, Including But Not Limited To Any Activity Involving An Automobile With The California License Pate "WMGLEN"**

Dear Sir or Madam:

On the morning of Friday November 6, 2020, I was having breakfast at Bella Bru Café on 5038 Fair Oaks Boulevard when I received a third blast from the past: the Volkswagen automobile with the California personalized license plate "WMGLEN" – which back in March of 2020 regularly stalked me at Starbucks locations on Folsom Boulevard, and after March of 2020 multiple times (including but not limited to on October 27 and October 29 of 2020) at Bella Brue Café at 2376 Fair Oaks Blvd. I reasonably believe this serial stalking of me by the driver of this car is done at the direction of one or more law enforcement agencies whose vehicles and officers invariably show up whenever I am there.  As I am once again placed under fraudulent "investigation", "watch list", "non investigatory subject", and other surveillance to take away my legal, civil and human rights – all to protect from exposure Mr. Steven Maviglio and his partner in perjury Barb Andres as well as Camille Remy Obad and her new criminals/tenants. I am once again being stalked in every part of the City of Sacramento and beyond, and being physically tortured and emotionally and psychologically assaulted.

Pursuant to the Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all emoluments, payments, electronic mail messages, text messages, notes, communications, letters, memoranda, documents, emoluments, payments, records, and/or writings created, transmitted, received and/or stored on any County Sheriff sheriff, deputy, department, chief, officer, division, Impact Division, Homeless Outreach Team,  plainclothes, undercover, office, agency, employee, agent, and/or representative computer or other medium on any date between January 1, 2020 and the date of your response to this PRA request, that constitute, mention, refer to, and/or relate to;

    1. Any communications, payments, and/or emoluments to, from, with and/or about any person known or believed to stalking or following Parvin Olfati, including but not limited to any driver, owner, or user of any automobile with the license plate "WMGLEN", including but not limited to any activity on November 6, 2020.

    2. Amy communications, emoluments, and/or payments to any driver, owner, or user of any automobile with the California license plate "WMGLEN."

    3. Any County Sheriff ownership or lease interest in any automobile with the California license plate "WMGLEN."

To assist you in identifying the driver of the vehicle with the California license plate WMGLEN, her picture ia displayed below. I took this picture with my cellphone at 8:01 a.m. on Friday, November 6, 2020. As used in this PRA request, the term "communications" includes but is not limited to text messages, electronic mail messages, notes, memoranda, documents, records and/or writings.

If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable, please provide the records of such destruction, transfer, or unavailability, together with applicable record retention policies. As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this request, and either produce the requested documents, or commit in writing to a production date that is within the reasonable time period required by the PRA.

Thank you.

Sincerely,

Parvin Olfati

PLAINTIFF's FIRST AMENDED COMPLAINT 89

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Paragraph 283-(i):**

**PARVIN OLFATI**, 1859 45th Street, Sacramento, California 95819

January 21, 2021

**Via email to Records@SacSheriff.com**

Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

**RE: Public Records Act  Request for County of Sacramento Sheriff's Department Communications That Mention, Refer To, And/or Relate to Any Stalking, Surveillance, Monitoring, Following or Reporting Regarding Parvin Olfati, Including But Not Limited To Any Records Created, Transmitted, Stored And/or Received By The Woman Driver, Owner, or User of The White Chevrolet Sport Utility Vehicle With The California License Plate 8LTE039**

Dear Sir or Madam:

During the month of December 2020 the woman whose picture is displayed below followed me to the Fair Oaks Boulevard locations of Bella Brue Café (5038), Ettore's (2376), and finally Tuesday Morning (2550). She followed me while driving a white Chevrolet sport utility vehicle with the California license plate number 8 LTE039. I took both pictures displayed below with my cellphone while this woman was stalking me at Tuesday Morning store on December 17, 2020. Every day when I went to Bella Bru Café I would see her sitting at  restaurant tables near me while using two cellphones simultaneously – one videotaping me, and the other used by her to write and text.  At one point, when we were allowed to use the indoor seating, she made it a point to come and sit next to me and tell me that she liked talking with me.  I found her comment very odd, but by now I am used to getting all kinds of odd and strange treatments from the people who are stalking me.  She sat next to me and I told her about the May 09, 2020 police brutality I experienced by the physical assault, battery, and illegal search and seizure of me on my own front porch committed by City of Sacramento Police Department officers Jared Robinet and Maryna Stanionis. I also noticed she was paying very detailed attention to my body language.  Please also note that during the last ten years, I have seen this female stalking me in other places as well.   In one of these stalkings, she was accompanied in the Bella Bru Café by a male, and I reasonably believe she brought this male with her to show me to that male.   As you can see, I do not get any break. My question remains:"what have I ever done to deserve this much intrusion and torture ?"

On December 13, 2020, this female followed me to Ettore's. This following of me to Ettore's occurred one day before the December 14, 2020 attempt by County of Sacramento Division of Behavioral Services Senior Mental Health Counselor Pamela Pisani to entrap me in her strategized threatening visit to my house. On December 17, 2020, this woman followed me to Tuesday Morning.

All of these Fair Oaks Boulevard stalkings of me by this same woman occurred within days of the December 14, 2020 attempted ambush of me at my home by County of Sacramento Division of Behavioral Health Services Community Support Team Senior Mental Health Counselor Pamela Pisani. When I asked Ms. Pisani why she came by my house unannounced, Ms. Pisani said she had been given "information" about me from the County Sheriff. I reason believe one of the sources of this "information" may be the woman  whose picture are displayed below.

Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought."  This records request includes not only documents on County of Sacramento Sheriff's Department (County Sheriff) department, division, Impact Division, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative (County Sheriff) computers or other media, but also documents on Teale Data Center or other backup computers, media or facilities. Therefore, please produce to me true and correct copies of any documents, records and/or writings created, transmitted, received, and/or stored between December 1, 2020 and the date of your response to this PRA request that constitute, mention, refer to and/or relate to:

1. County Sheriff communications by, to, from, with and/or about any female driver, owner, or user of any vehicle with the California license plate 8LTE039, including but not limited to any communications that

PLAINTIFF's FIRST AMENDED COMPLAINT 91

mention, refer to, and/or relate to Parvin Olfati, or any person recorded, written about, texted about, or reported on as being present at any location on Fair Oaks Boulevard.

2. Any report, notes, memoranda, documents, record, text message, electronic mail message, and/or writing by any female in the picture displayed below,  that mentions, refers to and/or relates to Parvin Olfati, or any person recorded, written about, texted about, or reported on as being present at any location on Fair Oaks Boulevard.

3. Any and all reports made by any County Sheriff officers or employees that mention, refer to, and/or relate to any person observed at any location on Fair Oaks Boulevard, including but not limited to Tuesday Morning (2550), Ettore's (2376), and/or Bella Bru Café (5038), and including but not limited to Parvin Olfati.

4. Any sending of any County Sheriff deputy, officer, undercover, plainclothes, or employees to stalk, observe, watch, or monitor Parvin Olfati, Patty Olfati, Patti Olfati and/or Olfati.

5. Any communications to Pamela Pisani or any employee of the County Division of Behavioral Health Services that mention or refer to Parvin Olfati.

In addition, please produce any and all documents, records, and/or writings reflecting any destruction, alteration, removal, or other unavailability of any of the records requested in this request, together with applicable record retention policies.

As required by Government Code Section 6253(c), please respond within ten (10) calendar days  of your receipt of this letter, and please produce all requested documents, records, and/or writings within ten (10) calendar days of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section 6258 if this request is not granted.

Very truly yours,

Ms. Parvin Olfati

**Paragraph 283-(j):**

Parvin Olfati 1859  45th Street Sacramento, CA. 95819

February 26, 2021

Via email to Records@SacSheriff.com

SRO I Stacey Miyasaki, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

**RE: Public Records Act Request For County of Sacramento Sheriff's Department Records of Vehicle and/or Deputy Presence On 45th Street, "S" Street, "T" Street, and/or 46th Street At Any Time On December 14, 2020**

Dear Sir or Madam:

Please respond and provide any and all requested records via postal mail to my address above. Please use e mail transmission only as a supplement to any postal mailed response.

Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all reports, notes, log entries, computer entries, CAD, memoranda, documents, records and/or writings:

Created, transmitted, received and/or stored on any County Sheriff sheriff, department, division, Impact Division, Homeless Outreach Team, chief, officer, employee, agent or representative (County Sheriff)  computer or other medium between December 1, 2020 and the date of your response to this PRA request that:

1. Mention or refer to the presence of any County Sheriff vehicles at any location in any of the following areas of the Elmhurst neighborhood of the City of Sacramento at any time on December 14, 2020: (a) the 1800 or 1900 blocks of 45th Street; (b) "S" Street between 45th and 46th Streets; ( c ) the 1800 or 1900 blocks of 46th Street; (d) and/or  ) "T" Street between 44th and 47th Streets.
2. Mention or refer to the presence of any County Sheriff sheriff, eputies, officers, employees, agents or representatives at any location in any of the following areas of the Elmhurst neighborhood of the City of Sacramento at any time on December 14, 2020: (a) the 1800 or 1900 blocks of 45th Street; (b) "S" Street between 45th and 46th Streets; ( c ) the 1800 or 1900 blocks of 46th Street; (d) and/or  ) "T" Street between 44th and 47th Streets.
3. Mention or refer to any County Sheriff sheriff, deputies, officers, employees, agents, and/or representatives directed or ready to take any action on December 14, 2020 that involves Parvin Olfati or 1859 45th Street (Sacramento, California 95819).

The records requested include but are not limited to any records of any placement of Parvin Olfati and/or 1859 45th Street under any "intelligence", surveillance, monitoring, or other similar activity by any law enforcement agency. If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable, please provide the records of such destruction, transfer, or unavailability, together with applicable record retention policies.  As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this request, and either produce the requested documents, or commit in writing to a production date that is within the reasonable time period required by the PRA.

Sincerely,

Parvin Olfati

**Paragraph 283-(k):**

**Parvin Olfati 1859 45th Street Sacramento, CA. 95819**

March 16, 2021

Via email to Records@SacSheriff.com
And via U.S. Mail to: SRO I Stacey Miyazaki, PSD Legal Affairs, Disclosure Officer, County of Sacramento
Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841-4205
**RE: Public Records Act Request For County of Sacramento Sheriff's Department Documents That Constitute
Sheriff's Department Information Communicated To County of Sacramento Department of Health Services
Division of Behavioral Health Services Senior Mental Health Counselor LMFT Pamela Pisani That Mention,
Refer to, or Relate to Parvin Olfati or 1859 45th Street**
Dear Ms. Miyasaki:
Please respond and provide any and all requested records via postal mail to my address above. Please use e mail
transmission only as a supplement to any postal mailed response. The only reason I am sending this Public Records
Act (PRA) request via e mail is that the County Sheriff office is no longer available for in-person delivery. This time
I am also postal mailing the PRA request to SRO I Stacey Miyasaki.
As of the March 15, 2021 mail delivery, I have not received any response or documents, even though the most recent
PRA request was sent on March 1, and it renews previous PRA requests that have not been answered. **In addition,
this March 16, 2021 PRA request makes a request for three new categories of documents: communications
with the City of Sacramento Police Department, City of Sacramento Police Department Mental Health Unit,
or City of Sacramento Police Department Impact Team.**

This is a simple PRA request for records that clearly exist -- because County Senior Mental Heath Counselor Pamela
Pisani on behalf of the County made an unannounced visit to my house and said she was doing so based on
information communicated to her or her department or division by the County Sheriff). Either the requested records
exist, or County employee Pam Pisani was lying while conducting County business.

On Monday, December 14, 2020, at about 4:36 p.m., the front door of my 1859 45th Street (Sacramento, California
95819) house was knocked upon by a woman who asked me "is this Parvin?" I opened the door, and took her
business card identifying her as "Pamela Pisani, LMFT Senior Mental Health Counselor" from the "Community
Support Team" of the County of Sacramento Department of Health Services Division of Behavioral Health Services.
I then heard Ms. Pisani say she had received an "anonymous call" and complaint about me. I told her to wait, closed
the door, and got my cellphone. I then opened the door. In response to my question "who are you again", she
identified herself as "Pam". I said "Pam Community Support Team". She said "right." She never confirmed that I
was Parvin Olfati. I then said "and you don't know who called you". Ms. Pisani then said "I think it was maybe the
Sheriff's Department", and then used the word "complaint." I then said "so the Sheriff's Department called you?"
and Ms. Pisani said: "They didn't call me. They let us know that maybe there were some concerns…they're out of
the Sheriff's Department jurisdiction…"
I then said "so the Sheriff's Department had something to do with this" and Ms. Pisani said: "they forwarded some
information." In response to my question as to "exactly" what "information" had been "forwarded", Ms. Pisani said
"they forwarded some information stating…" but "I don't know exactly" what the information was. I then asked:
"So how can you go to somebody's door when you don't have any idea what you're doing there?"

Ms. Pisani did not answer my question, but instead frantically and immediately wheeled to her scripted narrative
about "resources." She did not answer my questions about her "resources" or the function of the "Behavioral
Services" "department" (actually a division) that she said she worked for. She never used the word County even
though she was here on purported County business. Instead she used the word "community" but never said who the
"community" was. I concluded by telling her that her "behavior" was suspect because her behavior as displayed to
me constituted by knocking unannounced on people's doors based on anonymous "b---s---."
I told her to leave, but she refused to leave. Instead she yelled at me from my driveway, and she stalked me as I
walked out toward the end of my driveway toward the back yard to check some of the toxic and feces and toxic liquid
that had been placed immediately outside my bedroom window. In other words, she trespassed my property by
refusing to leave after being ordered by me to leave.  She drove a white SUV vehicle with the California license plate
7WID019. This appeared to be her personal vehicle and/or vehicle given to her to use in her visit to my house and not
a County vehicle. **Displayed at the end of this PRA request letter are photographs of Ms. Pisani's behavior. I
took these pictures with my cellphone on December 14, 2020 starting at 4:36 p.m.**

PLAINTIFF's FIRST AMENDED COMPLAINT 94

1

2
Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all electronic messages, text messages, reports, notes, log entries, computer entries, CAD, memoranda, documents, records and/or writings that created on any County Sheriff sheriff, deputy, department, division, Impact Division, Homeless Outreach Team, officer, chief, employee, agent or representative (County Sheriff) computer or other medium created, transmitted, received and/or stored that constitute, mention, refer to and/or relate to any information communicated on any date since January 1, 2020:

3

4

5

6
    1. To any employee, agent, or representative of the County of Sacramento Department of Health Services, Division of Behavioral Health Services, or any Community Support Team, or to Pamela Pisani, that mention, refer to, or relate to Parvin Olfati and/or 1859 45th Street (Sacramento, California 95819).

7

8
    2. To any employee, officer, agent, chief, or representative of the City of Sacramento Police Department, that mention, refer to, or relate to Parvin Olfati and/or 1859 45th Street (Sacramento, California 95819).

9
    3. To any employee, officer, chief, representative, or agent of the City of Sacramento Police Department Mental Health Unit, , that mention, refer to, or relate to Parvin Olfati and/or 1859 45th Street (Sacramento, California 95819).

10

11
    4. To any employee, officer, chief, representative, or agent of the City of Sacramento Police Department Impact Team, , that mention, refer to, or relate to Parvin Olfati and/or 1859 45th Street (Sacramento, California 95819).

12

13

14
If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable, please provide the records of such destruction, transfer, or unavailability, together with applicable record retention policies. As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this request, and either produce the requested records or respond in writing to a production date that is within the reasonable time period required by the PRA.

15

16
I look forward to your prompt and complete response.

Sincerely,

17
Parvin Olfati

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 95

**Paragraph 283-(l):**

Parvin Olfati 1859 45th Street Sacramento, CA. 95819

September 10, 2021

Via U.S. Mail only

Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

**RE: Public Records Act Request For County of Sacramento Sheriff's Department Records of Vehicle and/or Deputy Presence In The Area of American River Drive Between 11:00 a.m. and 2:00 p,m. on September 5, 2021**

Dear Sir or Madam:
Please respond and provide any and all requested records via postal mail to my address above. Please use e mail transmission only as a supplement to any postal mailed response.
Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all reports, notes, log entries, computer entries, CAD, memoranda, documents, records and/or writings created, transmitted, received and/or stored on any County Sheriff sheriff, department, division, Impact Division, Homeless Outreach Team, chief, officer, employee, agent or representative (County Sheriff) computer or other medium between January 1, 2021 and the date of your response to this PRA request that:

1. Mention or refer to the presence of any County Sheriff vehicles at any location on American River Drive or on any adjoining or surrounding streets any time between 11:00 a.m. and 2:00 p.m. on Sunday, September 5, 2021.
2. Mention or refer to the presence of any County Sheriff sheriff, deputies, officers, employees, agents or representatives at any location on American River Drive or on any adjoining or surrounding streets at any time between 11:00 a.m. and 2:00 p.m. on Sunday, September 5, 2021.
3. Mention or refer to the presence of any County Sheriff vehicles at any location at or near the Five Points Shopping Center at Fair Oaks Boulevard and Arden Way, at any time between 11:00 a.m. and 2:00 p.m. on Sunday, September 5, 2021.
4. Mention or refer to the presence of any County Sheriff sheriff, deputies, officers, employees, agents or representatives at any location at or near the Five Points Shopping Center at Fair Oaks Boulevard and Arden Way, at any time between 11:00 a.m. and 2:00 p.m. on Sunday, September 5, 2021.
5. Mention or refer to any activity by the County Sheriff vehicle with the California license plate number 1409052 at any time between 11:00 a.m. and 2:00 p.m. on Sunday, September 5, 2021.

6. Mention or refer to any County Sheriff sheriff, deputies, officers, employees, agents, and/or representatives directed or ready to take any action on September 5, 2021 that involves Parvin Olfati, any vehicle believed to be used by Parvin Olfati, and/or 1859 45th Street (Sacramento, California 95819).

7. Constitute, mention, refer to, or relate to any transmission or communication of any reports, memoranda, text messages, electronic mail messages or other communications of any officer in a County Sheriff vehicle following Parvin Olfati or any vehicle believed to be used by her, including but limited to any transmission or communication to any County of Sacramento agency; the City of Sacramento Police Department; any City of Sacramento agency; or any State of California or federal government agency. These referenced agencies include but are not limited to the City of Sacramento Police Department Mental Health Unit; the City of Sacramento Police Department Impact Team; the County of Sacramento Division of Behavioral Health Services; and/or the County of Sacramento Community Support Team and/or Pamela Pisani.

The records requested include but are not limited to any reports, memoranda, text messages, electronic mail messages or other communications or any officer in a County Sheriff vehicle following Parvin Olfati or any vehicle believed to be used by her. They also include any records of any placement of Parvin Olfati, any vehicle she is believed to be

PLAINTIFF's FIRST AMENDED COMPLAINT 96

1   using, or 1859 45th Street under any "intelligence", surveillance, monitoring, or other similar activity by any law
    enforcement agency.
2
    If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
3   please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
    policies.  As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt
4   of this request, and either produce the requested documents, or commit in writing to a production date that is within
    the reasonable time period required by the PRA.
5   Sincerely,

6   Parvin Olfati

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 97

1

**Paragraph 283-(m):**

                              **PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819**

2                                                                                          October 8,
                                                      2021

3  Via U.S. Mail
   Disclosure Officer, County of Sacramento, Clerk of the Board Office, 700 "H" Street, Suite 2450, Sacramento, CA

4  95814

5  RE:   **Public Records Act Request for County of Sacramento Sheriff's Department Documents Constituting,**
       **Mentioning, Referring To And/or Relating To Contracts, Agreements, And/or Memoranda of Understanding**

6      **With Visionary Integration Professionals In Force or Created, Transmitted, Received And/or Stored On or**
       **After January 1, 2003**

7
   Dear Sir or Madam:

8
   Pursuant to the Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I hereby request

9  that the County of Sacramento Sheriff's Department  (County Sheriff) produce to me any and all electronic mail
   messages, text messages, notes, communications, letters, memoranda, documents, records, and/or writings created,

10 transmitted, received and/or stored on any County Sheriff sheriff, deputy, department, division, Impact Division,
   Mental; Health Unit, Homeless Outreach Team, officer, employee, agent, and/or representative (collectively,

11 "County Sheriff") computer or other medium on any date between January 1, 2003 and the date of your response to
   this PRA request, that constitute, mention, refer to, and/or relate to any contracts, agreements, memoranda of

12 understanding, proposed contracts, proposed agreements, proposed memoranda of understanding and/or
   communications that mention, refer to, and/or relate to any contract, agreement, and/or memorandum of

13 understanding that was <u>either</u> proposed, in force, in effect, created, transmitted, stored, and/or received on any
   County Sheriff computer or other medium, and where the party other than the County Sheriff or County of

14 Sacramento  was or is Visionary Integration Professionals (VIP).

15 In addition, pursuant to the PRA and Article I, Section 3(b) of the California Constitution, I also request that the
   County Sheriff produce to me true and correct copies of any and all electronic mail messages, text messages, notes,

16 letters, memoranda, documents, records and/or writings that constitute, mention, refer to and/or relate to: any
   communications to, from, or with Jonna Ward or any VIP employee, officer, agent, and/or representative that

17 mention or refer to mental health services and/or Parvin Olfati, Patty Olfati, Patti Olfati, Olfati, and/or 1859 45th
   Street.

18 Finally, pursuant to the PRA and Article I, Section 3(b) of the California Constitution, I also request that the County
   Sheriff produce to me true and correct copies of any and all electronic mail messages, text messages, notes, letters,

19 memoranda, documents, records and/or writings that constitute, mention, refer to and/or relate to any
   communications to, from, with and/or about Visionary Integration Professionals (VIP) and/or any VIP employee,

20 representative, officer and/or agent that mention, refer to, and/or relate to any contract, agreement, memoranda of
   understanding, proposed contract, proposed agreement or proposed memorandum of understanding  that was <u>either</u>

21 proposed, in force, in effect, created, transmitted, stored, and/or received on any County Sheriff computer or other
   medium, and where the party other than the County Sheriff or County of Sacramento was or is Visionary Integration

22 Professionals (VIP).

23 If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
   please provide the records of such destruction, transfer, or unavailability, together with applicable record retention

24 policies.

25 As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this
   request, and either produce the requested documents, or commit in writing to a production date that is within the
   reasonable time period required by the PRA.

26 Sincerely,

27 Parvin Olfati

28

**Paragraph 283-(n):**
PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819

December 16, 2021

Via U.S. Mail
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

**RE:   Public Records Act Request for County of Sacramento Sheriff's Department Records of Communications With George Hills Company, Inc. Regarding Parvin Olfati Claim Against Sacramento County**

Dear Sir or Madam:

Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I hereby request that the City of Sacramento Sheriff's Department (County Sheriff)  produce to me any and all electronic mail messages, text messages, notes, communications, letters, memoranda, documents, records, and/or writings created, transmitted, received and/or stored on any County Sheriff sheriff, deputy, department, division, Impact Division, Homeless Outreach Team, Mental Health Unit, chief, officer, office, agency, employee, agent, and/or representative computer or other medium on any date between January 1, 2021 and the date of your response to this PRA request, that constitute, mention, refer to, and/or relate to any communications to, with, from and/or about George Hills Company, Inc. that mentions, refers to, or relates to:

    1. Parvin Olfati.
    2. Pamela Pisani.
    3. The County Division of Behavioral Health Servicves.
    4. Any Parvin Olfati request for records to the County of Sacramento or County of Sacramento Sheriff's Department.
    5. Any Parvin Olfati claim presented to the County of Sacramento.
    6. Claim Number L2100524 or Claim File Number 87388-35.
    7. Any suggestion or communication that any Parvin Olfati PRA request or request for records not be responded to.

If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable, please provide the records of such destruction, transfer, or unavailability, together with applicable record retention policies.

As used herein, the term "George Hills Company, Inc. ("George Hills")" includes any George Hills employee, physician,  officer, agent, or representative.

As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this request, and either produce the requested documents, or commit in writing to a production date that is within the reasonable time period required by the PRA. Thank you.

Sincerely,

Parvin Olfati

1 **Paragraph 283-(o):**

2          Ms. PARVIN OLFATI, 1859 45ᵗʰ Street, Sacramento, California 95822
                                                                      January 31, 2022

3

   <u>Via personal delivery only to:</u> Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700
4  "H" Street, Sacramento, CA 95814

5  <u>Via U.S. Mail to:</u>
   Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA
6  95841

7  **RE:    Public Records Act Request – County of Sacramento Sheriff's Department or Division of Behavioral
   Health Services Records Constituting Department Policies In Force On Any Date On Or After October 1,**
8  **2020 Regarding Referral Of Persons To The County Mobile Crisis Support Team, Problem Oriented Policing,
   or County Division of Behavioral Health Services**

9  Dear Sir or Madam:

10 Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3,
   2004) and the California Public Records Act (PRA), please produce the following documents, records and/or
11 writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are
   responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical
12 basis for denying access to the records or information sought." This records request is for documents created,
   transmitted, received and/or stored on any computer or other medium in any of the following County of Sacramento
13 (County) operations:

14     1. County Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Mental
          Health Unit, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative.
15     2. County Mobile Crisis Support Team (MCST) and/or MCST-assigned Sheriff's Department officers and/or
          Senior Mental Health Counselors.
16     3. County Division of Behavioral Health Services ("County Behavioral Health") employees Jennifer Stewart,
          Jennifer Reiman, and/or Pamela Pisani.
17     4. Problem Oriented Policing (POP) at the Sacramento Sheriff's Department North Division.

18 that constitute policies, procedures, protocols, rules, regulations, or guidelines in effect on or any date after
   October 1, 2020 regarding referral to MCST, POP, or County Behavioral Health of any person. This PRA request
19 includes but is not limited to any referral of any person determined by any County Sheriff employee (including but
   not limited to Sergeant Ronald Briggs) to have sent an "unfounded" police report or crime report to the County
20 Sheriff.

21 As required by Government Code Section 6253(c), please respond within ten (10) calendar days of your receipt of
   this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days
22 of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period
   of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section
23 6258 if this request is not granted.

24 Very truly yours,

25 Ms. Parvin Olfati

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 100

1   **Paragraph 283-(p):**

2                    Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822
                                                                                        January 31, 2022

3
    <u>Via personal delivery only to:</u> Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700
4   "H" Street, Sacramento, CA 95814

5   <u>Via U.S. Mail to:</u>
    Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA
6   95841

7   **RE:    Public Records Act Request – County of Sacramento Sheriff's Department or County Behavioral
    Health Records Of Any Investigation or Other Activity Related To Any Determination That The November 9,**
8   **2020 Parvin Olfati Police Report/Crime Report Was "Unfounded" or Was A "Complaint Indicative of
    Potential Mental Health Distress"**

9   Dear Sir or Madam:

10  Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3,
    2004) and the California Public Records Act (PRA), please produce the following documents, records and/or
11  writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are
    responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical
12  basis for denying access to the records or information sought." This records request is for documents created,
    transmitted, received and/or stored on any computer or other medium in any of the following County of Sacramento
13  (County) operations:

14       1. County Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Mental
            Health Unit, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative.
15       2. County Mobile Crisis Support Team ("MCST") and/or MCST-assigned Sheriff's Department officers and/or
            Senior Mental Health Counselors.
16       3. County Division of Behavioral Health Services ("County Behavioral Health") employees Jennifer Stewart,
            Jennifer Reiman, and/or Pamela Pisani.
17       4. Problem Oriented Policing (POP) at the Sacramento Sheriff's Department North Division.
         5. County Sheriff Sergeant Ronald Briggs.
18       6. County Mental Health Program Coordinator Jennifer Reiman.
         7. County Senior Mental Health Counselor Jennifer Stewart.
19
    that constitute, mention, refer to, and/or relate to any investigation or activity related to any determination that the
20  November 9, 2020 Parvin Olfati Police Report/Crime Report was: (i) "unfounded"; (ii) was a "complaint indicative
    of potential mental health distress"; or (iii) merited referring the police report/crime report author and her address to
21  County Behavioral Health, MCST, and/or POP.

22  As required by Government Code Section 6253(c), please respond within ten (10) calendar days of your receipt of
    this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days
23  of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period
    of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section
24  6258 if this request is not granted.

25  Very truly yours,

26  Ms. Parvin Olfati

27

28

    PLAINTIFF's FIRST AMENDED COMPLAINT 101

**Paragraph 283-(q):**

**Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822**

January 31, 2022

<u>Via personal delivery only to:</u> Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA 95814

<u>Via U.S. Mail to:</u>
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

RE:    **Public Records Act Request – County of Sacramento Sheriff's Department Sergeant Ronald Briggs Records Of Electronic Mail, Text Messages, CAD, or Other Communications That Mention, Refer to, or Relate to Parvin Olfati, Steven Maviglio, Barbara Andres, Or Any Resident, Owner, or User of Any Address In The 1800-1900 Blocks of 45th Street in Sacramento, CA 95819**

Dear Sir or Madam:

**The purpose of this Public Records Act (PRA) request is to determine how I became the subject of a "process referral" from the County Sheriff to the County Division of Behavioral Health Services  and its' Senior Mental Health Counselor Pamela Pisani. Ms. Pisani intruded into my privacy on December 14, 2020 based on what she claimed was information from the County Sheriff, but when I asked her, she said she "did not know" where her information came from.**

**Attached to a County-submitted declaration from Jennifer Reiman is a December 10, 2020 electronic mail message authored by Jennifer Stewart to Jennifer Reiman and copied to Sergeant Ronald Briggs, The electronic mail message refers to Sergeant Briggs as providing a November 9, 2020 police report letter from me that, according to Sergeant Briggs, was "unfounded" and caused the Sergeant to have "concerns for [my] emotional well being", that the person I reported was "stalking" me "has a restraining order" and that the Community Support Team should contact me because of my allegedly "identified belief that law enforcement is stalking her and colluding against her."**

Therefore, pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought."  This records request is for documents created, transmitted, received and/or stored on any Sergeant Ronald Briggs computer or other medium in the County Sheriff's Department:

1. Constitute, mention,  refer to, and/or relate to any investigation or activity related to any determination that the November 9, 2020  Parvin Olfati Police Report/Crime Report was: (i) "unfounded"; (ii)  was a "complaint indicative of potential mental health distress"; or (iii) merited referring the police report/crime report author and her address to County Behavioral Health, MCST, and/or POP.
2. Constitute, mention, refer to, or relate to any "restraining order" against Parvin Olfati.
3. Constitute any December 10, 2020 communications to or from Jennifer Stewart, including but not limited to any "inquiry as to how to get a mental health worker to check with the letter writer."
4. Mention, refer to, or relate to any resident, owner or user of any address in the 1800-1900 blocks of 45th Street in Sacramento, CA 95819, including but not limited to Steven Maviglio (1901), Barbara Andres (1870), Cecil Taylor (1870), Camille Remy Obad (1871), Charles Schock (1914) and/or Pamela Kitchens-Schock (1914).
5. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or writing that mentions or refers to Parvin Olfati.
6. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or writing that mentions or refers to any Bella Bru Café location.
7. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or writing that mentions or refers to Starbucks location.

PLAINTIFF's FIRST AMENDED COMPLAINT 102

1

    8. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or writing that mentions or refers to any restaurant or dining establishment.

2

As required by Government Code Section 6253(c), please respond within ten (10) calendar days of your receipt of this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section 6258 if this request is not granted.

Very truly yours, /s/ Ms. Parvin Olfati

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 103

1  **Paragraph 283-(r):**

2                    **Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822**
                                                                                    January 31, 2022

3
   <u>Via personal delivery only to:</u> Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700
4  "H" Street, Sacramento, CA 95814

5  <u>Via U.S. Mail to:</u>
   Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA
6  95841

7  **RE:    Public Records Act Request – County of Sacramento Sheriff's Department or County Behavioral
   Health Records Of Any And All Records of "Process Referrals" to the "Community Support Team" Between
8  January 1, 2020 And The Date Of Your Receipt Of This PRA Request**

9  Dear Sir or Madam:

10 Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3,
   2004) and the California Public Records Act (PRA), please produce the following documents, records and/or
11 writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are
   responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical
12 basis for denying access to the records or information sought." This records request is for documents created,
   transmitted, received and/or stored on any computer or other medium in any of the following County of Sacramento
13 (County) operations:

14     1. County Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Mental
          Health Unit, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative.
15     2. County Mobile Crisis Support Team ("MCST") and/or MCST-assigned Sheriff's Department officers and/or
          Senior Mental Health Counselors.
16     3. County Division of Behavioral Health Services ("County Behavioral Health") employees Jennifer Stewart,
          Jennifer Reiman, and/or Pamela Pisani.
17     4. Problem Oriented Policing (POP) at the Sacramento Sheriff's Department North Division.
       5. The "Community Support Team" (CST).
18     6. County Sheriff Sergeant Ronald Briggs.
       7. County Mental Health Program Coordinator Jennifer Reiman.
19     8. County Senior Mental Health Counselor Jennifer Stewart.

20 that constitute any Sheriff's Department "process referrals" to the Community Support Team between January 1,
   2020 and the date of your receipt of this PRA request (January 31, 2022). Please feel free to redact any and all
21 privacy-implicating information for individuals other than the undersigned. My purpose in making this request is to
   find out how many (and on what basis) "process referrals" were made during the period of the "process referral"
22 about me on December 10-14 of 2020; the stated basis behind such "process referrals"; and their outcome. I had
   never heard of "process referrals" until I became the recipient of one.

23 As required by Government Code Section 6253(c), please respond within ten (10) calendar days of your receipt of
   this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days
24 of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period
   of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section
25 6258 if this request is not granted.

26 Very truly yours,

27 Ms. Parvin Olfati

28

   PLAINTIFF's FIRST AMENDED COMPLAINT 104

**Paragraph 283-(s):**

**Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822**

January 31, 2022

<u>Via personal delivery only to:</u> Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA 95814

<u>Via U.S. Mail to:</u>
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

**RE:    Public Records Act Request – County of Sacramento Sheriff's Department Sergeant Ronald Briggs Records Of Electronic Mail, Text Messages, CAD, or Other Communications That Mention, Refer to, or Relate to Parvin Olfati, Steven Maviglio, Barbara Andres, Or Any Resident, Owner, or User of Any Address In The 1800-1900 Blocks of 45th Street in Sacramento, CA 95819**

Dear Sir or Madam:

**The purpose of this Public Records Act (PRA) request is to determine how I became the subject of a "process referral" from the County Sheriff to the County Division of Behavioral Health Services  and its' Senior Mental Health Counselor Pamela Pisani. Ms. Pisani intruded into my privacy on December 14, 2020 based on what she claimed was information from the County Sheriff, but when I asked her, she said she "did not know" where her information came from.**

**Attached to a County-submitted declaration from Jennifer Reiman is a December 10, 2020 electronic mail message authored by Jennifer Stewart to Jennifer Reiman and copied to Sergeant Ronald Briggs, The electronic mail message refers to Sergeant Briggs as  providing a November 9, 2020 police report letter from me that, according to Sergeant Briggs, was "unfounded" and caused the Sergeant to have "concerns for [my] emotional well being", that the person I reported was "stalking" me "has a restraining order" and that the Community Support Team should contact me because of my allegedly "identified belief that law enforcement is stalking her and colluding against her."**

Therefore, pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought."  This records request is for documents created, transmitted, received and/or stored on any Sergeant Ronald Briggs computer or other medium in the County Sheriff's Department:

1. Constitute, mention,  refer to, and/or relate to any investigation or activity related to any determination that the November 9, 2020  Parvin Olfati Police Report/Crime Report was: (i) "unfounded"; (ii)  was a "complaint indicative of potential mental health distress"; or (iii) merited referring the police report/crime report author and her address to County Behavioral Health, MCST, and/or POP.
2. Constitute, mention, refer to, or relate to any "restraining order" against Parvin Olfati.
3. Constitute any December 10, 2020 communications to or from Jennifer Stewart, including but not limited to any "inquiry as to how to get a mental health worker to check with the letter writer."
4. Mention, refer to, or relate to any resident, owner or user of any address in the 1800-1900 blocks of 45th Street in Sacramento, CA 95819, including but not limited to Steven Maviglio (1901), Barbara Andres (1870), Cecil Taylor (1870), Camille Remy Obad (1871), Charles Schock (1914) and/or Pamela Kitchens-Schock (1914).
5. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or writing that mentions or refers to Parvin Olfati.
6. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or writing that mentions or refers to any Bella Bru Café location.
7. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or writing that mentions or refers to Starbucks location.

PLAINTIFF's FIRST AMENDED COMPLAINT 105

1        8. Constitute, mention, refer to or relate to any report, memorandum, CAD, notes, document, record, and/or writing that mentions or refers to any restaurant or dining establishment.

2

3  As required by Government Code Section 6253(c), please respond within ten (10) calendar days of your receipt of this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section 6258 if this request is not granted.

4

5  Very truly yours, /s/ Ms. Parvin Olfati

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 106

**Paragraph 283-(t):**

Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822
January 31, 2022

Via personal delivery only to: Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA 95814

Via U.S. Mail to:
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

RE:   Public Records Act Request – County of Sacramento Sheriff's Department or Division of Behavioral Health Services Records Constituting Department Policies In Force On Any Date On Or After October 1, 2020 Regarding Referral Of Persons To The County Mobile Crisis Support Team, Problem Oriented Policing, or County Division of Behavioral Health Services

Dear Sir or Madam:

Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought." This records request is for documents created, transmitted, received and/or stored on any computer or other medium in any of the following County of Sacramento (County) operations:

1. County Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Mental Health Unit, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative.
2. County Mobile Crisis Support Team (MCST) and/or MCST-assigned Sheriff's Department officers and/or Senior Mental Health Counselors.
3. County Division of Behavioral Health Services ("County Behavioral Health") employees Jennifer Stewart, Jennifer Reiman, and/or Pamela Pisani.
4. Problem Oriented Policing (POP) at the Sacramento Sheriff's Department North Division.

that constitute policies, procedures, protocols, rules, regulations, or guidelines in effect on or on any date after October 1, 2020 regarding referral to MCST, POP, or County Behavioral Health of any person. This PRA request includes but is not limited to any referral of any person determined by any County Sheriff employee (including but not limited to Sergeant Ronald Briggs) to have sent an "unfounded" police report or crime report to the County Sheriff.

As required by Government Code Section 6253(c), please respond within ten (10) calendar days of your receipt of this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section 6258 if this request is not granted.

Very truly yours,

Ms. Parvin Olfati

PLAINTIFF's FIRST AMENDED COMPLAINT 107

**Paragraph 283-(u):**

Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822
January 31, 2022

<u>Via personal delivery only to:</u> Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700 "H" Street, Sacramento, CA 95814

<u>Via U.S. Mail to:</u>
Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA 95841

RE:    **Public Records Act Request – County of Sacramento Sheriff's Department or County Behavioral Health Records Of Any Investigation or Other Activity Related To Any Determination That The November 9, 2020 Parvin Olfati Police Report/Crime Report Was "Unfounded" or Was A "Complaint Indicative of Potential Mental Health Distress"**

Dear Sir or Madam:

Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3, 2004) and the California Public Records Act (PRA), please produce the following documents, records and/or writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical basis for denying access to the records or information sought." This records request is for documents created, transmitted, received and/or stored on any computer or other medium in any of the following County of Sacramento (County) operations:

1. County Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Mental Health Unit, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative.
2. County Mobile Crisis Support Team ("MCST") and/or MCST-assigned Sheriff's Department officers and/or Senior Mental Health Counselors.
3. County Division of Behavioral Health Services ("County Behavioral Health") employees Jennifer Stewart, Jennifer Reiman, and/or Pamela Pisani.
4. Problem Oriented Policing (POP) at the Sacramento Sheriff's Department North Division.
5. County Sheriff Sergeant Ronald Briggs.
6. County Mental Health Program Coordinator Jennifer Reiman.
7. County Senior Mental Health Counselor Jennifer Stewart.

that constitute, mention, refer to, and/or relate to any investigation or activity related to any determination that the November 9, 2020 Parvin Olfati Police Report/Crime Report was: (i) "unfounded"; (ii) was a "complaint indicative of potential mental health distress"; or (iii) merited referring the police report/crime report author and her address to County Behavioral Health, MCST, and/or POP.

As required by Government Code Section 6253(c), please respond within ten (10) calendar days of your receipt of this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section 6258 if this request is not granted.

Very truly yours,

Ms. Parvin Olfati

1   **Paragraph 283-(v):**

2   **Ms. PARVIN OLFATI, 1859 45ᵗʰ Street, Sacramento, California 95822**
    February 14, 2022

3
    <u>Via personal delivery only to:</u> Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700
4   "H" Street, Sacramento, CA 95814

5   <u>Via U.S. Mail to:</u>
    Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA
6   95841

7   **RE:   Public Records Act Request – County of Sacramento Sheriff's Department Sergeant Ronald Briggs**
    **Duty Statement, Assignments, And Sheriff's Car Driving Records From January 1, 2019 Through And**
8   **Including The Date of Your Response To This PRA Request**

9   Dear Sir or Madam:

10  Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3,
    2004) and the California Public Records Act (PRA), please produce the following documents, records and/or
11  writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are
    responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical
12  basis for denying access to the records or information sought." This records request is for documents created,
    transmitted, received and/or stored on any Sergeant Ronald Briggs computer or other medium in the County Sheriff's
13  Department:

14      1. Any and all duty statements for Sergeant Ronald Briggs in effect on any and all dates in 2019, 2020, 2021,
           and the 2022 dates between January 1 and the date of your response to this PRA request.
15      2. Assignment history for Sergeant Ronald Briggs for any and all dates in 2019, 2020, 2021, and the 2022 dates
           between January 1 and the date of your response to this PRA request.
16      3. License plate numbers of Sheriff's Department vehicles driven or used by Sergeant Ronald Briggs on any and
           all dates in 2019, 2020, 2021, and the 2022 dates between January 1 and the date of your response to this
17         PRA request.

18  As required by Government Code Section 6253(c), please respond within ten (10) calendar days of your receipt of
    this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days
19  of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period
    of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section
20  6258 if this request is not granted.

21  Very truly yours, /s/ Ms. Parvin Olfati

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 109

**Paragraph 283-(w):**

PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819
March 03, 2022

Via U.S. Mail
Disclosure Officer, County of Sacramento Sheriff's Department , 4500 Orange Grove Avenue, Sacramento, CA 95841

RE:   **Public Records Act Request for County of Sacramento Sheriff's Department Communications To, With, or From The California Highway Patrol That Mention, Refer to, And/or Relate to Parvin Olfati, That Were Created, Transmitted, Received And/or Stored Since January 1, 2017**

Dear Sir or Madam:

**Please do not respond via e mail. Instead, please respond via postal mail that includes a signed cover letter describing the Public Records Act (PRA) being responded to, what is being produced, and what is being withheld (together with the exemptions claimed).  In addition, this letter should be signed with an actual signature by whoever is answering the letter, and should include a contact mailing address, telephone number, and e mail address.**

This is a Public Records Act (PRA) request for County of Sacramento Sheriff's Department (County Sheriff) documents of County Sheriff sheriff, department, deputy,  Ronald Briggs, office, board, division, agency, officer, employee, agent and/or representative communications to, with, and/or from the California Highway Patrol that mention, refer to, and/or relate to Parvin Olfati, Patti Olfati, Patty Olfati, and/or Olfati.

Therefore, pursuant to the PRA and Article I, Section 3(b) of the California Constitution, I hereby request that the County Sheriff produce to me any and all electronic mail messages, text messages, notes, communications, letters, memoranda, documents, records, and/or writings created, transmitted, received and/or stored on any County Sheriff sheriff, department, deputy,  Ronald Briggs, office, board, division, agency, officer, employee, agent and/or representative computer or other medium on any date between January 1, 2017 and the date of your response to this PRA request, that constitute, mention, refer to, and/or relate to any communications to, with and/or from the California Highway Patrol (CHP) that mention, refer to, and/or relate to Parvin Olfati, Patty Olfati, Patti Olfati, and/or Olfati.

If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable, please provide the records of such destruction, transfer, or unavailability, together with applicable record retention policies.

As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this request, and either produce the requested documents, or commit in writing to a production date that is within the reasonable time period required by the PRA. Thank you.

Sincerely,

Parvin Olfati

1

2

## Paragraph 283-(x):

**Parvin Olfati 1859  45ᵗʰ Street Sacramento, CA. 95819**

3

<u>Via U.S. Mail</u>

March 04, 2022

4

Disclosure Officer, County of Sacramento Sheriff's Department,  4500 Orange Grove Avenue,  Sacramento, California 95841

5

6

**RE: Public Records Act Request For County of Sacramento Sheriff's Department Documents That Constitute, Mention, Refer To, And/or Relate To Any Informant, Providing of Information,  or Other Activity By Martin Raygoza, Petros Raygoza, Helen Vatthis, or Any Person At 1851 45ᵗʰ Street (Sacramento, California 95819)**

7

Dear Sir or Madam:

8

Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I hereby request that the County of Sacramento  Sheriff's Department (County Sheriff) produce to me any and all electronic messages, text messages, emoluments, payments, reports, notes, log entries, computer entries, CAD, memoranda, documents, records and/or writings that created on any County Sheriff sheriff, deputy, department, division, Impact Division, Mental Health Unit, Homeless Outreach Team,   chief,  employee, agent or representative (County Sheriff)  computer or other medium created, transmitted, received and/or stored since January 1, 2020 that constitute, mention, refer to and/or relate to any communications or activity by Martin Raygoza, Petros Raygoza, and/or Helen Vatthis of 1851 45ᵗʰ Street and/or any person residing at, using, or hiding out at 1851  45ᵗʰ Street (Sacramento, California 95819). The records requested include but are not limited to:

9

10

11

12

13

    1. Any communications, payments, and/or emoluments to, from, with and/or about Martin Raygoza, Petros Raygoza, and/or Helen Vatthis.

14

    2. Any communications, payments, and/or emoluments to, from, with, and/or about any person hiding out in, residing at, or otherwise using 1851 45ᵗʰ Street (Sacramento, California 95819), including but not limited to Martin Raygoza, Petros Raygoza, and/or Helen Vatthis.

15

16

    3. Any communications, payments, and/or emoluments that relate to, refer to, and/or mention any informant activity at 1851 45ᵗʰ Street (Sacramento, California 95819).

17

    4. Any information provided by Martin Raygoza, Petros Raygoza, Helen Vatthis, or any person present at ort using 1859 45ᵗʰ Street.

18

    5. Any communications, payments, and/or emoluments that relate to, refer to, and/or mention any placement of any substance, narcotic, animal feces, toxin, toxic, poison, or other matter on any portion of 1859 45ᵗʰ Street, including but not limited to any driveway, basement, side yard, front yard, or back yard.

19

20

    6. Any communications, payments, and/or emoluments that relate to, refer to, and/or mention any placement of any substance, narcotic, animal feces, toxin, toxic, poison, or other matter in, on, or near any automobile believed to be used by Parvin Olfati, including but not limited to any automobile parked in the driveway or at any curb of 1859 45ᵗʰ Street, Sacramento, California 95819.

21

22

The records requested include but are not limited to any records of any placement of Parvin Olfati and/or 1859 45ᵗʰ Street under any "intelligence", surveillance, monitoring, or other similar activity by any law enforcement agency. If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable, please provide the records of such destruction, transfer, or unavailability, together with applicable record retention policies.  As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt of this request, and either produce the requested documents, or commit in writing to a production date that is within the reasonable time period required by the PRA.

23

24

25

Thank you.

26

Sincerely,

Parvin Olfati .

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 111

1    **Paragraph 283-(y):**

        **PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819**
2                                                                          March 10, 2022

3    Via U.S. Mail
     Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA
     95841
4
     **RE:    Public Records Act Request for County of Sacramento Sheriff's Department CAD Call Print Synopsis**
5    **or Other Records of Calls for Service to County Sheriff To 1859 45ᵗʰ Street, Sacramento, California 95819 For**
     **2020 Period Between August 1 and August 31**
6
     Dear Sir or Madam:
7
     Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I
8    hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all
     "Computer Aided or Assisted Dispatch [CAD] Call Print Synopsis" or other records reflecting County Sheriff
9    activity at 1859 45ᵗʰ Street, Sacramento, California 95819 during the following time period: August 1, 2020 through
     and including August 31, 2020.
10
     In addition to the printout of the CAD calls, please produce all communications created, transmitted, received and/or
11   stored on County Sheriff radio, telecommunications, computers, or other media that mention, refer to, or relate to any
     of the CAD calls in the printout.
12
     As used herein, the term "County Sheriff activity" includes but is not limited to any activity by any County Sheriff
13   sheriff, deputy, division, Impact Division, Mental Health Unit, Homeless Outreach Team, officer, employee, agent or
     representative.
14
     If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
15   please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
     policies.  As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt
16   of this request, and either produce the requested documents, or commit in writing to a production date that is within
     the reasonable time period required by the PRA. Thank you.
17   Sincerely,
     Parvin Olfati
18

19

20

21

22

23

24

25

26

27

28

     PLAINTIFF's FIRST AMENDED COMPLAINT 112

1   **Paragraph 283-(z):**

2                    **PARVIN OLFATI, 1859 45th Street, Sacramento, California 95819**
                                                    March 24, 2022

3   Via U.S. Mail
    Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue,  Sacramento, CA
4   95841

5   **RE:    Public Records Act Request for County of Sacramento Sheriff's Department Records Created,
    Transmitted, Received And/or Stored On Or After March 1, 2022 That Constitute, Mention, Refer To And/or**
6   **Relate To Any  Suspicious Activity Report or Other Communication About Parvin Olfati Or 1859 45th Street
    Received From Any Person or Entity**

7
    Dear Sir or Madam:
8
    The time period covered by this Public Records Act (PRA) request is March 1, 2022 through and including the date
9   of your response to this PRA request.

10  Pursuant to the California Public Records Act (PRA) and Article I, Section 3(b) of the California Constitution, I
    hereby request that the County of Sacramento Sheriff's Department (County Sheriff) produce to me any and all
11  electronic mail messages, text messages, notes, communications, letters, memoranda, documents, records, and/or
    writings created, transmitted, received and/or stored on any County Sheriff sheriff, deputy,  department, division,
12  Impact Division,  Mental Health Unit, Homeless Outreach Team, officer, chief, division, agency, board, employee,
    agent and/or representative person or medium, and/or any person or medium acting in concert with any of them,
13  created, transmitted, received and/or stored between March 1, 2022 and the date of your receipt of this PRA request,
    that constitute, mention, refer to, and/or relate to any Suspicious Activity Report or communication, that mentions or
14  refers to Parvin Olfati or 1859 45th Street, and that was received from any person or entity.

15  If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
    please provide the records of such destruction, transfer, or unavailability, together with applicable record retention
16  policies.   As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt
    of this request, and either produce the requested documents, or commit in writing to a production date that is within
17  the reasonable time period required by the PRA. Thank you.

18  Sincerely,

19  Parvin Olfati

20

21

22

23

24

25

26

27

28

    PLAINTIFF's FIRST AMENDED COMPLAINT 113

1

**Paragraph 283-(aa)**

2

3          **Ms. PARVIN OLFATI, 1859 45th Street, Sacramento, California 95822**
                                                                          January 31, 2022
4
         <u>Via personal delivery only to:</u> Disclosure Officer, County of Sacramento, Clerk of the Board Office, Suite 2450, 700
5        "H" Street, Sacramento, CA 95814

6        <u>Via U.S. Mail to:</u>
         Disclosure Officer, County of Sacramento Sheriff's Department, 4500 Orange Grove Avenue, Sacramento, CA
7        95841

8        RE:    **Public Records Act Request – County of Sacramento Sheriff's Department or County Behavioral
         Health Records Of Any And All Records of "Process Referrals" to the "Community Support Team" Between
9        January 1, 2020 And The Date Of Your Receipt Of This PRA Request**

10       Dear Sir or Madam:

11       Pursuant to Article I, Section 3(b) of the California Constitution (added by Proposition 59, effective November 3,
         2004) and the California Public Records Act (PRA), please produce the following documents, records and/or
12       writings. Government Code Section 6253.1 requires you to assist me to "identify records and information that are
         responsive to the request or to the purpose of the request" and "provide suggestions for overcoming any practical
13       basis for denying access to the records or information sought." This records request is for documents created,
         transmitted, received and/or stored on any computer or other medium in any of the following County of Sacramento
14       (County) operations:

15           1. County Sheriff's Department (County Sheriff) sheriff, deputy, department, division, Impact Division, Mental
                Health Unit, Homeless Outreach Team, chief, officer, office, agency, agent, employee, or representative.
16           2. County Mobile Crisis Support Team ("MCST") and/or MCST-assigned Sheriff's Department officers and/or
                Senior Mental Health Counselors.
17           3. County Division of Behavioral Health Services ("County Behavioral Health") employees Jennifer Stewart,
                Jennifer Reiman, and/or Pamela Pisani.
18           4. Problem Oriented Policing (POP) at the Sacramento Sheriff's Department North Division.
             5. The "Community Support Team" (CST).
19           6. County Sheriff Sergeant Ronald Briggs.
             7. County Mental Health Program Coordinator Jennifer Reiman.
20           8. County Senior Mental Health Counselor Jennifer Stewart.

21       that constitute any Sheriff's Department "process referrals" to the Community Support Team between January 1,
         2020 and the date of your receipt of this PRA request (January 31, 2022). Please feel free to redact any and all
22       privacy-implicating information for individuals other than the undersigned. My purpose in making this request is to
         find out how many (and on what basis) "process referrals" were made during the period of the "process referral"
23       about me on December 10-14 of 2020; the stated basis behind such "process referrals"; and their outcome. I had
         never heard of "process referrals" until I became the recipient of one.

24       As required by Government Code Section 6253(c), please respond within ten (10) calendar days of your receipt of
         this letter, and please either produce all requested documents, records, and/or writings within ten (10) calendar days
25       of your receipt of this letter, or expressly and specifically commit to production within a specified reasonable period
         of time as required by the Public Records Act. I am willing to pursue my rights under Government Code Section
26       6258 if this request is not granted.

27       Very truly yours,

28       Ms. Parvin Olfati

1

## **Paragraph 283-(bb)**

2

**Parvin Olfati 1859  45th Street Sacramento, CA. 95819**

3                                                                                                        March 29, 2022

<u>Via personal delivery only</u>
Disclosure Officer, County of Sacramento, Clerk of the Board Office, 700 "H" Street, Suite 2450, Sacramento, CA

4     95814

5     **RE: Public Records Act Request For County of Sacramento Division of Behavioral  Health Services
Documents That Constitute, Mention, or Refer To  All "Drop By" or "Cold Knock Contacts" by Senior**

6     **Mental Health Counselors or Community Support Team Members Between January 1, 2020 And The Date Of
Your Response To This PRA Request**

7     Dear Sir or Madam:
Pursuant to the California Public Records Act (PRA), please provide County of Sacramento  Division of Behavioral

8     Health Services documents, records or writings that constitute, mention,  or refer to any County Division of
Behavioral Health Services "drop by" or "cold knock  contacts" related to any police report or crime report to the

9     County Sheriff or any other law enforcement agency, made on any date between January 1, 2020 and the date of your
response to this PRA request by:

10

(1)  County Senior Mental Health Counselors or Community Support Team members other than Pamela Pisani

11    (2)  Pamela Pisani.

12

Please respond and provide any and all requested records via postal mail to my address above. Please do not use e

13    mail transmission.

14    If any of the records requested in this PRA request have been destroyed, transferred, or are otherwise unavailable,
please provide the records of such destruction, transfer, or unavailability, together with applicable record retention

15    policies.  As required by the PRA, please respond in writing within ten (10) calendar days of the date of your receipt
of this request, and either produce the requested documents, or commit in writing to a production date that is within

16    the reasonable time period required by the PRA.

17    Thank you.

18    Sincerely,
Ms. Parvin Olfati

19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 115

1

**EXHIBIT TWELVE: SUPPLEMENTAL CGTCA CLAIM WITH DEFENDANT**

2

**COUNTY FILED APRIL 4, 2022**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

May file in person, or mail form to: Clerk, Board of Supervisors, 700 H Street, Rm. 2450, Sacramento, CA 95814
**Please keep one (1) copy for your records - Print/Type Only**

| CLAIM NUMBER (Dept. Use ONLY) | **CLAIM AGAINST THE COUNTY OF SACRAMENTO** |
|---|---|

**1. Claimant's Name** OLFATI M. PARVIN    **2. Date of Birth** 08/03/1952
Last          First          M.I.

**3. Claimant's Address** 1859   45TH STREET   SACRAMENTO CA   95819
Street (or P.O. Box)      City      State      Zip Code

**4. Address Where Correspondence Should Be Sent (if different from above)**
Name:

Street (or P.O. Box)          City          State          Zip Code

**5. Phone Number** 916 949 4298
Home          Work          Other

**6. E-mail address** steven.kump @comcast.net

**7. Amount of Claim** $ See Attached

**8. Itemized List of Claimed Expenses / Damages (should equal Line 7)**

| ITEM | DOLLAR AMOUNT |
|---|---|
| See Attach | $ |
|  | $ |
|  | $ |

(Please attach any estimates* and/or receipts to your claim)
*1 estimate if repairs are less than $1,000
*2 estimates if repairs are more than $1,000      **TOTAL CLAIM**  $ See Attach

Board of Supervisors Stamp
2022 APR -4 AM 11: (COUNTY OF SACRAMENTO BOARD OF SUPERVISORS)
Do Not Write In This Space

**9. Date of Accident / Incident / Loss:** DEC. 2020 Continued not resolved with 2022 JANuary

**10. Location of Accident / Incident / Loss:** 1859 45TH ST, SACRAMENTO 95819 28

**11. Provide your description of how the Accident / Incident / Loss Occurred:** See Attach

**12. Describe Damage / Injury / Losses being claimed** (including prospective Damage / Injury / Losses to the extent it is known at the time of claim filing) See Attach

**13. Name(s) of Public Employee(s) Involved:** SHERIFFS SERGEANT RON BRIGGS
+ PAMELA PISANI, JENNIFER STEWART, JENNIFER REIMAN

**14. Are you receiving Medicare, or will you be receiving Medicare in the next 3 years?**  ☒ YES  or  NO ☐

B=b=V
N=63

Section 72 of the Penal Code states: "Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, city, or district board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is punishable either by imprisonment in the county jail for a period of not more than one year, by a fine of not exceeding one thousand dollars ($1,000), or by both such imprisonment and fine, or by imprisonment in the state prison, or by a fine not exceeding ten thousand dollars ($10,000), or by both such imprisonment and fine."

**15. Signature of Claimant/Representative:** _____ DATE 4/4/ 2 serve

Print Form

Revised: 1/17          **You must present your claim within the time prescribed by Govt. Code Section 911.2.**

## LOCATION DIAGRAM

**Indicate Directional Points on the Compass (N, S, E, W)**



1. **Identify streets**
2. **If vehicles are involved, indicate COUNTY VEHICLE as #1, and all others in numerical sequence.**



Risk Management Office, P.O. Box 276130, Sacramento; CA 95827   Telephone: (916) 876 - 5251  Fax: (916) 876 – 5156
www.saccounty.net

Rev. 1/17

1

Ms. Parvin Olfati 1859  45th Street Sacramento, CA. 95819

April 4, 2022

<u>Via personal delivery to:</u>
Claims, Clerk of the Board Office, Sacramento County Board of Supervisors, Suite 2450, 700 "H" Street, Sacramento, CA 95814

RE: Update With Newly Discovered Information of Claim Number L2100524/Your File Number 87388-35 by Victim Ms. Parvin Olfati for Damages Caused by County Employees Ronald Briggs, Jennifer Stewart, Jennifer Reiman and Pamela Pisani on December 10-14 and 28 of 2020 Not Discovered by Claimant Until January 28, 2022 and March 8, 2022 From County of Sacramento Making Available Previously Undisclosed Records

Dear Sir or Madam:

This letter and the attached form is the claimant's update with newly discovered previously unavailable information from County records, of the claimant's Claim Number L2100524, and "our file no." as 87388-35, which is a California Government Code 910 victim compensation claim for the damages the claimant ("claimant") suffered on December 14, 2020, when Ms. Pamela Pisani of the County Division of Behavioral Health Services ambushed me, trespassed my house, defamed me, invaded my privacy, and intentionally caused me to suffer severe emotional distress. It now appears from previously undisclosed and suppressed County information that claimant is the victim of additional related acts by Pisani, and acts by County Behavioral Health employees Jennifer Reiman and Jennifer Stewart, and County Sheriff Sergeant Ronald Briggs that were committed on the 2020 dates of December 10-14 and 28. As discussed below, this information was not made available by the County until the *2022 dates of January 28 and March 8*.

The newly discovered information comes from two County sources: (1) the Jennifer Reiman Declaration and exhibits thereto in *Parvin Olfati v. County of Sacramento, et al.,* Sacramento County Superior Court Case Number 34-2021-00310164. This Declaration was filed and served by mail by County outside counsel on January 28, 2022, and received by Claimant's counsel on January 29, 2022; and (2) the County's Public Records Act (PRA) Request 22-740 hard copy response to the claimant's PRA request 22-491 delivered to the Clerk of the Board on January 31, 2022. Previous December 2020 and 2021 PRA requests to the County Sheriff and the County for information in both (1) and (2) both received responses from the County that no documents were available, and as for the County Sheriff, it did not respond.

The County records in (1) and (2) reveal the following newly discovered tortious acts against claimant by County employees:

(a)    On December 14, 2020, County Division of Behavioral Health Services employee Pamela Pisani sent an electronic mail message on a County computer during County working hours to County Division of Behavioral Health services employee Jennifer Reiman stating as follows: "[t]his person [Parvin Olfati] who has a restraining order against her by a [Sacramento] city councilmen [sic]." The Pisani e mail said Ms. Pisani's statement was based on a conversation she had with County Division of Behavioral Health Services employee Jennifer Stewart. An electronic mail message with nearly

1

2

identical content[1] was sent on December 28, 2020 by County Division of Behavior Health Services employee Jennifer Reiman to County Division of Behavioral Health Services employee Rolanda Adams.

In fact, there is no restraining order against the claimant by any member of the Sacramento City Council, as the City of Sacramento confirmed in its' response to the claimant's PRA request for precisely this and only this document. The County's response to the claimant's PRA Request 22-491 indicates that Ms. Reiman and Ms. Pisani made no attempt to check the accuracy of her statement about the claimant: "no documents."

These statements by County employees Pamela Pisani, Jennifer Stewart, and Jennifer Reiman constitute defamation, false light invasion of privacy, intentional infliction of emotional distress, and negligence, and were made with a combination of constitutional malice, common law malice, intent to place the claimant in a false light, and intent to vex, harass, and annoy the claimant. They were also made in retaliation for the claimant having filed a police report/crime report with the County Sheriff that is discussed below under (b).

(b)     On December 10, 2020, Sacramento County Sheriff's Department Sergeant Ronald Briggs communicated through County facilities to County Division of Behavioral Health Services employee Jennifer Stewart the following content: ". . . the attached letter with an inquiry as to how to get a mental health worker to check in with the letter writer because the complaint is unfounded so they cannot make a report but have valid concerns for her emotional well-being. . . the letter suggests CST [Community Support Team] contact might be more effective (identified belief law enforcement is stalking her and colluding against her)."

This content was communicated by County employee Jennifer Stewart to County Division of Behavioral Health Services employees Jennifer Reiman and Pamela Pisani, and resulted in the Pamela Pisani trespass, invasion of privacy, and other tortious acts regarding the claimant that occurred on December 14, 2020 and that are now the subject of the Sacramento County Superior Court action *Parvin Olfati v. County of Sacramento, et al.,* Sacramento County Superior Court Case Number 34-2021-00310164. The claimant in a December 23, 2020 Public Records Act (PRA) request to the County Sheriff requested a category of documents that covered these documents Claimant did not receive until the 2022 dates of January 29 and March 8 – but the County Sheriff *never responded to this PRA request.*

The "letter" referenced is the claimant's November 9, 2020 police report/crime report to the County Sheriff reporting the theft of Claimant's cellphone in the Fair Oaks area in unincorporated Sacramento County, which is in the Sheriff's Department jurisdiction. The above-quoted communication from County Sheriff's Sergeant Briggs demonstrates that the December 14, 2020 acts by County employee Pisani were part of a County-instigated retaliation against claimant for her exercise of United States Constitution First/Fourteenth Amendments and California Constitution Article I, Sections 2 and 3 rights of speech and petitioning in the filing of a police report/crime report with the County Sheriff reporting claimant's reasonable belief regarding the

---

[1] "This individual =[h]ad [sic] a restraining order against her by a city councilmen [sic]."

2

3

circumstances of the theft of her cellphone. The County in its' March 8, 2022 PRA 22-740 hard copy response to January 31, 2022 PRA Request 22-471 stated that it had "no documents" that constituted, mentioned, referred to, or related to "any investigation or activity related to any determination the November 9, 2020 Parvin Olfati Police Report/Crime Report was: (i) "unfounded"; (ii) a "complaint indicative of potential mental health distress"; or (iii) merited referring the police report/crime report author and her address to County Division of Behavioral Health Services, MCST, and/or POP. Thus, it reasonably appears to the claimant that in order to retaliate against claimant from sending a police report that County Sheriff Sergeant Ronald Briggs found to be "unfounded", and to chill, coerce, threaten, or intimidate claimant from making subsequent police reports/crime reports, the County between December 10 and 14 of 2020 sent Ms. Pisani on a December 14, 2020 mission to stigmatize claimant as a person whose police reports are the subject of "mental health distress" and to entrap claimant into accepting County Behavioral Services activity toward her that she did not need and did not want, including but not limited to a Welfare & Institutions Code Section 5150 72-hour hold.

Claimant also reasonably believes that the ambush was coordinated or directed not only by the above-named employees of the County Sheriff and the County Department of Health Services Division of Behavioral Health Services, it was also coordinated or assisted by Mr. Howard Schmidt, who until some day in January 2021 was the Chief of Staff to Third District County Supervisor Susan Peters.

Here are the answers to the questions on the attached filled-out questionnaire:

1. Claimant's Name: Ms. Parvin Olfati
2. Claimant's Date of Birth: August 23, 1952.
3. Claimant's Address: 1859 45th Street, Sacramento, CA 95819
4. Address Where Notices Are To Be Sent: 1859 45th Street, Sacramento, CA 95819
5. Claimant's Telephone Number: (916) 949-4298 (a cellphone)
6. Claimant's e mail address: Claimant does not use e mail, and requests that all communications be sent via postal mail to Ms. Parvin Olfati, 1859 45th Street, Sacramento, CA 95819
7. Amount of Claim: a second tripling of the amount of all salary and benefits paid to Ms. Pam Pisani; County Division of Behavioral Health Services employees Jennifer Reiman and Jennifer Stewart; County Sheriff employee Sergeant Ronald Briggs; and Mr. Howard Schmidt.

For any and all tortious acts (trespass, defamation, invasion of privacy, and intentional infliction of emotional distress) complained of in this Claim. Since each of these County employees were conspirators, each of them are liable for their own acts as well as the acts committed by each of the other conspirators.

With the newly discovered information described in this supplement, claimant's claims now include: (1) retaliation for claimant's exercise of United States Constitution First/Fourteenth and California Constitution Article I/Sections 2 and 3 rights of speech and petitioning, by County Sheriff employee Sergeant Ronald Briggs and County Behavioral Health Services employees Jennifer Stewart, Jennifer Reiman, and Pamela Pisani; (2) additional acts of defamation and false light invasion of privacy by

4

County employee Pamela Pisani; and (3) acts of defamation and false light invasion of privacy by County employees Jennifer Reiman and Jennifer Stewart.   The acts described in (1) above are actionable under both the California Tom Bane Civil Rights Act (Civil Code Section 52.1) and United States Code, Title 42, Section 1983. With respect to (1), they are acts of threats, intimidation, and coercion, and with respect to (2), they are acts committed under color of state law to retaliate against claimant for her exercise of First/Fourteenth Amendment rights of speech and petitioning.

8.  Itemized List of Damages: see item 7 above and items 11 and 12 below.
9.  Date(s) of Incident: December 10-14, and 28 of 2020
10. Location of Incident: 1859 45th Street, Sacramento, CA 95819
11. How did this incident occur?  See above.
12. Describe damage/injury/loss: See above
13. Names of County Employees Causing Damage/Injury/Loss: (a) Ms. Pam Pisani, LMFT Senior Mental Health Counselor, Community Support Team, Division of Behavioral Health Services, Department of Health Services, whose business card lists her work address as 3321 Power Inn Road, Suite 110; (b) Jennifer Stewart, Senior Mental Health Counselor, Community Support Team, Division of Behavioral Health Services, Department of Health Services; (c) Jennifer Reiman, Mental Health Program Coordinator with the Mobile Crisis Support Team of the Division of Behavioral Health Services, Department of Health Services; (d) Sergeant Ron Briggs of the Sacramento County Sheriff's Department; and (e)  then-employee Mr. Howard Schmidt of the Third District Supervisor Susan Peters office;

14. Claimant is receiving Medicare.
15. Signature of Claimant — see below

Sincerely, /s/ Ms. Parvin Olfati, Claimant

4

1   **EXHIBIT TWELVE-A: DEFENDANT COUNTY's APRIL 9, 2022 CLAIM**
2   **REJECTION LETTER**
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**GEORGE HILLS**

*Our minds over your matters.*

April 9, 2022

Parvin Olfati
1859 45th Street
Sacramento, CA 95819

**NOTICE OF REJECTION OF CLAIM**

RE:        CLAIM NO:       L210054
             CLIENT:         COUNTY OF SACRAMENTO
             OUR FILE NO:    87388-35

Dear Mr. Olfati:

NOTICE IS HEREBY GIVEN that the claim which you presented to the County of Sacramento on **April 4, 2022** was rejected.

**WARNING**

Subject to certain exceptions, you have only six (6) months from the date that this notice was personally delivered, or deposited in the mail, to file a court action on this claim. See Government Code §945.6.

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

**NOTICE OF UNTIMELY CLAIM**

IN ADDITION, NOTICE IS HEREBY GIVEN that a portion of that same claim (any acts or events prior to **October 4, 2021** which you presented to the County of Sacramento on **April 4, 2022**) will not be accepted for consideration because it was not presented within six months of the date of accrual of the cause of action as required by law. Accordingly, that portion of the claim has not and will not be considered on its merits. See Government Code §911.2.

Nothing herein, nor any actions taken by this public entity, or any of its officers, employees or agents with regard to the above-referenced matter, should be construed as a relinquishment or waiver of any legal requirement or any right of defense such as timeliness, sufficiency, proper presentation or any other matter which may be available to the County of Sacramento or any of its officers, employees or agents.

Please also be advised that, pursuant to §128.7 and §1038 of the California Code of Civil Procedure, the County will seek to recover all costs of defense in the event an action was not brought in good faith and with reasonable cause.

Sincerely,
GEORGE HILLS COMPANY, INC.
Charles A. Torretta, SCLA, MCSA
Claims Administrator
Sacramento Office
Enclosure: Proof of Service

1

**EXHIBIT THIRTEEN: PLAINTIFF'S NOVEMBER 9, 2020 POLICE REPORT**
2   **LETTER TO THE COUNTY SHERIFF**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Police report/ Crime Report regarding the theft of my cellphone
from my car in Fair Oaks neighborhood on Saturday November 07, 2020
and being stalked all day by multiple law enforcements and private people/gangstalkers.



Ms. Parvin Olfati 1859 45th Street Sacramento, CA. 95819

November 9, 2020

VIA personal delivery to the City Clerk Box at the City Hall Kiosk and by U.S. First Class Mail [CaSacramentoPd@coplogic.com disabled]
The Honorable Daniel Hahn, Chief of Police, City of Sacramento Police Department, 5770 Freeport Boulevard, Sacramento, CA 95822

Cc on November 9, 2020 via e mail to CaSacramentoCountySD@coplogic.com and U.S. Mail  to The Honorable Scott Jones, Sheriff, County of Sacramento Sheriff's
Department, 701 "G" Street, Sacramento, California 95814

CC via Personal Delivery on November 9, 2020 to The Honorable Mayor Darrell Steinberg, City Clerk's Office, City Hall 5th floor, Sacramento, CA 95814
The Honorable Eric Guerra, City Council Member 6th district, City Clerk's Office, City Hall 5th floor, Sacramento, CA 95814
The Honorable Xavier Becerra, Attorney General, California Department of Justice, 1300 "I" Street, Sacramento, CA 95814 (ATTN: Public Inquiry Unit)

Victim : Me (Ms. Parvin Olfati),whose cellphone was stolen as she was being stalked around the clock 24/7 around the City and the County.

Crime: cellphone theft and related suspicious activities and criminal stalking of me (Parvin Olfati)

CRIMINAL(S):  Although I do not know the name of these criminals, but I am sure that this cries against  me has occurred under the direction and supervision of Steve
Maviglio who always wants to destroy the evidences and proof of  his crime against me.  On May09, 2020 he managed to orchestrate the ambush of me and police
brutality to gain access to my house and documents, computer, phone and camera, and now after another one of his well orchestrate and well funded crime against me o
October 11, 2020 was exposed, he wanted to get access to my phone and documents that exposed his violent crime and pictures of me to be used against me in his
spin doctor style and mob fashion distorting the truth and fabricate fraudulent story, A police report was filed regarding October 11, 2020 incident and has not stopped. This crime happened in Fair Oaks
violent abuse of power against me that has been one of many of his abuses that I have been suffering since 2010 and has not stopped.  This crime against me serve
and there was multiple gangstalkers and suspect animals shelter.  Evidence stealing is always one of the last stage of crime against me.  This crime against me serve
multiple purposes, first the destroy the evidence and proofs of their crime and then accuse me of imaging and the crime that they had made me a victim to.
In addition to the almost thousand video footages and pictures, there were hundreds of text messages that I have been receiving from multiple political campaign and
my response  to them that I was begging them not to send me any text because I was terrified of Mr. Maviglio's retaliation including but not limited to subjecting me to
chemical, bio chemical and toxic gas, fume and other poisons.  I reasonably believe some of these political texts were sent under direction of Mr. Maviglio and his
friends and enablers to set me up in spin doctors and mob fashion for more retaliation , abuse  and torture.

On Saturday, November 7, 2020, at some time after 5:00 p.m., my cellphone (LG G7 ThinQ Silver) was stolen from the car I was driving. The theft occurred as I was
driving from Fair Oaks back to 45th Street in Sacramento.
Saturday November 07, 2020 was one of  many very violent and toxic day of my life in 2020,  I was stalked from early morning and the stalking did not stop until my
cell phone was stolen.  In the afternoon, my cellphone was acting very weird and I was having hard time to make a call.  This is always a pre text to the upcoming theft
of my cellphone. The stalking continued to Fair Oaks and back home while my house was also broken into and my video footages were deleted remotely.  There was a
well orchestrated and well funded victimzing me on Saturday November 07, 2020 that has not stopped.  Again, this violent theft and stalking and exposing me to more
chemical and toxic were all after the latest visit by Ms. Schmidt to Barbara Andres and Ceceil taylor at 1871 45th street.

I reasonably believe the motive for the cellphone theft was to gain access to the over one thousand photos and video of suspicious and criminal activities, crime against
me, multiple gangstalkers, suspicious cars and drivers  who stalk me around the town and many evidences of multiple crimes against me, my animals and my house.
This is in line with the pattern and practice of Mr. Thiella, his friends and enablers including but not limited to Steve Maviglio and his criminal puppets and
gangstalkrs to steal the evidences of the crimes they had committed against me.  As you know they have already stolen, most of my documents and evidence of the
crimes against me including the medical records of mine and my dog Sasha (his X ray was stolen and replaced with fraudulent one.  They Have also stolen the
multiple CD contained my deposition taken by Deputy attorney general Glenda Reager, They also  I have stored on the cellphone. I reasonably believe that these
persons include Mr. Steven Maviglio of 1901 45th Street  (Sacramento, California 95819), who was shown my cellphone by City of Sacramento Police Department
Officer Maryna Stanionis on May 9, 2020, when she took my cellphone to a meeting with Mr. Maviglio where she likely displayed its' contents to him  -- as part of the
false arrest of me that morning by Officer Stanionis and Officer Jared Robinet, one of the two officers who fired the bullets that killed Stephon Clark. I reasonably
believe that Mr. Maviglio is angry that the District Attorney dismissed the one and only charge -- "resisting arrest" -- for Insufficient Evidence, meaning that all of
perjury and related criminal activity by Mr. Maviglio and his partner in perjury, 1870 45th Street resident Barb Andres, was for nothing…and making Mr, Maviglio and
Ms. Andres both liable for intentionally communicating fal se information to the City Police.

Signed by the Targeted Victim of Mr. John Anthony Thiella since 1994 who also managed to make me a targeted victim of Sacramento Poicie department since 2003,
the Targeted Victim of Steven Maviglio since 2010, the Victim of Joana Ward ,"VIP", and the VIP client roster (incliding local state and federal law enforcement
agencies and intelligence agencies includng Sacramento Poicie Department and their Impact Team,  healthcare providers, hospitals,  major insurance companies,
security alarm companies,  banks, othr private companies including but not limited to Tyco, Simplex/Grinnell, Johnson Controls, and the Number one Johnson Controls
criminal employee Ceceil Taylor,  who has been extremely lethal to my health and to the security and safety of me, my animals, and my property.

Thank You,

Ms. Parvin Olfati

1

1  **DECLARATION OF SERVICE IN PERSON**

2  I, STEVEN M. KAMP, declare and state as follows:

3  1.    I am over the age of 18, and reside in the County of Sacramento, State of California.

4  2.    I am not a party to this lawsuit. I represent the Plaintiff/PRA Petitioner in this action, Ms.
   Parvin Olfati.

5
6  3.    On June    2022, I caused to be served by hand delivery on counsel for the Defendants and
   PRA Respondents in this action a true and correct copy:
       RONALD BRIGGS

7  **PLAINTIFF PARVIN OLFATI'S FIRST AMENDED COMPLAINT**

8  4. Service was effected in person on  June   , 2022 by:

9
   (a) Personally delivering a copy of the above-referenced document to Porter Scott, 350
10     University Avenue, Suite 200, Sacramento, California 95825 in a manila envelope
11     addressed to Carl Fessenden, Esq., Porter Scott, 350 University Avenue, Suite 200,
       Sacramento, CA 95825;
12 (b) Including therewith a true and correct copy of the Sacramento County Superior Court June
13     9, 2022 Minute Order directing the filing and service of the above-referenced document.

14

15 I declare under penalty of perjury that the foregoing statements are based on personal knowledge,
   and are true and correct. Executed at Sacramento, California, this    day of June, 2022.

16
   /s/ STEVEN MARK KAMP (California State Bar Number 116817)
17 STEVEN KAMP LAW OFFICE, 22 Petrilli Circle, Sacramento, CA 95822
   Electronic Mail Address: steve.kamp@comcast.net
18 Telephone: (916) 501-1791 (cellular, voice/text)
   Attorney for Plaintiff/PRA Petitioner Ms. Parvin Olfati
19

20

21

22

23

24

25

26

27

28

PLAINTIFF's FIRST AMENDED COMPLAINT 119

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): 116867 | FOR COURT USE ONLY |
|---|---|

STEVEN MADZIK KAMP
STEVEN KAMP LAW OFFICE
23 PEARLI CIRCLE, Sacramento, CA 95822

TELEPHONE NO.: 916 501 1791  FAX NO. (Optional):
E-MAIL ADDRESS (Optional): Steve- kampldsumgy 80. net
ATTORNEY FOR (Name): PLAINTIFF MS. PARVIN OLFATI

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
STREET ADDRESS: 730 NINTH STREET
MAILING ADDRESS:
CITY AND ZIP CODE: SACRAMENTO, CA 95814
BRANCH NAME: 605

PLAINTIFF/PETITIONER: MS. PARVIN OLFATI
DEFENDANT/RESPONDENT: COUNTY OF SACRAMENTO et al

CASE NUMBER: 34-2021-00310144 605

Ref. No. or File No.:

**PROOF OF SERVICE OF SUMMONS**

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. [X] summons
   b. [X] complaint — FIRST AMENDED COMPLAINT
   c. [X] Alternative Dispute Resolution (ADR) package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [X] other *(specify documents):* RCW 614 RCW 62 Orders

3. a. Party served *(specify name of party as shown on documents served):* JENNIFER REIMAN
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):* CARL KESSENDEN, PORTER SCOTT, Attorney authorized to accept service

4. Address where the party was served: 350 UNIVERSITY AVENUE SUITE 209 SACRAMENTO, CA 95825

5. I served the party *(check proper box)*
   a. [X] by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):* JUNE 17 2022  (2) at *(time):* 1107 AM
   b. [ ] by substituted service. On *(date):*  at *(time):*  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*  from *(city):*  or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

POS-010

| PLAINTIFF/PETITIONER: MS. PARVIN OLFATI | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COUNTY OF SACRAMENTO et al | 34-2021-0031016 4 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                   (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.*) (Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

     ☒ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☒ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify):*

  c. ☐ as occupant.

  d. ☐ On behalf of *(specify):*

    under the following Code of Civil Procedure section:

|  |  |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
|  | ☐ other: |

7. **Person who served papers**

  a. Name: STEVEN MARK KAMP

  b. Address: 22 PETALLI CIRCLE, SACRAMENTO, CA 95822

  c. Telephone number: 916 501 1791

  d. **The fee for service was:** $ 35

  e. I am:

    (1) ☒ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☐ a registered California process server:

      (i) ☐ owner ☐ employee ☐ independent contractor.

      (ii) Registration No.:

      (iii) County:

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: JUNE 17, 2022

STEVEN MARK KAMP           ▶
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)        (SIGNATURE)

POS-010 [Rev. January 1, 2007]     **PROOF OF SERVICE OF SUMMONS**     Page 2 of 2

For your protection and privacy, please press the Clear This Form button after you have printed the form.   ☐ Print this form ☐ Save this form   ☐ Clear this form

**STEVEN KAMP <steve.kamp@comcast.net>**                                        6/16/2022 9:58 PM

# RE: Olfati vs County of Sacramento et al -- Service of FAC on Defendants Briggs, Reiman and Stewart

To Carl Fessenden <cfessenden@porterscott.com>   Copy Kilina Tellez <ktsusaki@porterscott.com> •
Jordan McCroskey <jmccroskey@porterscott.com> • Suli Mastorakos <smastorakos@porterscott.com>

---

Dear Mr. Fessenden ,

Thank you. Will do tomorrow June 17 in the mid morning.

/S/ Steven M. Kamp Attorney  for Plaintiff  Ms.Parvin Olfati

> On 06/16/2022 9:05 PM Carl Fessenden <cfessenden@porterscott.com> wrote:
>
> Mr. Kamp,
>
> We have confirmed that we have the authority to accept service for Dep. Briggs, Ms. Stewart and Ms. Reiman. You can serve them at our office.
>
> Carl
>
> ---
>
> **From:** STEVEN KAMP <steve.kamp@comcast.net>
> **Sent:** Thursday, June 16, 2022 5:28 PM
> **To:** Carl Fessenden <cfessenden@porterscott.com>; Jordan McCroskey <jmccroskey@porterscott.com>
> **Subject:** Olfati vs County of Sacramento et al -- Service of FAC on Defendants Briggs, Reiman and Stewart
>
> **\*\*\*External email\*\*\***
>
> /s/ Steven Mark Kamp, SBN 116817, Attorney for Plaintiff Ms. Parvin Olfati
>
> Steven Kamp Law Office
>
> steve.kamp@comcast.net
>
> cell (916) 501-1791
>
> 22 Petrilli Circle, Sacramento, CA 95822

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FILED
Superior Court Of California
Sacramento
06/15/2022
mvallodor
By_____, Deputy

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):** *JENNIFER REIMAN*

**YOU ARE BEING SUED BY PLAINTIFF:** *Ms. PARVIN OLAFTI*
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

**Case Number:**
**34-2021-00310164**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: *SACRAMENTO COUNTY*
(El nombre y dirección de la corte es): *SUPERIOR COURT*
*720 NINTH STREET, SACRAMENTO CA 95814*

CASE NUMBER: (Número del Caso):
*34-2021-00310164*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: (El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es): *STEVEN MARK KAMP*
*STEVEN KAMP CON LAW OFFICE, 22 RETAIL CIRCLE, STOCKTON CA 95802*

DATE: **JUN 15 2022**
(Fecha)

Clerk, by _____, Deputy
(Secretario)                    (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other (specify):

4. ☒ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

[ Print this form ]   [ Save this form ]   [ Clear this form ]

POS-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):* 116817
STEVEN MARK KAMP
STEVEN KAMP LAW OFFICE
22 Petilli Circle, Sacramento, CA 95822
TELEPHONE NO. 916 501 1791  FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):* stcven.kamp@comcast.net
ATTORNEY FOR *(Name):* PLAINTIFF MS. PARVIN OLYATI

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
STREET ADDRESS: 720 NINTH STREET
MAILING ADDRESS: SACRAMENTO, CA 95814
CITY AND ZIP CODE: 
BRANCH NAME: GDS

PLAINTIFF/PETITIONER: MS. PARVIN OLYATI
DEFENDANT/RESPONDENT: COUNTY OF SACRAMENTO et al

CASE NUMBER: 34-2021-00310164

**PROOF OF SERVICE OF SUMMONS**

Ref. No. or File No.:

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☒ summons
   b. ☒ complaint — FIRST AMENDED COMPLAINT
   c. ☒ Alternative Dispute Resolution (ADR) package
   d. ☒ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☒ other *(specify documents):* ROA 61 + ROA 65 Orders
3. a. Party served *(specify name of party as shown on documents served):* SHERIFF'S SERGEANT RONALD BRIGGS
   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):* CAROL FESSENYEM, PORTER SCOTT, Attorney authorized to accept service
4. Address where the party was served: 350 UNIVERSITY AVE, SUITE 200, SACRAMENTO, CA 95829
5. I served the party *(check proper box)*
   a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* JUNE 17 2022 (2) at *(time):* 11:07 AM
   b. ☐ **by substituted service.** On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*
      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* from *(city):* or ☐ a declaration of mailing is attached.
      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

POS-010

| PLAINTIFF/PETITIONER: MS. PARVIN OLFATI | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COUNTY OF SACRAMENTO (4) | 34-2021-00310164 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1)  on *(date):*                          (2)  from *(city):*

   (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) *(Code Civ. Proc., § 415.30.)*

   (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d.  ☐  **by other means** *(specify means of service and authorizing code section):*

   ☒  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

   a.  ☒  as an individual defendant.

   b.  ☐  as the person sued under the fictitious name of *(specify):*

   c.  ☐  as occupant.

   d.  ☐  On behalf of *(specify):*

   under the following Code of Civil Procedure section:

   ☐  416.10 (corporation)            ☐  415.95 (business organization, form unknown)
   ☐  416.20 (defunct corporation)        ☐  416.60 (minor)
   ☐  416.30 (joint stock company/association)   ☐  416.70 (ward or conservatee)
   ☐  416.40 (association or partnership)     ☐  416.90 (authorized person)
   ☐  416.50 (public entity)           ☐  415.46 (occupant)
                           ☐  other:

7.  **Person who served papers**

   a.  Name: STEVEN MARK KOMP
   b.  Address: 222 PETRILLI CIRCLE, SACRAMENTO CA 95822
   c.  Telephone number: 916 501 1791
   d.  **The fee for service was:** $35
   e.  I am:

   (1)  ☒  not a registered California process server.

   (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).

   (3)  ☐  a registered California process server:

      (i)  ☐  owner  ☐  employee  ☐  independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   **or**

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: JUNE 17 2022

STEVEN MARK KOMP                              ►

_____                    _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                    (SIGNATURE)

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**   [ Print this form ]  [ Save this form ]   [ Clear this form ]

**STEVEN KAMP <steve.kamp@comcast.net>** 6/16/2022 9:58 PM

# RE: Olfati vs County of Sacramento et al -- Service of FAC on Defendants Briggs, Reiman and Stewart

To Carl Fessenden <cfessenden@porterscott.com>   Copy Kilina Tellez <ktsusaki@porterscott.com> •
Jordan McCroskey <jmccroskey@porterscott.com> • Suli Mastorakos <smastorakos@porterscott.com>

Dear Mr. Fessenden ,

Thank you. Will do tomorrow June 17 in the mid morning.

/S/ Steven M. Kamp Attorney  for Plaintiff  Ms.Parvin Olfati

> On 06/16/2022 9:05 PM Carl Fessenden <cfessenden@porterscott.com> wrote:
>
> Mr. Kamp,
>
> We have confirmed that we have the authority to accept service for Dep. Briggs, Ms. Stewart and Ms. Reiman.
> You can serve them at our office.
>
> Carl
>
> **From:** STEVEN KAMP <steve.kamp@comcast.net>
> **Sent:** Thursday, June 16, 2022 5:28 PM
> **To:** Carl Fessenden <cfessenden@porterscott.com>; Jordan McCroskey <jmccroskey@porterscott.com>
> **Subject:** Olfati vs County of Sacramento et al -- Service of FAC on Defendants Briggs, Reiman and Stewart
>
> **\*\*\*External email\*\*\***
>
> /s/ Steven Mark Kamp, SBN 116817, Attorney for Plaintiff Ms. Parvin Olfati
>
> Steven Kamp Law Office
>
> steve.kamp@comcast.net
>
> cell (916) 501-1791
>
> 22 Petrilli Circle, Sacramento, CA 95822

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

*SHEN (SP)*
*SERGEANT*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

*RONALD BRIGGS*
*Ms. PARVIN OLFATI*

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

FILED
Superior Court Of California,
Sacramento
FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*
06/15/2022
mvalledor
By_____, Deputy
Case Number:
**34-2021-00310164**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

There are 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: *SACRAMENTO COUNTY*
*(El nombre y dirección de la corte es):* *SUPERIOR COURT*
*720 NINTH STREET, SACRAMENTO CA*
*95814)*

CASE NUMBER: *(Número del Caso):*
*34-2021-00310164*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):* *STEVEN MARK KOMPI*
*STEVEN KOMPI LAW OFFICE, 22 Peralli Circle, Sacto CA 95809*

DATE: **JUN 1 5 2022**
*(Fecha)*

Clerk, by_____, Deputy
*(Secretario)*                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED: You are served**
1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)           [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [X] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

[ Print this form ]  [ Save this form ]  [ Clear this form ]

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): _116817_ | FOR COURT USE ONLY |
|---|---|
| *STEVEN MARR KAMP* | |
| *STEVEN KAMP LAW OFFICE* | |
| *22 Petrilli Circle, Sacramento CA 95832* | |
| TELEPHONE NO.: *966 501 1791*   FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): *steve kamp alumeystmet* | |
| ATTORNEY FOR (Name): *PLAINTIFF  MS. PARVIN OLFATI* | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF *SACRAMENTO*
STREET ADDRESS: *720 NINTH STREET*
MAILING ADDRESS:
CITY AND ZIP CODE: *SACRAMENTO, CA 95814*
BRANCH NAME: *GDS*

| PLAINTIFF/PETITIONER: *MS. PARVIN OLFATI* | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: *COUNTY OF SACRAMENTO, ++* | *34-2021-00310164* |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☒ summons
   b. ☒ complaint *FIRST AMENDED COMPLAINT*
   c. ☒ Alternative Dispute Resolution (ADR) package
   d. ☒ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☒ other *(specify documents):* *RUN 61+ RUN 62 ORDERS*

3. a. Party served *(specify name of party as shown on documents served):* *JENNIFER STEWART*

   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):* *CARL PASSANDAL, PORTER SCOTT, ATTORNEY authorized to accept service*

4. Address where the party was served: *350 UNIVERSITY AVENUE, SUITE 200, SACRAMENTO, CA 95825*

5. I served the party *(check proper box)*
   a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party   (1) on *(date):* *JUNE 17, 2022*   (2) at *(time):* *1107 AM*

   b. ☐ **by substituted service.** On *(date):* _____ at *(time):* _____ I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

       (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

       (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

       (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

       (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* _____ from *(city):* _____ or ☐ a declaration of mailing is attached.

       (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|
| Judicial Council of California | | |
| POS-010 [Rev. January 1, 2007] | | |

POS-010

| PLAINTIFF/PETITIONER: *MS. PARVIN OLFATI* | CASE NUMBER: |
| DEFENDANT/RESPONDENT: *COUNTY OF SACRAMENTO d.1* | *34-2021-00310164* |

5.   c.   ☐   **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1)  on *(date):*                              (2)  from *(city):*

   (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

   (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d.   ☐   **by other means** *(specify means of service and authorizing code section):*

   ☒   Additional page describing service is attached.

6.   The "Notice to the Person Served" (on the summons) was completed as follows:

   a.   ☒   *as an individual defendant.*

   b.   ☐   *as the person sued under the fictitious name of* *(specify):*

   c.   ☐   *as occupant.*

   d.   ☐   On behalf of *(specify):*

   under the following Code of Civil Procedure section:

   ☐  416.10 (corporation)                    ☐  415.95 (business organization, form unknown)
   ☐  416.20 (defunct corporation)            ☐  416.60 (minor)
   ☐  416.30 (joint stock company/association) ☐  416.70 (ward or conservatee)
   ☐  416.40 (association or partnership)     ☐  416.90 (authorized person)
   ☐  416.50 (public entity)                  ☐  415.46 (occupant)
                                              ☐  other:

7.   **Person who served papers**
   a.   Name:  *STEVEN MARK KAMP*
   b.   Address:  *52 PETRILLY CIRCLE, SACRAMENTO CA 95822*
   c.   Telephone number:  *916 801 1791*
   d.   **The fee for service was: $** *35*
   e.   I am:
      (1) ☒  not a registered California process server.
      (2) ☐  exempt from registration under Business and Professions Code section 22350(b).
      (3) ☐  a registered California process server:
         (i)   ☐  owner   ☐  employee   ☐  independent contractor.
         (ii)  Registration No.:
         (iii) County:

8.   ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
      **or**

9.   ☐  I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:  *JUNE 17 2022*

_____
*STEVEN MARK KAMP*
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)          ▶          (SIGNATURE)

POS-010 [Rev. January 1, 2007]                **PROOF OF SERVICE OF SUMMONS**                Page 2 of 2

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**   ☐ Print this form ☐ Save this form   ☐ Clear this form

STEVEN KAMP <steve.kamp@comcast.net>                                    6/16/2022 9:58 PM

# RE: Olfati vs County of Sacramento et al -- Service of FAC on Defendants Briggs, Reiman and Stewart

To Carl Fessenden <cfessenden@porterscott.com>   Copy Kilina Tellez <ktsusaki@porterscott.com> •
Jordan McCroskey <jmccroskey@porterscott.com> • Suli Mastorakos <smastorakos@porterscott.com>

---

Dear Mr. Fessenden ,

Thank you. Will do tomorrow June 17 in the mid morning.

/S/ Steven M. Kamp Attorney  for Plaintiff  Ms.Parvin Olfati

> On 06/16/2022 9:05 PM Carl Fessenden <cfessenden@porterscott.com> wrote:
>
> Mr. Kamp,
>
> We have confirmed that we have the authority to accept service for Dep. Briggs, Ms. Stewart and Ms. Reiman.
> You can serve them at our office.
>
> Carl
>
> ---
>
> **From:** STEVEN KAMP <steve.kamp@comcast.net>
> **Sent:** Thursday, June 16, 2022 5:28 PM
> **To:** Carl Fessenden <cfessenden@porterscott.com>; Jordan McCroskey <jmccroskey@porterscott.com>
> **Subject:** Olfati vs County of Sacramento et al -- Service of FAC on Defendants Briggs, Reiman and Stewart
>
> ***External email***
>
> /s/ Steven Mark Kamp, SBN 116817, Attorney for Plaintiff Ms. Parvin Olfati
>
> Steven Kamp Law Office
>
> steve.kamp@comcast.net
>
> cell (916) 501-1791
>
> 22 Petrilli Circle, Sacramento, CA 95822

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

Superior Court Of California
Sacramento
FILED
06/15/2022
mvalledor
By _____ , Deputy
**Case Number:**
**34-2021-00310164**

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):** JENNIFER STEWART

**YOU ARE BEING SUED BY PLAINTIFF:** Ms. Parvin Olfati
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is: Sacramento County
(El nombre y dirección de la corte es): Superior Court
720 Ninth Street, Sacramento CA 95814

CASE NUMBER: (Número del Caso):
34-2021-00310164

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: (El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es): Steven Mark Lamp
Steven Lamp Law Office, 33 Pattis Circle, Sacramento CA 95802

DATE: JUN 15 2022                    Clerk, by _____ , Deputy
(Fecha):                             (Secretario)                    (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):
3. [ ] on behalf of (specify):

   under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other (specify):
4. [X] by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ]  [ Save this form ]        [ Clear this form ]

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| STEVEN MARK KAMP<br>STEVEN KAMP LAW OFFICE<br>Steven +o CA 95832<br>TELEPHONE NO.: 916 501 1791   FAX NO. *(Optional):*<br>E-MAIL ADDRESS: steve, kamp@comcast.net<br>ATTORNEY FOR *(Name):* PLAINTIFF Ms. PARVIN OLFATI | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SACRAMENTO
STREET ADDRESS: 720 NINTH STREET
MAILING ADDRESS: SACRAMENTO, CA 95814
CITY AND ZIP CODE:
BRANCH NAME: GDS

CASE NAME: Ms. PARVIN OLFATI V COUNTY OF SACRAMENTO et al

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | CASE NUMBER: 34-2021-0CB10164 |
|---|---|---|---|---|
| ☒ **Unlimited** (Amount demanded exceeds $25,000) | ☐ **Limited** (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: DAVID DE ALBA<br>DEPT.: 31 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☒ Civil rights (08)
☒ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☒ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☒ Other petition *(not specified above)* (43)
ADA WRIT vs COUNTY

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☒ punitive
4. Number of causes of action *(specify):* 12
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: JUNE 14 2022   STEVEN MARK KAMP
(TYPE OR PRINT NAME) ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
 Asbestos Property Damage
 Asbestos Personal Injury/
  Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
 Medical Malpractice–
  Physicians & Surgeons
 Other Professional Health Care
  Malpractice
Other PI/PD/WD (23)
 Premises Liability (e.g., slip
  and fall)
 Intentional Bodily Injury/PD/WD
  (e.g., assault, vandalism)
 Intentional Infliction of
  Emotional Distress
 Negligent Infliction of
  Emotional Distress
 Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
 Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel)
 (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
 Legal Malpractice
 Other Professional Malpractice
  *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
 Breach of Rental/Lease
  Contract *(not unlawful detainer or wrongful eviction)*
 Contract/Warranty Breach–Seller
  Plaintiff *(not fraud or negligence)*
 Negligent Breach of Contract/
  Warranty
 Other Breach of Contract/Warranty
Collections (e.g., money owed, open
 book accounts) (09)
 Collection Case–Seller Plaintiff
 Other Promissory Note/Collections
  Case
Insurance Coverage *(not provisionally complex)* (18)
 Auto Subrogation
 Other Coverage
Other Contract (37)
 Contractual Fraud
 Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
 Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
 Writ of Possession of Real Property
 Mortgage Foreclosure
 Quiet Title
 Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
 Writ–Administrative Mandamus
 Writ–Mandamus on Limited Court
  Case Matter
 Writ–Other Limited Court Case
  Review
Other Judicial Review (39)
 Review of Health Officer Order
 Notice of Appeal–Labor
  Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
 *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
 Abstract of Judgment (Out of
  County)
 Confession of Judgment *(non-domestic relations)*
 Sister State Judgment
 Administrative Agency Award
  *(not unpaid taxes)*
 Petition/Certification of Entry of
  Judgment on Unpaid Taxes
 Other Enforcement of Judgment
  Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
 Declaratory Relief Only
 Injunctive Relief Only *(non-harassment)*
 Mechanics Lien
 Other Commercial Complaint
  Case *(non-tort/non-complex)*
 Other Civil Complaint
  *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
 Governance (21)
Other Petition *(not specified above)* (43)
 Civil Harassment
 Workplace Violence
 Elder/Dependent Adult
  Abuse
 Election Contest
 Petition for Name Change
 Petition for Relief From Late
  Claim
 Other Civil Petition

---

CM-010 [Rev. September 1, 2021]

**CIVIL CASE COVER SHEET**

Page 2 of 2

**For your protection and privacy, please press the Clear**

*Olfati v. County of Sacramento, et al.*

## DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California.  I am over the age of eighteen years and not a party to the within above-entitled action.  My business address is 350 University Avenue, Suite 200, Sacramento, California.

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

That on the date below, I served the following: **DECLARATION OF SULI A. MASTORAKOS IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT UNDER 28 U.S.C. § 1441(a) (FEDERAL QUESTION JURISDICTION)** on all parties in the said action as addressed below by causing a true copy thereof to be served:

| | |
|---|---|
| X | **BY MAIL:**  I placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below.  (1)  For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening.  (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY ELECTRONIC SERVICE**: Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

*Attorney for Plaintiff*
Steven Mark Kamp
STEVEN KAMP LAW OFFICE
22 Petrilli Circle
Sacramento, C 95822
Steve.kamp@comcast.net

I declare under the penalty of perjury that the foregoing is true and correct.  Executed at Sacramento, California, on June 29, 2022.

*Kilina Tellez*

_____
Kilina Tellez

**DECLARATION OF SULI A. MASTORAKOS IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT UNDER 28 U.S.C. § 1441(a)
(FEDERAL QUESTION JURISDICTION)**